IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC. <br><br> Plaintiff, <br><br> v. <br><br> WATERSTONE MORTGAGE CORPORATION, <br><br> Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**WATERSTONE MORTGAGE CORPORATION'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Waterstone Mortgage Corporation ("Waterstone") moves to dismiss Plaintiff Mutual of Omaha Mortgage Inc.'s ("Plaintiff" or "Mutual Mortgage") Complaint (Dkt. 1, the "Complaint") for failure to state a claim.

**INTRODUCTION**

The actions of non-party employees who resigned from Mutual Mortgage cannot be attributed to Waterstone, their new employer, without fact allegations indicating Waterstone's wrongdoing and involvement. Here the Complaint is riddled with allegations about the employees. But there are only sparse allegations regarding Waterstone itself, none of which support the eight causes of action Mutual Mortgage asserts, and reliance on conclusory statements does not suffice under the well-established standard of *Twombly*. The Complaint should be dismissed for that reason

alone. In addition, each of the claims fails for additional reasons, as Mutual Mortgage has not plead the elements of any of its eight claims.

## FACTUAL BACKGROUND

The Complaint contains 132 paragraphs, yet only a small fraction reference actions *by Waterstone*, and none are sufficient to show wrongdoing by Waterstone.

### 1. The Parties.

Waterstone and Mutual Mortgage are each a "residential mortgage lender" with multiple offices in Florida. (Compl. ¶¶5, 6.) Mutual Mortgage's branches in Florida included Tampa, Florida (the "Tampa Branch") and Ormond Beach, Florida (the "Daytona Branch"). (*Id.* ¶5.)

### 2. Fact Allegations Targeting Former Mutual Mortgage Employees.

The overwhelming majority of the allegations concern actions by non-party employees who left Mutual Mortgage to join Waterstone (referred to in the Complaint as the "Departed Employees"). While employed by Mutual Mortgage, the employees allegedly:

- Entered into written employment agreements that prohibited solicitation of other employees and the misuse or disclosure of confidential information or trade secrets, including personal borrower information. (*Id.* ¶¶ 17, 23-26.) The employment agreements also provided for a duty of loyalty to Mutual Mortgage. (*Id.* ¶22.)

- Conferred with one another about joining Waterstone while they were still employed by Mutual Mortgage. (*Id.* ¶¶28-32.)

- Sent "Confidential and Trade Secret Information" from their Mutual Mortgage email accounts to their personal emails and to a Waterstone employee. (*Id.* ¶¶37-42.)

- Sent borrower and prospective borrower information to their personal email accounts. (*Id.* ¶¶49, 51, 58, 60, 64).

- Transferred loans and borrowers to Waterstone and made misrepresentations, including, for example, on May 25, 2022, Lucas Van Dame (then a Mutual Mortgage employee) allegedly "sent an email to a prospective borrower stating that the borrower's loan was not approved by Mutual Mortgage, misrepresenting the basis for the underwriting decision, referring the borrower to Waterstone, and transferring the borrower's file to Waterstone." (*Id.* ¶53).

- Sent two emails to "Mike Smalley at Waterstone" that included a borrower and a prospective borrower's information. (*Id.* ¶¶48, 50).

- Discussed with one another a plan to transfer loans to Waterstone. (*Id.* ¶¶61, 62.)

### 3. Fact Allegations Targeting Waterstone.

In stark contrast to the array of fact allegations targeting the former Mutual Mortgage employees, there are only a few fact allegations involving Waterstone: First, Plaintiff contends Waterstone "regularly held video conferences with Mutual Mortgage employees on weekdays during business hours." (Compl. ¶27, 33.) Specifically, Plaintiff alleges a former Mutual Mortgage employee, Kyrstin Friebis,

