**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) ) | Civil Action No. 22-CV-01660 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WATERSTONE MORTGAGE CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF MUTUAL OF OMAHA MORTGAGE, INC.'S OPPOSITION TO
DEFENDANT WATERSTONE MORTGAGE CORPORATION'S MOTION
TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................. 3

ARGUMENT ....................................................................................... 7

    I.  The Motion Should Be Denied Under Well-Established Legal Standards ... 7

        A.  The Court Must Assume the Truth of the Allegations in the Complaint, Construe Them In the Light Most Favorable to Plaintiff, and Draw All Reasonable Inferences in Plaintiff's Favor ..................... 7

        B.  There Is No Heightened Pleading Standard for Misappropriation of Trade Secrets Claims ......................................................... 8

    II.  The Complaint Pleads Sufficient Facts to Demonstrate that WaterStone Was An Active Participant In the Tortious Conduct At Issue ........................ 9

    III.  Plaintiff Has Alleged Sufficient Facts to Give Defendant Notice of the Trade Secrets At Issue .................................................................. 11

    IV.  Plaintiff Has Stated a Claim Under the Lanham Act ............................ 14

    V.  Plaintiff's Claims for Conversion and Under the FDUTPA Are Not Preempted Because They Are Based on Different Underlying Facts ............. 15

    VI.  Defendant's Remaining Arguments Are Unavailing ............................. 16

        A.  Plaintiff Has Stated a Claim for Tortious Interference .................. 16

        B.  Plaintiff Has Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty ................................................................. 17

        C.  Plaintiff Has Stated a Claim for Unjust Enrichment ..................... 18

        D.  Plaintiff Has Stated a Claim Under the FDUTPA ....................... 18

CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

Cases

*Advanced Concept Innovations, LLC v. Kimberly-Clark Glob. Sales, LLC*, No. 8:21-CV-1493-MSS-CPT, 2021 WL 8084310, at *2 (M.D. Fla. Oct. 29, 2021)....................7

*All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC*, No. 21-CV-62221, 2022 WL 2340997, at *11 (S.D. Fla. Apr. 8, 2022) ............................................................11

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) ..............................................................................................................16

*Balearia Caribbean, Corp. v. Calvo*, No. 16-23300-CIV, 2017 WL 8780944, at *6 (S.D. Fla. Aug. 3, 2017) ...........................................................................................................11

*Berkley Vacation Resorts, Inc. v. Castle L. Grp., P.C.*, No. 18-CV-60309, 2019 WL 5213310, at *6 (S.D. Fla. Aug. 15, 2019)...........................................................................13

*Developmental Techs., LLC v. Mitsui Chemicals, Inc.*, No. 8:18-CV-1582-T-27TGW, 2019 WL 1598808, at *3 (M.D. Fla. Apr. 15, 2019) .............................................12

*Howmedica Osteonics Corp. v. Alphatec Spine, Inc.*, No. 3:21-CV-789-BJD-PDB, 2022 WL 3136837, at *7 (M.D. Fla. June 17, 2022) ......................................................8

Lanham Act, 15 U.S.C. § 1125(a) ............................................................................12

*Palm Springs Mile Assocs., Ltd. v. T-Mobile USA, Inc.*, No. 20-22841-CIV, 2020 WL 7711687, at *4 (S.D. Fla. Dec. 29, 2020)............................................................17

*Perma-Liner Indus., LLC v. D'Hulster*, No. 8:21-CV-715-CEH-TGW, 2022 WL 772736, at *4 (M.D. Fla. Feb. 9, 2022) ................................................................................8

*Real Est. Indus. Sols., LLC v. Concepts in Data Mgmt. U.S., Inc.*, No. 6:10-CV-1045-ORL-GJK, 2011 WL 13141044, at *5 (M.D. Fla. Oct. 4, 2011). ...........................8

*RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1352 (M.D. Fla. 2019) ....................................................................................................................................11

*Spigot, Inc. v. Hoggatt*, No. 218CV764FTM29NPM, 2020 WL 1955360, at *6 (M.D. Fla. Apr. 23, 2020) .........................................................................................................8

*United States v. Lee Mem'l Health Sys.*, No. 2:14-CV-437-FTM-38CM, 2018 WL 5014534, at *6 (M.D. Fla. Oct. 16, 2018)............................................................11

*VSI Sales, LLC v. DiSimone*, No. 20-61119-CIV, 2022 WL 309375, at *12 (S.D. Fla. Feb. 1, 2022) ....................................................................................................16

*Whertec, Inc. v. Salmon*, No. 3:20-CV-1254-BJD-PDB, 2021 WL 3555676, at *4 (M.D. Fla. Apr. 28, 2021) ...........................................................................................9

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual Mortgage"), by and through its undersigned counsel, submits this opposition to defendant WaterStone Mortgage Corporation's ("Defendant" or "WaterStone") motion to dismiss the complaint ("Complaint") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court should deny Defendant's motion in its entirety.

