**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>                    Plaintiff,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>                    Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**WATERSTONE MORTGAGE CORPORATION'S ANSWER TO
PLAINTIFF'S AMENDED COMPLAINT**

Defendant Waterstone Mortgage Corporation ("Waterstone") answers

Plaintiff's Amended Complaint (Dkt. 37) as follows:

**PRELIMINARY STATEMENT[1]**

1.      Mutual Mortgage brings this action against WaterStone in response to a brazen and unlawful scheme by WaterStone to solicit and hire over sixty Mutual Mortgage employees (the "Departed Employees"), causing Mutual Mortgage to have to shutter three entire branches after the Departed Employees resigned *en masse* – many within minutes of one another – in what was clearly a coordinated plan.

**RESPONSE TO 1.**  Waterstone admits it hired a number of at-will employees

who previously worked for Mutual Mortgage.  Waterstone lacks information sufficient

to form a belief as to the truth of the allegations that the Departed Employees resigned

---

[1] For ease of reference, Waterstone refers to Plaintiff's headings and titles, but to the extent those headings and titles could be construed to contain factual allegations, those allegations are denied.

within minutes of one another and denies those allegations on that basis. Waterstone

denies the remaining allegations.

2.    Not content to merely poach employees from Mutual Mortgage, WaterStone also encouraged and assisted the Departed Employees to solicit other employees to leave Mutual Mortgage for WaterStone, encouraged and assisted the Departed Employees to provide confidential and trade secret information belonging to Mutual Mortgage ("Confidential and Trade Secret Information") to WaterStone, and encouraged and assisted the Departed Employees to breach their fiduciary duties to Mutual Mortgage by diverting customers to WaterStone while the Departed Employees were still licensed with and working for Mutual Mortgage.

**RESPONSE TO 2.** Waterstone denies.

3.    To give but one example, on March 3, 2022, one of the Departed Employees, Dwyane Hutto, used his Mutual Mortgage email to send Confidential and Trade Secret Information to Dustin Owen, WaterStone's Regional Vice President-Southeast. Specifically, the email attached a spreadsheet with a dozen tabs, each containing Confidential and Trade Secret Information, such as Mutual Mortgage's historical and current profit and loss statements, loan rates, fee structures, profit margins, employee compensation data, and other detailed information. After receiving the email, WaterStone responded as follows: "Received. Thank you. I have sent this off to Kevin Allen. Let's look at some times/dates for next week. We'll want and [sic] hour with you and then an hour with Smitty." According to WaterStone's website, Kevin Allen is WaterStone's Senior Vice President of Sales, and, upon information and belief, "Smitty" refers to Chris Smith, another of the Departed Employees.

**RESPONSE TO 3.** Waterstone admits that Kevin Allen is a Waterstone

employee with the title of Senior Vice President of Sales, as reflected on Waterstone's

website. Waterstone admits Mr. Hutto sent an email to Mr. Owen on March 3, 2022

that attached a spreadsheet and that Mr. Owen responded "Received. Thank you. I

have sent this off to Kevin Allen. Let's look at some times/dates for next week."

Waterstone denies the spreadsheet contains dozens of tabs, each of which contain

Confidential and Trade Secret Information. Waterstone further admits Chris Smith

3

goes by the nickname "Smitty" from time to time. Waterstone denies any remaining allegations.

4.      Mutual Mortgage brings this action to hold WaterStone accountable for its willful and egregious misconduct.

**RESPONSE TO 4.** Waterstone admits that Mutual Mortgage has brought the instant lawsuit. Waterstone denies that it engaged in any willful or egregious misconduct and denies that Mutual Mortgage is entitled to any relief for its claims.

## PARTIES

5.      Mutual Mortgage is a Delaware corporation with its principal place of business at 3131 Camino Del Rio North, Suite 1100, San Diego, California, 92108. Mutual Mortgage is a residential mortgage lender with a number of branch offices in Florida, including now-shuttered locations at 4902 Eisenhower Boulevard, Suite 385, Tampa, Florida, 33634 (the "Tampa Branch"), 900 West Granada, Suite 4, Ormond Beach, Florida, 32174 (the "Daytona Branch"). As relevant for the instant case, Mutual Mortgage also had a branch office in Paramus, New Jersey (the "Paramus Branch").

**RESPONSE TO 5.** Waterstone admits Mutual Mortgage is a Delaware corporation with its principal place of business at 3131 Camino Del Rio North, Suite 1100, San Diego, California, 92108; that Mutual Mortgage is a residential mortgage lender; and that Mutual Mortgage has a number of branch offices. Waterstone further admits Mutual Mortgage is not operating the Tampa and Daytona Branches. Waterstone denies Mutual Mortgage's characterization of the Parmus location as an independent branch office given that the location rolled up under the Tampa Branch, but admits Mutual Mortgage is no longer operating at the Parmus location. Waterstone denies any remaining allegations.

4

6.    WaterStone is a licensed residential mortgage banker (NMLS number 186434) with its principal place of business at N25W23255 Paul Road, Pewaukee, Wisconsin, 53072. Among other things, WaterStone is a residential mortgage lender. WaterStone has multiple offices in Florida, including at 2699 Lee Road, Suite 600, Winter Park, Florida, 32789.

**RESPONSE TO 6.**  Waterstone admits.


## JURISDICTION AND VENUE

7.    The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Mutual Mortgage and WaterStone are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**RESPONSE TO 7.**  Waterstone admits.


8.    The Court has subject matter jurisdiction over Mutual Mortgage's federal claims under 28 U.S.C. § 1331 because those claims arise under federal law.

**RESPONSE TO 8.**  Waterstone admits.


9.    The Court has subject matter jurisdiction over Mutual Mortgage's state law claims under 28 U.S.C. § 1367(a) because the state law claims are so closely related to the federal claims, and share a common nucleus of operative facts with the federal claims, such that the state law claims and the federal claims form part of the same case or controversy.

**RESPONSE TO 9.**  Waterstone admits.


10.    The Court has personal jurisdiction over WaterStone because the unlawful conduct at issue in this case took place in Florida.

**RESPONSE TO 10.**    Waterstone admits that the events giving rise to Plaintiff's claims took place in Florida.    Waterstone denies that it engaged in any unlawful conduct.

11.     Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mutual Mortgage's claims occurred, and a substantial part of the property that is the subject of this action is located, in the Middle District of Florida, Tampa Division.

**RESPONSE TO 11.**        Waterstone admits.

## FACTUAL BACKGROUND

12.     As a threshold matter, it is important to emphasize that Mutual Mortgage has only begun its investigation into the damage done by WaterStone, and its investigation is ongoing. Moreover, Mutual Mortgage's investigation has been made difficult by the fact that at least some of the Departed Employees appear to have taken steps to avoid leaving a record of their misconduct. For example, on April 5, 2022 Zeke Waterman – then at Mutual Mortgage – emailed his assistant with instructions that she blind carbon copy him on emails to borrowers because Waterman was "just trying to keep myself out of emails." His assistant responded: "I understand and rightfully so." A few weeks later Waterman and his assistant left Mutual Mortgage for WaterStone.

**RESPONSE TO 12.**        Waterstone admits that it hired Zeke Waterman.  As to the remaining allegations in paragraph 12, Waterstone lacks information sufficient to form a belief as to the truth of the allegations regarding the stage and status of Mutual Mortgage's investigation, and denies the allegations on that basis. Waterstone further lacks information sufficient to form a belief as to the allegations regarding the actions of the Departed Employees, who are third-parties, and the allegations regarding Mr. Waterman's assistant, who is unidentified in paragraph 12, and denies the allegations on that basis.

