IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>　　　　Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**WATERSTONE MORTGAGE CORPORATION'S
MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF FEES**

**I.　INTRODUCTION**

Plaintiff Mutual of Omaha Mortgage, Inc. failed to produce multiple categories of key documents, and Mutual's amended discovery responses following the parties' meet and confer remain vague and evasive. Defendant Waterstone Mortgage Corporation cannot tolerate further delay. It hopes to conduct depositions in March — which is already beyond when Waterstone would have preferred to conduct its fact witness depositions — and needs Mutual's complete responses and document production before the depositions. Mutual has had ample time to respond: Mutual filed suit more than six months ago on July 22, 2022; has had Waterstone's discovery since October 4, 2022; and had additional time to amend its written responses and supplement its document production following the parties' meet and confer. Waterstone moves to compel and for an award of fees.

1

## II. BACKGROUND FACTS

1. <u>Mutual's Discovery Responses</u>.

On October 4, 2022, Waterstone served Mutual with its first set of requests for admission, document requests, and interrogatories (the "Discovery Requests"). (Maria Kreiter Declaration ("Kreiter Decl.") ¶ 2.) Mutual responded on November 3, 2022 (*id*. ¶ 3 Ex. A-C), but its written responses relied on a volume of boilerplate objections and were unclear as to whether documents would be produced. (*Id*. ¶ 3.) For example, Mutual responded to all interrogatories by stating the response could be ascertained from documents Mutual produced, without identifying the applicable documents. (See Kreiter Decl. ¶ 4, Ex. B at Resp. to Interrog. 1-8.) In addition, in response to all but two requests for production, Mutual responded (many times after a slew of objections) "Plaintiff will produce relevant, non-privileged documents in its possession, custody, and control responsive to this Request**, if they exist**." (See Kreiter Decl. ¶ 5 and Ex. A at Reqs. 1-11, 14-30 (emphasis added).) Mutual's document production, which consisted of 322 documents, did not come close to satisfying Waterstone's requests and it was not clear whether Mutual had any responsive documents, would produce them, or had even started searching for them given that Mutual did not even know "if they exist." (*Id*. ¶ 6.)

2. <u>The Parties' Meet and Confer</u>.

Waterstone sent a meet and confer letter on Monday, December 12, 2022 and requested a conference call that week to discuss its concerns. (*Id*. ¶ 7, Ex. D.) Mutual

did not respond until Waterstone followed up twice attempting to set a call. (*Id.* ¶ 8, Ex. E.) The parties ultimately did meet and confer on December 20, 2022, which resulted in Waterstone giving Mutual until January 6, 2023 to amend its discovery responses, supplement its document production, and provide a privilege log. *Id.* at ¶ 9, Ex. F.) In addition, by letter dated January 4, 2023, Waterstone demanded that Mutual provide a complete response to Interrogatory 1, in particular, by January 6, 2023, as Interrogatory 1 requests an itemization of damages, and Mutual's counsel had orally mentioned a new theory of damages. (*Id.* ¶ 10, Ex. G.)

    3.  <u>Mutual's supplemental production and amended responses</u>.

Mutual provided amended responses and supplemented its document production on January 6, 2023. (*Id.* at ¶ 12, Ex. H-I.) However, the amended responses and supplemental production largely ignored the deficiencies Waterstone raised. (*Id.* ¶ 13.) Nor did Mutual produce a privilege log, despite the parties agreeing to exchange privilege logs that date. (*Id.* ¶ 14.)

### III.  APPLICABLE LEGAL STANDARDS

When a party fails to answer an interrogatory submitted under Rule 33 or fails to permit inspection of documents under Rule 34, "[the] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). While discovery is "intended to operate with minimal judicial supervision," motions to compel discovery under Rule 37(a) "are committed to the sound discretion of the trial court." *Williams v. Asplundh Tree Expert*

*Co.*, 3:05-cv-479-J-20MCR, 2006 WL 8439169, at *1 (M.D. Fla. Jan. 9, 2006) (citing *Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984)). Further, under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts in this district have construed this rule liberally, noting that "[t]he scope of discovery under Rule 26(b) is broad." *Stovall v. MRS BPO, LLC*, No. 6:11-cv-941-Orl-28DAB, 2012 WL 12898983, at *2 (M.D. Fla. July 30, 2012).

