## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) ) Civil Action No. 22-CV-01660 |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| WATERSTONE MORTGAGE CORPORATION, | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFF MUTUAL OF OMAHA MORTGAGE, INC.'S OPPOSITION TO DEFENDANT WATERSTONE MORTGAGE CORPORATION'S MOTION TO COMPEL AND FOR AN AWARD OF FEES

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual Mortgage"), by and through its undersigned counsel, submits this opposition to defendant WaterStone Mortgage Corporation's ("Defendant" or "WaterStone") motion to compel and for an award of fees (Doc. No. 42) (the "Motion"). For the reasons set forth below, in the accompanying declaration of Christopher L. McCall (the "McCall Decl."), and the exhibits thereto, the Court should deny the Motion in its entirety.

## INTRODUCTION

Defendant's Motion is not only substantively meritless, as it purports to impose unreasonable, burdensome, and non-reciprocal requirements upon Plaintiff that have no basis in the Federal Rules of Civil Procedure, it is a transparent attempt to avoid the merits of this case by weaponizing the discovery process and forcing Plaintiff to

expend time and resources responding to an endless series of letters and, now, a formal motion. Mutual Mortgage is the plaintiff in this case, and in an effort to avoid unnecessary and costly discovery, served Defendant with a narrowly-tailored set of 14 document requests, and no other discovery. *See* McCall Decl., Ex. A (Plaintiff's document requests). Defendant, on the other hand, has served nearly three times as many discovery requests (a total of 40), including no less than 30 document requests – more than double the number served by Plaintiff – 8 interrogatories, and two requests for admission. *See* McCall Decl., Ex. B (Defendant's interrogatories), Ex. C (Defendant's document requests), Ex. D (Defendant's requests for admission). Plaintiff dutifully responded to all 40 of Defendant's discovery requests and has produced 3,483 pages of responsive documents. *See* McCall Decl., Ex. E (Plaintiff's response to Defendant's interrogatories), Ex. F (Plaintiff's response to Defendant's document requests), Ex. G (Plaintiff's response to Defendant's requests for admission). After Defendant raised objections to certain of Plaintiff's responses, *see* Declaration of Maria L. Kreiter (Doc. No. 43) ("Kreiter Decl."), Ex. D, Plaintiff agreed to amend certain of its responses, not because of any substantive deficiencies, but to avoid precisely the type of distracting, time-consuming, and expensive court fight Defendant has now initiated. *See* McCall Decl., Ex. H (Plaintiff's amended response to Defendant's interrogatories), Ex. I (Plaintiff's amended response to Defendant's document requests).

In the Motion, Defendant is seeking to impose discovery requirements on Plaintiff that not only have no basis in the Federal Rules of Civil Procedure, but are requirements that Defendant itself has not followed. For example, in its December 12, 2022 letter, Defendant asserted that it is an absolute requirement of the Federal Rules that a party is always required to serve a privilege log when producing documents, *see* Kreiter Decl., Ex. D at p. 2, despite the fact that Defendant itself had not done so, McCall Decl. ¶ 12.

As to Defendant's request in the motion to compel that Plaintiff be required to provide additional responsive documents, Defendant is either wrong about the documents Plaintiff has produced, or Defendant's requests are based on nothing more than sheer speculation. For example, on page 11 of the Motion, Defendant asserts that Plaintiff has not produced any internal policies and procedures in response to number 7 of Defendant's 30 document requests, but Defendant has either failed to review Plaintiff's document productions or is mischaracterizing them, because such documents have been produced. Plaintiff's Complaint cites a number of instances in which Plaintiff's former employees sent to their personal email addresses documents that belong to Plaintiff, and Plaintiff has produced these emails and attachments, which include multiple internal Mutual of Omaha documents setting forth its policies and procedures, on November 3, 2022. *See* MOM-000088-212 (email cited in paragraph 40 of the Complaint and the attachments thereto, which include internal Mutual of Omaha documents entitled, "Servicing FAQ," MOM-0000097-102, and

"Sending Forms to be eSigned," MOM-0000192-197), MOM-00000393-454 (email cited in paragraph 42 of the Complaint and the attachments thereto, which include internal Mutual of Omaha documents entitled, "Flood Insurance Requirements/Procedures," MOM-0000411-432, and "Reconsideration of Value Request Requirements," MOM-0000434-436). Thus, Defendant is wrong to assert that no such documents have been produced.

Notwithstanding Plaintiff's view of the merits of Defendant's arguments, in an effort to avoid further delay and motion practice, Plaintiff is willing to amend certain of its discovery responses, as explained below.

