## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) ) ) |
|  | Civil Action No. 22-CV-01660 |
| Plaintiff, | ) ) ) |
|  | **PLAINTIFF MUTUAL OF OMAHA** |
| v. | **MORTGAGE, INC.'S RESPONSE IN** |
|  | **OPPOSITION TO DEFENDANT** |
|  | **WATERSTONE MORTGAGE** |
| WATERSTONE MORTGAGE CORPORATION, | **CORPORATION'S MOTION *IN LIMINE*** |
|  | **TO EXCLUDE PLAINTIFF'S** |
|  | **CATEGORY 2 AND CATEGORY 3** |
| Defendant. | **DAMAGES** |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby files this Response in Opposition to Defendant Waterstone Mortgage Corporation's ("Defendant" or "Waterstone") Motion *in Limine* to Exclude Plaintiff's Category 2 and Category 3 Damages ("Motion"). In support thereof, Plaintiff states as follows:

## **INTRODUCTION**

Defendant's Motion is entirely premature. At the time Defendant filed this motion, Plaintiff had not yet disclosed its rebuttal expert witness. Discovery has not yet closed. Dispositive motions have not yet been filed. And trial is not scheduled until February 2024. Indeed, Defendant has yet to provide highly relevant documents responsive to document requests related to damages and causation, and multiple depositions remain to be taken. Yet, Defendant is asking this Court to

1

determine as a matter of law that Mutual's two categories of pleaded damages should be excluded from trial.  There is a reason why Defendant never once cited the legal standard for a motion *in limine* in its Motion: because Defendant knows that such a vehicle is procedurally improper, and without legal basis.  In violation of well-established case law, Defendant is utilizing this "motion *in limine*" as a premature motion for summary judgment to categorically exclude legal theories ahead of discovery's close and  "sterilize [Mutual's] presentation of the case."[1]  On this basis alone, Defendant's Motion must be denied.

In addition, the Motion ignores the legal analysis relevant for the damage analysis in this case, which is that once Mutual establishes causation, a "reasonable yardstick" is only necessary to establish the lost profits.[2]  Mutual easily satisfies both criteria.

With respect to causation, Defendant oversimplifies this case.  Defendant suggests that this action focuses on the voluntary departure of at-will branch employees.  Defendant knows, however, that this case involves an elaborate scheme to usurp Mutual's customer base, proprietary information, and business opportunities to decimate and eliminate Mutual's Florida operations in addition to

---

[1]    *Harris v. Wingo*, No. 2:18-CV-17-FTM-29MRM, 2021 WL 5028201, at *1 (M.D. Fla. Oct. 29, 2021).

[2]    *Nebula Glass Intern., Inc. v. Reichold, Inc.*, 454 F.3d 1203, 1216-17 (11th Cir. 2006).

another branch.  Here, Defendant directed the managers of Mutual's Florida branches to breach their fiduciary duties, and while entrusted with the responsibility to supervise Mutual's Florida operations, utilize access to Mutual's information to steal the entirety of Mutual's Florida business.  Defendant used Mutual's managers to provide it with confidential personnel information, access to employees, and financial information to facilitate the theft of Mutual's operations.  It further utilized Mutual's confidential information about loan products, loan sources, referral sources, pricing, and customer information to allow for the transition of the branches, all facilitated by the managers whose continued employment with Mutual supplied improper and continuous access and use.  Defendant perpetuated this scheme with the direct intent of wiping out Mutual's existence from the state of Florida, which it succeeded in doing.  As set forth more fully herein, Mutual will present sufficient evidence to establish causation as a matter of law during its dispositive motion and at trial.

Having established causation, Mutual need only provide a "reasonable yardstick by which to estimate" its lost profit damages.[3]  While Defendant would have this Court believe that it should focus on the individual at-will employees, that is not the standard.  Defendant wiped out Mutual's entire business in the state of Florida, and therefore, Mutual is entitled to the "lost profits suffered as a result of

---

[3]     *Nebula Glass Inter., Inc.*, 454 F.3d at 1218.

