**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) <br> ) Civil Action No. 22-CV-01660 <br> ) <br> ) **PLAINTIFF MUTUAL OF OMAHA** <br> ) **MORTGAGE, INC.'S MOTION TO** <br> ) **COMPEL SECOND DEPOSITIONS OF** <br> ) **DWAYNE HUTTO AND CHRISTOPHER** <br> ) **SMITH AND FOR SANCTIONS** <br> ) **PURSUANT TO FED. R. CIV. P. 37** <br> ) <br> ) |
| Plaintiff, | |
| v. | |
| WATERSTONE MORTGAGE CORPORATION, | |
| Defendant. | |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby files this Motion to Compel Second Depositions of Dwayne Hutto and Christopher Smith and for Sanctions Pursuant to Fed. R. Civ. P. 37. In support thereof, Plaintiff states as follows:

## INTRODUCTION

During two recent depositions, counsel for Defendant Waterstone Mortgage Corporation ("Defendant" or "Waterstone") violated the Federal Rules of Civil Procedure when she improperly instructed her witnesses not to respond to non-privileged questions involving highly relevant information related to the witnesses' employment agreements with Waterstone ("Agreements"). Plaintiff's counsel called this Court's chambers to inquire about whether District Judge Barber or Magistrate Judge Sneed would be available to preside over disputes that had arisen

1

during the depositions, including the dispute at issue in this Motion. The Court's chambers informed the Parties that neither were available, that any objections should be made on the record, and the depositions should continue. Despite this explicit instruction, Defendant's counsel, Maria Kreiter ("Ms. Kreiter") refused to comply and maintained her position that the witnesses should not respond to any questions related to these Agreements over the course of two separate depositions.

In these depositions, for the very first time in this case—which has been pending since July of 2022—Ms. Kreiter made a false representation that a conflict of interest existed between the undersigned's current representation of Plaintiff and Waterstone because Mr. Karen previously represented Waterstone and drafted the employment agreements at issue in this case—a patently false accusation that Ms. Kreiter could have easily discovered. On those grounds, Ms. Kreiter instructed the witnesses not to respond.

The facts demonstrate that Defendant's claim amounts to a baseless litigation tactic intended to impede Plaintiff's right to seek discovery. Mitchell Sandler LLC, where Mr. Karen is employed, has represented Plaintiff since the inception of this case. Indeed, Mitchell Sandler, LLC is the law firm identified on the initial pleading. Thus, even if a conflict existed, which it does not, any conflict would have been imputed to the firm *one year ago*. Defendant and its counsel very well should have raised any concerns at that point. Notwithstanding this, Mr. Karen himself appeared

in this case in March of this year, yet Ms. Kreiter waited until the middle of the deposition of Dwayne Hutto—a critical witness—to raise this alleged conflict. Defendant maintained this objection the very next day during the deposition of Christopher Smith—another critical witness—even though she had plenty of time to engage in the necessary due diligence and ascertain that the Agreement at issue is materially different from a completely different agreement Mr. Karen previously assisted Waterstone with drafting approximately ten years ago.  Thus, no meritorious basis existed for her objection and with a minimal amount of effort – comparing the distinct agreements—counsel could have discovered this before impeding the depositions.[1]

To date, Defendant's counsel has not sought a protective order, which she is required to do under the Federal Rules of Civil Procedure upon instructing her witnesses not to respond, nor has she moved to disqualify Mr. Karen or his law firm. This is clearly because her instruction to the witnesses not to answer was a pure litigation tactic intended to obstruct proper discovery and prevent Plaintiff from receiving highly relevant testimony.

---

[1]   *Compare* **Exhibit A**, *Herrington v. Waterstone Mortgage Corp.*, Case No. 3:11-cv-00779-bbc (W.D. Wis. 2011), Waterstone Mortgage Corporation Loan Originator Employment Agreement (ECF No. 15-2) ("Ex. A"), *with* **Exhibits B and C**, Waterstone Corporation Producing Branch Manager Employment Agreement for Dwayne Hutto ("Ex. B") and Christopher Smith ("Ex. C"), respectively.

As a result, Plaintiff's counsel is left with no choice but to file this motion under Federal Rule of Civil Procedure 37 to compel the second depositions of Mr. Hutto and Mr. Smith, to request Plaintiff's fees and costs for the depositions, and for the fees and costs associated with bringing this Motion.

