# EXHIBIT A

*New*

# WATERSTONE MORTGAGE CORPORATION
# LOAN ORIGINATOR EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is made and entered into this 7 day of April, 20 11 , and between Waterstone Mortgage Corp., its subsidiaries, successors and/or assigns (together "Waterstone" or the "Employer" or "Company") and
Pamela Herrington                                      Loan Officer ("Employee") (collectively referred to as the "Parties").

## 1. AGREEMENT OF AT-WILL EMPLOYMENT
Except for the provisions relating to the protection of Waterstone's Confidential and Proprietary information, trade secrets, and the non-solicitation and non-competition restrictions and covenants contained herein which continue beyond the termination of employment, either party may terminate this contract at any time with or without notice for any or no reason. There is no guarantee of continued employment and the Company does not have term employment contracts, oral or written, express or implied.

## 2. SCOPE OF AUTHORITY
Employee acknowledges that he/she has no right or authority, express or implied, to bind or create any obligation on the part of Waterstone, without the express written consent of an officer of the Company.

## 3. EFFECTIVE DATE
This plan is effective as of April 1st, 2011 and supersedes all prior Loan Officer Employment Agreements and Compensation Plans and addenda thereto.

## 4. ELIGIBILITY
Designated employees in a Mortgage Loan Originator, Sales Manager, and Production Manager jobs are eligible to participate in the Plan. Employees are required to sign the Addendums A, B, and C attached hereto in order to be eligible to participate in the plan. Waterstone may modify the plan at any time without the employee's consent and without prior notice.

## 5. DUTIES
   a. Employee shall be employed as a Loan Officer for Employer. Employee's primary duties shall be to utilize his/her knowledge, training and experience to solicit, originate, sell and facilitate the processing and closing of loan products and financing of residential real estate transactions on behalf of the Company's customers.
   b. Employee acknowledges s/he does not and will not work more than 40 hours per week, unless additional hours are approved in advance and in writing by his/her Supervisor. These hours do not include lunch breaks or other daily breaks. Employee must at the end of each week submit a time sheet electronically via the company's payroll system that accurately reflects all hours worked and each such submission shall constitute Employee's certification as to the number of hours worked.
   c. Employee understands that it will be his/her responsibility to develop referral sources and originate loans by engaging with the public outside and away from Waterstone's offices.
   d. Employee agrees to devote Employee's time, attention and energy to the position set forth

Initial

with Waterstone, Employee shall not enter into or continue any employment or render any service for compensation or remuneration to any person or entity, except Waterstone, involved in the business of real estate, banking, mortgage banking, or mortgage brokerage.
  e. Employee will cooperate with periodic on-site audits and examinations to verify Loan Officer compliance with company guidelines, Employer's operating requirements, and federal and state banking laws and regulations.
  f. As applicable, Employee acknowledges that the duties set forth herein do not reflect any change in the manner of work in which Employee has been engaged for Employer, and merely restates the duties, manner, and method of work that has previously existed between the parties since the inception of their employment relationship.

## 4. COMPANY RULES

Employee will remain familiar with and adhere to all Company policies, standards and requirements published or otherwise disseminated by the Company (including but not limited to the Loan Officer Policies and Procedures) as well as all applicable federal, state, and local laws (including but not limited to Truth In Lending Act and Regulation Z, the Real Estate Settlement Procedures Act, the Fair Lending Act, and the Equal Credit Opportunity Act and Regulation B).

