# EXHIBIT D

Page 30

1 this lawsuit, right?
2   A. Not to my knowledge.
3   Q. No one's suggested that to you?
4   A. Not to my knowledge.
5     MS. ZIEBELL: Ari, can we take a quick break?
6 Maria, is that okay? Can we take a quick break.
7     MS. KREITER: Sure.
8     THE VIDEOGRAPHER: Is that all right, sir?
9 Going off the record. The time is 9:34.
10    (Off the record.)
11    THE VIDEOGRAPHER: We're back on the record.
12 The time is 9:56.
13    MS. KREITER: So I need to put on the record,
14 during the break Ms. Ziebell alerted me to the fact
15 that Ari Karen, the attorney representing Mutual in
16 this case was previously representing Waterstone. In
17 fact, Mr. Karen was lead counsel for Waterstone for
18 nearly 10 years in a case that involved employment
19 practices. That representation required Mr. Karen to
20 be in close communication with Waterstone leadership
21 and branch managers regarding employment matters.
22    Importantly, that representation included
23 drafting the Waterstone employment agreement that is
24 now marked as Deposition Exhibit No. 1. Waterstone
25 objects to the entire line of questioning by Mr.

Page 31

1 Karen of this witness or any other witness due to a
2 clear conflict of interest by opposing counsel. The
3 work-product of opposing counsel for its former
4 client Waterstone is now being used at a deposition
5 in which Waterstone is the adversary. We ask that
6 opposing counsel refrain from any questioning of the
7 witness based on his work-product, namely, the
8 Waterstone employment agreement.
9     MR. KAREN: Okay. Well, let me respond to that.
10 That agreement is nothing I drafted. What I drafted
11 for Waterstone was in 20 -- over ten years ago. That
12 is not the same agreement. I have -- you could
13 compare any agreement I drafted, I don't have that
14 language in there. It doesn't look like anything
15 I've ever drafted. So that's just simply wrong.
16    I realize you guys know how bad that just, but
17 if you had any concern about this alleged conflict of
18 interest, I have been noticed in this case for, I
19 don't know how long. I have been -- you knew I was
20 taking this deposition and to try to raise this now
21 is, frankly, desperate.
22    So you can make whatever objections you want and
23 we'll have the court rule on it, but if you think
24 there's a conflict of interest, you should get the
25 judge on right now, because I'm going to ask whatever

Page 32

1 I feel like asking.
2    MS. KREITER: I do think there's a conflict of
3 interest. You may dispute this is your agreement
4 that is contested. So for purposes of this
5 deposition, which I did not understand that you were
6 taking, but, regardless, this is the first time that
7 a Waterstone agreement drafted by you from
8 Waterstone's perspective --
9    MR. KAREN: It isn't drafted by me.
10    MS. KREITER: -- let me finish for the record --
11 our position is that it is drafted by you. If you
12 want to do a comparison later and illustrate that
13 it's materially different, so be it. My
14 understanding right now is that Exhibit 1 put into
15 evidence by you was drafted by you. So I'm not going
16 to permit questioning of the witness --
17    MR. KAREN: Let's get the judge on the phone.
18    MS. KREITER: -- about Exhibit 1.
19    MR. KAREN: Let's get the judge on the phone
20 right now.
21    MS. KREITER: You should call him. Because I
22 agree, this is not something where I want to waive
23 the conflict. If you drafted this agreement and were
24 in communication with Waterstone managers --
25    MR. KAREN: It's just simply not true.

Page 33

1    MS. KREITER: Then I think you do need to raise
2 it to the judge --
3    MR. KAREN: I don't think I need to raise it to
4 the judge. You're the one who makes an objection. I
5 get to ask my questions. If you want to file a
6 motion, you file a motion.
7    MS. KREITER: I'm going to instruct the witness
8 not to answer any questions about Exhibit 1 at this
9 deposition.
10    MR. KAREN: Well, fortunately I'm pretty much
11 done with it anyhow. But notwithstanding, you know,
12 we are going to have this issue tomorrow, so we
13 should discuss now because I plan on asking those
14 questions tomorrow.
15    MS. KREITER: I will similarly object and
16 instruct the witness not to answer questions based on
17 Exhibit 1 tomorrow.
18    MR. KAREN: Then we should probably talk
19 offline, we don't have to do this right now.
20    MS. KREITER: I --
21    MR. KAREN: Just hear me out for one second,
22 okay, before you object. I am suggesting maybe we
23 talk about tomorrow because I really don't want to
24 come down, take a deposition, have to come down and
25 do the deposition again, and I'm sure you can