IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>    Plaintiff,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>    Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**DEFENDANT WATERSTONE MORTGAGE CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SECOND DEPOSITIONS AND FOR SANCTIONS, AND WATERSTONE'S MOTION FOR PROTECTIVE ORDER**

**I. Introduction.**

There is no basis to compel further deposition of Dwayne Hutto and Christopher Smith as to their views of the Waterstone employment agreement. Attorney Ari Karen was Waterstone's long-term counsel regarding employment matters and drafted a number of employment agreements for Waterstone, including provisions of the instant agreements signed by Hutto and Smith. Moreover, Mutual indicated it had completed all questioning of Hutto as to the Waterstone employment agreement by the time Waterstone objected, with Mutual itself stating the issue is moot as to Hutto. As to Smith, no further testimony is appropriate, as it is irrelevant and would inject an unnecessary, and easily avoidable conflict of interest issue into the case.

II.  **Relevant Facts.**

1. <u>Attorney Karen's Prior Representation of Waterstone</u>.

Ari Karen, who is now counsel for Mutual, was Waterstone's long-time counsel with respect to an array of employment matters, including that Attorney Karen drafted the following Waterstone employment agreements: (1) the Producing Branch Manager Employment & Services Agreement, attached as <u>Exhibit 1</u>; (2) the Non-Producing Branch Manager Employment & Services Agreement, attached as <u>Exhibit 2</u>; and (3) the Loan Originator Employment Agreement cited by Mutual as having been drafted by Attorney Karen, attached as Exhibit A to Mutual's Brief (Dkt. No. 78-1 and here as <u>Exhibit 3</u> for ease of reference. The agreements Attorney Karen drafted each contain the following restrictive covenants and related provisions:

- A confidentiality provision requiring that the employee use Waterstone's confidential information solely for Waterstone's benefit, both during employment and post-employment. <u>Exhibit 1</u> ¶ 7(a); <u>Exhibit 2</u> ¶ 7(a); <u>Exhibit 3</u> ¶ 6(a).

- A restrictive covenant that prohibits the solicitation of customers and prospective customers during employment. <u>Exhibit 1</u> ¶ 7(b); <u>Exhibit 2</u> ¶ 7(b); <u>Exhibit 3</u> ¶ 6(b).

- A 12-month post-employment restrictive covenant that prohibits the solicitation of actual or prospective customers. <u>Exhibit 1</u> ¶ 7(c); <u>Exhibit 2</u> ¶ 7(c); <u>Exhibit 3</u> ¶ 6(c).

- A 12-month post-employment employee non-solicit. Exhibit 1 ¶ 7(d); Exhibit 2 ¶ 7(d); Exhibit 3 ¶ 6(d).

- A provision that requires the Waterstone employee to show the employment agreement to any subsequent employer within the 12-month period of the restrictive covenants. Exhibit 1 ¶ 7(f); Exhibit 2 ¶ 7(f); Exhibit 3 ¶ 6(f).

- An acknowledgement that the restrictive covenants will not interfere with the employee's ability to obtain alternate employment. Exhibit 1 ¶ 7(g); Exhibit 2 ¶ 7(g); Exhibit 3 ¶ 6(g).

While Waterstone later revised its employment agreements, the substance of the above provisions remain in the current agreements, including that the Producing Branch Manager Agreements signed by the two managers deposed by Mutual, Dwayne Hutto ("Hutto") and Chris Smith ("Smith"), include a one-year employee non-solicit and a one-year customer non-solicit. (*See* Hutto's Employment Agreement, Dkt. 78-2, and Smith's Employment Agreement, Dkt. 78-3, at ¶ 5.2(b) and ¶ 5.2(c); see also ¶ 5.1(b)(i)-(iii)(confidentiality), 5.2(a) customer non-solicit, 3.5 (disclosure to new employer), and 5.2(f)( ability to obtain future employment).) In addition, some key provisions in the agreements drafted by Attorney Karen are identical to the provisions in the agreements signed by Hutto and Smith. For example, the non-employee solicit at issue is identical and reads as follows:

