```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                   TAMPA DIVISION
                 CASE NO.: 22-CV-01660
 3
 4
        MUTUAL OF OMAHA MORTGAGE, INC.,
 5
                      Plaintiff,
 6      vs.

 7      WATERSTONE MORTGAGE CORPORATION,

 8                    Defendant.
        _____/
 9
10
11             VIDEOTAPED DEPOSITION OF
12                 CHRISTOPHER SMITH
13
14
                  Pages 1 through 206
15
16               Friday, June 16, 2023
                 9:07 a.m. - 12:45 p.m.
17
18          Gunster Yoakley & Stewart, P.A.
           401 East Jackson Street, Suite 1500
19                Tampa, Florida 33602
20
21
22
23
24           Stenographically Reported By:
25          Denise Sankary, RPR, RMR, CRR
```

EXHIBIT 6

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 174

1  Q. Okay. And so again, when WaterStone --
2  when you guys, your branch, produces loans and you
3  guys make money, WaterStone also makes money because
4  each one of those loans is an opportunity --
5  A. Correct.
6  Q. -- right?
7     WaterStone can also lost money in those
8  things too, right?
9  A. Sure.
10 Q. Right, but the goal is for every loan that
11 comes over, WaterStone has a chance to make money.
12 A. Correct.
13 Q. Okay. So the more loans that come to
14 WaterStone, if everyone is doing their job
15 correctly, the more money WaterStone makes.
16 A. What do you mean by "comes to WaterStone"?
17 Like, when I'm here and I'm closing loans today?
18 Q. No, no. What I said, for every -- I'll
19 restate the question.
20    For every loan that's originated that is
21 closed at WaterStone --
22 A. Yep.
23 Q. -- that's an opportunity for WaterStone to
24 make more money.
25 A. Correct.

Page 175

1  Q. Okay. Obviously, it's a risk too.
2  A. Right.
3  Q. We've all seen that.
4  A. Yeah, but every lender I've ever worked
5  at, they've made money off the loans I've
6  originated.
7  Q. Okay.
8  A. That's how the business works.
9  Q. Got it.
10    So really, WaterStone receives the
11 benefits of those transactions at the end of the
12 day, yes?
13 A. As does any lender I work for.
14 Q. Right.
15 A. Yep.
16 Q. Right.
17    MS. KREITER: At this point, why don't you
18 mark the exhibit.
19    (Thereupon, marked as Exhibit 6.)
20    MS. KREITER: So at this point, opposing
21 counsel has marked Deposition Exhibit 6, which
22 is the WaterStone Mortgage Producing Branch
23 Manager Agreement dated 6/16, signed by
24 Mr. Smith.
25    Yesterday at the deposition, I lodged an

Page 176

1  objection on the record related to any
2  questions about the WaterStone agreement. I
3  will incorporate that same objection with
4  respect to any questions about this deposition
5  exhibit and any questions by Mr. Karen. I'll
6  incorporate the statement I made yesterday in
7  full. I won't repeat it here. But in sum, the
8  objection is that Mr. Karen is an attorney who
9  represented WaterStone in the past, and in
10 connection with that representation, had a role
11 in drafting this employment agreement.
12    On that basis we are instructing the
13 witness not to answer any questions about this
14 exhibit.
15    MR. KAREN: Okay. So I just want to ask
16 you a question on the record. Have you, in the
17 24 hours since you made that -- I represented
18 to you clearly that this agreement was not the
19 agreement I drafted, and it will be very easy
20 to see that when you put them side by side.
21 Have you endeavored, in that 24-hour period, to
22 compare these with that document?
23    MS. KREITER: Okay. I am not going to
24 reveal my privileged discussions with
25 WaterStone.

Page 177

1     MR. KAREN: No, no, it's not a privileged
2  discussion. I'm asking, did you look at it?
3     MS. KREITER: Well, you're asking about my
4  efforts to vet the issue in support of a
5  position that WaterStone is taking, which I'm
6  not going to disclose.
7     MR. KAREN: Okay. Well, I don't think
8  it's a privilege. I'm just simply asking if
9  you've done the due diligence that would be
10 appropriate to ascertain whether these are, in
11 fact, the same agreements, when I've
12 represented to you as an officer of the court
13 that they are not.
14    MS. KREITER: Okay. I maintain my
15 position that --
16    MR. KAREN: Yes.
17    MS. KREITER: -- my efforts in that regard
18 would be work product. The discussions I would
19 have had with WaterStone yesterday about this
20 topic are also privileged, so I'm not going --
21    MR. KAREN: I certainly am not asking
22 about your discussions.
23    Furthermore, have you reviewed the case of
24 Cox versus American Cast Iron Pipe Company, 847
25 F.2d 725, 11th Circuit decision of 1988?

