IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br>    Plaintiff,<br>v.<br>WATERSTONE MORTGAGE CORPORATION,<br>    Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

## DECLARATION OF MICHAEL LYNCH

I, Michael Lynch, declare and state as follows:

1. I am one of the managers of the Paramus, New Jersey branch that is structured under the Tampa branch managed by Chris Smith.

2. I have known Chris Smith for over 20 years. I first met Smith at Ameriquest Mortgage in 2002. I worked as a manager at Ameriquest reporting to Smith.

3. After Ameriquest closed, Smith and I went our separate ways but always stayed in contact both as friends and contemporaries in the mortgage industry.

4. In 2019, I reconnected with Smith and joined Mutual of Omaha.

5. Patrick Japaz and I managed an office in New Jersey, that was a satellite branch of Chris Smith's team located in Tampa, Florida.

6. Japaz and I reported directly to Smith, we were familiar with Smith's leadership and had successfully operated branches under his guidance in the past.

EXHIBIT
15

7. When Smith's branch in Tampa left Mutual of Omaha it was communicated that we would now be reporting to Brian Tomalak.

8. Prior to the Tampa office departure from Mutual, Patrick and I did not communicate with Tomalak regarding our branch operation, all our directives came solely from Chris Smith.

9. Patrick and I did have a conversation with Tomalak and Jeff Gennarelli regarding staying on board with Mutual which we considered.

10. The option presented was remaining as a branch under Tomalak utilizing the profit and loss structure that Smith/Tampa had previously operated under, this differed from our prior model under Smith.

11. Japaz and I felt a sense of pressure from Mutual to decide whether we were going to remain on board with Mutual or move on as changes were being implemented immediately.

12. With the departure of the Tampa branch, Japaz and I also lost our operations team.

13. We weighed all options including but not limited to staying with Mutual of Omaha. Japaz and I have many contacts in the mortgage and banking industry, we spoke with multiple lenders at that time.

14. Japaz and I ultimately decided to rejoin Smith at Waterstone. The deciding factor for us was our loyalty to Smith, our familiarity working with him and his operations team, and our past success operating under his leadership.

15. There was a lack of familiarity with what would have been our new management team at Mutual, neither Tomalak nor King had ever visited our office in NJ, we did not have any experience of working with Tomalak nor King at Mutual and had no certainty of what our future would look like if we remained at Mutual.

16. After Pat and I accepted the position with Waterstone and resigned from Mutual, Mutual contacted the remaining employees in our New Jersey branch to let them go.

17. To my knowledge, Mutual made no effort to keep those employees with the company by offering them positions in alternative branches.

18. Some of the employees from NJ ended up moving to Waterstone because they wanted to continue working with us as a team, others moved on to other opportunities.

19. Upon leaving Mutual, I continued to assist Tomalak and others at Mutual in whatever capacity I could to wind down the branch operation and help close out the pipeline. I went above and beyond to help Mutual to the very end.

**I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.**

Executed this 17th day of November 2023.

                                                      */s/ Michael Lynch*
                                                    Michael Lynch

30256295.1