IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>    Plaintiff,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>    Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**DECLARATION OF MATTHEW LANDGRAFF**

I, Matthew Landgraff, declare as follows:

1. I am currently employed by Defendant Waterstone Mortgage Corporation as a loan originator in the Tampa office.

2. I graduated from college in 2019 with a bachelor's degree in economics. Upon graduation, I was unsure what I wanted to do so I applied for jobs via LinkedIn.

3. In 2020, I got a call from someone who worked with Chris Smith and John Utsch at Mutual of Omaha. I interviewed and started with Mutual in December 2020 as a junior loan officer. Specifically, my job duties focused on calling leads and then passing them to a licensed loan officer if the lead expressed a desire to pursue a loan.

4. The telemarketing role with Mutual was my first professional job, and I had no prior experience in the mortgage industry.

**EXHIBIT 16**

5. Smith and Utsch took me under their wing, taught me about the mortgage business, and helped me study for the test to obtain my loan originator license.

6. In fact, within six months of starting with Smith and Utsch, I became a licensed senior loan originator and started closing loans on my own.

7. Eventually I became one of the top producing loan originators in the Tampa branch.

8. I attribute my success to Smith's and Utsch's mentorship and leadership.

9. Sometime in or around June 2022, Smith and Utsch told me they were leaving Mutual to go to Waterstone.

10. Neither Smith nor Utsch solicited me. I knew I had the option to stay at Mutual or decide to leave.

11. I decided to leave Mutual because I wanted to continue working with Smith and Utsch. They brought me up in the business and I valued their leadership.

12. I was supposed to receive commissions from Mutual on loans closed within 30 days of my resignation.

13. I trusted Mutual would pay the commissions and, as such, had no incentive to divert loans to Waterstone and did not do so.

14. However, Mutual's Brian Tomalak took over my loan files. I had several loans that should have closed within the 30-day window, and I believe Tomalak pushed back the closing date on these loans for no other reason than to avoid my commission. I lost approximately $4,000-$5,000 in commission as a result.

15. Several clients contacted me after I left Mutual wondering why their closing dates were being pushed out and why Mutual was not closing the loans.

16. I contacted Tomalak to figure out the reason for Mutual's delay but he did not provide answers and eventually ignored my calls altogether.

17. Prior to my resignation from Mutual, I never met or spoke to Tomalak.

18. I have also never met or spoke to Mutual's Kiley King.

**I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.**

Executed this 15th day of November 2023.

                                                */s/ Matthew Landgraff*
                                                Matthew Landgraff

30229742.3