**Page 1**

```
                                                          1

 1              IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                      TAMPA DIVISION
                 CASE NO.: 8:22-cv-01660-TPB-JSS
 3
     MUTUAL OF OMAHA
 4   MORTGAGE, INC.,

 5        Plaintiff,

 6   vs.

 7   WATERSTONE MORTGAGE
     CORPORATION,
 8
          Defendant.
 9   _____/

10

11

12
     DEPOSITION OF:     JEFFREY GENNARELLI, CORPORATE
13                      REPRESENTATIVE OF MUTUAL OF OMAHA
                        MORTGAGE, INC.
14
     TAKEN:             Pursuant to Notice by
15                      Counsel for Defendant

16   DATE:              May 25, 2023

17   TIME:              9:17 a.m. to 4:53 p.m. EST

18   LOCATION:          Hill Ward Henderson
                        101 East Kennedy Boulevard
19                      Suite 3700
                        Tampa, Florida  33602
20
     REPORTED BY:       Melanie Keefe, FPR
21                      Notary Public
                        State of Florida at Large
22

23

24

25

          REGENCY REPORTING SERVICE, INC. (813)224-0224
```

**Page 3**

```
 1        INDEX                      PAGE NUMBER

 2   Examination by Ms. Kreiter          5

 3   Read Letter                       255

 4   Errata Sheet                      256

 5   Reporter's Certificate            257

 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
         REGENCY REPORTING SERVICE, INC. (813)224-0224
```

**Page 2**

```
 1   APPEARANCES:    COURTNEY WALTER, ESQUIRE
                     CHRIS McCALL, ESQUIRE (Zoom)
 2                   Mitchell Sandler LLC
                     1120 20th Street Northwest
 3                   Suite 725
                     Washington, DC  20036
 4
                     MARK CARROLL, ESQUIRE
 5                   Mutual of Omaha Mortgage, Inc.
                     100 West 22nd Street
 6                   Suite 101
                     Lombard, Illinois  60148
 7
                     Attorneys for the Plaintiff
 8
                     MARIA L. KREITER, ESQUIRE
 9                   EMMA J. JEWELL, ESQUIRE (Zoom)
                     Godfrey & Kahn, S.C.
10                   833 East Michigan Street
                     Suite 1800
11                   Milwaukee, Wisconsin  53202

12                   CAROLINA Y. BLANCO, ESQUIRE (Zoom)
                     Hill Ward Henderson
13                   101 East Kennedy Boulevard
                     Suite 3700
14                   Tampa, Florida  33602

15                   STEPHANIE CATHERINE ZIEBELL, ESQUIRE (Zoom)
                     Waterstone Mortgage Corporation
16                   N25W23255 Paul Road
                     Pewaukee, Wisconsin  53072
17
                     Attorneys for the Defendant
18
19   ALSO PRESENT:   Carrie Macsuga
20
21
22
23
24
25
         REGENCY REPORTING SERVICE, INC. (813)224-0224
```

**Page 4**

| Exhibit | Description | Page |
|---|---|---|
| | E X H I B I T S | |
| 1 | Amended Notice of Federal Rule 30(b)(6) Deposition of Plaintiff Mutual of Omaha Mortgage, Inc. | 6 |
| 2 | LinkedIn for Jeff Gennarelli | 11 |
| 3 | Plaintiff Mutual of Omaha Mortgage, Inc.'s Fourth Amended Responses and Objections to Defendant Waterstone Mortgage Corporation's First Set of Requests for Production of Documents | 16 |
| 4 | Plaintiff Mutual of Omaha Mortgage, Inc.'s Second Amended Responses and Objections to Defendant Waterstone Mortgage Corporation's First Set of Interrogatories | 16 |
| 5 | E-Mails, Subject: Letter of Funding | 35 |
| 6 | E-Mails, Subject: Resignation | 84 |
| 7 | MOOM Summary of Corporate Earnings Contribution from Tampa and Daytona Branches | 124 |
| 8 | Plaintiff Mutual of Omaha Mortgage, Inc.'s Responses and Objections to Defendant Waterstone Mortgage Corporation's Second Set of Interrogatories | 136 |
| 9 | MOOM Profit and Loss Statements, Payroll Detail, Group Health Insurance | 136 |
| 10 | MOOM Profit and Loss Statement for Tampa | 144 |
| 11 | Independent Auditors' Report and Consolidated Financial Statements for Mutual of Omaha Mortgage, Inc., for the Years Ended December 31, 2022, and 2021 | 159 |
| 12 | E-Mails, Subject: MOOM Financial Performance for June 2022 | 179 |
| 13 | E-Mails, Subject: Tampa | 199 |
| 14 | MOOM 2024 Plan vs. 2023 Plan | 202 |
| 15 | Glossary of English-Spanish Financial Terms | 219 |
| 16 | MOOM Buyer Dos and Don'ts | 235 |
| 17 | MOOM Profit and Loss Statements, Payroll Detail, Group Health Insurance, Loans Held for Sale, Transaction Listings | 250 |

