# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) |
| | ) Civil Action No. 22-CV-01660 |
| | ) |
| Plaintiff, | ) **PLAINTIFF MUTUAL OF OMAHA** |
| | ) **MORTGAGE, INC.'S REPLY IN** |
| v. | ) **SUPPORT OF ITS MOTION FOR** |
| | ) **SUMMARY JUDGMENT ON LOST** |
| WATERSTONE MORTGAGE CORPORATION, | ) **PROFIT DAMAGES** |
| | ) |
| | ) |
| Defendant. | ) |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby files this Reply in Support of its Motion for Summary Judgment on Lost Profit Damages. In support thereof, Plaintiff states as follows:

## **INTRODUCTION**

Defendant, Waterstone Mortgage Corporation's ("Defendant") Opposition fails to create a genuine issue of material fact as it relates to Mutual's entitlement to lost profit damages. In its Opposition, Defendant attempts to confuse the issues by overlooking the applicable legal analysis, failing to identify specific evidence that controverts Mutual's facts,[1] and devoting ten pages to improper evidentiary requests.

---

[1] Defendant fails to comply with Fed. R. Civ. P. 56 and this Court's Order (D.E. 34). Specifically, Defendant does not provide a response to Mutual's Statement of Material Facts ("SOF"). Instead Defendant argues in a conclusory fashion that there are "disputed issues of material fact" related to Mutual's SOF, but never identifies where the dispute exists in the record. Opp. at 2. For this reason alone, the Court should deem Mutual's SOF to be undisputed. *See Pree*

1

As directed by the Court, Mutual assumed for this Motion that it prevailed on liability and analyzed the damages that would flow from that. In doing so, the record is clear: but for Defendant's wrongdoing, Mutual would not have lost its Florida operations. The damages that Mutual sustained are reasonably certain as demonstrated through the comprehensive methodology and projections provided by Mutual's expert witness, Ms. Rosevear. Thus, Mutual is entitled to summary judgment as a matter of law on its lost profit damages.

## ARGUMENT

### I.   DEFENDANT IS ENTITLED TO LOST PROFIT DAMAGES.

Florida law is clear: when liability is established, a plaintiff can recover lost profit damages if a plaintiff demonstrates that the defendant's action was a "substantial factor" in causing the lost profits, and can establish that amount with reasonable certainty. *See* Mot. at 16-17. This Court ordered Mutual to assume that liability is established and move for summary judgment on damages that flow from any wrongdoing, which is exactly what Mutual has done. *See* D.E. 102 at 4:25-5:5.

The Court's consideration of causation is necessarily intertwined with the lost profit analysis under Florida law. *See* Mot. at 16-17. Indeed, it is error to award lost profit damages without evidence of causation; therefore, Mutual was legally

---

*v. Pickle Pro, LLC*, No. 2:17-cv-42-FtM-29CM, 2018 WL 806585, at *1 (M.D. Fla. Feb. 9, 2018) (citing Fed. R. Civ. P. 56(e)).

2

obligated to identify this evidence and did so (Mot. at 17-20). *See Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1352 (S.D. Fla. 2006); *see, e.g., Tietig v. SE Reg. Constr. Corp.*, 557 So. 2d 98, 99 (Fla. 3d DCA 1990); *Stensby v. Effjohn Oy* Ab, 806 So. 2d 542, 544 (Fla. 3d DCA 2001).[2]

Accordingly, the two critical questions before this Court are: (1) whether Defendant caused Mutual damages,[3] and (2) whether Mutual is able to establish those damages with reasonable certainty. The answer to both is yes.

### A. Defendant misapprehends that Mutual's damages are caused by Defendant's unlawful theft of Mutual's business operations.

