## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) <br> ) Civil Action No. 22-CV-01660 <br> ) |
| Plaintiff, | ) **PLAINTIFF MUTUAL OF OMAHA** <br> ) **MORTGAGE, INC.'S RESPONSE IN** |
| v. | ) **OPPOSITION TO DEFENDANT** <br> ) **WATERSTONE MORTGAGE** |
| WATERSTONE MORTGAGE CORPORATION, | ) **CORPORATION'S AMENDED MOTION** <br> ) **TO STRIKE MARK C. CARROLL AND** <br> ) **PLAINTIFF'S UNDISCLOSED CREDIT** |
| Defendant. | ) **INQUIRIES** |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby files this Response in Opposition to Defendant Waterstone Mortgage Corporation's ("Defendant" or "Waterstone") Amended Motion to Strike Mark C. Carroll ("Mr. Carroll") and Plaintiff's Undisclosed Credit Inquiries. In support thereof, Plaintiff states as follows:

### **INTRODUCTION**

Waterstone and its counsel have known for nearly two years that Mr. Carroll serves as Mutual's in-house counsel, yet never sought to depose him during discovery by way of Waterstone counsel's own voluntary decision-making.

In April 2022—in response to the onset of Waterstone's coordinated and calculated scheme to upend Mutual Florida's operations—Mr. Carroll sent Cease-

1

and-Desist letters to Mutual's then-Departed Employees and copied Waterstone's current counsel in doing so. Waterstone's counsel then directly communicated with Mr. Carroll up until this lawsuit was filed about the circumstances surrounding the mass exodus of Mutual's branches as a result of Waterstone's wrongdoing.

Since the initiation of this lawsuit, Waterstone has served Mutual with its Initial Disclosures, disclosing documents with Mr. Carroll's name on them as those it intends to rely upon to support its defenses. Throughout discovery, Mr. Carroll verified every Interrogatory. Mr. Carroll attended several depositions. In fact, Mr. Carroll's name came up during several depositions—by both Waterstone's counsel and deponents alike—for his involvement in the investigation leading up to this lawsuit. Waterstone's counsel even directly informed Mr. Carroll himself, with undersigned counsel present, that she would be issuing a notice for his deposition. She never did.

Yet now, Waterstone claims that it is somehow prejudiced—but does not identify how—by Mr. Carroll's submission of an affidavit in support of Mutual's Motion for Summary Judgment containing information that is within Waterstone's possession, has already been made available to Waterstone, or is otherwise publicly available. Mr. Carroll's affidavit simply served to authenticate corporate documents and internal processes, and nothing more. Nevertheless, under well-established law in the Eleventh Circuit, Mutual was not required to disclose Mr. Carroll as a witness

2

given that Waterstone's counsel was very well aware of Mr. Carroll's identity and had the opportunity to depose him.  And even if Mutual was required to supplement its disclosures, there is no prejudice to Waterstone given that Waterstone had been aware of Mr. Carroll's involvement both before and during the lawsuit, and nothing contained within his affidavit addresses his own personal involvement beyond authenticating Mutual's method of identifying duplicate credit inquiries.

Accordingly, Waterstone's Amended Motion to Strike Mark C. Carroll and Plaintiff's Undisclosed Credit Inquiries must be denied.

## **BACKGROUND**

1.    Following the departure of Mutual's former Daytona branch, Mr. Carroll, on behalf of Mutual, sent Cease-and-Desist Letters on April 29, 2022 to Mutual's then-Departed Employees, copying Waterstone's General Counsel, advising them of the violation of the Departed Employees' contractual and legal obligations to Mutual and the necessity of avoiding further infractions.  *See* Ex. A, WMC001528.

2.    Between May and June of 2022, Mr. Carroll and Waterstone's Counsel frequently communicated regarding a number of issues pertaining to the departure of Mutual's employees to Waterstone, including the following: (1) Waterstone's collection of the Departed Employees' certifications of destruction in accordance with the terms of the Cease-and-Desist Letters; (2) the entry of a Protective Order

amongst the Parties; (3) Waterstone's identification of Mutual's loans that Waterstone believed may have been taken from Mutual; and (4) Mutual's privacy concerns related to the information the Departed Employees sent from Mutual to their private e-mail addresses.  *See* Ex. B, WMC011910-WMC011919.

