# <u>EXHIBIT H</u>

1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          TAMPA DIVISION
                    CASE NO.: 8:22-cv-01660-TPB-JSS
 3
      MUTUAL OF OMAHA
 4    MORTGAGE, INC.,

 5          Plaintiff,

 6    vs.

 7    WATERSTONE MORTGAGE
      CORPORATION,
 8
            Defendant.
 9    _____/

10


11


12

      DEPOSITION OF:        KATHERINE THEOBALD, CORPORATE
13                          REPRESENTATIVE OF MUTUAL OF OMAHA,
                            INC.
14
      TAKEN:                Pursuant to Notice by
15                          Counsel for Defendant

16    DATE:                 May 26, 2023

17    TIME:                 9:02 a.m. to 2:23 p.m.

18    LOCATION:             Hill Ward Henderson
                            101 East Kennedy Boulevard
19                          Suite 3700
                            Tampa, Florida  33602
20
      REPORTED BY:          Melanie Keefe, FPR
21                          Notary Public
                            State of Florida at Large
22


23


24


25
```

———REGENCY REPORTING SERVICE, INC. (813)224-0224———

2

```
 1    APPEARANCES:      COURTNEY WALTER, ESQUIRE
                        CHRIS McCALL, ESQUIRE (Zoom)
 2                      Mitchell Sandler LLC
                        1120 20th Street Northwest
 3                      Suite 725
                        Washington, DC  20036
 4
                        MARK CARROLL, ESQUIRE
 5                      Mutual of Omaha Mortgage, Inc.
                        100 West 22nd Street
 6                      Suite 101
                        Lombard, Illinois  60148
 7
                             Attorneys for the Plaintiff
 8
                        MARIA L. KREITER, ESQUIRE
 9                      Godfrey & Kahn, S.C.
                        833 East Michigan Street
10                      Suite 1800
                        Milwaukee, Wisconsin  53202
11
                        CAROLINA Y. BLANCO, ESQUIRE (Zoom)
12                      Hill Ward Henderson
                        101 East Kennedy Boulevard
13                      Suite 3700
                        Tampa, Florida  33602
14
                        STEPHANIE CATHERINE ZIEBELL, ESQUIRE (Zoom)
15                      Waterstone Mortgage Corporation
                        N25W23255 Paul Road
16                      Pewaukee, Wisconsin  53072
17                           Attorneys for the Defendant
18
19
20
21
22
23
24
25
```

──REGENCY REPORTING SERVICE, INC. (813)224-0224──

3

1      INDEX                                PAGE NUMBER

2      Examination by Ms. Kreiter                 5

3      Read Letter                              144

4      Errata Sheet                             145

5      Reporter's Certificate                   146

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1        (Exhibit numbers continued from the previous deposition.)

2                E X H I B I T S

| Exhibit | Description | Page |
|---------|-------------|------|
| 18 | First Amended Complaint, Demand for Jury Trial | 20 |
| 19 | 5/2/23 Letter, Subject: Second Meet and Confer | 129 |

5

1    THEREUPON,

2     KATHERINE THEOBALD, CORPORATE REPRESENTATIVE OF MUTUAL OF

3                           OMAHA, INC.,

4        a witness herein, having been duly sworn, was examined

5    and testified upon her oath as follows:

6                    THE WITNESS:  Yes, I do.

7                           EXAMINATION

8    BY MS. KREITER:

9        Q.    If you could state and spell your name for the

10   record.

11       A.    Katherine, K-a-t-h-e-r-i-n-e, Theobald,

12   T-h-e-o-b-a-l-d.

13       Q.    Ms. Theobald, have you had your deposition taken

14   before?

15       A.    No.

16       Q.    Just some rules of the road for today.  First,

17   you can see we've got a court reporter here.  She's typing

18   up everything that you say, everything that I say, any

19   objections from counsel.  So a few things follow from that.

20   First is you need to give oral responses.  Nods of the head

21   are hard for the -- or impossible for the court reporter to

22   record, so make sure you give an oral response.  Understood?

23       A.    Understood.

24       Q.    In addition, sometimes it's just natural I will

25   be talking and you may think you understood what my question

23

1      A.    Correct.

2      Q.    Does Mutual have any evidence that Mr. Van Dame

3  shared with Mr. Hutto a scheme to lie about this loan being

4  rejected by Mutual?

5           MS. WALTER:  Object to the form.

6      A.    Not that I'm aware of.

7      Q.    Is there anything unlawful about Mr. Van Dame

8  referring a loan to Mutual that -- or sorry -- strike that.

9  Let me start again.

10          Is there anything unlawful about Mr. Van Dame

11  referring a loan to Waterstone that Mutual has rejected?

12          MS. WALTER:  Object to the form.

