IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>              Plaintiff,<br>v.<br>WATERSTONE MORTGAGE CORPORATION,<br><br>              Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**WATERSTONE MORTGAGE CORPORATION'S SUPPLEMENTAL
RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DAMAGES BRIEF**

**I.  INTRODUCTION**

At the December 13, 2023 case management conference, the Court asked for supplemental legal authority that addresses limiting damages to the duration of a restrictive covenant. Case law overwhelmingly supports Waterstone's position. Courts in Florida and beyond have held that employees are free to solicit without liability after the applicable restrictive covenant expires, and any damages allegedly incurred thereafter are impermissibly speculative. This reasoning applies here: because the former branch managers were free to solicit Mutual employees after 12 months, Mutual cannot seek lost profit damages based on the employees' departures for any period beyond 12 months. Accordingly, the Court should exclude Mutual's

alleged lost profit damages for any period beyond the 12-month duration of the employee non-solicitation agreements.

## II.    ARGUMENT

### A.    Case Law Supports Limiting Mutual's Alleged Lost Profit Damages To 12 Months.

This Court should exclude evidence of lost profit damages beyond 12 months. The court's opinion in *Office Depot, Inc. v. Arnold*, No. 16-CV-81650, 2017 WL 11742779 (S.D. Fla. Aug. 14, 2017) (applying Florida law) is instructive. There, Office Depot alleged that its former employee breached his customer non-solicitation agreement, which prohibited solicitation of Office Depot customers for 12 months post-employment. *Id.* at *1. Office Depot sought lost profit damages based on customers diverted in the 12 months following the employee's departure, as well as "future lost profits" for an additional four years based on its alleged customer retention rate. *Id.* at *5-6. Office Depot argued lost profit damages may include lost profits past the restrictive covenant period. *Id.* at *5. The former employee argued that his non-solicitation agreement was limited to 12 months and thus any damages for lost profits after that period would be inconsistent with the restrictive covenant. *Id.* The court agreed with the employee, concluding:

> In sum, Office Depot has failed to convince me that it can recover lost future profits for diverted customers beyond the one-year term of the restrictive covenant for the period it normally retains customers. That is because, when the non-solicitation agreement expires, Arnold is allowed to solicit those customers.

\* \* \*

> Because [Office Depot's] theory and calculation of damages are inconsistent with Arnold's non-solicitation agreement and are divorced from the facts of this case, [Plaintiff's expert's] opinion concerning future lost profits is excluded as speculative.

*Id.* at *6. Because Office Depot's expert did not base his conclusions on evidence, such as multi-year contracts signed by the diverted customers, and instead simply multiplied the lost profits during the term of the non-solicitation period by five based on Office Depot's alleged customer retention rate, the expert's opinion on lost profit damages beyond 12 months was therefore speculative and excluded. *Id.*

The Nebraska Supreme Court reached a similar conclusion in *Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 748 N.W.2d 626, 632-33 (Neb. 2008). There, Aon brought suit against a former broker for breaching a two-year customer non-solicitation agreement. The Nebraska Supreme Court upheld the district court's grant of summary judgment in favor of Aon as to the employee's liability for breach of the non-solicitation agreement. *Id.* at 639. Aon argued, however, that the district court erred by excluding evidence of lost profit damages incurred beyond two years. *Id.* at 639-40. Aon claimed that its customer losses caused by the employee's breach could extend at least several years beyond the duration of the non-solicitation agreement based on its 95% customer retention rate. *Id.* The Nebraska Supreme Court rejected Aon's argument, reasoning:

> Pearson would have been free to solicit business from Aon customers after the 2-year restricted period, and there is evidence in the record that customers can change brokers whenever they choose to do so, without prior notice. We conclude that the district court did not abuse its discretion in holding that evidence of lost profits beyond the 2-year period was speculative and, therefore, irrelevant and inadmissible.

*Id.* at 640. The Nebraska Supreme Court also upheld the district court's calculation of lost profits based on evidence related to commissions earned by the employee at his new employer, which the district court limited based on the month the non-solicitation agreement expired. *Id.* at 641-42. (holding that "[b]ecause the nonsolicitation agreement would have expired in September 2003," the district court properly "reduced the 2003 amount by 25 percent"). Likewise, in *The Community Hospital Group, Inc. v. More*, the Supreme Court of New Jersey held that for a restrictive covenant expiring July 17, 2004 the plaintiff-employer may only "press its claim for damages for the period prior to July 17, 2004." 869 A.2d 884, 900 (N.J. 2005).

Courts in Florida and other jurisdictions similarly acknowledge that damages for breach of a restrictive covenant should be limited based on the duration of the restrictive covenant. *See Coleman v. B.R. Chamberlain & Sons, Inc.*, 766 So. 2d 427, 430 (Fla. 5th DCA 2000) (acknowledging employer's damages would have occurred only during the period its former employee was in breach of his non-competition agreement); *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 900 (Fla. 4th DCA 2007) (concluding expert's valuation of lost profits was speculative, not only for failure to properly account for relevant factors, but also because the expert projected future damages for five years despite 12-month restrictive covenant). *See also Vinculum, Inc. v. Goli Techs., LLC*, No. 2048 EDA 2020, 2021 WL 5575829, at *7 (Pa. Super. Ct. Nov. 29, 2021) (upholding the trial court's decision to limit damages to the one-year

noncompetition period, adding the "Court is unable to find any Pennsylvania case law supporting [Plaintiff's] argument that damages should be awarded beyond the time period agreed to by the parties in the Consulting Agreement"); *Platinum Mgmt., Inc. v. Dahms*, 666 A.2d 1028, 1046-47 (N.J. Super. Ct. 1995) (rejecting plaintiff-employer's argument that it was entitled to recover two years' net profits for its former employee's breach of a covenant not to compete because the period of the applicable covenant was only one year).

