

## LOAN ORIGINATOR EMPLOYMENT AGREEMENT

1. **Parties** and **Date of Agreement.** Synergy One Lending, Inc., **dba Mutual of Omaha Mortgage** a Delaware corporation (the "Company"), and___Dwayne Hutto_____ ("Loan Originator", "you", or "your") make this Loan Originator Employment Agreement ("Agreement") on _____12/06/2018_____, ("Effective Date"). Loan Originator and the Company may also be collectively known as "parties" and individually as "party."

2. **Background Facts.** These background facts are an integral part of this Agreement. The Company is a mortgage lender who employs loan originators to originate mortgage loans. The Company has built its business through competent, honest, and fair business dealings with the public. Loan Originator is an experienced and competent mortgage professional with a similar reputation for honest and fair business dealings. The Company wishes to hire Loan Originator to originate loans and Loan Originator wishes to become an employee of the Company. In consideration of their mutual promises and the other provisions of this Agreement, the parties agree as follows.

3. **At-Will Employment.** Your employment with the Company is at-will. Nothing contained in this Agreement will constitute or be construed as an agreement to employ you for any specific term. You expressly agree that either you or the Company may terminate your employment at will, with or without cause, and with or without notice, at any time. No employee or representative of the Company, other than its President, has the authority to enter into any agreement for employment for any specified period of time or to make any express or implied agreement contrary to the foregoing. Further, the President of the Company may not alter the at-will nature of the employment relationship or enter into any employment agreement for a specified term unless the President and you both sign a written agreement that clearly and expressly specifies the intent to do so.  You further agree that the Company retains the sole and exclusive right at any time, with or without cause and with or without advance notice, to change or eliminate all policies, practices, and terms and conditions of employment, including, without limitation, the right to transfer, discipline, demote, promote, or reassign employees, to increase or decrease compensation and to change or eliminate any job, job duties or responsibilities, reporting relationship and all benefit plans and programs.

4. **Employment Inquiries.** The Company will perform employment inquiries in connection with this agreement. These may include a criminal background check, a credit report, drug testing, and other due diligence inquiries. Although we may ask you to sign separate specific authorizations, in this Agreement you expressly authorize the Company to make these and any other inquiries it deems necessary to evaluate your suitability for employment and continued employment with the Company. At its discretion, the Company will ask you to explain certain findings resulting from these inquiries. You agree to provide a prompt response to these requests. Employment inquiries with acceptable results or adequate conditions to the Company's sole satisfaction are a material condition of this Agreement.

5. **Loan Originator Duties.** You agree to work diligently and apply your best efforts to originate mortgage loans, to solicit new customers, and otherwise promote the business of the Company. In your capacity as a loan originator, you warrant that you meet the requirements of an outside sales person for exemption from overtime and minimum wage state and federal laws and regulations if the Company has categorized you as such in the Company's' employment records. Your duties include:

    5.1.    Fully completing and submitting mortgage loan applications to the Company along with any additional information required by the Company to process, underwrite, fund, close, and sell a mortgage loan.

| I have read and understand each paragraph on this page. | *Dwayne Hutto* |
|---|---|

Page | 1

**EXHIBIT**
**3**

CONFIDENTIAL

MOM-0003728

5.2.  Knowing, understanding, and complying with the federal, state, and local laws, regulations, and ordinances which govern your mortgage lending transactions, including the Real Estate Settlement Procedures Act.

5.3.  You must provide applicants with each disclosure required by federal and state law within the time allowed by those laws and submit loan applications to the Company within twenty-four (24) hours of completing each application. You must document compliance with this requirement by a signed and dated acknowledgement of receipt from applicants.

6.  **Supervision of Loan Originator.** Through its officers and managers, the Company intends to supervise your performance. This supervision will require reporting, participation in training and other meetings, and providing the Company with any information or documentation it requires with regard to your mortgage loan activity.

7.  **Standards of Conduct.** The Company is committed to the highest level of ethical standards and professional responsibility.

7.1.  You agree to comply with all the Company policies regarding ethical standards of conduct as amended from time to time.

7.2.  You agree to truthfully represent the Company's products to applicants. This includes fully explaining all material loan features such as prepayment penalties, balloon payments, payment options, adjustable interest rates, recasting of loan payments, and negative amortization, as each may apply

8.  **Company Policies.** You agree to comply with all the Company policies and procedures related to the origination and processing of loans, payment of commissions, licensing, reporting loan activity, each policy contained in the Company's Employee Handbook, and each other policy governing your employment now in force or which the Company may adopt in the future or as amended from time-to-time.

