

THE EVIDENCE. THE BACKSTORY.
THE INTELLIGENCE. **WE GET IT.**

The Frick Building
437 Grant Street, Suite 1250
Pittsburgh, PA 15219
412.325.4033
www.bit-x-bit.com

Maria Kreiter
Godfrey Kahn
833 East Michigan Street
Milwaukee, WI 53202
mkreiter@gklaw.com

June 5, 2023

Re: Mutual of Omaha Mortgage, Inc. v Waterstone Mortgage Corporation
CV: 8:22-cv-01660-TPB-JSS

Dear Ms. Kreiter,

The following summarizes my analysis and involvement with the above-identified matter. It is also based on my professional background, skills, and experience. A copy of my curriculum vitae is attached as Ex. A. My opinions and conclusions are provided to a reasonable degree of professional certainty.

Table of Contents:
A. Background and Engagement ................................................................................................ 1
B. Sources Considered ................................................................................................................ 2
C. Summary of Opinions ............................................................................................................ 2
D. Waterstone's Efforts .............................................................................................................. 2
E. Supplemental Search Efforts ................................................................................................. 3

**A. Background and Engagement**

1. bit-x-bit was engaged to assist in the forensic identification of certain files allegedly belonging to Mutual of Omaha Mortgage, Inc., ("Mutual") within the computer systems of Waterstone Mortgage Corporation ("Waterstone") and to opine on the reasonableness of Waterstone's efforts. This report and my opinions and conclusions contained herein are based on my understanding of the issues and facts and the information available to me.



B. **Sources Considered**

2. I relied upon the sources identified in Ex. B. in preparing this report.

C. **Summary of Opinions**

3. As discussed throughout this report, my opinions and conclusions are as follows:

    a. Only a small number of documents that contain Mutual's alleged trade secrets were ever put on Waterstone's OneDrive.

    b. Waterstone quarantined potential Mutual of Omaha files immediately upon learning such information may have been present within its computer systems, even before a cease-and-desist letter was received.

    c. Waterstone undertook additional efforts with respect to Mutual's alleged trade secrets, including having the former Mutual employees delete any Mutual documents in their personal possession.

    d. Waterstone's efforts to protect against possession or use of Mutual's alleged trade secrets were reasonable in light of the facts known.

D. **Waterstone's Efforts**

4. As an initial step in my engagement a conference call was conducted on September 28, 2022 with Scott Howard, Waterstone's IT Security Manager, to discuss the steps Waterstone undertook to address the concerns that Mutual's confidential information may reside in Waterstone's computer systems. The following summarizes those events and efforts.

5. Waterstone's IT security system sent an alert the night of April 27, 2022, regarding a possible malware detection within Waterstone's Microsoft OneDrive environment involving Chris Wolf's account. The following morning, April 28, 2022, Mr. Howard investigated the malware alerts via incident tickets INC0363316 and INC0363317 (Ex. C1 and C2).

6. Although the initial alert by Microsoft was due to potential malware (which was remediated), Mr. Howard observed that Mr. Wolf's OneDrive folder contained a large number of files, which was unusual as Mr. Wolf was a new hire. During his investigation of the security alert, Mr. Howard observed that some of the files appeared to have originated from Mr. Wolf's prior employer, Mutual of Omaha.

7. Recognizing the potential issue, Mr. Howard immediately removed access to the files that the new hires uploaded to their OneDrive accounts which contained any reference to Mutual of Omaha or any document that appeared to contain borrower documents, personal identifying information, loans in progress, etc. This resulted in data from five (5) new hires' OneDrive accounts being quarantined ("the Quarantined Data").

8. While this effort was underway, Waterstone received multiple cease-and-desist letters from Mutual of Omaha on April 29, 2022, an example of which is attached (Ex. D).

