UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUTUAL OF OMAHA
MORTGAGE, INC.,

    Plaintiff,

v.                                                     Case No. 8:22-cv-1660-TPB-UAM

WATERSTONE MORTGAGE
CORPORATION,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYNG IN PART "WATERSTONE MORTGAGE CORPORATION'S MOTION TO EXCLUDE OR LIMIT PLAINTIFF'S EXPERT TESTIMONY ON DAMAGES"

This matter is before the Court on Defendant "Waterstone Mortgage Corporation's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages," filed on February 6, 2024. (Doc. 132). Plaintiff Mutual of Omaha Mortgage, Inc. responded in opposition on February 13, 2024. (Doc. 133). Upon review of the motion, response, court file, and record, the Court finds as follows:

### Background

The parties in this case are competitors in the residential mortgage business. The dispute before this Court stems from an allegedly unlawful scheme by Defendant Waterstone Mortgage Corporation to steal three of Plaintiff Mutual of Omaha's office branches. In the amended complaint, Plaintiff alleges that Defendant unlawfully solicited and hired over 60 of Plaintiff's employees from its

Tampa and Daytona branches to gain access to Plaintiff's confidential and trade secret information. Plaintiff claims that the mass exodus of employees and theft of protected information caused Plaintiff to shut down those branches.

Plaintiff asserts claims for the misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count I) and Florida Trade Secrets Act (Count II), tortious interference with contract (Count III), and aiding and abetting breach of fiduciary duty (Count IV). Initially, it must be noted that the contracts at issue here did not preclude employees from leaving their employment with Mutual of Omaha and going to work for a competitor such as Waterstone. The contracts did, however, preclude former Mutual of Omaha employees from soliciting current Mutual of Omaha employees to leave their employment, and the contracts precluded former Mutual of Omaha employees from using confidential information in any new employment relationships. Ultimately, the focus of this case is not employees leaving Mutual of Omaha and going to work for Waterstone. Instead, the focus is former Mutual of Omaha employees actively soliciting current employees to leave Mutual of Omaha which, thereby, according to Mutual of Omaha, caused it to shut down three branches.

As this case has been litigated, the parties have developed widely divergent views on the amount of damages that may be legally recoverable. On one hand, Plaintiff has argued for a damages model that would award damages for lost profits going several years into the future since, according to this argument, Defendant essentially destroyed Plaintiff's business by stealing all of its employees which, in

turn, resulted in Plaintiff having to shut down three branch offices. Based on this theory, Plaintiff has suggested a damages model that includes numbers as high as $28 million dollars. On the other hand, Defendant has argued, for a variety of reasons, that the amount of damages that it is legally entitled to recover is a much smaller number. Specifically, Defendant maintains that the amount of lost profits damages should not exceed the one-year duration of the restrictive covenant at issue here. In connection with this issue, Plaintiff recently provided a stipulation that it would not seek damages for lost profits beyond thirty months of the date its former employees left their employment with Plaintiff. (Doc. 144).

## Legal Standard

### *Expert Testimony*

An expert witness may testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "The party offering the expert testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942 (11th Cir. 2015) (citing *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc)).

Functioning as a gatekeeper, the district court plays an important role by ensuring that all expert testimony is reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Although *Daubert* references specific factors for the district court to consider when evaluating relevancy and reliability, the inquiry is a flexible one, focusing on the principles and methodology employed by the expert, not on the conclusions reached. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014); *see also Hanna v. Ward Mfg., Inc.*, 723 F. App'x 647, 649-50 (11th Cir. 2018) (outlining the criteria for the admissibility of expert witness testimony). Essentially, the Court is simply asked to determine if the evidence "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597.

