# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MUTUAL OF OMAHA MORTGAGE, INC.

    Plaintiff,

v.

WATERSTONE MORTGAGE CORPORATION,

    Defendant.

CASE NO. 8:22-cv-01660-UAM

**<u>WATERSTONE'S REPLY IN SUPPORT OF SUMMARY JUDGMENT</u>**

Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

## I.  INTRODUCTION

Since Waterstone filed this motion, Mutual's alleged trade secrets have changed from 186 documents to 639 documents to 39 documents. Mutual cannot even state with certainty what its alleged trade secrets are, let alone prove the information is protectable or that Waterstone misappropriated it. It is not Waterstone's burden to guess at what Mutual's trade secrets are. Mutual bears the burden on its trade secret claims, including damages, for which Mutual has never made any demand. The Court should dismiss Mutual's trade secret claims.

## II.  MATERIAL UNDISPUTED FACTS[1]

1. After the Court ordered Mutual to identify its trade secrets on March 1, 2023, Mutual identified 186 alleged trade secrets. (Dkt. 52, 137-3.)

2. Waterstone deposed Mutual's corporate representative based on the alleged trade secrets and hired an e-forensic expert to analyze the 186 documents identified. (Dkt. 137, 137-4, 137-5.) Discovery closed July 31, 2023.

3. Waterstone moved for summary judgment based on the 186 alleged trade secrets on February 29, 2024, the dispositive motion deadline. (Dkt. 137.)

4. On April 1, 2024, *over a year* after the Court ordered Mutual to identify its alleged trade secrets by Bates number and nearly *eight months* after discovery closed, Mutual filed its response brief purporting to identify 639 documents as its

---

[1] Waterstone disputes Mutual's denials and objections to its statement of material undisputed facts, and disputes the factual assertions in Mutual's response, without reciting each paragraph here.

1

alleged trade secrets, 478 of which were never previously identified as alleged trade secrets in discovery. (Resp. Br. at 2, Ex. A; *see* Dkt. 90.)

5. On April 2, 2024, Mutual filed a "corrected" response brief including yet another new spreadsheet of purported trade secrets. (Dkt. 151.)

6. On April 4, 2024, without seeking leave of Court to re-open discovery, Mutual served amended discovery responses reducing the number of alleged trade secrets to 39, although Mutual has *never previously identified 33 of the 39* as its trade secrets in discovery. (Exhibit 1, Mutual's Third Amended Responses and Objections to Waterstone's First Set of Interrogatories, at Resp. to Interrog. No. 8.)

## III. ARGUMENT

### A. Summary Judgment Is Appropriate Because Mutual Has No Evidence To Support Its Trade Secret Misappropriation Claims.

Mutual bears the burden of proof on its trade secret claims. It is not Waterstone's burden to disprove Mutual's claims, or the Court's job to parse through the record. *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539-CV, 2023 WL 8679672, at *4 (S.D. Fla. Dec. 7, 2023) (summary judgment is "the critical put up or shut up moment" of the case). As applied here, Mutual must establish both that (1) the information it seeks to protect qualifies as a "trade secret" and (2) those trade secrets were misappropriated by Waterstone. *ActivEngage, Inc. v. Smith*, 2019 WL 5722049, at *3 (M.D. Fla. Nov. 5, 2019) (citations omitted).

Mutual presented no evidence to support either element of its claims. Instead, Mutual states its trade secrets fall into the four categories shown in Exhibit A to its

brief (listing 639 documents). (Resp. Br. at 2, Ex. A.) The cases Mutual cites to support its argument that certain categories of information *can* qualify for trade secret protection are inapposite because Mutual does not offer any evidence or argument specific to the volumes of documents listed in its various spreadsheets establishing the information listed is (a) subject to secrecy efforts or (b) capable of deriving independent economic value. *See* 18 U.S.C. §§ 18 U.S.C. 1839(3)(A), (B); Fla. Stat. § 688.002(4). Rather than point to specific evidence to support its alleged trade secrets, Mutual argues the determination of what qualifies as a trade secret is a fact question for the jury. But Mutual must first offer evidence to create a genuine dispute of material fact, which it has not done. *See, e.g.*, *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2006) (granting summary judgment for defendant where plaintiff failed to provide evidence or testimony as to why broad categories of documents constitute trade secrets under Florida law); *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1253 (M.D. Fla. 2002) (granting summary judgment for defendant where plaintiff "brought forth no evidence establishing that a trade secret exists for which Defendants allegedly misappropriated").

### B. Mutual's Inability To Identify Its Trade Secrets Demonstrates Why Summary Judgment Is Appropriate.

The 39 trade secrets Mutual now relies upon in its amended discovery responses have been in Mutual's possession since the close of discovery, at the very latest (due to Mutual's belated pursuit of discovery), with the vast majority of documents produced in October or November of 2022. *See* Exhibit 2. There is no

3

reason Mutual could not have supplemented its discovery responses sooner. Instead, Mutual waited to amend its responses until after Waterstone filed this dispositive motion (eight months after the close of discovery). Mutual's last minute identification of trade secrets is a flagrant violation of the discovery rules, extremely prejudicial to Waterstone, and clear evidence of Mutual's inability to even state what its alleged trade secrets are. *See generally Fox v. Safeco Ins. Co. of Illinois*, No. 8:16-CV-2665-T-23JSS, 2017 WL 4102312, at *2 (M.D. Fla. Sept. 15, 2017) (a party's "duty to supplement discovery does not allow [that party] to ignore the scheduled deadlines set by the Court"; striking references to untimely supplemental discovery responses submitted in opposition to summary judgment).

