UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUTUAL OF OMAHA
MORTGAGE, INC.,

      Plaintiff,                            CASE NO.: 8:22-cv-1660-TPB-UAM

v.

WATERSTONE MORTGAGE
CORPORATION,

      Defendant.
_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF COURT'S ORDER ON WATERSTONE MORTGAGE CORPORATION'S MOTION TO EXCLUDE OR LIMIT PLAINTIFF'S EXPERT TESTIMONY ON DAMAGES (DOC. 146)**

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") respectfully files this Motion for Reconsideration on the Court's Order Granting in Part and Denying in Part "Waterstone Mortgage Corporation's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages" ("Order"). In support thereof, Plaintiff states as follows:

## INTRODUCTION

In this action, the Parties have heavily litigated the issue of Mutual's lost profit damages, focusing on a multitude of issues ranging from the admissibility of expert witnesses to the sufficiency of evidence. Included in the myriad of issues raised

1

before the Court was Waterstone's assertion that Mutual's lost profits should not include the loan volume attributable to Mutual's three former branch managers. Mutual believes that given the nuanced nature of this issue concerning the former branch managers' business volume, it is possible that the distinction warranting damages in this case became obscured. This is particularly true since the distinction argued by Mutual justifying inclusion of those damages was not addressed in the Court's opinion, raising the possibility that the distinction was not considered.

Specifically, Mutual agrees that damages associated with a departing employee's solicitation typically do not include the volume of business that the departing employee takes with him when leaving his employer. The rationale is straightforward: regardless of the existence of any improper conduct vis-à-vis other employees, when the employee leaves, he is responsible for his own business irrespective of any wrongdoing. That is not the case here, however. In this case, Mutual has produced ample evidence that from the beginning, Defendant enticed—and in fact *caused*—Mutual's former branch managers to leave and join Defendant by facilitating the simultaneous departure of the branch through a multitude of illegal activities. And, but for those actions, the branch managers—who were compensated based on the overall production of their respective branches—would not have joined Waterstone. In other words, as opposed to a situation where an employee lawfully departs but then improperly solicits others to leave, here, Waterstone utilized

improper actions which according to their own witnesses, was a but-for cause of the branch managers' resignations. Simply put, Waterstone's assistance in stealing the branches cannot be separated from the branch managers' resignations because one would not have occurred without the other.

Additionally, removal of these damages ignores the fact that Waterstone engaged in wrongful conduct when it usurped Mutual's former branch managers' business volume by stealing a multitude of trade secrets that enabled the branch managers to seamlessly transition their business to Waterstone.

Finally, the evidence in this case does not support any conclusion that the three managers left simultaneously. Rather the evidence is uncontroverted that one manager—Dwayne Hutto—met with Waterstone and thereafter introduced Waterstone to the other managers. Thus, at most—even if the Court were to reject Mutual's damages theory and ignore the misappropriation of trade secrets—Waterstone's improper use of Mr. Hutto as a conduit to entice the other branch managers to join Waterstone warrants inclusion of their volume in the potential damages considered by the jury.

While Mutual understands the Court's reasoning for the exclusion of the loan volume attributable to the former branch managers because they were free to leave Mutual to join Waterstone, so long as there is evidence to support a theory that it was Waterstone's wrongful conduct that caused these damages, Mutual should be

entitled to present this theory to a jury. While it was not a breach of contract or tort for the managers to leave Mutual on their own will, it *was* both a breach *and* a tort for Waterstone to aid and abet Mutual's former managers in breaching their fiduciary duties and violate their contractual obligations to Mutual. And, if but for Waterstone's wrongful actions, the managers would not have resigned, then Waterstone may be liable for the volume of their business. Based on the record evidence, there is, at a minimum, a factual dispute as to whether this occurred. Given the complexity of Waterstone's convoluted scheme, it is prejudicial to Mutual if it is not able to present this evidence to a jury to support its claim for lost profits. In the same vein and for the same reasons, Waterstone's wrongdoing also resulted in the loss of the Paramus branch as the record evidence shows.

For the reasons set forth herein, Mutual respectfully requests that this Court reconsider its Order on Defendant's Motion and amend its judgment to allow Mutual to seek the loan volume amounts attributable to the former managers as well as the damages associated with the loss of the Paramus branch.

## **PROCEDURAL HISTORY**

On August 23, 2023, the Court ordered Mutual to move for summary judgment solely as to damages in an attempt to provide the Parties with some

clarification on the damages sought in this action.[1]  Doc. 95, 102.  Mutual filed its motion on October 20, 2023.  Doc. 100.  In its response, Defendant requested that the Court exclude the testimony of Mutual's corporate representative, Jeff Gennarelli, and exclude certain categories of damages, including: (1) damage beyond the one-year duration of the employees' non-solicitations; (2) lost profits associated with the four branch managers; and (3) damages associated with the Paramus, New Jersey branch.  Doc. 104.

