**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) |
| | ) Case No. 8:22-cv-01660-UAM |
| | ) |
| Plaintiff, | ) **PLAINTIFF MUTUAL OF OMAHA** |
| | ) **MORTGAGE, INC.'S RESPONSE IN** |
| v. | ) **OPPOSITION TO WATERSTONE** |
| | ) **MORTGAGE CORPORATION'S** |
| WATERSTONE MORTGAGE | ) **MOTION *IN LIMINE* TO EXCLUDE** |
| CORPORATION, | ) **EVIDENCE RELATED TO DAMAGES** |
| | ) |
| Defendant. | ) |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby

files this Response in Opposition to Defendant Waterstone Mortgage Corporation's

("Defendant" or "Waterstone") Motion *in Limine* to Exclude Evidence Related to

Damages ("Motion"). In support thereof, Plaintiff states as follows:

## INTRODUCTION

Waterstone's Motion is an attempt to recycle arguments previously rejected

by Judge Barber in this case. As recently as March 29, 2024, the Court ruled that,

although Mutual's economic model produced on or about July 14, 2023, sought

damages up to ten years, its stipulation to seek only thirty months of damages would

be permitted. *Order,* ECF No. 146 at 10. Indeed, Waterstone has repeatedly

attempted to challenge this model and the damages in this case through extensive

motion practice, including: (i) Waterstone's Motion to Strike Rebuttal Expert

1

Candice L. Rosevear (ECF No. 84); (ii) Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages (ECF No. 132); and (iii) Motion in Limine to Exclude Category 2 and Category 3 Damages (ECF No. 72). Moreover, damages were discussed frequently with Judge Barber, including at the August 23, 2023, and December 13, 2023, case management conferences, as well as during the hearings on each of Waterstone's motions. The culmination of these discussions was Judge Barber's determination that the evidence of damages would be presented to the jury, given Mutual's stipulation. Indeed, in an effort to streamline this case and—at the urging of the Court—kickstart settlement discussions, Mutual voluntarily agreed to reduce the amount of damages it is seeking at trial.  Instead of reciprocating, Waterstone now attempts to take a mile from the proverbial inch and yet again re-argue issues the Court just rejected based on evidence and arguments that are no surprise whatsoever to Waterstone.

Waterstone's arguments ignore Florida law, which clearly holds that so long as causation can be established, the amount of damages is within the jury's province. Realizing the extensive evidence of wrongdoing and causation, Waterstone desperately attempts to ask this Court to err by preventing the jury from making this determination. And there is ample evidence of which Waterstone was well aware during discovery, supporting a thirty (30) month limitation.  Indeed, Waterstone has been aware for months (if not years) that the average branch tenure can be

ascertained from publicly available information on the NMLS. It demonstrates that,

on average, Mutual's Florida Operations would have remained for at least thirty (30)

*more* months. This would allow the jury to conclude that fifty percent of branches

stayed *longer* than the average. (Jan. 30, 2024 Hearing Tr. ECF No. 131 at 35:8-16.)

Additionally, there is evidence from prior testimony in this case, that Mutual's recent

acquisition of Keller Williams Real Estate ("Keller Williams") would have

incentivized loan officers – with literally a built-in referral network – to remain

employed even longer than the historical average. Finally, the fact that multiple

agreements prohibit the solicitation of employees for one to two years and protect

critical branch information, the misappropriation of which was key to the lift-out

strategy, demonstrate these Branches would have remained for at least that long.

Accordingly, there is ample evidence – all of which was produced during

discovery and argued *ad nauseum* before this Court – to support at least thirty

months of damages. Waterstone is not a victim of unfair surprise, and its motion

should be denied.

## **FACTS**

Almost a year ago, on May 25, 2023, Jeff Gennarelli was deposed, and he

testified extensively about the damages in this case. He discussed how he arrived at

the damages calculation of 18 months and noted that it was particularly conservative:

"if they had stayed for 18 months, what that would be. We took a very -- we did take

a very conservative approach to it, so...” “And I really mean fair and be conservative

about it because we were hoping for a settlement before this time.” “So we used a,

we felt, more conservative approach, which is we took all the fixed expenses that

occur on the corporate side.” Ex. A at 125:19-20, 126:15-16, 132:1-2. Mr. Gennarelli

also explained that the arrival of Keller Williams Real Estate would have caused the

branches to stay for a much longer period, up to six or seven years, considering one

out of every five real estate transactions involved Keller Williams. Ex. A at 174:2-

5, 12-14.

