# **<u>EXHIBIT D</u>**



## PROTECTIVE AGREEMENT
### (Non-Solicit)

This Protective Agreement ("Agreement") is made by and between MUTUAL OF OMAHA MORTGAGE, INC. and its parents, subsidiaries, affiliates, predecessors, successors and assigns (the "**Company**") and the undersigned ("**Employee**").

**WHEREAS**, the Company and Employee agree that the Company has a legitimate business interest in, among other things, its Confidential Information (defined below) and Trade Secrets (defined below), and in the significant time, money, training, team building and other efforts it expends to develop Employee's skills to assist Employee in performing Employee's duties for the Company, including with respect to establishing, developing and maintaining the goodwill and business relationships with the Company's referral sources, customers and employees, all of which Employee agrees are valuable assets of the Company to which it has devoted substantial resources;

**WHEREAS**, the Company and Employee agree that the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its referral sources, customers and employees are not generally known to the public, were developed over time and at significant cost to the Company, and are the subject of reasonable efforts of protection by the Company against disclosure to unauthorized parties;

**WHEREAS**, as part of performing Employee's duties for the Company, Employee will have access to and/or will use the Company's Confidential Information and Trade Secrets and will work with referral sources, customers and employees; and

**WHEREAS**, the Company and Employee agree this Agreement is reasonable to protect the Company against the irreparable harm it would suffer if Employee left the Company's employment (for any reason) and used its Confidential Information and Trade Secrets, and/or interfered with the goodwill and relationships the Company has in its referral sources, customers and employees.

**NOW, THEREFORE**, for good and valuable consideration, to which Employee would not otherwise be entitled without entering into this Agreement, including: (a) the promises and covenants contained in this Agreement; (b) Employee's employment or continued employment with the Company; (c) Employee's access to and use of the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its referral sources, customers and employees; (d) the specialized training the Company provides to Employee to allow Employee to perform Employee's duties for the Company; and/or (e) other good and valuable monetary consideration, the Company and Employee agree as follows (including the foregoing recitals which are expressly incorporated in this Agreement):

1.      **Disclosures**. In order to maintain Employee's confidentiality obligations and to avoid conflicts of interest which may arise, Employee will disclose (and allow the Company to disclose) to any future prospective employers the existence of this Agreement and the nature of Employee's confidentiality and restrictive covenant obligations arising from it before Employee accepts any new position of employment.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009642

## 2.    **Definitions**.

2.1    "**Confidential Information**" means information that is created and used in the Company's business and which is not generally known by the public, including but not limited to: confidential information related to (a) the internal business and structure of the Company, concepts, techniques, pricing or cost strategies and information, business plans and strategies, marketing (and advertising) plans and strategies, advertising budgets, unpublished financial information, terms of the Company's agreements or contracts (oral or written, including investors of the Company, third-party underwriters, third-party originators, etc.), supplier information, proprietary or customized software and databases; (b) the Company's records pertaining to customers (including key customer contact information), potential customers (including key contact information of anyone who applies for a mortgage with the Company or contacts the Company for mortgage needs), mortgage loan terms and related information; (c) the Company's records pertaining to Referral Sources (including key contact information), potential Referral Sources (including key contact information, amount / nature of business, etc.); and (d) personnel lists, confidential employee information and data (including information pertaining to compensation or work specialization), training, policies and procedures.  Employee specifically understands and agrees that information pertaining to borrowers or potential borrowers of the Company that Employee obtains as an employee of the Company is and shall remain the Confidential Information of the Company and shall not be used by Employee at any time, including after the Last Day (defined below), for any purpose unrelated to Employee's work for the Company.  Employee specifically understands and agrees that the term Confidential Information also includes all confidential information of a third party that may be communicated to, acquired by, learned of, or developed by Employee in the course of or as a result of Employee's employment with the Company.  Confidential Information does not include information that is or may become known to Employee or to the public from sources outside the Company and through means other than a breach of this Agreement or disclosed by Employee after written approval from the Company.

