# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MUTUAL OF OMAHA
MORTGAGE, INC.,

       Plaintiff,               CASE NO.: 8:22-cv-1660-UAM

v.

WATERSTONE MORTGAGE
CORPORATION,

       Defendant.

_____/

## <u>JOINT PRE-TRIAL STATEMENT</u>

Pursuant to Local Rule 3.06 and the Court's Case Management and Scheduling Order (D.E. 34), Plaintiff, Mutual of Omaha Mortgage, Inc. ("Plaintiff" Or "Mutual"), and Defendant, Waterstone Mortgage Corporation ("Defendant" or "Waterstone") (together with Mutual, "the Parties"), respectfully submit this Joint Pretrial Statement (the "Statement") regarding the jury trial scheduled to commence June 3, 2024.

Given the pending motions before this Court, the parties respectively reserve their rights to make such amendments and file this pre-trial without waiver to amendments or positions that may be adopted, modified, or included based upon such rulings by this Court. It is further agreed that the parties may propose

modifications to this Statement, and the attached exhibits, for good cause and subject to the Court's approval.

## I.   **STATEMENT OF JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 1367(a).  The Parties do not contest this Court's jurisdiction.

## II.   **CONCISE STATEMENT OF THE NATURE OF THE ACTION**

This case is based on the departure of two of Mutual's branch offices in Tampa and Daytona, Florida. The former employees and their branch managers left Mutual and joined Waterstone, with a group of employees leaving Mutual's Daytona Branch on April 15, 2022, additional employees, including the Branch Managers, leaving the Daytona Branch on April 26, 2022 and additional employees, including the Branch Managers leaving the Tampa Branch on June 15, 2022. Mutual brought suit against Waterstone in July, 2022 alleging that in concert with and acting through Mutual's Branch Managers in Daytona and Tampa, Waterstone engaged in unlawful actions including misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Claim I), misappropriation of trade secrets under the Florida Trade Secrets Act (Claim II), tortious interference with contract (Claim III), and aiding and abetting breach of fiduciary duty (Claim IV).

Waterstone denies any wrongdoing and denies Mutual has established its alleged damages. Waterstone alleges it was free to recruit and hire the Branch Managers, as well as the additional at-will employees that moved with the Branch Managers and sought employment with Waterstone.

***Note:*** Mutual has a pending motion for reconsideration as the order excluding certain damages. If the court grants the motion, the below Section may require revision to include necessary facts to support such damages that are presently excluded. (*Proposed by Mutual*).

## III.    CONTENTIONS OF THE PARTIES

### A. Plaintiff's Statement of its Position

Mutual seeks to hold Waterstone liable for its orchestrated scheme that resulted in the total destruction of Mutual's business operations in the State of Florida ("Mutual Florida").  Waterstone facilitated, assisted and encouraged three of Mutual's then-branch managers—Christopher Smith, Dwayne Hutto, and Christopher Wolf (collectively, the "Departed Managers")—to utilize their access to Mutual's proprietary information and the position of trust and authority over the employees they supervised to lift-out the entirety of Mutual Florida Operations to Waterstone. The theft of the Florida Operations was possible due to the wrongful acts of the Departed Managers – which Waterstone facilitated, incentivized, and encouraged to move all aspects of the operation – staff, confidential information, and management simultaneously and seamlessly allowing business to continue virtually uninterrupted, avoiding the typical risks and challenges associated with any

typical job change. Moreover, by diverting loans and information, Waterstone avoided significant barriers to job changes in a commissioned sales environment because employees would not lose a pipeline of pending loans and would not lose access to customer lists that would facilitate the procurement of future customers. The diversion of business opportunities and the misappropriation of trade secrets were used to fund the transition of the business and eliminate naturally barriers to job changes for commissioned staff reliant on Mutual's trade secrets for continued business opportunities. All of this was done in a premeditated fashion, with full awareness of and complete indifference to the wrongful nature of the Departed Managers' conduct. All of these wrongful actions aided, abetted, and adopted by Waterstone facilitated the theft of Mutual's Florida Operations that would not have occurred but for the combination of these tortious and wrongful activities. As a result Mutual is entitled to lost profits from the Branches, punitive damages, attorney's fees, and/or exemplary damages under the Defend Trade Secrets Act and Florida Uniform Trade Secrets, as well as pre and post-judgment interest.

