IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>          Plaintiff,<br>v.<br>WATERSTONE MORTGAGE CORPORATION,<br><br>          Defendant. | CASE NO. 8:22-cv-01660-UAM |

**WATERSTONE'S RESPONSE TO MUTUAL'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER ON DAMAGES**

**I.   INTRODUCTION**

Each of the arguments raised in Mutual's motion for reconsideration were either argued at length already or never previously raised and barred for that reason. Mutual's alleged lost profit damages, including damages based on production of the branch managers and the Paramus branch, have been the Court's sole focus for the past year. Even Mutual admits these issues have been "heavily litigated." Mutual does not identify any change in controlling law, new evidence, or manifest errors of law or fact. Rather, Mutual raises the same arguments the Court rejected in an attempt to relitigate the damage issues it lost. Trial is set to begin in three weeks and Mutual does not get a do over.

## II. RELEVANT BACKGROUND

Mutual's lost profit damages have been the focus of numerous motions and argument for close to a year. Waterstone first brought the damage issues to the Court's attention on July 6, 2023, in its motion in *limine* to exclude certain categories of damages. (*See* DE 72.) On July 27, 2023, the Court denied the motion without prejudice, but thanked Waterstone for bringing the damage issues to the Court's attention and suggested Waterstone refile the motion at a later time. (Exhibit 1 (July 27, 2023 Hearing Transcript) 4:6-16, 54:1-10.) At the July 27th hearing, the parties discussed damages at length. Counsel for Mutual acknowledged the branch managers did not have a noncompete, but argued the managers took confidential information and solicited employees. (*Id.* at 12:7-12.) The Court, at that time, made clear it understood Mutual's position: "I understand. I get all that. Okay. So there's not a noncompete. So they're allowed to go work for the other side." (*Id.* at 12:18-20.)

At a case management conference on August 23, 2023, Mutual's lost profit damages were again the focus of discussion, with Judge Barber noting "I mean, I spent a lot of time with you guys last time talking through this. And, ultimately, I don't think it really helped, because we're kind of making the same points." (Exhibit 2 (August 23, 2023 Hearing Transcript) 4:1-4.) The Court then ordered Mutual to file a summary judgment motion limited to the issue of damages. (DE 94.)

Mutual filed its motion on October 20, 2023. (DE 100.) In the motion, Mutual argued causation and liability, namely, that it was Waterstone's larger "calculated

scheme" that resulted in lost profit damages, not any individual employee. (DE 100 at 20.) Waterstone responded on November 17, 2023, focusing on Mutual's insufficient evidence of damages and arguing that, at a minimum, the loan volume associated with the branch managers and the Paramus branch should be excluded from Mutual's lost profit damages. (*See* DE 104.) In reply, Mutual again reiterated that it believes the case is "not solely about the departure of individual employees," and argued Waterstone "knew that the Managers would not leave Mutual without their branch employees." (DE 114 at 3-4.) As to excluding the loan volume attributable to the managers and Paramus, Mutual chose not to respond other than to argue those issues are not properly before the court and to request "an additional opportunity to provide more thorough briefing given the current page limitations." (DE 114 at 7.)

The Court addressed the damage issues at a December 13, 2023 case management conference, inviting additional, supplemental briefing from the parties on whether lost profit damages can be limited based on the duration of the employees' restrictive covenants. (*See* DE 116.) Both parties filed supplemental briefs on January 16, 2024. (DE 124, DE 125.) The Court heard argument on January 30, 2024, and again discussed the damages at length. (Exhibit 3 (January 30, 2024 Hearing Transcript).) The Court denied Mutual's summary judgment motion, and invited Waterstone to file a *Daubert* motion on damages. (*Id.* at 53-56.)

On February 6, 2024, Waterstone filed its *Daubert* motion, again arguing the lost profit damages should not include the loan volume and profits attributable to the

4

former branch managers or the Paramus branch because there was absolutely no wrongdoing associated with the departure of either the managers or the Paramus branch. (DE 132.)

In response, Mutual argued the lost profit damages should not exclude the loan volume attributable to the former branch managers because "Mutual's damages are not exclusively about them" and the case is about Waterstone's "planned and calculated scheme" to use the managers to "embark on the theft of Mutual's presence in Florida." (DE 133 at 13.) Again, Mutual argued Waterstone "knew the Managers would not Mutual leave without their branch employees" [sic]; "participated in, encouraged, and facilitated illegal practices in pursuing the branch employees to leave"; and "but for those actions taken by Waterstone, Mutual Florida would not have transitioned to Defendant." (DE 133 at 14.) Further, Mutual argued the case involves theft of confidential information and trade secrets. (*Id.*) With respect to Paramus, Mutual argued: "Waterstone's wrongdoing in absconding with Mutual's branches included the Paramus branch as was extensively briefed in Plaintiff's Motion for Summary Judgment on Lost Profit Damages." (*Id.* at 15 n.5.)

