```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
_____
                              )
MUTUAL OF OMAHA               )
MORTGAGE, INC.,               )
                              )
         Plaintiff,           )
                              )
v.                            )   Case No.:  8:22-CV-1660
                              )
WATERSTONE MORTGAGE           )
CORPORATION,                  )
                              )
         Defendant.           )
_____)
```

**CASE MANAGEMENT CONFERENCE PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS P. BARBER**

**August 23, 2023**
**1:53 p.m. to 2:07 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**            COURTNEY E. WALTER, ESQUIRE
                                  Mitchell Sandler LLC
                                  1120 20th Street NW
                                  Suite 725
                                  Washington, DC 20036

**FOR THE DEFENDANT:**            MARIA L. KREITER, ESQUIRE
                                  Godfrey & Kahn, SC
                                  833 East Michigan Street
                                  Suite 1800
                                  Milwaukee, Wisconsin 53202

                                  CAROLINA Y. BLANCO, ESQUIRE
                                  Hill Ward Henderson
                                  3700 Bank of America Plaza
                                  101 East Kennedy Boulevard
                                  Tampa, Florida 33602


(Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.)
             **REPORTED BY:**
         Rebekah M. Lockwood, RDR, CRR
              Official Court Reporter
      (813) 301-5380 | r.lockwooduscr@gmail.com
        P.O. Box 173496, Tampa, Florida 33672

**EXHIBIT 2**

1       (Call to Order of the Court at 1:53 p.m.)
2           **THE COURT:** Next, Mutual of Omaha versus WaterStone.
3   Same kind of case.  My fourth such case.  Come on down.
4   Actually, the third one today that I've heard.
5           Case number 22-CV-1660.
6           Who is representing the plaintiff?
7           **MS. WALTER:** Good afternoon, Your Honor.  Courtney
8   Walter on behalf of the plaintiff.
9           **MS. KREITER:** Good afternoon, Your Honor.  Maria
10  Kreiter along with Caroline Blanco on behalf of defendant.
11          **THE COURT:** Okay.  So this one is more about -- not
12  so much about customers, but about staff.  You were going to
13  talk to Chris Griffin.  We had a long conversation on damages,
14  which was helpful to me.  I don't know if it was helpful to
15  you.  What's -- where are we?  I mean, talk to me.
16          **MS. WALTER:** We reached an impasse with respect to
17  mediation.  We were four hours into the mediation, and we never
18  received a single offer.
19          **THE COURT:** Well, that's not -- can't settle a case
20  that way.
21          **MS. WALTER:** Correct.
22          **THE COURT:** So what's the strategy here?  You want
23  to -- you want to push the damages issue, the legal arguments
24  on that, and try to get some kind of clarification on what the
25  damages might be?

1      **MS. KREITER:** Yeah. I mean, I'll just -- look, we
2 negotiated in good faith. There was substantial discussions.
3 I talked to Chris Griffin yesterday, trying to brainstorm about
4 how we could advance things.
5      **THE COURT:** Good.
6      **MS. KREITER:** The issue is, I don't think the parties
7 are on the same galaxy. The Court asked --
8      **THE COURT:** We had an hour hearing on this.
9      **MS. KREITER:** Right. And I -- you know, look, I'm
10 prepared to talk further about what's the value of the case.
11 I'm prepared to not if that's not what Your Honor wants to do.
12 But I know that was a topic last time, and I've given it more
13 thought. We tried to frame things at the mediation in a realm
14 of what is the realistic case value. But I think at this point
15 in time, the parties are not talking, you know, in the same
16 galaxy.
17      I have in my mind what a reasonable case value is,
18 how that should translate to settlement talks. I think the
19 issue is it can't just be a one-way street. We've got to have
20 some give and take here.
21      So we are at an impasse, I think, from WaterStone's
22 perspective. I'd be happy to continue the discussions. I
23 would encourage a discussion at the outset about just what our
24 realistic parameters for those discussions that involve give
25 and take by both sides.

