## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC. <br><br>                      Plaintiff, <br><br> v. <br><br> WATERSTONE MORTGAGE CORPORATION, <br><br>                      Defendant. | CASE NO. 8:22-cv-01660-UAM |

## WATERSTONE'S RESPONSE TO MUTUAL'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE

## I.    INTRODUCTION

The evidence Mutual seeks to exclude is at the center of the case. Specifically, Mutual has the burden to prove liability, causation, and damages with respect to each of its claims. Therefore, whether the former employees left Mutual because of alleged wrongdoing by Waterstone or another reason, including job dissatisfaction, is highly relevant. Waterstone denies liability and causation and has been clear throughout the years the case has been pending that the employees themselves are best positioned to explain what caused them to leave Mutual. The managers did not need to solicit because the employees were happy to leave and, in some instances, already looking for another job. Whether the jury believes Mutual's allegations that Waterstone caused the departures, or believes the employees' testimony to the

contrary, is a seminal fact dispute. Mutual's motion to exclude key evidence unfavorable to its position should be denied.

There is similarly no merit to Mutual's motion to exclude evidence of its own breach of the employment agreements. Breach and materiality are fact questions for the jury. If the jury finds Mutual was the first to materially breach its employment agreements by refusing to pay commissions to employees who did nothing wrong, then Mutual would not be able to enforce its non-solicit subsequent to the breach. Rather, that employee's non-solicit obligations – as well as Mutual's damages – would cease as of the date of Mutual's material breach. Mutual's motions *in limine* should be denied accordingly.

## II.    ARGUMENT

### A. Waterstone Should Be Permitted To Introduce Evidence Of The Former Employees' Job Dissatisfaction.

1. Testimony Of Former Employees' Job Dissatisfaction Is Key To Liability, Causation, and Damages.

Mutual argues the reasons for the employees' departures are irrelevant because the jury is only tasked with deciding whether the *way* the employees left was problematic. (Mutual Br., DE 188 at 4.) Mutual's characterization of the trial issues does not make sense: Mutual must prove the former employees left due to Waterstone's wrongdoing, as opposed to (i) loyalty to the branch managers the employees had followed throughout their career, (ii) frustration with Mutual, (iii) fear of the unknown given that the branch managers had the office leases and

2

their departure meant the branch would not remain, (iv) not wanting to work for new, unknown leadership, or (v) any number of other causes. The employees will testify they left Mutual not because of any wrongdoing by Waterstone but because an array of factors made continuing at Mutual prejudicial and unattractive. To illustrate, one top rainmaker from the Ormond Beach branch, Jake Lowe, left days before the Ormond Beach managers resigned because Mutual's underwriting department was inferior, Mutual was unable to timely close loans, and for an array of other reasons detailed in his previously filed Declaration (*see* DE 104-13 ¶ 6(a)-(j)). Lowe did not know of the managers' upcoming departure when he resigned and had been looking for another job for months due to frustration with Mutual. (DE ¶¶ 7-9.) Mutual should not be, but is, counting Lowe's production in its alleged damages. Waterstone should be permitted to illustrate that Mutual's damages are inflated and improperly count production of employees such as Lowe whose resignation had nothing to do with Waterstone, as well as the overreaching nature of Mutual's position in general given that employees were free to resign, or stay with Mutual, and each weighed the pros and cons for themselves.

Mutual's claim that there is no evidence in the record related to the employees' job dissatisfaction (Mutual Br., DE 188 at 4-5) is incredible in light of Lowe's Declaration and the fact that the four branch managers and numerous other former Mutual employees submitted summary judgment declarations addressing

their frustrations with Mutual.[1] What caused the managers to resign was not solicitation or a conspiracy with Waterstone to "lift out" Mutual's Florida operations, but rather, Mutual's inability to timely close loans; inadequate products, support, and resources; and frustration with Mutual's leadership. (Smith Decl. (DE 104-08) ¶¶ 2-14; Hutto Decl. (DE 104-09) ¶¶ 2-5; Utsch Decl. (DE 104-10) ¶¶ 2-3; Wolf Decl. (DE 104-11) ¶ 2.) In fact, the four managers were extremely frustrated with Mutual and looking for alternative employment long before they ever explored Waterstone. (*See id.*)

According to Hutto, for example, Mutual missed closing dates approximately fifty percent of the time. (DE 104-09 ¶ 2.) On one occasion, buyers had to keep their moving truck in the branch parking lot because Mutual did not timely close the loan, and Hutto had to make hotel accommodations for the buyers. That situation, and many others like it where Mutual was unable to timely close loans, jeopardized Hutto's business. (*Id.* ¶ 3.)

