UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) <br> ) Case No. 8:22-cv-01660-UAM <br> ) |
| Plaintiff, | ) **PLAINTIFF MUTUAL OF OMAHA** <br> ) **MORTGAGE, INC.'S RESPONSE IN** |
| v. | ) **OPPOSITION TO WATERSTONE** <br> ) **MORTGAGE CORPORATION'S MOTION** |
| WATERSTONE MORTGAGE CORPORATION, | ) *IN LIMINE* **TO EXCLUDE EVIDENCE OF** <br> ) **SOLICITATION BY DWAYNE HUTTO** <br> ) **AND CHRIS SMITH** |
| Defendant. | ) |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby files this Response in Opposition to Defendant Waterstone Mortgage Corporation's ("Defendant" or "Waterstone") Motion *in Limine* to Exclude Evidence of Solicitation by Dwayne Hutto and Chris Smith ("Motion") (ECF No. 190). In support thereof, Plaintiff states as follows:

**INTRODUCTION**

This is not the first time Waterstone has argued that Messrs. Hutto and Smith's non-solicitation restrictions are unenforceable. In response to Mutual's Motion for Summary Judgment, Waterstone argued to Judge Barber that "two key managers, Hutto and Smith, have agreements governed by California law and, thus, are not enforceable under Cal. Prof. & Bus. Code s. 16600." ECF No. 104 at 19. Judge Barber responded during oral argument: "oh, by the way, you had somewhere in your brief about, well, this is a California noncompete. It's probably not enforceable. *I don't think*

1

*that argument has any legs."* Jan. 30 Hearing Tr. at 21:21-23, attached as Ex. A (emphasis added).

Yet, Waterstone again argues – in what amounts to a procedurally defective belated summary judgment argument[1] – that Mutual should be precluded from introducing evidence of Messrs Smith and Hutto's solicitation of the employees they were paid to supervise at Mutual, while they remained in a supervisory capacity over such employees. Waterstone's motion should be denied.  First, Waterstone's motion is premised on a flawed analysis that fails to take into account the proper choice of law. Performing the necessary analysis demonstrates that – to the extent California would preclude enforcement of these agreements – the Florida Antitrust Act of 1980 controls because it is the public policy of the state to enforce these agreements, to the extent that even over-broad agreements are to be blue-penciled to maximize their enforceability to support legitimate business interests.

Furthermore, evidence that – in violation of their fiduciary duties – Hutto and Smith solicited subordinates while they remained employed as supervisors at Mutual is clearly admissible.  Accordingly, evidence of solicitation is relevant under every conceivable scenario.  Hence, Judge Barber's analysis as to the validity of Waterstone's argument is spot-on.

---

[1] Waterstone's Motion has two procedural failures. First, it does not include the required certification under M.D. Fla. Local Rule 3.01(g)(1). Second, it improperly seeks a dispositive legal ruling, which is not proper for a motion *in limine*. Indeed, a motion *in limine* is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried. *See LSQ Funding Grp. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012); Whidden v. Roberts, 334 F.R.D. 321, 325 (N.D. Fla. 2020) (a "motion *in limine* is not a permissible substitute for a motion for summary judgment.").

## LEGAL STANDARD

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010); *see also Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752843, *1 (M.D. Fla. June 18, 2007). The burden is on the movant to demonstrate that the evidence is inadmissible. *Gonzalez*, 718 F. Supp. 2d at 1345. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 06-MD-1769, 07-CV-15733, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions in limine, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Fall v. Curran*, No. 3:19-cv-609-J-39TBT, 2021 WL 1969443, at *1 (M.D. Fla. Jan. 19, 2021).

