# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | ) <br> ) Case No. 8:22-cv-01660-UAM <br> ) |
| Plaintiff, | ) **PLAINTIFF MUTUAL OF OMAHA** <br> ) **MORTGAGE, INC.'S RESPONSE TO** |
| v. | ) **WATERSTONE'S OBJECTION TO** <br> ) **DISCLOSURE OF NEW, INCONSISTENT** |
| WATERSTONE MORTGAGE CORPORATION, | ) **"FACTS" 11 MONTHS AFTER THE** <br> ) **CLOSE OF DISCOVERY AND ON THE** <br> ) **EVE OF TRIAL** |
| Defendant. | ) |

Waterstone's latest correspondence[1] attempts to myopically and misleadingly eliminate evidence of trade secrets misappropriation by re-arguing[2] the issues discussed before and decided by the Court on April 17, 2024. As set forth below, Waterstone's position is factually untenable and should be wholly rejected for the foregoing reasons:

### I.  Mutual Has Not Added Any Trade Secrets Since Supplementing Its Discovery Response on April 1, 2024

---

[1] Waterstone entitles its correspondence as an "Objection to Disclosure of New, Inconsistent 'Facts' 11 Months After The Close of Discovery And On the Eve of Trial", ECF No. 200.

[2] Waterstone's secondary argument that Mutual should not be permitted to allow a corporate representative testify about the support for its 30-month duration is yet another attempt to second-guess this Court's decision. At the pre-trial conference hearing on May 17, 2024, undersigned counsel explicitly stated on the record that Mutual's expert would supplement her report, but that Mutual would need to designate an additional corporate representative to provide the basis for the report, who would be deposed. Neither the Court nor Waterstone's counsel objected, realizing that an external expert would not be the appropriate person to provide the factual basis for the 30 month duration.

1

Mutual's trade secrets include (i) customer lists; (ii) profit loss statements and (iii) qualified loan opportunities. Specifically, Mutual has disclosed three (3) customer lists; two (2) Profit and Loss Statements and seventeen (17) loan opportunities. All of these trade secrets were fully disclosed when Mutual updated its interrogatory response on or about April 1, 2024, after completing discovery and depositions wherein these trade secrets were discussed at length.  At no point were any of these trade secrets "new" as all three categories were included in the original answers to interrogatories, including multiple examples of each type of trade secret.  Though additional examples were included when Mutual updated its interrogatory answer, these were not surprising given that all of these examples had been utilized throughout discovery in multiple depositions.

Contrary to Waterstone's depiction, there are not 284 trade secrets, nor were 89 trade secrets added after summary judgment. Rather, the Court instructed Mutual to provide the actual trial exhibits it would propose to use at an eventual trial to identify those trade secrets. In doing so, Mutual provided Exhibits on a loan opportunity by loan opportunity basis.  In other words, all emails and correspondence relating to a particular loan opportunity were attached as a singular exhibit. [3] But this does not change a singular loan opportunity – the trade secret at issue – into multiple loans. Yet, Waterstone claims that the addition of the supporting materials concerning the

---

[3] Mutual believes it will ultimately be too confusing to break down every communication into a separate exhibit at trial.  Thus, the exhibits are cumulative in nature.

singular loan opportunity– all of which were produced and utilized in discovery -- is adding trade secrets. That is not the case. Mutual is asserting the diverted trade secret was the loan opportunity – not the specific documents. Indeed, as Waterstone admits, the identity of borrowers willing, able, and ready to proceed with a loan is very valuable, particularly when other lenders do not have that information. *See* Deposition Tr. of Chris Wolf, attached as Ex. A at 126:9-127:12 (reflecting that the identity of a borrower actually willing to proceed with the transaction and pursue application is valuable); *see also* Deposition Tr. of Dwayne Hutto, attached as Ex. B at 100:6-16 (agreeing that the identity of a borrower 100% willing, ready and able to proceed was more valuable than leads he purchased). So, if for example a hypothetical loan for the Jones family was identified as a loan and their 2020 tax return was shared, a separate trade secret does not arise because in a subsequent email the 2019 tax return was separately shared. Rather, the trade secret was the fact that borrower Jones was able ready and willing to proceed as demonstrated by the identifying information in the 2020 tax return. The fact that in providing trial Exhibits Mutual included all associated materials and relevant correspondence, does not "add" trade secrets to the case. The trade secrets are not specific documents *per se*, but what they represent – the identity of borrowers willing and able to pursue a loan that only Mutual knew about and had access to prior to Waterstone's diversion. Any accusation that Mutual is adding trade

