# **EXHIBIT A**

Page 1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

_____

MUTUAL OF OMAHA MORTGAGE, INC.,

      Plaintiff,

  v.                     Civil Action No.

WATERSTONE MORTGAGE CORPORATION,  22-CV-01660

      Defendant.

_____

VIDEOTAPED DEPOSITION OF

CHRISTOPHER WOLF

DATE:         Tuesday, July 25, 2023

TIME:         9:03 a.m.

LOCATION:     Remote Proceeding

              Ormond Beach, FL

REPORTED BY:  Timothy Guevara, Notary Public

JOB NO.:      6016993

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 126

1  there are places where the loan can, for lack of a
2  term, fall out?
3     A   Yes.
4     Q   Okay. And you know what I mean by fall out,
5  just so we're talking the same language? That means
6  somebody decides not to proceed forward; right?
7     A   That could be one of the reasons, yes.
8     Q   Right. But when I refer to fall out, what
9  I'm saying, is they fall out because for whatever
10 reason they're not going to move forward on the loan.
11 That's what I'm referring to as a fall out; is that
12 fair?
13    A   Yes.
14    Q   Okay. So one of the areas which you agree
15 that people fall out is at the point of the credit
16 score; right? Because they just might not give you
17 that access to your credit; is that a place where you
18 could have a fall out?
19    A   Yes.
20    Q   And another place you could have a fall out
21 is when you say, "Hey, go and give me all the
22 documents, you know, that I need to do this loan."

Page 127

1  That's another place when you fall out; right?
2     A   Yes, if they didn't agree to provide the
3  documents you need, correct.
4     Q   And some people, people don't want to, you
5  know, they're not serious or, you know, they don't
6  want to go through a hassle of getting all the stuff.
7  That's another fall out place of the loan; right?
8     A   Yes.
9     Q   Okay. So when you get the borrower to
10 provide the credit score and all that information,
11 that's getting sort of also their buy in to the loan
12 process; right?
13    A   Yes.
14    Q   And their buy in with you to the loan
15 process; correct?
16    A   Yes.
17    Q   So merely having that information is
18 valuable to you in regard to the loan process, because
19 you've gone through and gotten that borrower's buy in;
20 right?
21    A   Yes.
22    Q   And you further qualify that business

Page 128

1  opportunity; right?
2     A   Right.
3     Q   And so that loan at that point is much more
4  valuable to you, just having all that information than
5  some random, you know, person out there that might buy
6  a house; isn't it?
7     A   Yes.
8     Q   So just knowing that identity of that
9  person, who's willing to give that all to you, and
10 willing to go forward that far, just in and of itself,
11 that's valuable; isn't it?
12    A   True.
13    Q   And you're providing that to Waterstone, to
14 Kyrstin over there; aren't you?
15    A   I'm providing the documents from her client
16 to her. But she -- she'd already gained that trust
17 and respect. And we were trying to make it easier on
18 them, on the clients, not having to provide all that
19 information again and go find those documents.
20    Q   But you were also, by virtue of sending all
21 this information, making it easier for Waterstone to
22 close the mortgage; right?

Page 129

1        MS. KREITER: Object to the form.
2        THE WITNESS: I was making it easier on
3  the client, on Kyrstin's clients, so they didn't have
4  to dig up all those documents again.
5  BY MR. KAREN:
6     Q   But they also could have just closed the
7  loan at Mutual; couldn't they? That would have made
8  it easier, too.
9     A   These were applications. They weren't
10 actual loans yet. They were just pre-qualified
11 people.
12    Q   Sir, that's not my question. My question
13 is, they could have just stayed at Mutual; couldn't
14 they? And then they wouldn't have had to provide the
15 documents twice; right?
16    A   Well, their loan officer wasn't there. The
17 person they trust to close the loan wasn't there
18 anymore. They decided to -- they wanted to stay with
19 Kyrstin.
20    Q   They could have just -- my question is --
21 they could have closed that loan at Mutual and just
22 left all the documents there; right?