# <u>EXHIBIT C</u>



THE EVIDENCE. THE BACKSTORY.
THE INTELLIGENCE. **WE GET IT.**

The Frick Building
437 Grant Street, Suite 1250
Pittsburgh, PA 15219
412.325.4033
www.bit-x-bit.com

Maria Kreiter
Godfrey Kahn
833 East Michigan Street
Milwaukee, WI 53202
mkreiter@gklaw.com

June 5, 2023

Re: Mutual of Omaha Mortgage, Inc. v Waterstone Mortgage Corporation
CV: 8:22-cv-01660-TPB-JSS

Dear Ms. Kreiter,

The following summarizes my analysis and involvement with the above-identified matter. It is also based on my professional background, skills, and experience.  A copy of my curriculum vitae is attached as Ex. A. My opinions and conclusions are provided to a reasonable degree of professional certainty.

Table of Contents:

A. Background and Engagement ................................................................................................. 1
B. Sources Considered ............................................................................................................... 2
C. Summary of Opinions ........................................................................................................... 2
D. Waterstone's Efforts ............................................................................................................. 2
E. Supplemental Search Efforts ................................................................................................ 3

**A. Background and Engagement**

1. bit-x-bit was engaged to assist in the forensic identification of certain files allegedly belonging to Mutual of Omaha Mortgage, Inc., ("Mutual") within the computer systems of Waterstone Mortgage Corporation ("Waterstone") and to opine on the reasonableness of Waterstone's efforts.  This report and my opinions and conclusions contained herein are based on my understanding of the issues and facts and the information available to me.

EXHIBIT
1

**B.  Sources Considered**

2. I relied upon the sources identified in Ex. B. in preparing this report.

**C.  Summary of Opinions**

3. As discussed throughout this report, my opinions and conclusions are as follows:

  a.  Only a small number of documents that contain Mutual's alleged trade secrets were ever put on Waterstone's OneDrive.

  b.  Waterstone quarantined potential Mutual of Omaha files immediately upon learning such information may have been present within its computer systems, even before a cease-and-desist letter was received.

  c.  Waterstone undertook additional efforts with respect to Mutual's alleged trade secrets, including having the former Mutual employees delete any Mutual documents in their personal possession.

  d.  Waterstone's efforts to protect against possession or use of Mutual's alleged trade secrets were reasonable in light of the facts known.

**D.  Waterstone's Efforts**

4. As an initial step in my engagement a conference call was conducted on September 28, 2022 with Scott Howard, Waterstone's IT Security Manager, to discuss the steps Waterstone undertook to address the concerns that Mutual's confidential information may reside in Waterstone's computer systems. The following summarizes those events and efforts.

5. Waterstone's IT security system sent an alert the night of April 27, 2022, regarding a possible malware detection within Waterstone's Microsoft OneDrive environment involving Chris Wolf's account. The following morning, April 28, 2022, Mr. Howard investigated the malware alerts via incident tickets INC0363316 and INC0363317 (Ex. C1 and C2).

6. Although the initial alert by Microsoft was due to potential malware (which was remediated), Mr. Howard observed that Mr. Wolf's OneDrive folder contained a large number of files, which was unusual as Mr. Wolf was a new hire. During his investigation of the security alert, Mr. Howard observed that some of the files appeared to have originated from Mr. Wolf's prior employer, Mutual of Omaha.

7. Recognizing the potential issue, Mr. Howard immediately removed access to the files that the new hires uploaded to their OneDrive accounts which contained any reference to Mutual of Omaha or any document that appeared to contain borrower documents, personal identifying information, loans in progress, etc. This resulted in data from five (5) new hires' OneDrive accounts being quarantined ("the Quarantined Data").

8. While this effort was underway, Waterstone received multiple cease-and-desist letters from Mutual of Omaha on April 29, 2022, an example of which is attached (Ex. D).

9. As part of Waterstone's remediation efforts, Mr. Howard also conducted searches of Waterstone's email environment for any emails sent from the former Mutual employees into Waterstone via their Mutual of Omaha email accounts or known personal email accounts. Mr. Howard quarantined those emails in addition to the aforementioned OneDrive files.

10. Waterstone also interviewed the employees regarding documents of Mutual of Omaha in their possession and further quarantined any such data.

11. As an additional measure, Waterstone then required those employees who were the target of Mutual of Omaha's cease-and-desist demands to sign certifications that included the following affirmations: (i) the employee has cooperated with Waterstone's investigation into Mutual of Omaha's allegations regarding breach of the confidentiality duties owed to Mutual of Omaha, including Mutual of Omaha's allegations regarding customer information and the need for adherence to state and federal privacy laws; (ii) the employee has searched for Mutual of Omaha's information in his or her possession, including the employee's electronic devices and e-mail accounts; (iii) the employee does not currently possess any information of customers of Mutual of Omaha or any information belonging to Mutual of Omaha; and (iv) the employee does not have the ability to recreate, or regain access to, any information of Mutual of Omaha or its customers that was previously accessible to the employee because of his or her prior employment with Mutual of Omaha. An example of the certifications is attached as Ex. E.

