**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MUTUAL OF OMAHA MORTGAGE, INC.

Plaintiff,

v.

WATERSTONE MORTGAGE CORPORATION,

Defendant.

CASE NO. 8:22-cv-01660-UAM

**WATERSTONE'S RESPONSE TO MUTUAL'S NOTICE OF DOCUMENTS AND CITATIONS REGARDING PLAINTIFF'S GOOD CAUSE FOR IDENTIFICATION OF TRADE SECRETS**

Mutual's newly constructed argument as to why it failed to abide by the Court's scheduling order, Judge Sneed's order to identify alleged trade secrets by bates-number, and the Federal Rules is nonsensical and does not demonstrate good cause. The Court should limit Mutual's alleged trade secrets to the 53 documents identified in discovery and proceed with setting briefing for Waterstone to renew its summary judgment motion on the trade secret claims.

## I. The Motion to Compel Hearing and The Court's Order Made Clear Mutual Was To Identify *All* Of Its Alleged Trade Secrets By Bates Number.

On October 4, 2022, Waterstone requested in discovery that Mutual "[i]dentify with particularity ***all trade secrets that [it] relies upon*** to support its Defend Trade Secrets Act and Florida Trade Secrets Act claims, and any other claim pursued in this case." (DE 137-1, Waterstone's First Set of Interrogatories to Mutual

at Interrog. No. 8.) (emphasis added). In response to Interrogatory 8, Mutual objected and referenced broad allegations in the complaint. (DE 137-2, Mutual's Responses and Objections to Waterstone's First Set of Interrogatories at Resp. to Interrog. No. 8.)

Waterstone moved to compel identification of Mutual's purported trade secrets on February 6, 2023. (Waterstone's Motion to Compel, DE 42.) At the hearing on Waterstone's Motion to Compel, counsel for Waterstone stressed the need for identification of Mutual's alleged trade secrets by Bates Number:

> **Ms. Kreiter:** […] "At this point **I really think I need to know the Bates number. You know, if it changes as discovery goes on, Mr. McCall could supplement**, but for me to defend the case I really need that information specific to the Bates number, and if he thinks that forms are or workflows are trade secrets, you know, so be it, he can have a long list, I just want to know exactly what it is."

(DE 61 at 10:4-10.) The Court's March 1, 2023 Order granting Waterstone's Motion to Compel is equally clear that Mutual was to identify by Bates Number *any* trade secrets it was relying on (i.e., documents responsive to interrogatory 8):

> 4. With respect to Defendant's Interrogatories Nos. 2–8, Plaintiff shall supplement its responses to include the bates numbers of those produced documents on which it relies as responsive to each interrogatory.

(DE 52, ¶ 4.) Mutual amended its response to interrogatory 8 on March 10, 2023, to identify 186 documents as its alleged trade secrets. (DE 137-3, Mutual's Second Amended Responses and Objections to Waterstone's First Set of Interrogatories, at Resp. to Interrog. No. 8.).

If this amended response did not encompass all alleged trade secrets, as explicitly requested by Waterstone's interrogatory 8 ("[i]dentify with particularity ***all*** trade secrets…"), Mutual was under a continuing duty to supplement or amend its response to interrogatory 8 during discovery. Fed. R. Civ. P. 26(e)(1)(A) (a party "***must*** supplement or correct" discovery responses "***in a timely manner*** if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

Relying on Mutual's March 10, 2023 discovery responses, Waterstone hired an e-forensic expert to analyze the 186 alleged trade secrets, deposed Mutual's corporate representative regarding those alleged trade secrets, and ultimately moved for summary judgment based on a lack of evidence to support the alleged trade secrets. At no point in discovery did Mutual ever amend its discovery responses to identify documents produced by Waterstone as its trade secrets, or additional documents produced by it as trade secrets. Even after the close of discovery on July 31, 2023, Mutual never sought leave of court to amend its discovery responses to add new documents or identify Waterstone documents as its alleged trade secrets. Mutual instead waited to amend its discovery response until April 4, 2024, ***over a year*** after the Court's March 1, 2023 Order, ***eight months*** after the close of discovery, ***after*** Waterstone filed its summary judgment motion on February 29, 2024, and ***after*** its own response to Waterstone's motion was due.

## II. Mutual Continues To Identify Alleged Trade Secrets That Were Never Disclosed In Discovery.

Mutual's April 4, 2024 discovery responses identify only 39 documents as alleged trade secrets, 33 of which were never identified in discovery. (DE 159-1, Mutual's Third Amended Responses and Objections to Waterstone's First Set of Interrogatories, at Resp. to Interrog. No. 8.) Even these belated, amended discovery responses are not accurate, as Mutual has since increased its number of alleged trade secrets to, most recently, 184 documents, as of June 7, 2024, per the disclosure attached as Exhibit 1. The following facts are apparent from Mutual's June 7th disclosure:

- Only 53 of the 184 alleged trade secrets were identified as such in discovery (prior to July 31, 2023)
- Of the remaining 131 alleged trade secrets purportedly identified on April 1, 2024:
  - 112 were produced on October 31, 2022 by Waterstone
  - 1 was produced on November 3, 2022 *by Mutual*
  - 17 were produced on January 6, 2023 *by Mutual*
  - 1 was produced on August 9, 2023 *by Mutual*

(*See* Ex. 1.) There is no reason Mutual could not have identified the remaining 131 alleged trade secrets in discovery prior to July 31, 2023, or shortly thereafter.