3

had a video conference with Mutual Mortgage employees one week after Friebis joined Waterstone. (*Id.* ¶34.) Second, Mutual Mortgage alleges that, in February and March 2022, Dwayne Hutto (the branch manager of the Daytona Branch at the time) sent to Dustin Owen (Waterstone Regional VP – Southeast) a copy of Mutual Mortgage's Dec. 31, 2021 profit and loss statements for the Daytona Branch and Tampa Branch, and Owen stated he passed the statements on to Kevin Allen, Waterstone's Senior Vice President of Sales. (*Id.* ¶3, 37, 38.)  The profit and loss statement for the Tampa Branch had tabs such as "loan rates, fee structures, profit margins, [and] employee compensation data." (*Id.* ¶3.) Mutual Mortgage alleges the profit and loss statement is its "Confidential and Trade Secret Information." (*Id.* ¶3.) Finally, employees of Mutual Mortgage allegedly transferred certain loans to Waterstone. (*Id.* ¶¶57, 59.)

      Based on those allegations, Plaintiff asserts eight claims against Waterstone: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act, (2) false advertising and unfair competition under the federal Lanham Act, (3) misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), (4) tortious interference with the employment contracts, (5) aiding and abetting breach of fiduciary duty, (6) unjust enrichment, (7) unlawful acts under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (8) conversion.

      For the reasons below, Mutual Mortgage has failed to state any of its claims against Waterstone and the Complaint should be dismissed.

# ARGUMENT

## I. All claims should be dismissed because they are based on conclusory allegations unsupported by any facts involving Waterstone (Claims 1-8).

For all eight causes of action, the Complaint pleads virtually no facts in support and thus fails to meet the pleading standards required by *Twombly* and its progeny. To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though the Court must assume that well-pled allegations are true, conclusory allegations are "not entitled to th[at] assumption." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Gazzara v. Pulte Home Corp.*, 207 F.Supp.3d 1306, 1308 (M.D. Fla. 2016) ("Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

Without any factual support, the Complaint tries to cast Waterstone as the grand orchestrater of a "brazen and unlawful" scheme. (Compl. ¶1). Mutual Mortgage summarily alleges that Waterstone "encouraged and assisted the Departed Employees to solicit other employees to leave Mutual Mortgage for Waterstone, encouraged and assisted the Departed Employees to provide [Confidential and Trade Secret Information] to Waterstone, and encouraged and assisted the Departed Employees to breach their fiduciary duties to Mutual Mortgage by diverting customers to Waterstone while the Departed Employees were still licensed with and working for Mutual

5

Mortgage." (*Id*. ¶2.)

Yet Mutual Mortgage pleads no facts to support this false narrative. Nearly all fact allegations in the Complaint relate to the Departed Employees' alleged breach of their contractual obligations and fiduciary duties while still employed by Mutual Mortgage. Conspicuously absent, however, are allegations showing that Waterstone was involved in the Departed Employees' alleged wrongdoing. Indeed, the fact allegations involving actions by Waterstone are limited to the following: that Waterstone hosted video conferences during business hours with Mutual Mortgage employees (*id*. ¶33-34); that Waterstone received a profit and loss statement from an employee who later resigned from Mutual Mortgage to join Waterstone (*id*. ¶37-38); and that, after joining Waterstone, Chris Wolf received documents related to four borrowers from a Mutual Mortgage employee (*id*. ¶59). These allegations, even if true, do not show that Waterstone directed, encouraged, or assisted the Departed Employees to disclose Mutual Mortgage's Confidential Information or Trade Secrets, solicit its employees, or divert its customers.

The only other allegations involving Waterstone merely recite legal conclusions or the elements of the various causes of action without providing any factual details. However, as stated above, it is well established that "[c]onclusory allegations" and "legal conclusions masquerading as facts will not prevent dismissal." *Gazzara*, 207 F.Supp.3d at 1308. Because the Complaint is devoid of allegations that Waterstone directed or encouraged the Departed Employees' alleged wrongdoing, and instead rests merely on legal conclusions, all claims against Waterstone fail, and the

Complaint should be dismissed in its entirety.