## INTRODUCTION

Plaintiff commenced this action in response to Defendant's unlawful scheme to solicit and hire over sixty of Plaintiff's employees (the "Departed Employees"). In addition to poaching Plaintiff's employees – causing Plaintiff to have to shutter entirely three branch offices – Defendant also encouraged and assisted the Departed Employees to solicit other employees to leave Plaintiff for Defendant, encouraged and assisted the Departed Employees to provide confidential and trade secret information belonging to Plaintiff ("Confidential and Trade Secret Information") to Defendant, and encouraged and assisted the Departed Employees to breach their fiduciary duties to Plaintiff by diverting customers to Defendant while the Departed Employees were still licensed with and working for Plaintiff.

The Complaint cites substantial evidence – including dozens of emails and other electronic evidence – that unequivocally demonstrates that Defendant and the Departed Employees engaged in an unlawful scheme designed to decimate Plaintiff's business. The Complaint also details evidence suggesting that the Departed

Employees appear to have communicated with Defendant principally using the Departed Employees' personal email accounts. *See* Compl. ¶¶ 12-16. At this pre-discovery stage of the case, Plaintiff does not yet have access either to the Departed Employees' personal email accounts or Defendant's email accounts. Moreover, Plaintiff's attempt to gather information has been hampered by the fact that the Departed Employees appear to have taken steps to cover their tracks, as it were, by not leaving any electronic evidence of their misconduct ("just trying to keep myself out of emails"). *See id.* ¶ 12.

Defendant moves to dismiss, principally on the ground that the Complaint fails to allege involvement by Defendant in the scheme at issue in this case. As discussed in detail below, the Court should reject this argument, because the Complaint contains substantial evidence that Defendant was no mere bystander to the tortious conduct at issue – as Defendant would have this Court believe – but instead was an active participant. Moreover, on a motion to dismiss for failure to state a claim, the Court is required not only to accept as true all the factual allegations in the Complaint, but also to draw all reasonable inferences in Plaintiff's favor. At a minimum, the evidence gives rise to a reasonable inference that Defendant substantially encouraged and assisted in the conduct at issue.

Defendant's remaining arguments are unavailing and provide no basis for dismissal of this action.

2

## STATEMENT OF RELEVANT FACTS

In early 2022 Defendant began to carry out an unlawful scheme to damage Plaintiff's residential mortgage lending business by poaching the Departed Employees and working with the Departed Employees to engage in tortious conduct. Contrary to Defendant's arguments, it was no mere bystander with respect to the conduct giving rise to Plaintiff's claims, but an active participant. The Complaint is replete not only with direct evidence of Defendant's involvement in the unlawful scheme, but also contains facts sufficient for the Court to infer that Defendant encouraged and assisted various tortious conduct by the Departed Employees.

First, WaterStone encouraged and assisted the Departed Employees to violate the non-solicitation provision of the Departed Employees' employment agreements. *See* Compl. ¶ 26. Documentary evidence cited in the Complaint demonstrates that, prior to their departure from Mutual Mortgage, many of the Departed Employees held meetings with co-workers to discuss their impending departure from Mutual Mortgage to WaterStone. *See id.* ¶¶ 27-34. The Complaint also includes evidence of at least one videoconference among a WaterStone employee and several Mutual Mortgage employees. *See id.* ¶ 34. The Departed Employees were careful not to leave written records of what they discussed during these meetings, having been advised by their supervisor at Mutual Mortgage "not [to] discuss what we talked about on today's call with anyone outside of your families. We are still finalizing details." *See id.* ¶ 29. The documentary evidence showing that meetings between WaterStone and Mutual

3

Mortgage employees took place, and that these and other employees subsequently left Mutual Mortgage for WaterStone, coupled with the Departed Employees' efforts to cover their tracks, together give rise to a reasonable inference that WaterStone encouraged and assisted the Departed Employees in violating their contractual non-solicitation obligations.