13.     Similarly, in an April 7, 2022 email from Maria De Sevilla to Dawson Walker regarding their impending move to Waterstone, De Sevilla wrote that "I figure you're probably good at 'code.'" At the time both De Sevilla and Walker were employed in Mutual Mortgage's Daytona Branch, and one week later they resigned to join WaterStone.

**RESPONSE TO 13.**        Waterstone admits that it hired Maria De Sevilla and Dawson Walker in April 2022.  As to the remaining allegations in paragraph 13, Waterstone lacks information sufficient to form a belief as to the truth of the allegations, which relate to the actions of third-parties, and denies the allegations on that basis.

14.    In addition, the Departed Employees used their personal email accounts to engage in their unlawful scheme, and Mutual Mortgage does not currently have access to the Departed Employees' personal email accounts. Mutual Mortgage intends to conduct extensive discovery of these personal email accounts on an expedited basis, including forensic auditing if Mutual Mortgage uncovers evidence that the Departed Employees attempted to destroy evidence in their personal email accounts.

**RESPONSE TO 14.**        Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 14, which relate to the actions of third-party Departed Employees and to Mutual Mortgage's own intentions regarding discovery. Waterstone denies the allegations on that basis.

15.    As Mutual Mortgage's investigation progresses, Mutual Mortgage expects to amend this complaint to add evidence of additional misconduct and additional claims.

**RESPONSE TO 15.**        Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 15, and denies the allegations on that basis.

16.    Even based on Mutual Mortgage's investigation to date, however, there is substantial evidence, described in detail below, to support the claims and relief Mutual Mortgage seeks through this action.

**RESPONSE TO 16.**        Waterstone denies.

**Provisions of the Employment Agreements that Waterstone Encouraged and Assisted the Departed Employees to Breach**

17.    The Departed Employees were each employed by Mutual Mortgage under a written employment agreement (the "Employment Agreements").

**RESPONSE TO 17.**    Waterstone admits Mutual Mortgage provided it with documents titled "Loan Originator Employment Agreement" signed by Dwayne Hutto, Kristie Johnson, William Henry Jr., Kyrstin Friebis, Michael Irish, Tatiana Giraldo, Dawson Walker, Chris Wolf, Sunshine Staudt, Cameron Holley, John Knight, Beatrice Fleurio, Sandra Viscomi, Maria De Sevilla, Robin Williams, Daniel Zeeman, Michael Gurley, and Lorrie Hutchcraft, with some of those documents differing materially from the subsequently quoted language in the Amended Complaint allegedly taken from the purported "Employment Agreements." Waterstone thus denies the allegations on that basis. Waterstone further lacks information sufficient to form a belief as to whether the purported agreements were binding on the employees, whether the documents it received are the "Employment Agreements" referenced in paragraph 17, and whether other former Mutual Mortgage employees beyond the ones listed above are bound by a written employment agreement, and Waterstone denies the allegations on that basis. Waterstone denies any remaining allegations.

18.    The Employment Agreements were voluntarily entered into by the Departed Employees and were valid and enforceable contracts.

**RESPONSE TO 18.**    Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 18, which relate to the

circumstances and mental impressions surrounding contracts involving third-parties and denies the allegations on that basis.

19.    The Employment Agreements make clear that the Departed Employees owed fiduciary duties to borrowers, and were expressly prohibited from placing their own interests ahead of a borrower's:

> Loan Originator acknowledges that Company and Loan Originator owe fiduciary duties to Company's borrowers. Any violation of a fiduciary duty can subject Company and/or Loan Originator to license discipline up to and including license revocation. Loan Originator shall not make any representation, or perform any act, during the term of your employment with Company which would constitute a breach of a fiduciary duty owed to a borrower including, without limitation, placing his/her economic interest ahead of the economic interest of a borrower.

Employment Agreement § 7.3.

**RESPONSE TO 19.**    Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual Mortgage provided with respect to some of the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 19 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 19 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

20.    The Employment Agreements require the Departed Employees to comply with all policies and procedures of Mutual Mortgage:

> Loan Originator agrees to comply with all applicable Company policies, procedures, and requirements imposed as set forth in this Agreement and those policies applicable to Loan Originator and required under applicable law, including those related to the origination and processing of loans, payment of commissions, licensing, reporting loan activity, each applicable policy contained in the Company's Employee Handbook, and each other applicable policy governing your employment now in force or which the Company may adopt in the future or as amended from time-to-time.

Employment Agreement § 8.

**RESPONSE TO 20.**        Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual Mortgage provided with respect to some of the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 20 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 20 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

21.    The Employment Agreement further provides that the Departed Employees "agree to abide by all applicable duties and requirements of the Company regarding confidentiality, non-disclosure, and additional restrictive covenants, to the fullest extent allowed by applicable law." Employment Agreement § 15.2.

**RESPONSE TO 21.**       Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual Mortgage provided with respect to some of the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 21 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 21 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

22.    The Employment Agreements establish the duty of loyalty the Departed Employees owed to Mutual Mortgage:

> As a Loan Originator for the Company, Loan Originator acknowledges that he/she has a general duty of loyalty to the Company and agrees to devote his/his entire productive time, ability, and attention to the business of the Company consistent with good industry practices, the terms of this Agreement, and with the long-term best interests Company and the applicable policies and procedures set by the Company. Loan Originator will not render any loan origination services to any other person or entity, regardless of whether or not those loan origination services would present a conflict of interest for Loan Originator in the performance of his/her duties for Company. In addition, Loan Originator agrees not to work in any other "real estate related areas" as defined by the U.S. Department of Housing and Urban Development.

Employment Agreement § 9.1.

**RESPONSE TO 22.**       Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual

Mortgage provided with respect to some of the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 22 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 22 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

23.     The Employment Agreements prohibit employees from misusing personal information of borrowers:

> Because of Loan Originator's employment with the Company, Loan Originator will have access to the nonpublic personal information of consumers ("Personal Information"). "Personal Information" means personally identifiable financial information, or any list, description, or other grouping of consumers (and publicly available information pertaining to them) derived using any personally identifiable information not publicly available. Loan Originator agrees to comply with the Company's policies regarding Personal Information and any applicable consumer privacy laws or rules (the "Privacy Requirements"). Loan Originator will limit the use of Personal Information to the express purposes set forth in this Agreement, will not disclose Personal Information to any unauthorized person, and will strictly abide by the Privacy Requirements.

Employment Agreement § 15.1.

**RESPONSE TO 23.**     Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual Mortgage provided with respect to some of the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth

of the allegations in paragraph 23 as to the language in any employment contract of

any other former Mutual Mortgage employee and denies the allegations on that basis.

To the extent Mutual Mortgage intended paragraph 23 to allege legal duties imposed

by the language cited, Waterstone further lacks information sufficient to form a belief

as to the truth of those allegations, which involve legal conclusions, and denies the

allegations on that basis. Waterstone denies any remaining allegations.

24.    The Employment Agreements prohibit the Departed Employees from misappropriating, misusing, or disclosing confidential and trade secret information belonging to Mutual Mortgage:

> Accordingly, Employee agrees that Employee will not, and will not permit any other person or entity to, directly or Indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for Company; and (c) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media.