IV. **ARGUMENT**

    A. **Mutual's Amended Interrogatory Responses are Insufficient.**

        i. **Interrogatory 1.**

In response to Interrogatory 1, which asks Mutual to "Itemize Your damages, including the formula used to calculate those damages," Mutual asserted an array of objections, stated its response could be found in unidentified documents it produced in discovery (which is insufficient for the reasons discussed in Section IV(A)(ii), below), and lists the following unquantified categories of damages: "lost revenue and profits from loans that were improperly diverted from Plaintiff to Defendant" and "ill-gotten gains, including compensation paid or advanced by Defendant to Plaintiff's prior employees in exchange for unlawful conduct that caused the closure of two of Plaintiff's branches." (Kreiter Aff. Ex. I at Resp. to Interrog. 1.)

While Mutual contends further discovery will allow it to amend its responses, the case has been pending for more than six months. And, the only concern Mutual

4

has ever raised with respect to the completeness of Waterstone's discovery responses related to Waterstone's production of employment agreements—a concern raised for the first time on December 20, 2022 that Waterstone addressed within two days.[1] At the October 12, 2022 motion hearing, Mutual estimated its damages to be $250,000 (ECF docket no. 40 at pg. 12.) and Interrogatory 1 now indicates Mutual seeks damages of $4,440,002.42 in addition to the unspecified categories of damages listed above. Following the parties' meet and confer, Waterstone sent Mutual a letter emphasizing the importance of Mutual's complete response to Interrogatory 1, in particular, by January 6, 2023 so that Waterstone could understand all theories of damages asserted and the associated amounts at issue. (Kreiter Aff. Ex. G.) Waterstone is entitled to know the damages Mutual seeks as to all categories of purported loss so that it may assess its exposure (for settlement purposes and otherwise), conduct fact investigation, and inform a damages expert.

The Court should order full and complete disclosure in response to Interrogatory 1, including disclosure of all damages sought with respect to "lost

---

[1] Specifically, Mutual raised for the first time during the December 20, 2022 meet and confer that Waterstone failed to produce compensation agreements applicable to the employees who left Mutual and joined Waterstone, which Mutual references in its amended response to Interrogatory 1. (Kreiter Decl. ¶ 15.) What Mutual's amended response does not state is that Mutual waited months to express concern and, once it did, Waterstone substantively responded the next day, December 21, 2022, and invited a meet and confer for December 23 or 26, 2022. (*Id.* ¶ 16) Waterstone also immediately checked its production and learned the compensation agreements had, in fact, been omitted. (*Id.* ¶ 17) Waterstone supplemented its production with the requested agreements on December 22, 2022. (*Id.* ¶ 18.) Mutual has never indicated further concern related to Waterstone's production or discovery responses. (*Id.* ¶ 19.)

revenue and profits" and "ill-gotten gains," along with the supporting rationale.

### ii.    Interrogatories 2-8.

In response to Interrogatories 2-8, Mutual's amended responses state "the answers to this Interrogatory can be ascertained from documents produced by Plaintiff" without Mutual identifying the documents it contends contain responsive information. (*See* Kreiter Decl., Ex. I at Resp. to Interrog. Nos. 2-8.) Under Fed. R. Civ. P. 33(d)(1), a party may answer an interrogatory by reference to business records produced by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." *See also Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10-CV-753-FTM-36, 2011 WL 4382104, at *6 (M.D. Fla. Sept. 20, 2011) (referencing documents produced without pointing specifically to where in the files the information could be found does not comply with Fed. R. Civ. P. 33(d)). As this Court has explained, Rule 33(d) "was not intended to permit parties to respond by 'directing the interrogating party to a mass of business records or by offering to make all of their records available.'" *Ecolab Inc. v. Int'l Chem. Corp.*, No. 618CV1910ORL41GJK, 2020 WL 109693, at *5 (M.D. Fla. Jan. 8, 2020) (quoting *Haughton v. Dist. of Columbia*, No. 12-cv-1767 (KBJ-AK), 315 F.R.D. 424, 427 (D.D.C. July 15, 2014)). Waterstone requested that Mutual identify the records it believes are responsive to each interrogatory by bates-number in its December 12, 2022 meet and confer letter, and again during the meet and confer call. (Kreiter Aff. Ex. D at pg. 1.) Mutual did not correct the deficiency in its amended responses and should be ordered to do so.