## ARGUMENT

### I.   Defendant's Motion Is Procedurally Improper

As a threshold matter, Defendant's Motion is procedurally improper. As Defendant acknowledges in the Motion, Plaintiff served amended discovery responses on January 6, 2023, Motion at 3, but Defendant never identified to Plaintiff any deficiencies in the January 6, 2023 responses, nor did Defendant seek to meet and confer regarding the amended responses. Rather than follow the Court's procedures for informally resolving discovery disputes, Defendant brought the instant Motion.

### II.   Plaintiff Has Described Its Damages and Trade Secrets In Detail  and With the Specificity Required

Defendant's arguments concerning the adequacy of Plaintiff's responses to discovery requests about damages and trade secrets are based on the incorrect assumption that, prior to the completion of discovery, a plaintiff is required to describe

its damages and the trade secrets that were misappropriated with mathematical precision.  That is simply not the law, nor is it logical.  The purpose of the *discovery* process is to *discover* information that supports Plaintiff's claims, much of which is uniquely in the possession of the Defendant or otherwise unknown to Plaintiff.  In this case, discovery is ongoing and the first deposition is taking place on today's date. Under these circumstances and based on the relevant standards, Plaintiff's detailed and robust descriptions of its damages and trade secrets are more than adequate to satisfy Plaintiff's obligations under the Federal Rules and all applicable laws.

Specifically, Plaintiff responded to Defendant's interrogatory regarding damages on January 6, 2023 as follows:

> Plaintiff objects to this Interrogatory on the grounds that it seeks information in the possession, custody, or control of Defendant, calls for a legal conclusion, and is premature because discovery in this case is ongoing.  Defendant only produced documents necessary for Plaintiff's analysis of its damages on December 22, 2022 – despite the fact that such documents were directly responsive to multiple of Plaintiff's September 29, 2022 document requests and should have been produced months ago – and depositions of key witnesses that Plaintiff intends to take are likely to reveal additional information relevant to Plaintiff's damages.  At this time, and subject to Plaintiff's right to amend and/or supplement this response as Plaintiff obtains more information in ongoing discovery, Plaintiff states that its damages include, but are not limited to, the following non-exhaustive categories:
>
> - lost revenue and profits from loans that were improperly diverted from Plaintiff to Defendant.  Information regarding these loans is uniquely in the possession of Defendant and Plaintiff's former employees who are now employed by Defendant, and Plaintiff expects further discovery to yield information sufficient to allow Plaintiff to itemize these damages.

- profits Plaintiff would have made but for Defendant's unlawful conduct, which caused Plaintiff to have to close its branches in Tampa and Daytona Beach. Plaintiff calculates its lost profit damages over the 18-month period beginning on June 30, 2022 and ending on December 31, 2023 based on the prior financial performance of the two branches. From June 30, 2022 to December 31, 2023 the Tampa branch would have yielded profits in the amount of $2,716,040.53, and the Daytona Beach branch would have yielded profits in the amount of $1,723,961.89, for a total of $4,440,002.42.

- ill-gotten gains, including compensation paid or advanced by Defendant to Plaintiff's prior employees in exchange for the unlawful conduct that caused the closure of two of Plaintiff's branches.

McCall Decl., Ex. H, at pp. 5-6.

Defendant vaguely asserts that this response is insufficient, but does not explain what Plaintiff failed to do. *See* Motion at 5-6. Defendant appears to object to Plaintiff's statement that its damages calculations will be informed by further discovery, but that is entirely proper.

In a similarly vague fashion, Defendant asserts Plaintiff's response to Interrogatory 8 was inadequate, but Defendant does not include for the Court Plaintiff's response, and instead Defendant appears to suggest Plaintiff did not respond to the interrogatory. In fact, Plaintiff responded as follows:

Plaintiff objects to this Interrogatory on the grounds that it calls for a legal conclusion and is unduly burdensome.

Subject to and without waiving the objections set forth herein, Plaintiff identifies the following trade secrets that are at issue in this

case, which are described in paragraphs 3 and 37-42 of Plaintiff's First Amended Complaint:

- profit and loss data, including profit margins and profit sharing among different branches;
- loan production revenue information, including origination and processing fees, gains and losses on sales of loans, loan discount points, mortgage pair off fees, and lender paid fees;
- customer pipeline lists;
- customer address lists with 22 columns of detailed data about the customers, their loans, and the loan terms, lists of closed loans, lists of prospective borrowers, and listing agent information;
- borrower documents and information, including sensitive financial information, Social Security Numbers, paystubs, and tax returns;
- employee compensation data, including each employee's salary, bonus, commissions, and 401k contributions; and
- Mutual Mortgage policies and procedures on Mutual Mortgage letterhead, templates for borrower communications, forms, and work flows.

In addition, Plaintiff, pursuant to Federal Rule of Civil Procedure 33(d), states that the answers to this Interrogatory can be ascertained from documents produced by Plaintiff.