[Defendant's] wrong."[4]  Mutual satisfies this through the deposition testimony of its designated 30(b)(6) corporate representative, Jeffrey Gennarelli, documentary evidence produced in this case, and through its rebuttal expert witness, Candice Rosevear.

Defendant's claims that Mutual has somehow not been sufficiently forthcoming and/or that Mutual lacks a basis for damages are legally improper and factually meritless.  Procedurally, Defendant is asking the Court—before discovery is closed—to invade the province of the jury and assess credibility without the totality of evidence in this case.  *See Nebula Glass Intern., Inc. v. Reichold, Inc.*, 454 F.3d 1203, 1218 n.3 (11th Cir. 2006).  Moreover, Defendant's arguments are premised on a complete misrepresentation of the record.  Mutual has no intention of engaging in a point-by-point debate given the untimely and improper basis for this Motion.  However, by way of example, Defendant's claim that Mutual did not produce necessary spreadsheets critical to Mr. Gennarelli's testimony is simply inaccurate.  In fact, the relevant information was readily available on other spreadsheets produced to Defendant, for which Mr. Gennarelli was prepared to testify.  Mutual's counsel refused to stop the deposition to produce additional documentation that contained the same information already produced.  And that

---

[4]      *Mortgage Now, Inc. v. Stone*, No. 3:09cv80/MCR/MD, 2012 WL 4478950 (N.D. Fla. Sept. 20, 2012).

documentation has since been produced as has all of the documentation underlying the damages spreadsheet and Ms. Rosevear's rebuttal report. Thus, Defendant's accusation is baseless.

## LEGAL STANDARD

The United States Supreme Court has defined a motion *in limine* as "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The Court has broad discretion in determining the admissibility of evidence. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). "Given these motions are generally disfavored, evidence is excluded upon a motion *in limine* only if the evidence is clearly inadmissible for any purpose." *MONY Life Ins. Co. v. Perez*, No. 8:19-cv-2031-WFJ-TGW, 2022 WL 3867568, at *1 (M.D. Fla. Aug. 30, 2022) (quotations omitted). "The movant has the burden of demonstrating that that the evidence is inadmissible on any relevant ground." *Rodriguez v. GeoVera Specialty Ins. CO.*, 426 F. Supp. 3d 1334, 1339 (S.D. Fla. 2019). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4,

2009). "It is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there." *Id.*

## ARGUMENT

## I.    DEFENDANT'S MOTION IN LIMINE IS PROCEDURALLY IMPROPER AND SUBSTANTIVELY PREMATURE.

As a threshold matter, Defendant's Motion misapprehends the purpose of a motion *in limine*, and through it, attempts to elicit an order from this Court disposing of Mutual's claims. Black's Law Dictionary defines a motion *in limine* as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary, *Motion in Limine* (10th 2014). "Motions in limine should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment." *Holder v. Anderson*, No. 3:16-cv-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (citing *Royal Indem. Co. v. Liberty Mut. Fire Ins. Co.*, No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). A district court may therefore deny a motion *in limine* when it "lacks the necessary specificity with respect to the evidence to be excluded." *Bowden ex rel Bowden. v. Wal-Mart Stores, Inc.*, No. CIV. A. 99-D-880-E, 2001 WL 617521, at *1 (M.D. Ala. Feb. 20, 2001).

Further, a motion *in limine* "is not a substitute for a motion for summary judgment," and it is not an appropriate mechanism for testing the law, narrowing the

6

issues to be tried, or attempting to resolve substantive issues. *Royal Indem. Co.*, 2008 WL 2323900, at *1; *see also City of S. Miami v. Desantis*, No. 19-cv-22927-BLOOM/Louis, 2020 WL 7074644, at *15 (S.D. Fla. Dec. 3, 2020) ("Importantly, motions *in limine* should not be used as vehicles to secure substantive rulings on issues in a case, nor should they attempt to ensure that the rules of court will be enforced at trial."); *Offenberg v. Carnival Corp.*, No. 1:19-cv-23334-KMM, 2021 WL 4990899, at *7-8 (S.D. Fla. July 27, 2021) (denying motions *in limine* because the requests were far too broad, sweeping, seemed to challenge the weight of the evidence, not its admissibility, and "seek[] to restrict Plaintiff's triable issues in a way that would have been more properly addressed in a motion for summary judgment"); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003) ("[I]n the guise of addressing limited evidentiary issues, the parties' motions *in limine* would effectively serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself.").