## FACTUAL BACKGROUND

On July 22, 2022, Plaintiff filed this Complaint against Defendant. ECF No. 1. On behalf of Plaintiff, Christopher McCall with Mitchell Sandler, LLC first appeared in this case on July 22, 2022. On March 9, 2023, Courtney Walter, also with Mitchell Sandler, LLC appeared, ECF No. 54, and on March 22, 2023, the Court granted Ari Karen's motion to appear *pro hac vice*, ECF No. 58. Thus, there is no question that Defendant was aware of Mitchell Sandler LLC's continuous representation of Plaintiff from the inception of this case. Nor did Defendant ever move to disqualify Mitchell Sandler, LLC, or any attorney employed there.

On May 30, 2023, Plaintiff's counsel issued Notices of Deposition for Mr. Hutto and Mr. Smith scheduled for June 15 and June 16, respectively. During Mr. Hutto's deposition on June 15, 2023, Mr. Karen began questioning Mr. Hutto about various provisions of his Mortgage Producing Branch Manager Agreement ("Ex. B") that he had with Waterstone. After approximately ten (10) minutes of questioning where Mr. Hutto provided damaging information against Waterstone, Ms. Kreiter requested a break, and upon returning, made an accusation—for the first

4

time in this litigation—that Mr. Karen had a role in drafting the Agreement through his prior representation of Waterstone.

Ms. Kreiter: So I need to put on the record, during the break Ms. Ziebell alerted me to the fact that Ari Karen, the attorney representing Mutual in this case was previously representing Waterstone. In fact, Mr. Karen was lead counsel for Waterstone for nearly 10 years in a case that involved employment practices. That representation required Mr. Karen to be in close communication with Waterstone leadership and branch managers regarding employment matters.

Importantly, that representation included drafting the Waterstone employment agreement that is now marked as Deposition Exhibit 1. Waterstone objects to the entire line of questioning by Mr. Karen of this witness or any other witness due to a clear conflict of interest by opposing counsel. The work-product of opposing counsel for its former client Waterstone is now being used at a deposition in which Waterstone is the adversary. We ask that opposing counsel refrain from any questioning of the witness based on his work-product, namely, the Waterstone employment agreement.

Hutto Dep. 30:13-25-31:1-8, attached as **Ex. D**. Despite a thorough and comprehensive explanation from Mr. Karen that the two agreements were *not* the same in any respect, Ms. Kreiter stated, "I'm going to instruct the witness not to answer any questions about Exhibit 1 at this deposition." *Id.* at 33:7-9. And at that point, Plaintiff's counsel asked no further questions of the witness about this Exhibit.

To be clear, Mr. Karen represented Defendant in a Fair Labor Standards Act ("FLSA") collective action that was filed on November 18, 2011—almost ***twelve***

5

years ago. *See Herrington v. Waterstone Mortgage Corp.*, Case No. 3:11-cv-00779-bbc (W.D. Wis. 2011). Even a cursory glance at the *Herrington* Complaint confirms that action and Mr. Karen's prior representation of Waterstone substantially differs from Mr. Karen's representation in this action. The scope of the representation was entirely different, and it cannot be said that these two matters are the same or substantially similar. Further, the *Herrington* agreement addresses a loan originator, whereas Mr. Hutto's and Mr. Smith's agreement involves a branch manager. Moreover, the issues in this case involving duties of loyalty and restrictive covenants have little similarity to issues pertaining to minimum wage and overtime. The provisions that Mr. Karen asked Mr. Hutto about involved Mr. Hutto's exact duties under the agreement—and the indemnification and confidentiality provisions—are entirely different from any provisions in the *Herrington* agreement.

Yet, despite these striking differences, Defendant's counsel continued to instruct Mr. Hutto not to answer any questions related to the Agreement.

Thereafter, Mr. Karen and Ms. Courtney Walter called the judge's chambers to inquire whether the District Judge or Magistrate Judge would preside over disputes that had arisen during the deposition. On the call, Judge Barber's chambers informed Ms. Walter that neither the Judge nor the Magistrate Judge were available to assist with the dispute. Judge Barber's chambers informed the parties that they should make the objections on the record and continue with the deposition.

Notwithstanding this, Ms. Kreiter maintained her position and instructed her witness not to answer any questions regarding his employment agreement with Waterstone.

The very next day, on June 16, 2023, the deposition of Mr. Christopher Smith took place. Despite having 24 hours to compare Mr. Hutto's and Mr. Smith's present agreements with the *Herrington* agreement and ascertain the significant differences between the one at issue in this case and the one that Mr. Karen previously assisted with, Ms. Kreiter failed to do so. Instead, she once again instructed her client not to respond upon being presented with Mr. Smith's Agreement.