## 5. COMPENSATION TO EMPLOYEE

Waterstone shall pay Employee compensation for services performed under this Agreement, as follows:

  a. Base Pay. Employer shall pay Employee an hourly wage equal to the then-prevailing minimum wage for hours worked each week up to 40 hours plus the then-prevailing minimum wage at time and one-half for any hours worked in excess of 40 hours in a week as approved in accordance with Section 3.b above.
  b. Loan Originator's Compensation as defined in Addendum A and/or Base Price as defined in Addendum B to this Agreement will not as a matter of course be reviewed or adjusted quarterly.
  c. Loan Originator's compensation will only be subject to review in one of the following three circumstances:
      a. Loan Originator frequently fails to adhere to the Base Price. "Frequently" is defined as 3 or more loans in a single quarter that are subject to pricing exceptions;
      b. Loan Originator requests a review of his or her compensation;
      c. There are losses associated with Early Payment Defaults (EPD'S), Early Payoffs (EPO's), unsaleable loans, delinquencies, or other material loan performance issues.
  d. In the event a Loan Originator's compensation is evaluated for adjustment, a variety of criteria including pull through rate, quality of loan files, loan volume, seniority, overall sources of origination, loan performance, any relevant competitive forces impacting Loan Originator's performance, and any relevant macroeconomic trends will be reviewed in establishing a new Base Price and/or Compensation Level as to prospective loans originated in the future. Loan Originator's compensation may or may not be adjusted accordingly. Waterstone will not establish or maintain a Base Price that it does not believe can be adhered to on an ongoing basis.
  e. In addition, Loan Originator's commission rate can be adjusted or suspended at any time if the Company has reason to believe that (i) Loan Originator has breached his or her fiduciary

4-1-2011

Initial

duty to the company; (ii) Loan Originator has violated any law, policy, procedure or acted improperly in regard to any transaction with a consumer; or (iii) Loan Originator is engaged in self-dealing, acting purely in his or her own pecuniary interest without regard to and inconsistent with the interests of the Company and/or the consumer.

f. Subject to the terms and conditions set forth herein, Employee will receive a commission based on the schedule attached hereto as Addendum A, subject to the terms and conditions herein.

g. Commissions are calculated by deducting the Base Pay paid during the current pay period from the aggregate commission calculated pursuant to Addendum A. In the event that Employee's Base Pay for the applicable period exceeds the commission, any negative balance will be carried over and reduced in the calculation of future commissions, provided that Employee is not and may not be held responsible for negative balances except to the extent that his/her commissions can be reduced. Under no circumstance, and at no time during or after employment, will Employee be required or expected to re-pay Waterstone beyond and/or except as per the deductions from commission described herein.

h. Rates and pricing to the consumer will be calculated based upon the charges reflected on the Company's pricing engine or any other pricing engine being used by Company for registering or locking loans.

i. It is understood that Employee is not entitled to commission simply for procuring a loan. No commission is earned, accrued, or payable to Employee unless and until the loan has closed under Employee's supervision, and the applicable EPO or EPD period has expired on the loan. Commissions will be advanced to Employee on the 15th of the following month from the date the loan closes. A closing is defined below.

j. As defined herein, a loan is not closed unless and until the loan has gone through closing, all monies have funded, all recessionary periods have expired, and all proper documentation has been filed in connection with the loan, and in accordance with RESPA.

k. Employee agrees that in the event s/he believes there is any error in connection with the calculation of his/her commission, s/he will raise any such disagreement in writing with the Company, within 60 days of payment of the commission. Failure to do so acknowledges agreement with the amount of the commissions paid. Employee agrees that as of the execution of this Agreement, there are no disputes pertaining to compensation with Waterstone and that employee has received all pay and compensation due to him/her as of the date of the execution of this Agreement.

### 6. RESTRICTIVE COVENANTS: CONFIDENTIALITY; NONSOLICITATION; NONCOMPETITION

a. Employee acknowledges that by reason of his/her employment hereunder, Employee will occupy a position of trust and confidence with Waterstone and that Employee will have access to confidential and proprietary information and trade secrets of Waterstone, all of which are the unique and valuable property of Waterstone. Employee acknowledges that, among other things, its loan programs, advertising programs, referral sources, business plan, marketing strategies, software, customer lists, and investor lists have been developed through the expenditure of substantial time, effort and money which Waterstone wishes to maintain in confidence and withhold from disclosure to other persons. Accordingly, as a material inducement to Waterstone to enter into this Agreement, Employee acknowledges that s/he will become intimately involved and/or knowledgeable in regard to Waterstone'