3

| Attorney Karen Drafted Agreements (Exhibit 1 ¶ 7(b); Exhibit 2 ¶ 7(b); Exhibit 3 ¶ 6(b)): | Hutto/Smith Agreements (Dkt. 78-2 and 78-3) at ¶ 5.2(a): |
|---|---|
| "Employee agrees that during his/her employment with Waterstone s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity solicit any customer or client or prospective customer or client of Waterstone to engage in or transact business with any entity or person other than Waterstone." | "Employee agrees that during his/her employment with Company s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity solicit any customer or client or prospective customer or client of Waterstone to engage in or transact business with any entity or person other than Company." |

In addition, the indemnification provision of the Waterstone employment agreements drafted by Attorney Karen that was the subject of deposition questioning is nearly identical to the indemnification provision of Hutto's and Smith's agreements:

| Attorney Karen Drafted Agreements (Exhibit 1 ¶ 1; Exhibit 2 ¶ 1; *see also* Exhibit 3 ¶ 8: | Hutto/Smith Agreements (Dkt. 78-2 and 78-3) at ¶ 6.6: |
|---|---|
| "To the extent permitted by RESPA and/or HUD, Employee hereby agrees to indemnify and defend Waterstone and its principals for any and all attorneys' fees, costs of prudent settlement, judgments, fines, or damages incurred by Employer as a result of Manager's breach of the terms of this Agreement." | "To the extent permitted under applicable law, Employee hereby agrees to indemnify and defend Company and its principals for any and all attorneys' fees, costs of prudent settlement, judgments, fines, or damages incurred by Company as a result of Employee's breach of the terms of this Agreement." |

2. The Hutto Deposition.

At the June 15, 2023 deposition of Hutto, Attorney Karen began to examine Hutto about the reasonableness of various provisions of the Waterstone employment agreement, as well as the indemnification provision of the employment agreement quoted above that is identical to the indemnification provision he drafted for

4

Waterstone. (*See* Hutto Dep. Tr. (attached as <u>Exhibit 4</u>) at 25:6-30:4.) At that point, general counsel for Waterstone, Stephanie Ziebell, who was attending the deposition by video and aware of Attorney Karen's prior work for Waterstone, requested a break in the deposition. (*Id.* at 30:5-10.) Thereafter, Attorney Maria Kreiter, outside litigation counsel, put on the record that Attorney Ziebell had advised of Attorney Karen's prior representation, including as lead counsel for Waterstone in a long-standing employment case and as the draftsman of the Waterstone employment agreements. (*Id.* at 30:13-31:8.) Attorney Ziebell recalled that Attorney Karen had drafted the instant employment agreement, rather than portions of it, but the fact remains that, as stated by Waterstone at the deposition "The work product of opposing counsel for its former client Waterstone is now being used at a deposition in which Waterstone is the adversary." (*Id.* at 31:2-5.) As such, Waterstone asked that Attorney Karen refrain from questions that leverage his work product, the Waterstone employment agreement, against Waterstone. (*Id.* at 31:5-8.) Waterstone further explained its position was that the questioning created a conflict of interest that it did not want to waive by way of allowing questioning at the deposition. (*Id.* 34:17-19.) Attorney Karen did not contact the Court and instead responded the issue was moot because he was done with questions based on the Waterstone employment agreement and had already asked all of his questions of Hutto about the agreement by the time Waterstone objected. (*Id.* 34:20-25.) Further, Attorney Karen put on the record that he had already asked questions about the agreement for thirty minutes, such that

5

Waterstone had already waived the objection. (*Id*.) Waterstone disputed that the conflict was waived, as Attorney Ziebell flagged the issue as soon as possible. (*Id*. 35:9-13.)

    3. <u>Attorney Karen First Became Active in the Case at the Hutto Deposition</u>.