45 (Pages 174 - 177)

Page 178

1  MS. KREITER: I have not reviewed that
2  decision --
3  MR. KAREN: Okay.
4  MS. KREITER: -- in connection with this
5  issue.
6  MR. KAREN: Okay. Have you done any
7  research as to whether you've waived this,
8  because you've guys have known for at least a
9  year that I'm counsel in this case.
10 MS. KREITER: I think at this point we're
11 getting into arguments about waiver.
12 MR. KAREN: Well --
13 MS. KREITER: This is about my instruction
14 to the witness.
15 MR. KAREN: Okay. Well --
16 MS. KREITER: If you would like to file a
17 motion to compel that sets forth the grounds
18 that you're arguing here, then you should do
19 that.
20 MR. KAREN: Well --
21 MS. KREITER: But I've stated my
22 objection. I'm instructing the witness not to
23 answer.
24      I will further respond to any type of
25 motion that you put before the Court.

Page 179

1  MR. KAREN: I'm going to make a record
2  here because I'm going to seek sanctions
3  against you, okay? And I want to give you
4  every single opportunity to think about this
5  before I seek those sanctions because I've
6  never done it in 30 years of practice against
7  another lawyer. I've never sought sanctions
8  against another lawyer.
9  MS. KREITER: If you are --
10 MR. KAREN: I'm going to do that, okay,
11 but I want to give you every chance. So
12 here's -- I just want to put this on the
13 record, and then I'm going to take a break to
14 let you think about it and you can maintain
15 your position, okay?
16     First, any -- you knew this issue was
17 going to rise yesterday. You've known at least
18 for 24 hours. And there was an opportunity to
19 review the two documents, which would clearly
20 reveal that they are highly different.
21     Second, there's case law that I was able
22 to research that shows that, when I've been
23 counsel for this matter for over a year,
24 clearly you guys have waived, and I think you
25 could look at it too.

Page 180

1      Third, the idea that I wouldn't ask about
2  this -- you knew I would be asking about this.
3      I would also suggest if you look at the
4  conflict rules if, in fact, I had a conflict,
5  that conflict -- I don't know if it would
6  actually translate to the rest of my firm, but
7  it would certainly affect me being counsel to
8  the case, and it wouldn't matter whether I
9  asked it or somebody else in my firm asked it.
10 So I don't understand why that would be a valid
11 objection to instruct him not to answer.
12     And lastly, yesterday we called the Court.
13 And you heard the Judge's instructions. And I
14 really want you to think about this, okay? The
15 Judge -- we asked the Judge to talk, and he --
16 the Judges said they were busy, and they said
17 put your objections on the record. And you are
18 now not only putting your objection on the
19 record, you are, despite the Court's clear
20 messages, communications to us, instructing the
21 witness not to answer. And I want to make sure
22 that you are, in fact, going to maintain the
23 position that despite what the Court told us
24 yesterday, you are instructing this witness not
25 to answer any question about this agreement.

Page 181

1  MS. KREITER: Are you done?
2  MR. KAREN: I am.
3  MS. KREITER: Okay. So in reference to
4  the call to the Court yesterday, that was at
5  your insistence on the grounds that I was
6  somehow improperly objecting. I suggested to
7  you that if you were able to get the Court on
8  the line, we should also raise this issue to
9  the Judge.
10     We did put a statement on the record about
11 this issue at the outset of your questioning
12 yesterday, so I do feel that I've put it on the
13 record.
14     The things that you've mentioned now are,
15 perhaps, arguments that you could make in
16 support of a motion to compel or if you think
17 that sanctions are appropriate, I assume that
18 you will file a proper Rule 11 letter and send
19 it to me, and I will address all of those
20 concerns, either in response to --
21 MR. KAREN: This is a Rule 37 issue. This
22 isn't a Rule 11 issue.
23 MS. KREITER: It's my turn to talk now.
24 MR. KAREN: Okay. But you're just
25 completely wrong.