REGENCY REPORTING SERVICE, INC. (813)224-0224

**EXHIBIT 4**

25

1    MS. WALTER: Object to the extent it implicates
2    attorney work product. He's here as -- he's --
3    MS. KREITER: He's --
4    MS. WALTER: He's not the attorney.
5    MS. KREITER: He's not here as an individual.
6    He's here as a corp rep.
7    MS. WALTER: I did not say individual. I said he
8    is not the attorney in the case.
9    MS. KREITER: I'm entitled to ask what documents
10    and what preparation this witness did to testify about
11    damages for which ten months into the case Mutual has
12    not disclosed any number, so that's the line of my
13    questions.
14    Q.   Do you have a number, Mr. Gennarelli, with
15    respect to this first bucket, the loans that have
16    transferred to Waterstone from Mutual of Omaha? Have you
17    looked at the loans, and do you have a number that you're
18    ready to present at the deposition today with respect to
19    Bucket 1?
20    A.   I don't have a number with respect to Bucket 1.
21    Q.   Is Mutual seeking damages with respect to
22    Bucket 1?
23    A.   I believe so.
24    Q.   But you're not able to tell me what those damages
25    are?

REGENCY REPORTING SERVICE, INC. (813)224-0224

26

1    A.   Not at this moment.
2    Q.   Has you or anyone at Mutual made an attempt to
3    calculate those damages?
4    A.   I have not.
5    Q.   Has anybody at Mutual?
6    A.   Not that I'm aware of.
7    Q.   And your position is that you're waiting to do
8    more discovery?
9    MS. WALTER: Object to form.
10    A.   It is.
11    Q.   What more discovery do you need to do?
12    MS. WALTER: Object to form.
13    A.   Well, I'd like to see the personal e-mails where
14    all of our data was sent to. That's what I'd really like to
15    know so that I can understand the absolute damage caused by
16    this unbelievable breach of conduct.
17    Q.   Did Mutual of Omaha Mortgage send subpoenas to
18    any of the individuals who have those e-mails?
19    MS. WALTER: Object to the extent it implicates
20    attorney work product.
21    MS. KREITER: Work product --
22    MS. WALTER: Mr. Gennarelli isn't going to be
23    able to answer how discovery is being conducted in the
24    case. That's my job.
25    MS. KREITER: The fact that subpoenas have gone

REGENCY REPORTING SERVICE, INC. (813)224-0224

27

1    out is not a privileged question.
2    MS. WALTER: I didn't -- I said it implicates
3    attorney work product. I didn't say it was privileged.
4    I'm not instructing him not to answer.
5    Q.   Do you have an understanding --
6    A.   I'm not aware of the subpoenas or not. I don't
7    know.
8    Q.   So you don't know whether Mutual has made an
9    effort to, for example, subpoena the personal e-mails of any
10    of the individuals that you claim are necessary?
11    A.   I am not aware.
12    Q.   When you were preparing to testify for the
13    deposition, did you have discussions or requests, access to
14    the e-mails that you believe are necessary to calculate
15    Category 1 damages?
16    MS. WALTER: Object to the extent it implicates
17    attorney work product or goes to attorney-client
18    discussions.
19    Q.   Go ahead.
20    A.   Repeat the question.
21    Q.   Sure. I hear you testifying that Mutual is
22    unable to calculate damages with respect to Category 1,
23    which we've defined as the loans that have closed at
24    Waterstone due to some unlawful conduct. And I'm trying to
25    understand your testimony.

REGENCY REPORTING SERVICE, INC. (813)224-0224

28

1    I've heard you say that calculation hasn't been
2    done because you haven't seen personal e-mails, and I've
3    heard you testify that you don't know whether there have
4    been any subpoenas issued by Mutual in an effort to try to
5    get the e-mails. So now my question is in connection with
6    preparing for this deposition --
7    A.   Yes.
8    Q.   -- did you make any efforts at that point in time
9    to seek out the e-mails that you believe are necessary to
10    testify on the topic noticed?
11    MS. WALTER: Object to form.
12    A.   I didn't -- I did not.
13    MS. WALTER: Can we take a ten-minute break?
14    MS. KREITER: Sure.
15    (A recess was taken.)
16    MS. KREITER: Can you just read back the last
17    question and last answer, please?
18    (The previous question and answer was read by the
19    reporter.)
20    Q.   (By Ms. Kreiter) So there may be times during
21    this deposition when I say "you." You're testifying on
22    behalf of Mutual. If I say "you" during this deposition,
23    just understand that I mean Mutual collectively as a
24    company; correct or understood?
25    A.   Yes.