This case is about Defendant's decimation of the entirety of Mutual's business operations in the State of Florida. It is about Defendant's planned and calculated scheme to utilize three of Mutual's former managers to embark on the theft of Mutual's presence in Florida, and their agreement to do so. This case is ***not*** solely about the departure of individual employees as Defendant would have this Court

---

[2] Interestingly, Defendant only cites to five cases in its entire Opposition and does not provide substantive argument related to these cases nor does it appear to rely on any of these cases to argue that Mutual's legal analysis is somehow incorrect. *See Miller v. Mortgage*, No. 6:11-cv-1337-Orl-22DAB, 2013 WL 1209135, at *1 n.2 (M.D. Fla. Apr. 10, 2013) (entered summary judgment in favor of defendant and in doing so, noted that plaintiff's counsel "provided little to no substantive argument in response to the [] motion" and "fail[ed] to cite case law for his arguments or provide substantive discussion" in the response).

[3] The Court stated that Mutual need not be concerned with liability in this brief. D.E. 102 at 4:25-5:5. That is why Mutual previously requested an opportunity to brief this issue. Mot. at 18 n.1. If the Court does wish for Mutual to address each of the prima facie elements necessary for each of its claims, Mutual renews its request that it be provided an opportunity to do so and will not address Defendant's arguments as they pertain to liability at this time. *ICMfg & Assocs., Inc. v. Bare Board Grp., Inc.*, 238 So. 3d 326 (Fla. 2d DCA 2017); *Nebula Glass Intern., Inc. v. Reichold, Inc.*, 454 F.3d 1203 (11th Cir. 2006).

3

believe. The departure of the individual employees is only one spoke in the wheel that was Defendant's illegal conspiracy to upend Mutual Florida's operations.

Defendant knew that the Managers would not leave Mutual without their branch employees; Defendant participated in, encouraged, and facilitated illegal practices in pursuing the branch employees to leave Mutual; and that but for those actions taken by Defendant, Mutual Florida would not have transitioned to Defendant. Mot. at 18-19. In addition to the individual employees' departures that were caused by Defendant's wrongdoing, this case involves Defendant's theft of Mutual's borrowers' confidential information and trade secrets belonging to Mutual. *Id.* at 19. It involves Defendant's use of Mutual's information to divert loans and directives to its Managers to obtain Mutual's employees' compensation information to entice them to join Defendant. *Id.* All of these actions, taken together, caused Mutual's damages. Not the recruitment of any one individual as Defendant argues.

Defendant states that it "disputes" Mutual's allegations without identifying record evidence to demonstrate why. Opp. at 104. This approach is not enough. Defendant must show that the summary judgment is improper by identifying *specific evidence* that raises a genuine dispute as to a material fact, which it failed to do. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The only evidence Defendant sets forth are repetitive declarations from its individual employees expressing their displeasure with Mutual's operations. *See*

4

Opp. at 14-15. But those declarations, even if true, are not material to Mutual's claims against Defendant. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mutual's claims are against *Defendant*, not the individual employees. Mutual does not contend that these employees *caused* its damages; rather, Mutual contends that Defendant engaged in conduct that *caused* its damages. The fact that these individuals were at-will employees is not in and of itself fatal to Mutual's claims. *See, e.g.*, *Centennial Bank v. ServisFirst Bank Inc.*, No. 8:16-cv-88-CEH-CPT, 2022 WL 10219893, at *19 (M.D. Fla. Oct. 10, 2022); *Mortgage Now, Inc. v. Stone*, No. 3:09cv80/MCR/MD, 2012 WL 4478950, at *16 (N.D. Fla. Sept. 20, 2012).

Defendant's final argument related to causation that it instructed its employees not to use or take information belonging to Mutual is directly contradicted by the record evidence cited in Mutual's Motion. D.E. 104. Defendant not only directly sought out the confidential information belonging to Mutual, but Defendant also used this information to stand up its business operations in order to make a seamless transition and to make the departed employees' lives as undisrupted as possible. *See, e.g.*, SOF ¶¶ 53-56.[4]

---

[4] The two excerpts of deposition transcripts that Defendant cites to are taken entirely out of context. With respect to Mr. Gennarelli's transcript, Defendant's counsel asked Mr. Gennarelli about a deposition topic that he was not designated to testify on. *See* D.E. 104-2 at 61:3-22.