3.     Despite the Cease-and-Desist letters being sent by Mutual, Mutual's former employees continued to send information belonging to Mutual to Waterstone's employees at Waterstone's direction.  *See* Ex. C, MOM0015279; Ex. D, MOM0015236.

4.     Thereafter, Mutual's Tampa and Paramus branches left Mutual for Waterstone on June 15, 2022.

5.     Mutual then commenced this lawsuit against Waterstone on July 22, 2022.  D.E. 1.

6.     On October 21, 2022, Waterstone served Mutual with its Initial Disclosures.  *See* Ex. E, Defendant Waterstone Mortgage Corporation's Initial Disclosures.

7.     In there, Waterstone identified "Employees of Mutual of Omaha Mortgage" as individuals likely to have discoverable information pursuant to Fed. R. Civ. P. 26(a)(1).  *Id.* at 1.

8.      With respect to its disclosures pursuant to Fed. R. Civ. P. 26(a)(2), Waterstone disclosed the following documents, among others, that it had in its possession, custody, or control and may use to support its claims or defenses:

- The April 29, 2022 cease-and-desist letters received from Mutual of Omaha; and

- The correspondence exchanged with in-house counsel for Mutual of Omaha following the cease-and-desist letters.

*Id.* at 3.

9.      At all times relevant to this case and leading up to it, Mr. Carroll served as Vice President, Senior Legal Counsel for Mutual.  *See* D.E. 100-1 ¶ 2.  The Cease-and-Desist Letters referenced in Waterstone's Initial Disclosures are those sent by Mr. Carroll.  Similarly, Waterstone's identification of the correspondence exchanged with in-house counsel for Mutual refers to those with Mr. Carroll.

10.     As discovery progressed in this case, Mr. Carroll verified all the answers to Waterstone's Interrogatories on Mutual's behalf.  *See* Ex. F.

11.     Mr. Carroll attended the depositions of several witnesses in the case, including the depositions of both of Waterstone's designated 30(b)(6) corporate representatives, Jeffrey Gennarelli and Katherine Theobald, on May 25 and 26, 2023, respectively.

12.     During Mr. Gennarelli's deposition on May 25, Waterstone's counsel inquired about who at Mutual Mr. Gennarelli would have shared drafts of his damage

spreadsheet with, to which Mr. Gennarelli responded that Mr. Carroll also would

have seen it:

> Q:    And do you remember if you exchanged drafts or e-mails
>       with anyone besides Mr. Mayle about Exhibit 7?
> A:    And counsel?
>
> Q:    I guess I don't need to know the content of your discussion
>       with counsel.  But if you tell it was counsel, I'll stop with
>       that.
> A:    I believe we shared it with counsel, yeah.

*See* Ex. G, Gennarelli Dep. 128:18-24.

13.    The following day, during Ms. Theobald's deposition, Waterstone's

counsel inquired about Mutual's investigation into the facts surrounding Mutual

Florida's departure.   At several points during the deposition, Mr. Carroll's name

came up in questioning.

> Q:    What investigation by Mutual was done to determine
>       whether, in fact, it had rejected this loan?
> A:    So, all of that discovery was handled by Mark Carroll, our
>       in-house counsel.
>
> Q:    Was Mark Carroll reviewing the e-mails themselves?
> A:    Again, Mark Carroll handled the investigation and
>       discovery so I can't speak to – to all of the actions that he
>       took.
>                                 . . .
>
> Q:    Are you aware that Mark Carroll is the witness that Mutual
>       selected to serve as the verifying witness for all of the
>       interrogatories it has provided back to Waterstone in this
>       case?
> A:    Not specifically aware of that.

Q:    Do you have an understanding that by Mark Carroll signing the verification to those interrogatories, he is the representative of Mutual substantiating the substance of the facts?

A:    Not that I'm aware of.  I'm not familiar with that process.