13     A.    Not that I'm aware of.  Again, this is in context

14  with all of the other activity that was being -- information

15  and activity that was being sent to Waterstone.

16     Q.    Sure.  And like I said, we're going to get to

17  other examples and see if those hold water.  But specific to

18  this example, is there anything unlawful about Mr. Van Dame

19  sending a borrower to Waterstone after which Mutual has

20  already declined to give -- to close the loan?

21          MS. WALTER:  Object to the form.

22     A.    Not that I'm aware of.

23     Q.    What investigation by Mutual was done to

24  determine whether, in fact, it had rejected this loan?

25     A.    So all of that discovery was handled by Mark

24

1    Carroll, our in-house counsel.

2        Q.    Was Mr. Carroll reviewing the e-mails themselves?

3            MS. WALTER:  Object to the extent it involves any

4        sort of attorney-client privilege.

5        A.    Again, Mark Carroll handled the investigation and

6    discovery, so I can't speak to -- to all of the actions that

7    he took.

8        Q.    Are you aware that Mark Carroll is the witness

9    that verifies all of Mutual's interrogatory responses in

10   this case?

11           MS. WALTER:  Object to the form.

12       A.    Can you repeat that question?

13       Q.    Sure.  Are you aware that Mark Carroll is the

14   witness that Mutual selected to serve as the verifying

15   witness for all of the interrogatories it has provided back

16   to Waterstone in this case?

17           MS. WALTER:  Same objection.

18       A.    Not specifically aware of that.

19       Q.    Do you have an understanding that by Mark Carroll

20   signing the verification to those interrogatories, he is the

21   representative of Mutual substantiating the substance of the

22   facts?

23           MS. WALTER:  Object to the form.

24       A.    Not that I'm aware of.  I'm not familiar with

25   that process.

25

1      Q.   So here at the deposition today, you have no

2    information that Mutual is prepared to present as to the

3    investigation of the rejection of the loan that is the

4    subject of the Van Dame allegations, and Mutual is taking

5    the position that counsel handled that, and therefore, it's

6    not to be disclosed?

7           MS. WALTER:  Object to the form.

8      A.   The discovery has a lot of information in it, and

9    I cannot speak to every item in the discovery.  But again,

10   that discovery was handled by -- by Mark, so I can't speak

11   to every piece of it.

12     Q.   That's a fair point.  So let's not talk about

13   this one specifically, but let's talk globally.  Is Mutual's

14   position that Mark Carroll or somebody in legal is the only

15   person that investigated whether these loans that were

16   transferred from Mutual to Waterstone while the employees

17   were still employed, Mark Carroll is the only person that

18   vetted whether, in fact, Mutual has rejected those loans?

19          MS. WALTER:  Object to the form.

20     A.   So Mark Carroll handled the discovery.  Myself

21   and other members of the human resources team at the time

22   that Daytona departed, you know, very much multiple

23   employees resigning at the same time, the nature of the

24   departure of the Daytona branch did lead to our human

25   resources team in that earlier stage doing some

26

1    investigation of their e-mails as well to understand the

2    scope and the context of what was happening, including

3    identifying e-mails that had been sent from employees that

4    included borrower data.

5        Q.    Sure.  So let me just -- I think that you're

6    trying to answer my question, but my question is a little

7    bit different.  It's focused exclusively on -- sorry --

8    exclusively on Mutual's efforts to verify that the loans

9    current employees of Mutual were transferring to Waterstone,

10   whether those loans had been rejected by Mutual or not.

11           Is there someone within Mutual who was

12   investigating whether, in fact, as Mr. Van Dame claimed and

13   maybe some of the other employees will claim, these loans

14   have been rejected by Mutual, so we had to refer them out?

15   Because the complaint is making serious allegations that

16   these loans were unlawfully diverted.  Waterstone's position

17   is, no, they were not.  Those loans had been rejected by

18   Mutual.  My understanding is that Mutual disputes it

19   rejected those loans, so I'm trying to understand who is the

20   person at Mutual that made the determination these loans

21   were never rejected?

22           MS. WALTER:  Object to the form.

23       A.    That portion or that part of the discovery would

24   have been handled by Mark Carroll.

25       Q.    Are you prepared today to testify about those

REGENCY REPORTING SERVICE, INC. (813)224-0224