Mutual's lost profit damages are based on the same speculative analyses courts rejected in the above cases. Just as those employers sought future lost profits extending beyond the duration of the restrictive covenants, Mutual seeks future lost profits for up to *ten years*, despite that its employee non-solicitation provision is one year. Mutual's lost profit damages assume that the former Mutual employees would have continued working for Mutual for years to come even though the former branch managers would have been free to solicit those employees after just one year. And here, Mutual has produced no evidence that its former at-will employees would have remained at Mutual for any period of time, let alone ten years, despite the former managers' ability to solicit. Therefore, there is no basis to award lost profit damages for any period beyond the 12-month duration of the branch managers' non-solicitation agreements. The Court should limit damages accordingly.

### B. Mutual Has No Evidence That The Employees Would Have Continued Working For Mutual For Any Period Of Time.

Even if this Court does not agree Mutual should be prohibited from seeking lost profit damages beyond 12-months based on the duration of the non-solicit, the Court should nevertheless exclude those damages as speculative, unsupported, and not "reasonably certain," as Florida law requires. *See, e.g.*, *Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F.Supp.2d 1239, 1247-49 (M.D. Fla. 2003) ("Florida law requires that assumptions used to support the conclusions be reasonably certain, not mere best case scenario predictions."); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1344-45 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) (rejecting lost profits as too speculative where plaintiff did not establish each of the "but for" assumptions required for it to generate future profits).

Summary judgment is "the critical put up or shut up moment" of the case. *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539-CV, 2023 WL 8679672, at *4 (S.D. Fla. Dec. 7, 2023) (quoting *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021)). Mutual has not and cannot put up any evidence that its former employees would have continued working for Mutual absent some alleged misconduct on the part of Waterstone.

When asked if Mutual had reason to assume the branch employees would have stayed with Mutual for 18 months, Mutual's corporate representative could only speculate: "[w]e now are the lender for Keller Williams. I would imagine that that may be more attractive…". (*See, e.g*, DE 104-02 at 174:10-23.) Mutual did not

ask any of the employees if Keller Williams would have motivated them to stay with Mutual. (*Id.*) Mutual has no evidence Keller Williams would have made a difference.

Mutual also admitted it has no evidence the branch employees would have stayed and continued working for a different manager at Mutual. (*Id.* at 95:16-96:1 (Q: "Does Mutual have evidence that the employees would've stayed and worked for Kiley King? […] A: "No, no evidence.") The employees themselves indicate they were not going to stay at Mutual and, in fact, a number had been looking for alternate employment for many months. (*See e.g.*, DE 104-08 (Smith Decl.) ¶ 13; DE 104-09 (Hutto Decl.) ¶ 7; DE 104-10 (Utsch Decl.) ¶ 2; DE 104-11 (Wolf Decl.) ¶ 3; DE 104-12 (Walker Decl.) ¶ 14; DE 104-13 (Lowe Decl.) ¶ 7.)

In its reply in support of its motion for summary judgment, Mutual claims that an affidavit provided by its in-house counsel "addresses the basis for which these branches would have continued to operate."[1] (DE 114 at 7.) But the data provided by Mutual's in-house counsel supports Waterstone's position. (*See* DE 100 at 25). Mutual claims that branches it retained for over 12 months have, on average, been affiliated with Mutual for approximately 51 months. (DE 100 at 25.) At the time the former Mutual employees resigned, the Tampa and Ormond Beach branches had already been with Mutual longer than the 51-month average. (DE 104-01 (Kreiter Decl.) ¶ 6.) Mutual's alleged retention rate, therefore, does not provide a basis to seek

---

[1] Waterstone has separately moved to strike Mutual's in-house counsel, as he was never disclosed as a potential witness and therefore cannot provide evidence at summary judgment or at trial. (DE 105.)

future lost profits, and Mutual's claim that the branches would have continued to exceed its average retention rate for another 18 more months or another 10 years has no evidentiary support and is instead pure speculation. Even if the data helped Mutual's position (it does not) Mutual's alleged employee retention rate cannot support its claim for future lost profits beyond the 12-month restrictive covenant. *Office Depot, Inc.*, 2017 WL 11742779, at *6 (rejecting evidence of alleged customer retention rates and limiting damages based on the time set forth in the restrictive covenant); *Aon Consulting, Inc.*, 748 N.W.2d 626, 639-40 (same).

Finally, rather than provide evidence on which to base its damages, Mutual argues the period through which its Tampa and Daytona branches would have continued operating into the future is a "jury question." (DE 114 at 7.) Even if the Court does not limit Mutual's lost profit damages, it cannot grant summary judgment for Mutual on an issue it concedes is disputed and should proceed to trial, and for which Mutual has not met its burden of proof.

### III. CONCLUSION

For all of the reasons stated, the Court should limit Mutual's lost profit damages to 12 months, at most.

Dated: January 16th, 2024.

/s/ *Maria L. Kreiter*
Maria L. Kreiter (admitted pro hac vice)
Emma J. Jewell (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com

8

>Scott A. McLaren (FBN: 414816)
>Carolina Y. Blanco (FBN: 0098878)
>HILL, WARD & HENDERSON, P.A.
>101 East Kennedy Blvd., Suite 3700
>Post Office Box 2231
>Tampa, Florida 33601
>(813) 221-3900 (Telephone)
>carolina.blanco@hwhlaw.com
>scott.mclaren@hwhlaw.com
>
>*Attorneys for Defendant Waterstone Mortgage Corporation*

30459210.4