9.  **Duty of Loyalty and Certain Prohibitions.**

9.1.  As a loan originator for the Company, you acknowledge that you have a general duty of loyalty to the Company and you agree to devote your entire productive time, ability, and attention to the business of the Company and will not render any loan origination services to any other person or entity. In addition, you agree not to work in any other "real estate related areas" as defined by the U.S. Department of Housing and Urban Development..

9.2.  If you have a license that allows you to independently broker mortgage loans or hire loan originators, you agree not to hire any loan originators or affiliate any loan originators with your license. In addition, you agree to act only as a loan originator and will not independently broker mortgage loans.

9.3.  You also acknowledge that the names Synergy One Lending, Inc., Synergy 1 Lending, Retirement Funding Solutions, and any derivations belong to the Company and you agree not to use these names except as expressly permitted in writing signed by the President of the Company.

10. **Licensing.** You represent and warrant to the Company that you possess each license or authority required in connection with the Company's licenses to originate mortgage loans in the jurisdictions in which you intend to conduct mortgage lending business. You may not originate mortgage loans in other jurisdictions without first obtaining the Company's written permission, which will only be granted

| I have read and understand each paragraph on this page. | *Dwayne Hutto* INITIALS |
|---|---|

Page | 2

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

**CONFIDENTIAL**                                                                                           MOM-0003729

in jurisdictions in which the Company is authorized to make or broker mortgage loans, in which it is the Company's policy to make or broker mortgage loans, and in which you have obtained the proper authority to make or broker mortgage loans.

11. **Limits of Authority.** You have authority to act on behalf of the Company only to the extent necessary to perform the common functions of a loan originator unless otherwise expressly authorized in writing by the Company. Regardless of any express written authorization given to you by the Company, you may never:

11.1.   Approve mortgage loans or fund mortgage loans on behalf of the Company;

11.2.   Bind the Company for purchase of goods or services, including appraisals, title policies, or other obligations. You agree that any unpaid amounts for goods and services, if ordered by you, are your sole responsibility to pay; this obligation will survive termination of your employment;

11.3.   Execute an assignment of or take any action which assigns a mortgage loan;

11.4.   Open trust accounts or other bank accounts in the name of the Company or one of its trade names;

11.5.   Sign any application, form, or agreement related to approval of the Company by any lender;

11.6.   Hire employees or contractors for any purpose;

11.7.   Engage any unlicensed person to perform an activity which requires a license;

11.8.   Seek reimbursement for unauthorized expenses;

11.9.   Collect advance fees from any applicant.

12. **Advertising.**

12.1.   You agree to honor and protect the intellectual property rights of the Company, including its trademarks, trade names, copyright, trade dress, brand, and identity ("brands"). The Company must approve every advertisement and its delivery method prior to use, including print, audio, video, and digital media. This includes using the Company's brands in any website, linking another website to the Company's website(s), or inserting links in any website which contains any the Company brand. You understand that regulatory agencies may require the Company to submit advertising materials for approval prior to use and that the Company has no control over the time required by these agencies to issue an approval.

12.2.   You must treat any form of social media as advertising for purposes of this Agreement. You agree to abide by the Company's Social Media Policy. Specifically, if you intend to use social media to promote yourself or the Company, you must do so through the social media system established by the Company.

12.3.   You acknowledge that the Company has a Zero Tolerance Policy for violations of the laws, regulations, and ordinances limiting solicitation by phone and fax. You will strictly comply with each policy and procedure established by the Company regarding solicitation by phone and fax, and you will be responsible for any fees or penalties levied against the Company for noncompliance with this policy.

SYNERGY ONE LENDING
Loan Originator Employment Agreement
Rev. 11-30-2016

*I have read and understand each paragraph on this page.*    Dwayne Hutto

Page | 3

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL

**13. Nonsolicitation.** You agree not to solicit borrowers for a refinance mortgage loan until the later of six (6) months after the Company makes, brokers, or sells a mortgage loan.

**14. Compensation.** The Company agrees to pay you compensation according to the *Loan Originator Compensation Addendum* to this Agreement, as amended from time-to-time.