9. As part of Waterstone's remediation efforts, Mr. Howard also conducted searches of Waterstone's email environment for any emails sent from the former Mutual employees into Waterstone via their Mutual of Omaha email accounts or known personal email accounts. Mr. Howard quarantined those emails in addition to the aforementioned OneDrive files.

10. Waterstone also interviewed the employees regarding documents of Mutual of Omaha in their possession and further quarantined any such data.

11. As an additional measure, Waterstone then required those employees who were the target of Mutual of Omaha's cease-and-desist demands to sign certifications that included the following affirmations: (i) the employee has cooperated with Waterstone's investigation into Mutual of Omaha's allegations regarding breach of the confidentiality duties owed to Mutual of Omaha, including Mutual of Omaha's allegations regarding customer information and the need for adherence to state and federal privacy laws; (ii) the employee has searched for Mutual of Omaha's information in his or her possession, including the employee's electronic devices and e-mail accounts; (iii) the employee does not currently possess any information of customers of Mutual of Omaha or any information belonging to Mutual of Omaha; and (iv) the employee does not have the ability to recreate, or regain access to, any information of Mutual of Omaha or its customers that was previously accessible to the employee because of his or her prior employment with Mutual of Omaha. An example of the certifications is attached as Ex. E.

**E. Supplemental Search Efforts**

12. Additional efforts have been taken regarding Waterstone's potential possession of Mutual of Omaha's alleged trade secrets, including those efforts described below.

13. I reviewed the list (Bates Numbers) and associated metadata, such as the email sender and recipients, of the one hundred eighty-six (186) alleged trade secrets (the "Alleged Trade Secrets") identified in Mutual of Omaha's interrogatory response[1] to determine the where the Alleged Trade Secrets were sent. The vast majority of the Alleged Trade Secrets were sent to nine (9) personal or third-party accounts and not to any Waterstone email account. Those accounts[2] were:

   a. Dwayne Hutto (dwayne.hutto@yahoo.com)
   b. Lorri Hutchcraft (lorrihutchcraft@gmail.com)
   c. Name Unknown (woofstar1@hotmail.com)
   d. Fred Stalls (fredstalls@fresliefinancial.com)
   e. Name Unknown (aaliyah200887@gmail.com)
   f. Alex Trejo (trejo_alexander@hotmail.com)
   g. Andrea Kugelman (andrea.kugelman@gmail.com)
   h. Stacy Flanigan (stacy.flanigan@angeloakms.com)
   i. Steve Emminger (semminger@clearedgelending.com)

14. Only three Alleged Trade Secrets emails were sent to Waterstone. Those emails were sent to the email accounts of Mike Smalley (msmalley@waterstonemortgage.com) and Dustin Owen (dowen@waterstonemortgage.com). Those emails were MOM-0000026, MOM-0000027 and MOM-0000033.

15. Using the metadata supplied by Mutual as part of its production to Waterstone, e.g., the file names and MD5 hash values specifically, I searched the Quarantined Data for any matches to the Mutual of Omaha Alleged Trade Secrets identified via Mutual's production. I found ten (10) matches[3]. Exhibit F is a list of the Mutual of Omaha alleged trade secrets including the filename, MD5 hash and DOCID, as supplied by Mutual with the addition that, when Mutual

---

[1] *See* Plaintiff Mutual of Omaha Mortgage, Inc.'s Second Amended Responses and Objections to Defendant Waterstone Mortgage Corporation's First Set of Interrogatories at Resp. to Interrogatory 8 (which states "Identify with particularity all trade secrets that Mutual of Omaha relies upon to support its Defend Trade Secrets Act and Florida Trade Secrets Act claims, and any other claim pursued in this case.").

[2] The names identified in many instances are derived based on the email account name. I have no independent knowledge of the ownership of any email account identified.

[3] Two sets of the Mutual of Omaha Alleged Trade Secret documents, MOM-0000029 and MOM-0000032, are identical, as are MOM-0000080 and MOM-0000198, thus they were not counted twice.