In that vein, the Court's gatekeeper role under *Daubert* and Rule 702 requires the Court to ensure that a jury is not presented with expert testimony that applies a legally incorrect measure of damages. *See, e.g., Children's Broad. Corp. v. The Walt Disney Co.*, 245 F.3d 1008, 1017-18 (8th Cir. 2011) (affirming district court's conclusion that a new trial was required because the court should have excluded expert damages testimony under *Daubert* to avoid "exposing the jury to an exaggerated sum of damages"); *Skypoint Advisors, LLC v. 3 Amigos Productions LLC*, 585 F. Supp. 3d 1326, 1332 (M.D. Fla. 2022) (excluding expert testimony as unreliable because it applied the wrong damage measure); *Fidelitad, Inc. v. Insitu, Inc.,* No. 13-CV-3128-TOR, 2016 WL 7508843, at *5 (E.D. Wash. July 8, 2016) ("Consequently, Ms. Barrick's expert testimony is not relevant, because it relies

upon the wrong measures to determine damages as to Fidelitad's unjust enrichment claim, and thus, cannot be properly applied to the facts in issue.").

In the factual context of contractual noncompetition litigation disputes such as this, case law analyzing the measure of damages a plaintiff may legally recover is not well developed.  Similarly, there are very few reported opinions analyzing the measure of damages recoverable for tortious interference in this sort of factual context.[1]  Aside from the general rules relating to the purpose of damage awards and the prohibition on speculative awards, there are few bright lines applicable across the board, and decisions allowing or precluding particular approaches to damages tend to be very case-specific and fact-specific.

## Analysis

Plaintiff supports its claim for lost profits primarily with the testimony of two witnesses – corporate representative Jeff Gennarelli and rebuttal expert Candice Rosevear.  Defendant raises several challenges to the damages models, which the Court addresses in turn.

### *Measuring Damages Generally*

Whether a proposed measure of damages is proper in a particular case is a question of law for the court.  *See, e.g., Asset Mgmt. Holdings, LLC v. Assets Recovery Ctr. Investments, LLC*, 238 So. 3d 908, 911 (Fla. 2d DCA 2018) ("Whether

---

[1] The Court has examined this issue in the context of a motion in limine, a motion for summary judgment, and now, a *Daubert* motion.  Previously, the Court requested additional briefing on the damages issue and directed the parties to research the issue in depth, including cases outside of Florida and the Eleventh Circuit.  Despite their best efforts, very little case law bearing directly on the damages issues presented here was discovered by either party.

the trial court applied the correct measure of damages on a breach-of-contract claim is a question of law that this court reviews de novo."); *RKR Motors, Inc. v. Associated Unif. Rental & Linen Supply, Inc.*, 995 So. 2d 588, 591 (Fla. 3d DCA 2008) ("The trial court's determination as to the proper methodology to be used in Florida to calculate lost profits due to a breach of contract is strictly a legal issue. Thus, our standard of review is de novo."). The Court's gatekeeper role under *Daubert* and Rule 702 requires it to ensure that a jury is not presented with expert testimony that applies a legally incorrect measure of damages. When asking a jury to award damages, a plaintiff is not permitted to argue for whatever amount of money it wants. Rather, the amount of money a plaintiff requests from a jury must be rooted in the law – the request must have a legal basis.

### *Speculative Nature of Lost Profits*

Defendant seeks to exclude the lost profits damages testimony of Gennarelli and Rosevear because both purported witnesses rely on speculative testimony that will confuse a jury. Gennarelli projects lost profits damages for eighteen months in the amount of $4,440,002, and Rosevear projects lost profits damages for up to ten years in the amount of $28,000,000. Defendant argues that Plaintiff has no evidence to factually support these time periods, rendering the opinions speculative and improper for a jury to rely upon in making a damages determination. More specifically, Defendant argues that there is no evidence the employees would have stayed with Plaintiff after the managers resigned and would have continued working with Plaintiff for eighteen months (as Gennarelli assumes) or ten years (as

Rosevear assumes), particularly in light of the fact that the non-solicitation agreement was limited to one year.

The crux of Defendant's argument is that any lost profits damages that exceed the duration of a restrictive covenant – in this case, one year – are inherently speculative. But the Court does not believe that it is quite so simple, and there is no bright-line rule limiting damages in this way. As previously noted, the case law analyzing damages in this context is not well developed. But one thing is clear – the amount of damages awarded must not be speculative. So the Court must consider what measure of damages is appropriate here and can be proven without speculation.