### C. Mutual Has Not Established The 39 Documents Identified In Its Amended Responses Are Trade Secrets, Nor Could It.

Even if Mutual were permitted to identify its alleged trade secrets for the first time on summary judgment, Mutual has not established that any of the 39 documents are trade secrets. Included in Mutual's new list, an annotated version of which is attached as Exhibit 2, are documents created during this litigation and produced to Waterstone without any secrecy efforts by Mutual, as well as correspondence between former Mutual employees and Waterstone with no attachments transmitted.[2] For example, Mutual identifies an email exchange

---

[2] Exhibit 2 lists the 39 alleged trade secrets newly identified by Mutual on April 4, 2024 as well as whether the document was previously identified as a trade secret in discovery, when it was produced, and a brief description of the contents. Given that a majority of the 39 alleged trade secrets identified by Mutual are documents *produced by Waterstone* in this case, Waterstone is willing to permit an *in camera* review of these documents if it would be helpful to the Court.

4

produced by Waterstone between former Mutual manager, Chris Wolf (using his Gmail account), and Dustin Owen of Waterstone in which Wolf asks Owen questions about Waterstone's business, loan products, and benefits in vetting potential employment (WMC006263.) Wolf asks Owen if he could "send loans over to start and build up a balance" to which Owen responded: "We need to make sure anything you all do during transition does not violate any current agreement you have with your current employer as it pertains to leads generated and loans in the pipeline." There is no basis for Mutual to claim this email exchange between Wolf and Owen as its own trade secret.

  The new list also includes documents that could not possibly have been misappropriated by Waterstone, including internal emails among Mutual employees. If Mutual intends to argue that information attached to, or included within, transmittal emails constitutes its purported trade secrets, Mutual has not identified those purported attachments or information as its trade secrets. Neither Waterstone, nor the court should be left to guess on summary judgment what Mutual's alleged trade secrets are. Again, Mutual has the burden of proof. It can only survive summary judgment by putting forth evidence that demonstrates a genuine issue of material fact. *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1367 (Fed. Cir. 2000) (plaintiff failed to produce evidence to support conclusory allegations of trade secret misappropriation under Florida law and thus failed to establish a genuine issue of material fact to survive summary judgment).

Further, some of the newly identified documents appear to reference loan applications and other information submitted by borrowers. *If* Mutual is claiming borrower-authored documents are its trade secrets, summary judgment is appropriate for at least three reasons. First, the case is on the eve of trial and there is no ability to identify new trade secrets. Second, Mutual has again failed to provide *evidence* establishing why this information – most of which is publicly available and certainly not owned by Mutual – constitutes a trade secret. Third, Mutual has not identified any loans closed at Waterstone that were the product of alleged misappropriation and never articulated damages based on diverted loans – despite having a year's worth of Waterstone's closed loan data since June 2023.

As to the P&L statements, Waterstone addressed these documents in its opening brief, noting Mutual's corporate representative could not identify any damages flowing from the P&L statements, which is consistent with Waterstone's position that the P&L information was irrelevant and not used. (Opening Br. at 7-8, 11.) Mutual has not responded to this argument with evidence to the contrary, which is dispositive. Instead, Mutual's sole argument is that Waterstone requested the former employees send those documents to Waterstone. (Resp. Br. at 7, ¶ 22.) Even if the Court were to overlook the lack of damages evidence (or demand) and address this argument, Mutual's position is patently false and contradicted by the testimony of Waterstone's corporate representative which confirms Waterstone did not ask or direct the former Mutual employees to provide P&L information. (Dkt. 137-6 (Allen Dep. Tr.) 219:19-22; 220:11-17; 221:21-222:5.) The former branch manager who sent

6

the P&L statement, Dwayne Hutto, confirmed Waterstone did not request this information but that it was voluntarily sent to Waterstone, among other companies. (Dkt. 137-7 (Hutto Dep. Tr.) 70:1-7.) There is no basis for a claim based on the P&L statements.

### D. Mutual Has No Damages Based On Trade Secret Misappropriation.

Mutual acknowledges that damages for trade secret misappropriation can be based on the "value of the secret to the defendant." (Resp. Br. at 16.) But Mutual has never articulated a damage demand based on the "value" of any of its 39 purported trade secrets. For this reason alone, the court should dismiss the claims.

### E. Mutual's Objections To Waterstone's E-Forensic Expert Go To The Scope Of His Analysis, Not His Conclusions.

As a final matter, Waterstone's e-forensic expert, Brett Creasy, analyzed the data (that *was* disclosed in discovery) and concluded that the vast majority of Mutual's alleged trade secrets were never sent to Waterstone. Mutual does not dispute this conclusion. (*See* Exhibit 3, Report of Brett Creasy, ¶¶ 12-13; Resp. Br. at 4, ¶ 12.) Instead, Mutual argues that Mr. Creasy should have done more to confirm no wrongdoing occurred. But, here again, it is Mutual's burden to prove misappropriation. It is not enough to argue Mr. Creasy could have been more exhaustive.

## IV. CONCLUSION

For the reasons stated, the Court should grant Waterstone's motion.

Dated: April 12th, 2024.

/s/ *Emma J. Jewell*
Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*