On March 29, 2024, the Court issued his Order Granting in Part and Denying in Part "Waterstone Mortgage Corporation's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages."  Doc. 146.  In his Order, the Court refused to wholly eliminate both Mutual's future lost profits claim and Mutual's damage models.  *Id.* at pp. 10, 13.  The Court did, however, grant Defendant's motion as to the elimination of the loan volume attributable to the former branch managers and the Paramus branch in Mutual's lost profit calculations.  *Id.* at pp. 11, 12.  Mutual now seeks reconsideration of that limited issue in this Motion.

---

[1] Prior to the Case Management Conference on August 23, 2023, Defendant had previously filed two motions related to the damages in this case.  Defendant filed its Motion in Limine to Exclude Plaintiff's Category 2 and Category 3 Damages (Doc. 72) and filed its Motion to Strike Rebuttal Expert Candice L. Rosevear (Doc. 84), both of which this Court denied.  Doc. 85, 86.

5

## **LEGAL STANDARD**

While the Federal Rules of Civil Procedure do not expressly provide for the filing of a motion for reconsideration, it is widely recognized that a motion to amend or alter a judgment pursuant to Federal Rule of Civil Procedure 59(e) encompasses such motions. *Santiago v. Swain*, No. 3:21-cv-886-MMH-MCR, 2024 WL 1346990, at *1 n.2 (M.D. Fla. Mar. 29, 2024) (citing *Controlled Semiconductor, Inc. v. Control Systemation, Inc.*, No. 6:07-cv-1742-Orl-31KRS, 2008 WL 4459085, at *1 (M.D. Fla. Oct. 1, 2008); 11 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Fed. Prac. & Proc. 2d § 2810.1 (2007)); *see also* Fed. R. Civ. P. 59(e) (allowing district courts to alter or amend a judgment).

Courts in the Eleventh Circuit have recognized three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *See, e.g., Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1348 (S.D. Fla. 2007); *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993). A court retains discretion to reconsider an order when a movant provides "facts or law of a strongly convincing nature to demonstrate to the court the reason to reverse its prior decision." *Santiago Manuel A. v. Jamison*, No. 2:13-cv-781-FtM-29CM, 2015 WL 136038, at *1 (M.D. Fla. Jan. 9, 2015). A motion for reconsideration is appropriate where "the Court has patently misunderstood a party,

or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Cazlora Salinas v. Weinkle*, No. 14-CIV-62481-BLOOM, 2016 WL 3950028, at *2 (S.D. Fla. Jan. 11, 2016) (citing *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).

## ARGUMENT

I. **MUTUAL'S LOST PROFIT DAMAGES SHOULD NOT EXCLUDE THE LOAN VOLUME ATTRIBUTABLE TO FORMER BRANCH MANAGERS.**

Mutual concedes that if the damages in this case flowed *only* from the misconduct of Mutual's three former branch managers in soliciting others to leave, it would be improper to include their own production as damages since they would have not breached any duty in their own resignations. *See, e.g., Saks Fifth Avenue, Inc. v. James, Ltd.*, 630 S.E.2d 304, 312 (Va. 2006) (finding the expert witness failed to connect the lost profits incurred after the employee's departure to anything other than the fact that the employee no longer worked for the employer, and the employee was an at-will employee who was free to stop working at any time); *AZZ Inc. v. Morgan*, 462 S.W.3d 284 (Tex.App.—Fort Worth 2015). *But see Hill v. Names & Addresses, Inc.*, 212 Ill. App. 3d 1065, 1081 (Ill.App. 1st Dist. Apr. 23, 1991) (finding that the fact the employer could have obtained the business of the previous

7

clients does not relieve it of liability for having caused the clients' shift through improper means).

But that is not what happened here nor is it analogous to Mutual's claims. In this case, Mutual claims that from the very beginning, Waterstone lured Mutual's former managers to leave by gaining their cooperation in facilitating the departures of the entire branches. SOF ¶¶ 17-29. The first time it met with Mr. Hutto, Waterstone intended to abscond with the entire branch. SOF ¶ 17. And thereafter Waterstone used Mr. Hutto as a conduit, getting him to introduce the company to the other managers and in turn to other employees. SOF ¶ 18. Throughout this time, Waterstone developed plans to set up transition teams to facilitate the departure of the branch. SOF ¶¶ 17-29. Waterstone further requested that these very managers steal confidential information to facilitate the diversion of existing loans and customer pipelines. *Id.*

But most importantly, Mutual has evidentiary support that Waterstone knew that the managers would not leave Mutual without their branches. (SOF[2] ¶¶ 10, 16, 19, 32, 33, 48, 57).[3] So, Waterstone encouraged and facilitated the lift out of Mutual

---

[2] For purposes of this Motion, the "SOF" is referring to the Statement of Material Undisputed Facts incorporated in Plaintiff Mutual of Omaha Mortgage, Inc.'s Motion for Summary Judgment on Lost Profit Damages. Doc. 100 at p. 2-15.