Waterstone then filed a Motion *in Limine* to Exclude Plaintiff’s Category 2

($4,440,002.42) and Category 3 ($750,000) Damages on July 6, 2023 (ECF No. 72).

Mutual stipulated that it would not seek Category 3 damages on July 20, 2023 (ECF

No. 76), and the Court denied all aspects of the motion outside of the stipulation.

*Order*, ECF No. 85.

On or about July 14, 2023, Mutual produced the Expert Report of Candice

Rosevear, providing a damages model that went up to 10 years. Expert Report dated

July 14, 2023. (ECF No. 166-6). On July 20, 2023, Waterstone deposed Ms.

Rosevear. She explained her model and focused on her methodology, and that a

model up to ten years is standard when using a discounted cash flow ("DCF") model. (ECF No. 132-5 at 43:18-44:4).

Six days later, on July 26, 2023, Waterstone filed a Motion to Strike Candice Rosevear. (ECF No. 84). That motion was denied one day later on July 27, 2023 (ECF No. 86). Judge Barber ruled that "this expert, [Ms. Rosevear], is in the case now." (ECF No. 101 at 56).

At Judge Barber's request, Mutual then moved for summary judgment on lost profits damages on October 20, 2023 (ECF No. 100). It explained that Rosevear's model "is flexible to other damages timeframes and allows for the calculation of damages through any year up to 2031" and that "a jury could expand that liability to *multiple years*, predicated on the testimony and facts adduced at trial." *Id.* at 24 (emphasis added). Mutual also cited the affidavit of Mark Carroll, who provided an explanation of the average branch tenure at Mutual, based on publicly available Nationwide Multistate Licensing System ("NMLS") data. Waterstone moved to strike the affidavit on November 17, 2023 (ECF No. 117), and Magistrate Judge Sneed ruled that it was stricken for purposes of summary judgment but advised Waterstone in January of this year that the evidence could come in at trial. *Order*, ECF No. 128 at 2 dated January 24, 2024 ("Defendant's Motion is denied to the extent that it seeks to preclude the use of the information contained in Mr. Carroll's declaration at trial.") At the hearing on Mutual's motion for summary judgment,

damages and the time period of such damages were extensively discussed, including

a request by Waterstone to limit damages to one year. Jan. 30, 2024 Hearing Tr. ECF

No. 131 at 41:5-20. The parties discussed this very evidence regarding the average

time a branch stays at Mutual. *Id.* at 29:10-30:11. Judge Barber analogized to law

school grades, stating, "Why is an average the limit? Why wouldn't that be a fact

question? Is this a C student or is this a D student?" *Id.* at 35:8-16. Mutual's motion

was denied, and Waterstone was directed to "file a Daubert motion concerning the

lost profits issues discussed at the January 30, 2024, hearing." *Order*, ECF No. 130.

On February 6, 2024, Waterstone moved to Exclude or Limit Plaintiff's

Expert Testimony on Damages (ECF No. 132). Mutual filed a stipulation on March

22, 2024, providing that it would not seek more than thirty (30) months of lost

profit damages at trial (ECF No. 144). On March 29, 2024, the Court partially

granted Waterstone's motion, ruling that certain damages were excluded. (ECF No.

146 at 11–13). Judge Barber also ruled:

> In an abundance of caution, and considering the recent
> stipulation regarding damages, *the Court will not
> eliminate Plaintiff's future lost profits claim from the
> case at this time*. However, if after presenting its case-in-
> chief, Plaintiff has not provided "some standard" for the
> time duration component of its future lost profits damage
> models the Court will, pursuant to Fed. R. Civ. P. 50,
> eliminate this claim from the case and not permit Plaintiff
> to ask the jury for an award of future lost profits as a
> measure of damages. To reiterate, Florida law does not
> permit a plaintiff to ask a jury for future lost profits
> without "some standard" for the jury to determine the

> length of time over which future lost profits should be
> awarded.