2.2    "**Competitive Product or Service**" means soliciting, selling, originating, and/or servicing a mortgage loan product.

2.3    "**Restricted Customer**" means any person(s) introduced to Employee by Company, assigned to Employee by Company, or introduced to Employee by a Referral Source whom, within twenty-four (24) months prior to the Last Day, Employee, directly or Indirectly (e.g., through employees whom Employee supervised, managed or directed): (a) provided a Competitive Product or Service, or (b) provided written proposals concerning a Competitive Product or Service.

2.4    "**Referral Source**" means any person(s) or entity introduced to Employee by Company or assigned to Employee by Company from whom Employee, directly or Indirectly received referrals.  Examples of "Referral Sources" include, without limitation: real estate agents, closing attorneys, and wealth advisors, etc.

2.5    "**Indirectly**" means (including as defined in Section 2.3) that Employee will not assist others in performing business activities that Employee is prohibited from engaging in directly under this Agreement.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

**CONFIDENTIAL**                                                                                        MOM-0009643

2.6    "**Last Day**" means Employee's last day of employment with the Company regardless of the reason for Employee's separation, including voluntary and involuntary.

2.7    "**Restricted Geographic Area**" means (a) a 30-mile radius from any Company location where Employee engaged in Material business on behalf of the Company during the twenty-four (24) months prior to the Last Day and/or (b) anywhere else Employee directly or Indirectly engaged in a Competitive Product or service on behalf of the Company or received referrals from Referral Sources during the twenty-four (24) months prior to the Last Day. "**Material**" means the Employee's primary job duties and responsibilities in connection with working with Referral Sources or Restricted Customers or directly supervising individuals who work with Referral Sources or Restricted Customers.

2.8    "**Restricted Period**" means the period of Employee's employment with the Company and a period twelve (12) months after the Last Day. Employee recognizes that this durational term is reasonably and narrowly tailored to the Company's legitimate business interest and need for protection with each position Employee holds at the Company.

2.9    "**Trade Secret**" means information defined as a trade secret under applicable state law or the Defend Trade Secrets Act of 2016.

**3.**    **Restrictive Covenants**. To protect the Company's legitimate business interests, including with respect to Employee's access to and use of the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its referral sources, customers and employees, Employee agrees that:

3.1    Non-Solicitation and Non-Inducement of Restricted Customers. During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or attempt to solicit any Restricted Customer; or (b) induce or encourage any Restricted Customer to terminate a relationship with the Company or to otherwise cease accepting services or products from the Company.

3.2    Non-Solicitation and Non-Inducement of Referral Sources. During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or attempt to solicit any Referral Source; or (b) induce or encourage any Referral Source to terminate a relationship with the Company or to otherwise cease referring customers to the Company.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009644

3.3     Non-Solicitation and Non-Inducement of Employees.    During the Restricted Period, Employee shall not directly or Indirectly: (a) solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or assist others in soliciting, recruiting or encouraging, any Company Employees or Former Employees with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information; (b) contact or communicate with Employees or Former Employees for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company or find employment or work with another person or entity; (c) provide or pass along to any person or entity the name, contact and/or background information about any Employees or Former Employees or provide references or any other information about them; (d) provide or pass along to Employees or Former Employees any information regarding potential jobs or entities or persons for which to work, including but not limited to job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications; and/or (e) offer employment or work to any Employees or Former Employees.  For purposes of this covenant, "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but were employed by or working for the Company in the six (6) months prior to the time of the attempted recruiting or hiring and/or interference.

3.4     Non-Interference of Vendors and Suppliers.    During the Restricted Period, Employee will not directly or Indirectly interfere with the Company's relationships with its vendors and suppliers in any manner that is prohibited by law.