**<u>Note</u>**: Mutual has a pending motion for reconsideration as the order excluding certain damages. If the court grants the motion, the below Section may require revision to include the necessary facts to support such damages that are presently excluded. (*Proposed by Mutual*).

### B. Defendant's Statement of its Position

Waterstone has done nothing wrong. It hired the branch managers of Mutual's Daytona and Tampa offices who were unhappy at Mutual and had been

vetting several alternate employers for months due to Mutual's inability to timely close loans; inadequate products, support, and resources; and frustration with Mutual's leadership. When the managers resigned, most of the branch employees they have worked with for years followed the managers to Waterstone. This is natural because the branches have moved together in the past—including to Mutual—and the managers have positive personal and professional relationships with the employees who work for them. In addition, the managers have operated from the Daytona and Tampa offices for years. They hold the lease for the office space, cover all expenses, and independently run the branches. Most branch employees have no personal relationship with Mutual's leadership. While the managers affiliated with Mutual for a time, they had the right to affiliate with a different lender. Doing so does not mean that Waterstone engaged in wrongdoing. It simply means employees saw the benefit of changing employers, as they have done a number of times in the past.

Mutual took no discovery as to the branch employees to understand the reasons they resigned. Mutual's corporate representative testified at length about the transient nature of the mortgage industry, admitting that it is not uncommon for an entire branch of employees to transition to another company and that, in fact, the same employees in this case had previously followed their branch managers to

Mutual. Yet, Mutual made no effort to understand the manager-employee relationship or to ask the employees why they resigned.

The branch employees, including top producers, will testify they left Mutual for a host of reasons including their personal friendships and relationships with the branch managers as well as an adverse view of a future at Mutual. One top producer even resigned shortly *before* the managers disclosed their departure because the employee was frustrated with Mutual's inability to timely close loans. Mutual unquestionably caused the employee's departure, not the managers or Waterstone.

Further, two of the three branch managers mutual contends engaged in wrongdoing, Chris Smith and Dwayne Hutto, have non-solicits that are unenforceable because their Mutual employment agreements are governed by California law.

Furthermore, Waterstone did not seek borrower data from Mutual and explicitly instructed employees in its offer letters not to use or take confidential, proprietary or trade secret information belonging to Mutual. Mutual's corporate representative admitted Mutual does not have any evidence Waterstone used any "confidential" information or caused any losses to Mutual. And, with respect to whether any of the allegedly appropriated borrower information resulted in a loan closed for Waterstone, Mutual's second corporate representative and human

resources director admitted she cannot speak to the specifics of individual loan follow-through at Waterstone, and Mutual has never articulated a damage demand associated with diverted loans.

### IV.   LIST OF EXHIBITS

Pursuant to the Court's April 10, 2024 e-mail to counsel, the Parties will file their exhibits lists in CMECF by May 24, 2024, and provide a USB thumb drive containing the pre-marked exhibits.

The Parties stipulate to the authenticity of exhibits to the extent a document was produced in discovery. There is no need for a records custodian to establish facts necessary for admission. By this stipulation, the parties do not waive other objections to admissibility.

### V.   LIST OF WITNESSES

Pursuant to the Court's April 10, 2024 e-mail to counsel, the Parties will file their respective fact and expert witness lists in CMECF by May 24, 2024.

The Parties agree to treat the opposing party's employees or representatives as adverse witnesses for purposes of cross-examination.

Counsel shall use best efforts to provide notice of the witnesses expected to testify at least one day in advance of the witnesses' testimony.

## VI.    THE TYPE AND AMOUNT OF MONETARY DAMAGES

### A. Plaintiff's Position

For each of the four claims at issue in Plaintiff's Amended Complaint, Plaintiff intends to seek its lost profit damages of approximately $4.15-$4.38 million dollars associated with the closure of Mutual Florida's operations as a result of Waterstone's wrongdoing.

With respect to Plaintiff's misappropriation claims, Plaintiff also intends to seek exemplary damages as to all of the misappropriation claims for which Defendant is found liable.  If a jury were to find Plaintiff successful on at least *one* of its trade secrets for which Mutual claims Waterstone misappropriated, Plaintiff will potentially be entitled to approximately $9 million in damages under the exemplary damages provisions of the Defend Trade Secrets Act and Florida Uniform Trade Secrets Act. In addition, Mutual has a claim for punitive damages arising out the intentional and negligent conduct of Waterstone for its willful and malicious misappropriation of trade secrets.