On March 29, 2024, after almost a year of briefing and argument from the parties addressing the issues, Judge Barber issued a 13-page decision on damages. (DE 146.) Judge Barber agreed with Waterstone that there is no basis to seek lost profit damages attributable to the branch managers or the Paramus branch. (DE 146.) Judge Barber explicitly acknowledged, and rejected, Mutual's position that the case is about more than the branch managers:

5

> Defendant argues that any damages awarded must exclude the loan volume attributable to the former branch managers because they were free to leave their employment at any time. **In response, Plaintiff claims that damages including the loan volume are proper because the damages are not exclusively about the branch managers' departures – the case is about Defendant's decimation of the entirety of Plaintiff's business operations in Florida.**
>
> The models that Plaintiff proposes to present to the jury would award the value Plaintiff lost by virtue of the branch managers leaving Plaintiff to join Defendant. But their employment agreements did not preclude the managers from leaving Plaintiff and moving to Defendant and thereafter competing with Plaintiff in generating new business. It was not a breach of contract or a tort for them to do so.
>
> Accordingly, the significant value lost to Plaintiff due to the branch manager departures does not flow from the alleged breaches and cannot legally constitute a component of the damages awardable to Plaintiff if it proves its case. Awarding damages to Plaintiff that include the loans attributable to the branch managers does not put Plaintiff in the same position it would have been in but for the alleged breaches and torts – to the contrary, it would impermissibly put Plaintiff in a *better* position by awarding Plaintiff the value of the branch managers services as a component of damages when those individuals were free to leave Plaintiff at any time without breaching any contracts or duties. Plaintiff does not offer any logical explanation why it is legally entitled to be compensated for the loss of the branch managers when those individuals were free to leave. And presenting evidence about damages that include loan volume attributable to the branch managers would be confusing to a jury. Consequently, Defendant's motion is granted as to this ground.

(DE 146 at 11-12) (emphasis supplied). Judge Barber's decision was equally reasoned as to Paramus, noting:

> […] In a footnote, Plaintiff appears frustrated that Defendant continues to insist that damages associated with the Paramus branch should be excluded. As explanation for inclusion, Plaintiff has indicated that the numbers for Paramus cannot be separated from Tampa because the branches operated on the same profit and loss statements. This position is not well taken. **Plaintiff has failed to provide a sufficient basis for including damages associated with the Paramus branch in this case.** Defendant's motion is granted as to this ground.

(*Id.* at 12-13) (emphasis supplied). Mutual now moves for reconsideration as to the exclusion of the branch managers and Paramus from damages, arguing that Judge Barber failed to appreciate its arguments that "Waterstone's assistance in stealing the branches cannot be separated from the branch managers' resignations because one would not have occurred without the other," (DE 164 at 3), and that "Waterstone knew that the managers would not leave Mutual without their branches." (DE 164 at 8.) In addition, Mutual argues Waterstone took actions amounting to misappropriation of confidential and trade secret misappropriation. (*Id.* at 10.) Mutual also raises an **entirely new** argument that loan volume attributable to only one manager, Dwayne Hutto, could be excluded. (*Id.* at 10.) Finally, with respect to the Paramus branch, Mutual simply argues Waterstone's wrongdoing is the "same as that set forth above," and that the Court "overlook[ed]" facts. (*Id.* at 12.) None of these arguments support reversing Judge Barber's long-awaited, well-reasoned decision.

### III.   ARGUMENT

**A.   Mutual Recites The Same Arguments It Made Throughout This Case, Which Are Not Grounds For Reconsideration.**

"The purpose of Rule 59 is not to ask the Court to reexamine an unfavorable ruling in the absence of a manifest error of law or fact." *Kunsman v. Bass*, 2022 WL 3136842, at *1 (M.D. Fla. May 25, 2022). *See also Koncept Properties Inc. v. Scopelliti*, 2023 WL 9104787, at *2 (M.D. Fla. June 13, 2023) (quoting *United States v. Dean*,

7

No. 20-11603, 838 Fed. App'x 470, 472 (11th Cir. Dec. 23, 2020)) ("[a] party's disagreement with the court's decision, absent a showing of manifest error, is not sufficient to demonstrate entitlement to relief"). Indeed, a motion for reconsideration may not be used to relitigate old matters or correct poor strategic choices. *White v. W.G. Parcel B. LLC*, 2016 WL 9525231, at *2 (M.D. Fla. Dec. 19, 2016). *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