1          **THE COURT:** Yeah. I mean, I spent a lot of time with
2   you guys last time talking through this. And, ultimately, I
3   don't think it really helped, because we're here kind of making
4   the same points.
5          Let me just look at something here.
6          I mean, I don't have a problem, if you want to
7   file -- or I don't care who files it, really, some sort of
8   summary judgment motion, just on damages. And you can have,
9   you know, not putting every argument in the case in one summary
10  judgment motion, but we'll put out some sort of endorsed order
11  that says, you know, both sides are free to file. And I'll
12  take a look at it.
13         But I'm not optimistic that I'm going to be able
14  to -- I hate to use these corporate terms, but silo off, you
15  know, these damages to just this or just that. It may be --
16  like I said last time, it may be that there's so many moving
17  parts that it is ultimately going to have to be sorted out by a
18  jury. I don't know that. But it's -- as I think through it,
19  it's -- there are a lot of moving parts.
20         **MS. WALTER:** And, Judge, if I may, our position is we
21  intend to file a motion for summary judgment on liability. But
22  with respect to damages, it's hard for me to make an argument
23  about a precise number when we're also arguing that this is a
24  jury question.
25         **THE COURT:** No, no, no, no. What I'm saying is, just

1  assume you win the case.  Assume the plaintiff, all the causes
2  of action are proven.
3         All right.  Maybe I should say it this way.  Assume
4  for purposes of an argument that the causes of action that have
5  been pled are successful.  What damages flow from that?  Your
6  client thinks that the total value -- at least I heard last
7  time, the total value of their business, because their business
8  was stolen, well, after two years, they could have done it
9  anyway.  So that's one moving part that we talked about.
10        Another moving part is this idea of this is mortgage
11 industry.  Right?
12        **MS. WALTER:**  Correct.
13        **THE COURT:**  Where, you know, that's been very dynamic
14 lately, how does that all play into it.  The other part of -- I
15 mean, there's many -- I'm not -- I'm going by memory here and
16 looking at my notes.  There was also this idea that the
17 employees all came at one time, and therefore they -- kind of
18 their business had to fold up.  Well, why didn't they hire new
19 people?  There's things like that that just are very hard to
20 get your arms around.  It's not clean.
21        And so I'm inviting you guys to make whatever
22 arguments you want to make on that.  Maybe I can -- I can do
23 something to narrow it or maybe not.  I just don't know,
24 because I'm not the lawyer in the case, and I haven't spent
25 hours and hours trying to link up, okay, here's an interference

1  claim, what was the interference alleged?  Okay.  Well, what
2  are the damages that flow from that versus other things?
3         So that's what I'm trying to help with.  Forget about
4  liability, forget about -- get out of -- get out of the
5  thinking that, oh, I have to file a summary judgment motion
6  with every argument in the case on liability and damages, and
7  if I don't, I won't get another chance.  I'm telling you, you
8  can file later summary judgment motions.  This is a narrow
9  motion to try to get some clarification on damages.  Call it a
10 motion in limine if you want.  They filed it last time.  You
11 guys got upset by that.
12        **MS. WALTER:**  I was very upset.
13        **THE COURT:**  You were very upset.  But it's
14 constructive, because, like she said, you guys are in different
15 pages of what the recoverable damages are.  And I'll try to
16 answer if I can.
17        **MS. KREITER:**  Just to clarify, Your Honor, there were
18 other dispositive motions that WaterStone had anticipated, for
19 example, in the trade secret misappropriation claims.  I'm fine
20 with sequencing the motions such that we look at the damages
21 first.  I just don't want to file something that Your Honor
22 prefers -- doesn't prefer to get on the dispositive motion
23 deadline.
24        **THE COURT:**  No.  I don't want to deal with all the
25 other stuff.  You guys are hung up on the damages.  I just want