The managers were also frustrated with Mutual's leadership. For example, Smith felt he had no support from Mutual's regional managers, Tomalak and King, who did nothing to support his branch and yet received 50% of the profits Smith generated, on top of Mutual taking a portion of the branch revenue. (DE 104-08 ¶ 9.) Smith viewed that structure as atypical and grossly unfair. (*Id.*) The money Tomalak

---

[1] *See* DE 104-08 (Declaration of Chris Smith); DE 104-09 (Declaration of Dwayne Hutto); DE 104-10 (Declaration of John Utsch); DE 104-11 (Declaration of Chris Wolf); DE 104-12 (Declaration of Dawson Walker); DE 104-13 (Declaration of Jake Lowe); DE 104-14 (Declaration of Patrick Japaz); DE 104-15 (Declaration of Mike Lynch); DE 104-16 (Declaration of Matt Landgraff).

and King made off Smith's efforts for years bothers him still, as does Mutual's failure to do anything to address Smith's concerns. (*Id.* ¶ 14.)

Further still, the managers felt Mutual lacked adequate loan products, such as down payment assistance programs and diverse construction loan products; the managers felt Mutual's underwriting process was far too conservative, and often incomprehensible; Mutual was no longer an FDIC lender once it sold Mutual of Omaha Bank, requiring the managers to seek state-by-state accreditation; and Mutual's focus was refinance, not the purchase loans that the managers prioritized. (Smith Decl. (DE 104-08) ¶¶ 5-7; Utsch Decl. (DE 104-10) ¶ 3; Wolf Decl. (DE 104-11) ¶ 2.)

The branch employees echoed these concerns. In addition to Lowe (discussed above), Dawson Walker from the Ormond Beach branch resigned not because his managers told him of their plans to resign in advance, solicited him, shared allegedly confidential information with Waterstone, or otherwise coordinated with Waterstone. Rather, Walker had no experience in the mortgage industry before meeting Hutto and Wolf, as he previously worked in a manufacturing job and as an unsuccessful realtor. (Walker Decl. (DE 104-12) ¶¶ 2-3.) With Hutto's and Wolf's training and mentorship, Walker became a top producer and attributes his professional and financial success to Hutto and Wolf, who are now his close friends. (*Id.* ¶¶ 5-8, 15.) It did not matter where Hutto and Wolf were going, Walker was going to stay with them. (*Id.* ¶ 14.) Neither Waterstone, nor alleged solicitation had anything to do with Walker's decision. (*Id.*) In contrast, Mutual treated Walker

poorly: for example, despite his hard work as a Mutual loan officer, Mutual denied Walker a personal home loan. (*Id.* ¶¶ 8-10.) Mutual only eventually approved the loan because Hutto, Wolf, and Smith, former managers, went to Mutual's management on Walker's behalf. (Id. ¶ 10.) Walker never met Tomalak and King, Mutual's regional managers, and has never even spoken to them. (*Id.* ¶ 12.) As such, and for obvious reasons, Walker immediately decided to follow Hutto and Wolf to Waterstone. There was no need for the managers to solicit Walker, let alone an occasion for Waterstone to tortiously interfere with Mutual's contract rights by somehow inducing the managers to solicit. The full facts, such as these illustrative examples, should be presented to the jury so that it may assess liability, causation, and damages—i.e., all key issues.