## ARGUMENT

### I. THE RESTRICTIVE COVENANT IS ENFORCEABLE UNDER FLORIDA LAW.

Waterstone failed to apply the proper law in arguing that the restrictions were invalid. When a court must determine whether to give effect to a choice of law provision in a contract, it looks to "the substantive laws, including the conflict of law rules, of the forum state, Florida." *Coral Gables Imported Motorcars, Inc. v. Fiat Motors of*

*N. Am., Inc.*, 673 F.2d 1234, 1238 (11th Cir. 1982). Under Florida law, "[w]hen contracting parties indicate in the contract their intention as to the governing law, any dispute under the contract will be governed by such law as long as it is not against the public policy of the forum state." *Videojet Techs. Inc. v. Garcia*, No. 8:07-CV-1407-T-30MAP, 2008 U.S. Dist. LEXIS 46045, at *9 (M.D. Fla. June 12, 2008) (citations omitted). To determine whether a provision is against the public policy of Florida, courts must look to whether the laws of another state are "harmonious in spirit" with Florida law. *Punzi v. Shaker Advert. Agency, Inc.*, 601 So. 2d 599, 600 (Fla. 2d DCA 1992); *Travelodge Hotels v. Kim Shin Hosp.*, 27 F. Supp. 2d 1377, 1382 (M.D. Fla. 1998) (same). In order for California law to apply, it must not be "against the public policy" of Florida. *Videojet*, 2008 U.S. Dist. LEXIS 46045, at *9.

### A. Florida Law Enforces Restrictive Covenants Not with Employees.

Under section 542.335 of the Florida Statutes, restrictive covenants are enforceable, so long as they meet three requirements: (1) the restrictive covenant must be set forth in a writing signed by the person against whom enforcement is sought; (2) the party seeking to enforce the restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant; and (3) the party seeking to enforce the restrictive covenant shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. § 542.335(1)(a)-(c), Fla. Stat. Applying section 542.335, courts have found that post-employment restrictive covenants are appropriate to preclude solicitation of a former employer's active

employees under Florida law. *See Johnson Controls, Inc. v. Rumore*, 2008 WL 203575, at *11 (M.D. Fla. Jan. 23, 2008) (applying Florida law) (enforcing restrictive covenant precluding non-solicitation of business's employees); *Am. Standard, Inc. v. Humphrey*, 2007 WL 2852362, at *4 (M.D. Fla. Oct. 2, 2007) (evidence sufficient to support finding of improper solicitation of employees in violation of non-solicitation of employees provision in noncompetition agreement).

Indeed, courts have consistently confirmed that enforcing such restrictions is in the interests of Florida's public policy. *New Horizons Computer Learning Ctr., Inc. v. Silicon Valley Training Partners, Inc.*, 2003 WL 23654790, at *7 (M.D. Fla. Nov. 12, 2003) (public has interest in enforcement of restrictive covenants); *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d. 1217, 1231-32 (M.D. Fla. 2002) (public has interest in enforcement of restrictive covenant not to solicit); *Accuform Mfg. v. Nat'l Marker Co.*, No. 8:19-cv-2220-T-33AEP, 2020 U.S. Dist. LEXIS 24792 (M.D. Fla. Jan. 13, 2020) (same). This is true as to non-solicit agreements and the far greater restrictions associated with non-compete agreements. *See Autonation. Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) (Florida public policy favors enforcement of reasonable covenants not to compete). *Foundever Operating Corp. v. Hahn*, No. 8:23-cv-1495-CEH-UAM, 2023 WL 7496150, at *20 (M.D. Fla. Nov. 13, 2023) ("Hahn's position that non-competition provisions, as a whole, do not serve the public interest is unsupported, and is also in conflict with the caselaw and Florida public policy); *Kaye v. Orkin Exterminating Co.*, 472 F.2d 1213, 1217 (5th Cir. 1973) ("In *Cerniglia v. C. & D.*

5

*Farms, Inc.*, 203 So.2d 1 (S. Ct. Fla., 1967), the Florida Supreme Court held a 20-year, noncompetition covenant to be unreasonable and unenforceable because of the provisions of Section 542.12, Fla.Stat.F.S.A., which establishes the public policy of Florida."). Though these cases deal with covenants not to compete – as opposed to restrictions on solicitation – they underscore the fact that even more burdensome restrictions than those at issue in this case are enforced as a matter of Florida's public policy that restrictive covenants between parties should be enforced to the maximum extent permissible. As one Florida court explained:

> The public has a cognizable interest in the protection and enforcement of contractual rights. Enforcing these restrictive covenants serves the public interest because it demonstrates that courts will uphold agreements, and employers can rely on non-compete agreements to protect their legitimate business interests. Companies who provide confidential information to its employees need to know that it will be protected if an employee resigns or is terminated because the non-compete agreement will be enforced.