secrets is simply inaccurate. No trade secrets have been added since Mutual was last before the Court and Waterstone is well aware of that fact.[4]

## II. Waterstone Was Aware of the Trade Secrets Before the Complaint Was Filed

Waterstone produced an expert report of Brian Creasy, who opines that "Waterstone's efforts to protect against possession or use of Mutual's alleged trade secrets were reasonable in light of the facts known." Expert Report of Brian Creasy, attached as Ex. C, at 2. As support for this conclusion, he states Waterstone "immediately removed access to the files that the new hires uploaded to their OneDrive accounts which contained any reference to Mutual of Omaha or any document that appeared to contain borrower documents, personal identifying information, loans in progress, etc. This resulted in data from five (5) new hires' OneDrive accounts being quarantined[.]" *Id.* at 3. He states this occurred around April 29, 2022 when Mutual sent cease-and-desist letters. *Id.* at 3. Mutual's initial complaint was not filed until July 22, 2022. ECF No. 1.

It simply is not possible that Waterstone was able to take reasonable steps to protect against use of "Mutual's alleged trade secrets," without Waterstone having some idea of what those were. Waterstone's expert was apparently able to identify "Mutual's alleged trade secrets" that contained borrower and personal identifying information, allegedly quarantine them, and then conclude that such efforts reflect a reasonable effort to protect against usage of Mutual's trade secrets. Accordingly,

---

[4] Additionally, all of the materials within the exhibits disclosed were properly produced in discovery.

4

Waterstone's claims of surprise and confusion ring hollow given its clear awareness of what Mutual considered its trade secrets.

### III. Mutual Identified the Type of Trade Secrets During the Complaint

Mutual also advised Waterstone when it filed its Complaint of the fact that it considered these loan opportunities a trade secret:

> When a consumer applies for a loan with Mutual Mortgage, the consumer provides Mutual Mortgage with a wide variety of personal and confidential information, including Social Security numbers, dates of birth, contact information, sensitive credit history, wage statements, bank account numbers, mortgage amounts, tax returns, and all the financial information that is necessary to facilitate a home loan.
>
> This type of information has independent economic value because of it enables and facilitates the preparation of a loan application It also separates those borrowers ready, willing, and able to proceed with a loan application from those that are not able or willing to proceed.
>
> ***
>
> If a competitor obtained this information, it could undercut Mutual Mortgage on Mutual Mortgage's loans and divert Mutual Mortgage's customers by aggressively pursuing those customers based on the information kept by Mutual Mortgage. That is precisely what WaterStone has done here

*See* Amended Complaint, ECF No. 37 at ¶¶ 43-44, 47. Mutual then proceeded to identify multiple examples of loan opportunities that were divulged and diverted to Waterstone. *See id.* at ¶¶ 48-62. Thus, Waterstone was fully aware of the loan opportunities as well as P&L lists and customer lists that Mutual claims were misappropriated. *See id.* at ¶¶ 37, 41.

5

### IV.     Mutual and Waterstone Used and Discussed the Trade Secrets Throughout Depositions and Discovery

Attached hereto as Exhibit D is a chart that outlines the extensive use of the documents and trade secrets that were discussed throughout the depositions in this case. In fact, all but four of the specific examples of the trade secrets were discussed at depositions – often multiple depositions – with supporting documents attached to those depositions. Simply put, Waterstone has known not only about the nature of the trade secrets alleged -- but the specific examples of the trade secrets at issue – throughout this litigation.