**E. Supplemental Search Efforts**

12. Additional efforts have been taken regarding Waterstone's potential possession of Mutual of Omaha's alleged trade secrets, including those efforts described below.

13. I reviewed the list (Bates Numbers) and associated metadata, such as the email sender and recipients, of the one hundred eighty-six (186) alleged trade secrets (the "Alleged Trade Secrets") identified in Mutual of Omaha's interrogatory response[1] to determine the where the Alleged Trade Secrets were sent. The vast majority of the Alleged Trade Secrets were sent to nine (9) personal or third-party accounts and not to any Waterstone email account. Those accounts[2] were:

   a. Dwayne Hutto (dwayne.hutto@yahoo.com)

   b. Lorri Hutchcraft (lorrihutchcraft@gmail.com)

   c. Name Unknown (woofstar1@hotmail.com)

   d. Fred Stalls (fredstalls@fresliefinancial.com)

   e. Name Unknown (aaliyah200887@gmail.com)

   f. Alex Trejo (trejo_alexander@hotmail.com)

   g. Andrea Kugelman (andrea.kugelman@gmail.com)

   h. Stacy Flanigan (stacy.flanigan@angeloakms.com)

   i. Steve Emminger (semminger@clearedgelending.com)

14. Only three Alleged Trade Secrets emails were sent to Waterstone. Those emails were sent to the email accounts of Mike Smalley (msmalley@waterstonemortgage.com) and Dustin Owen (dowen@waterstonemortgage.com). Those emails were MOM-0000026, MOM-0000027 and MOM-0000033.

15. Using the metadata supplied by Mutual as part of its production to Waterstone, e.g., the file names and MD5 hash values specifically, I searched the Quarantined Data for any matches to the Mutual of Omaha Alleged Trade Secrets identified via Mutual's production. I found ten (10) matches[3]. Exhibit F is a list of the Mutual of Omaha alleged trade secrets including the filename, MD5 hash and DOCID, as supplied by Mutual with the addition that, when Mutual

---

[1] *See* Plaintiff Mutual of Omaha Mortgage, Inc.'s Second Amended Responses and Objections to Defendant Waterstone Mortgage Corporation's First Set of Interrogatories at Resp. to Interrogatory 8 (which states "Identify with particularity all trade secrets that Mutual of Omaha relies upon to support its Defend Trade Secrets Act and Florida Trade Secrets Act claims, and any other claim pursued in this case.").

[2] The names identified in many instances are derived based on the email account name. I have no independent knowledge of the ownership of any email account identified.

[3] Two sets of the Mutual of Omaha Alleged Trade Secret documents, MOM-0000029 and MOM-0000032, are identical, as are MOM-0000080 and MOM-0000198, thus they were not counted twice.

produced these documents and metadata, it did not include the MD5 hash values[4] for twenty-two (22) of its documents. Therefore, using my forensic analysis software, I generated the MD5 hash values for those documents so that they could be included in my searches. DOCID "MOM-0000327" is an example of a document for which I generated the MD5 hash for searching because it was not already supplied by Mutual.

16.  As Exhibit F indicates, five (5) Alleged Trade Secret documents were found as a result of the file's MD5 hash value, and six (6) Alleged Trade Secret documents were found as a result of the file's name.

I reserve the right to amend or supplement this report should additional relevant information become available. My firm's compensation for my time on this matter, including testimony, is $400 per hour and is outcome-neutral.

Brett Creasy, CCE, CISSP
President & Director of Digital Forensics
bit-x-bit, LLC

---

[4] MD5 hash values are effectively a "digital fingerprint" of the content of an electronic file. The content of a file does not include the file's name, thus, finding a MD5 match can identify files in which the file was renamed but the substance (content) of the file remained the same.

**Brett Creasy, CCE, CISSP, GCFA**
**bit-x-bit, LLC**
501 Grant Street, Suite 875
Pittsburgh, PA 15219
412-325-4033

## Professional Experience (Current)

**bit-x-bit, LLC** (October 17, 2007 to present)
Pittsburgh, Pennsylvania

Current Position: President & Director of Digital Forensics

As Director of Digital Forensics, I oversee the work our company provides in the preservation and analysis of electronic evidence and the presentation of such evidence to our clients, courts and arbitrators. My team and I conduct forensic examinations of a wide variety of electronic devices and data including laptops, desktops, servers, cell phones, deleted data, internet history, location data, system memory and external devices such as USB hard drives, optical media and online "cloud" sources.

Since joining bit-x- bit in 2007, I personally have performed hundreds of examinations for cases involving intellectual property theft, unauthorized use of computer systems and hacking, harassment, criminal and white collar crimes, employment class action cases, and other cases in state and federal courts, in arbitrations, and in connection with internal corporate investigations.

I also consult with our clients on non-litigation related matters including best practices on protecting company information and assets. This includes proactive measures of ensuring company written policy aligns with technical controls, as well as mitigation efforts that can be employed should a violation of those controls occur.