If, as Mutual now contends, it was always planning to claim Waterstone documents as its trade secrets, there is no excuse for *not* identifying those documents in its March 10, 2023 discovery responses. At that point, all Waterstone documents had been in Mutual's possession for months. It does not matter whether Mutual

*believed* the Court's March 1, 2023 order applied to documents produced by Waterstone or only documents produced by Mutual because Waterstone's discovery request asked for identification of ***all*** trade secrets.

**III. Mutual Did Not Establish Good Cause.**

A party seeking to amend its discovery responses after the close of discovery must establish good cause. *See* Fed. R. Civ. P. 16(b); *Fox v. Safeco Ins. Co. of Illinois*, No. 8:16-CV-2665-T-23JSS, 2017 WL 4102312, at *3 (M.D. Fla. Sept. 15, 2017) (party failed to establish good cause for amending discovery responses after the close of discovery and dispositive motion deadlines). "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Fox*, 2017 WL 4102312 at *2 (quoting *Ashmore v. Sec'y, Dep't of Transp.*, 503 Fed. Appx. 683, 685 (11th Cir. 2013)). *See also* M.D. Fla. Local R. 3.09(b) ("Failure to complete discovery procedures within the time established…shall not constitute cause for continuance unless such failure or inability is brought to the attention of the Court at least sixty (60) days in advance of any scheduled trial date and is not the result of lack of diligence in pursuing such discovery."). "A district court's decision to hold litigants to the clear terms of scheduling orders is not an abuse of discretion." *F.T.C. v. Lalonde*, 545 Fed. Appx. 825, 834 (11th Cir. 2013) (citation omitted). *See also Watkins v. Regions Mortg. Inc.*, 555 Fed. Appx. 922, 924 (11th Cir. 2014) (district court did not abuse its discretion by denying plaintiff's request to extend discovery "because it merely held [plaintiff] to the clear terms of its

scheduling order" and plaintiff failed to establish good cause); *Arianas v. LVNV Funding LLC*, 307 F.R.D. 615, 619–620 (M.D. Fla. 2015) (denying plaintiff's motion to extend discovery for failure to demonstrate good cause where plaintiff had more than six months to complete discovery).

Mutual's failure to identify documents that were in its possession for months as alleged trade secrets prior to the close of discovery is entirely the result of a lack of diligence. As good cause, Mutual argues that it did not believe the intent of the motion to compel hearing was for it to identify every document that it believed constituted a trade secret or was otherwise responsive to a discovery request. (DE 206.) This purported excuse is entirely new. Counsel for Mutual did not raise this argument at the most recent June 4, 2024 hearing or at the final pretrial, despite being asked directly by the Court why Mutual could not have identified its alleged trade secrets sooner. *See, e.g.*, DE 195 at 18:3-19:20 and 20:1-21:19 (Court: "I'm still not hearing what's the excuse for neglect as to why it was not previously identified when ordered by the Court to identify the trade secrets at issue by Bates stamp? Mr. Karen: Your Honor, we did identify many, many of the exhibits. The fact that some of these slipped through, you know, I apologize. . . ."; *** "Court: If you were aware of that, why didn't you search for these specific documents to disclose in discovery? Mr. Karen: We didn't even have the list of 45 loans that closed there until the very, very end of discovery.")

More importantly, Mutual's argument is irrelevant because Mutual had an obligation to comprehensively respond to Waterstone's interrogatory 8 which

explicitly asked Mutual to ***identify all*** trade secrets it relies upon to support its claims. *See supra.* If Mutual's discovery response as of the date of the motion to compel hearing was no longer accurate, or at any point thereafter, Mutual had an obligation to supplement or amend its discovery response and that obligation existed regardless of Judge Sneed's order on the Motion to Compel. *See* Fed. R. Civ. P. 26(e).

Mutual further argues the motion to compel order only required it to identify documents produced *by Mutual*. But the Court's order is ***plainly not limited to documents produced by Mutual***.

Moreover, Mutual represented to Judge Sneed that it had already produced all trade secrets it would rely on. (DE 61 at 21:20-22:2.) If Mutual had not yet reviewed the documents it and Waterstone produced before the March 1, 2023 hearing, and instead planned to revisit the document productions and identify more trade secrets, Mutual should not have made that representation.

## IV. Conclusion

There is plainly no excuse for Mutual's lack of diligence and failure to identify its alleged trade secrets until weeks before trial. The Court should not countenance any trade secrets disclosed by Mutual after the close of discovery. Accordingly, the Court should limit Mutual's alleged trade secrets to the 53 documents identified in discovery.

Dated: June 12, 2024.

*/s/ Maria L. Kreiter*
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*