## II. Plaintiff fails to adequately plead the trade secret misappropriation claims (Claims 1 and 3).

The Court should dismiss the trade secret misappropriation claims (Claims 1 and 3) for the additional reason that a plaintiff must "allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Group, Inc.*, 664 Fed. Appx. 844 (11th Cir. 2016); *Gordon Food Service, Inc. v. Price Armstrong, LLC*, 2021 WL 7448881 (M.D. Fla. 2021).

Under the federal and state laws, a "trade secret" includes "information" that (1) is subject to reasonable efforts to maintain its secrecy and (2) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. 1839(3); Fla. Stat. § 688.002(4).

To begin, Mutual Mortgage fails to give notice of the material it claims constituted a trade secret. The Complaint circularly defines "Confidential and Trade Secret Information" as "confidential and trade secret information belonging to Mutual Mortgage" (Compl. ¶2), leaving one to only guess the breadth of this definition. *See ProV International Inc. v. Lucca*, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) ("The conclusory assertion that the defendants misappropriated "proprietary practices" and "operating procedures" neither notifies the defendants about the

practices and procedures allegedly misappropriated nor demonstrates that the practices and procedures constitute a trade secret.")

And Plaintiff provides "but one example" of the Confidential and Trade Secret Information involving Waterstone – Profit and Loss Statements (Compl. ¶3, 37, 38), with one of the Profit and Loss Statements having additional tabs such as "loan rates, fee structures, profit margins, employee compensation data" (Compl. ¶3). But Mutual Mortgage pleads no facts to suggest that these are trade secrets – that is, information that is subject to efforts to maintain secrecy and derives economic value from not being generally known and that was not ascertainable through proper means. Loan rates, for instance, are publicly available to anyone shopping for home loans. Further, each employee who left Mutual Mortgage and joined Waterstone knows his or her compensation information and was free to share it with Waterstone.

Information cannot be assumed to be confidential, let alone a trade secret, without allegations by Mutual Mortgage establishing it as such. *See ProV International Inc. v. Lucca*, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (plaintiffs failed to allege the "identity of plaintiff's employees" constituted a trade secret when it plead no facts that the plaintiffs concealed the identity of the plaintiffs' employees or that the plaintiffs prohibited employees from disclosing the company for whom the employees worked). The trade secret misappropriation claims cannot proceed and should be dismissed.

### III. Plaintiff fails to adequately plead a claim under the Lanham Act (Claim 2).

There are also grounds for dismissal of the Lanham Act claim (Claim 2) beyond the failure to adequately plead supporting facts, as outlined in Section I above. To prevail on a false advertising claim, a plaintiff must establish that "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, customers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been – or is likely to be – injured as a result of the false advertising." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

First, Mutual Mortgage fails to allege any statements by Waterstone. Rather, it claims that *the Departed Employees* "made false and misleading statements to borrowers…" (Compl., ¶¶ 79 and 89). *See It Works Marketing, Inc. v. Melaleunca, Inc.*, 2021 WL 1650266, at *6-7 (M.D. Fla. Apr. 27, 2021) (dismissing false advertising claim because plaintiffs failed to allege any false statements or advertisements made by the defendant, Melaleuca, and did not allege that its distributors were "consumers").

Second, Mutual Mortgage fails to allege that any statement occurred in commercial advertising or promotion. "To be actionable under the Lanham Act, the speech at issue must be commercial in nature." *Futuristic Fences, Inc. v. Illusion Fence, Corp.*, 558 F.Supp.2d 1270, 1279 (S.D. Fla. 2008). "A false statement constitutes

commercial advertising or promotion where the statement is (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Misurg Intern., Inc. v. Frontier Devices, Inc.,* 2011 WL 1326863, at *4 (M.D. Fla. Apr. 6, 2011).

The only specific representation to a borrower identified in the Complaint is a May 25, 2022 email from Lucas Van Dame (at the time a Mutual Mortgage employee) to a single unnamed borrower. (Compl. ¶ 53). This is not enough to constitute dissemination to the public. *See Econ-O-Check Corporation v. StrategyCorps, LLC*, 2020 WL 10142252, at *2 (N.D. Ga. Mar. 23, 2020) ("Isolated misrepresentations to a competitor's current or prospective customers do not constitute false advertising under the Lanham Act; some dissemination to the relevant purchasing public is required.")