Second, WaterStone encouraged and assisted the Departed Employees to send WaterStone Confidential and Trade Secret Information that the Departed Employees were contractually prohibited from disclosing. *See id.* ¶¶ 21-25. The Complaint cites multiple instances in which WaterStone employees acknowledge receipt and use of Confidential and Trade Secret Information. For example, on March 3, 2022, a Mutual Mortgage employee named Dwayne Hutto sent an email from his work email address to a WaterStone employee named Dustin Owen attaching a spreadsheet containing 12 tabs with thousands of rows of data and information dating from 2016 to the end of 2021, including:

- detailed profit and loss data, including profit margins and profit sharing among different branches.

- detailed loan production revenue information, including origination and processing fees, gains and losses on sales of loans, loan discount points, mortgage pair off fees, and lender paid fees.

- Employee compensation data, including each employee's salary, bonus, commissions, and 401k contributions.

*See id.* ¶¶ 3, 38-39.  Upon receipt of what was self-evidently Confidential and Trade Secret Information, WaterStone thanked Hutto for sending it, stated that the spreadsheet had been forwarded to senior WaterStone executives, and proposed a meeting with Hutto and another Mutual Mortgage employee the following week to discuss.  *See id*.  The Complaint cites other instances in which WaterStone acknowledged receipt of Confidential and Trade Secret Information.  *See id.* ¶ 37.

The Complaint also cites multiple emails in which the Departed Employees sent Confidential and Trade Secret Information to their personal email addresses and, upon information and belief, subsequently sent such Confidential and Trade Secret Information to WaterStone.[1]  For example, on June 10, 2022, Fred Stalls used his Mutual Mortgage email address to forward to his personal email address approximately 19 confidential documents, including customer address lists, lists of closed loans, lists of prospective borrowers, listing agent information, templates for communications, policy and procedure documents, and other confidential documents. *See* Compl. ¶ 41.  One of these attachments was a spreadsheet, entitled "Customer address list" that contained not only the addresses of Mutual Mortgage customers, but 22 columns of detailed data about the customers, their loans, and the loan terms.  *See id*.  The Complaint details other instances where Departed Employees used their personal email addresses to transmit Confidential and Trade Secret Information.  *See*

---

[1] As noted above, discovery in this case has not yet commenced, and thus Plaintiff does not yet have access to certain critical sources of relevant information.

*id.* ¶ 40 (Departed Employee sent documents containing policies and procedures of Mutual Mortgage on Mutual Mortgage letterhead, templates for borrower communications, forms, work flows, and other confidential documents); *id.* ¶ 42 (Departed Employee sent approximately 50 confidential documents, including customer pipeline lists, balance sheets, templates for communications with borrowers, policies and procedures, and other confidential documents.).

Third, WaterStone encouraged and assisted the Departed Employees to breach their fiduciary duties to Mutual Mortgage by diverting customers to WaterStone while the Departed Employees were still licensed with and working for Mutual Mortgage. For example, on June 8, 2022, Fred Stalls sent an email to his colleague Cody Lamb asking Lamb to forward to WaterStone employee Chris Wolf documents related to four borrowers. Stalls copied Wolf's WaterStone email address on the email. On June 9, 2022, Wolf responded that he had received all five of the emails sent by Lamb with borrower information. Stalls and Wolf subsequently engaged in multiple communications regarding the terms of the borrower's loan, with Stalls using his Mutual Mortgage email address to communicate with Wolf at his WaterStone email address. Stalls appears to have transferred this borrower's loan to WaterStone, as evidenced by a June 14, 2022 letter Stalls printed and signed on Mutual Mortgage letterhead stating that Mutual Mortgage was transferring ownership of the borrower's appraisal report to WaterStone. *See* Compl. ¶ 59.

6

## ARGUMENT

### I.     The Motion Should Be Denied Under Well-Established Legal Standards

Defendant's motion to dismiss should be denied based on well-established legal

standards applicable to a motion to dismiss under Rule 12(b)(6).