Employment Agreement, Protective Agreement (Non-Solicit) § 4.1.

**RESPONSE TO 24.**    Waterstone admits the language cited is contained in

a document titled "Protective Agreement (Non-Solicit)" that Mutual Mortgage

provided for Maria De Sevilla, Beatrice Fleurio, Tatiana Giraldo, Michael Gurley,

Cameron Holley, Lorri Hutchcraft, John Thomas Knight, Sunshine Staudt, Sandra

Viscomi, Dawson Walker, Christopher Wolf, and Daniel Zeeman. Waterstone lacks

information sufficient to form a belief as to the truth of the allegations in paragraph 24

13

as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 24 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

25.    The Employment Agreements define "Confidential Information" as follows:

> "Confidential Information" means information that is created and used in the Company's business and which is not generally known by the public, including but not limited to: confidential information related to (a) the internal business and structure of the Company, concepts, techniques, pricing or cost strategies and information, business plans and strategies, marketing (and advertising) plans and strategies, advertising budgets, unpublished financial information, terms of the Company's agreements or contracts (oral or written, including investors of the Company, third-party underwriters, third-party originators, etc.), supplier information, proprietary or customized software and databases; (b) the Company's records pertaining to customers (including key customer contact information), potential customers (including key contact information of anyone who applies for a mortgage with the Company or contacts the Company for mortgage needs), mortgage loan terms and related information; (c) the Company's records pertaining to Referral Sources (including key contact information), potential Referral Sources (including key contact information, amount / nature of business, etc.); and (d) personnel lists, confidential employee information and data (including information pertaining to compensation or work specialization), training, policies and procedures. Employee specifically understands and agrees that information pertaining to borrowers or potential borrowers of the Company that Employee obtains as an employee of the Company is and shall remain the Confidential Information of the Company and shall not be used by Employee at any time, including after the Last Day (defined below), for any purpose unrelated to Employee's work for the Company. Employee specifically understands and agrees that the term Confidential Information also

includes all confidential information of a third party that may be communicated to, acquired by, learned of, or developed by Employee in the course of or as a result of Employee's employment with the Company. Confidential Information does not include information that is or may become known to Employee or to the public from sources outside the Company and through means other than a breach of this Agreement or disclosed by Employee after written approval from the Company.

Employment Agreement, Protective Agreement (Non-Solicit) § 2.1.

**RESPONSE TO 25.**      Waterstone admits the language cited is contained in a document titled "Protective Agreement (Non-Solicit)" that Mutual Mortgage provided with respect to the persons listed in response to paragraph 24. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 25 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 25 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

26.    The Employment Agreements prohibit the Departed Employees from soliciting or inducing other employees to leave Mutual Mortgage:

During the Restricted Period, Employee shall not directly or Indirectly: (a) solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or assist others in soliciting, recruiting or encouraging, any Company Employees or Former Employees with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information; (b) contact or communicate with Employees or Former Employees for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company or find employment or work with another person or entity; (c)

15

provide or pass along to any person or entity the name, contact and/or background information about any Employees or Former Employees or provide references or any other information about them; (d) provide or pass along to Employees or Former Employees any information regarding potential jobs or entities or persons for which to work, including but not limited to job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications; and/or (e) offer employment or work to any Employees or Former Employees. For purposes of this covenant, "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but were employed by or working for the Company in the six (6) months prior to the time of the attempted recruiting or hiring and/or interference.

Employment Agreement, Non-Solicit § 3.3.

**RESPONSE TO 26.**        Waterstone admits the language cited is contained in the "Protective Agreement (Non-Solicit)" document that Mutual Mortgage provided with respect to the persons listed in response to paragraph 24. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 26 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 26 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

**Waterstones Encourages and Assists the Departed Employees to Solicit Fellow Mutual Mortgage Employees for Employment with Waterstone**

27.    Waterstones actively encouraged and assisted the Departed Employees in soliciting other Mutual Mortgage employees to terminate their employment with Mutual Mortgage and join WaterStone. The Departed Employees engaged in the

solicitation while still employed by Mutual Mortgage, in breach of their contractual and fiduciary duties.

**RESPONSE TO 27.**   Waterstone denies that it encouraged and assisted any Mutual Mortgage employees in soliciting other Mutual Mortgage employees to join Waterstone.  As to the remaining allegations in paragraph 27, Waterstone lacks information sufficient to form a belief as to the truth of the allegations, and denies the allegations on that basis.

28.    For example, in an April 7, 2022 email from Maria De Sevilla to Dawson Walker, De Sevilla writes that "Chris debriefed me on Waterstone today! I remain excited! Yaay!" At the time both De Sevilla and Walker were employed in Mutual Mortgage's Daytona Branch, and one week later they resigned to join WaterStone.

**RESPONSE TO 28.**   Waterstone admits that it hired Maria De Sevilla and Dawson Walker in April 2022.  As to the remaining allegations in paragraph 28, Waterstone lacks information sufficient to form a belief as to the truth of the allegations, which involve communications between third-parties, and denies the allegations on that basis.

29.    The "Chris" referred to in De Sevilla's email was Chris Wolf, who at the time was Mutual Mortgage's Vice President of Mortgage Lending. On April 8, 2022, Wolf sent an email to an unknown group of recipients advising them to "not discuss what we talked about on today's call with anyone outside of your families. We are still finalizing details."

**RESPONSE TO 29.**   Waterstone lacks information sufficient to form a belief as to the truth of the allegations, which involve communications between third-parties, and denies the allegations on that basis.

30.     Maria De Sevilla described this April 8, 2022 call as follows: "Chris was on our team call and spoke to me, Mike, Sunshine & Beatrice about the move! OMG! I SO want us to develop those builder relationships and become a preferred lender for some! I'm totally up for going out and talking to the builders and earning their business!"

**RESPONSE TO 30.**     Waterstone lacks information sufficient to form a

belief as to the truth of the allegations, which involve communications between third-

parties, and denies the allegations on that basis.


31.     Following this April 8, 2022 meeting, Michael Irish emailed Chris Wolf that Irish was "beyond excited for this new endeavor" and was eager to start at WaterStone as soon as possible because he had leads on loans developed during his time at Mutual Mortgage and wanted to divert those loans to WaterStone:

> For the personal request, could I be one of the first people to transition over? I only ask because currently I do not have any working loans in my pipeline but, I do have quite a few pre-approvals out that the realtors are actively showing their clients properties and every Thursday on the PAL's call I continue to engage with the buyers. I would hate to have my pipeline pop off within the next 30 days and then be out of my commissions if that in fact would be the case.

**RESPONSE TO 31.**     Waterstone lacks information sufficient to form a

belief as to the truth of the allegations in paragraph 31, which involve communications

between third-parties, and denies the allegations on that basis.


32.     On April 28, 2022, Kiera Tully sent Chris Smith an email requesting a meeting "to go over a few things," including "[h]ow is compensation going to work." At the time both Tully and Smith were employed in Mutual Mortgage's Tampa Branch, until they resigned a few weeks later to join WaterStone.

**RESPONSE TO 32.**     Waterstone admits that it hired Kiera Tully and

Chris Smith.  As to the remaining allegations in paragraph 32, Waterstone lacks

information sufficient to form a belief as to the truth of the allegations, which involve communications between third-parties, and denies the allegations on that basis.