Moreover, while there may be documents Mutual produced that it subjectively believes are responsive to certain interrogatories (unbeknownst to Waterstone), Waterstone has extensively reviewed Mutual's original and supplemental production and cannot discern any documents that might possibly respond to interrogatories that seek fundamental information related to damages such as Interrogatory 3: "With respect to all loans You [Mutual] contend the Departed Employees and/or Waterstone closed with Waterstone in violation of Your rights, or through other wrongdoing for which You seek recourse in this suit, Identify the borrowers associated with the loans, the loan amount, the loan type, and the amount of damages you seek, if any." (Kreiter Decl. Ex. I at Resp. to Interrog. 3); *see also* Interrogatory No. 5 and 6 (seeking identification of loans originated by the Departed Employees that, in fact, closed with Mutual). Mutual is necessarily aware of the loans in its pipeline when the Departed Employees resigned. In addition, more than three months ago, on October, 31, 2022, Waterstone timely produced spreadsheets of the loans it closed within two months after the Departed Employees of the relevant branches joined Waterstone. (Kreiter Decl. ¶ 11.) Those spreadsheets show, among other information, the closing date, borrower, loan officer, loan amount, and loan type. Waterstone needs to know which of the disclosed loans form the basis for Mutual's alleged damages. (*Id.*) Mutual's refusal to disclose even the loans it contends are at issue further prevents Waterstone from assessing its exposure, conducting fact investigation, and informing a damages expert.

      Waterstone should not be put in a position of having to guess which documents

Mutual intended to serve as its response to the interrogatories. Nor should Mutual evade disclosure by making a vague claim of that it produced responsive documents, particularly when none were provided. For all of these reasons, the Court should order Mutual to (i) identify by bates-number the documents it was referencing when it put in its written responses to Interrogatories 2-8 that previously produced documents reflect the information requested or (ii) comprehensively answer each of Waterstone's interrogatories in narrative form.

### iii. Interrogatory 8.

In response to Interrogatory 8, which requests that Mutual "identify with particularity all trade secrets" that it relies upon, Mutual objects that the interrogatory calls for a legal conclusion and is unduly burdensome. (Kreiter Decl. Ex. I at Resp. to Interrog. 8.) In addition, Mutual references back to its Complaint allegations, which include broad descriptions such as "profit and loss data" and "borrower documents and information" and "forms." (*See id*.) Waterstone is entitled to identification of the purported trade secrets at issue "with particularity," as it requested.

Waterstone's request is consistent with Eleventh Circuit precedent: "[f]or there to be actionable misappropriation, the party asserting trade secret protection bears the dual burden of describing the alleged trade secret information and also showing that it has taken reasonable steps to protect this secrecy." *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1287, 2007 WL 2781062 (S.D. Fla. 2007) (citing *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998).) Further, "[t]he party asserting trade secret protection cannot claim trade secret privilege. *Id*. (citing *Del*

*Monte Fresh Produce Co. v. Dole Food Co.*, 148 F.Supp.2d 1322, 1324 (S.D.Fla.2001) (granting motion to compel discovery about the alleged trade secrets)). **"Rather the party asserting trade secret protection must describe the allegedly misappropriated trade secrets with reasonable particularity."** *Id*. (emphasis added) citing *Del Monte* at 1325. Waterstone is entitled to know, with particularity, what documents and information Mutual contends are its trade secrets so that Waterstone is positioned to challenge those claims. As such, Waterstone seeks an order that Mutual respond to Interrogatory 8 with the bates-number of the documents alleged to reflect Mutual's trade secrets and specify whether Mutual claims the full document or certain content within the identified document(s) constitute its trade secret.

### B. Mutual Should Be Ordered to Supplement Its Document Production.

Mutual's amended responses to all but two of the requests for production state, after a variety of objections in most instances, as follows: "Subject to and without waiving the objections above, Plaintiff *has produced* documents in its possession, custody, and control responsive to this Request." (*See* Kreiter Decl. Ex. H at Resp. to Requests 1-11, 14-30 (emphasis added).) The problem is that Mutual did not produce responsive documents as it promised. Waterstone submits the below list of document requests for which it does not have any responsive documents or has some responsive documents but believes additional documents likely exist. Waterstone seeks an Order compelling all documents responsive to these requests.