McCall Decl., Ex. H, at pp. 11-12. Not only did Plaintiff provide a detailed description of its trade secrets, but courts have consistently held that these types of information can be protected as trade secrets. *See, e.g., RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1352 (M.D. Fla. 2019) (holding that customer lists can constitute trade secrets); *All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC*, No. 21-CV-62221, 2022 WL 2340997, at *11 (S.D. Fla. Apr. 8, 2022) (holding that customer lists and billing information can constitute trade secrets); *Balearia Caribbean, Corp. v. Calvo*, No. 16-23300-CIV, 2017 WL 8780944, at *6 (S.D. Fla. Aug. 3, 2017) (holding that

economic performance reports, sales reports, and profit and loss statements can constitute trade secrets); *United States v. Lee Mem'l Health Sys.*, No. 2:14-CV-437-FTM-38CM, 2018 WL 5014534, at *6 (M.D. Fla. Oct. 16, 2018) (holding that detailed employee compensation data can constitute trade secrets).

### III.    Defendant Should Not Be Permitted to Unliterally Impose Non-Reciprocal Discovery Obligations on Plaintiff

Much of Defendant's Motion seeks to impose requirements on Plaintiff that exceed what is required under the Federal Rules, and are requirements with which Defendant itself has not complied.  The Court should not permit Defendant to unilaterally impose non-reciprocal obligations on Plaintiff.

First, Defendant argues Plaintiff should be required to associate each document produced with the specific discovery request to which that document is being produced (of the 40 requests Defendant has served, in comparison to the 14 served by Plaintiff). While Plaintiff does not believe such an exercise is necessary or proportional to this case, in an effort to avoid further motion practice, Plaintiff will agree to Defendant's request provided Defendant of course agrees to do the same.

Similarly, Defendant requests that Plaintiff be required to "certify" that it has produced all responsive documents, Motion at 13, despite the fact that this is not a requirement under the Federal Rules, Defendant points to no authority requiring such a certification, and Defendant has not provided any such certification.  Plaintiff should not be required to provide such a certification unless Defendant is required to do the same.

8

With respect to a privilege log, as a preliminary matter Plaintiff notes that Defendant's argument that serving a privilege log with each document production is an absolute requirement under the Federal Rules is undermined by the fact that, at the time it first made this argument, Defendant itself had not produced a privilege log (but has now done so). McCall Decl. ¶ 12. Plaintiff has not produced a privilege log to date because discovery is ongoing and Plaintiff is focused on litigating the merits of this case, but will provide a privilege log should the Court require one prior to the close of fact discovery.

### IV.    Defendant's Request for Additional Document Discovery Is Based on Mischaracterizations of Plaintiff's Productions or Pure Speculation

In its Motion, Defendant argues Plaintiff should be required to search for and produce additional documents based on mischaracterization of the documents Plaintiff has already produced and sheer speculation. Motion at p. 9. As discussed above, Defendant claims that Plaintiff had not produced any internal policies and procedures, Motion at p. 11, despite the fact that such documents were produced months ago.

Other requests for additional documents by Defendants appear to be based on nothing more than speculation. For example, on pages 10-11 of its Motion, Defendant notes that Plaintiff has produced a substantial number of documents in response to four of Defendant's 30 document requests, then speculates that additional responsive documents exist, without providing any factual basis for this speculation.

9

Plaintiff collected, reviewed, and produced documents in this action in good faith and in full compliance with the reasonableness and proportionality requirements of the Federal Rules of Civil Procedure and all applicable laws, and nothing in the Motion provides any basis for the Court to require Plaintiff to conduct additional document productions.

**V.    Plaintiff Has Conducted Discovery In Good Faith and Consistent with All Obligations, and Thus There Is No Basis for an Award of Costs or Attorneys' Fees**

There is absolutely no basis for an award of costs or attorneys' fees.  Plaintiff has conducted discovery in good faith, as evidenced by the fact that it carefully considered Defendant's objections raised in its December 12, 2022 letter, and has provided amended discovery responses to address purported deficiencies.  Under the circumstances, there is no basis to award Defendant any costs or attorneys' fees.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated:    February 21, 2023

GUNSTER, YOAKLEY & STEWART, P.A.

By: _/s/ John A. Schifino_
John A. Schifino
Florida Bar No. 0072321
401 East Jackson Street, Suite 1500
Tampa, Florida  33602
Primary email:  jschifino@gunster.com
Secondary email: eservice@gunster.com
Telephone:  (813) 739-6962

MITCHELL SANDLER LLC
Christopher L. McCall (admitted *pro hac vice*)
1120 20th Street N.W., Suite 725
Washington, D.C.  20036
Primary email:  cmccall@mitchellsandler.com
Telephone:  (202) 886-5292

*Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*