Here, Defendant's Motion is anything but focused on "specific pieces of evidence." *Holder*, 2018 WL 4956757, at *1. This much is evident from its Conclusion where Defendant sweepingly requests that the Court "exclude Mutual's Category 2 Damages of $4,440,002.42 and Category 3 Damages of $750,000." ECF No. 72 at p. 20. Defendant does not request that this Court exclude specific pieces of evidence; rather, Defendant is broadly requesting that this Court rule—as a matter

of law—that Mutual cannot prove its entitlement to lost profits in the amount of $4,440,002.42.[5] Mutual vehemently disagrees with Defendant's position and is fully prepared to demonstrate that at the appropriate time—but not in response to a motion *in limine*. A dispositive motion is the more appropriate vehicle to address this issue, not a motion *in limine*, whereby Defendant is seeking to "secure substantive rulings on issues" in this case. *City of S. Miami*, 2020 WL 7074644, at *15. As such, the Motion is procedurally improper, particularly in light of the fact that discovery has not yet closed, and Defendant still owes Mutual responses to document requests, as well as the deposition of its 30(b)(6) designated corporate representative.

Further, Defendant's Motion is an egregious waste of judicial and litigant resources when considering its procedural posture. At the time of filing its Motion, Mutual had not yet disclosed its rebuttal expert witness whose disclosure was not required until July 14, 2023—over one week after Defendant filed this Motion. Discovery is not closed in this case until July 31, 2023. ECF No. 68. There are five remaining depositions, including three expert witnesses and Defendant's 30(b)(6) corporate representative, and outstanding requests for production and third-party

---

[5] For purposes of this Response, Mutual will only address Defendant's arguments pertaining to Mutual's demand for $4,440,002.42. The Parties have since filed a Stipulation to Grant, in part, Waterstone Mortgage Corporation's Motion *in Limine*: Category 3 ($750,000) Damages to be Excluded. ECF No. 76).

subpoenas.  Dispositive motions are not due to be filed until August 31, 2023.  *Id.*
And the trial is not scheduled until February 5, 2024.  ECF No. 34.

It cannot then be said that any trial is imminent such that a motion *in limine* is ripe for this Court's consideration.  *See Whidden v. Roberts*, 334 F.R.D. 321, 322 (N.D. Ga. 2020).  In *Whidden*, a court denied a plaintiff's motion *in limine* requesting that the court "accept" evidence filed in conjunction with the motion *in limine*.  The court determined that the motion was premature—the trial was not imminent, discovery was still ongoing, and "[i]t would be a substantial waste of judicial resource for the court to address" the admissibility of evidence unnecessarily.  *Id.* at 323.  Similarly, here, the trial is not imminent, and further, this Court is without "sufficient familiarity with the case to determine whether the materials submitted by [Defendant] are even relevant to [the] claims and any possible defenses." *Id.*; *see also White v. Hiers*, No. 1:13-cv-2404-SCJ, 2015 WL 12864204 (N.D. Ga. Mar. 3, 2015) (denying plaintiff's motion *in limine* because discovery in the matter had not yet concluded, and as such, the court found it premature to consider such a motion); *Sanchez v. M&F, LLC*, 2019 WL 13144559 (M.D. Fla. July 11, 2019) (denying the motion *in limine* as premature because the parties had not yet met to exchange their exhibit and witnesses lists in preparing the joint final pretrial statement); *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) (denying a motion *in limine*

without prejudice as premature because *in limine* "motions deal with evidentiary matters and are not to be filed until" trial is imminent).