Ms. Kreiter: So at this point, opposing counsel has marked Deposition Exhibit 6, which is the WaterStone Mortgage Producing Branch Manager Agreement dated 6/16, signed by Mr. Smith. Yesterday at the deposition, I lodged an objection on the record related to any questions about the WaterStone agreement. I will incorporate that same objection with respect to any questions about this deposition exhibit and any questions by Mr. Karen. I'll incorporate the statement I made yesterday in full. I won't repeat it here. But in sum, the objection is that Mr. Karen is an attorney who represented WaterStone in the past, and in connection with that representation, had a role in drafting this employment agreement.

On that basis we are instructing the witness not to answer any questions about this exhibit.

Smith Dep. 175:20-25-176:1-14, attached as **Ex. E**. Following this, Mr. Karen repeatedly asked Ms. Kreiter about her position and provided her with the requisite notice that Plaintiff would pursue sanctions against her for her improper instruction not to respond should she maintain her position.

7

| | |
|---|---|
| Mr. Karen: | First, any – you knew this issue was going to rise yesterday. You've known at least for 24 hours. And there was an opportunity to review the two documents, which would clearly reveal that they are highly different. |
| | Second, there's case law that I was able to research that shows that, when I've been counsel for this matter for over a year, clearly you guys have waived, and I think you could look at it too. |
| | Third, the idea that I wouldn't ask about this – you knew I would be asking about this. I would also suggest if you look at the conflict rules if, in fact, I had a conflict, that conflict – I don't know if it would actually translate to the rest of my firm, but it would certainly affect me being counsel to the case, and it wouldn't matter whether I asked it or somebody else in my firm asked it. So I don't understand why that would be a valid objection to instruct him not to answer. |
| | And lastly, yesterday we called the Court. And you heard the Judge's instructions. And I really want you to think about this, okay? The Judge – we asked the Judge to talk, and he – the Judges said they were busy, and they said put your objections on the record. And you are now not only putting your objection on the record, you are, despite the Court's clear messages, communications to us, instructing the witness not to answer. And I want to make sure that you are, in fact, going to maintain the position that despite what the Court told us yesterday, you are instructing this witness not to answer any question about this agreement. |

Smith Dep. 179-180, attached as **Ex. E**. Despite this explanation, Ms. Kreiter refused to allow Mr. Smith to answer any questions related to the Agreement. Indeed, she would not allow Smith to even answer if he signed the agreement – something that clearly has nothing to do with its contents. Smith Dep. 183:11-12

8

("I'm not going to allow questioning about this deposition exhibit."). While the deposition proceeded to conclusion, Ms. Kreiter expressly prohibited Defendant from inquiring into any aspect of Mr. Hutto's and Mr. Smith's employment agreement.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer . . . if (i) a deponent fails to answer a question asked under Rule 30 or 31." Pursuant to Rule 37(b)(2)(A),

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just order. They may include the following:
>
> i. Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> ii. Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> iii. Striking the pleadings in whole or in part;
>
> iv. Staying further proceedings until the order is obeyed;
>
> v. Dismissing the action or proceeding in whole or in part;
>
> vi. Rendering a default judgment against the disobedient party; or

      vii.    Treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Sanctions under Rule 37 can be imposed for a variety of purposes, including: "(1) compensating the court and other parties for the added expenses caused by the abusive conduct; (2) compelling discovery; (3) deterring others from engaging in similar conduct; and (4) penalizing the guilty party or attorney." *Nukote Intern., Inc. v. Office Depot, Inc.*, No. 09-CV-82363-DTKH, 2015 WL 71566, at *8 (S.D. Fla. 2015); *see also Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985).

## ARGUMENT

### I. DEFENDANT'S COUNSEL IMPROPERLY INSTRUCTED THE DEPONENTS NOT TO ANSWER QUESTIONS.

In instructing Mr. Hutto and Mr. Smith not to respond to Plaintiff's questions pertaining to their agreements with Waterstone, Defendant's counsel clearly violated the procedural requirements of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 30(c) provides the manner in which depositions should be conducted and objections should be lodged. *Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 316 (N.D. Fla. 2021). The strictures of Rule 30(c) are designed to "expedite and to simplify the discovery process." *Id.* Rule 30(c) provides, in relevant part, as follows:

> (1) **Examination and Cross-Examination**. The examination and cross examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615 . . .
>
> (2) **Objections**. An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—<u>must be noted on the record, but the examination still proceeds</u>; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. <u>A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)</u>.