4-1-2011

Initials

business and will be entrusted with Waterstone' confidential information, and both during his/her employment and after any termination thereof, Employee will use such information solely for Waterstone' benefit, and maintain as secret and will not disclose any of the Confidential Information to any third party (except as Employee's duties may require) without Waterstone' prior express written authorization.

b. Employee agrees that during his/her employment with Waterstone s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity solicit any customer or client or prospective customer or client of Waterstone to engage in or transact business with any entity or person other than Waterstone.

c. Employee agrees that for a period of twelve (12) months following the cessation of employment with Waterstone (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein) s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity, solicit for the purpose of providing services of the type provided by Waterstone (i) any actual or prospective customer or client of Waterstone with whom during Employee's employment with Waterstone s/he has communicated or contacted; and/or (ii) any actual or prospective customer about whom Employee has obtained confidential information in connection with his/her employment with Waterstone.

d. Employee agrees that during his /her employment with Waterstone and for a period of twelve (12) months after the termination of employment with Waterstone (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein) Employee will not on behalf of himself/herself or on behalf of any other person, firm, or entity, directly or indirectly solicit any of Waterstone' employees, consultants, or contractors to leave Waterstone; form or join another entity; and/or sever (or cause the termination of) their relationship with Waterstone.

e. Employee agrees that during the term of this Agreement and for a period of 12 months following such termination, s/he will not contact (i) any actual or prospective customer or client of Waterstone with whom during Employee's employment with Waterstone s/he has communicated or contacted; and/or (ii) any actual or prospective customer about whom Employee has obtained confidential information in connection with his/her employment with Waterstone for the purpose of refinancing any loan closed through the Company, where any such refinance would result in an early pay-off resulting in the recapture of any revenue paid to the Company. Employee agrees that in the event that employee encourages any customer to undertake any such transaction s/he shall be liable to the Company in the amount of any recaptured revenue in addition to any other damages as permitted under this Agreement or under applicable law.

f. Employee agrees that for twelve (12) months following the termination of employment with Waterstone, s/he will show this Agreement to any and every subsequent employer during such time.

g. Employee agrees that the restrictions herein will not interfere with or unduly limit his/her ability to obtain suitable alternative employment following termination of employment. Employee acknowledges that the protections afforded to Waterstone herein, are reasonable and necessary.

h. Employee recognizes that irreparable damage will result to Waterstone in the event of the violation of any covenant contained herein made by him/her, and agrees that in the event of

4-1-2011

Initials

such violation Waterstone shall be entitled, in addition to its other legal or equitable remedies and damages as set out below, including costs and attorney's fees, to temporary and permanent injunctive relief to restrain against such violation(s) thereof by him and by all other persons acting for or with him/her.

## 7. NO EXISTING RESTRICTIVE COVENANTS

Employee represents and warrants to the Company that no "non-compete", non-solicitation or confidentiality agreements with any other company, person or entity are binding upon him/her or affect his/her employment with the Company as of the date this Agreement.

## 8. INDEMNIFICATION

To the maximum extent permissible by RESPA and/or HUD, Employee hereby agrees to indemnify and defend Waterstone for any and all attorneys' fees, costs of prudent settlement, judgments, or damages incurred by the Company as a result of any violation by Employee of any term or obligation under this Agreement.

## 9. RETURN OF RECORDS AND PAPERS

Employee agrees upon the cessation of his/her employment with Waterstone for any reason whatsoever, to return to the President of Waterstone all company equipment, including but not limited to computers or cell phones, and all records, copies of records, computer records, and papers and copies thereof, pertaining to any and all transactions handled by Employee while associated with Waterstone. Employee further agrees to provide upon termination a written account of any and all open leads, business prospects, and/or loans in process as of the date of his/her termination.