Prior to the questions at the Hutto deposition, Waterstone did not perceive a conflict of interest because Attorney Karen had not attempted to question any Waterstone witness based on his work product for Waterstone. Nor had the Waterstone agreement come up in any interrogatories or other depositions. In addition, Attorney Karen did not appear in this case until it had been pending for eight months, on March 22, 2023 (Dkt. 58), with Attorney McCall (and Courtney Walter) attending all prior conference calls with Waterstone counsel, Attorney McCall arguing both disputed motions (*see, e.g.,* Dkt. 25, 40, 42, 61), Attorneys McCall and Walter taking and attending all prior depositions, and Attorneys McCall and Walter, not Attorney Karen, being the ones to communicate with Waterstone. Nor did Mutual indicate in advance that Attorney Karen would be taking the Hutto and Smith depositions, as he was not on any correspondence related to the setting or rescheduling the depositions. *See e.g.* <u>Exhibit 5</u>.

    4. <u>The Smith Deposition</u>.

The Smith deposition occurred the day after the Hutto deposition. Given Mutual's position that allowing testimony about the Waterstone employment agreement would constitute a waiver of the conflict of interest, Waterstone instructed

Smith not to answer questions about his Waterstone employment agreement. (Smith Dep. Tr. (attached as Exhibit 6) at 175:20-176:14.) Mutual did not contact the Court regarding the Waterstone employment agreement and its desire for testimony by Smith about the agreement, but rather had contacted the Court the day before, during the Hutto deposition, regarding a separate issue. (*Id.* at 181:3-13.)

### III. Argument.

#### 1. The Motion is Moot as To Hutto Because Mutual Finished its Questions.

The Court should deny the motion to continue the Hutto deposition because Mutual asked all questions of Hutto about the Waterstone agreement that it wanted to ask, with Mutual itself characterizing the issue as moot:

> Mr. Karen: I understand your objection. As I said, I think it's a moot point anyhow because I'm done with that exhibit. So we can move on, I'm not going to fight about something today that – there's nothing to fight about because I already asked my questions, but not withstanding we can move forward.

(Hutto Dep. Tr. (Exhibit 4) at 34:20-25.) Whatever objection Waterstone lodged did not impede the deposition questioning, which was complete. As such, there is no grounds to continue the Hutto deposition.

#### 2. Testimony Adverse to Waterstone Based on the Employment Agreement Creates a Conflict of Interest to Which Waterstone Objects.

Nor should the Court order further deposition of Smith based on his Waterstone employment agreement. Attorney Karen was the draftsman of various Waterstone employment agreements that, while revised, contain provisions that remain the work

product of Attorney Karen, including a provision that was the subject of Attorney Karen's deposition questioning of Hutto.

Under Florida Rule 4-1.9 governing conflicts of interest arising from a former client engagement, "[a] lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." In addition, "[m]atters are 'substantially related' for purposes of [Rule 4-1.9] if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." *Saulsberry v. Elder*, 2022 WL 17414989 at *3 (S.D. Fla. Dec. 5, 2022) (quoting Comment to R. Regulating the Fla. Bar 4-1.9). Matters are also substantially related "if the first matter could be reasonably understood as important to the issues involved in the present matter." *Mitchell v. Hunt*, 2017 WL 1157897 at *4 (M.D. Fla. Jan. 9, 2017).

Here, Mutual made the prior representation of Attorney Karen important when it deposed Hutto, and seeks to depose Smith, about the reasonableness of the contract he drafted, in part, for Waterstone and whether Waterstone had leveraged the indemnification right he created for Waterstone's benefit. Waterstone maintains its objection to the conflict of interest and, as stated during the deposition, does not waive that conflict.

Mutual contends Waterstone waived the conflict of interest because the Mitchell Sandler firm with which Attorney Karen is now affiliated has been representing Mutual since the inception of the case and Waterstone has not moved to disqualify Attorney Karen. Waterstone did not waive the conflict. It vigorously and promptly guarded against waiver of the conflict, which arose unexpectedly at the Hutto deposition based on Attorney Karen's line of questioning.