46 (Pages 178 - 181)

Page 182

1 MS. KREITER: If you believe that there's
2 a Rule 11 issue, then you will send me a Rule
3 11 letter.
4 MR. KAREN: It's a Rule 37.
5 MS. KREITER: Okay. Well, a letter
6 regarding the Safe Harbor Provisions.
7 MR. KAREN: It has nothing to do with Safe
8 Harbor.
9 MS. KREITER: It's my turn to talk. I
10 didn't interrupt you.
11 MR. KAREN: Okay.
12 MS. KREITER: So if you're going to send
13 me any kind of -- under Rule 11 or Rule 37 --
14 MR. KAREN: I'm just going to file a
15 motion.
16 MS. KREITER: If you're going to seek
17 sanctions, then you will do that in the
18 ordinary course. I will respond in the
19 ordinary course. If it's in conjunction with a
20 motion to compel or under Rule 11, sobeit. I
21 don't -- I don't have anything before me about
22 what you're going to file, and I'll respond in
23 due course.
24 MR. KAREN: Okay. Well, so I'm going to
25 asking you -- you will not even allow him to

Page 183

1 answer if this is his agreement?
2 MS. KREITER: I think the document speaks
3 for itself. I'm not going to allow questioning
4 about this deposition exhibit.
5 MR. KAREN: Okay. So I understand what
6 the document says, but as you understand, I
7 need to authenticate these things eventually in
8 this case.
9 So you will not even allow me to ask him
10 whether he signed this agreement?
11 MS. KREITER: I'm not going to allow
12 questioning about this deposition exhibit.
13 MR. KAREN: So that's a yes?
14 Okay. Well, I'm asking anyhow because
15 I -- you're playing games, and I don't want to.
16 BY MR. KAREN:
17 Q. Mr. Smith, do you see Exhibit 11415 in
18 front of you?
19 MS. KREITER: Mr. Smith, don't answer any
20 questions about this exhibit.
21 BY MR. KAREN:
22 Q. Okay. Mr. Smith, would you please tell me
23 whether you signed this document?
24 A. No comment.
25 MR. KAREN: Well, is he instructed not to

Page 184

1 answer?
2 MS. KREITER: I just did.
3 MR. KAREN: Okay. All right. Let me take
4 a break real quick and we'll come back.
5 MS. KREITER: I'm going to need a document
6 printed. Can you --
7 THE VIDEOGRAPHER: Off -- do you want that
8 on the record?
9 MS. KREITER: Sure. I'm going to need a
10 document printed in light of your questions.
11 Can you facilitate that?
12 MR. KAREN: I mean, you can ask them.
13 I -- I'm not saying no.
14 MS. KREITER: You're hosting the
15 deposition.
16 MR. KAREN: I don't think it's a problem,
17 but I mean, go and talk to them. I don't work
18 here. I had somebody deliver e-mailed
19 documents. I didn't have things printed. I
20 had things sent to me.
21 MS. KREITER: Can -- I mean, John is
22 hosting the deposition.
23 MR. KAREN: I'm not saying no.
24 MS. KREITER: Can I send it to you, and
25 can you get it printed?

Page 185

1 MR. KAREN: No, because I don't have a
2 laptop here.
3 MS. KREITER: Okay. So can I send it to
4 John? I don't know if he's in the office.
5 You're hosting the deposition. I need it
6 printed. How do I do that?
7 MR. KAREN: Maria, can you talk to
8 somebody at the front desk, because that's
9 how --
10 MS. KREITER: Okay.
11 MR. KAREN: -- it got printed, and then
12 they will print if for you, I'm sure. I just
13 don't have the ability to do it myself. So
14 just talk to them. I'm not your assistant.
15 THE VIDEOGRAPHER: All right. We're off
16 the video record at 12:12 p.m.
17 (Recess taken.)
18 THE VIDEOGRAPHER: On the video record at
19 12:27 p.m.
20 BY MR. KAREN:
21 Q. Mr. Smith, after counsel took a break, you
22 guys went in the room together. During that break,
23 did you discuss the substance of your testimony
24 either now or in the future of this deposition?
25 A. No. Actually, I was catching up on

47 (Pages 182 - 185)