REGENCY REPORTING SERVICE, INC. (813)224-0224

57

1  would be, they had the employees violate the restrictive
2  covenants. Waterstone enticed them with $750,000 checks and
3  trips to Costa Rica and things like that to leave. That's
4  what I would say is a problem.
5       Q.  Let me ask it this way. I think you're trying to
6  answer. I think something is lost in translation here, so
7  let me just ask it a different way. Are you able to testify
8  on behalf of Mutual as to how many loans involved an
9  employee of Mutual sending confidential or borrower
10 information?
11      MS. WALTER: Object to the extent it goes beyond
12   any -- beyond the scope of any of the noticed topics.
13      A.  And I --
14      MS. WALTER: Answer.
15      A.  Again, it goes back to my whole speech that
16 you're trying to put a dollar amount on confidential
17 information. And, you know, that is a different deal there
18 which you're walking down the path of. I mean, Mutual of
19 Omaha has a brand. It's 112 years old.
20      Someone entrusted an employee of Mutual of Omaha
21 with their information. Their information was then sent to
22 Waterstone, which may or may not have the same brand, or the
23 same customer may -- may not have chosen their information
24 to be released. That's a whole different deal. It's not
25 about the loan in that regard.

REGENCY REPORTING SERVICE, INC. (813)224-0224

58

1       What is about the loan is the fact that --
2  listen, I mean, we can go round and round about this, but
3  I've been in this business long enough to see you can't go
4  in, and you know there's restrictive covenants. And you
5  know how we know there's restrictive covenants? Because
6  they set up little workarounds to be sneaky and to try not
7  to get caught. Everyone agreed to say, "Oh, that was a good
8  idea," except they did get caught. So everyone was aware.
9       If you're -- if what you were saying earlier,
10 that these restrictive covenants weren't enforceable, the
11 folks sure thought they were enforceable because they had
12 set up the e-mails. They had little codes that they built
13 in and tried to work around so people wouldn't know what
14 they were doing. So -- and those e-mails were sent to sales
15 management at Waterstone as well, so Waterstone was aware of
16 that.
17      Q.  For how many loans did the employees send
18 confidential information?
19      MS. WALTER: Object.
20      A.  Asked and answered, I believe is the objection,
21 but we talked about this.
22      Q.  I'm just not clear on it, so I just want a clear
23 record.
24      A.  Yeah.
25      Q.  For how many loans did the employees send

REGENCY REPORTING SERVICE, INC. (813)224-0224

59

1  confidential information?
2       MS. WALTER: Object.
3       A.  I don't know.
4       Q.  So confidential information --
5       A.  Hundreds of loans.
6       Q.  -- it could be taken by an employee. I will tell
7  you employees make decisions sometimes, you know, but then
8  some employees immediately regret it and delete it. And,
9  you know, information was taken, but it was never put to
10 use. Instead, the employee has second thoughts, deletes the
11 information; or the employer, "Alert. Why do you have this?
12 I don't want anything to do with that. You're deleting it,"
13 and it never really gets put to use.
14      So with respect to the information that Mutual
15 contends was confidential or a trade secret or borrower
16 information, does Mutual have evidence that that information
17 was, in fact, put to use by Waterstone? And if so, with
18 respect to how many loans?
19      A.  Well, there is evidence that loans closed, as you
20 referenced earlier. The exact amount, you already asked me,
21 and I wasn't aware. But I'm sure counsel is aware of the
22 exact number, but I wasn't aware of it. So --
23      Q.  Okay.
24      A.  -- according to this deposition, I won't be able
25 to answer that. At trial, I'm sure we'll be able to answer

REGENCY REPORTING SERVICE, INC. (813)224-0224

60

1  that.
2       Q.  So to be clear, are you able to tell me at this
3  deposition today on behalf of Mutual as the corporate rep
4  for how many of the loans where confidential information was
5  taken or transmitted -- for how many of those loans was the
6  information actually put to use by Waterstone?
7       MS. WALTER: Object to form.
8       And before you answer that, I just want to put on
9  the record that I did object to Topics 9 through 13
10 regarding all evidence insofar as it relates to
11 attorney work product.
12      MS. KREITER: This is Topic 1, what are the
13 damages and how were they calculated? So --
14      MS. WALTER: This is Topics 9 through 12 about
15 how Waterstone used the confidential information.
16      MS. KREITER: Well, it also relates to the
17 statement --
18      MS. WALTER: That's --
19      MS. KREITER: Let me say what I'm going to say,
20 and then you can speak.
21      MS. WALTER: Okay.
22      MS. KREITER: It also relates to the statement in
23 Mutual's written discovery response that there was
24 unlawful conduct by Waterstone that caused the losses.
25 So I'm following up on that. It's Deposition Topics 1

REGENCY REPORTING SERVICE, INC. (813)224-0224