## B.   Mutual's damages are pleaded with reasonable certainty.

Defendant fails to meaningfully address Mutual's position that it has set forth its entitlement to lost profits with reasonable certainty.  Defendant does not provide any basis in law for why Ms. Rosevear's damage model should be disregarded by this Court and ignores Mutual's explanation of Ms. Rosevear's model and the two separate datasets to reach the same conclusion under both.  *See* Mot. at 22-23.

Defendant argues that there is no basis for Ms. Rosevear to estimate damages in excess of $1 million (Opp. at 10) or that she failed to consider the anomaly in the mortgage industry in 2020-2021 (*id.*).  But that is surely belied by the fact that Ms. Rosevear provided a fifteen (15) page comprehensive expert witness report detailing her methodology and how she arrived at her conclusions.  *See* D.E. 100-32.  Ms. Rosevear considered Mutual's historical loan sales at the Tampa and Daytona branches, and then based on those sales, she relied on two data sources to inform her extrapolation models—both monthly sales from peer branches and national data that Defendant's own expert witness relied on.  *Id.* at 9-11.  In doing so, she naturally

---

Undersigned counsel objected to this line of questioning. *Id.* at 61:9-15.  Similarly, with respect to Ms. Theobald's testimony, Defendant neglects to include the full line of questioning, where Ms. Theobald testifies that Mr. Carroll handled the discovery related to the use of the confidential information, and that is why she could not properly answer the question. D.E. 104-22 at 8-10.

accounted for the anomaly present in the mortgage industry in 2020-2021 because she reviewed and extrapolated that historical data. To say otherwise is patently false.

Defendant complains that it is speculative to assume that the Tampa and Daytona branches would have stayed open. As previously argued, this is a jury question, and in doing so, Defendant ignores an entire section of Mutual's Motion, where it states that Ms. Rosevear's model is amenable to different time periods. Mot. at 23-25. Further, an affidavit provided by Mutual's in-house counsel addresses the basis for which these branches would have continued to operate. *See* 100-1 ¶ 16.

## II. THIS COURT SHOULD NOT GRANT JUDGMENT IN FAVOR OF WATERSTONE AS TO CERTAIN CATEGORIES OF DAMAGES.

Defendant devotes nearly ten pages of its Opposition to secure rulings from this Court to exclude certain damages. Opp. at 3-12. These issues, however, are not properly before the Court given the Court's Order explicitly requiring Mutual to move for summary judgment on damages and for Defendant to respond.[5] To the extent this Court intends to entertain Defendant's requests, Mutual respectfully requests an additional opportunity to provide more thorough briefing given the current page limitations.

---

[5] The Court expressly stated at the August 23, 2023 Case Management Conference, "Plaintiff is directed to file a summary judgment motion on damages *only* within 30 days and defendant responds and without prejudice to any other future summary judgment on damages or anything else." D.E. 106-1 at 15-18.

Dated:   Washington, D.C.
         December 8, 2023

                MITCHELL SANDLER LLC

                By: */s/ Courtney E. Walter*

                Ari Karen (admitted *pro hac vice*)
                Christopher L. McCall (admitted *pro hac vice*)
                Courtney E. Walter
                1120 20th Street N.W., Suite 725
                Washington, D.C.  20036
                Email:  akaren@mitchellsandler.com
                Email:  cmccall@mitchellsandler.com
                Email:  cwalter@mitchellsandler.com
                Telephone:  (202) 886-5292

                GUNSTER, YOAKLEY & STEWART, P.A.

                John A. Schifino
                Florida Bar No. 0072321
                401 East Jackson Street, Suite 1500
                Tampa, Florida  33602
                Primary email:  jschifino@gunster.com
                Secondary email: eservice@gunster.com
                Telephone:  (813) 739-6962

                *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*