*See* Ex. H, Theobald Dep. 23:23-25, 24:1-25.

Q:    Is Mutual's position that Mark Carroll or somebody in legal is the only person that investigated whether these loans that were transferred from Mutual to Waterstone while the employees were still employed, Mark Carroll is the only person that vetted whether, in fact, Mutual has rejected those loans?

A:    So Mark Carroll handled the discovery.  Myself and other members of the human resources team at the time that Daytona departed, you know, very much multiple employees resigning at the same time, the nature of the departure of the Daytona branch did lead to our human resources team in that earlier stage doing some investigation of their e-mails as well to understand the scope and the context of what was happening, including identifying e-mails that had been sent from employees that included borrower data.

*Id.* at 25:12-25; 26:1-4.

Q:    Is there someone within Mutual who was investigating whether, in fact, as Mr. Van Dame claimed and maybe some of the other employees will claim, these loans have been rejected by Mutual, so we had to refer them out? Because the complaint is making serious allegations that these loans were unlawfully diverted.  Waterstone's position is, no, they were not.  Those loans had been rejected by Mutual.  My understanding is that Mutual disputes it rejected those loans, so I'm trying to understand who is the person at Mutual that made the determination these loans were never rejected?

A:    That portion or that part of the discovery would have been handled by Mark Carroll.

7

*Id.* at 26:11-24.

14.    Immediately following Ms. Theobald's deposition in Tampa, Florida on May 26, 2023, Waterstone's counsel informed undersigned counsel and Mr. Carroll that she intended to notice his deposition.  Ex. I, Walter Declaration at ¶ 5.

15.    To date, Waterstone never deposed, nor sought to depose, Mr. Carroll.  *See id.* at ¶ 6.

## **ARGUMENT**

### I.    **MUTUAL WAS NOT REQUIRED TO DISCLOSE MR. CARROLL AS A WITNESS ON ITS INITIAL DISCLOSURES.**

Waterstone's Counsel communicated with Mr. Carroll as far back as April 2022 with respect to the circumstances surrounding this lawsuit, and indeed included Mr. Carroll's correspondence on its Initial Disclosures served in October 2022. Waterstone's Counsel now complains that Mr. Carroll's identity was somehow unknown to them and therefore, he should not be permitted to provide testimony. There is no basis in the law to exclude his affidavit.   The law is clear that a party is not required to supplement its disclosures when the party seeking to strike the witness was previously aware of the witness's identity through its own disclosures. *Beasley v. Bank*, No. 6:20-cv-883-WWB-EJK, 2021 WL 9204484, at *2 (M.D. Fla. Dec. 23, 2021); *see also Clifton v. Jeff Davis Cty., Georgia*, No. 2:16-cv-108, 2018 WL 3785448, at *3-4 (S.D. Ga. Aug. 9, 2018) (finding a plaintiff did not have a duty

to disclose where defendants were already aware of the witness through the defendants' own disclosure); *Graley v. TZ Ins. Sols., LLC*, No. 2:14-cv-636-FTM-CM, 2016 WL 4595066, at *3 (M.D. Fla. Sept. 2, 2016) ("[F]ailure to initially disclose a witness that was either known to the opposing party or became known through discovery is harmless[.]") (citing *Baldeo v. Dolgencorp, LLC*, No. 8:12-cv-08762, 2014 WL 4749049, at *6-7 (M.D. Fla. Sept. 23, 2014)).

Even if Waterstone somehow claims ignorance of Mr. Carroll's identity prior to this lawsuit, which is patently false and contradicted by record evidence, there is no question that Waterstone's Counsel would have learned during discovery that Mr. Carroll was involved in the underlying investigation. This is clearly evidenced by Waterstone's Counsel's statement to Mr. Carroll immediately following a deposition that she intended to notice his deposition. Furthermore, throughout the entire case, Mr. Carroll verified the answers to Interrogatories submitted on behalf of Mutual. A party is not required to supplement its initial disclosures if the witness's identity and knowledge are disclosed during discovery, and the party intends to use the witness in support of its claim. *Beasley*, 2021 WL 9204484, at *1 (citing *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 16-cv-2001-Orl-31GJK, 2018 WL 1474184, at *2 (M.D. Fla. Mar. 7, 2018)); *Chadwick v. Bank of Am., N.A.*, 616 F. App'x 944, 948 (11th Cir. 2015) (declining to strike an affidavit because the witness verified responses to interrogatories, and thus, her knowledge of the case should not

have come as any surprise). As such, there is no basis to exclude Mr. Carroll as a witness at this point. Nor is there any basis to re-open discovery as Waterstone had more than sufficient time to notice Mr. Carroll's deposition.