14.1.   The Company has hired you to originate loans in compliance with the applicable state, federal, and local laws, regulations, and ordinances, the Company policies and procedures, and the Company's underwriting guidelines ("Eligible Loan"). Loans which violate the early payoff and early payment default requirements of the Company's loan investors are not Eligible Loans. Mortgage loans that that are not Eligible Loans are outside the scope of your employment and you will earn no commissions for such loans.

14.2.   If a loan is not an Eligible Loan because it does not comply with the Company's policies against fraud or misrepresentation, the Company will hold any unearned commissions attributable to that loan to be applied against the actual or contingent liability created by that loan.

**15. Non-Solicitation and Confidential Information.**

15.1.   You agree not to recruit, hire, consult, or assist any other person or entity in identifying, contacting, recruiting, or hiring Company employees away from the Company or its affiliates to a competitor while employed by the Company and for a period of one year after your employment with the Company terminates.

15.2.   Because of your employment by the Company, you will have access to trade secrets and other confidential information about the Company, its products, its pricing and pricing methodology, its customers, its employees, its strategic business partners, and its methods of doing business. This information, including the confidential records and data pertaining to the Company's customers and the relationship between these customers and the Company's loan originators and Account Representatives is considered secret and is disclosed to you in confidence. In consideration of your access this information, you agree not to use this information except as required in the course of your employment with the Company without the advance written authorization from the President of the Company.

15.3.   You may have information that your previous employers consider confidential and by policy or contract, or both, prohibit you from disclosing or using such information. You agree to abide by the terms of such policies and contracts and agree that you will not disclose or use information your previous employers consider confidential while the Company employs you.

15.4.   You agree that this Section 15 will survive the termination of your employment with the Company.

**16. Borrower Privacy and Ownership of Consumer Information.**

16.1.   Because of your employment with the Company, you will have access to the nonpublic personal information of consumers ("Personal Information"). "Personal Information" means personally identifiable financial information, or any list, description, or other grouping of consumers (and publicly available information pertaining to them) derived using any personally identifiable information not publicly available. You agree to comply with the Company's policies regarding Personal Information and any applicable consumer privacy laws or rules (the "Privacy Requirements"). You will limit the use of Personal Information to the express purposes set forth in this Agreement, will not disclose Personal Information to any unauthorized person, and will strictly abide by the Privacy Requirements.

| I have read and understand each paragraph on this page. | *Dwayne Hutto* |
|---|---|

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL

MOM-0003731

16.2.   Records of customer accounts, business records relating to the Company, books, papers, and other documents relating to the Company's prospects and customers, prepared by you or coming into your possession or control during your employment are the exclusive property of the Company and you will surrender these items to the Company upon termination of your employment.

16.3.   You agree that the Company's rights and remedies in the event of any breach of this Section 16 will include, without limitation, the right to seek any and all provisional remedies necessary to enforce compliance with this Agreement, including a temporary restraining order or preliminary injunction. You further agree that if the Company that institutes an action to apply for such provisional remedies it will not constitute a waiver or breach of the parties' agreement to submit disputes to binding arbitration pursuant to Section 18 below.

16.4.   You agree that the provisions of this Section 16 will survive the termination of your employment with the Company.

**17.  Termination.** As set forth above, either party may terminate the employment relationship at any time, with or without cause and with or without notice.

17.1.   In the event your employment is terminated, the Company will pay you your regular commission (less any amounts the Company may permissibly deduct) for any Eligible Loan you submitted to the Company before the date on which your employment terminates (the "Termination Date") that funds within ninety (90) days of the Termination Date. The Company considers a loan "submitted" when it has assigned a loan number.

17.2.   All loan applications submitted to the Company will remain the property of the Company and the Company will continue to process and close those loans for its own benefit. Upon notice of termination, you agree to immediately return all the Company property, including computer software, laptop computers, phones, and accessories.

**18.  Resolution of Disputes.**

18.1.   Subject to Section 16.3, you and the Company agree that any and all disputes, controversies or claims concerning your application for employment, your employment by the Company or its termination, and including, without limitation, claims by you against employees of the Company, whether arising under theories of liability or damages based on contract, tort or statute, shall be determined exclusively by final and binding arbitration in accordance with the Arbitration Rules and Procedures, or successor rules then in effect, of Judicial Arbitration & Mediation Services, Inc. ("JAMS"). The arbitration will be held in San Diego County, California and will be conducted and administered by JAMS or, in the event JAMS does not then conduct arbitration proceedings, a similarly reputable arbitration administrator. You and the Company will select a mutually acceptable, neutral arbitrator from among the JAMS panel of arbitrators.