Under Florida law, damages in tort are aimed at "restor[ing] the injured party to the position it would have been in had the wrong not been committed." *Totale, Inc. v. Smith*, 877 So. 2d 813, 815 (Fla. 4th DCA 2004) (quoting *Nordyne, Inc. v. Fla. Mobile Home Supply, Inc.,* 625 So. 2d 1283, 1286 (Fla. 1st DCA 1993)). Tort damages are not limited to those within the reasonable contemplation of the parties, but nevertheless must represent the "natural, proximate, probable or direct consequence of the [tortious] act" as opposed to consequences deemed to be too speculative or remote. *Taylor Imported Motors, Inc. v. Smiley*, 143 So. 2d 66, 67-68 (Fla. 2d DCA 1962).

Whether in contract or tort, the plaintiff must prove that the breach of duty proximately caused the alleged damage and provide "some standard by which the amount of the damages may be adequately determined." *W.W. Gay Mech.*

*Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989). The amount need only be established with such "certainty as satisfies the mind of a prudent and impartial person." *Id*. In other words, "Florida law does not require exactitude where it is certain that substantial damage has been caused; a reasonable basis in the evidence for computation will suffice." *Marshall Auto Painting & Collision, Inc. v. Westco Eng'g, Inc.*, No. 6:02-cv-109-Orl-22KRS, 2003 WL 25668018, at *12 (M.D. Fla. May 8, 2003) (quoting *Nat'l Indus., Inc. v. Sharon Steel Corp.,* 781 F.2d 1545, 1548 (11th Cir.1986)).

It is well-established in Florida that "lost profit damages, like all damages, cannot be speculative and must be proved with reasonable certainty." *Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1213 (11th Cir. 2006); *see Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1105 (11th Cir. 1983) (To recover lost profits, a plaintiff must prove damages "with reasonable certainty."). To that end, Florida courts have recognized that although not impossible, proving lost profits is often challenging. *Nebula Glass Intern.*, 454 F.3d at 1213. For example, when an individual or entity has a right to terminate a contract, future events may be too uncertain and speculative to support a lost profits award. *See Sun Ins. Marketing Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1247 (M.D. Fla. Mar. 27, 2003). The plaintiff does not need to "show the precise amount of damages so long as the trier of fact can arrive at an intelligent estimate without speculation or conjecture." *Xerographic Supplies Corp.*, 719 F.2d at 1105. On the other hand, "Florida law

requires that assumptions use to support the conclusions be reasonably certain, not mere best case scenario predictions." *Sun Ins. Marketing Network, Inc.*, 254 F. Supp. 2d at 1247.

In their lost profits analyses, both Gennarelli and Rosevear appear to assume that the Tampa and Daytona branches would have otherwise continued operating into perpetuity but for Defendant's alleged misconduct. Neither Gennarelli nor Rosevear point to an objective factor or reason for the time periods over which they projected future lost profits – 18 months and 10 years, respectively.

Although both Gennarelli and Rosevear appear to be qualified to render damages opinions, their opinions are suspect because they do not identify any evidentiary support for the time duration included in their opinions. The case law indicates that Florida courts carefully scrutinize the time duration component of future lost profit damages models. Indeed, courts have rejected lost profit damages models as speculative when there is no objective factual basis for the time duration component. *See Florida Virtual School v. K12, Inc.*, No. 6:20-cv-2354-GAP-EJK, 2023 WL 6294214, at *2-3 (M.D. Fla. Aug. 25, 2023) (excluding lost profits opinion as entirely speculative because of lack of evidentiary support and noting absurdity of ten-year extrapolation of lost profits damages); *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 898 (Fla. 4th DCA 2007) (concluding that expert's calculation of lost profits damages for five-year period was speculative where he was unable to articulate any justification for use of the five-year period); *see also Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 653-55 (6th Cir. 2009) (district

court did not err excluding as unduly speculative testimony from expert that attempted to calculate lost profits over a ten-year time period rather than a five-year timeframe); *cf. Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 87-88 (1st Cir. 2017) (concluding that expert's ten-year loss period when calculating lost profits was based on sufficient factual support); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp. in U.S.A.*, 533 F.2d 510, 518-19 (10th Cir. 1076) (expert's calculation of lost profits not too speculative where expert had some evidentiary basis for decision to use 10-year period for projection).