[3] That is because the Managers were to varying aspects dependent on their employees for their income so if the branch did not leave – the managers risked financial loss by any transition Defendant thus participated in, encouraged, and facilitated illegal practices in pursuing the branch employees to leave Mutual (SOF ¶¶ 11-16, 20, 22, 23, 28, 29, 38, 39, 44, 45, 53-56, 61); and that

Florida's branches through wrongful means. Thus, even if the managers could have lawfully taken their own business, to the extent that would not have occurred but for Waterstone's wrongful conduct, all damages associated therewith are recoverable. Put another way, the simple reality that the managers could have resigned and taken their own business lawfully does not negate that what actually happened was unlawful. And, if Mutual is successful in proving this wrongful conduct it is entitled to all damages caused thereby. The fact that events could have theoretically transpired in a lawful manner does not negate the fact that if damages were caused by illegal activity all damages associated with that legal activity are recoverable.

Provided that Mutual is able to prove that Waterstone's actions were the but-for cause of Mutual's former branch managers' resignations, there is simply no legal basis to conclude that the managers' production could not be included in the damages awarded to Mutual. Indeed, whether the managers *could* have left Mutual is not determinative. The question is whether Waterstone's improper conduct *caused* them to leave under the facts of this case. If the jury were to conclude in the affirmative, then Plaintiff is unquestionably entitled to damages stemming from Waterstone's wrongful conduct.

---

but for those actions taken by Waterstone, neither the Managers nor Mutual Florida would have transitioned to Defendant (SOF ¶¶ 10-19, 33, 39, 48, 58).

9

Further, Waterstone engaged in a number of unlawful actions that amounted to the actual and real misappropriation of Mutual's trade secrets. *See* SOF ¶¶ 21-22, 24-32, 35-37, 39-46, 51, 53-57.  Waterstone undertook actions to have Mutual's former branch managers illegally obtain Mutual's customer information, financials, and compensation from Mutual's own password-protected computers.  *Id.* Waterstone's scheme even utilized a third-party, who was unaffiliated with Mutual, to contact Mutual Florida's customers and transition them into becoming Waterstone customers, using an e-mail address elliemutualmortgage@gmail.com to deceive the customers. *Id.* ¶ 51.  Mutual's former branch managers' actions allowed Waterstone access to Mutual's valuable information to leverage Waterstone to go after Mutual's clients and referral sources.  *Id.* ¶¶ 52-55.  Moreover, all of this action also occurred *after* Mutual had sent Waterstone cease and desist letters.  *Id.* ¶ 52.  Without the actions taken by Waterstone, the former branch managers would not have left Mutual.  And Waterstone knows it.  SOF ¶¶ 17-29.

Even if this Court does not agree that all three branch managers' loan volumes should be included, the only loan volume that arguably *may* be excluded is Mr. Hutto.  The record evidence shows that Waterstone utilized Mr. Hutto as a conduit to encourage the other two branch managers to leave Mutual. SOF ¶¶ 17-29.  Thus, even if Waterstone lawfully hired Mr. Hutto and Mr. Hutto was free to leave Mutual, Mr. Wolf and Mr. Smith were not lawfully hired because Mr. Hutto would have

10

necessarily violated the terms of his Employment Agreement with Mutual by soliciting Mr. Wolf, Mr. Smith, and their branches. SOF ¶ 8 at § 15.1. Thus, Waterstone's conduct in utilizing Mr. Hutto to engage in unlawful activity and to breach his fiduciary duty to Mutual would have directly caused Mutual's damages. Accordingly, *at best*, only Mr. Hutto's prior loan damages should be excluded.