*Id.* at 10. There is nothing left to add to Judge Barber's ruling as it fully decides this

Motion. Waterstone's attempt to reargue what was already decided in this case

should be rejected.

## LEGAL STANDARD

"In fairness to the parties and their ability to put on their case, a court should

exclude evidence *in limine* only when it is clearly inadmissible on all potential

grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010);

*see also Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL

1752843, *1 (M.D. Fla. June 18, 2007). The burden is on the movant to demonstrate

that the evidence is inadmissible. *Gonzalez*, 718 F. Supp. 2d at 1345. "Unless

evidence meets this high standard, evidentiary rulings should be deferred until trial

so that questions of foundation, relevancy, and potential prejudice may be resolved

in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 06-MD-1769, 07-CV-

15733, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the

preliminary or preemptive nature of motions in limine, 'any party may seek

reconsideration at trial in light of the evidence actually presented and shall make

contemporaneous objections when evidence is elicited.'" *Fall v. Curran*, No. 3:19-

cv-609-J-39TBT, 2021 WL 1969443, at *1 (M.D. Fla. Jan. 19, 2021).

## ARGUMENT

### I.    THE JURY MUST DECIDE THE APPROPRIATE DURATION AND AMOUNT OF MUTUAL'S LOST PROFIT DAMAGES.

#### A. So Long as Causation is Established, the Jury is Free to Determine the Amount of Damages.

The lynchpin of lost profits damages is causation; lost profits are recoverable if "the defendant's actions caused the damage" and "there is some standard by which the amount of damages may be determined." *Cedar Hills Props. Corp. v. Eastern Fed. Corp.*, 575 So. 2d 673, 677 (Fla. 1st DCA 1991) (citing *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989)); *see also Nebula Glass Intern., Inc v. Reichold*, 454 F.3d 1203, 1214 (11th Cir. 2006); *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 898-99 (Fla. 4th DCA 2007); *Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, 181 F. Supp. 3d 957, 967 (M.D. Fla. 2016). The Florida Supreme Court in *W.W. Gay* explained, "[T]he 'uncertainty which defeats recovery in such cases' is the cause of the damage rather than the amount. 'If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person.'" 545 So. 2d at 1350-51 (quoting *Twyman v. Roell*, 166 So. 215, 218 (Fla. 1936)). Thus, there must be "some standard" by which a jury could determine the amount of damages." *Id.*; *accord Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1128 (Fla. 3d DCA 2003).

In fact, Florida law provides:

> Difficulty in proving damages or uncertainty as to the amount will *not prevent recovery* as long as it is clear that substantial (rather than merely nominal) damages were suffered **as a result** of the wrong, and the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount.

*James Crystal Licenses, LLC v. Infinity Radio, Inc.*, 43 So. 3d 68, 74 (Fla. 4th DCA 2010). Notably, for causation to be found, the defendant's actions do not need to be the sole cause of the damages sought; rather, they must be a "substantial factor" in causing the lost profits. *Cedar Hills*, 575 So. 2d at 678; *Whitby*, 951 So. 2d at 898. Moreover, the plaintiff must establish the amount of damages with reasonable certainty. *Cedar Hills*, 575 So. 2d at 678; *Whitby*, 951 So. 2d at 898.

Judge Barber's prior ruling on Waterstone's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages held that Mutual's "lost profits damages calculations must still have some evidentiary support as to a time component before they can be submitted to a jury." (ECF No. 146 at 10). However, Judge Barber did not restrict the time period, nor eliminate the damages in the case. *Id.* Rather, he ruled that the evidence would be presented in Plaintiff's "*case-in-chief.*" *Id.*

Essentially, Waterstone is asking for reconsideration of this ruling, in which it has not met the required showing. To establish reconsideration, Waterstone must show one of the following: (1) an intervening change in law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or

9

(3) the need to correct clear error or manifest injustice. *Fla. Coll. of Osteopathic Med. Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). Waterstone makes no such argument and, accordingly, pursuant to Judge Barber's order, Mutual has already established that the causation evidence should be presented to the jury and that Mutual is entitled to present this evidence in its case-in-chief.