3.5     Covenants are Reasonable.    The covenants in this section are necessary and essential to protect the Company's proprietary and confidential business information and goodwill in its Restricted Customers and employees; that the area, duration and scope of the covenants in this section are reasonable and necessary to protect the Company; that they do not unduly oppress or restrict Employee's ability to earn a livelihood in Employee's chosen profession; that they are not an undue restraint on Employee's trade or any of the public interests that may be involved; that good and valuable consideration exists for Employee's agreement to be bound by such covenants; and that the Company has a legitimate business purpose in requiring Employee to abide by the covenants set forth in this section.

3.6     Early Resolution Conference.  This Agreement is clear and enforceable as written and is executed by both parties on that basis.  However, should Employee later challenge any provision as unclear, unenforceable, or inapplicable to any competitive activity in which Employee intends to engage, Employee will notify the Company in writing and meet with the Company's representative and a neutral mediator (if the Company elects to retain one at its expense) to discuss resolution of any disputes between the parties at least fourteen (14) days before Employee engages in any activity prohibited, or foreseeably prohibited, by this Agreement.  The failure to comply with this requirement shall waive Employee's right at a later time to challenge the reasonable scope, clarity, applicability, or enforceability of the Agreement and its restrictions.  All rights of both parties will be preserved if the Early Resolution Conference requirement is complied with even if no agreement is reached in the conference.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL                                                                 MOM-0009645

4.    **Confidential Information and Trade Secrets**.

4.1    Access and Use.  Employee expressly acknowledges and agrees that, by virtue of Employee's employment with the Company and exercise of Employee's duties for the Company, Employee will have access to and will use certain Confidential Information and Trade Secrets, and that such Confidential Information and Trade Secrets constitutes confidential and proprietary business information and/or Trade Secrets of the Company, all of which is the Company's exclusive property.  Accordingly, Employee agrees that Employee will not, and will not permit any other person or entity to, directly or Indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for Company; and (c) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media.

4.2    Duration of Confidential Information and Trade Secrets.  This obligation of non-disclosure and non-use shall last so long as the information remains confidential.  Employee, however, understands that, if Employee lives and works primarily in any state  requiring a temporal limit on non-disclosure clauses, Confidential Information shall be protected for two (2) years following termination of employment (for any reason).  Employee also understands that Trade Secrets are protected by statute and are not subject to any time limits.  Employee also agrees to contact the Company before using, disclosing, or distributing any Confidential Information or Trade Secrets if Employee has any questions about whether such information is protected information.

4.3    Immunity under the Defend Trade Secrets Act of 2016.  Employee shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a Trade Secret that: (a) is made (i) in confidence to a Federal, State, or local government official, either directly or Indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  Disclosures to attorneys, made under seal, or pursuant to court order are also protected in certain circumstances under said Act.

4.4    Additional Legal Exceptions to Non-Disclosure Obligations.  Nothing in this Agreement is intended to be or will be construed to prevent, impede, or interfere with Employee's right to respond accurately and fully to any question, inquiry, or request for information regarding Employee or Employee's employment with the Company when required by legal process by a Federal, State or other legal authority, or from initiating communications directly with, or responding to any inquiry from, or providing truthful testimony and information to, any Federal, State, or other regulatory authority in the course of an investigation or proceeding authorized by law and carried out by such authority.  Employee is not required to contact the Company regarding the subject matter of any such communications before Employee engages in such communications, and nothing in this Agreement is intended to restrict Employee's legally protected right to discuss wages, hours or other working conditions with co-workers, disclose or discuss unlawful discrimination, including conduct that constitutes sexual assault, or in any way limit Employee's rights under the National Labor Relations Act or any whistleblower act.

CONFIDENTIAL

     **5.**     <u>**Return of Company Property and Confidential Information and Trade Secrets**</u>. Employee agrees upon the Last Day (or earlier if requested by the Company) to immediately return to the Company all property belonging to the Company (in electronic or hard-copy form).