Plaintiff also seeks pre and post judgment interest, costs and attorneys' fees.

**<u>Note:</u>** Mutual has a pending motion for reconsideration as the order excluding certain damages. If the court grants the motion, the below Section may require revision to include the necessary information to support such damages that are presently excluded. (*Proposed by Mutual*).

**B. Defendant's Position**

a. *Lost Profit Damages Based on Branch Departures*.

Mutual's maximum lost profit damages are far less than $4.15-$4.37 million. Judge Barber's March 29, 2024 decision that Mutual cannot include profits attributable to its former branch managers or the Paramus branch employees in its lost profit damages translates to Mutual seeking a *maximum* of $2,093,535. Waterstone has moved for an order establishing Mutual's maximum potential lost profit damages, and excluding any evidence related to lost profit damages based on a duration greater than 18 months ($1.2 million) because that is the only duration Mutual identified in discovery.

Further, Judge Barber held Mutual has not identified any evidence to support any duration of lost profit damages:

> In their lost profits analyses, both Gennarelli and Rosevear [Mutual's damages witnesses] appear to assume that the Tampa and Daytona branches would have otherwise continued operating into perpetuity but for Defendant's alleged misconduct. Neither Gennarelli nor Rosevear point to an objective factor or reason for the time periods over which they projected future lost profits – 18 months and 10 years, respectively.
>
> Although both Gennarelli and Rosevear appear to be qualified to render damages opinions, their opinions are suspect because they do not identify any evidentiary support for the time duration included in their opinions.
>
> ***
>
> There certainly might be evidence in the case that Gennarelli and Rosevear could rely upon, beyond their own speculative opinions, to establish a time component. **However, it is not clear that Plaintiff**

**has identified any such evidence on this specific point.** The durational aspect of lost profits is not simply a question of fact for the jury – there must be some evidence to create an issue of fact for the jury to determine.

DE 146 at 9-10 (bold emphasis added). Judge Barber further held that "if after presenting its case-in-chief, Plaintiff has not provided 'some standard' for the time duration component of its future lost profits damage models, the Court will, pursuant to Fed. R. Civ. P. 50, eliminate this claim from the case and not permit Plaintiff to ask the jury for an award of future lost profits as a measure of damages." (*Id*. 10-11.) Mutual produced no evidence to satisfy the Court's requirement and, as such, Waterstone expects a directed verdict on lost profit damages.

### b. *Lost Profit Damages Based on Allegedly Diverted Loans*.

With respect to any allegedly diverted loan damages, Mutual has never articulated a damage demand and should not be permitted to introduce one for the first time at trial. As such, Waterstone maintains these damages are no longer a part of the case. Waterstone will file a motion *in limine* in this regard.

### c. *Trade Secret Misappropriation Damages*.

Mutual's expectation that it is entitled to approximately $9 million in treble damages is baseless. First, Mutual still cannot articulate with certainty what its alleged trade secrets even are. Second, Mutual has never asserted a damage demand based on alleged trade secret misappropriation – let alone a demand based on actual loss, unjust enrichment, or a reasonable royalty as permitted under the applicable

statutory framework. Third, Mutual cannot establish willful and malicious misappropriation of trade secrets such that exemplary damages are even available. Fourth, even if Mutual could establish willful and malicious misappropriation, because Mutual seeks *no damages* for trade secret misappropriation there is nothing on which a jury could base an award of exemplary damages, which cannot exceed an amount 2 times the damages awarded for actual loss, unjust enrichment, or as a reasonable royalty.

## VII.    DEPOSITION DESIGNATIONS

The Parties do not anticipate using deposition designations at trial, other than for purposes of impeachment, but reserve the right to designate deposition testimony in good faith if necessary and with advance notice to the non-designating party.

## VIII.    CONCISE STATEMENT OF EACH ADMITTED FACT

1.    Mutual is a residential mortgage lender and a Delaware corporation with its principal place of business at 3131 Camino Del Rio North, Suite 1100, San Diego, California, 92108.