Mutual raises the same arguments previously made in its briefs and argument – none of which provide a basis for reconsideration. First, Mutual argues Judge Barber failed to appreciate the distinction that this case is about more than any one employee. But Judge Barber explicitly acknowledged that this was Mutual's position in ruling that the damages must carve out the managers. *See* DE 146 at 11-12 ("Plaintiff claims that damages including the loan volume are proper because the damages are not exclusively about the branch managers' departures…"). Waterstone lawfully hired the branch managers, and the alleged wrongdoing stems not from the managers' resignation, but rather, Waterstone's alleged coordination and solicitation with respect to the rest of the branch employees. The managers were employees at-will who could resign without liability. Mutual's corporate representative even admitted there is nothing unlawful about Waterstone recruiting the branch managers and that "absolutely we should take that money out" of the damages. DE 132 at 11. Despite this admission, Mutual has repeatedly argued the case is about more than the managers' departures. But this argument does not warrant including the loan

8

volume attributable to the managers in the damages; it was explicitly rejected by Judge Barber; and it does not provide grounds for reconsideration.

Second, Mutual argues "most importantly" that "Waterstone knew the managers would not leave Mutual without their branches" and that this was integral to Waterstone's unspecified "wrongful conduct" which "caused" damages. DE 164 at 9. These are the exact same arguments Mutual made in its response brief preceding the Court's order on damages. *See* DE 133 at 14 (arguing Waterstone "knew the Managers would not Mutual leave without their branch employees" [sic]; Waterstone "participated in, encouraged, and facilitated illegal practices in pursuing the branch employees to leave"; and "but for those actions taken by Waterstone, Mutual Florida would not have transitioned to Defendant"). Mutual also raised the same argument in its summary judgment motion on damages which the Court also denied. *See* DE 114 at 3-4 (Waterstone "knew that the Managers would not leave Mutual without their branch employees."). The Court has now rejected these arguments on multiple occasions. Raising them again in motion for reconsideration is improper and a waste of judicial resources.

Third, Mutual raises the fact that this case also involves allegations related to misappropriation of confidential and trade secret information. It is not clear why Mutual believes these issues relate to lost profit damages, as Mutual has never articulated a damage demand based on its trade secret claims. Regardless, these arguments have also been repeatedly raised and rejected in prior briefing and argument. In fact, Mutual made the exact same arguments in its response brief.

9

*Compare* DE 133 at 14 ("In addition…this case involves Defendant's theft of Mutual's borrowers' confidential information and trade secrets belonging to Mutual") *with* DE 164 at 10 ("Waterstone engaged in a number of unlawful actions that amounted to the actual and real misappropriation of Mutual's trade secrets"). Again, Mutual does not get a do over based on the same, failed arguments.

Fourth, as to Paramus, Mutual argues the Court "overlook[ed] the fact that the Paramus branch effectively belonged to Mr. Smith," and was therefore, a part of the Tampa branch. But Judge Barber explicitly acknowledged this argument in the order, noting the "position is not well taken," and rejecting it as a basis to include loan volume attributable to Paramus in the damages. DE 146 at 12-13. The argument is also disingenuous because, as Waterstone argued in its *Daubert* motion, the Paramus branch had local managers who considered staying with Mutual and simply decided against it in July, 2022, weeks after the Tampa resignations. DE 132 at 11-12. In fact, the Paramus managers called Mutual before deciding whether to move to Waterstone and discussed their options for staying at Mutual with Mutual's regional manager, Brian Tomalak. *Id.* After considering their options, the managers simply did not pick Mutual. Further, when asked whether there was anything wrongful about the departure of the Paramus branch, Tomalak admitted there was not. *Id*. Mutual has never provided evidence to contradict these facts, as Judge Barber acknowledged. DE 146 at 12-13 ("Plaintiff has failed to provide a sufficient basis for including damages associated with the Paramus branch in this case.") There is simply no basis to reconsider the Court's decision as to Paramus.

At bottom, Mutual's arguments amount to no more than an attempt to relitigate the same issues. Mutual does not identify any intervening change in controlling law, new evidence, or manifest error of law or fact, which it concedes are necessary for reconsideration. DE 164 at 6. The motion should be denied.

**B. Mutual's New Argument, That Only Hutto's Loan Volume Should Be Excluded, Is Not A Proper Basis For Reconsideration.**

Mutual also presents a new argument that, if the Court does not agree with Mutual's position (which it already rejected), then the only loan volume that it may exclude is Dwayne Hutto's. This argument was never previously raised, despite Mutual having *ample* opportunity in briefing and argument to assert it. Moreover, it is not based on any new evidence discovered after the Court's decision. That Mutual never raised this argument is a strategic choice that it does not get to correct on a motion for reconsideration. *See, e.g.*, *Morton v. Astrue*, 380 F. App'x 892, 895 (11th Cir. 2010) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (a party cannot use a motion for reconsideration to "raise new arguments, or present evidence that could have been raised prior to the entry of judgment").

**IV. CONCLUSION**

For the reasons stated, the Court should deny Mutual's motion for reconsideration.

Dated: May 16, 2024.

/s/ Maria L. Kreiter
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.

11

833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

12