1   to see if I can do anything with that.  And I'll say -- Kelly,
2   we'll say in our endorsed order -- who wants to be -- you filed
3   one last time, and they got mad at you.  So you'll file it this
4   time.  Okay?  You're the filer.  All right?  And then you'll do
5   your response.  And I'll see where it is, and I'll probably
6   hold a hearing on it, and we'll talk through it.
7           My answer might be, well, thank you, but it's too
8   muddled.  It's all a jury question.  I don't know.  I don't
9   know.  So we'll do an endorsed order on that, just the
10  parties -- are you the plaintiff?
11          **MS. WALTER:**  Yes, Your Honor.
12          **THE COURT:**  It's hard to remember.  The other case,
13  the plaintiff is actually the defendant, but that's -- don't
14  worry about it.  It's confusing.
15          Plaintiff is directed to file a summary judgment
16  motion on damages only within 30 days and defendant responds
17  and without prejudice to any other future summary judgment
18  motions on damages or anything else.  And let's just see if we
19  can get something done.  All right?
20          I think that's -- I mean, from where I'm sitting, I
21  know these other -- somebody said, oh, it's California law, so
22  all these things are going to be invalid anyway, I mean, maybe.
23  But let's assume -- forget about all that, and let's just stick
24  with what the damages might be under a best-case scenario in
25  terms of the causes of action that are pled.  All right?

| | |
|---|---|
| 1 | **MS. KREITER:** I have one more matter, Your Honor. |
| 2 | So, Your Honor will recall plaintiffs submitted a rebuttal |
| 3 | expert report on July 14th.  That was just two days before the |
| 4 | close of discovery.  WaterStone filed a motion to strike that |
| 5 | rebuttal expert on the grounds that it wasn't rebuttal at all. |
| 6 | It was a brand-new expert. |
| 7 | At the last hearing, at the very end of July, Your |
| 8 | Honor was hearing the motion in limine on other damages, also |
| 9 | took up that motion that WaterStone had filed to strike the |
| 10 | rebuttal expert, denied the motion. |
| 11 | I haven't had a chance to do any discovery as to the, |
| 12 | quote, unquote, rebuttal expert, which is injecting $28 million |
| 13 | into the case five times -- I'd like to issue one set of |
| 14 | discovery specific to the expert, if that's -- |
| 15 | **THE COURT:** Sure.  Sure.  Do it. |
| 16 | **MS. KREITER:** Great.  Thank you. |
| 17 | **THE COURT:** Take his depo too. |
| 18 | **MS. KREITER:** I did take the deposition, but, |
| 19 | frankly, I had three business days at the time of that |
| 20 | deposition.  I guess I'd like the start with discovery.  That |
| 21 | may be all I need. |
| 22 | **THE COURT:** See.  Take a look at it.  How long was |
| 23 | his depo? |
| 24 | **MS. WALTER:** Six hours. |
| 25 | **THE COURT:** Six hours? |

1           **MS. WALTER:**  Yes, Your Honor.

2           **THE COURT:**  That's a long time.

3           **MS. KREITER:**  It was.  I'm not saying I need another
4  deposition.  But I wouldn't feel like I'm doing justice to
5  WaterStone without asking for discovery.

6           **MS. WALTER:**  The only thing that I would rebut is
7  that it's been practically over a month since she had that
8  request.  She hasn't asked me for that which we could have
9  still negotiated before this hearing.

10          **THE COURT:**  You can still negotiate it.  It's fine.
11 It's a big step to go from, you know, a -- stealing a couple
12 customers for 60 grand or whatever to -- really, the case is
13 about the value of the whole business.  That's a big step.  I
14 think it's fair.

15          **MS. WALTER:**  That was her independent projection.
16 That's not exactly the demand that's on the table.  It's the
17 same data that WaterStone's expert has relied on.

18          **THE COURT:**  Who?  Steve Oscher?

19          **MS. WALTER:**  Yes, Your Honor.  His deposition is
20 scheduled for next Thursday.