2. <u>Testimony From Employees Related To Their Job Dissatisfaction At Mutual Is Not Speculative and Mutual's Cited Case Law Does Not Support Exclusion.</u>

As a final matter, Mutual further argues that testimony from the former employees regarding job dissatisfaction at Mutual would amount to improper "forward-looking speculation." (*See* Mutual Br., DE 188 at 5-6.) But the above testimony is based on the former employees' personal knowledge and experience, which Mutual agrees is proper. (*See id.* at 5 (stating "[o]pinions by lay witnesses must be derived from personal knowledge or experience").) There is nothing speculative or hypothetical about this testimony that warrants exclusion.

In addition, Mutual purports to quote *Estate of Miller v. Ford Motor Co.*, No. 2:01-cv-545-FtM-29DNF, 2004 U.S. Dist. LEXIS 29846, at *11-12 (M.D. Fla. July

22, 2004) in support of its argument that employee job satisfaction is irrelevant. The language quoted by Mutual does not exist as cited. Regardless, *Estate of Miller* is a products liability wrongful death case – not an employee departure case where plaintiff's primary allegation is that employees were solicited in violation of restrictive covenants. Here, unlike in a products liability case, whether employees left because of impermissible solicitation for which Waterstone somehow has liability, unhappiness in their jobs, or some other reason is directly relevant to Mutual's claims.

**B. Waterstone Should Be Permitted To Introduce Evidence Of Mutual's Prior Material Breaches.**

1. Whether The Former Employees Breached Their Employment Agreements Is A Question Of Fact That Cannot Be Assumed For Purposes Of Mutual's Motion.

In the second part of its motion *in limine*, Mutual argues that any evidence of its own breach of the employment agreements by failure to timely pay commissions is irrelevant since the employees breached first or, conversely, if the employees did not breach, there are no damages. This argument ignores the complexity of the facts, multitude of employees involved, and multitude of issues still yet to be determined by the jury, including: (i) which — ***if any*** — of the employees breached their employment agreements, (ii) whether Waterstone played a role in that particular employee's breach, (iii) whether the breach caused Mutual to suffer damages, and (iv) whether any breach by any employee was material such that Mutual was relieved

7

from performance and did not have to pay commissions. There are four managers, and none have been determined to solely be the cause of harm, or at all culpable.

A jury could find that one key manager with substantial employee loyalty breached the agreement but the breach was not material: for example, if Hutto breached the confidentiality provision of his employment agreement by sending loan documents to Waterstone, but the jury finds Hutto's breach to be technical and not material (because the customer asked Hutto to send the loan documents), Mutual has a continuing performance duty and its failure to timely pay Hutto's compensation in May of 2022 (a month after his resignation) terminates Hutto's duty to refrain from soliciting the branch employees. *See Nacoochee Corp. v. Pickett*, 948 So. 2d 26, 30 (Fla. Dist. Ct. App. 2006) ("A material breach by one party may be considered a discharge of the other party's obligations thereunder.") In that scenario, Hutto can solicit starting in May of 2022 when Mutual materially breached, and Mutual's projection of damages for loss of the Ormond Beach branch for 12, 18, or 30 months is entirely speculative and misplaced. In sum, which employee breached his employment agreement, *if any*, is not yet determined, is a question of fact for the jury, bears directly on damages, and Mutual should not be able to keep its own wrongdoing and candidacy as the materially breaching party from the jury.

2. <u>Mutual Failed To Timely Pay Commissions.</u>

Nor can there be any question that Mutual failed to pay commissions and other compensation, which the employment agreements require. Mutual's corporate representative and human resources manager, Katherine Theobald, testified that

8

Mutual's policy is to pay loan originators after they leave for eligible loans in process if those loans fund within 30 days following the employee's departure. (Exhibit 1 (Theobald Deposition Transcript) 70:19-25; 102:4-11.) Theobald explained that one of the reasons for this policy is to deter employees from feeling the need to take loan data in order to be compensated. (*See id.* at 71:1-7; 101:15-102:1.) Depending on the employee's position, this policy is documented in the compensation addendum or offer letter and incorporated in Mutual's employment agreements. (*See id.* at 113:16-118:17.) For example, Mutual's branch manager/sales manager compensation addendum provides:

> **III.  Compensation on Separation of Employment**
>
> For terminated employees, the Salary will be paid upon termination in accordance with applicable law.
>
> If earned Commissions cannot be calculated and paid at the time of termination or are otherwise not determinable at the time of termination, upon separation of employment for any reason, Manager will be eligible to receive commissions on Eligible Loans for which he or she has performed Loan Origination Services based on the terms set forth above for thirty (30) days after the separation date. Commissions will be paid in accordance with the above payment schedule, when they can be reasonably calculated and are determinable, or as otherwise required by applicable law.

*See* Exhibit 2 (MOM0001666, Dawson Walker's Branch Manager/Sales Manager Compensation Addendum). Indeed, the former employees trusted Mutual would uphold the terms of its agreements and pay commissions on loans in their pipeline set to close with Mutual. (*See, e.g.*, Walker Decl., DE 104-12 ¶¶ 15-17; Landgraff Decl., DE 104-16 ¶¶ 12-13.)

Yet, Theobald admitted that Mutual delayed payment on commissions owed to former employees, including Chris Wolf, Dawson Walker, Tatiana Giraldo, Cameron Holley, and John Knight, until December 2022, despite their departures

months earlier in April 2022. (Ex. 1 (Theobald Dep. Tr.) 104:1-105:7; 106:11-21.) Theobald further acknowledged that a profit payment to Dwayne Hutto was delayed for over a *year*, due to decisions made based on input from Mutual's in-house counsel. (*Id.* at 108:13-110:13; 111:24-112:8.)

While Theobald denied delaying payments to the former Tampa employees, Mutual still interfered with commissions. Former Tampa employee, Matt Landgraff, had loans in process that were set to close within the 30-day window that he believed he would be paid on. (Landgraff Decl., DE 104-16 ¶ 13-14.) Mutual, however, pushed back the closing dates on those loans which Landgraff believes was done purposefully to avoid paying commissions. (*Id.* ¶ 14.) Even the clients raised concerns about their closing dates and voiced those concerns to Landgraff, who then contacted Mutual, but Mutual refused to provide answers or an explanation for the delay. (*Id.* ¶¶ 15-16.) Landgraff lost approximately $4,000-$5,000 in commission as a result. (*Id.*) This evidence demonstrates material breaches on the part of Mutual and it should be heard by the jury.

3.  <u>Evidence Of Mutual's Prior Material Breaches Is Relevant To Mutual's Tortious Interference Claim.</u>

As a final matter, Mutual argues Waterstone cannot raise Mutual's prior material breaches as a defense because Waterstone is not a party or third-party beneficiary of the Employment Agreements, citing *De Soleil S. Beach Residential Condo. Ass'n, Inc. v. De Soleil S. Beach Ass'n, Inc.*, 315 So. 3d 58, 61–62 (Fla. 3d DCA 2020). In *De Soleil*, the court held that a non-party to a contract could not assert and

10

enforce a condition precedent, and cited cases where non-parties could not assert a breach of contract as a defense to foreclosure actions or cases involving compliance with mortgage terms. Those cases are inapplicable here, where Mutual asserts a claim for tortious interference with contract against Waterstone. Mutual's tortious interference claim depends on the existence of an enforceable contract in the first instance. *See, e.g.*, *Mariscotti v. Merco Grp. At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. Dist. Ct. App. 2005) ("If a contract… is unenforceable, then an element of a tortious interference claim is absent.") (citing *Sullivan v. Econ. Research Props.,* 455 So.2d 630 (Fla. 5th DCA 1984)).

If Mutual's conduct amounted to a material breach, then the employees were excused from the agreements, and Waterstone's alleged conduct is not actionable. Waterstone could not have induced the former employees to breach an employment agreement that they were already excused from performing due to Mutual's breach. Put differently, Mutual cannot bring a claim for tortious interference with contract based on a contract that Mutual itself could not enforce due to its own wrongdoing. Evidence of Mutual's decision to withhold commission payments to the former employees is therefore relevant to its claims and Waterstone should be permitted to introduce it at trial.

## III.    CONCLUSION

For the reasons stated, the Court should deny Mutual's motion *in limine* to exclude certain evidence.

Dated:  May 29, 2024.

/s/ Maria Kreiter
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com
*Attorneys for Defendant Waterstone Mortgage*
*Corporation*