*GFA Int'l, Inc. v. Trillas*, 327 So. 3d 872, 878 (Fla. 3d DCA 2021) (internal citations and quotations omitted); *see also Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) ("Public policy in Florida favors enforcement of reasonable covenants not to compete." . . . "[E]nforcement … protects propriety business interests and the enforcement of contracts.").

Further, "[s]ection 542.335 commands courts to modify, or blue pencil, a non-competition agreement that is 'overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest,' instructing courts to 'grant only

6

the relief reasonably necessary to protect such interest.'" *Rauch v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630-31 (Fla. 4th DCA 2021). Thus, Florida's public policy requires that restrictions with employees be enforced to the maximum extent permissible. Thus, there is a well-articulated public policy in Florida in favor of enforcing restrictive covenants.

### C. California's Refusal to Enforce Restrictive Covenants Is Against the Public Policy of Florida.

According to Waterstone, California law does not permit non-solicitation restrictions with former employees. That obviously conflicts with Florida law. Thus, the public policy of the two states is not "harmonious." The application of California law would invalidate the provisions at issue, while Florida law upholds to the maximum extent there is a protectable interest. Indeed, Florida's law focuses on the employer's interests, while California's laws prioritize the protections of the employee. *Compare* Fla. Stat. § 542.335 ("enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited.") *and* Cal.'s Labor & Prof. Code § 16600 ("every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."); *see also*, *Brown & Brown, Inc. v. Johnson*, 2015 NY Slip Op 04876, 25 N.Y.3d 364, 370 (finding Florida law was offensive to public policy of New York because of its "focus on the employer's interests, prohibition against narrowly construing restrictive covenants, and refusal to consider the harm to the employee—in contrast with New York's

7

requirements that courts strictly construe restrictive covenants and balance the interests of the employer, employee and general public."). The reality is that California and Florida laws prioritize directly opposite interests and thus California laws cannot supplant Florida law in this case. Such reasoning is likely why Judge Barber quickly assessed that Waterstone's argument had "no legs." There is simply no way to harmonize statutes that have chosen opposite sides from a policy standpoint. Accordingly, Florida law requires the Court to uphold the non-solicitation clauses.

II. **THE EVIDENCE IS DIRECTLY RELEVANT TO CLAIM IV (AIDING AND ABETTING BREACH OF FIDUCIARY DUTY), CLAIM III (TORTIOUS INTERFERENCE WITH CONTRACT) AND COMPLETES THE STORY FOR THE JURY.**

In addition to the fact that Florida law controls, the evidence of solicitations is admissible to prove Messrs. Smith and Hutto breached their fiduciary duties by soliciting their subordinate employees while they remained in Mutual's employ. Florida recognizes a duty of loyalty to an employer. *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981). This duty is violated by soliciting other employees before the end of employment. *See Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007). An employee "may not engage in disloyal acts in anticipation of his future competition, such as [] soliciting customers and other employees prior to the end of his employment." *LexJet, LLC v. Big Dog Media Sols., LLC*, No. 8:14-cv-538-T-17TBM, 2014 WL 7642095, at *9 (M.D. Fla. Sept. 16, 2014) (citing *Fish*, 401 So. 2d at 845), *report and recommendation adopted in part*, 2015 WL 224657 (M.D. Fla. Jan. 15, 2015); *see also Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-

1237-WWB-GJK, 2021 WL 720414, at *4 (M.D. Fla. Feb. 9, 2021) (acts in breach of fiduciary duty include "competing with the employer for customers or employees, and employee behavior leading to the mass resignation of the employer's workforce.") (citations omitted). Accordingly, the evidence of solicitation by the former Managers is directly relevant to Mutual's aiding and abetting a breach of fiduciary duty claim because it goes directly to the element of whether a breach of fiduciary duty occurred.[2]

In addition, such evidence bears directly on Mutual's claim for tortious interference with contract. In Florida, a plaintiff may "maintain a cause of action against a third party for tortious interference in a contract even though [it] might not be able to enforce the underlying contract." *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1243 (11th Cir. 2007); *see also Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1344 (D.Fla.2006); *United Yacht Brokers, Inc. v. Gillespie*, 377 So.2d 668, 672 (Fla.1979) ("The law of course does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes."). Mutual maintains a tortious interference with contract claim against Waterstone, which it will establish was effectuated by Waterstone's request that former Managers solicit their employees and take confidential information and

---

[2] The elements required to establish aiding and abetting the breach of a fiduciary duty are: "1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017) (quoting *Arbitrajes Financieros, S.A. v. Bank of Am.*, N.A., 605 F. App'x 820, 824 (11th Cir. 2015). The evidence of solicitation is directly relevant to element two, proving a breach of fiduciary duty.

9

trade secrets, to ensure the lift-out was seamless. Waterstone did so while knowing about the former Managers' contracts with Mutual and choosing to disregard those obligations. Thus, the evidence of solicitation bears directly on Mutual's claim for tortious interference and cannot be excluded.

Moreover, Courts generally permit evidence needed to complete the "story" of a party's case. *See SMS Audio, LLC v. Belson*, No. 16-81308-CIV, 2017 U.S. Dist. LEXIS 118942, at *5 (S.D. Fla. Mar. 17, 2017) (court permitted evidence of "outside incidents" because they "may be relevant to telling the story of SMS's inventory liquidation and to the issue of damages" where plaintiff alleged theft of trade secrets and confidential information, interference with business relationships, conversion, and other similar wrongful acts occurred); *Baumel v. Barber Power Law Grp., PLLC*, No. 3:22-CV-00170-GCM-SCR, 2023 WL 6121001, at * 2-3 (W.D.N.C. Sep. 18, 2023). Finding the evidence is "a fundamental part of that story" and "[h]iding the statements from the jury would deny them the full story of what occurred [], thereby limiting their search for the truth." Moreover, a party many not use a motion *in limine* to "sterilize the other party's presentation of the case." *Harris v. Wingo*, No. 2:18-CV-17-FTM-29MRM, 2021 WL 5028201, at *1 (M.D. Fla. Oct. 29, 2021) (cleaned up).

The evidence of solicitation leading to mass resignations – almost 60 in a period of two months, constituting the entirety of Mutual's Florida operations, is necessary to explain the full story of Waterstone's lift-out. Such evidence provides essential context to the story and theory of Mutual's case – that the managers and Waterstone agreed to a seamless transition facilitated by former Managers' solicitation of

employees, in addition to theft of trade secrets, clients, and confidential information. To exclude such evidence would be to permit Waterstone to "sanitize" the case. It would make no sense to explain to the jury how a lift-out happened if Mutual could not explain that the employees were solicited. Therefore, such evidence must not be excluded as it is critical to Mutual's theory of the case.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion in its entirety.

Dated:   May 30, 2024

| | |
|---|---|
| MITCHELL SANDLER PLLC | GUNSTER, YOAKLEY & STEWART, P.A. |
| By: */s/ Ari Karen* | |
| Ari Karen (admitted *pro hac vice*) | John Schifino (FL Bar No. 0072321) |
| Arielle Stephenson (admitted *pro hac vice*) | Daniel Dietrich (FL Bar No. 934461) |
| Christopher L. McCall (admitted *pro hac vice*) | Gregory Pierson (FL Bar No. 123905) |
| Courtney E. Walter (FL Bar No. 0106228) | 401 East Jackson Street, Suite 1500 |
| 1120 20th Street NW, Suite 725 | Tampa, Florida 33602 |
| Washington, D.C. 20036 | jschifino@gunster.com |
| akaren@mitchellsandler.com | ddietrich@gunster.com |
| astephenson@mitchellsandler.com | gpierson@gunster.com |
| cmccall@mitchellsandler.com | Telephone: (813) 228-9080 |
| cwalter@mitchellsandler.com | |
| Telephone: (202) 886-5292 | |

*Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 30, 2024, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*/s/ Ari Karen*
Ari Karen