### V.      All Trade Secrets were Disclosed Prior to Waterstone's Request for a June Trial Date

Waterstone's feigned surprise and claims for the need for extensive discovery is wholly inconsistent with the fact that, fully aware of the trade secrets disclosed by Mutual on April 1, 2024, on April 10, 2024, it sought a May or June trial date at the first status conference set with your Honor.[5] The Court then set the trial for June 3, 2024, which has since been rescheduled. So, in April, Waterstone specifically asked for a trial in June of this year fully aware of Mutual's updated answer to interrogatories. Accordingly, it is quite curious that Waterstone – in full awareness of Mutual's identified trade secrets – believed that it could try the case in a matter of weeks. Surely, Waterstone was not so cavalier nor over-confident to simply assume that the Court would strike Mutual's trade secrets before its motion had even been

---

[5] *See* ECF No. 153, 155-156.

briefed. Accordingly, Waterstone's extreme position shift – from the need for an immediate trial to now requiring extensive discovery – is curious. Query as to whether it is simply an effort to throw a pandora's box at the Court's calendar in an effort to avoid a trial on the merits of Mutual's misappropriation claims?

    At bottom, Waterstone has understood the nature and extent of the trade secrets at issue in this case before even Mutual did, as reflected by the admissions of its expert. If there was any doubt about it, Mutual erased it in the Amended Complaint and throughout discovery. Though it may be that a handful of examples were not identified until Mutual supplemented its discovery response, its failure to initially disclose the materials does not warrant exclusion of the misappropriation claims. *SFR Servs. LLC v. Elec. Ins. Co.*, No. 8:19-cv-2013-CPT, 2021 WL 1193284, at *5 (M.D. Fla. Mar. 30, 2021) (refused to exclude an expert's untimely supplemental affidavit because it did "not provide any 'new theories'… and instead include[d] information that one would fairly expect [Plaintiff] to elicit from [the witness] at trial."); *Braggs v. Dunn*, No. 2:14cv601-MHT, 2017 WL 659169, at * 37-38 (M.D. Ala. Feb. 17, 2017) (failure to supplement was harmless where the information was disclosed elsewhere in discovery, and thus, Plaintiff suffered no harm); Fed. R. Civ. Procedure 26(e) advisory committee notes ("there is 'no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process[.]'"; 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 ("there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or

7

otherwise through formal discovery.'"). Accordingly, the Court should remain steadfast in its original decision of April 17, 2024 and Order the parties to set a trial date and any remaining discovery needed. [6]

Dated: Washington, D.C.
May 30, 2024

          MITCHELL SANDLER PLLC

          By: /s/ Ari Karen

          Ari Karen (admitted *pro hac vice*)
          Arielle Stephenson (admitted *pro hac vice*)
          Christopher L. McCall (admitted *pro hac vice*)
          Courtney E. Walter
          1120 20th Street NW, Suite 725
          Washington, D.C. 20036
          Email:
          Email: astephenson@mitchellsandler.com
          Email: cmccall@mitchellsandler.com
          Email: cwalter@mitchellsandler.com
          Telephone: (202) 886-5292

          GUNSTER, YOAKLEY & STEWART, P.A.

          John A. Schifino
          Florida Bar No. 0072321
          Daniel P. Dietrich
          Florida Bar No. 934461
          Gregory L. Pierson
          Florida Bar No. 123905
          401 East Jackson Street, Suite 1500
          Tampa, Florida 33602
          jschifino@gunster.com
          ddietrich@gunster.com
          gpierson@gunster.com
          Telephone: (813) 228-9080
          *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*

---

[6] Mutual attempted to obtain depositions dates from Waterstone and a proposed discovery and trial schedule. Waterstone was not willing to engage in such discussions.

## CERTIFICATE OF SERVICE

I certify that on June 3, 2024, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*/s/ Ari Karen*
Ari Karen