## Live Testimony

- *Whittaker v. Clear Floor Care* (June 2011, Lawrence County, PA)
- *Werner v. Werner* (November 2012, Allegheny County, PA)
- *Grey Mountain Partners LLC v. Anthony Santilli* (February 20 and 21, 2014, Allegheny County, PA)
- *WESCO Distribution Inc v. Wholesale Electrical Supply Company of Houston, Inc* (August 12 and 13, 2014, United States District Court for the Southern District of Mississippi Southern Division, MS)
- *Sandra Robertson v. Hunter Panels, LLC and Carlisle Construction Materials, Inc* (October 10, 2014, United States District Court for the Western District of Pennsylvania, PA)
- *Fitzgerald v. Borough of Economy* (Arbitration) (February 26, 2015, Allegheny County, PA)
- Urban Redevelopment Authority of Pittsburgh unemployment hearing (March 13, 2015)
- *Sandra Robertson v. Hunter Panels, LLC and Carlisle Construction Materials, Inc* (April 10,

**Exhibit A**

2015, United States District Court for the Western District of Pennsylvania, PA)

- *Sandra Robertson v. Hunter Panels, LLC and Carlisle Construction Materials, Inc* (April 14, 2015, United States District Court for the Western District of Pennsylvania, PA)
- *Vocollect, Inc v. A. Matthew Kramer and Lucas Systems, Inc* (October 29, 2015, Allegheny County, PA)
- *Chester Engineers, Inc v. Shawn Rosensteel* (November 10, 2015, Allegheny County, PA)
- *Myklin Enterprise, Inc /d/b/a v. David West* (December 8, 2015, Westmoreland County, PA)
- *Sigma Resources, LLC v. Marchitello* (January 20, 2016, Allegheny County, PA)
- *Spruce Environmental Technologies, Inc v. Festa Radon Technologies Co.* (September 1, 2016, United States District Court for Massachusetts, MA)
- *VersiTech, Inc., v. John Zajac, et al.* (October 13, 2016, United States District Court for the Western District of Pennsylvania, PA)
- *Novo Nordisk, Inc., v. Laureen A. Temple* (October 26, 2016, United States District Court for the Western District of Pennsylvania, PA)
- *Strategic Employee Benefit Services of Pittsburgh, Inc. v. Mary Lou Galati and The Guard Group, Inc.* (January 23, 2017, United States District Court for the Western District of Pennsylvania, PA)
- *John Wybranowski v. North Strabane Township* (labor arbitration hearing) (January 30, 2017, North Strabane Township, PA)
- *United States of America v. Richard A. Rydze* (March 20, 2017, United States District Court for the Western District of Pennsylvania, PA)
- *Christopher A. Azzaro v. Midtown Motors, Inc., and Randy Buzzo* (July 21, 2017, Circuit Court of Monongalia County, WV)
- *Commonwealth v. Adam Miles* (August 1, 2017, Washington County, PA)
- *Konica Minolta Business Solutions U.S.A., Inc., v. Teresa Natoli* (March 9, 2018, United States District Court for the Western District of Pennsylvania, PA)
- *Pierce v. Providence Care Center and Grane Healthcare Company* (April 26, 2018, Beaver County Common Pleas Court, Beaver, PA)
- *Pierce v. Providence Care Center and Grane Healthcare Company* (April 30, 2018, Beaver County Common Pleas Court, Beaver, PA)
- *Knox v. PPG Industries* (October 3, 2018, United States District Court for the Western District of Pennsylvania, PA)
- *In Re Estate of Paul A. Gardner, Sr.* (December 17, 2019, Court of Common Please 26th Judicial District of Montour County, PA, Orphans Court Division)
- *In Re Estate of Paul A. Gardner, Sr.* (May 21, 2020, Court of Common Please 26th Judicial District of Montour County, PA, Orphans Court Division - via video conference)
- *Eriez Manufacturing Co., v. Timothy G. Shuttleworth* (August 17, 2020, United States District Court for the Western District of Pennsylvania, PA – via video conference)
- *Indocarb Corp. Inc. v. Indocarb AC LLC & Santhosh Madhavan* (October 6, 2020, United States District Court for the Western District of Pennsylvania, PA – via video conference)
- *Matthews International Corp. v. Anthony Lombardi, et al* (October 9, 2020, United States District Court for the Western District of Pennsylvania, PA – via video conference)
- *RECO Equipment, Inc., v. Jeffrey S. Wilson, Joseph Craig Russo, et al.* (November 13, 2020, United States District Court for the Southern District of Ohio Eastern Division, OH – via video conference)
- *CBF Industria, et al., v. AMCI Holdings, Inc., et al.* (November 23, 2020, United States District Court Southern District of New York, NY – via video conference)
- *Matthews International Corporation v. Anthony Lombardi, et al.* (December 9, 2020, United States District Court for the Western District of Pennsylvania, PA – via video conference)
- *Chromalox Inc., v. Crombie* (January 8, 2021, United States District Court for the Western

District of Pennsylvania, PA – via video conference)

- *Wolf v. Hunter Leasing, LLC, et al.* (January 11, 2021, Court of Common Pleas of Washington County Pennsylvania – via video conference)
- *QPS MRA, LLC, et al., v. Suncoast Research Group, LLC, et al.* (February 7, 2021, Circuit Court for the Eleventh Judicial Circuit In and for Miami-Dade County, Florida, Complex Business Division – via video conference)
- *Daniel Carr v. Community College of Allegheny County and Quinton Bullock* (May 6, 2021, United States District Court for the Western District of Pennsylvania, PA – via video conference)
- *Winfield Resources, LLC v. PennEnergy Resources, LLC* (October 13, 2021, Allegheny County, PA – Arbitration Deposition Testimony – via video conference)
- *RD Real Estate Debt Fund II, L.P. v Passport Title Services LLC* (February 13, 2023, Allegheny County, PA)
- *Matthews International Corporation v. Richard Belcourt, et al.* (May 1, 2023, Allegheny County, PA)

## Select Certifications

**Certified Computer Examiner ("CCE")**

I am a Certified Computer Examiner (CCE) and a member of the International Society of Forensic Computer Examiners (ISFCE). CCE certification requires the applicant to complete a rigorous standardized testing process that includes the completion of a written exam, a three part practical exam and preparation of expert reports. The CCE certification is not specific to any particular electronic evidence type or vendors' tool used for analysis, but instead focuses on the use of sound, proven evidence handling and examination procedures.

**Certified Information Systems Security Professional ("CISSP")**

CISSP® certification is a globally recognized standard of achievement that confirms an individual's knowledge in the field of information security. The exam tests competency in ten domains including:

- o   Access Control
- o   Telecommunications and Network Security
- o   Information Security Governance and Risk Management
- o   Software Development Security
- o   Cryptography
- o   Security Architecture and Design
- o   Operations Security
- o   Business Continuity and Disaster Recovery Planning
- o   Legal, Regulations, Investigations and Compliance
- o   Physical (Environmental) Security

**GIAC Certified Forensic Analyst ("GCFA")**

The GCFA certification is for professionals working in the information security, computer forensics, and incident response fields. The certification focuses on core skills required to collect and analyze

**Exhibit A**

data from Windows and Linux computer systems.

The GCFA certifies that candidates have the knowledge, skills, and ability to conduct formal incident investigations and handle advanced incident handling scenarios, including internal and external data breach intrusions, advanced persistent threats, anti-forensic techniques used by attackers, and complex digital forensic cases.

## Education

University of Pittsburgh – Innovation Institute (Jan. 2015 – Dec. 2015)
- Certificate – Entrepreneurial Fellow

Capella University (2008 - 2013)
- Bachelor of Science in Information Technology – Information Assurance and Security Specialization
- Graduated Cum Laude (3.7 GPA)

Villanova University (2006 to 2007)
- Certificate in Mastering of Project Management
- Certificate in Project Management for IS/IT Professionals
- Certificate in Essentials of Project Management

Pittsburgh Technical Institute (2004 to 2005)
- Associate of Science in Information Technology – Network Security and Computer Forensics

Pittsburgh Technical Institute (2001 to 2003)
- Diploma - Microsoft Network Professional+ Program

## Professional Affiliations

- International Society of Forensic Computer Examiners
- Pittsburgh Technology Council
- ISSA (Information Systems Security Association)

## Select Speaking Engagements

Multiple times per year I guest lecture at universities, and present at various professional group events including:

- Carnegie Mellon University's Master of Science in Information Security
- The Cyril H. Wecht Institute's "Forensic Fridays"
- University of Pittsburgh's Law School
- Duquesne University's Law School
- Information Systems Security Association

**Exhibit A**

- Pennsylvania Bar Institute

## Published Articles

- Allegheny County Bar Association Lawyers Journal, January 1, 2021: Microsoft Teams – How to smartly use a powerful collaboration tool
- Allegheny County Bar Association Lawyers Journal, August 28, 2020: Forensics from a distance – defensible collection of remote data

## Professional Experience (Prior)

**University of Pittsburgh Medical Center** (4/14/2008 to 10/29/2009)
Pittsburgh, PA
Position: Information Security Analyst

I served as a primary technical contact and performed project management related duties for a variety of security initiatives including:

- Deployment of new security products to UPMC's 35,000+ computers
- PCI DSS compliance efforts
- Replacing the secure email system with an internally developed system
- Deployment of a data loss prevention system
- Deployment and management of application-aware firewalls

**Scott Consulting Resources** (UPMC) (9/17/2007 to 4/14/2008) Pittsburgh, PA
Position: Information Security Analyst

While at Scott Consulting Resources, I was placed with UPMC and performed the following duties:

- Review security plans for application and network systems in the UPMC enterprise to ensure security best practices and UPMC policy had been followed. Provide help to system owners on how to achieve compliance and create a secure system.
- Perform vulnerability assessments on servers and web applications. Provide reports to system owners and explain any remediation steps and best practices.
- Perform wireless network security audits and provide internal status reports to the information security group.
- Perform administrative functions for the web application firewall, and enterprise antivirus/antispyware solution.

**CA, Inc.** (1/9/2006 to 9/13/2007) Pittsburgh, PA
Position: Support Engineer

Provided 24/7 technical support for all of CA's threat management line of enterprise security products to CA's world-wide business customers. CA's threat management line covered anti-virus/anti-spyware, web content filtering and anti-spam and host based intrusion protection software.

**Exhibit A**

1. Mutual of Omaha Complaint, dated July 7, 2022
2. Exhibit A to joint motion for entry of stipulated protective order, dated October 25, 2022
3. Mutual of Omaha Second Amended Responses and Objections to Waterstone's First Set of Interrogatories
4. Metadata list of Mutual of Omaha's alleged trade secrets documents
5. Electronic copy of Mutual of Omaha's alleged trade secrets
6. Waterstone Incident reports "INC0363316" and "INC0363317"
7. List of Mutual of Omaha and personal email addresses searched for by S. Howard
8. Certifications of 18 Waterstone employees

**Exhibit B**

| | |
|---|---|
| **Report Title:** | Incident Details |
| **Run Date and Time:** | 03-01-2023 02:53:19 PM Central Standard Time |
| **Run by:** | Scott Howard |
| **Table name:** | incident |

## Incident

| | | | |
|---|---|---|---|
| Number: | INC0363316 | Opened: | 04-28-2022 08:12:39 AM |
| Requestor: | Scott Howard | Opened By: | Scott Howard |
| Branch: | Corporate | Due date: | |
| Service Line: | Information Services | Channel: | Email |
| Category: | Security | Incident state: | Closed |
| Subcategory: | Security Events | Assignment group: | Security SN |
| Incident Type: | Support Request | Assigned to: | Scott Howard |
| Incident Type: | | Project/Initiative: | |
| Support Type: | | Compliance Issue: | false |
| Borrower Name: | | System Admin: | false |
| Loan Number: | | Urgent: | false |
| Cenlar Loan Number: | | Priority(u_priority): | |
| Phone Call to Requestor: | | Cenlar Action Pending: | false |
| Duplicate/Trash Ticket: | false | | |
| Disable Notifications: | false | | |

| Short description: |
|---|
| FW: Defender for Cloud Apps alert: Malware detection |

| Description: |
|---|

**Exhibit C1**

From: Microsoft Cloud App security <no-reply@cloudappsecurity.com>

Date: Wednesday, April 27, 2022 at 10:34 PM

To: Scott Howard <showard@waterstonemortgage.com>, Brian Wesselhoff <BWesselhoff@WaterstoneMortgage.com>, Matt Stensberg <MStensberg@WaterstoneMortgage.com>

Subject: Defender for Cloud Apps alert: Malware detection

EXTERNAL EMAIL: Use Caution!

[Microsoft Cloud App Security]

Alert: Malware detection

Hello,

Defender for Cloud Apps recently detected suspicious activity in your organization by cwolf@waterstonemortgage.com in Microsoft OneDrive for Business.

File policy 'Malware detection' was matched by 'vlmcsd.exe'

Click below to view the incident report in your Defender for Cloud Apps dashboard.

Incident report

<https://nam04.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwaterstonem.portal.cloudappsecurity.com%2F%23%2Falerts%2F6269ddd989c11010 978d22bc&data=05%7C01%7Cshoward%40waterstonemortgage.com%7Cbefeff9bcfd4a99de0608da28c7ffe6%7C2fc38618388a44c1bf3bc961b140a97d% 7C0%7C0%7C637867136723220625%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D %7C3000%7C%7C%7C&sdata=gTcGDZCt8C2oD79f3qVP%2FmEZK2aCP7ZoKYkHTMVF3q8%3D&reserved=0>

Thanks, Microsoft Defender for Cloud Apps

One Microsoft Way

Microsoft respects your privacy. Please read our  privacy statement<https://nam04.safelinks.protection.outlook.com/?url=http%3A%2F%2Fgo.microsoft.com%2Ffwlink%2F%3FLinkId%3D512132&data=05%7C01%7 Cshoward%40waterstonemortgage.com%7Cbefeff9bcfd4a99de0608da28c7ffe6%7C2fc38618388a44c1bf3bc961b140a97d%7C0%7C0%7C637867136723 220625%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D%7C3000%7C%7C%7C&sdata =VoYrjIO6oNsI7dNuRjjIWKcWPmZlbCwRs67O2Hg5bWc%3D&reserved=0>

Redmond, WA

98052-6399 USA

| | |
|---|---|
| On Hold Date: | |
| Fully completed & signed Builder Application: | |
| false | |
| Signed Reference Check Authorization: | |
| false | |
| Evidence of Liability Insurance: | |
| false | |
| Evidence of Workers Compensation Insurance or Certificate of Exemption: | |
| false | |
| Builder's W9: | |
| false | |
| 3 completed trade references: | |
| false | |
| 3 completed client references: | |
| false | |
| 2 months bank statements: | |
| false | |
| Resume: | |
| false | |

| License: |
|---|
| false |

| Secretary of state business search: |
|---|
| false |

| List of Builder's current inventory & work in progress: |
|---|
| false |

| Bank ref letter, contact info or 2 yrs. bus. tax returns, YTD P&L and bal. sheet: |
|---|
| false |

## Notes

| Watch list: |
|---|

| Time worked: |
|---|
| 26 Minutes |

| Additional comments: |
|---|

| Work notes: |
|---|

## Related Records

| Problem: | | Change Request: |
|---|---|---|
| | | Caused by Change: |

## Closure Information

| Knowledge: | false | Closed by: | Scott Howard |
|---|---|---|---|
| Resolution code: | Solved (Permanently) | Closed: | 05-05-2022 09:00:04 AM |
| Resolution notes: | | | |

win32/autokms Malware. Permanently removed.

| **Related List Title:** | Time Worked List |
|---|---|
| **Table name:** | task_time_worked |
| **Query Condition:** | Task = INC0363316 |
| **Sort Order:** | None |

2 Time Worked

| Time worked | User | Comments | Created | Task |
|---|---|---|---|---|
| 26 Minutes | Scott Howard | | 04-28-2022 08:36:06 AM | INC0363316 |
| 12 Seconds | Scott Howard | | 04-28-2022 08:35:01 AM | INC0363316 |
| Sum | 26 Minutes | | | |

| | | | |
|---|---|---|---|
| **Report Title:** | Incident Details | | |
| **Run Date and Time:** | 03-01-2023 02:54:05 PM Central Standard Time | | |
| **Run by:** | Scott Howard | | |
| **Table name:** | incident | | |

## Incident

| | | | |
|---|---|---|---|
| Number: | INC0363317 | Opened: | 04-28-2022 08:12:43 AM |
| Requestor: | Scott Howard | Opened By: | Scott Howard |
| Branch: | Corporate | Due date: | |
| Service Line: | Information Services | Channel: | Email |
| Category: | Security | Incident state: | Closed |
| Subcategory: | Security Events | Assignment group: | Security SN |
| Incident Type: | Support Request | Assigned to: | Scott Howard |
| Incident Type: | | Project/Initiative: | |
| Support Type: | | Compliance Issue: | false |
| Borrower Name: | | System Admin: | false |
| Loan Number: | | Urgent: | false |
| Cenlar Loan Number: | | Priority(u_priority): | |
| Phone Call to Requestor: | | Cenlar Action Pending: | false |
| Duplicate/Trash Ticket: | false | | |
| Disable Notifications: | false | | |

| Short description: |
|---|
| FW: Defender for Cloud Apps alert: Malware detection |
| Description: |

**Exhibit C2**

From: Microsoft Cloud App security <no-reply@cloudappsecurity.com>
Date: Wednesday, April 27, 2022 at 10:34 PM
To: Scott Howard <showard@waterstonemortgage.com>, Brian Wesselhoff <BWesselhoff@WaterstoneMortgage.com>, Matt Stensberg <MStensberg@WaterstoneMortgage.com>
Subject: Defender for Cloud Apps alert: Malware detection

EXTERNAL EMAIL: Use Caution!

[Microsoft Cloud App Security]
Alert: Malware detection
Hello,
Defender for Cloud Apps recently detected suspicious activity in your organization by cwolf@waterstonemortgage.com in Microsoft OneDrive for Business.
File policy 'Malware detection' was matched by 'FakeClient.exe'
Click below to view the incident report in your Defender for Cloud Apps dashboard.

Incident report
<https://nam04.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwaterstonem.portal.cloudappsecurity.com%2F%23%2Falerts%2F6269ddd989c11010
978d22bd&data=05%7C01%7Cshoward%40waterstonemortgage.com%7C56e659f033eb4401cdcc08da28c80dcb%7C2fc38618388a44c1bf3bc961b140a97
d%7C0%7C0%7C637867136940746545%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3
D%7C3000%7C%7C%7C&sdata=qAhSPe2RqlCped%2Ffbd17mJ0pywfUl6ZmajnvfVvJjDw%3D&reserved=0>
Thanks, Microsoft Defender for Cloud Apps


One Microsoft Way

Microsoft respects your privacy. Please read our  privacy
statement<https://nam04.safelinks.protection.outlook.com/?url=http%3A%2F%2Fgo.microsoft.com%2Ffwlink%2F%3FLinkId%3D512132&data=05%7C01%7
Cshoward%40waterstonemortgage.com%7C56e659f033eb4401cdcc08da28c80dcb%7C2fc38618388a44c1bf3bc961b140a97d%7C0%7C0%7C637867136
940746545%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D%7C3000%7C%7C%7C&s
data=XbIIxRPSE%2BaG%2FH0MP9AwbL1awWfyg%2Bs8vf3n8sjp6YE%3D&reserved=0>
Redmond, WA
98052-6399 USA

| On Hold Date: |
| --- |
| Fully completed & signed Builder Application: |
| false |
| Signed Reference Check Authorization: |
| false |
| Evidence of Liability Insurance: |
| false |
| Evidence of Workers Compensation Insurance or Certificate of Exemption: |
| false |
| Builder's W9: |
| false |
| 3 completed trade references: |
| false |
| 3 completed client references: |
| false |
| 2 months bank statements: |
| false |
| Resume: |
| false |

| License: |
| --- |
| false |
| Secretary of state business search: |
| false |
| List of Builder's current inventory & work in progress: |
| false |
| Bank ref letter, contact info or 2 yrs. bus. tax returns, YTD P&L and bal. sheet: |
| false |

## Notes

| Watch list: |
| --- |
| Time worked: |
| 26 Minutes |
| Additional comments: |
| Work notes: |

## Related Records

| Problem: | | Change Request: |
| --- | --- | --- |
| | | Caused by Change: |

## Closure Information

| Knowledge: | false | Closed by: | Scott Howard |
| --- | --- | --- | --- |
| Resolution code: | Solved (Permanently) | Closed: | 05-05-2022 09:00:03 AM |
| Resolution notes: | | | |
| win32/autokms Malware. Permanently deleted. | | | |

| | |
| --- | --- |
| **Related List Title:** | Time Worked List |
| **Table name:** | task_time_worked |
| **Query Condition:** | Task = INC0363317 |
| **Sort Order:** | None |

2 Time Worked

| Time worked | User | Comments | Created | Task |
| --- | --- | --- | --- | --- |
| 50 Seconds | Scott Howard | | 04-28-2022 08:31:54 AM | INC0363317 |
| 25 Minutes | Scott Howard | | 04-28-2022 08:34:42 AM | INC0363317 |
| Sum          26 Minutes | | | | |



April 29, 2022

**VIA FEDEX and EMAIL**
Diana Jacobs
1717 Mason Avenue, #321
Daytona Beach, FL 32117

### Re:  Cease and Desist – Breach of Confidentiality and Non-Solicitation Agreement

Ms. Jacobs:

I represent Mutual of Omaha Mortgage, Inc. ("***Mutual***") as its Senior General Counsel.  We have recently uncovered evidence that you are in possession Mutual's confidential private customer information in direct violation of Mutual's Policies and Standards and your Agreement with Mutual (the "***Agreement***") that you signed at the time of your hire.  This information and any other Mutual customer information is considered "Confidential Information".

While Mutual's investigation is ongoing, Mutual has discovered that you have participated in a scheme to forward Confidential Information to personal email addresses and to the email addresses of other former employees of Mutual at the time they were employed by Waterstone.  In addition, based upon our information and belief, we believe that you worked in concert with multiple other former employees of Mutual to divert Mutual leads and Confidential Information to representatives of Waterstone Mortgage Corporation ("**Waterstone**").  Your conduct constitutes a gross violation of several sections of your Protective Agreement (Non-Solicit) with Mutual (the "***Agreement***").  Accordingly, I am sending a copy of this letter to Jeff McGuiness, President and CEO of Waterstone and Stephanie Ziebell, Senior Vice-President and General Counsel of Waterstone.

In addition, we have uncovered several emails from several scheme participants containing Mutual's protected Confidential Information that were forwarded from your assigned Mutual email accounts to personal email accounts and to email accounts of assigned Waterstone email accounts of former Mutual employees.  The numerous email transmissions with specific Mutual Confidential Information make it apparent that have been disclosed for Mutual Restricted Customers to Waterstone for the purpose of soliciting these customers to do business with Waterstone.  The Agreement clearly provides a prohibition against such conduct:

**Restrictive Covenants**. To protect the Company's legitimate business interests, including with respect to Employee's access to and use of the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its referral sources, customers and employees, Employee agrees that:

Non-Solicitation and Non-Inducement of Restricted Customers. During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or attempt to solicit any Restricted Customer; or (b) induce or encourage any Restricted Customer to terminate a relationship with the Company or to otherwise cease accepting services or products from the Company.

⌂ Equal Housing Lender  Corporate NMLS #1025894  www.nmlsconsumeraccess.org

**Exhibit D**

Cease & Desist
April 29, 2022
Page 2

Moreover, the Agreement defines **Confidential Information** to include "(b) the Company's records pertaining to customers (including key customer contact information), potential customers (including key contact information of anyone who applies for a mortgage with the Company or contacts the Company for mortgage needs), mortgage loan terms and related information..." Moreover, the Agreement additionally defines a Restricted customer as "any person(s) introduced to Employee by Company, assigned to Employee by Company, or introduced to Employee by a Referral Source whom, within twenty-four (24) months prior to the Last Day, Employee, directly or Indirectly (e.g., through employees whom Employee supervised, managed or directed): (a) provided a Competitive Product or Service, or (b) provided written proposals concerning a Competitive Product or Service.

The Agreement also prohibits sharing confidential information, including Mutual's personnel and contact lists:

> Access and Use. Employee expressly acknowledges and agrees that, by virtue of Employee's employment with the Company and exercise of Employee's duties for the Company, Employee will have access to and will use certain Confidential Information and Trade Secrets, and that such Confidential Information and Trade Secrets constitutes confidential and proprietary business information and/or Trade Secrets of the Company, all of which is the Company's exclusive property. Accordingly, Employee agrees that Employee will not, and will not permit any other person or entity to, directly or Indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for Company; and (c) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media.

I cannot overstate the gravity of your conduct and how seriously Mutual intends to address it. To avoid the legal consequences of your actions, including potential litigation, you must immediately cease and desist all activity that directly or indirectly breaches the Agreement, including sharing Mutual's Confidential Information with Waterstone. In addition, we demand that you inform Waterstone of your conduct and insist that they cease aiding your breach of contacting Mutual customers about whom you have provided information.

Mutual demands that you return all Confidential Information in your possession and any information you may have supplied to third parties. Additionally, we need you to complete the enclosed Certificate and return it to me by May 4, 2022 to make sure that Mutual and you are complying with customer privacy laws at both the state and federal levels. Mutual takes protection of its Confidential Information seriously.

If you fail to immediately comply with the foregoing demands, Mutual will take whatever actions it deems appropriate to protect the interests of itself and its customers, including injunctive relief and suit for all damages, including reasonable attorneys' fees and costs associated with this matter. Please note that because of the potential for litigation against you, you are on notice to preserve all electronic data which relates to the issues identified in this letter, including without limitation text

Cease & Desist
April 29, 2022
Page 3

messages and email correspondence included on personal and assigned emails at Waterstone, and all data stored in any format. Further, in the event of litigation, Mutual will depose you and request a court subpoena to conduct a forensic examination of your personal computer, email, and cell phone.

This notice deserves your immediate and undivided attention. Please return the attached Certificate to me **no later than the close of business on May 4, 2022** at mcarroll@mutualmortgage.com. I trust that you understand the seriousness of your actions and will respond appropriately.

Sincerely,

Mark J. Carroll
Senior Counsel

cc:    Jeff McGuiness, President and CEO         Stephanie Ziebell, Sr. VP, General Counsel
       Waterstone Mortgage Corporation           Waterstone Mortgage Corporation
       N25W23255 Paul Road                        N25W23255 Paul Road
       Pewaukee, WI 53072                         Pewaukee, WI 53072

**Exhibit D**

Cease & Desist
April 29, 2022
Page 4

## CERTIFICATE

I, _____, hereby certify to Mutual of Omaha Mortgage, Inc., with respect to customer information and records ("Information") in my possession, that:

1. I did not and will not share any of the Information with any other person. If you have shared any Information with another person, please explain: _____
   _____;

2. I have now destroyed and/or returned to Mutual of Omaha Mortgage, Inc. all Information in my possession,

3. I have deleted any copies of Information I have sent or received in electronic format. This includes but is not limited to Information transmitted through email, text and/or cloud storage, and

4. I cannot recreate or regain access to any Information.

_____

Dated: _____, 2022

CERTIFICATION

1. I was previously employed by Mutual of Omaha Mortgage, Inc. ("Mutual") and have now joined Waterstone Mortgage Corporation ("Waterstone").

2. I received an April 29, 2022 "cease-and-desist" letter from Mutual, a copy of which Mutual also sent to Waterstone.

3. I have cooperated with Waterstone's investigation into Mutual's allegations from the cease-and-desist letter regarding breach of the confidentiality duties owed to Mutual, including Mutual's allegations regarding customer information and the need for adherence to state and federal privacy laws.

4. Waterstone indicated it made efforts to implement a litigation hold and to search for and remove any discovered Mutual information from its systems.

5. I too have searched for Mutual information in my possession, including that I have searched my electronic devices and e-mail accounts.

6. I do not currently possess any information of the customers of Mutual or any information belonging to Mutual.

7. Nor do I have the ability to recreate, or regain access to, any information of Mutual or its customers that was previously accessible to me because of my prior employment with Mutual.


Date:            5/23/2022

Printed Name:    Chris Wolf

Signature:

27214859.1

**Exhibit E**

**Found due to Filename**

| Filename | MD5HASH | DOCID |
|---|---|---|
| Do's and Dont's - Wolf.pdf | 4B43118F15EA60BEC9146096C35F2F4A | MOM-0000055 |
| FKO & Work Flow Loan Partner.docx | 954EA0825E721E8229D3F9EE749A52AA | MOM-0000065 |
| Profit and loss statement.xlsx | c190b581f9d10f273bdd7b9f52ea1ef1 | MOM-0000080; MOM-0000198 |
| Cash Out LOX.pdf | 4A3D81B340B54CA50126C8482E779994 | MOM-0000327 |
| Manufactured Property Matrix.pdf | 200D43D3973617D9458C56AD078C2C96 | MOM-0000406 (also listed below) |
| Trust Requirements.xlsx | b8f28641252e146b742f8aeb5cb5e2bc | MOM-0000452 |

**Found Due to MD5HASH**

| Filename | MD5HASH | DOCID |
|---|---|---|
| 1728 Tampa P&L 2021-12.xlsx | d5b9c1292fcc9bc0ff6a0dd457f0ae75 | MOM-0000029; MOM-0000032 |
| 1734 Daytona P&L 2021-12.xlsx | bb8a5417acf9cb164da24abc73ec46b4 | MOM-0000034 |
| 1003 Fillable.pdf | EB0C1D235AE373FFA6B1FA3EBFA66B19 | MOM-0000334 |
| Appraisallinx - 2022.pdf | 48466711F4B7025214DF6F5AFE2E2C81 | MOM-0000342 |
| Manufactured Property Matrix.pdf | 200D43D3973617D9458C56AD078C2C96 | MOM-0000406 (also listed above) |

Yellow = method document was found

Green = MD5 generated by bit-x-bit due to not being provided by Mutual in its production

**Exhibit F**