Third, Mutual Mortgage has not pled any facts showing that the alleged statements were likely to deceive customers. *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 2012 WL 33155, at *3 (M.D. Fla. Jan. 6, 2012) (dismissing false advertising claim where plaintiff plead bare assertion that statements were "likely to deceive a substantial portion of the targeted customers"). Fourth, Mutual Mortgage also has not alleged that the deception was likely to influence purchasing decisions. *Id.* (dismissing claim on

10

grounds that conclusory allegations were insufficient to plead material-deception element of Lanham Act false advertising claim).

Even if Mutual Mortgage intended to assert a claim for contributory false advertising (it did not), it fails to sufficiently plead a cause of action. In order to state a claim for contributory false advertising, a plaintiff must (1) "show that a third party in fact directly engaged in false advertising that injured the plaintiff" and (2) "allege that the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015). As described above, Mutual Mortgage has not adequately alleged that the employees engaged in false advertising. This alone renders a contributory claim subject to dismissal. Moreover, Plaintiff has not alleged that Waterstone knowingly induced the conduct or materially participated in it. *See TocMail Inc. v. Microsoft Corporation*, 2020 WL 9210739, at *6 (S.D. Fla. Nov. 6, 2020) (dismissing contributory false advertising claim where plaintiff failed to allege the requisite knowing or intentional participation by defendant). For all of these reasons, the Lanham Act claim should be dismissed.

### IV. Plaintiff fails to adequately plead its claim for tortious interference with contract (Claim 4).

Mutual Mortgage similarly failed to allege facts sufficient to establish the elements of the tortious interference with contract claim (Claim 4). To plead a claim for tortious interference, a plaintiff must allege (1) the existence of a business relationship; (2) defendant's knowledge of the relationship; (3) an intentional and

unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the interference. *Hodges v. Buzzeo,* 193 F.Supp.2d 1279, 1284 (M.D. Fla. 2002).

Here, there are no facts pled that are sufficient to satisfy the second or third elements, with Mutual Mortgage instead simply declaring "Waterstone was aware of the Employment Agreements" and that Waterstone "influenced, induced, or coerced" the employees to violate provisions of the employment agreements, without an ounce of factual support. (Compl. ¶¶103-107.) This Court has found mere recitals of the elements of a claim wholly insufficient. *See Furnari v. Nuance Communications, Inc.*, 2012 WL 13102331, at *5 (M.D. Fla. Feb. 27, 2012) (dismissing tortious interference claim where plaintiff merely recited elements of claim and failed to allege facts showing that defendant had express knowledge of the contract and took direct action to interfere); *see Dynasty Management Group, LLC v. Alsina*, 2017 WL 9360859, at *4 (S.D. Fla. Sept. 18, 2017) (dismissing tortious interference claim where plaintiff failed to allege sufficient factual detail regarding defendant's intentional interference or knowledge of contract). Because legal conclusions are inadequate to plead a claim, the tortious interference claim must be dismissed.

### V.     Plaintiff fails to adequately plead its claim of aiding and abetting a breach of fiduciary duty (Claim 5).

Mutual Mortgage does not plead facts to support its claim of aiding and abetting breach of fiduciary duty (Claim 5). To plead such a claim under Florida law, a plaintiff must state facts alleging (1) a fiduciary duty on the part of the primary wrongdoer; (2)

a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of wrongdoing. *See Arbitrajez Financieros, S.A. v. Bank of America, N.A.*, 605 Fed. Appx. 820, 824 (11th Cir. 2015).

Mutual Mortgage plead no facts sufficient to satisfy the third or fourth elements. Rather, the most Mutual Mortgage alleges is, here again, in conclusory fashion, that "Waterstone's actions substantially assisted and encouraged the Departed Employees to breach their fiduciary duties owed to Mutual Mortgage." (Compl. ¶112.)

The mere declaratory statement is not enough to withstand a motion to dismiss. *See Turnberry Village North Tower Condominium Association, Inc. v. Turnberry Village South Condominium Association, Inc.*, 224 So.3d 266, 267 (Fla. 3d DCA 2017) (affirming dismissal of aiding and abetting breach of fiduciary duty claim where complaint "contained a mechanical recitation of the elements of the cause of action, and, in particular, only conclusory allegations that [defendant] substantially assisted or encouraged the wrongdoing."); *see also Gault v. SRI Surgical Exp., Inc.*, 2012 WL 5199581, at *5 (M.D. Fla. Oct. 22, 2012) (dismissing aiding and abetting breach of fiduciary duty claim where plaintiff "failed to allege sufficient facts to establish that [defendant] substantially assisted in or encouraged the alleged breach of fiduciary duty" and merely asserted conclusory allegations). The Court should dismiss Claim 5 accordingly.

## VI. Plaintiff's unjust enrichment claim (Claim 6) fails as a matter of law.

Plaintiff's unjust enrichment claim (Claim 6) fails for three reasons. First, it is wholly reliant on impermissible legal conclusions and recitation of the claim elements.

Second, Mutual Mortgage has not alleged that it directly conferred a benefit on Waterstone. To state a claim for unjust enrichment, "the benefit conferred on the defendant must be a direct benefit." *Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x. 825, 830 (11th Cir. 2017). Rather than alleging a direct benefit, Mutual Mortgage alleges *the employees* diverted the loans, which in turn benefitted Waterstone. (Compl. ¶¶115, 117.) At best, Mutual Mortgage has alleged an indirect benefit on Waterstone, which fails to support a claim for unjust enrichment. *Tilton v. Playboy Entertainment Group, Inc.*, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007) ("The benefit conferred must be a direct benefit. An indirect benefit is not sufficient to support a claim for unjust enrichment.").

Third, when the unjust enrichment claim arises from a wrong, the right of recovery stems from that wrong, rather than an unjust enrichment. *Tilton v. Playboy Ent. Grp., Inc.*, No. 8:05CV692 T30TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007) (citing *State v. Tenet Health Care Corp.*, 420 F.Supp.2d 1288, 1309 (S.D.Fla.2005)); *Taxinet, Corp. v. Leon*, 2018 WL 3405243, at *7 (S.D. Fla. July 12, 2018). Here, the unjust enrichment claim is predicated on the allegedly wrongful act of employees diverting loans from Mutual Mortgage to Waterstone, with Waterstone allegedly inducing them to do so. (Compl. ¶115.) Thus, Mutual Mortgage's right of

recovery, if any, would arise under the various theories asserted that involve the former employees' or Waterstone's alleged wrongdoing. As a matter of law, Mutual Mortgage may not simultaneously pursue an additional claim for unjust enrichment.

### VII. The Florida Deceptive and Unfair Trade Practices Act claim (Claim 7) and conversion claim (Claim 8) are preempted in part by the Florida Uniform Trade Secrets Act.

The FDUTPA and conversion claims (Claims 7 and 8) also fail as matter of law because they are preempted by the Florida Trade Secrets Act. Specifically, the Florida Uniform Trade Secrets Act preempts "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.088(1). As a general rule, "other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007).

Here, in support of both the FDUTPA claim and the conversion claim, Mutual Mortgage alleges that Waterstone "misappropriated Confidential and Trade Secret Information." (Compl. ¶122, 129.) As such, those claims are based on the same underlying fact allegations as the Uniform Trade Secrets Act claim and, therefore, are preempted. In fact, Florida courts have recently found Uniform Trade Secrets Act preemption of the same claims at issue here. *See Sentry Data Systems, Inc. v. CVS Health*, 361 F.Supp.3d 1279, 1294-95 (S.D. Fla. 2018) (holding that the Florida Uniform Trade Secrets Act preempts Florida's Deceptive and Unfair Trade Practices Act claim and common law conversion claim because each are based on the misappropriation of trade secrets); *see also Taubenfeld v. Lasko*, 324 So.3d 529, 543 (Fla. 4th DCA 2021) ("to

15

the extent the conversion claim encompasses a claim for misappropriation of trade secrets, such a claim is preempted by the FUTSA"). The Court should likewise hold that Claims 7 and 8 are preempted and, therefore, dismissed.

### VIII. Plaintiff fails to adequately plead its Florida Deceptive and Unfair Trade Practices Act claim (Claim 7).

The FDUTPA claim must also be dismissed due to Mutual Mortgage's failure to allege consumer harm. "A plaintiff alleging a violation of FDUTPA must allege that the conduct in question is likely to cause actual harm to the end consumer." *Car Body Lab Inc. v. Lithia Motors, Inc.*, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021). Here, Plaintiff makes the conclusory allegation that it suffered harm as a result of Waterstone's alleged unfair competition (Compl. ¶126-127), but fails to make any allegations that the *consumers* suffered (or are likely to suffer) harm as a result of Waterstone's alleged conduct. *See CEMEX Construction Materials Florida, LLC v. Armstrong World Industries, Inc.*, 2018 WL 905752, at *16 (M.D. Fla. Feb. 15, 2018) (dismissing FDUTPA claim where plaintiff failed to allege facts showing that consumers had suffered damages or were likely to suffer damages). Importantly, allegations of "customer confusion" alone are insufficient. *Car Body Lab*, 2021 WL 2658693, at *3. Accordingly, for this additional reason, Plaintiff's FDUTPA claim must be dismissed.

### IX. The remainder of the conversion claim (Claim 8) fails as a matter of law.

What is left of the conversion claim (Claim 8) following preemption does not prevent dismissal. The only remaining allegations other than those that mirror the

grounds for the Uniform Trade Secrets Act claim (and are preempted accordingly) are that Waterstone, through the Departed Employees, "unlawfully diverted *borrowers and loans* from Mutual Mortgage." (Compl. ¶129 (emphasis added). However, the meaning of "property" under the doctrine of conversion does not extend to borrower relationships.

"Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007). "[T]he elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Creative Entertainment*, LLC, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013); *Salerno v. Florida Southern College*, 488 F.Supp.3d 1211 (M.D. Fla. 2020) (dismissing a conversion claim because the "property at issue, in-person learning, is intangible and not the proper subject of a conversion claim").

"Courts have generally been hesitant to extend common law actions for conversion further than to claims for the misappropriation of a tangible chattel or the misappropriation of intangible rights which are identified or merged in a document or other tangible chattel." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143-44 (M.D. Fla. 2007). In *Taubenfeld v. Lasko*, 324 So.3d 529, 543 (Fla. 4th DCA 2021), the court dismissed the conversion claim as to "business or contractual relationships" including business and contractual relationships with venues.

17

Just like the *Taubenfeld* case, Mutual Mortgage's "borrowers and loans" are intangible "business or contractual relationships." These relationships do not constitute tangible "property," a key element of a conversion claim under Florida law. Thus, the remainder of the conversion claim fails as a matter of law and must be dismissed.

## CONCLUSION

For all of these reasons, Waterstone respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel has conferred with Plaintiff's counsel and certifies that Plaintiff opposes the relief sought in this motion.

Respectfully Submitted,

*/s/ Carolina Y. Blanco*
Scott A. McLaren (FBN: 414816)
scott.mclaren@hwhlaw.com
Carolina Y. Blanco (FBN: 0098878)
Carolina.blanco@hwhlaw.com
jaime.schill@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)

Maria Kreiter (admitted PHV)
mkreiter@gklaw.com
Annie L. Eiden (admitted PHV)
aeiden@gklaw.com
GODFREY KAHN S.C.

833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
(414) 273-5198 (Facsimile)

*Attorneys for Defendant Waterstone Mortgage Corporation*

17293810v1