#### A. The Court Must Assume the Truth of the Allegations in the Complaint, Construe Them in the Light Most Favorable to Plaintiff, and Draw All Reasonable Inferences in Plaintiff's Favor

The standard on a motion to dismiss for failure to state a claim upon which

relief can be granted is a familiar one:

> The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the grounds for his entitlement to relief, and a formulaic recitation of the elements of a cause of action will not do. In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. However, the court should not assume that the plaintiff can prove facts that were not alleged. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.

*Advanced Concept Innovations, LLC v. Kimberly-Clark Glob. Sales, LLC*, No. 8:21-CV-

1493-MSS-CPT, 2021 WL 8084310, at *2 (M.D. Fla. Oct. 29, 2021).[2]

---

[2] Unless otherwise indicated, all quotations from cases in this opposition omit any internal citations and quotation marks.

## B. There Is No Heightened Pleading Standard for Misappropriation of Trade Secrets Claims

The pleading standard for a misappropriation of trade secrets claim is governed by Rule 8's requirement for a short and plain statement of the claim. *See Real Est. Indus. Sols., LLC v. Concepts in Data Mgmt. U.S., Inc.*, No. 6:10-CV-1045-ORL-GJK, 2011 WL 13141044, at *5 (M.D. Fla. Oct. 4, 2011). As one court explained:

> [A]t the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret. [w]hether the[se] trade secrets ... are actually secret is a matter for the finder of fact.

*Perma-Liner Indus., LLC v. D'Hulster*, No. 8:21-CV-715-CEH-TGW, 2022 WL 772736, at *4 (M.D. Fla. Feb. 9, 2022). Whether the materials claimed by Plaintiff constitute trade secrets is an issue of fact for the jury. *See Howmedica Osteonics Corp. v. Alphatec Spine, Inc.*, No. 3:21-CV-789-BJD-PDB, 2022 WL 3136837, at *7 (M.D. Fla. June 17, 2022) ("Whether an item is a trade secret is normally resolved by a fact finder after full presentation of evidence from each side."); *Spigot, Inc. v. Hoggatt*, No. 218CV764FTM29NPM, 2020 WL 1955360, at *6 (M.D. Fla. Apr. 23, 2020) ("While defendants dispute the accuracy of these allegations, these factual disputes are for another day. Whether information constitutes a trade secret is a question of fact, and a motion to dismiss is not the vehicle to resolve questions of fact.").

**II.    The Complaint Pleads Sufficient Facts to Demonstrate that WaterStone Was an Active Participant in the Tortious Conduct at Issue**

Defendant's principal argument is that the Complaint should be dismissed because Plaintiff has failed to plead facts establishing that Defendant, as opposed to the Departed Employees, was involved in the tortious conduct described in the Complaint.  *See* Br. at 5-7.  Defendant's argument is wrong, both factually and legally.

First, Defendant's argument is factually wrong because it ignores evidence in the Complaint, discussed above, that demonstrates WaterStone's direct involvement. For example, when a Mutual Mortgage employee improperly sent WaterStone a document containing Confidential and Trade Secret Information, WaterStone distributed it to senior executives, thanked the Mutual Mortgage employee for sending it, and proposed a meeting to discuss it.  *See* Compl. ¶¶ 3, 38-39.  These are not the actions of an innocent bystander, but of an active participant in the tortious conduct. The Complaint contains multiple examples similarly establishing Defendant's active role.

Second, Defendant is legally wrong because it misstates the applicable legal standard.  Specifically, Defendant ignores the well-established legal standard that, at the pleading stage, a plaintiff can assert a trade secret misappropriation claim by inference.  *See Whertec, Inc. v. Salmon*, No. 3:20-CV-1254-BJD-PDB, 2021 WL 3555676, at *4 (M.D. Fla. Apr. 28, 2021) (denying motion to dismiss where "[t]hough Defendants present plausible explanations for their actions, it does not alter the fact that [plaintiff] has alleged facts which facially and inferentially establish

9

misappropriation of trade secrets claims"). Defendant ignores allegations in the Complaint that give rise to an inference that Defendant encouraged and substantially assisted the tortious conduct.

At this stage of the proceeding, where discovery has not yet commenced and where Plaintiff does not have access either to Defendant's emails or to the Departed Employees' personal emails, the allegations discussed above are more than sufficient to permit Plaintiff's case to proceed.

### III.  Plaintiff Has Alleged Sufficient Facts to Give Defendant Notice of the Trade Secrets at Issue

Defendant argues that Plaintiff has failed to adequately allege the trade secrets at issue in this case. As noted above, courts have consistently held that a plaintiff asserting a misappropriation of trade secrets claim bears a minimal pleading burden in describing the trade secrets. Here, the Complaint sets forth in detail the types of materials over which Plaintiff claims trade secret protection, including the following:

- profit and loss data, including profit margins and profit sharing among different branches;

- loan production revenue information, including origination and processing fees, gains and losses on sales of loans, loan discount points, mortgage pair off fees, and lender paid fees;

- customer pipeline lists;

- customer address lists with 22 columns of detailed data about the customers, their loans, and the loan terms, lists of closed loans, lists of prospective borrowers, and listing agent information;

- borrower documents and information, including sensitive financial information, Social Security Numbers, paystubs, and tax returns;

- employee compensation data, including each employee's salary, bonus, commissions, and 401k contributions; and

- Mutual Mortgage policies and procedures on Mutual Mortgage letterhead, templates for borrower communications, forms, and work flows.

*See* Compl. ¶¶ 3, 37, 38, 40, 41, 42. Courts have consistently held that these types of information can be protected as trade secrets. *See, e.g., RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1352 (M.D. Fla. 2019) (denying motion to dismiss misappropriation of trade secrets claims and holding that customer lists can constitute trade secrets); *All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC*, No. 21-CV-62221, 2022 WL 2340997, at *11 (S.D. Fla. Apr. 8, 2022) (holding that customer lists and billing information can constitute trade secrets); *Balearia Caribbean, Corp. v. Calvo*, No. 16-23300-CIV, 2017 WL 8780944, at *6 (S.D. Fla. Aug. 3, 2017) (holding that economic performance reports, sales reports, and profit and loss statements can constitute trade secrets); *United States v. Lee Mem'l Health Sys.*, No. 2:14-

11

CV-437-FTM-38CM, 2018 WL 5014534, at *6 (M.D. Fla. Oct. 16, 2018) (holding that detailed employee compensation data can constitute trade secrets).

The Complaint further alleges that Plaintiff derives independent economic value from the Confidential and Trade Secret Information, the Confidential and Trade Secret Information is not generally known or public, and Mutual Mortgage took reasonable measures to maintain and protect the secret nature of the Confidential and Trade Secret Information, including by contractually requiring its employees to maintain the secrecy and confidentiality of Confidential and Trade Secret Information. *See* Compl. ¶¶ 23-25, 67. Thus, at the pleading stage, Plaintiff has satisfied its burden on the misappropriation of trade secrets claims. *See Developmental Techs., LLC v. Mitsui Chemicals, Inc.*, No. 8:18-CV-1582-T-27TGW, 2019 WL 1598808, at *3 (M.D. Fla. Apr. 15, 2019) (denying motion to dismiss misappropriation of trade secrets claim where plaintiff alleged that it "took reasonable steps and efforts" to protect its trade secrets).

### IV.    Plaintiff Has Stated a Claim Under the Lanham Act

To prevail on a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must satisfy the following elements:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement.

*Berkley Vacation Resorts, Inc. v. Castle L. Grp., P.C.*, No. 18-CV-60309, 2019 WL 5213310, at *6 (S.D. Fla. Aug. 15, 2019).  Plaintiff alleges that Defendant violated the Lanham Act by encouraging and assisting the Departed Employees to make false and misleading statements to borrowers in marketing communications.  *See* Compl. ¶¶ 77-92.  Specifically, while the Departed Employees held themselves out in advertisements and in communications with consumers as employees of Mutual Mortgage, the Departed Employees were actually originating, processing, underwriting, approving, pricing, and funding consumer loans with the intention of diverting them – and in fact, did so divert them – to WaterStone, a direct competitor of Mutual Mortgage.  Consumers who thought they were doing business with Mutual Mortgage were confused when it turned out they were doing business with WaterStone.  *See* Compl. ¶¶ 86, 90.  WaterStone substantially encouraged and assisted the Departed Employees in making these false and misleading representations, as detailed above and in the Complaint.

Defendant's arguments for dismissal of this claim are unavailing.  First, Defendant argues that the Complaint lacks evidence of Defendant's involvement in the Lanham Act violation, but as set forth above Plaintiff has alleged facts sufficient to establish that Defendant contributed to the false and misleading statements made by Departed Employees to borrowers by inducing such statements and participating in the scheme in which such statements were made.  Moreover, at this stage of the proceeding where Plaintiff necessarily lacks access to the sources of relevant

communications – specifically, Defendant's email system and the Individual Defendants' personal email accounts – Plaintiff should not be penalized for failing to have such access.  Plaintiff has thus satisfied its pleading burden.  *See Berkley Vacation Resorts*, 2019 WL 5213310, at \*7 (denying motion to dismiss a contributory false advertising claim under the Lanham Act where the plaintiff alleged that the defendant induced and participated in the unlawful conduct).

Second, Defendant argues that the false and misleading representations were not made in a commercial advertising or promotion, but this argument defies common sense.  These representations were made in communications to consumers the sole purpose of which was to induce the consumers to obtain a loan, and these communications were widely disseminated.  In addition to emails among borrowers and the Departed Employees (Compl. ¶¶ 53-54, 60), the Complaint also details conversations in which Departed Employees misrepresented to borrowers on whose behalf the Departed Employees were acting (Compl. ¶¶ 52, 57, 59, 62, 63), details at least one instance in which a Departed Employee attended open houses and communicated with borrowers (Compl. ¶ 61), and notes that the false and misleading representation that the Departed Employees worked for Mutual Mortgage when they in fact worked for WaterStone was disseminated via the NMLS website as well as emails (Compl. ¶ 85, 90).  Thus, WaterStone is wrong when it argues that Plaintiff relies on a single email to establish dissemination, and the cases WaterStone cites are

14

inapposite to the present Complaint, where Plaintiff has pled widespread dissemination.

Finally, Defendant argues that Plaintiff has failed to allege consumer confusion, but the Complaint plainly does so. *See* Compl. ¶ 90 ("By the conduct described herein, WaterStone caused confusion among consumers as to the entity that was offering them a mortgage loan, and WaterStone did so willfully and maliciously. Consumers who applied for loans with Mutual Mortgage based on, among other things, Mutual Mortgage's NMLS license number, were diverted to WaterStone without the consumers' consent.").

## V. Plaintiff's Claims for Conversion and Under the FDUTPA Are Not Preempted Because They Are Based on Different Underlying Facts

Defendant argues that Florida's Uniform Trade Secrets Act ("FUTSA") preempts claims for conversion and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). It is well-established, however, that the FUTSA does not preempt claims based on different underlying factual allegations, and the Complaint is not limited to misappropriation of trade secrets. The Complaint also alleges that WaterStone encouraged and assisted the Departed Employees to solicit other employees to leave Mutual Mortgage for WaterStone, and encouraged and assisted the Departed Employees to breach their fiduciary duties to Mutual Mortgage by diverting customers to WaterStone while the Departed Employees were still licensed with and working for Mutual Mortgage. *See, e.g.*, Compl. ¶ 2. Thus, because Plaintiff's other claims are not based on misappropriation of trade secrets, they are not

15

preempted by FUTSA. *See Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) (denying motion to dismiss FDUTPA claim due to preemption by FUTSA where the claim was "materially distinct" from the misappropriation of trade secrets claim).

As for Defendant's argument that the conversion claim should be dismissed because the property at issue is intangible, Plaintiff's argument is that borrower loans were wrongfully converted. Even if the Court held that such loans constituted intangible property, contrary to Defendant's suggestion, there is no absolute bar on intangible property serving as the basis for a conversion claim. *See, e.g., VSI Sales, LLC v. DiSimone*, No. 20-61119-CIV, 2022 WL 309375, at *12 (S.D. Fla. Feb. 1, 2022) ("'Actions for conversion may properly be brought for a wrongful taking over of intangible interests in a business venture.'") (quoting *In re Corbin*, 391 So. 2d 731, 733 (Fla. Dist. Ct. App. 1980)).

## VI.    Defendant's Remaining Arguments Are Unavailing

### A.    Plaintiff Has Stated a Claim for Tortious Interference

To prevail on a claim of tortious interference under Florida law, a plaintiff must demonstrate: "(1) existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the contract's breach; (4) absence of any justification or privilege; and (5) damages resulting from the breach." *See Berkley Vacation Resorts*, 2019 WL 5213310, at *4 (internal citation omitted). Here, Plaintiff has alleged that its employment agreements with the Departed Employees contained

provisions prohibiting them from, among other things, soliciting other employees, disclosing Confidential and Trade Secret Information, or acting disloyally to Plaintiff, that Defendant was aware of these provisions, and Defendant encouraged and assisted breaches of these provisions. *See* Compl. ¶¶ 102-08.

Defendant argues that Plaintiff has failed to allege that Defendant knew about the employment agreements or that it had any role in their breach. Again, Defendant simply ignores the substantial evidence set forth in the Complaint establishing Defendant's active participation, and the procedural posture of this case, where Plaintiff does not yet have access to critical sources of information. On a motion to dismiss, the facts contained in the Complaint are reasonable to infer that Defendant was aware of the employment agreements and that Defendant encouraged and assisted the Departed Employees to breach the employment agreements. *See Palm Springs Mile Assocs., Ltd. v. T-Mobile USA, Inc.*, No. 20-22841-CIV, 2020 WL 7711687, at *4 (S.D. Fla. Dec. 29, 2020) (denying motion to dismiss tortious interference claim and noting a plaintiff's minimal pleading burden vis-à-vis the knowledge and interference elements). Accordingly, there is no basis to dismiss the claim.

### B.    Plaintiff Has Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty

WaterStone argues that Mutual Mortgage has failed to allege facts sufficient to show that WaterStone had knowledge of the Departed Employees' breaches of their fiduciary duties, and that WaterStone encouraged or assisted those breaches. *See* Br.

at 12-13. As set forth above, the Complaint contains substantial evidence from which the Court can infer WaterStone's encouragement and assistance.

### C.    Plaintiff Has Stated a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment is based upon Defendant's unlawful actions in diverting borrowers from Plaintiff to Defendant, despite the substantial time, money, and resources Plaintiff invested in doing business with these borrowers. *See* Compl. ¶¶ 115-20. Defendant argues that the business it received from borrowers was not a direct benefit because it was the Departed Employees, and not Defendant, that diverted the loans. Defendant is wrong, factually and legally. Defendant's argument once again ignores the facts establishing that Defendant was an active participant in the scheme, and the mere fact that the Departed Employees were part of the scheme does not somehow insulate Defendant from liability for unjust enrichment. Legally, Defendant is wrong because Defendant, not the Departed Employees, was the one that entered into transactions with the borrowers (e.g., making loans to them), and thus Defendant received a direct benefit.

### D.    Plaintiff Has Stated a Claim Under the FDUTPA

Defendant also moves to dismiss Plaintiff's FDUTPA claim on the ground that the Complaint fails to allege that consumers were harmed by Defendant's misconduct. *See* Br. at 16. Here, Plaintiff has alleged that Defendant encouraged and substantially assisted the Departed Employees in diverting consumers looking to do business with Plaintiff to Defendant. In arguing that Plaintiff fails to plead consumer harm,

Defendant once again utterly ignores the Complaint. For example, the Complaint includes an allegation that one of the Departed Employees, prior to leaving Plaintiff for Defendant, sent an email to a prospective borrower stating that the borrower's loan was not approved by Plaintiff, misrepresenting the basis for the underwriting decision, referring the borrower to Defendant, and transferring the borrower's file to Defendant without the borrower's consent. *See* Compl. ¶ 53. Plaintiff does not yet have the benefit of discovery to determine the terms of the loan Defendant made to this borrower, but at the pleading stage the Court can reasonably infer consumer harm.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint for failure to state a claim should be dismissed in its entirety.

Dated:    September 21, 2022

          Respectfully Submitted,

          */s/ John A. Schifino*
          John A. Schifino
          Florida Bar No. 0072321
          GUNSTER, YOAKLEY & STEWART, P.A
          401 East Jackson Street, Suite 1500
          Tampa, Florida 33602
          Primary email:  jschifino@gunster.com
          Secondary email: eservice@gunster.com
          Telephone:  (813) 739-6962

          MITCHELL SANDLER LLC
          Christopher L. McCall (admitted *pro hac vice*)
          1120 20th Street N.W., Suite 725
          Washington, D.C. 20036
          Primary email:  cmccall@mitchellsandler.com
          Telephone:  (202) 886-5292

          *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*

## CERTIFICATE OF SERVICE

      I certify that on September 21, 2022, a true and correct copy of the foregoing

was filed with the Court via CM/ECF which will send a notice of electronic filing to

the parties of record.

          */s/ John A. Schifino*
          Attorney

\