33.    WaterStone employees also regularly held video conferences with Mutual Mortgage employees on weekdays during business hours.

**RESPONSE TO 33.**    Waterstone denies.

34.    For example, on April 22, 2022 at 2:00 p.m. at least two Mutual Mortgage employees (William Henry Jr. and Mike Gurley) had a video conference with Kyrstin Friebis of WaterStone. Friebis had been a Mutual Mortgage employee until April 15, 2022, when she resigned to work at WaterStone.

**RESPONSE TO 34.**    Waterstone admits that it hired Kyrstin Friebis in April 2022. Based on information known to Waterstone at this time, it denies that Ms. Friebis conducted a video conference with Messrs. Henry and Gurley on April 22, 2022 at 2:00 p.m. Waterstone lacks information sufficient to form a belief about the date of Ms. Friebis' resignation from Mutual, and denies the allegations on that basis. Waterstone admits Ms. Friebis commenced employment with it on April 15, 2022.

**WaterStone Encourages and Assists the Departed Employees in Disclosing to WaterStone Confidential and Trade Secret Information**

35.    On multiple occasions, WaterStone encouraged and assisted the Departed Employees to send WaterStone Confidential and Trade Secret Information.

**RESPONSE TO 35.**    Waterstone denies.

36.    In some instances, the Departed Employees sent Confidential and Trade Secret Information directly to WaterStone. In other instances, the Departed Employees sent Confidential and Trade Secret Information to their personal email addresses and, upon information and belief, subsequently sent such Confidential and Trade Secret Information to WaterStone. Mutual Mortgage does not yet have access to the Departed Employees' personal email accounts but intends to obtain access in

discovery and conduct a forensic audit of the Departed Employees' use of their personal email accounts to transfer Confidential and Trade Secret Information.

**RESPONSE TO 36.**      Waterstone denies the first and second sentences of

paragraph 36. As to the remaining allegations in paragraph 36, Waterstone lacks

information sufficient to form a belief as to the truth of the allegations in the third

sentence of paragraph 36 and denies the allegations on that basis.

37.    For example, on February 17, 2022, Dwayne Hutto sent an email from his work email address to a WaterStone employee named Dustin Owen attaching a copy of Mutual Mortgage's December 31, 2021 Profit and Loss Statement for the Daytona Branch. At the time, Hutto was the branch manager of the Daytona Branch. Owen responded to the email to confirm that he had received the information. At the time, Owen was WaterStone's Regional Vice President-Southeast.

**RESPONSE TO 37.**      Waterstone admits that Dwayne Hutto was

previously the branch manager of the Mutual Mortgage Ormond Beach branch, and

that Dustin Owen was Waterstone's Regional Vice President of the Southeast region.

Waterstone further admits Mr. Hutto sent an email to Mr. Owen on March 3, 2022

that attached a spreadsheet and that Mr. Owen responded indicating he received the

information. Waterstone lacks information sufficient to form a belief as to the truth of

the allegations that the spreadsheet is a "Profit and Loss Statement," as Mutual

Mortgage does not define that phrase and it is inconsistent with the scope of

information alleged to be in the same spreadsheet, as set forth in paragraph 3 of the

Amended Complaint; Waterstone therefore denies those allegations. Waterstone

denies any remaining allegations.

20

38.     On March 3, 2022, Hutto sent another email to Owen, this time attaching a copy of Mutual Mortgage's December 31, 2021 Profit and Loss Statement for the Tampa branch. Owen responded to the email as follows: "Received. Thank you. I have sent this off to Kevin Allen. Let's look at some times/dates for next week. We'll want and [sic] hour with you and then an hour with Smitty." At the time, Owen was WaterStone's Regional Vice President-Southeast.

**RESPONSE TO 38.**     Waterstone admits that Dustin Owen was Waterstone's Regional Vice President of the Southeast region in March 2022. Waterstone admits Mr. Hutto sent an email to Mr. Owen on March 3, 2022 that attached a spreadsheet and that Mr. Owen responded "Received. Thank you. I have sent this off to Kevin Allen. Let's look at some times/dates for next week. We'll want and [sic] hour with you and then an hour with Smitty." Waterstone lacks information sufficient to form a belief as to the truth of the allegations that the spreadsheet is a "Profit and Loss Statement," as Mutual Mortgage does not define that phrase and it is inconsistent with the scope of information alleged to be in the same spreadsheet, as set forth in paragraph 3 of the Amended Complaint; Waterstone therefore denies those allegations. Waterstone denies any remaining allegations.

39.     The "Smitty" referred to is Chris Smith, who was Mutual Mortgage's Senior Vice President of Sales based in the Tampa Branch. On March 2, 2022, Smith used his Mutual Mortgage email address to send a copy of this same spreadsheet to his personal email address (husky5417@yahoo.com). Smith resigned from Mutual Mortgage and joined WaterStone a few weeks later. Upon information and belief, Smith forwarded the spreadsheet from his personal account to WaterStone, and Mutual Mortgage expects to obtain confirmation of this fact when it conducts a forensic examination of Smith's Yahoo account.

**RESPONSE TO 39.**     Waterstone admits that it hired Chris Smith in the spring of 2022 and that he resigned from Mutual Mortgage. Waterstone further admits

Chris Smith goes by the nickname "Smitty" from time to time. Waterstone lacks information sufficient to form a belief as to the truth of the allegation regarding the communication involving the husky5417@yahoo.com email account, which is a third-party communication, and denies the allegations on that basis. Waterstone denies any remaining allegations.

40.    On April 26, 2022, Lorri Hutchcraft – then a Mutual Mortgage employee in the Daytona Branch – used her Mutual Mortgage email account to send to her personal email account (lorrihutchcraft@gmail.com) dozens of confidential documents, including documents containing policies and procedures of Mutual Mortgage on Mutual Mortgage letterhead, templates for borrower communications, forms, work flows, and other confidential documents. She also sent confidential information to her personal email account about at least two borrowers. Hutchcraft left Mutual Mortgage that same day.

**RESPONSE TO 40.**    Waterstone admits Hutchcraft was formerly a Mutual Mortgage employee at the Daytona Branch, who joined Waterstone in April of 2022. Waterstone lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 40, which involve third-party communications, and denies the allegations on that basis.

41.    On June 10, 2022, Fred Stalls used his Mutual Mortgage email address to forward to his personal email address (fredstalls@fresliefinancial.com) approximately 19 confidential documents, including customer address lists, lists of closed loans, lists of prospective borrowers, listing agent information, templates for communications, policy and procedure documents, and other confidential documents. One of these attachments was a spreadsheet, entitled "Customer address list" that contained not only the addresses of Mutual Mortgage customers, but 22 columns of detailed data about the customers, their loans, and the loan terms.

**RESPONSE TO 41.**        Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 41, which involve third-party communications, and denies the allegations on that basis.

42.    Similarly, on June 15, 2022 Cody Lamb used their Mutual Mortgage email address to forward to their personal email address (woofstar1@hotmail.com) three separate emails, together attaching approximately 50 confidential documents, including customer pipeline lists, balance sheets, templates for communications with borrowers, policies and procedures, and other confidential documents. Lamb resigned from Mutual Mortgage that same day.

**RESPONSE TO 42.**        Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 42, which involve third-party communications, and denies the allegations on that basis.

## WaterStone Encourages and Assists the Departed Employees to Divert Borrowers from Mutual Mortgage to WaterStone

43.    When a consumer applies for a loan with Mutual Mortgage, the consumer provides Mutual Mortgage with a wide variety of personal and confidential information, including Social Security numbers, dates of birth, contact information, sensitive credit history, wage statements, bank account numbers, mortgage amounts, tax returns, and all the financial information that is necessary to facilitate a home loan.

**RESPONSE TO 43.**        Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 43, which relate to information typically provided to Mutual Mortgage, and denies the allegations on that basis.

44.    This type of information has independent economic value because of it enables and facilitates the preparation of a loan application. It also separates those borrowers ready, willing, and able to proceed with a loan application from those that are not able or willing to proceed. Indeed, lenders spend millions of dollars each year on leads that have a fraction of the value in comparison to the information Mutual Mortgage had obtained on these borrowers.

23

**RESPONSE TO 44.**      Waterstone denies the referenced information has independent economic value because it enables and facilitates a loan application; and/or separates borrowers ready, willing, and able to proceed with a loan application from those that are not able or willing to proceed. Waterstone lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44, which relate to lenders in general and purports to compare the subjective value of data from other lenders' perspectives; Waterstone denies the allegations on that basis.

45.    Consumers provide this highly sensitive, private, and confidential information with the understanding Mutual Mortgage will protect it. Mutual Mortgage is required to maintain the privacy of this information by extremely strict federal laws that carry substantial penalties if violated.

**RESPONSE TO 45.**      Waterstone admits consumers may provide confidential information to mortgage companies, including Mutual Mortgage and that Mutual Mortgage is required to maintain the privacy of certain consumer information supplied to it, in accordance with federal laws, some of which involve penalties for a violation. Waterstone otherwise lacks information sufficient to form a belief as to the truth of the remaining allegations, which vaguely reference "a wide variety of personal and confidential information." Waterstone denies the remaining allegations on that basis.

46.    Mutual Mortgage does not release, share, or disclose such confidential information to the general public. Mutual Mortgage maintains the secrecy of this confidential information and derives an economic and competitive advantage from maintaining the secrecy of such information.

**RESPONSE TO 46.**        Waterstone lacks information sufficient to form a

belief as to the truth of the allegations in paragraph 46, which are vague as to the phrase

"such confidential information," and Waterstone denies the allegations on that basis.

Waterstone denies any remaining allegations.

47.    If a competitor obtained this information, it could undercut Mutual
Mortgage on Mutual Mortgage's loans and divert Mutual Mortgage's customers by
aggressively pursuing those customers based on the information kept by Mutual
Mortgage. That is precisely what WaterStone has done here.

**RESPONSE TO 47.**        Waterstone lacks information sufficient to form a

belief as to the truth of the allegations in the first sentence of paragraph 43, which are

vague as to the phrase "this information," and denies the allegations on that basis.

Waterstone denies the second sentence of paragraph 43 and denies any remaining

allegations.

48.    On March 29, 2022, Dwayne Hutto sent an email to Zeke Waterman and
Chris Wolf asking them to "forward the full [borrower] file to Mike Smalley at
Waterstone? They can get it done." Wolf responded that same day that the file had
been sent. At the time, all three of these employees were employed by Mutual
Mortgage and subject to all restrictions in the Employment Agreements, and these
communications all took place using Mutual Mortgage's email system.

**RESPONSE TO 48.**        Waterstone lacks information sufficient to form a

belief as to the truth of the allegations in paragraph 48, which involve communications

alleged to have occurred on Mutual Mortgage's email system, and denies the

allegations on that basis.

49.    On April 12, 2022, Fred Stalls used his Mutual Mortgage email address
to forward to his personal email address (fredstalls@fresliefinancial.com) documents

and information from a prospective borrower regarding a refinancing of the borrower's property in Hollywood, Florida.

**RESPONSE TO 49.**      Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 49, which involve a third-party communication, and denies the allegations on that basis.

50.    On April 13, 2022, Dwayne Hutto sent an email to Mike Smalley at WaterStone attaching information about a prospective borrower.

**RESPONSE TO 50.**      Waterstone admits Dwayne Hutto emailed Mike Smalley at Waterstone on April 13, 2022. Waterstone lacks information sufficient to form a belief as to the truth of the allegation that the email contained prospective borrower information, as there are no attachments, and it is vague. Waterstone denies the allegations on that basis.

51.    On April 15, 2022, Hutto used his Mutual Mortgage email address to forward to his personal email address (Dwayne.hutto@yahoo.com) documentation provided to Mutual Mortgage by a prospective borrower, including confidential financial documents. Upon information and belief, Hutto then forwarded this email to WaterStone.

**RESPONSE TO 51.**      Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 51, which involves a third-party communication, and denies the allegations on that basis.

52.    Hutto appears to have diverted this borrower from Mutual Mortgage to WaterStone. On April 24, 2022, Dwayne Hutto wrote that he had spoken to the borrower that day and that the borrower "said he sent over the actual statements to Waterstone Friday afternoon. I'm going to confirm in the morning." At the time Hutto was employed by Mutual Mortgage.

**RESPONSE TO 52.**      Waterstone denies that it appears Mr. Hutto diverted borrowers to it, as alleged in the first sentence of paragraph 52. As to the remaining sentences, Waterstone lacks information sufficient to form a belief as to the truth of the allegations, which appear to relate to the content of third-party communications or communications in the possession of Mutual Mortgage, and denies the allegations on that basis.

53.      On May 25, 2022, Lucas Van Dame – then a Mutual Mortgage Loan Originator – sent an email to a prospective borrower stating that the borrower's loan was not approved by Mutual Mortgage, misrepresenting the basis for the underwriting decision, referring the borrower to WaterStone, and transferring the borrower's file to WaterStone:

> I wanted to send you an update on our current situation. Unfortunately, we are unable to approve your loan. The reason for denial is due to your home being used as collateral on the BB&T/Truist Business Installment Loan. Since there was a 30+ Day Late payment on this business loan in the past 12 months, our underwriter would not approve the loan (Because it is technically a second mortgage). I have done some research, and this appears to be a company specific guideline. My branch manager has reached out to one of his long time friends at Waterstone Mortgage and their underwriter assured us that your situation is something that they would be able to approve. We are going to go ahead and transfer your information over to Dwayne Hutto at Waterstone Mortgage. Since we already have all of your documents and information, Dwayne expects this to close within a 30 day period.

> I do apologize that we were unable to complete this process with you. I appreciate your patience through this entire process and am confident that Dwayne will be able to get this to the finish line.

**RESPONSE TO 53.**      Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 53, which involve communications

with a third-party borrower while Mr. Van Dame worked at Mutual Mortgage and

denies the allegations on that basis.

54.    Van Dame's statement to the borrower that the loan was denied because of late payments on the borrower's business loan, and that this denial was due to a Mutual Mortgage-specific underwriting guideline, is false and misleading. In fact, Chris Smith escalated this loan to Chris Leyden, Mutual Mortgage's Chief Operating Officer, who approved the loan notwithstanding late payments on a related loan. Van Dame was aware of these facts, but nonetheless he made false and misleading statements to this borrower to divert the loan.

**RESPONSE TO 54.**        Waterstone lacks information sufficient to form a

belief as to the truth of the allegations in paragraph 54 and denies the allegations on

that basis.

55.    Moreover, as is evident from the foregoing email, Van Dame transferred the borrower's loan to WaterStone without the borrower's consent, stating simply that "[w]e are going to go ahead and transfer your information over to Dwayne Hutto at Waterstone Mortgage." At the time Van Dame was employed by Mutual Mortgage, until he resigned on June 15, 2022 to join WaterStone.

**RESPONSE TO 55.**        Waterstone admits Mr. Van Dame previously

worked for Mutual Mortgage and joined it in June of 2022. Waterstone lacks

information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 55, and denies the allegations on that basis.

56.    Other Departed Employees worked closely with Hutto after he moved to WaterStone. For example, on June 7, 2022 Fred Stalls used his Mutual Mortgage email address to send several questions about WaterStone to Hutto at his new WaterStone email address (dhutto@waterstonemortgage.com):

Hey Dwayne

1.    Does Waterstone offer HELOC's, either directly or brokered?

2.      Does Waterstone have broker's relationships? Can you send me a list of who Waterstone is signed up with to Broker loans?

Thank you. And Thank you for the Joey Roces referral – he is a great guy.

**RESPONSE TO 56.**      Waterstone denies "Other Departed Employees worked closely with Hutto" after he moved to Waterstone. Waterstone admits Fred Stalls sent the questions identified to Mr. Hutto in a June 7, 2022 email, directed to Mr. Hutto's waterstone email address. Waterstone denies any remaining allegations in paragraph 56.

57.     On June 7, 2022 Fred Stalls had a conversation with Hutto regarding a borrower who had initiated an application with Mutual Mortgage about transferring the borrower's application to WaterStone. According to Stalls' notes, the borrower had submitted an application with Mutual Mortgage several months before, in January of 2022.

**RESPONSE TO 57.**      Waterstone denies the allegations in the first sentence of paragraph 57. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 57 regarding Stalls' notes made while employed at Mutual Mortgage, and denies those allegations on that basis.

58.     On June 8, 2022 Fred Stalls used his Mutual Mortgage email address to send to his personal email address (fredstalls@fresliefinancial.com) documentation provided by multiple prospective borrowers to Mutual Mortgage. At the time Stalls was employed in Mutual Mortgage's Tampa Branch as a Mortgage Loan Originator. On June 10, 2022, Stalls received an email at his Mutual Mortgage email address from WaterStone congratulating him on being hired by WaterStone and providing new hire documents.

**RESPONSE TO 58.**      Waterstone lacks information sufficient to form a belief as to the truth of the allegations involving Fred. Stall's Mutual Mortgage and

29

fredstalls@fresliefinancial.com email account and denies the allegations on that basis. Waterstone admits that it hired Mr. Stalls in June 2022 and that Mr. Stalls was previously employed by Mutual Mortgage at its Tampa branch as a loan originator. Waterstone admits it sent Mr. Stalls an email on June 10, 2022 titled "Action Needed Waterstone New Hire Documents." The June 10, 2022 correspondence speaks for itself and Waterstone denies the allegations to the extent they are inconsistent with the correspondence. Waterstone denies any remaining allegations.

59.     On June 8, 2022, Fred Stalls sent an email to his colleague Cody Lamb asking Lamb to forward Chris Wolf documents related to four borrowers. Stalls copied Chris Wolf's WaterStone email address on the email. On June 9, 2022, Wolf responded that he had received all five of the emails sent by Lamb with borrower information. Stalls and Wolf subsequently engaged in multiple communications regarding the terms of the borrower's loan, with Stalls using his Mutual Mortgage email address to communicate with Wolf at his WaterStone email address. Stalls appears to have transferred this borrower's loan to WaterStone, as evidenced by a June 14, 2022 letter Stalls printed and signed on Mutual Mortgage letterhead stating that Mutual Mortgage was transferring ownership of the borrower's appraisal report to WaterStone.

**RESPONSE TO 59.**     Waterstone admits that the correspondence referenced was exchanged. The correspondence speaks for itself, and Waterstone denies the allegations in paragraph 59 to the extent inconsistent with the correspondence.

60.     On June 8, 2022 Cynthia Manley used her Mutual Mortgage email address to send to her personal email address (cindyvoo@icloud.com) dozens of documents provided by a prospective borrower, as well as extensive correspondence between the borrower and Mutual Mortgage. At the time Manley was employed by Mutual Mortgage in its Tampa Branch, until June 15, 2022 when she resigned from Mutual Mortgage to work at WaterStone.

**RESPONSE TO 60.**        Waterstone admits that it hired Cynthia Manley in June 2022 and that Ms. Manley previously worked for Mutual Mortgage at its Tampa branch. Waterstone lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 60, which involve Ms. Manley's use of her personal email and Mutual of Omaha email accounts, and Waterstone denies the allegations on that basis. Waterstone denies any remaining allegations.

61.    On June 13, 2022, Justin DePalma sent an email to Chris Smith and John Utsch regarding a number of borrower leads he had acquired that weekend by attending a number of open houses, and stated his intent to divert those prospective borrowers to WaterStone: "After we transition I will go as a just a lender and pitch and talk business." At the time DePalma, Smith, and Utsch were Mutual Mortgage employees in the Tampa Branch, and all have since resigned from Mutual Mortgage to work at WaterStone. Smith responded to the email with "Nice!!"

**RESPONSE TO 61.**        Waterstone admits that it hired Justin DePalma, Chris Smith and John Utsch.  Waterstone lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 61, which involve communications on Mutual Mortgage's email system, and on that basis, denies the allegations. Waterstone denies any remaining allegations.

62.    On June 13, 2022, Jordan Ebelini sent an email to Chris Smith regarding a borrower that Ebelini intended to divert from Mutual Mortgage to WaterStone, writing that "I just submitted an app through waterstone that I need a rescore on. Need to boost them to 620 please." At the time Ebelini and Smith were Mutual Mortgage employees in the Tampa Branch, and both have since resigned from Mutual Mortgage to work at WaterStone.

**RESPONSE TO 62.**        Waterstone admits that it hired Chris Smith and Jordan Ebelini.  Waterstone lacks information sufficient to form a belief as to the truth

of the remaining allegations in paragraph 62, which involve communications on Mutual Mortgage's email system, and denies the allegations on that basis. Waterstone denies any remaining allegations.

63.    On June 14, 2022, a Departed Employee in the Tampa Branch named Eric Mueller sent himself a note memorializing a conversation he had with a prospective borrower in which Mueller assisted the borrower in transferring her loan application from Mutual Mortgage to WaterStone, and answered the borrower's questions about her loan application with WaterStone. At the time Mueller was employed by Mutual Mortgage in the Tampa Branch, until June 15, 2022 when he resigned from Mutual Mortgage to join WaterStone.

**RESPONSE TO 63.**    Waterstone admits that it hired Eric Mueller in June 2022.  Waterstone lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63, which involve communications on Mutual Mortgage's email system, and denies the allegations on that basis. Waterstone denies any remaining allegations.

64.    On June 14, 2022, Fred Stalls used his Mutual Mortgage email address to send to his personal email address (fredstalls@fresliefinancial.com) documentation provided by multiple prospective borrowers to Mutual Mortgage. At the time Stalls was employed in Mutual Mortgage's Tampa Branch as a Mortgage Loan Originator.

**RESPONSE TO 64.**    Waterstone admits Fred Stalls was previously employed by Mutual Mortgage at its Tampa branch as a loan originator. Waterstone lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64, which involve Mr. Stall's use of a personal e-mail address, and denies the allegations on that basis.  Waterstone denies any remaining allegations.

65.    The next day Stalls continued to use his Mutual Mortgage email address to send confidential borrower information to his personal email address.

**RESPONSE TO 65.**    Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 65 and denies the allegations on that basis.

## CLAIM I: MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836

66.    Mutual Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

**RESPONSE TO 66.**    Waterstone repeats and incorporates its responses to the allegations in paragraphs 1 through 65.

67.    Mutual Mortgage derives independent economic value from the Confidential and Trade Secret Information, the Confidential and Trade Secret Information is not generally known or public, and Mutual Mortgage took reasonable measures to maintain and protect the secret nature of the Confidential and Trade Secret Information.

**RESPONSE TO 67.**    Waterstone denies the allegations.

68.    The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 183(3) [*sic*], defines a trade secret as, *inter alia*, "all forms and types of financial, business, scientific, technical, economic, or engineering information … whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" – provided that the owner took "reasonable measures to keep such information secret," and it offers the holder of the trade secret and advantage over competitors who do not know or use the trade secret.

**RESPONSE TO 68.**    Subject to the error noted, and assuming Mutual Mortgage intended to cite to 18 U.S.C. § 1839(3), Waterstone admits that the statute contains the quoted language. Waterstone further responds that the statute speaks for itself and Waterstone denies the allegations to the extent inconsistent with § 1839(3).

69.     The Confidential and Trade Secret Information at issue in this case was non-public, and Mutual Mortgage undertook substantial measures to protect the secrecy of the Confidential and Trade Secret Information.

**RESPONSE TO 69.**     Waterstone denies.

70.     Mutual Mortgage's Confidential and Trade Secret Information is related to products and/or services used in interstate commerce.

**RESPONSE TO 70.**     Waterstone denies.

71.     The Departed Employees were entrusted with this Confidential and Trade Secret Information in the performance of their job.

**RESPONSE TO 71.**     Waterstone denies.

72.     At WaterStone's direction, the Departed Employees improperly and unlawfully accessed and disclosed Confidential and Trade Secret Information to WaterStone, which knew or had reason to know that the Confidential and Trade Secret Information was acquired by improper means.

**RESPONSE TO 72.**     Waterstone denies.

73.     WaterStone utilized the Confidential and Trade Secret Information in breach of applicable law and duties, without Mutual Mortgage's express or implied consent, all to Mutual Mortgage's detriment.

**RESPONSE TO 73.**     Waterstone denies.

74.     WaterStone actions directly caused Mutual Mortgage harm through the loss of current and future business and good will.

**RESPONSE TO 74.**     Waterstone denies.

75.     Unless Mutual Mortgage is made whole through damages attributable to business and good will lost, WaterStone's conduct has and will continue to cause Mutual Mortgage harm.

**RESPONSE TO 75.**     Waterstone denies.

76.     WaterStone willfully and maliciously misappropriated the Confidential and Trade Secret Information, and thus is liable to Mutual Mortgage for exemplary damages "in an amount not more than 2 times the amount of the damages awarded," 18 U.S.C. § 1836(b)(3)(C).

**RESPONSE TO 76.**     Waterstone denies.

## CLAIM II: MISAPPROPRIATION OF TRADE SECRETS UNDER THE FLORIDA TRADE SECRETS ACT

77.     Mutual Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

**RESPONSE TO 77.**     Waterstone repeats and incorporates its responses

to the allegations in paragraphs 1 through 76.

78.     Mutual Mortgage derives independent economic value from the Confidential and Trade Secret Information, the Confidential and Trade Secret Information is not generally known or public, and Mutual Mortgage took reasonable measures to maintain and protect the secret nature of the Confidential and Trade Secret Information.

**RESPONSE TO 78.**     Waterstone denies.

79.     The Departed Employees were entrusted with this Confidential and Trade Secret Information in the performance of their job.

**RESPONSE TO 79.**     Waterstone denies.

80.     At WaterStone's direction, the Departed Employees improperly and unlawfully accessed and disclosed Confidential and Trade Secret Information to WaterStone, which knew or had reason to know that the Confidential and Trade Secret Information was acquired by improper means.

**RESPONSE TO 80.**     Waterstone denies.

81.     WaterStone utilized the Confidential and Trade Secret Information in breach of applicable law and duties, without Mutual Mortgage's express or implied consent, all to Mutual Mortgage's detriment.

35

**RESPONSE TO 81.**        Waterstone denies.

82.    WaterStone's actions directly caused Mutual Mortgage harm through the loss of current and future business and good will.

**RESPONSE TO 82.**        Waterstone denies.

83.    WaterStone has acted knowingly, willfully, and in conscious disregard of the rights of consumers, Mutual Mortgage, and the general public.

**RESPONSE TO 83.**        Waterstone denies.

84.    Unless Mutual Mortgage is made whole through damages attributable to business and good will lost, WaterStone's conduct has and will continue to cause Mutual Mortgage harm.

**RESPONSE TO 84.**        Waterstone denies.

## CLAIM III: TORTIOUS INTERFERENCE WITH CONTRACT

85.    Mutual Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

**RESPONSE TO 85.**        Waterstone repeats and incorporates its responses to the allegations in paragraphs 1 through 84.

86.    The Employment Agreements described in detail above were valid, binding, and enforceable contracts voluntarily entered into by the Departed Employees and Mutual Mortgage.

**RESPONSE TO 86.**        Waterstone lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 86 and denies the allegations on that basis.

87.    WaterStone was aware of the Employment Agreements, and it influenced, induced, or coerced the Departed Employees to breach the Employment Agreements in multiple ways.

**RESPONSE TO 87.**        Waterstone denies.


88.    First, WaterStone influenced, induced, or coerced the Departed Employees to violate the non-solicitation provision of the Employment Agreements, which provided, in relevant part, that the Departed Employees "shall not directly or Indirectly . . . solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or assist others in soliciting, recruiting or encouraging, any Company Employees . . . for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company or find employment or work with another person or entity." Employment Agreement, Non-Solicit § 3.3. Through the conduct described in detail above, WaterStone influenced, induced, or coerced the Departed Employees to violate this provision of the Employment Agreements.

**RESPONSE TO 88.**        Waterstone denies.


89.    Second, WaterStone influenced, induced, or coerced the Departed Employees to violate the confidentiality and trade secret provisions of the Employment Agreements. The Employment Agreements provide, in relevant part, that the Departed Employees:

will not, and will not permit any other person or entity to, directly or Indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for Company; and (c) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media.

Employment Agreement, Protective Agreement (Non-Solicit) § 4.1. Through the conduct described in detail above, WaterStone influenced, induced, or coerced the Departed Employees to violate this provision of the Employment Agreements.

**RESPONSE TO 89.**        Waterstone admits the language quoted is contained in the employment agreements Mutual Mortgage provided with respect to the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 89 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 89 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies that it influenced, induced, or coerced any Mutual Mortgage employee to violate any provisions of any employment agreement that may have existed between an employee and Mutual Mortgage.  Waterstone denies any remaining allegations.

90.    Third, WaterStone influenced, induced, or coerced the Departed Employees to violate the provision of the Employment Agreements imposing a duty of loyalty. Specifically, the Employment Agreements provide that the duty of loyalty owed by the Departed Employees to Mutual Mortgage, and that the duty of loyalty required the Departed Employees to "devote his/his entire productive time, ability, and attention to the business of the Company consistent with good industry practices" and prohibits the Departed Employees from "render[ing] any loan origination services to any other person or entity, regardless of whether or not those loan origination services would present a conflict of interest for Loan Originator in the performance of his/her duties for Company." Employment Agreement § 9.1. Through the conduct described in detail above, WaterStone influenced, induced, or coerced the Departed Employees to violate this provision of the Employment Agreements.

**RESPONSE TO 90.**        Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual Mortgage provided with respect to some of the persons listed in response to

38

paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 90 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 90 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

91.    Fourth, WaterStone influenced, induced, or coerced the Departed Employees to violate the provision of the Employment Agreements prohibiting the Departed Employees from disclosing personal borrower information "to any unauthorized person." Employment Agreement § 15.1. Through the conduct described in detail above, WaterStone influenced, induced, or coerced the Departed Employees to violate this provision of the Employment Agreements.

**RESPONSE TO 91.**        Waterstone admits the language cited is contained in some of the documents titled "Loan Originator Employment Agreement" that Mutual Mortgage provided with respect to some of the persons listed in response to paragraph 17. Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 91 as to the language in any employment contract of any other former Mutual Mortgage employee and denies the allegations on that basis. To the extent Mutual Mortgage intended paragraph 91 to allege legal duties imposed by the language cited, Waterstone further lacks information sufficient to form a belief as to the truth of those allegations, which involve legal conclusions, and denies the allegations on that basis. Waterstone denies any remaining allegations.

39

92.    Mutual Mortgage has suffered harm through the lost profits, loss of business and goodwill in the marketplace and with consumers due to WaterStone's misconduct.

**RESPONSE TO 92.**    Waterstone denies.


## CLAIM IV: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

93.    Mutual Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

**RESPONSE TO 93.**    Waterstone repeats and incorporates its responses to the allegations in paragraphs 1 through 92.


94.    The Departed Employees owed a fiduciary duty to Mutual Mortgage to act in the best interests of Mutual Mortgage. The Departed Employees violated their fiduciary duty when they acted not for Mutual Mortgage's benefit, but to benefit themselves and WaterStone by soliciting Mutual Mortgage employees to leave Mutual Mortgage to work at WaterStone, diverting borrowers to WaterStone, and giving WaterStone Confidential and Trade Secret Information.

**RESPONSE TO 94.**    The allegations of paragraph 94 state a legal conclusion to which no response is required. To the extent a response is required, Waterstone lacks information sufficient to form a belief as to the truth of the allegations in paragraph 94 and denies the allegations on that basis.


95.    WaterStone knew the Departed Employees it solicited for employment, and for disclosure of Confidential and Trade Secret Information, owed fiduciary duties to Mutual Mortgage.

**RESPONSE TO 95.**    Waterstone denies.


96.    WaterStone's actions substantially assisted and encouraged the Departed Employees to breach their fiduciary duties owed to Mutual Mortgage.

**RESPONSE TO 96.**    Waterstone denies.

40

97.    WaterStone's unlawful conduct has caused Mutual Mortgage to suffer substantial damages.

**RESPONSE TO 97.**        Waterstone denies.

## AFFIRMATIVE DEFENSES

Waterstone asserts the following affirmative defenses:

1.    The Amended Complaint fails to state a claim upon which relief may be granted.

2.    The claims are barred due to lack of enforceable restrictive covenants and/or contracts.

3.    The claims are barred by Mutual Mortgage's material breach of the employment agreements, including failure to compensate the former employees.

4.    The claims are barred, in whole or in part, by Mutual Mortgage's failure to mitigate its damages.

5.    The claims are barred, in whole or in part, by the doctrines of waiver, estoppel, unclean hands, laches, and/or any combination thereof.

6.    The claims are barred, in whole or in part, because none of the alleged acts or omissions of Waterstone were the proximate cause of the injuries allegedly sustained by Mutual Mortgage, including that causation is tied to Mutual Mortgage's failure to create a work environment attractive to its employees, failure to offer a broad

41

scope of loan products, failure to maintain efficient underwriting procedures, and failure to otherwise support its employees.

7.    Mutual Mortgage's trade secret claims are barred because the allegedly trade secret information is readily ascertainable by proper means.

8.    Plaintiff's trade secret claims are barred because the allegedly trade secret information lacks independent economic value.

9.    Plaintiff's trade secret claims are barred because the allegedly trade secret information was not the subject of reasonable efforts to maintain its secrecy.

10.    The claims are barred due to Mutual Mortgage's failure to maintain information as confidential and/or waiver of confidentiality.

11.    The claims are barred by an employee's right to engage in permissible preparatory measures when changing employers.

12.    Mutual Mortgage would be unjustly enriched by any recovery.

13.    Mutual Mortgage is barred from asserting punitive damages. Any award of punitive damages would violate the due process and equal protection guarantees, and other substantive and procedural constitutional safeguards.

14.     Mutual Mortgage is barred from pursuing punitive damages because the alleged acts and omissions, if any, fail to rise to the level required to sustain an award of punitive damages and do not approach wanton or willful conduct.

15.     Mutual Mortgage's tort claims are barred in whole by the economic loss doctrine.

16.     Mutual Mortgage's claims are barred because they contravene public policy.

17.     Plaintiff's claims for attorney's fees and expenses are barred in that Waterstone has not acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble or expense in any transaction underlying Plaintiff's lawsuit.

18.     Waterstone reserves the right to assert additional affirmative defenses as may be determined applicable during discovery and by the evidence.

## **PRAYER FOR RELIEF**

WHEREFORE, Waterstone respectfully requests that the Court dismiss the Plaintiff's Amended Complaint, upon the merits and with costs awarded, together with attorney's fees, and such other relief as the Court deems appropriate.

Dated:  November 9, 2022.　　　　　*s/ Carolina Y. Blanco*
　　　　　　　　　　　　　　　　　Scott A. McLaren (FBN: 414816)
　　　　　　　　　　　　　　　　　Carolina Y. Blanco (FBN: 0098878)
　　　　　　　　　　　　　　　　　HILL, WARD & HENDERSON, P.A.
　　　　　　　　　　　　　　　　　101 East Kennedy Blvd., Suite 3700
　　　　　　　　　　　　　　　　　Post Office Box 2231
　　　　　　　　　　　　　　　　　Tampa, Florida 33601
　　　　　　　　　　　　　　　　　(813) 221-3900 (Telephone)
　　　　　　　　　　　　　　　　　carolina.blanco@hwhlaw.com
　　　　　　　　　　　　　　　　　scott.mclaren@hwhlaw.com

　　　　　　　　　　　　　　　　　Maria Kreiter (admitted pro hac vice)
　　　　　　　　　　　　　　　　　Annie Eiden (admitted pro hac vice)
　　　　　　　　　　　　　　　　　GODFREY KAHN S.C.
　　　　　　　　　　　　　　　　　833 East Michigan Street, Suite 1800
　　　　　　　　　　　　　　　　　Milwaukee, WI 53202
　　　　　　　　　　　　　　　　　(414) 287-9466 (Telephone)
　　　　　　　　　　　　　　　　　mkreiter@gklaw.com
　　　　　　　　　　　　　　　　　aeiden@gklaw.com

　　　　　　　　　　　　　　　　　*Attorneys for Defendant Waterstone Mortgage*
　　　　　　　　　　　　　　　　　*Corporation*