     **i.** **Requests 2 and 3 (Kreiter Decl. Ex. H):** Any forensic image procured from any electronic device used by any of the Departed Employees during employment with Mutual (Req. 2) and reports or analysis procured from the Departed Employees' electronic devices (Req. 3).

- **Documents Produced?** No

- **Relevance:** Mutual's Complaint contends the "Departed Employees," not Waterstone, took and used its confidential information and trade secrets. Mutual's lack of fact allegations involving Waterstone was a focus of Waterstone's motion to dismiss. If Mutual has further evidence involving the Departed Employees' activities—which vindicates Waterstone by omission—that evidence should be produced.

     **ii.** **Requests 5, 10, 28, 29 (Kreiter Decl. Ex. H):** Documents and correspondence that reflect or discuss any of the Departed Employee's resignation from Mutual, decision to join Waterstone, or transition from Mutual to Waterstone (Req. 5); documents that reflect correspondence with the Departed Employees following their resignation (Req. 10); documents from April 1, 2022-present that regard Waterstone, the Departed Employees, or the pending suit (Req. 28); and documents that announce the resignation of the Departed employees or their decision to join Waterstone (Req. 29).

- **Documents Produced?** Mutual produced some documents reflecting the Departed Employees' resignation notices and some correspondence amongst the Departed Employees. Mutual did not produce any internal correspondence of managers, decision makers, or other employees.

- **Relevance:** Mutual contends the Departed Employees tried to move as many loans as possible to Waterstone in violation of their non-solicitation duty. That is not true. In fact, the Departed Employees sequenced their exit so that

10

Mutual would have sufficient staff to close loans in Mutual's pipeline. In addition, the Departed Employees continued to answer questions from Mutual's employees necessary to close loans well after their resignation—despite Mutual commencing this suit and withholding the Departed Employees' commissions on the very loans they went above and beyond to close for Mutual. Correspondence reflecting that reality belie the allegations of wrongdoing at the heart of the case. In addition, Waterstone expects there will be relevant communications amongst Mutual decision makers regarding the Departed Employees' decision to join Waterstone, the transition, and this suit. Those communications may reveal ulterior motive for the pending claims.

    iii. **Request 7 (Kreiter Decl. Ex. H).** All "policies and procedures of Mutual Mortgage," all "Company policies, procedures, and requirements," and all "applicable duties and requirements of the Company" that Mutual relies upon, as alleged in Complaint ¶¶ 20-21.

- **Documents produced?** No.

- **Relevance**: These are documents Mutual relies upon in its Complaint. Mutual contends the Departed Employees breached certain duties owed to it embodied in these documents and is attempting to hold Waterstone liable for those breaches. Waterstone is entitled to the documents Mutual cites.

    iv. **Request 8 (Kreiter Decl. Ex. H).** The personnel file for each of the Departed Employees.

- **Documents produced?** No.

- **Relevance**: Many of the Departed Employees worked for Mutual in the first place because the branch managers chose to work for Mutual, and the

Departed Employees followed. Nothing illegal transpired then or now. Rather, consistent with industry norm, the employees have simply again followed their manager—this time to Waterstone. The personnel files are likely to establish the Departed Employees have moved together in the past and that Mutual itself has enjoyed that industry norm. Further, the personnel files are likely to contain complete copies of all contracts binding on the employees, including any amendments to the employment agreements and/or restrictive covenants Mutual contends were breached by the Departed Employees.

> v. **Request 11 (Kreiter Decl. Ex. H).** A list of all loan products offered by Mutual from January 1, 2022 through August 1, 2022 that would have been available to borrowers originated by the Departed Employees.
>
> - **Documents produced?** No.
>
> - **Relevance**: Mutual claims the Departed Employees breached their

non-solicitation duty, and thereby caused all of the other Departed Employees to leave Mutual for Waterstone. That is not true. In addition to the Departed Employees following their branch managers, as many had done in the past, Mutual did not offer sufficient loan products. The Departed Employees lost out on commissions because Mutual did not offer the array of loan products that would have allowed the Departed Employees to financially leverage the real estate boom experienced leading up to their resignation. Waterstone seeks to contrast the limited loan products offered by Mutual with its broad array of offerings. If the Departed Employees left because of Mutual's inferior product offerings, any loss Mutual suffered is due to fair competition, not

wrongdoing by Waterstone.

      **vi.**    **Requests 14-23, 25-26 (Kreiter Decl. Ex. H).**

- **Documents produced?** Some production.

- **Relevance**: With respect to each of these requests, there are at least some documents produced by Mutual that Waterstone can discern as potentially responsive. However, given that Mutual nearly universally declared it has produced all responsive documents, even when it clearly did not, Waterstone seeks an Order that Mutual certify it has produced **all** documents responsive to these requests so that Waterstone is assured of completeness or, in the alternative, identify with particularity the documents responsive to the requests that it is withholding.

**C. Mutual Should Be Ordered to Produce a Privilege Log.**

As a final matter, Mutual did not produce a privilege log by January 6, 2023, as agreed during the December 20, 2022 meet and confer call. Waterstone made clear in its December 12, 2022 letter that this Court's discovery guidelines deem discovery objections without a privilege log improper:

> A party who responds to or objects to discovery requests and who withholds information otherwise discoverable, asserting that the information is privileged or subject to other protection from discovery, must assert the claim expressly and must describe the nature of the documents, communications, or things not produced or disclosed, such that, without revealing the privileged or protected information itself, the description will enable other parties to assess the applicability of the privilege or protection . . . . **Withholding materials without notice is contrary to Rule 26 and may result in sanctions.** If a motion to compel is filed, the party asserting a protection generally has the obligation to establish by affidavit or other evidence, all facts essential to the establishment of the privilege or protection relied upon.

Middle District Discovery Handbook § VI.A.1 (emphasis added). Mutual should be ordered to produce a privilege log in accordance with the cited Middle District guidance, Fed. R. Civ. P. 26(b)(5), and the parties' agreement to exchange logs.

### D. REQUEST FOR ATTORNEYS' FEES

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, where a motion to compel is granted, "the court *must*, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37 (a)(5)(A) (emphasis added). Mutual's failure to comply with its discovery obligations is material. Pursuant to Federal Rule of Civil Procedure 37(a)(5), Waterstone requests that Mutual be ordered to pay the reasonable expenses, including attorney fees, incurred to bring this Motion.

### E. CONCLUSION

For the reasons set forth above, Waterstone respectfully requests the Court grant its motion to compel in full and award Waterstone the reasonable attorney's fees incurred to pursue this motion.

Respectfully Submitted,

*s/Carolina Y. Blanco*
Carolina Y. Blanco (FBN: 0098878)
Carolina.blanco@hwhlaw.com
jaime.schill@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)

        Maria Kreiter (*Admitted PHV*)
        mkreiter@gklaw.com
        GODFREY KAHN S.C.
        833 East Michigan Street, Suite 1800
        Milwaukee, WI 53202
        (414) 287-9466 (Telephone)

        *Attorneys for Defendant Waterstone Mortgage Corporation*

**LOCAL RULE 3.01(G) CERTIFICATION**

Pursuant to Local Rule 3.01(g), counsel for Waterstone certifies they have conferred in good faith with opposing counsel and engaged in extensive and ongoing discussions concerning the issues presented in this Motion. Although the parties resolved many issues, counsel for Plaintiff does not agree to the relief sought in this Motion. On December 12, 2022, counsel for Waterstone sent a letter to Mutual's counsel outlining the deficiencies in Mutual's responses to Waterstone's Discovery Requests and requested that Waterstone supplement its responses and attend a meet and confer. The parties met and conferred on these issues on December 20, 2022, and Mutual agreed to produce additional documents and amend its responses to Waterstone's requests by January 6, 2023. Counsel for Waterstone sent another letter to Mutual's counsel on January 4, reiterating its need for an amended itemization of damages in light of continued settlement discussions between the parties. Mutual produced deficient amended responses and additional documents on January 6, 2023, necessitating this Motion.

        s/Maria L. Kreiter
        Maria Kreiter (*Admitted PHV*)
        mkreiter@gklaw.com
        GODFREY KAHN S.C.
        833 East Michigan Street, Suite 1800
        Milwaukee, WI 53202
        (414) 287-9466 (Telephone)

        *Attorneys for Defendant Waterstone Mortgage Corporation*