This Court should reserve all evidentiary rulings until closer to trial in order to have a better understanding of factual context in the case and the evidence that the Parties intend to present to support the claims and defenses. *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011) (noting that evidentiary rulings usually should be deferred until closer to trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context"); *United States v. Goodale*, 831 F. Supp. 2d 804, 808 (D. Vt. 2011) (noting that courts sometimes reserve judgment on motions *in limine* "until trial to ensure the motion is considered in the proper factual context"); *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400-01 (N.D. Ill. 1993) (noting that "evidentiary rulings should be deferred" until "questions of foundation, relevancy and potential prejudice may be resolved in proper context"). At a minimum, no motion *in limine* should be considered until all dispositive motions have been adjudicated by the Court. *See Whidden*, 334 F.R.D. at 324 (stating same). Defendant's Motion is substantively premature for consideration.

## II.    MUTUAL'S DAMAGES ARE NOT SPECULATIVE AND ARE PLEADED WITH REASONABLE CERTAINTY.

Considering the foregoing, Mutual contends that this Court need not determine at this stage whether Mutual has, in fact, pleaded its damages with

reasonable certainty.  Should this Court disagree, Mutual still prevails.  Mutual's damages are not speculative and have been pleaded with reasonable certainty.

In its Motion, Defendant attempts to influence this Court by cherry-picking pieces of depositions, making conclusory arguments, and arguing the facts—all while never citing to a single legal citation for *eleven and a half pages* of its brief. That is because the law is not on its side.  Defendant would have this Court believe that the sole inquiry before it is whether Mutual's alleged damages are based on "mere speculation or conjecture," and that this standard requires absolute certainty, but that is not an accurate representation of the law.

Florida courts are clear that "once causation is proven with reasonable certainty, uncertainty as to the precise amount of the lost profits will not defeat recovery as long as there is a reasonable yardstick by which to estimate the damages." *Nebula Glass Intern., Inc. v. Reichold, Inc.*, 454 F.3d 1203, 1216-17 (11th Cir. 2006).[6]  The Florida Supreme Court in *W.W. Gay* explained, "the 'uncertainty which defeats recovery in such cases' is the cause of the damage rather than the amount.  'If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person.'"    *W.W. Gay Mechanical Contractor, Inc. v.*

---

[6]    Notably, this binding Eleventh Circuit precedent is omitted from Defendant's Motion.

*Wharfside Two, Ltd.*, 545 So. 2d at 1350-51 (quoting *Twyman v. Roell*, 166 So. 215, 218 (Fla. 1936)).  Thus, lost profit damages are recoverable if there is "some standard by which the amount of damages may be adequately determined."  *W.W. Gay*, 545 So. 2d at 1350-51; *accord Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1128 (Fla. 3d DCA 2003).  Florida law provides:

> Difficulty in proving damages or uncertainty as to the amount will not prevent recovery as long as it is clear that substantial (rather than merely nominal) damages were suffered as a result of the wrong, and the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount.

*Crystal Licenses, LLC v. Infinity Radio, Inc.*, 43 So. 3d 68, 74 (Fla. 4th DCA 2010). In other words, so long as causation is established, lost profits are recoverable and do not need to be pleaded with absolute certainty.  Mutual satisfies both.

### a. Defendant's wrongful conduct caused Mutual's damages.

This case is not one in which at-will employees simply left their employment as Defendant would have this Court believe.  Nor is it a case where the Parties should be focused on whether the at-will employees would have stayed at Mutual for 12 months versus 18.  This case is about Defendant's calculated scheme in utilizing three of Mutual's branch managers to devastate and eliminate Mutual's Florida operations, *all while employed by Mutual*.

The e-mails in this case establishing liability are endless.  The e-mails show Mutual's former branch managers, now employed by Defendant, sending dozens of

e-mails containing borrower information, Mutual's confidential profit and loss statements, and other confidential information to their personal e-mail addresses.[7] In some scenarios, the managers sent them directly to Defendant.[8]

Defendant went so far as to use Mutual's own trade secrets and corporate opportunities as seed money, diverting dozens of loans in process to provide the financing to commence operations.[9] And, Defendant's own agents confirm that such a diversion was critical to the transition of the business.[10] Moreover, using the Manager's access to personnel information, as well as the branch financial performance, Defendant was able to exactly match or better the compensation of the entire branch so that they could seamlessly transition all of their staff and business.[11] Additionally, to facilitate the departure of employees and continued operations, Mutual's customer information was stolen, enabling and facilitating a seamless transition.[12] Defendant, using Mutual's business, its confidential information, its personnel information, its contacts and supervision of employees and access to all

---

[7]    *See, e.g.,* MOM-0000238, attached as **Exhibit A**; MOM-0001303, attached as **Exhibit B**.
[8]    *See, e.g.*, WMC000686, attached as **Exhibit C**; WMC000695, attached as **Exhibit D**; WMC000715, attached as **Exhibit E**; WMC-001532, attached as **Exhibit F**.
[9]    *See, e.g.,* WMC006263-6271, attached as **Exhibit G**; WMC008400, attached as **Exhibit H**; Hutto Dep. 62-63, attached as **Exhibit I**.
[10]    *See, e.g.,* Ex. G; *see also* Amended Complaint.
[11]    *See, e.g.,* WMC000766-774, attached as **Exhibit J**.
[12]    *See, e.g.,* **Ex. I**, 92:10-25, 93:1-3.

its financials and equipment, surreptitiously lifted the entirety of Mutual's Florida operations in the dead of the night.  To compare that to the mere resignation of at-will employees is inappropriate and disingenuous.  E-mails confirm that Mutual's managers coordinated with Defendant to match the employees' compensation at Mutual.[13]  As Mr. Hutto testified – these employees had little choice but to join Defendant following the destruction of Mutual's Florida Operations because of the direct harm inflicted by the managers by way of Defendant's conduct.[14]  There is no question that Defendant's wrongful conduct caused Mutual's damages.  *See Mortgage Now, Inc. v. Stone*, No. 3:09cv80/MCR/MD, 2012 WL 4478950, at *16 (N.D. Fla. Sept. 20, 2012) (finding the "chaos" resulting from half a branch leaving "was caused by the disloyalty and interference" of the defendants and "undoubtedly resulted in damages" to plaintiff).

### b. Mutual can establish its lost profits with reasonable certainty.

Contrary to Defendant's characterization of the legal authority, Eleventh Circuit case law is clear that once causation is established, "absolute certainty" as to the amount of lost profits is not required.  *See Nebula Glass Internat'l, Inc.*, 454 F.3d at 1212; *see also* Richard A. Lord, *Williston on Contracts* § 64:8; *Mortgage Now, Inc.*, 2012 WL 4478950, at *16; *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 28 n.4

---

[13]     *See, e.g.,* **Ex. J**.
[14]     **Ex. I**, 64:4-25, 65:1-18.

(Fla. 3d DCA 1990); *see also Conner v. Atlas Aircraft Corp.*, 310 So. 2d 352, 354 (Fla. 3d DCA 1975).  Despite this, Mr. Gennarelli testified as to the methodology employed to arrive at the figures in the damages spreadsheet.  *See* **Ex. K**, Gennarelli Dep.  Moreover, Ms. Rosevear sets forth in painstaking detail in her rebuttal report, and did the same during her deposition, exactly how she arrived at her damages calculation.  *See* **Ex. L**, Rebuttal Expert Report of C. Rosevear.  At this stage, no more is required.

Defendant's citation to *Himes v. Brown & Co. Securities Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987) is inapposite to the facts of this case.  There, the court refused to award damages for lost profits because the plaintiff's *only* claim was that the defendant's actions deprived him of anticipated profits because he would have sold (or purchased, in the case of the short sale) the securities at the optimal time and earned a profit.  At trial, the plaintiff did not present any evidence that he would have completed the time-sensitive transactions such that the court deemed any possible damages to be speculative and not recoverable.  *Id.* at 939.

Unlike *Himes*, at trial, Mutual is fully prepared to present evidence demonstrating that it is entitled to lost profits.  The lost profits at issue in this case do not arise from consideration of whether an individual employee would have stayed or left over the course of 18 months, which is Defendant's contention.  The lost profits in this case result from the aggregate of the harmful conduct undertaken

by Defendant in obliterating Mutual's three branches by using three of Mutual's branch managers to violate their fiduciary duties owed to Mutual and steal confidential and proprietary information and wrongfully solicit Mutual's entire branch to join Defendant in violation of their employment agreements.

## III.    MUTUAL TIMELY DISCLOSED A REBUTTAL EXPERT WITNESS.

Throughout its Motion, Defendant repeatedly proclaims that Mutual never disclosed an expert witness, even though it filed its Motion before the deadline for Mutual to disclose its rebuttal expert witness.  Since then, Mutual timely disclosed its rebuttal expert witness and served its report on Defendant.  *See* **Ex. L**.  Expert testimony is permissible on rebuttal even if it would have also been proper during the case-in-chief. *ITT Corp. v. Xylem Grp., LLC*, No. 1:11-cv-3669-WSD, 2012 WL 12871632, at *3 (N.D. Ga. Oct. 15, 2012) (quoting *Donell v. Fid. Nat'l Title Agency of Nev.*, No. 2:07-cv-00001-KJD-PAL, 2012 WL 170990, at *3-5 (D. Nev. Jan. 20, 2012); *see United States ex rel. Raven*, 2018 WL 11220441, at *5 (finding that the rebuttal expert was, in fact, a rebuttal expert because he offered a different methodology to contradict the opposing expert's conclusions).  Thus, there is nothing improper about Mutual's disclosure of Ms. Rosevear as a rebuttal expert

witness. Nor does Defendant point to any case law to suggest that such a disclosure should be deemed improper.

To prove its lost profits, Mutual intends to rely on Ms. Rosevear's rebuttal report where she counters Mr. Oscher's report and his conclusions, specifically that Mutual's damages are unsupported and cannot be verified. The role of a rebuttal expert is to "explain, repel, counteract, or disprove the evidence of an adverse party[.]" *Interra Internat'l, LLC v. Al Khafaji*, 2020 WL 10727982 (N.D. Ga. Sept. 18, 2020). "Other courts have found that it may be permissible to utilize a rebuttal expert to rebut assumptions of another expert." *Ohio St. Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, No. 18-CV-63130, 2020 WL 1666763, at *9 (S.D. Fla. Apr. 3, 2020) (citing *Slicex, Inc. v. Aeroflex Colo. Springs, Inc.*, No. 2:04-CV-615 TS, 2006 WL 1932344, at *3 (D. Utah July 11, 2006) ("[T]he [c]ourt finds that Wagner has specialized knowledge and that he may be allowed to testify as a rebuttal expert witness in order to rebut the methodology and the assumptions used by [p]laintiff's expert."); *Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2019 WL 5448206, at *22 (N.D. Ga. Oct. 3, 2019) (finding that the rebuttal expert attacked an assumption underlying the other expert's report and, consequently, declining to exclude rebuttal expert). Through her report, Ms. Rosevear establishes that there is reasonable certainty for Mutual's claimed lost profits. Given

Defendant's wholesale reliance on their expert report to support their motion, Ms. Rosevear's report must certainly be considered.

## IV.   DEFENDANT'S ACCUSATION THAT MUTUAL FAILED TO PRODUCE DOCUMENTS IS UNFOUNDED.

At the time of filing this Response, Mutual has produced each and every financial document relied upon for both the damages spreadsheet and by Ms. Rosevear in drafting her report.  In its Motion, Defendant lodges a blatantly false and ill-founded accusation that Mutual somehow refused to produce the data and documents relied upon to support the damages at deposition and continues to refuse. As is Defendant's modus operandi, Defendant only included pages from the deposition transcript that read in the light most favorable to it, eliminating context for this Court.  *See* **Ex. K**, 129-154.

During Mr. Gennarelli's deposition, Defendant's counsel began to ask him about the spreadsheet at issue.  **Ex. K**, 129.  Without having all of the relevant information before Mr. Gennarelli, Defendant's counsel began quizzing Mr. Gennarelli on 25 branch P&Ls that were not in front of him so she would be able "to understand the math[.]"  *Id.* at 130:19.  Mr. Gennarelli was clearly confused regarding Ms. Kreiter's improper questions.  *Id.* at 131-133.  As was Ms. Walter, who stated, "[C]an you point me to that?  I'm not being difficult.  I'm genuinely asking." *Id.* at 133:14-15.  The Parties then took a five-minute break to determine if the Parties could discern whether the document being referenced was "readily

access[ible]." *Id.* at 134:2-4. When it became evident a document was not in front of Mr. Gennarelli to testify to, Mr. Gennarelli testified that the data "came from the P&Ls" as well—documents that were clearly within Defendant's possession. *Id.* at 135:20. After back-and-forth, Defendant's counsel then asked Mr. Gennarelli to "tell [her] which of the documents identified in response to Interrogatory 10" certain figures came from, again, without the benefit of those documents in front of him. *Id.* at 141:18-20. Mr. Gennarelli testified that he hadn't memorized them, to which Defendant's counsel proclaimed that she "want[ed] Mutual to come to a deposition prepared to testify about its damages[.]" *Id.* at 141:25. Defendant's counsel became argumentative stating, "How can I get at the document you looked at without spending another 50 hours trying to look at these documents and then finding that it doesn't exist?" *Id.* at 142:4-6.

Defendant's counsel then took a break and asked whether Mutual's counsel would be okay with allowing the witness to call a third party, access an additional document, and provide that to Defendant. *Id.* at 143:4-19. It was at that point that Mutual's counsel informed her that Mutual would not be producing additional documents during the deposition because the documents referred to in the interrogatory would respond to her questions. *Id.* at 143:4-19. To be clear, Mutual's counsel did not say those would *never* be produced, just not in the middle of the deposition. Further, Mutual's counsel clarified that Mr. Gennarelli relied on data to

produce his calculation, and he was prepared to testify to that. *Id.* at 143:16-19. Nevertheless, without any basis for stating this, Defendant's counsel continued to insist that some documents existed that Mr. Gennarelli would just be required to "push[] print" on and produce to Defendant during his deposition. *Id.* at 147:4-5. Throughout the deposition, Defendant's counsel continued her antics, arguing that Mutual failed to produce documents, even though Mutual was able to point Defendant exactly to where those documents were located. *Id.* at 149:10-23;

Discovery in this case remains ongoing. Any and all documents used in the damages calculations, to date, have been produced. If Defendant truly believes documentation has not been produced, the proper vehicle would have been to file a motion to compel – not a motion *in limine* – particularly as discovery is ongoing.

## **CONCLUSION**

WHEREFORE, in light of the foregoing, Plaintiff respectfully requests that this Court deny Defendant Waterstone Mortgage Corporation's Motion *in Limine* to Exclude Plaintiff's Category 2 ($4,440,002.42) Damages.

Dated:   July 20, 2023
         Washington, D.C.

                        MITCHELL SANDLER LLC

                        By:  */s/ Ari Karen*

                        Ari Karen (admitted *pro hac vice*)
                        Christopher L. McCall (admitted *pro hac vice*)
                        Courtney E. Walter
                        1120 20th Street N.W., Suite 725
                        Washington, D.C.  20036
                        Email:  akaren@mitchellsandler.com
                        Email:  cmccall@mitchellsandler.com
                        Email:  cwalter@mitchellsandler.com
                        Telephone:  (202) 886-5292

                        GUNSTER, YOAKLEY & STEWART, P.A.

                        John A. Schifino
                        Florida Bar No. 0072321
                        401 East Jackson Street, Suite 1500
                        Tampa, Florida  33602
                        Primary email:  jschifino@gunster.com
                        Secondary email: eservice@gunster.com
                        Telephone:  (813) 739-6962


                        *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*