(emphasis added). Consistent with the goal of affording litigants broad discovery, Rule 30(c)(2) "provides only three justifications for instructing a deponent not to answer a question: to preserve a privilege; to enforce a limitation imposed by the court; or to present a Rule 30(d)(3) motion." *Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 319 (N.D. Fla. 2021) (citing *Gober v. City of Leesburg*, 197 F.R.D. 519, 520 (M.D. Fla. 2000)). To be clear, at no point during their depositions did Defendant's counsel identify any one of the three above-mentioned justifications as the basis for which the witnesses should not respond. Instead, Defendant's counsel continued to point to a purported conflict of interest that existed—without providing any basis whatsoever for this alleged conflict.

"Directions to a deponent not to answer a question can be even more disruptive than objections." *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 701 (S.D. Fla. 1999) (citing Rule 30, Advisory Committee's

Note (1993 amendments)). Accordingly, absent one of the three exceptions articulated in Rule 30(c)(2), it is impermissible for an attorney to instruct a deponent not to answer a question. *Id.* Unless one of the exceptions enumerated in Rule 30(c)(2) is applicable, an attorney typically should lodge a succinct objection to preserve the issue, allow the deponent to answer the question, and then, if necessary, raise the issue with the court in a pretrial or trial motion. *Id.* at 320.

In instructing the witnesses not to respond to Mr. Karen's questions pertaining to the Agreement, Ms. Kreiter pointed to a purported conflict of interest in Mr. Karen's representation of Plaintiff, even though she had never previously raised this and had been aware of both Mitchell Sandler, LLC's and Mr. Karen's representation of Plaintiff for over a year. Notwithstanding this, a conflict of interest is not one of the three justifications for instructing a deponent not to answer a question under the Federal Rules of Civil Procedure.

Further, when an attorney instructs a deponent not to answer a question based on one of the reasons enumerated in Rule 30(c)(2), s/he must *immediately* seek a protective order from the relevant court, unless one was obtained prior to the deposition or the examining counsel *on the record* agrees to withdraw the objectionable question. *See Mitnor Corp.*, 339 F.R.D. 312 at 319. Unless the examining attorney agrees to withdraw the offending question or a party already has obtained a protective order, objecting counsel violates Rule 30(c)(2) when he

instructs a deponent not to answer a question and fails to move for a protective order. *Id.* To date, Defendant's counsel has not yet sought a protective order, and thus any objection to this line of questioning was both improper and sanctionable. *See, e.g., Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2645680, at *6 (S.D. Fla. June 26, 2008). Despite having no basis whatsoever for instructing her witnesses not to respond to the question, Ms. Kreiter also violated the procedural technicalities under the Federal Rules of Civil Procedure for doing so. Because of this, Plaintiff should be entitled to conduct an additional deposition of both Mr. Hutto and Mr. Smith, in addition to other sanctions. *See, e.g., Bank of America, N.A. v. Russo*, No. 6:11-cv-734-Orl-22GJK, 2013 WL 12158131, at *7 (M.D. Fla. Apr. 2, 2013) ("Thus, instructing a witness not to answer is disfavored by the Court, may subject the party or lawyer to expenses or sanctions, and imposes upon the instructing party the obligation to immediately move for a protective order under Rule 30(d), Federal Rules of Civil Procedure.").

## II. THERE IS NO CONFLICT BETWEEN THE DEFENDANT AND MR. KAREN'S REPRESENTATION OF PLAINTIFF.

Even if Ms. Kreiter properly instructed the witnesses to not respond under the Federal Rules, there is no basis for this objection because there is no conflict of interest between Mr. Karen's representation of Mutual and his prior representation of Waterstone, which occurred nearly *twelve* years ago. In considering whether an attorney should be disqualified for a purported conflict of interest, "[c]ourts must be

conscious of their responsibility to preserve a reasonable balance between the need to ensure ethical conduct of lawyers appearing before them and other social interests, which include a litigant's right to freely choose counsel." *Perez v. City of Hialeah*, 526 F. Supp. 3d 1304, 1313 (S.D. Fla. 2020) (citing *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)). An order for disqualification is a "drastic means which courts should hesitate to impose except when absolutely necessary." *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, 961 F. Supp. 1580, 1582 (M.D. Fla. 1997).

Rule 4-1.9 of the Florida Rules of Professional Conduct[2] provides as follows:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> b) Use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> c) Reveal information relating to the representation except as these rules would permit or require with respect to a client.

The Comment to Rule 4-1.9 provides:

---

[2] Rule 2.01(e) of the Middle District of Florida Local Rules provides: "A lawyer appearing in the Middle District must remain familiar with, and is bound by, the rules governing the professional conduct of a member of The Florida Bar."

14

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client.

R. Regulating Fla. Bar 4-1.9 cmt.  Moreover, "[t]he fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client."  *Perez v. City of Hialeah*, 526 F. Supp. 3d 1304, 1312 (S.D. Fla. 2020).

Despite making an argument during the depositions that Mr. Karen drafted the agreements at issue, Defendant's counsel was unable to point to any evidence whatsoever to corroborate this.  To the contrary, the allegations in the two cases are entirely different, and it cannot be said that the representations were the same or "substantially related."  The *Herrington* case involved an FLSA plaintiff seeking overtime compensation against Defendant, which is entirely different from this case involving allegations of misappropriation of trade secrets and confidential information against Defendant.  And further, the *Herrington* agreement that Ms. Kreiter complains about does not contain the same provisions as the provisions that are at issue here.  Indeed, the provisions germane to this case that Mr. Karen was attempting to inquire about are in no manner present in the Herrington agreement. Under no circumstances whatsoever can it be said that the two cases are substantially similar, let alone the same, such that disqualification would be warranted.

## III. EVEN IF A CONFLICT PREVIOUSLY EXISTED, DEFENDANT HAS SINCE WAIVED THAT COMPLAINT.

It is undisputed that Defendant did not raise any objection to Mitchell Sandler, LLC's or Mr. Karen's representation of Plaintiff until ***one year*** after this action was filed and during two critical depositions. A failure to make a timely objection, such as here, to a party's representation may result in a waiver. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) (citing *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87-88 (9th Cir. 1983)); *Redd v. Shell Oil Co.*, 518 F.2d 311, 316 (10th Cir. 1975); *Glover v. Libman*, 547 F. Supp. 748, 760 (N.D. Ga. 1983).

> A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.

*Cox*, 847 F.2d at 729 (citing *Jackson v. J.C. Penney Co.*, 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981)); *see also Shaw v. Broad and Cassel*, No. 11-23689-CIV, 2012 WL 315050, at *1 (S.D. Fla. Feb. 1, 2012) ("Certainly a party can waive his right to seek disqualification of the opposing party's counsel by failing to promptly move for disqualification upon learning of the facts leading to the alleged conflict."). Accordingly, even if a conflict of interest existed, which it does not, Defendant has since waived this objection and should not be permitted to raise it on the eve of

discovery closing in this action to prevent Plaintiff from receiving highly relevant information.

### IV.   MONETARY SANCTIONS ARE WARRANTED.

The Court is free to use its own knowledge and experience to determine a reasonable fee that would cover expenses in connection with a discovery motion. *See Norman v. Hous. Auth. Of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (finding that a court may use its knowledge and experience concerning reasonable and proper legal fees). Pursuant to Federal Rule of Civil Procedure 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." It is well established that "participants in a deposition—particularly the relevant attorneys—are entrusted with the responsibility of conducting depositions efficiently, orderly, and courteously." *Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 316 (N.D. Fla. 2021). "For the process to succeed, it is essential that the parties, attorneys, and witnesses participating in depositions conduct themselves with civility and decency." *Id.* Unlike sanctions imposed pursuant to the court's inherent powers, Rule 37 fee awards do not require a finding of bad faith. *Smith v. Atl. Postal Credit Union*, 350 Fed. Appx. 347, 350 (11th Cir. 2009).

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion, compel the second depositions of Mr. Hutto and Mr. Smith, and order Defendant to pay Plaintiff's attorney's fees and costs associated with the depositions of Dwayne Hutto and Christopher Smith, and further for the fees and costs associated with filing this Motion.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel attempted to confer with Defendant's counsel. At the time of filing this Motion, lead counsel for Defendant had not yet responded. In accordance with the Local Rules for the Middle District of Florida, Plaintiff will try diligently for three days to contact the opposing party and will supplement the motion with a statement certifying whether a resolution has been reached.

Dated:    Washington, D.C.
             July 21, 2023

                    MITCHELL SANDLER LLC

                    By: */s/ Courtney E. Walter*

                    Ari Karen (admitted *pro hac vice*)
                    Christopher L. McCall (admitted *pro hac vice*)
                    Courtney E. Walter
                    1120 20th Street N.W., Suite 725
                    Washington, D.C.  20036
                    Email:  akaren@mitchellsandler.com
                    Email:  cmccall@mitchellsandler.com
                    Email:  cwalter@mitchellsandler.com
                    Telephone:  (202) 886-5292

                    GUNSTER, YOAKLEY & STEWART, P.A.

                    John A. Schifino
                    Florida Bar No. 0072321
                    401 East Jackson Street, Suite 1500
                    Tampa, Florida  33602
                    Primary email:  jschifino@gunster.com
                    Secondary email: eservice@gunster.com
                    Telephone:  (813) 739-6962

                    *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*