## 10. SEVERANCE AND DEATH/DISABILITY BENEFIT

a. In the event that Employee provides reasonable notice of his/her resignation and complies with all terms and conditions of this Agreement, the Company, in its discretion, may pay Employee a severance based upon the loans in Employee's pipeline dependant upon the amount of work necessary to complete any pending transactions. This severance is determined by the Company in its sole discretion.
b. In the event Employee dies and/or becomes disabled such that Employee cannot physically perform any gainful employment for a period of at least 180 days, Employee (and/or the Estate, as applicable) shall be entitled to payout of all loans in his/her pipeline upon the close of such loans, as if employee supervised such loans to completion. Employee acknowledges that this benefit is in exchange for the execution of this Agreement and acceptance of the restrictive covenants set forth herein.

## 11. PIPELINES

Employee further acknowledges that all leads and loans in process are property of the Company. Employee agrees to provide upon termination a written account of any and all open leads, business prospects, and/or loans in process as of the date of his/her termination, and agrees not to take any action to divert such loans to a competitor or away from the Company.

## 12. ALTERNATIVE DISPUTE RESOLUTION

The parties agree that in the event of any dispute between them that arises out of the employment

4-1-2011

Initials

relationship and/or this Agreement, prior to initiating any lawsuit, the party intending to initiate such a claim or proceeding, will at least ten (10) days prior to doing so, provide the other party with a specific demand for monetary relief, as well as a calculation explaining the basis for said monetary demand, as well as a short and plain statement of the grounds upon which such demand is sought. Notwithstanding the foregoing, this provision does not prohibit a party from immediately seeking injunctive relief limited to preventing irreparable harm.

### 13. ARBITRATION/GOVERNING LAW/CONSENT TO JURISDICTION

This Agreement is made and entered into in the State of Wisconsin and shall in all respects be interpreted, enforced, and governed by and in accordance with the laws of the State of Wisconsin. In the event that the parties cannot resolve a dispute by the ADR provisions contained herein, any dispute between the parties concerning the wages, hours, working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship shall be resolved through binding arbitration in accordance with the rules of the American Arbitration Association applicable to employment claims. Such arbitration may not be joined with or join or include any claims by any persons not party to this Agreement. Except as otherwise set forth herein, the parties will share equally in the cost of such Arbitration, and shall be responsible for their own attorneys' fees, provided that if the Arbitration is brought pursuant to any statutory claim for which attorneys fees were expressly recoverable, the Arbitrator shall award such attorneys' fees and costs consistent with the statute at issue. Nothing herein shall preclude a party from seeking temporary injunctive relief in a court of competent jurisdiction to prevent irreparable harm, pending any ruling obtained through Arbitration. Further, nothing herein shall preclude or limit Employee from filing any complaint or charge with a State, Federal, or County agency. By execution of this Agreement, the parties are consenting to personal jurisdiction and venue in Wisconsin with respect to matters concerning the employment relationship between them.

### 14. LOAN PRICING
   a. Loan officer will be assigned a specific minimum Base Price and corresponding rates.
   b. Loan Officer may not lock any loan below the rate corresponding to the Base Price without the Company's approval.
   c. Exceptions to Base Price. So long as a loan is closed at or above the rate corresponding to the Base Price, no pre-approval is necessary. In the event Loan Officer wishes to lock a loan below the rate corresponding to the assigned Base Price the Company will examine the Loan Officer's seniority, volume of production, source of the loan, potential for repeat business, the extent of the requested variance, and Loan Officer's historical adherence to the Company's pricing, which includes adherence to price locks, avoidance of rate lock extensions, and collections of required third party fees. The determination of whether to approve a rate lock below the Base Price has no impact on Loan Officer's compensation.
   d. The company reserves the right in its discretion to approve/disapprove any requested variance in pricing.

### 15. SEVERABILITY

The Parties agree that to the extent that any provision or portion of this Agreement shall be held, found or deemed to be unreasonable, unlawful or unenforceable by a court of competent jurisdiction, then any such provision or portion thereof shall be deemed to be modified or redacted

4-1-2011

Initials

to the extent necessary in order that any such provision or portion thereof shall be legally enforceable to the fullest extent permitted by applicable law, and that it will not affect any other portion, or provision of this Agreement, and the Parties hereto do further agree that any court of competent jurisdiction shall, and the parties hereto do hereby expressly authorize, request and empower any court of competent jurisdiction to enforce this Agreement, and any such provision or portion thereof to the fullest extent permitted by applicable law.

**16. LEGAL FEES**
Employee further agrees that Waterstone shall be entitled to the cost of all legal fees and expenses incurred in investigating and enforcing the covenants contained herein, including fees and expenses incurred prior to filing suit.

**17. UNDERSTANDING OF PARTIES**
This Agreement represents the entire agreement between the Parties and supersedes any and all prior agreements or understandings, oral or written between Employee and Waterstone. It is further agreed that this Agreement shall remain in full force and effect until superseded in writing, signed by all Parties. In the event of a company name change, this Agreement will continue to be fully enforceable.

**18. VOLUNTARY AGREEMENT**
Employee acknowledges that he has been given sufficient time and opportunity to review, consider, and obtain advice in connection with the execution of this Agreement, and that Employee has not been forced to sign this Agreement under duress.

**19. NON-WAIVER**
A waiver or inaction by either party of a breach of any provision of this Agreement shall not operate nor be construed as a waiver by of any subsequent breach of the Agreement.

**20. FAIR LENDING**
It is the policy of Waterstone to conduct its business in a non-discriminatory manner and in compliance with legal and regulatory guidelines concerning applicable fair lending laws including but not limited to the Fair Lending Act, the Equal Credit Opportunity Act and Regulation B. All Employees and Managers are responsible for treating all borrowers in a fair and non-discriminatory manner. This includes, but is not limited to, not basing price quotes or lender credits on stereotypical assumptions about about applicants which may be related to race, color, religion, national origin, sex or marital status, or age. It is a part of Company's objective that the frequency and magnitude of permissible lender credits to protected classes not differ materially from the frequency and magnitude of permissible lender credits to non-protected people. Employees and Managers are instructed that they will be permitted to grant lender credits only insofar as their lending record is consistent with this objective.

**21. FULL AND COMPLETE AGREEMENT**
This Agreement sets forth the entire understanding and agreement of the parties hereto and fully supersedes any and all prior or contemporaneous agreements, understandings or negotiations between the parties with respect to the subject matter hereof. No prior negotiations or drafts of this Agreement shall be used by either party to construe the terms or to challenge the validity hereof.

4-1-2011

Initials

Agreement shall be used by either party to construe the terms or to challenge the validity hereof. This Agreement may not be modified except in writing between all parties hereto. No oral promises, assurances, agreements, or understandings either prior or subsequent to the execution of this Agreement are binding or may be relied upon except and unless incorporated herein or incorporated by written modification as permitted herein.

Voluntarily agreed to and executed this  7  day of  April , 20 11 :

_____
Loan Officer

PAMELA E. HERRINGTON
Print Name

209220
NMLS ID

Accepted:

Waterstone Mortgage Corporation

By:_____
Eric J. Egenhoefer - President

Initials

## ADDENDUM A

Employee shall be provided with the following compensation arrangement for the duration of this employment agreement:

### Commission

Base Commission Level – Originating Loan Officer to receive compensation of 200 Basis Point (bps) on each closed and funded loan unless otherwise indicated.



_[Signature]_  
Loan Officer Signature

PAMELA E. HERRINGTON  
Loan Officer Name

209227  
NMLS ID

Date: 4/7/11

Accepted:

Waterstone Mortgage Corporation

By:_____  
    Eric J. Egenhoefer – President

_[Signature] Chris Randall_  
Branch Manager Signature

Chris Randall  
Branch Manager Name

Date: 4/7/11

Date:_____

4-1-2011

_[Initials]_  
Initials

## ADDENDUM B

### Brokered Transactions

Brokered transactions (including table funded or wholesale transactions) with borrower-paid compensation are not allowed. All brokered transactions are required to be co-originated with the Waterstone Direct division and compensation for these transactions will be based on 50% of the Waterstone Direct loan officer compensation plan. Under no circumstances is Employee allowed to quote an interest rate or provide disclosures to a consumer on any brokered transaction without the prior engagement of a loan officer from Waterstone Direct. Contact the corporate office for a copy of the current Waterstone Direct compensation plan. This does not apply to Reverse Mortgage Loans.

### Reverse Mortgages

Reverse Mortgages that are originated on a brokered basis are not required to be co-originated with Waterstone Direct. The compensation for all reverse mortgage loans that are originated on a brokered basis is the same as what is defined in Addendum A for all other loans.

### 203(k) Loans

203(k) loans that are originated on a correspondent basis are required to go through Waterstone's 203(k) division. The first three transactions Employee originates on a correspondent basis are considered test cases and are required to be co-originated with a loan officer in the 203(k) division. Compensation for these loans will be split 50% based on the compensation plan defined in Addendum A. After the successful closing of the first three transactions, Employee will be allowed to originate and earn the full commission on 203(k) loans; however these loans are still required to be submitted to the 203(k) division prior to underwriting and prior to closing.

### Branch Pricing Policy – Base Price

The minimum price required on all correspondent transactions is 100.00. The pricing and rates displayed in the Company's pricing engine are reflective of all margins and compensation to the loan officer. The pricing shown in the pricing engine plus any origination fees must be greater than or equal to 100.00 on all loans. Any transaction achieving a final price including any origination fees or discount points of less than 100.00 must be approved in writing, in advance, from the branch manager.

### Telemarketing

Loan officer is prohibited from engaging in any telemarketing activities unless approved in writing and with a modification signed by the President of the Company and attached hereto.


Initials

4-1-2011

## ADDENDUM C

### Loan Officer Disclosures

*I hereby certify the following:*

I am a licensed real estate agent or hold a real estate sales license     __Y ✓N
I have been convicted of a felony in the past 7 years     __Y ✓N

*I acknowledge receiving and understanding the following policies:*

Loan Officer Policies and Procedures     ✓Y __N
Rate Lock Policy     ✓Y __N

### Regulation Z / Loan Officer Compensation Disclosure

I hereby certify that I understand that under Section 129 of the Truth in Lending Act (15 U.S.C. 1639), subsection (k), I am not able to be paid any form of compensation that is based on any of the following:

- Interest Rate or APR
- LTV (Loan to Value)
- Prepayment penalty or any specific loan terms
- Credit Score
- Amount of fees collected
- CRA (Community Reinvestment Act) Eligibility
- Existence of PMI (Private Mortgage Insurance) on a loan
- Individual loan profitability
- Loan type or feature
- Any other term or condition of a loan or proxy for a term or condition

I further understand that I cannot be paid any form of compensation from both the borrower and the lender. I cannot steer consumers to products on the basis of increased compensation, and I cannot credit a borrower any fees by deducting them from my compensation.

_____  209221
Loan Officer Signature     NMLS ID

PAMELA C. HERRINGTON     4/7/11
Loan Officer Name     Date


Initials

4-1-2011

## ADDENDUM D

Employee shall be provided with the following bonus compensation arrangement for the duration of this employment agreement:

**Bonus Commission Plan**

Monthly Production Volume Incentive – Additional bps paid retroactive on total closed and funded loans during the calendar month.
- 10 closed units = Additional 10 bps on total volume
- 15 closed units = Additional 3 bps on total volume for a total of 13 bps
- 20 closed units = Additional 3 bps on total volume for a total of 16 bps

*Company generated referrals are paid out at 50% of the loan officer Base Commission Level.

_____
Loan Officer Signature

PAMELA E. HENRIKSON
Loan Officer Name

209227
NMLS ID

Date: 4/6/11

_____
Branch Manager Signature

Chris Randall
Branch Manager Name

Date: 4/6/11

**Accepted:**

Waterstone Mortgage Corporation

By:_____       Date:_____
    Eric J. Egenhoefer – President

4-1-2011

Initials