Moreover, as to whether Waterstone should have moved to disqualify Attorney Karen, the more practical remedy is for Attorney Karen to abstain from seeking testimony about the Waterstone employees' views of the employment agreement he played a role in drafting, including its reasonableness. Grounds for a protective order as to that line of questioning are satisfied, as Rule 26(c)(1)(D) allows the Court to forbid inquiry into certain matters or limit the scope of disclosure or discovery to certain matters, in order to protect a party from oppression or undue burden. Fed. R. Civ. P. 26(c)(1)(D). Waterstone thus seeks a protective order. That Waterstone does not pursue the more extreme recourse of seeking to disqualify Attorney Karen from now leading the prosecution on behalf of Mutual — which would be far more prejudicial to Mutual — is not grounds to allow further testimony that weaponizes Attorney Karen's work product provided to Waterstone during his prior representation.

### 3. Testimony Regarding the Waterstone Employees' Opinion of the Waterstone Employment Agreement is Irrelevant.

The Court should also deny the motion to compel because the testimony sought is irrelevant. Tellingly, Mutual does not state what further questions it seeks to ask Hutto and Smith about the Waterstone agreements or explain why the desired testimony is relevant. The case involves alleged breaches of the restrictive covenants in the employment agreement between Mutual and its former employees. Whether employees such as Hutto and Smith view the provisions of the Waterstone agreement as reasonable has no bearing on the Mutual agreement. This Court has denied motions to compel irrelevant evidence, including evidence as to contracts that are not at issue, and should do the same here. *See, e.g., Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 3746421, at *3 (M.D. Fla. July 13, 2016) (J. Sneed) (denying motion to compel where "Plaintiffs' understanding of contracts with language varying from SeaWorld's contract has not been shown to be relevant to the matters in dispute here."); *Nelson v. Gualtieri*, No. 8:19-CV-449-T-36JSS, 2020 WL 13669291, at *3 (M.D. Fla. Nov. 6, 2020) (J. Sneed) (denying motion to compel on the grounds that "Plaintiff has not explained how information contained in the questionnaires is relevant to Plaintiff's claims or the credibility of Defendant's witnesses.")

### 4. Sanctions are Not Warranted.

There is no basis to sanction Waterstone. Federal Rule of Civil Procedure 37(a)(5)(A) instructs that the Court is not to award fees if "(ii) the opposing party's

nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir.1997) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). District courts have "considerable discretion in managing discovery and determining that reasonable people could differ in the appropriateness of ... discovery requests." *Neumont v. Fla.*, 610 F.3d 1249, 1253 (11th Cir. 2010).

 Here, Mutual disputes that Attorney Karen drafted the Waterstone agreements, but the key provisions, including the restrictive covenants, have the same general terms and certain provisions are identical to the ones Attorney Karen drafted for Waterstone, including the indemnification provision that was the subject of Attorney Karen's questioning. Moreover, Mutual argued at the deposition that allowing Hutto's testimony had already waived the conflict of interest Waterstone wanted to make sure it preserved. Under those circumstances, it was not unreasonable to prevent further testimony by Smith at his deposition the next day, to avoid bolstering Mutual's waiver argument. Moreover, Mutual completed all questioning of Hutto as to the employment agreement, stating that the issue is moot on the record at the deposition. There are no grounds to grant the motion as to Hutto, let alone an indication of obstruction of deposition testimony on the part of Waterstone that warrants sanctions. As to Smith, even if the Court does not agree

with Waterstone that there is no need for additional questions that inject a conflict of interest, particularly when the questions are irrelevant, that is a point on which reasonable persons could differ such that Rule 37 instructs against an award of fees.

## IV. Conclusion.

For all of these reasons, Waterstone requests that the Court deny Mutual's motion and instead enter a protective order as to inquiry by Mutual regarding the Waterstone employment agreements that are not at issue.

Dated: August 2, 2023.

Respectfully Submitted,

s/*Maria L. Kreiter*
Maria Kreiter (*Admitted PHV*)
Emma Jewell (*Admitted PHV*)
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

29716574.1