## II. EVEN IF MUTUAL WAS REQUIRED TO DISCLOSE MR. CARROLL, ANY FAILURE TO DO SO IS HARMLESS ERROR.

Assuming this Court finds that Mutual was required to disclose Mr. Carroll, Waterstone fails to identify any way in which it would be prejudiced if Mutual were to supplement its Initial Disclosures and include him as a witness. Fed. R. Civ. P. 37(c)(1) provides that even when a disclosure should have been made, the evidence will not be excluded if the failure to disclose was substantially justified or harmless. "The court has broad discretion in determining whether a party's failure to disclose discovery materials is either substantially justified or harmless." *Garley v. TZ Ins. Sols., LLC*, No. 2:14-cv-636-FtM-CM, 2016 WL 4595066, at *2 (M.D. Fla. Sept. 2, 2016). "A harmless failure to disclose exists when there is no prejudice to the party entitled to receive the disclosure." *Id.*

Waterstone's Counsel did not attempt to depose Mr. Carroll. Indeed, despite informing Mr. Carroll that she intended to depose him, Waterstone's Counsel did not do so. Waterstone cannot now claim any sort of prejudice when it made the voluntary decision not to depose him. Where a defendant has an opportunity during the discovery period to depose an individual, an untimely disclosure should be deemed harmless. *See Chadwick*, 616 F. App'x at 948 (affirming the district court's

decision to deny the exclusion of a witness because the witness was not a surprise—the movant had "ample opportunity to depose her, but simply chose not to"); *Beasley*, 2021 WL 9204484, at *2; *see also Signor v. Safeco Ins. Co. of Illinois*, No. 19-61937-civ, 2021 WL 4990314, at *4 (S.D. Fla. Apr. 16, 2021) ("A belated disclosure is harmless when the opposing party had an opportunity to depose the witness prior to the discovery deadline."); *Superior*, 2018 WL 1474185, at *2.

Further, Mr. Carroll's affidavit does not even address his own personal involvement in the investigation leading to this lawsuit; rather, it simply serves to authenticate certain corporate documents and findings that "could have been addressed by any number of the [Mutual] employees on the witness list." *Hooks v. Geico Gen. Ins. Co. Inc.*, No. 3:13-cv-891-J-34JBT, 2016 WL 5415134, at *7 (M.D. Fla. Sept. 28, 2016). This is another reason to find any inadvertent failure to disclose to be deemed harmless under the law.

Waterstone has provided no such reason for how it would be prejudiced, and that is because there is none. If a defendant fails to state how it would be prejudiced if a party is allowed to supplement its disclosures, then a court should find that it is unlikely it will face prejudice. *Beasley*, 2021 WL 9204484, at *4. For these reasons, the Court should find that even if Mutual was required to supplement its Initial Disclosures, such supplement of the disclosures is harmless.

## III.   ALL OF THE INFORMATION WITHIN MR. CARROLL'S AFFIDAVIT WAS ALREADY KNOWN TO WATERSTONE.

While Waterstone insists that Mutual never disclosed that there were 46 loans diverted from Mutual to Waterstone, Waterstone overlooks the fact that all of the information within Mr. Carroll's affidavit was already known to Waterstone, is presently available to it, or is publicly available.

On June 26, 2023, Mutual served Waterstone with the following requests, in pertinent part:

> **Request No. 1.**   All reports showing the credit inquiries of Waterstone's Ormond Beach and Winter Park branches from the period of March 1, 2022 to April 26, 2022.
>
> **Request No. 2**.  All Documents showing the loans where a credit inquiry was initiated prior to a Departed Employee's commencement of employment, which was transferred to a Departed Employee after s/he commenced employment with Waterstone.
>
> **Request No. 3.**  All Documents showing the loans where a credit inquiry was initiated prior to a Departed Employee's commencement of employment, where a commission was paid to a Departed Employee after s/he commenced employment with Waterstone.
>
> **Request No. 4.**   All reports showing credit inquiries of Waterstone's Ormond Beach branch from April 26, 2022 to June 15, 2022.
>
> **Request No. 5.**   All reports showing the credit inquiries of Waterstone's Winter Park branch from June 15, 2022 to August 1, 2022.

*See* Ex. K, Mutual's Third Set of Requests for Production to Waterstone.  In response, Waterstone produced four spreadsheets on July 24, 2023.  It is worth mentioning that written discovery closed on July 31, 2023.  D.E. 68.

Upon receiving these Spreadsheets, which contained information that Mutual did not previously have in its possession, Mutual then cross referenced the credit inquiries identified on the Spreadsheets with its own system containing credit inquiries to identify duplicates of credit pulls that took place at Mutual prior to the departure of the Departed Employees.  D.E. 100-1, Carroll Aff. ¶ 11.  Mutual then identified those duplicates, which totaled 46.  *Id.* ¶¶ 12-13.  To be clear, Mutual never provided a total amount of those loans because that information would be within Defendant's position.  *Id.* ¶ 14.  That is, Mutual provided this number as evidence of Waterstone's wrongdoing in diverting loans from Mutual to Waterstone, which Mutual should be entitled to introduce before a jury.

Waterstone continues to point to the deposition transcripts of Mutual's 30(b)(6) corporate representative as evidence that Mutual did not know of the number of loans that Waterstone diverted from Mutual.  And that is correct.  It was only *after* all of the depositions in the case had nearly concluded that Mutual then requested the credit inquiries for a specified time period from Waterstone based on the information it received through discovery.  Upon receiving that information, Mutual was then able to cross reference within its own systems to identify the

number. To which, Mr. Carroll authenticated this in his affidavit. There is nothing inherently wrong with that, and Waterstone points to no case law to suggest otherwise.[1] Finally, Waterstone complains that Mutual never produced the credit inquiries referenced in Mr. Carroll's affidavit during discovery. That is also correct, and that is because Waterstone never requested those in discovery. Nevertheless, Mutual has since produced a spreadsheet containing the credit inquiries at issue to Waterstone.

## **CONCLUSION**

WHEREFORE, in light of the foregoing, Mutual of Omaha Mortgage, Inc. respectfully requests that this Court deny Defendant Waterstone Mortgage Corporation's Amended Motion to Strike Mark C. Carroll and Plaintiff's

---

[1] Although not argued in this Motion, to the extent Waterstone argues that Mutual surprised Waterstone by identifying the average time period that branches stay with Mutual, that information was publicly available, and could have easily by calculated by Waterstone at any point during discovery as well, as attested to in Mr. Carroll's affidavit. Carroll Aff. ¶¶ 16-17.

Undisclosed Credit Inquiries, and any further relief that this Court deems just and

proper.

Dated:    Washington, D.C.
          December 8, 2023

MITCHELL SANDLER LLC

By: */s/ Courtney E. Walter*

Ari Karen (admitted *pro hac vice*)
Christopher L. McCall (admitted *pro hac vice*)
Courtney E. Walter
1120 20th Street N.W., Suite 725
Washington, D.C.  20036
Email:  akaren@mitchellsandler.com
Email:  cmccall@mitchellsandler.com
Email:  cwalter@mitchellsandler.com
Telephone:  (202) 886-5292

GUNSTER, YOAKLEY & STEWART, P.A.

John A. Schifino
Florida Bar No. 0072321
401 East Jackson Street, Suite 1500
Tampa, Florida  33602
Primary email:  jschifino@gunster.com
Secondary email: eservice@gunster.com
Telephone:  (813) 739-6962


*Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*