Judgment upon the award of the arbitrator may be rendered in any court of competent jurisdiction. Claims subject to arbitration under this Agreement include, without limitation, claims that otherwise could be tried in court to a jury in the absence of this Agreement, subject to Paragraph 2 below. Such claims include, without limitation (i) statutory claims for employment discrimination (to the full extent permitted by law); (ii) harassment of any type and any other statutory or constitutional claims for employment discrimination; (iii) claims for wrongful termination, including without limitation termination of employment in breach of contract and/or in violation of public policy; and (iii) claims for personal injury including, without limitation, defamation, fraud, and infliction of emotional distress. It is the intention of this Agreement that any and all claims of either Employee or the Company related to Employee's employment with the Company shall be submitted to final and binding arbitration to the fullest

SYNERGY ONE LENDING
Loan Originator Employment Agreement
Rev. 11-30-2016

I have read and understand each paragraph on this page.     *Dwayne Hutto*

Page | 5

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

**CONFIDENTIAL**                                                                      MOM-0003732

extent permitted by law pursuant to this Agreement. Each party will be responsible for paying their own attorneys' fees and costs (including expert witness fees and costs, if any). However, in the event a party prevails at arbitration on a statutory claim that entitles the prevailing party to reasonable attorneys' fees as part of the costs, then the arbitrator may award those fees to the prevailing party in accordance with that statute.

18.2.  This Agreement to arbitrate shall not apply to claims for unemployment benefits or to any other claims which, under the law, are not subject to mandatory arbitration. Employee may exercise his/her rights under the National Labor Relations Act and file charges with the National Labor Relations Board. Employee further understands that he/she still may file administrative charges with the Equal Employment Opportunity Commission or similar federal, state or local agencies, but that upon receipt of a right-to-sue letter or similar administrative determination, Employee shall arbitrate any claims that he/she may have against the Company to the full extent permitted by law.

18.3.  The arbitrator will apply the substantive law (and the law of remedies, if applicable) of the State of California, or federal law, as applicable, and the arbitrator is without jurisdiction to apply any different substantive law. The arbitrator's authority and jurisdiction shall be limited to determining the dispute in arbitration in conformity with the law, to the same extent as if such dispute were determined as to liability and any remedy by a court without a jury. The arbitrator shall render an award which shall include a written statement of opinion setting forth the arbitrator's findings of fact and conclusions of law.

18.4.  Any controversy over whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this Agreement shall be determined by the arbitrator.

**19. General Provisions.**

19.1.  <u>Governing Law, Forum and Attorneys Fees</u>. The laws of the State of California will govern the formation, construction and performance of this Agreement without regard to its conflict of laws principles. You and the Company agree to submit or bring any arbitration or any claim for injunctive relief arising out of or relating to this Agreement or the transactions and activities contemplated by this Agreement only in the San Diego County, California and to submit to the jurisdiction of such arbitrators and courts.

19.2.  <u>Severability</u>. Whenever possible, the parties will interpret each provision of this Agreement so as to make it valid and effective under applicable law. If any provision of this Agreement is found to be prohibited or invalid, that provision will be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of the provision or the remaining provisions of this Agreement. Even though rendered ineffective, such provisions may still be used to determine the intent of the parties.

19.3.  <u>Waiver and Modification</u>. Each party to this Agreement from time-to-time may waive any rights under this Agreement without affecting a waiver with respect to any subsequent occurrences or transactions under this Agreement. The Company reserves the right from time-to-time to modify any provision of this Agreement, including any Exhibit, attachment, or incorporated document in whole or in part. However, no such modification will serve to reduce the amount of compensation due to you with respect to any Eligible loan closed prior to the date of any such modification.

19.4.  <u>Assignment</u>. The Company may assign this Agreement without restriction to any entity under common control with the Company or any successor or surviving entity in the event of an acquisition or merger.

SYNERGY ONE LENDING
Loan Originator Employment Agreement
Rev. 11-30-2016

I have read and understand each paragraph on this page.    *INITIALS* Dwayne Hutto

Page | 6

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL                                                          MOM-0003733

19.5.   <u>Construction of Agreement</u>. The parties will construe this Agreement as though drafted by both parties and will not construe this Agreement against or in favor of any party.

19.6.   <u>Captions and Headings and Emphasis</u>. Captions, paragraph headings, and emphasis used in this Agreement are for convenience only, and will not be used to construe this Agreement.

19.7.   <u>Entire Agreement</u>. This Agreement, the exhibits and incorporated documents, and the Company's referenced policies constitute the entire understanding and agreement of the parties relating to your employment. Any other agreements, express or implied, entered into prior to this Agreement are null and void. Except as otherwise provided in this Agreement, the parties have made no other agreements or understandings, written or oral, relating to your employment. No further arrangements between these parties will be considered valid unless they are in writing and executed by the you and the President of the Company.

19.8.   <u>Counterparts and Signatures</u>. The parties may execute this Agreement in counterparts, each of which is an original, but all of which taken together will constitute one and the same instrument. The parties will consider this Agreement and related documents signed when a party delivers its signature by electronic transmission. The parties will treat such signatures as an original in all respects.

19.9.   <u>Word Usage</u>. Unless the context clearly requires otherwise; (a) the plural and singular numbers include the other; (b) the masculine, feminine, and neuter genders include the others; (c) "shall," "will," "acknowledges, or "agrees" are mandatory, and "may" is permissive; (d) "or" is not exclusive; and (e) "includes" and "including" are not limiting.

19.10.  <u>Notices</u>: The parties will give any notice, approval, or other communication required or permitted under this Agreement in the English language The parties will deem notices received (a) on receipt if sent by fax or email with a printed confirmation before 5:00 p.m. on a business day (recipient's time), otherwise, the next business day; (b) on delivery if delivered by a nationally recognized overnight courier service prepaid or charged to the sender's account and delivery is confirmed by the delivery service; and (c) on receipt if sent by certified mail, return receipt requested, and delivery is confirmed by a return receipt. The Company may give you notice at your assigned branch address, the address, fax number, or email address following your signature to this Agreement, or a Company assigned email. You must give notice to the Company at: SYNERGY ONE LENDING, Attn: Human Resources, 3131 CAMINO DEL RIO N., SAN DIEGO, CA 92108. Either party may designate new contact information in writing and deliver it to the other party as required by this paragraph.

**[SIGNATURES ON THE FOLLOWING PAGE]**

SYNERGY ONE LENDING
Loan Originator Employment Agreement
Rev. 11-30-2016

*I have read and understand each paragraph on this page.* *Dwayne Hutto*

Page | 7

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL                                                MOM-0003734

IN WITNESS of their agreement, the parties make their signatures below:

**LOAN ORIGINATOR:**

Date: _____12/06/2018_____

*Dwayne Hutto*
_____
Signature

Dwayne Hutto
_____
Name

633 Merryvale Lane
_____
Address

Port Orange, FL. 32128
_____
City, State, Zip

86-334-6464
_____
Phone

_____
Fax

86-742-0555
_____
Email

**SYNERGY ONE LENDING, INC.:** [FOR OFFICE USE ONLY]

Date _____12/12/2018_____

Jenny Waugh
_____
Executive Name

_____
Signature

SYNERGY ONE LENDING
Loan Originator Employment
Agreement Rev. 11-30-2016

I have read and understand each paragraph on this page.  *Dwayne Hutto*

Page | 8

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL                                    MOM-0003735



**ARBITRATION AGREEMENT**

Dwayne Hutto

1.  Synergy One Lending, Inc and affiliated companies. (the "Company") and_____("Employee" ) hereby agree that any and all disput es, controversies or claims concerning Empl oyee' s application for em ployment , his/her employment by the Company or its t erminat ion , and including, without limitation, claims by Employee against employees of the Company, whether arising under theories of liability or damages  based on contract, tort or statute, shall be determined exclusively by final and binding arbitration in accordance with the Arbitration  Rules and Procedures, or successor  rules then in effect, of Judicial  Arbitration & Mediation Services, Inc. ("JAMS"). The arbitration will be held in San Diego County, California and will be conducted and administered by JAMS or, in the  event JAMS does not  then conduct arbitration proceedings, a similarly reputable arbitration administ rat or. Employee  and the  Company  will select a mutually acceptable, neutral arbitrator from among the **JAMS** panel of arbit rat or.

    Judgment upon the award of the arbitrator may be rendered in any court of competent jurisdiction. Claims subject to arbitration under this Agreement include, without limitation, claims that otherwise could be tried in court to a jury in the absence of this Agreement, subject to Paragraph 2 below. Such claims include, without limitation (i) statutory claims for employment discrimination (to the full extent permitted by law); (ii) harassment of any type and any other statutory or constitutional claims for employment discrimination; (iii) claims for wrongful termination , including without limitation termination of employment in breach of contract and/or in violation of public policy; and (iii) claims for personal injury including, without limitation, defamation, fraud, and infliction of emotional dist ress . It is the intention of this Agreement that any and all claims of either Employee or the Company related to Employee's employment with the Company shall be submitted to final and binding arbitration to the fullest extent permitted by law pursuant to this Agreement . Each party will be responsible for paying their own att orneys' fees and costs (including expert witness fees and cost s, if any). However , in the event a party prevails at arbitration on a statutory claim that entitles the prevailing party to reasonable attorneys' fees as part of the costs, then the arbitrator may award those fees to the prevailing party in accordance with thatstatute.

2.  This Agreement to arbitrate shall not apply to claims for unemployment benefits or to any other claims which, under the law, are not subject to mandatory arbitration. Employee may exercise his/her rights under the National Labor Relations Act and file charges with the National Labor Relations Board . Employee further understands that he/she still may file administrative charges with the Equal Employment Opportunity Commission or similar federal, state or local agencies, but that upon receipt of a right-to-sue letter or similar administrative determination, Employee shall arbitrate any claims that he/she may have against the Company to the full extent permitted by law.

3.  The arbitrator will apply the substantive law (and the law of remedies, if applicable) of the State of California, or federal law, as applicable, and the arbitrator is without jurisdiction to apply any different substantive law. The arbitrator's authority and jurisdiction shall be limited to determining the dispute in arbitration in conformity with the law, to the same extent as if such dispute were determined as to  liability and any remedy by a court without a jury. The arbitra tor

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL                                                                          MOM-0003736

shall render an award which shall include a written statement of opinion setting forth the arbitrator's findings of fact and conclusions of law.

4. The company will pay all administration fees associated with the arbitration and the cost of the arbit rat or. It is the intention of the parties that Employee shall not bear any costs that he or she would not be required to bear in a court proceeding.

5. Any controversy over whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this Agreement shall be determined by the arbitrator.

6. This Agreement will be enforced under the substantive law of California. The invalidity or enforceability of any provision or portion of this Agreement will not affect the validity or enforceability of the other provisions or portions of this Agreement.

7. This Agreement does not form a contract of employment between the Company and Employee and in no way alters the "at-will" status of Employee's employment. Employee understands that his/her employment, compensation and terms and conditions of employment can be altered or terminated with or without cause, and with or without notice, at any time, at the option of either the Company or Employee. No representative of the Company, other than a Director of the Company, has any authority to enter into any agreement for employment for any specific duration or to make any agreement contrary to the foregoing. Any such agreement must be in writing to be effective.

8. By signing this Agreement, Employee acknowledges his/her right to seek legal advice regarding this Agreement.

9. **For applicants for employment only:** Employee (Applicant) may withdraw his/her consent to this Agreement within three days from the date on which he/she signs below by notifying the President of the Company in writing that Employee (Applicant) withdraws his/her application for employment with the Company.

10. By so notifying the Company, Employee (Applicant) will not be bound to this Agreement and will no longer be eligible for employment at the Company. Employee (Applicant) recognizes that if he/she signs the Agreement and does not withdraw his/her consent within three days of signing, then Employee (Applicant) will be required to arbitrate, as explained above, any and all claims which Employee (Applicant) may have against the Company, whether or not Employee (Applicant) becomes employed by the Company.

[SIGANATURES ON FOLLOWING PAGE]

*Dwayne Hutto*

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL                                                                           MOM-0003737

**Employee**

*Dwayne Hutto*

Date: 12/06/2018

Employee's signature

**Synergy One Lending, Inc.**

Date:

By:

Title: **Executive Vice President**

Arbitration Agreement
Rev. 5-10-2016

Page | 3

Doc ID: 1daa6a1ec1fcd82c921dddd44b82e7eb354614e7

CONFIDENTIAL

MOM-0003738