Even if, as Plaintiff has indicated, Gennarelli and Rosevear were neither expected nor retained to opine on the appropriate duration of future lost profits, their lost profits damages calculations must still have some evidentiary support as to a time component before they can be submitted to a jury.  There certainly might be evidence in the case that Gennarelli and Rosevear could rely upon, beyond their own speculative opinions, to establish a time component.  However, it is not clear that Plaintiff has identified any such evidence on this specific point.  The durational aspect of lost profits is not simply a question of fact for the jury – there must be *some evidence* to create an issue of fact for the jury to determine.

In an abundance of caution, and considering the recent stipulation regarding damages, the Court will not eliminate Plaintiff's future lost profits claim from the case at this time.  However, if after presenting its case-in-chief, Plaintiff has not provided "some standard" for the time duration component of its future lost profits damage models the Court will, pursuant to Fed. R. Civ. P. 50, eliminate this claim

from the case and not permit Plaintiff to ask the jury for an award of future lost profits as a measure of damages.  To reiterate, Florida law does not permit a plaintiff to ask a jury for future lost profits without "some standard" for the jury to determine the length of time over which future lost profits should be awarded.

***Loan Volume Attributable to Former Branch Managers***

Defendant argues that any damages awarded must exclude the loan volume attributable to the former branch managers because they were free to leave their employment at any time.  In response, Plaintiff claims that damages including the loan volume are proper because the damages are not exclusively about the branch managers' departures – the case is about Defendant's decimation of the entirety of Plaintiff's business operations in Florida.

The models that Plaintiff proposes to present to the jury would award the value Plaintiff lost by virtue of the branch managers leaving Plaintiff to join Defendant.  But their employment agreements did not preclude the managers from leaving Plaintiff and moving to Defendant and thereafter competing with Plaintiff in generating new business.  It was not a breach of contract or a tort for them to do so.

Accordingly, the significant value lost to Plaintiff due to the branch manager departures does not flow from the alleged breaches and cannot legally constitute a component of the damages awardable to Plaintiff if it proves its case.  Awarding damages to Plaintiff that include the loans attributable to the branch managers does not put Plaintiff in the same position it would have been in but for the alleged

breaches and torts – to the contrary, it would impermissibly put Plaintiff in a *better* position by awarding Plaintiff the value of the branch managers services as a component of damages when those individuals were free to leave Plaintiff at any time without breaching any contracts or duties. Plaintiff does not offer any logical explanation why it is legally entitled to be compensated for the loss of the branch managers when those individuals were free to leave. And presenting evidence about damages that include loan volume attributable to the branch managers would be confusing to a jury. Consequently, Defendant's motion is granted as to this ground.

### *Inclusion of Paramus Branch*

Defendant contends that Plaintiff cannot seek damages based on the closure of the Paramus, New Jersey, branch because the closure of that branch did not involve any actionable wrongdoing. Notably, although the Paramus branch reported through Chris Smith and John Utsch, the Tampa managers, the Paramus branch also had its own local managers. Those local managers considered staying with Plaintiff, but then left several weeks after the Tampa resignations.

In a footnote, Plaintiff appears frustrated that Defendant continues to insist that damages associated with the Paramus branch should be excluded. As explanation for inclusion, Plaintiff has indicated that the numbers for Paramus cannot be separated from Tampa because the branches operated on the same profit and loss statements. This position is not well taken. Plaintiff has failed to provide

a sufficient basis for including damages associated with the Paramus branch in this case. Defendant's motion is granted as to this ground.

*Hypothetical Models and "Reality"*

Finally, Defendant argues that both the Gennarelli and Rosevear models are based on "hypothetical projections that ignore reality." Defendant argues that it is simple enough to determine lost profits damages by looking at how the Tampa and Daytona branches actually performed at Waterstone. Defendant also takes issue with some of the data used in the models. These arguments go toward the weight of the evidence rather than admissibility, and Defendant may cross-examine Plaintiff's witnesses on these and other issues. Defendant's motion is denied as to this ground.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant "Waterstone Mortgage Corporation's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages" (Doc. 132) is **GRANTED IN PART** and **DENIED IN PART,** as set forth herein.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>29th</u> day of March, 2024.

*[signature]*

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**