A critical piece of the lost profit analysis is the consideration of proximate cause. *See, e.g., Cedar Hills Props. Corp. v. Eastern Fed. Corp.*, 575 So. 2d 673, 677 (Fla. 1st DCA 1991) (citing *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989)); *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 898. And here, it is Waterstone's actions—not Mutual's former branch managers—that caused Mutual's damages. As addressed herein and in its prior filings, the evidence is abundant that *Waterstone* undertook actions, including the wrongful recruitment of the branch managers, the theft of confidential information and trade secrets, the improper diversion of Mutual's customers and loans, and ratification of the former branch managers' conduct, that resulted in Mutual's losses. *At worst*, there is a question of fact as to the proximate cause element that Mutual should be permitted to present to the jury. *See, e.g., Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*, 183 So. 3d 374, 382-83 (Fla. 3d DCA 2013) (citing *State Rd. Dept. v. Tampa Bay Theatres, Inc.*, 208 So. 2d 485, 486-87 (Fla. 2d DCA 1968)); *IBP, Inc. v. Hady Enters., Inc.*, 267 F. Supp. 2d 1148, 1168-69 (N.D. Fla. 2002)

(noting the role of the factfinder in determining lost profits); *Collins & Aikman Floor Coverings, Inc. v. Interface, Inc.*, No. 4:05-CV-0133-HLM, 2009 WL 10669578, at *4 (N.D. Ga. Jan. 8, 2009) (finding that so long as a party can provide a viable legal theory for recovering lost profits, it is "ultimately up to the jury . . . to weigh the credibility of the parties opposing theories and evidence").

For these reasons, Mutual respectfully requests that this Court consider its prior Order and deny Waterstone's request for the exclusion of the loan volume attributable to the former branch managers.

## II. THERE IS EVIDENCE OF WATERSTONE'S WRONGDOING IN THE CLOSURE OF THE PARAMUS BRANCH, AND THEREFORE, IT IS IMPROPER TO EXCLUDE IT FROM MUTUAL'S DAMAGES.

Waterstone's wrongdoing in taking the Paramus branch is the same as that set forth above with respect to Waterstone's taking of the Daytona and Tampa branches. Respectfully, the Court's Order overlooks the fact that the Paramus branch effectively belonged to Mr. Smith, and Mr. Smith played an integral role in Waterstone's scheme thereby contributing to Mutual's losses. The undisputed record evidence shows that Mr. Smith operated both the Tampa and Paramus branches. SOF ¶ 7. In fact, in its Answer, Waterstone admits that Paramus that this location "rolled up under the Tampa Branch." Doc. 39 ¶ 5. As one example of wrongdoing by Mr. Smith as he operated *both* branches, on May 11, 2022, Melanie Pischke Ferrera, a former Mutual employee who joined Waterstone, sent an e-mail

12

to Smith providing "suggested Encompass export map for the 'Completed Loans' folder." SOF ¶ 53. In response, on June 13, 2022, John Utsch, who was still working as a loan officer at Mutual, responded, providing a "closed loan list" in the field mapping that Waterstone requested from Encompass. SOF ¶ 54. In other words, Mr. Utsch—the very manager who Waterstone claims played had role in the wrongdoing—misappropriated Mutual's trade secrets for Waterstone's benefit, while still working at Mutual. Moreover, Waterstone's very own corporate representative acknowledged that this conduct was "problematic." SOF ¶ 55. And all of this wrongdoing occurred *after* Mutual had already sent a cease and desist letter to Waterstone. SOF ¶ 52. Mr. Smith and *both* of his branches thereafter resigned from Mutual on June 15, 2022. SOF ¶ 57.

Accordingly, based on the foregoing, Mutual requests that this Court reconsider its Order insofar as it relates to the exclusion of the Paramus branch and deny Waterstone's motion for summary judgment as to these grounds.

## CONCLUSION

WHEREFORE, in light of the foregoing, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Reconsideration on the Court's Order on Waterstone Mortgage Corporation's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), undersigned counsel conferred with Defendant's counsel. Defendant's counsel opposes this motion.

Dated:   Washington, D.C.
            April 25, 2024

                    MITCHELL SANDLER LLC

                    By: */s/ Ari Karen*
                    Ari Karen (admitted *pro hac vice*)
                    Christopher L. McCall (admitted *pro hac vice*)
                    Courtney E. Walter
                    Arielle Stephenson (admitted *pro hac vice*)
                    1120 20th Street N.W., Suite 725
                    Washington, D.C.  20036
                    Email:  akaren@mitchellsandler.com
                    Email:  cmccall@mitchellsandler.com
                    Email:  cwalter@mitchellsandler.com
                    Email:  astephenson@mitchellsandler.com
                    Telephone:  (202) 886-5292

                    GUNSTER, YOAKLEY & STEWART, P.A.

                    John A. Schifino
                    Florida Bar No. 0072321
                    401 East Jackson Street, Suite 1500
                    Tampa, Florida  33602
                    Primary email:  jschifino@gunster.com
                    Secondary email: eservice@gunster.com
                    Telephone:  (813) 739-6962

                    *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*