**B. There Is Substantial Record Evidence to Support a 30-month Duration of Lost Profits Damages.**

*1. Publicly Available NMLS Data of Which Waterstone Is Well Aware Demonstrates That the Branches, on Average, Would Have Remained For At Least Thirty (30) Months.*

As a mortgage lender, Waterstone is well versed with the NMLS, which, among other things, records for every company the start and termination date for its branches.[1] Waterstone – which likely utilizes the NMLS on a daily basis – cannot dispute the import of the NMLS, as it relies upon the NMLS in ECF No. 104-1. Thus, Mutual's citation to data from the NMLS in October of 2023, in support of its motion for summary judgment should have been of no surprise. (ECF No. 100 at 3, 25). And Waterstone was reminded yet again on January 30, 2024, when, in response to an identical effort to limit damages, Mutual relied upon NMLS data to support its

---

[1] This Court may take judicial notice of indisputable facts that are publicly available such as the information presented on the NMLS as create by the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (SAFE Act) pursuant to Federal Rule of Evidence 201.

damages claims. (ECF No. 131 at 24: 3-7). Such information is based on admissible, publicly available NMLS data,[2] which belies any unfair surprise argument. Indeed, in the affidavit which initially set out such evidence, a link to the website source containing the information was provided. (ECF No. 100-1, ¶ 17).

This NMLS data shows that through May 31, 2024, the average active Mutual branch that was licensed for at least twenty-four (24) months was licensed sixty-three (63) months with Mutual. Ex. B.[3] Examining the licensure date of the Tampa and Daytona branches (together, the "Florida Operations") in the NMLS shows that the Florida Operations became licensed in November and December of 2019, and remained licensed with Mutual for twenty-eight (28) and thirty-one (31) months respectively. Ex. B. Compared to the average, this means the Florida Operations departed at least 32 months short of the average duration. As Judge Barber noted on or about January 30, 2024, the average reflects that many Branches remained longer than the then-average of 51 months. (*See* ECF No. 131 at 29:22-24) ("Some are 60, some are ten years, some are ten minutes, and there's this range of duration"). Accordingly, a jury could readily conclude that such evidence supports an award equal to or exceeding thirty (30) months' damages.

---

[2] Attached as Ex. B.
[3] To arrive at the average of 63 months, Mutual took the average of the months, reflected in the "Months to May 31, 2024" column in Exhibit B.

2. *Mutual's Recent Acquisition of Keller Williams Would Allow a Jury to Conclude That the Florida Operations Would Have Exceeded the Average Duration*

Mutual's acquisition of Keller Williams in February of 2023 would have undoubtedly impacted the duration of which a branch at Mutual would remain. Indeed, Mr. Gennarelli testified to this in May of 2023, stating that one in five real estate transactions in the United States involved Keller Williams and emphasizing the impact it would have on a loan officer and branch manager tasked with selling mortgage loans. (ECF No. 132-4, 174:2-5). He estimated that Mutual's acquisition of Keller Williams would have caused the branches to stay for a much longer period, up to six or seven years. *Id.* This arises from the potential symbiotic relationship between realtors and loan officers that can lead to mutual referral relationships, particularly when combined as a unified business. So, Mutual's acquisition of Keller Williams in February of 2023 would have o if they remained for the year following the Former Managers' employment would have had the opportunity to appreciate and consider this critical relationship before being subject to improper solicitation and interference. Ultimately, the jury will decide whether the arrival of Keller Williams would have caused the average duration to increase and by how much. But such evidence exists and is appropriate for the jury to weigh.

12

       *3.  Several Applicable Agreements Prohibit Employee and Customer Solicitation for Up to Two Years, Allowing a Jury "Some Standard" for Awarding Thirty Months of Lost Profit Damages.*

As was produced in discovery and argued about extensively, the applicable employment agreements in this case support Mutual's contention that thirty months of damages is appropriate. First, the Confidentiality and Non-Solicit Agreement, signed by approximately twelve (12) loan officers, includes a two-year non-solicitation provision of both employees and customers. Confidentiality and Non-Solicitation Agreement, ¶ 3.[4] In addition, the Protective Agreement, signed by approximately forty-three (43) employees, including Manager Chris Wolf, includes a one-year non-solicitation provision of employees, customers, and referral sources. Protective Agreement, ¶¶ 3.1-3.3.[5] A jury may certainly utilize these agreements, along with the other data noted, to conclude that thirty (30) months of lost profits is appropriate.

## II.   WATERSTONE HAS BEEN WELL AWARE OF MUTUAL'S INTENT TO SEEK DAMAGES BEYOND 18 MONTHS OF LOST PROFITS.

The notion that Waterstone failed to understand Mutual's intention to seek beyond 18 months of lost profits damages is contradicted by the lengthy record in this case. Unfair surprise is not present where an issue has been heavily litigated. Where a fact or issue was raised during depositions, no unfair surprise can be

---

[4] Attached as Ex. C. For brevity, only one exemplar exhibit is attached.
[5] Attached as Ex. D. For brevity, only one exemplar exhibit is attached.

claimed. *Ramirez v. OMBS Sec. Sys. LLC*, No. 19-20216-CIV, 2021 U.S. Dist. LEXIS 210761 (S.D. Fla. Aug. 20, 2021). In addition, there is no unfair surprise where the topic has been subject to motion practice on the very issue that a party seeks to strike. For example, in *Kearney Partners Fund, LLC v. United States*, the plaintiffs argued there was unfair surprise by an expert's failure to disclose that other employees participated in the drafting of his report. No. 2:10-cv-153-FtM-37, 2013 U.S. Dist. LEXIS 195738 (M.D. Fla. Sep. 12, 2013). The Court found no unfair surprise where the plaintiffs' counsel had previously moved to strike the expert's report because of an alleged undisclosed co-author; thus, the plaintiffs were well aware of the issue. *Id.*

Waterstone expects this Court to believe that, despite complaining several times that ten years is not a reasonable duration, it never knew that Mutual intended to seek more than 18 months of lost profits damages. Certainly, Waterstone is free to cross-examine witnesses with the interrogatory response identifying 18 months, but limiting a disclosed damages period is an extreme position. *Battle v. Allstate Indem. Co.*, No. 2:20-cv-901-CWB, 2023 WL 345791, at *2 (M.D. Ala. Mar. 10, 2023) ("[T]he Court will not impose a draconian penalty of excluding [the expert's] testimony [because] [t]he rules governing expert disclosures are intended to shield litigants from unfair surprise, not to be used by opportunistic litigants as a sword to strike down witnesses whose identities and proposed testimony have been known to

14

them from the outset of the lawsuit. There is not the slightest possibility of prejudice to defendants in these circumstances, and the Court cannot endorse defendants' use of Rule 26(a)(2) as a trap for the unwary.")

Waterstone objected to the idea that Mutual was seeking up to 10 years of damages in July 2023,[6] November of 2023,[7] December 2023,[8] and February 2024.[9] Mutual's filing of a stipulation to voluntarily reduce its damages, at the Court's request to streamline and narrow the case, from a period of up to ten years to thirty (30) months cannot be used against Mutual to eliminate its damages. *Turner v. Ga. Sec'y of State*, No. 5:10-CV-187(MTT), 2011 WL 4454934, at \*1 (M.D. Ga. Sep. 23, 2011) (permitting an amendment *increasing* the amount of damages sought because no demonstrable prejudice to the defendants). Indeed, though it is correct that Mutual advocated a longer position prior to its thirty (30) month stipulation, that does not mean no evidence exists to support this time period. As set forth above,

---

[6] Waterstone asked the Court to reduce the damages to the one-year period of the non-solicitation covenant, understanding that Mutual sought more than 18 months: "[Mutual's] rebuttal expert says ten years. This Gennarelli with the 4.4 says it's 18 months." (ECF No. 101 at 28).

[7] "Mutual has no evidence that its branches would have stayed open or that the dozens of employees at three different branches in Florida and New Jersey would have continued working for Mutual for 18 months (as Gennarelli assumes) or for 10 years or more (as Rosevear assumes)." (ECF No. 104 at 6).

[8] Waterstone's oral argument: "So as the plaintiff with the burden of proof, regardless of what has happened in other cases, what evidence do you have, plaintiff, at summary judgment that it's ten years." (ECF No. 123 at 6:6-9).

[9] "A duration up to ten years as used by Rosevear is not reasonable." (ECF No. 132 at 6). Waterstone also repeated the exact quotation in footnote 7 in its Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages, filed on February 6, 2024. *Id.* at 4.

considerable evidence supports at least a 30-month duration for the application of a lost profits damages award.

### III.    THE DOLLAR AMOUNT OF DAMAGES CANNOT BE ESTABLISHED BY WATERSTONE.

Without explaining how the amount was calculated, Waterstone simply submits a one-page document displaying its assessment of the damages at issue in this case (ECF No. 166-9). The document supporting Waterstone's damages figure in the Motion contains just one sentence of explanation: "Utilize Rosevear's 18-month damages and carve out Branch Managers and Paramus Employees based on Waterstone's actual performance for the first-year post branch closing." (ECF No. 166-9 at 1-2). This document is not supported by any citation to documentary evidence, not submitted by an expert, and not explained in any detail beyond this one sentence. The document does not explain who, how, or what data was relied upon to arrive at the calculation. Essentially, it is Waterstone's belief as to the proper amount of damages. Mutual has no opportunity to cross examine the unidentified witness who would need to testify about the calculations, and their methodology or data for doing the same. Such calculation should be denied on this basis alone.

Furthermore, the Court should defer ruling on such issue until it has resolved the pending motion for reconsideration of Judge Barber's order (ECF No. 164). *Acceleron, LLC v. Dell, Inc.*, No. 1:12-cv-4123-TCB, 2020 U.S. Dist. LEXIS 257285, at *17 (N.D. Ga. Aug. 27, 2020) ("The outcome of Dell's pending motion

for reconsideration pending before the Court could affect the outcome of this motion in limine; therefore, the Court will defer ruling on this motion until it resolves the motion for reconsideration."). The pending motion for reconsideration filed by Mutual asks the Court to reconsider the elimination of the loan volume attributable to the three managers and the Paramus, New Jersey branch. (ECF No. 164 at 7-14). The motion is based on the evidence in the record that branch managers Chris Smith and Chris Wolf, while free to leave, only left because they were directly solicited by Dwayne Hutto, while he was still a Manager for Mutual at the time of the solicitation. *See id.* Moreover, all of the damages were the result of Waterstone's unlawful conduct aimed at using the managers to solicit employees and diverting confidential corporate opportunities in an effort to streamline its lift-out of the Florida Operations. As such, Waterstone's unlawful conduct is the proximate cause of the damages which should be considered by the jury.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion in its entirety.

Dated:    Washington, D.C.
          May 10, 2024

                          MITCHELL SANDLER PLLC

                          By:  */s/ Ari Karen*

                          Ari Karen (admitted *pro hac vice*)
                          Arielle Stephenson (admitted *pro hac vice*)
                          Christopher L. McCall (admitted *pro hac vice*)
                          Courtney E. Walter
                          **MITCHELL SANDLER PLLC**
                          1120 20th Street NW, Suite 725
                          Washington, D.C. 20036
                          Email:  akaren@mitchellsandler.com
                          Email:  astephenson@mitchellsandler.com
                          Email:  cmccall@mitchellsandler.com
                          Email:  cwalter@mitchellsandler.com
                          Telephone: (202) 886-5292

                          GUNSTER, YOAKLEY & STEWART, P.A.

                          John A. Schifino
                          Florida Bar No. 0072321
                          Daniel P. Dietrich
                          Florida Bar No. 934461
                          Gregory L. Pierson
                          Florida Bar No. 123905
                          **GUNSTER, YOAKLEY & STEWART, P.A.**
                          401 East Jackson Street, Suite 1500
                          Tampa, Florida 33602
                          jschifino@gunster.com
                          ddietrich@gunster.com
                          gpierson@gunster.com
                          Telephone:  (813) 228-9080

                          *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on May 10, 2024, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

/s/ Ari Karen
Ari Karen