     **6.**     <u>**Severability and Reformation**</u>. Should any one or more of the parts or subparts of a provision contained in this Agreement, for any reason, be held to be invalid, illegal or unenforceable in any respect in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other part or subpart of a provision of this Agreement or any other jurisdiction, but the parties agree that a court shall reform and construe this Agreement as if such invalid, illegal or unenforceable part or subpart of a provision had never been contained in this Agreement, and a court shall reform such part or subpart so that it would be valid, legal and enforceable to the maximum extent permitted in such jurisdiction. Without limiting the foregoing, the parties intend that the parts and subparts in this Agreement shall be deemed a series of separate covenants and agreements. If, in any legal proceeding, a court shall refuse to enforce all the parts and subparts, it is the intention of the parties that the remaining non-eliminated separate parts and subparts be enforced in such a proceeding.

     **7.**     <u>**Tolling**</u>. The limitations in this Agreement applicable during the Restricted Period shall be enforced by a court from the date of the last breach or violation of the applicable restriction(s) up to an equivalent period after the Last Day so that the Company receives the full benefit of Employee's promises in the restrictive covenants.

     **8.**     <u>**Relief, Remedies and Enforcement**</u>. Employee acknowledges and agrees that a breach of any provision of this Agreement by Employee will cause serious and irreparable injury to the Company that will be difficult to quantify and which may not be adequately compensated by monetary damages alone. In the event of a breach or threatened or intended breach of this Agreement by Employee, the Company shall be entitled to injunctive relief, both temporary and final, and without the need to post a bond or other security, enjoining and restraining such breach or threatened or intended breach. Employee further agrees that should Employee breach this Agreement, the Company will be entitled to any and all other legal or equitable remedies available to it, including the recovery and return of any amount paid to Employee to enter into this Agreement, the disgorgement of any profits, commissions, or fees realized by Employee, any subsequent employers, any business owned or operated by Employee, or any of Employee's agents, heirs, or assigns. Employee shall also pay the Company all reasonable costs and attorneys' fees the Company incurred because of Employee's breach of any provisions of this Agreement.

     **9.**     <u>**Entire Agreement, Amendments**</u>. Except with respect to prior written agreements between the Company and Employee relating to non-competition, non-solicitation and confidentiality (which are expressly preserved and remain in-force on their own terms), Employee agrees that this Agreement constitutes the entire agreement and understanding between the parties and supersedes any prior agreements, either oral or in writing, between Employee and the Company with respect to all matters within the scope of this Agreement. No provision of this Agreement may be modified, waived, or discharged unless such waiver, modification, or discharge is agreed to in writing and signed by Employee and the General Counsel of the Company. This Agreement shall be enforced in accordance with its terms and shall not be construed against either party.

     **10.**     <u>**Survival**</u>. All intellectual property, non-competition, non-solicitation, non-disclosure and use, non-recruiting, and disclosure obligations in this Agreement shall survive the Last Day and the termination or expiration of this Agreement, and no dispute regarding any other provisions of this Agreement or regarding Employee's employment or the termination of Employee's employment shall prevent the operation and enforcement of these obligations.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL                                           MOM-0009647

11. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which shall constitute one instrument. A signature made on a .PDF or facsimile copy of this Agreement or a signature to this Agreement transmitted by .PDF or facsimile shall have the same effect as an original signature.

12. **Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of, the parties and their respective successors and permitted assigns. Employee may not assign Employee's rights and obligations under this Agreement without prior written consent of the Company. The Company may assign this Agreement and/or its rights or obligations under this Agreement. Any and all rights and remedies of the Company under this Agreement shall inure to the benefit of and be enforceable by any successor or assignee of the Company.

13. **Governing Law**. This Agreement shall be construed and enforced in accordance with the laws of the state where Employee is domiciled on the Last Day without reference to principles of conflicts of laws. The Company and Employee agree that any disputes between them, whether relating to this Agreement or any other conflict, claim or dispute, shall be tried by a judge. The Company and Employee waive their rights to a jury trial of any dispute between them.

14. **Restrictive Covenant Riders**. Employee acknowledges and agrees that different restrictive covenants than those set forth in Section 3 above may apply to Employee's employment relationship if Employee resides or works in certain states. To the extent that Employee is domiciled or works in such a state, Employee agrees that the restricted activities set forth in Section 3, as well as any other applicable obligations set forth in this Agreement (including Section 13 above), shall be superseded only as set forth in the Rider attached hereto as Appendix A.

15. **Electronic Signature**. Employee agrees that the Company may enforce this Agreement with a copy for which Employee has provided an electronic signature, and that such electronic signature may be satisfied by procedures that the Company or a third party designated by the Company has established or may establish for an electronic signature system, and Employee's electronic signature shall be the same as, and shall have the same force and effect as, Employee's written signature. By electronically accepting this Agreement, Employee agrees to the following: "This electronic contract contains my electronic signature, which I have executed with the intent to sign this Agreement."

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement freely and voluntarily with the intention of being legally bound by it.

EMPLOYEE

By: *Chris Wolf*

Name: Christopher Wolf

Dated: 12 / 30 / 2020

MUTUAL OF OMAHA MORTGAGE, INC.

BY: _____

Name: Tim Larsen

Title: Executive Vice President _____

Dated: December 1, 2021 _____

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009648



## APPENDIX A
## STATE RIDERS THE PROTECTIVE AGREEMENT

As set forth in Section 3 of the Protective Agreement, Employee acknowledges and agrees that different restrictive covenant obligations than those set forth in Section 3 above may apply to Employee if Employee resides or works in:

California
Louisiana
Massachusetts
Nebraska
North Dakota
Oklahoma
Virginia,
Washington or
Wisconsin.

To the extent that Employee resides or works in such a state, Employee agrees that the restricted activities set forth in Section 3, as well as any other applicable obligations set forth in this Agreement, shall be superseded only as set forth in these Riders.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009649

## CALIFORNIA RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that California law applies, my signature to the Agreement is my agreement to the modifications set forth below in this California Rider.

<u>No. 1</u>:

The covenants in **Section 3 "Restrictive Covenants"** are modified in the following regard: As applicable to Section 3 only, the definition of Restricted Period is modified to mean only the period of Employee's employment with the Company.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009650

## LOUISIANA RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that Louisiana law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Louisiana Rider.

No. 1:

**Section 2.5, "Referral Source"** is stricken in its entirety.

No. 2:

The first sentence of **Section 2.8** of the Agreement is amended such that the following language solely applies: "**Restricted Geographic Area"** means the following parishes in Louisiana where Employee engaged in Material business during the twenty-four (24) months prior to the Last Day and where Employee, directly or Indirectly, engaged in a Competitive Product or Service on behalf of the Company, so long as Company continues to conduct business in said parishes: Acadia Parish, Allen Parish, Ascension Parish, Assumption Parish, Avoyelles Parish, Beauregard Parish, Bienville Parish, Bossier Parish, Caddo Parish, Calcasieu Parish, Caldwell Parish, Cameron Parish, Catahoula Parish, Claiborne Parish, Concordia Parish, DeSoto Parish, East Baton Rouge Parish, East Carroll Parish, East Feliciana Parish, Evangeline Parish, Franklin Parish, Grant Parish, Iberia Parish, Iberville Parish, Jackson Parish, Jefferson Parish, Jefferson Davis Parish, Lafayette Parish, Lafourche Parish, LaSalle Parish, Lincoln Parish, Livingston Parish, Madison Parish, Morehouse Parish, Natchitoches Parish, Orleans Parish, Ouachita Parish, Plaquemines Parish, Pointe Coupee Parish, Rapides Parish, Red River Parish, Richland Parish, Sabine Parish, St. Bernard Parish, St. Charles Parish, St. Helena Parish, St. James Parish, St. John the Baptist Parish, St. Landry Parish, St. Martin Parish, St. Mary Parish, St. Tammany Parish, Tangipahoa Parish, Tensas Parish, Terrebonne Parish, Union Parish, Vermilion Parish, Vernon Parish, Washington Parish, Webster Parish, West Baton Rouge Parish, West Carroll Parish, West Feliciana Parish, and Winn Parish.

No. 3:

Modify **Section 3.1** to read as follows: "**Non-Solicitation and Non-Inducement of Customers**." During the Restricted Period and within the Restricted Geographic Area**,** and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or attempt to solicit any Customer; or (b) induce or encourage any Customer to terminate a relationship with the Company or otherwise to cease accepting services or products from the Company.

No. 4:

**Section 3.2, "Non-Solicitation and Non-Inducement of Referral Sources"** is stricken in its entirety.

No. 5:

**Section 3.4**, "**Non-Interference of Vendors and Suppliers**" is stricken in its entirety.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009651

## MASSACHUSETTS RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement")

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that Massachusetts law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Massachusetts Rider.

No. 1:

      **Section 7** "**Tolling**" is stricken and replaced with the following:

      **7.**    **Tolling**. The limitations in this Agreement applicable during the Restricted Period shall be enforced by a court from the date of the last breach or violation of the applicable restriction(s) up to twelve (12) months after the Last Day so that the Company receives the full benefit of Employee's promises in the restrictive covenants contained in Sections 3.1, 3.2, 3.3 and 3.4 for no more and no less than the entire Restricted Period of twelve (12) months.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009652

## NEBRASKA RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that Nebraska law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Nebraska Rider.

No. 1:

The obligations under **Section 3.1 "Non-Solicitation and Non-Inducement of Restricted Customers"** are strictly limited to those current and existing Restricted Customers with whom Employee actually did business and had direct, personal contact while employed by the Company.

No. 2:

The obligations under **Section 3.2 "Non-Solicitation and Non-Inducement of Referral Sources"** are strictly limited to those current and existing Referral Sources with whom Employee did business and had direct, personal contact while employed by the Company.

No. 3:

The obligations under **Section 3.3 "Non-Solicitation and Non-Inducement of Employees"** is strictly limited to current and existing employees with whom Employee actually did business and had direct, personal contact while employed by the Company.

All other covenants, agreements and promises contained in the Agreement remain in full force and effect and still apply to Nebraska employees doing business inside and outside of Nebraska.

Page R-**5**

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009653

## NORTH DAKOTA RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that North Dakota law applies, my signature to the Agreement is my agreement to the modifications set forth below in this North Dakota Rider.

No. 1:

The covenants in **Section 3.1 "Non-Solicitation and Non-Inducement of Customers," Section 3.2 "Non-Solicitation and Non-Inducement of Referral Sources," and Section 3.4 "Non-interference of Vendors and Suppliers"** do not apply to Employee if the Employee's base location is in North Dakota.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009654

## OKLAHOMA RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that Oklahoma law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Oklahoma Rider.

No. 1:

**Section 3.1 "Non-Solicitation and Non-Inducement of Restricted Customers"** is amended such that the following language solely applies:

Employee covenants and agrees that for a period of twelve (12) months after employment with Company ends (for any reason), Employee will not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the Company.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009655

## VIRGINIA RIDER

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement (the "Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency of which I acknowledge), to the extent that Virginia law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Virginia Rider.

No. 1:

      Section 3.1, "**Non-Solicitation and Non-Inducement of Restricted Customers**," shall be stricken in its entirety if Employee qualifies as a "low-wage employee" pursuant to Virginia Code § 40.1-28.7:7(A), meaning that Employee earns less than the average weekly wage of the Commonwealth as determined pursuant to subsection B of Virginia Code § 65.2-500.

No. 2:

      If Employee is not a "low-wage employee," as defined above, **Section 2.8**, "**Restricted Geographic Area**," shall be amended to read as follows:

      "**Restricted Geographic Area**" means a 25-mile radius from any Company location where Employee physically worked and engaged in Material business during the twenty-four (24) months prior to the Last Day and where Employee, directly or Indirectly, engaged in the sale or provision of a Competitive Product or Service on behalf of the Company or received referrals from referral Sources. "**Material**" means the Employee's primary job duties and responsibilities in connection with working with Referral Sources or Restricted Customers or supervising individuals who work with Referral Sources or Restricted Customers.

No. 3:

      If Employee is not a "low-wage employee," as defined above, nothing in **Section 3.1**, "**Non-Solicitation and Non-Inducement of Restricted Customers**," shall restrict Employee from providing Competitive Products or Services to a Restricted Customer if Employee does not initiate contact with or solicit the Restricted Customer.

No. 4:

      **Section 3.3**, "**Non-Solicitation and Non-Inducement of Employees**," shall be amended to read as follows:

      Non-Solicitation and Non-Inducement of Employees. During the Restricted Period, Employee shall not directly or Indirectly:

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL                                                                                     MOM-0009656

(a) solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or assist others in soliciting, recruiting or encouraging, any Company Employees or Former Employees (defined below) with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information for the purpose of leaving the Company to work for a Competitor or to otherwise engage in the sale or provision of Competitive Products or Services;

(b) contact or communicate with Company Employees or Former Employees for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company to work for a Competitor or to otherwise engage in the sale or provision of Competitive Products or Services;

(c) provide or pass along to any person or entity the name, contact and/or background information about any Company Employees or Former Employees or provide references or any other information about them if the purpose of such actions is to assist Company Employees or Former Employees with leaving the Company to work for a Competitor or to otherwise engage in the sale or provision of Competitive Products or Services;

(d) provide or pass along to Company Employees or Former Employees any information regarding potential jobs or entities or persons for which to work, including but not limited to job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications if the purpose of such actions is to assist Company Employees or Former Employees with leaving the Company to work for a Competitor or to otherwise engage in the sale or provision of Competitive Products or Services; and/or

(e) offer employment or work to any Company Employees or Former Employees if the purpose of such offer is to assist Company Employees or Former Employees with leaving the Company to work for a Competitor or to otherwise engage in the sale or provision of Competitive Products or Services.

For purposes of this Section 3.3, the term "Company Employees" shall refer to any person who Employee knows (or reasonably should know) is employed by the Company. "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but who Employee knows (or reasonably should know) were employed by or working for the Company in the six (6) months prior to the time of the attempted recruiting or hiring and/or interference.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009657

## **WASHINGTON STATE RIDER**

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that Washington state law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Washington State Rider.

<u>No. 1</u>:

If any of the restrictions in **Section 3 "Restrictive Covenants"** is or is deemed to be a noncompetition covenant under applicable law, it shall only spring into effect and be enforceable when Employee earns, on an annualized basis, earnings sufficient to meet the minimum earnings requirements under Washington law for the enforcement of noncompetition covenants.

<u>No. 2</u>:

**Section 3.1 "Non-Solicitation and Non-Inducement of Restricted Customers"** is amended such that the following language solely applies:

> During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly solicit any Restricted Customer to cease or reduce the extent to which it is doing business with the Company.

**Section 3.3 "Non-Solicitation of and Non-Interference with Employees"** is amended such that the following language solely applies:

> During the Restricted Period, Employee shall not directly or Indirectly: (a) solicit, or by assisting others in soliciting, any Company employees with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information ("Employees") including by contacting Company employees for the purpose of soliciting them to terminate their employment with the Company.  For absence of doubt, this Section also prohibits soliciting Employees to terminate their employment by providing them job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications; and/or an offer employment or work to Employees.

<u>No. 3</u>:

**Section 7 "Tolling"** is amended to change "twenty-four (24) months after the Last Day" to "eighteen (18) months after the Last Day."

<u>No. 4</u>:

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009658

The first sentence of **Section 13 "Governing Law"** is changed to read as follows:

> This Agreement shall be construed and enforced in accordance with the laws of the state where Employee is domiciled on the Last Day without reference to principles of conflict of laws or Washington state law if Employee was Washington-based during Employee's employment.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL

MOM-0009659

## <u>WISCONSIN RIDER</u>

Capitalized terms used but not defined in this Rider shall have the respective meanings ascribed to such terms in the Protective Agreement ("Agreement").

In connection with my new or continuing employment with Mutual of Omaha Mortgage, Inc. (or one of its subsidiaries or affiliated companies) (the "Company") and for other good and valuable consideration (the receipt and sufficiency all of which I acknowledge), to the extent that Wisconsin law applies, my signature to the Agreement is my agreement to the modifications set forth below in this Wisconsin Rider.

<u>No. 1</u>:

**Section 3.1 "Non-Solicitation and Non-Inducement of Customers"** is replaced with the following:

3.1    <u>Non Solicitation and Non-Inducement of Restricted Customers</u>.  During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or attempt to solicit any Restricted Customer with a purpose of attempting to sell or selling a Competitive Product; or (b) induce or encourage any Restricted Customer to terminate a relationship with the Company or otherwise to cease accepting services or products from the Company in order to replace that relationship with one in which a Competitor would sell the Restricted Customer Competitive Products or Services about which Employee has Confidential Information or Trade Secrets.

<u>No. 3</u>:

**Section 3.2 "Non-Solicitation and Non-Inducement of Referral Sources"** is replaced with the following:

3.2    Non-Solicitation and Non-Inducement of Referral Sources.  During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly solicit or attempt to solicit any Referral Source for the purpose of establishing a relationship with a Competitor.

<u>No. 4</u>:

**Section 3.3 "Non-Solicitation and Non-Inducement of Employees"** is replaced with the following:

3.3    <u>Non-Solicitation and Non-Inducement of Employees</u>.  During the Restricted Period, Employee shall not, directly or indirectly, without the prior written consent of the Company, solicit, or assist others in soliciting any Key Employee of the Company to terminate his or her employment with the Company in order to provide Key Services for a Competitor.  "<u>Key Employee</u>" means any person who is: (a) employed by the Company, and is either someone with whom Employee had material contact with and obtained Confidential Information about which Employee could exploit to persuade the Key Employee to leave his or her employment with the Company, or was supervised by Employee during the twelve (12) months immediately preceding the Last Day, and (b) is a manager, officer, director, or executive of the Company; and/or is in possession of Confidential Information and/or Trade Secrets of the Company that could cause the Company competitive damage if used on behalf of a Competitor.  "Key Services" means services of the type performed by the Key Employee for the Company during the final twelve (12) months preceding the termination of Key Employee's employment and in which the Key Employee would inevitably use the Company's Confidential Information or Trade Secrets to compete with the Company, but shall not include clerical or menial duties.

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL                                                                                      MOM-0009660

No. 5:

**Section 4.2 "Duration of Confidential Information and Trade Secrets"** is modified by adding the following after the last sentence:

To the extent the restrictions on the unauthorized use and disclosure of Confidential Information and the other restrictions set forth above apply to information that is not a Trade Secret, those obligations shall apply only for two years after Employee's Last Day and only in geographic areas where the unauthorized use or disclosure of such information or interests could competitively harm the Company. Nothing in this Agreement shall be construed to limit or otherwise affect the rights of the Company to protect its Confidential Information or Trade Secrets independent of this Agreement under statutory or common law.

No. 6:

**Section 6 "Severability and Reformation"** is modified by adding the following after the last sentence:

The restrictive covenants in Sections 3 and 4 of this agreement are intended to be divisible and interpreted and applied independent of each other.

No. 7:

**Section 7 "Tolling"** is stricken in its entirety and shall not apply.

43353598.1

Doc ID: c7db2cc54438f6de8283cc0df73fd249559075bc

CONFIDENTIAL    MOM-0009661