2.    Waterstone is a residential mortgage lender with its principal place of business at N25W23255 Paul Road, Pewaukee, Wisconsin, 53072.

3.    Mutual previously operated branches located in Tampa and Daytona, Florida, and Paramus, New Jersey.

4.    From December 2018 until April 2022, Dwayne Hutto served as the

branch manager of Mutual's Daytona Branch.

5.    From December 2018 until April 2022, Christopher Wolf served as the co-branch manager of Mutual's Daytona Branch.

6.    From December 2018 until June 2022, Christopher Smith served as the branch manager of Mutual's Tampa and Paramus branches.

7.    From December 2018 until June 2022, John Utsch served as the co-branch manager of Mutual's Tampa and Paramus branches.

8.    On April 15, 2022, a group of employees resigned from Mutual to accept employment with Waterstone.

9.    On the evening of April 26, 2022, additional employees of Mutual resigned at the same time as Mr. Wolf and Mr. Hutto and joined Waterstone.

10.    On the evening of June 15, 2022, another group of employees of Mutual resigned at the same time as Mr. Smith and Mr. Utsch and joined Waterstone.

11.    During their employment, each of the Departed Managers were subject to a written employment agreement ("Employment Agreements") with Mutual.

12.    The Employment Agreements contained (i) loan originator duties; (ii) standards of conduct; (iii) policies; (iv) employees' duty of loyalty and certain prohibitions; (v) clauses pertaining to the non-solicitation of employees and customers; and (vi) a prohibition against the sharing of Mutual's confidential information.

## IX.    CONCISE STATEMENT OF EACH AGREED PRINCIPLE OF LAW

### Principles of Law Applicable To The Trade Secret Misappropriation Claims

a) To prevail on its claims for trade secret misappropriation under the DTSA and the FUTSA, Mutual must prove: (1) it possessed a trade secret, and (2) the trade secret was misappropriated.

b) Information is considered a "trade secret" if it (a) is the subject of reasonable measures to maintain its secrecy, and (b) derives independent economic value from not being generally known or readily ascertainable by proper means by other persons who can obtain economic value from the disclosure or use of such information.

c) A party establishes "misappropriation" under the DTSA and FUTSA if it proves (1) acquisition of a trade secret by someone who knows or has reason to know the trade secret was acquired by improper means; (2) disclosure of a trade secret without the owner's consent; or (3) use of the trade secret without the owner's consent.

### Principles of Law Applicable to the Tortious Interference with Contract Claim

a) In Florida, the elements of tortious interference with a contractual relationship are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach.

### Principles of Law Applicable to the Aiding and Abetting Breach of Fiduciary Duty Claim

a) To prove such a claim under Florida law, a plaintiff must establish (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of wrongdoing.

## Principles of Law Applicable To All Claims *(Proposed by Mutual only)*

a) In order to establish that someone was an acting within the scope of their agency, the Plaintiff must show that (1) the agent was performing the kind of activity they were directed to perform; (2) the activity was being performed substantially within the time and space limits of their agency; and (3) the performance of the activity was motivated, at least in part, to further the principal's interests. *(Proposed by Mutual only)* [1]

b) If an agent acts to serve his or her own interest as well as the principal, as long as there is an intent to serve principal's interests, the agent acts within the scope of his agency with the company. This is so even if the agent's intent to serve his own interest is greater than his intent to serve the company's interests. *(Proposed by Mutual only)*

c) A corporation is legally responsible for any act or omission approved by the corporation. A corporation may subsequently ratify its agent's act, even if originally unauthorized if the Plaintiff shows that the corporation either expressly approved the act or engaged in conduct that is consistent with approving the act; and had full knowledge of all material facts. *(Proposed by Mutual only)*

## Principles of Law Applicable to Damages

a) To recover damages in contract or tort, a plaintiff must prove the defendant's actions proximately caused the alleged damage and provide some standard by which the amount of damages may be adequately determined.

b) Lost profit damages, like all damages, cannot be speculative and must be proved with reasonable certainty.

c) The plaintiff does not need to show the precise amount of damages so long as the trier of fact can arrive at an intelligent estimate without

---

[1] The Parties agree that the principles and issues listed in Sections IX and X, respectively, are not exhaustive and do not encompass *every* principle or issue that may be applicable to this case. The Parties have noted where a principle or issue is proposed by one party only, without waiving any rights to raise additional principles of law or issues of fact at trial.

speculation or conjecture. (*Proposed by Mutual*.)

d) If the trade secret is willfully and maliciously misappropriated, an award of up to two (2) times the amount of compensatory damages is appropriate. (*Proposed by Mutual*.)

e) Punitive damages are proper where the defendant was personally guilty of intentional misconduct or gross negligence, based on clear and convincing evidence. "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct. (*Proposed by Mutual*.)

## X.   CONCISE STATEMENT OF EACH ISSUE OF FACT WITHOUT INCORPORATING ANOTHER PAPER

### Issues of Fact Regarding the Trade Secret Misappropriation Claims

a) Did Mutual possess information that satisfies all elements required for status as a trade secret:

i. Is the information not generally known to another who can obtain economic value from the disclosure or use of the information?

ii. Is the information not readily discoverable through proper means?

iii. Does the information derive independent economic value, actual or potential, form not being known to, and not being readily ascertainable through proper means by, another who can obtain economic value from the disclosure or use of the information?

iv. Has Mutual has taken reasonable steps to keep its alleged trade secrets secret?

b) Do Mutual's trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce? (*Proposed by Waterstone.*)

c) Did Waterstone misappropriate Mutual's trade secrets (which turns on the below questions of fact):

i. Did Waterstone acquire, disclose, or use the Mutual's trade secrets without Mutual's consent?

ii. Did Waterstone know, or should Waterstone have known, that Mutual's alleged trade secrets were (i) derived from or through a third person who used improper means to acquire the trade secret; (ii) acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secret; or (iii) derived from or through a third person under a duty to maintain the secrecy of or limit the use of the trade secrets?

d) What amount of royalty or unjust enrichment damages, if any, should Waterstone pay Mutual as compensation for misappropriation of Mutual's trade secrets? (*Proposed by Waterstone.*)

e) If the Court decides exemplary damages should go to the jury: Was Waterstone's misappropriation of Mutual's trade secrets willful and malicious? (*Proposed by Waterstone.*)

f) Did Waterstone willfully or maliciously misappropriate any of Mutual's trade secrets? (*Proposed by Mutual.*)

**Note:** Waterstone has a pending motion for summary judgment as to the trade secret misappropriation claims. If the Court denies the motion, the below fact issues may be at issue. Waterstone does not concede these issues should be presented to the jury or waive its pending motion. (*Proposed by Waterstone.*)

**Issues of Fact Regarding the Tortious Interference with Contract Claim**

a) Did Mutual have enforceable contracts with the Departed Managers?

b) Did Waterstone have knowledge of Mutual's contracts with the Departed Managers and/or Former Employees?

c) Did Waterstone intentionally interfere with Mutual's rights under its contracts with the Departed Managers and/or Former Employees?

  i. Did Waterstone act unjustifiably in interfering with Mutual's contracts? (*Proposed by Waterstone.*)

  ii. Was Waterstone's interference justified or privileged? (*Proposed by Waterstone.*)

d) Did Waterstone's interference cause Mutual to lose profits?

  iii. Has Mutual established the amount of lost profits with reasonable certainty? (*Proposed by Waterstone.*)

  iv. What amount of lost profits, if any, did Mutual prove to a reasonable degree of certainty were caused by Waterstone's interference? (*Proposed by Waterstone.*)

e) Did Waterstone act with intentional misconduct or gross negligence? (*Proposed by Mutual.*)

**Issues of Fact Regarding the Aiding and Abetting Breach of Fiduciary Duty Claim**

a) Did the Departed Managers owe fiduciary duties to Mutual?

b) Did the Departed Managers breach fiduciary duties owed to Mutual?

c) Did Waterstone have knowledge of the Departed Managers' breaches of fiduciary duties?

d)  Did Waterstone substantially assist or encourage the Departed Managers in breaching their fiduciary duties?

e)  Did Waterstone's aiding and abetting a breach of fiduciary duty cause Mutual to lose profits?

f)  Did Waterstone act with intentional misconduct or gross negligence? (*Proposed by Mutual*.)

g)  Did Mutual establish lost profits with reasonable certainty? (*Proposed by Waterstone*.)

h)  What amount of lost profit, if any, did Mutual prove to a reasonable degree of certainty were caused by Waterstone's aiding and abetting a breach of fiduciary duty? (*Proposed by Waterstone*.)

### Issues of Fact Applicable to All Claims (*Proposed by Mutual*)

a)  Were the Departed Managers acting for the benefit of Waterstone when they engaged in the conduct complained of? *(Proposed by Mutual)*

b)  Did Waterstone subsequently ratify the acts of the Departed Managers by condoning their wrongful conduct? *(Proposed by Mutual)*

**Note:** Mutual has a pending motion for reconsideration as the order excluding certain damages. If the court grants the motion, the below Section may require revision to include the necessary information to support such damages that are presently excluded. (*Proposed by Mutual*).

## XI.   CONCISE STATEMENT OF EACH ISSUE OF LAW WITHOUT INCORPORATING ANOTHER PAPER

The parties anticipate the Court will resolve all issues of law by way of the pending and contemplated motions in Section XII.

## XII.  A LIST OF EACH PENDING MOTION OR OTHER UNRESOLVED ISSUE

The following Motions brought by Mutual remain unresolved:

- Mutual of Omaha Mortgage, Inc.'s Motion for Reconsideration of Court's Order on Waterstone Mortgage Corporation's Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages (Doc. 164);

- Mutual's *Motion in Limine* to Exclude portions of Mr. Brian Tomalak's Deposition Transcript for the Purposes of Impeachment (yet to be filed);

- Mutual's *Motion in Limine* to Exclude testimony of former employees' job satisfaction while employed at Mutual (yet to be filed).

- Mutual's *Motion in Limine* to Exclude evidence of breach of contract by Mutual (yet to be filed).

- Mutual's *Motion in Limine* to Exclude evidence of failure to mitigate damages (yet to be filed).

The following Motions brought by Waterstone remain unresolved:

- Waterstone Mortgage Corporation's Motion for Summary Judgment on Mutual of Omaha Mortgage Inc.'s Trade Secret Claims (Doc. 137);

- Waterstone's *Motion in Limine* to Exclude Evidence Related to Damages (Doc. 166);

- Waterstone's *Motion in Limine* to Exclude Testimony From Candice Rosevear in Mutual's Case in Chief (Doc. 170);

- Waterstone's *Motion in Limine* to Exclude Evidence of Solicitation By Dwayne Hutto or Chris Smith (yet to be filed);

- Waterstone's Motion in Limine to Exclude Evidence of Diverted Loan Damages (yet to be filed).

XIII.  <u>**STATEMENT OF THE USEFULNESS OF FURTHER SETTLEMENT DISCUSSIONS**</u>

The Parties have engaged in settlement discussions to date, and plan to continue settlement discussions in good faith prior to trial. Specifically, the Parties anticipate additional settlement discussions will take place following the pre-trial conference having had the benefit of the Court's rulings on numerous pending motions.

XIV.  <u>**SIGNATURES OF TRIAL COUNSEL**</u>

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Dated:      May 10, 2024.

MITCHELL SANDLER LLC

*/s/ Ari Karen*
Ari Karen (admitted *pro hac vice*)
Christopher L. McCall (admitted *pro hac vice*)
Courtney E. Walter (admitted *pro hac vice*)
Arielle Stephenson (admitted *pro hac vice*)
1120 20th Street N.W., Suite 725
Washington, D.C.  20036
akaren@mitchellsandler.com
cmccall@mitchellsandler.com
cwalter@mitchellsandler.com
astephenson@mitchellsandler.com
 (202) 886-5292

GUNSTER, YOAKLEY & STEWART, P.A.
John A. Schifino
Florida Bar No. 0072321
Daniel P. Dietrich
Florida Bar No. 934461
Gregory L. Pierson
Florida Bar No. 123905
401 East Jackson Street, Suite 1500
Tampa, Florida 33602
jschifino@gunster.com
ddietrich@gunster.com
gpierson@gunster.com
Telephone:  (813) 228-9080

*Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc*

GODFREY & KAHN, S.C.

*/s/Maria L. Kreiter*
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkin (pro hac vice pending)
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com
(414) 287-9466

HILL, WARD & HENDERSON, P.A.
Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com
(813) 221-3900

*Attorneys for Defendant Waterstone Mortgage Corporation*

31191429.1