21          **THE COURT:**  Good.  Good.  Give him my regards.

22          **MS. WALTER:**  Will do, Your Honor.

23          **THE COURT:**  Tampa is a small town.  Mr. Oscher was on
24 the original judicial nominating committee when I was appointed
25 county court judge 19 years ago.  That's how long I've known

1  him, but -- so in any event, see how that turns out.
2          Are you okay -- I forget the -- Mr. Karen, was that
3  his name?
4          **MS. WALTER:**  Yes, Your Honor.
5          **THE COURT:**  Remember I took away some of your causes
6  of action at the beginning kind of informally, and I asked him
7  is he was okay with that, and he was going to check.  You're
8  okay with those being out of the case?
9          **MS. WALTER:**  Yes, Your Honor.  Yes.
10         **THE COURT:**  All right.  We'll do something on that
11 just to clear up the record on that --
12         **MS. WALTER:**  Yes.
13         **THE COURT:**  -- so those don't creep back into this.
14         **MS. WALTER:**  They will not.  Trust me.  I did the
15 research.
16         **THE COURT:**  So other than that, I'm good.
17         **MS. KREITER:**  Okay.  Just to confirm, if I could,
18 plaintiff will file its motion, summary judgment as to damages.
19 WaterStone will respond to that as opposed to filing its own
20 motion.  We will set a new date for other dispositive motions.
21         **THE COURT:**  Yeah.  We'll give you an endorsed order
22 on that.
23         **MS. KREITER:**  Okay.  Thank you.
24         **THE COURT:**  What did Judge Sneed tell you to do on
25 that depo?  Somebody terminated a depo, which is a big no-no.

```
 1   I don't remember who.  What did Judge Sneed say about that?
 2            MS. WALTER:  Ms. Kreiter did not terminate the
 3   deposition, to be clear.  She just instructed her witness not
 4   to respond to a series of questions.
 5            THE COURT:  Sorry.
 6            MS. WALTER:  Well --
 7            THE COURT:  But what happened?
 8            MS. WALTER:  So magistrate Judge did -- Sneed did
 9   allow the deposition to get continued.  No sanctions were
10   permitted.  We -- in light of taking -- or instead of taking
11   the additional deposition, we are agreeing to a factual
12   stipulation.
13            THE COURT:  Okay.  Just curious.
14            MS. WALTER:  Yeah.
15            THE COURT:  All right.  Anything else?
16            MS. KREITER:  No.
17            THE COURT:  Okay.  I said -- what date did I give
18   you, November?
19            MS. KREITER:  I think you said 30 days from today for
20   the motions.
21            THE COURT:  Oh, yeah.  Just do December 13th, 2023.
22   Let me talk to you guys before Christmas, see where we are.
23   December 13th, 2023.
24            MS. WALTER:  Judge, just to be clear, so the
25   dispositive motion deadline next month, is that being stayed or
```

1  should we just plan to file the damage motion, dispositive
2  motion?
3           **THE COURT:**  Just work on this for now.
4           **MS. WALTER:**  Okay.
5           **THE COURT:**  I'll think about what to do about the
6  rest of it.  My thought would be let me just look at this
7  first, because otherwise I'm going to have two different things
8  going at the same time, and it will get confusing.
9           **MS. RICHARDSON:**  I think the case is set for
10 February.  Is that still on, or is it going to be adjourned in
11 light of what we're working on?
12          **THE COURT:**  Probably not.  Probably not.  It's not a
13 hard case.  Not a hard case.  So we'll see you in December.
14          **MS. KREITER:**  Thank you.
15          **MS. WALTER:**  Thank you, Judge.
16          **THE COURT:**  Take care.
17     (Proceedings adjourned at 2:07 p.m.)
18
19
20
21
22
23
24
25

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

     I, Rebekah M. Lockwood, RDR, CRR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

     I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

     IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 31st day of October 2023.

_____
REBEKAH M. LOCKWOOD, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida