IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUTUAL OF OMAHA
MORTGAGE, INC.

               Plaintiff,

v.

WATERSTONE MORTGAGE
CORPORATION,

               Defendant.

CASE NO. 8:22-cv-01660-TPB-JSS

## DEFENDANT WATERSTONE MORTGAGE CORPORATION'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF CANDICE ROSEVEAR

## I. INTRODUCTION

The Court cannot let Mutual's alleged "rebuttal" expert, Candice Rosevear, present yet another new damages theory. Rosevear's latest report is in no sense "supplemental." Despite the Court's clear direction, Rosevear's latest report injects an entirely new set of facts and analyses that she had not previously opined on. Rosevear previously concluded damages were $28 million by extrapolating lost profits out 10 years. Rosevear now claims the duration to extrapolate Mutual's damages is 30 months based on an entirely new analysis of Mutual's branch longevity and a never-before referenced "Kaplan-Meier analysis" that uses population survival rates. In sum, Rosevear has an entirely new scope of engagement and opinion, supported by never previously utilized theories and data.

1

That Mutual continues to get second and third chances to cure the fatal deficiencies in its damages theory cannot be countenanced. Mutual made the strategic decision to assert damages of $4,440,002.42 in Mutual's **binding** Rule 30(b)(6) corporate representative deposition. Waterstone focused an array of discovery efforts, for months, on vetting Mutual's $4.4 million damages position, including document requests and depositions. When Waterstone's efforts culminated in a motion to exclude Mutual's damages analysis, Mutual hired Candice Rosevear and labeled her a "rebuttal expert." Rosevear was not a rebuttal expert. She did not respond to Waterstone's timely disclosed damages expert, Steve Oscher, and was not even familiar with the $4.4 million analysis elicited in Mutual's binding deposition testimony. Waterstone moved to strike, but the Court allowed Rosevear to remain in the case. Then, on May 22, 2024, the Court denied Waterstone's motion to confirm Rosevear is a rebuttal witness and not one Mutual could present in its case-in-chief. The adverse consequence of that decision is three-fold: (1) Waterstone apparently has lost the opportunity to move for directed verdict after Mutual's case-in-chief, which would have been inadequate as to all claims without sufficient presentation of damages (or at least highly incredible due to flaws exposed in discovery as to the $4.4 million model); (2) Waterstone lost the ability to make the strategic decision at trial whether it even needed to present Oscher and open the door for Rosevear's rebuttal; and (3) Oscher must now redo his analysis because Rosevear will lead and Oscher's report focused on the $4.4 million model.

Moreover, for more than a year, the parties have been largely focused on motion practice related to damages. This has meant Waterstone incurring hundreds of thousands of dollars to demonstrate the inadequacy of what it thought was Mutual's damages theory, belatedly articulated by Rosevear in a manner inconsistent with Mutual's binding deposition testimony. Mutual now seeks yet another redo through Rosevear's latest "supplemental" report. The unprecedent leeway afforded Mutual is not simply procedural: Mutual's position as to damages and its supporting evidence has changed substantially, to its advantage, because Mutual keeps redoing its position after Waterstone and the Court point out dispositive flaws. Mutual has been firing "defective arrows" at damages since this case commenced – hoping to hit the target. After each miss, Mutual has been allowed to launch another arrow. Mutual's latest—and completely new—theory cannot be allowed. Waterstone's instant motion must be granted.

## II.    RELEVANT BACKGROUND FACTS

### a.    ROSEVEAR PREVIOUSLY ASSERTED A 10-YEAR DURATION BASED ON GENERAL MODELING STANDARDS AND DID NOT ANALYZE BRANCH LONGEVITY.

Rosevear's prior report states "I find that the present value of lost profits is approximately $28 million." Ex. 1 (Rosevear 2023 Rebuttal Rpt.) at ¶¶ 14, 16. Rosevear's $28 million figure was based on "an extrapolation analysis to extend loan sales data from May 2022 through the year 2031." *Id.* pg. 7 ¶ 20. Rosevear selected a 10-year duration because "[i]t's standard in DCF modeling to use 10 years." Ex. 2 (Rosevear Dep. Tr.) at 43:18-21. The 10-year duration was not specific to Mutual, its

branches, or the employees at issue but rather a standard duration used in modeling. (*Id*. at 44:5-12.) In fact, Rosevear had no opinion on how long the Mutual branch employees would have stayed:

> **Q:** Are you able to say to a reasonable degree of certainty that the employees at the Tampa and Daytona branches would have stayed with Mutual for any particular amount of time?
> **A:** I don't have an opinion on that.
> **Q:** So no?
> **A:** Correct.

Ex. 2 at 131:15-23. Rosevear also could not say whether employees would have stayed beyond the 12-month employee non-solicit:

> **Q:** What certainty do you have that any of the employees would have stayed beyond 12 months if the managers could have solicited them after that period of time?
> **A:** I don't know how that would play out.

Ex. 2 at 45:23-46:5.

Mutual's analysis disclosed in its binding deposition testimony utilized an 18-month duration, but Rosevear testified at her deposition "I don't understand fully why 18 months is selected," and did not consider or use 18 months because "that's not what my model is measuring." *Id*. 25:12-26:2, 27:2-6, 45:3-9.

Further, Rosevear's damages model did not consider the branch managers, Dwayne Hutto, Chris Smith, Chris Wolf, and John Utsch or whether they would have remained at Mutual. *Id*. at 49:20-50:17. Rosevear did not even know when Smith or Hutto joined Mutual. *Id*. at 58:18-59:5. Hutto's employment history did not bear on her damage projections (*id*. at 61:22-62:4) and, as to Smith, Rosevear testified: "I don't

know whether he would have remained at Mutual. […] His employment history has no impact on my damages model" (*id*. at 63:3-9).

Further still, Rosevear testified she did not analyze whether branches remained at Mutual 5 years or 10 years, did not investigate whether any Mutual branches have even lasted that long, did not know whether any branches left Mutual in the last 10 years, and did not know whether it is common in the mortgage industry for loan officers to move together to a new employer. *Id*. at 68:10-69:23. In fact, Rosevear did not even know how many branches were in Mutual's Forward Division (the applicable division of the Daytona and Tampa branches). *Id*. at 116:21-117:3.

In sum, other than a 10-year duration derived from general modeling standards, Rosevear supplied no duration, had not focused on the duration in which these particular Mutual branches might remain, and did not weigh manager-specific considerations.

### b. ROSEVEAR'S LATEST REPORT INCLUDES A BRAND NEW SCOPE OF ENGAGEMENT.

Rosevear's latest report reflects a brand new engagement: "to opine on whether it would be reasonable to conclude that the Tampa and Daytona branches would have remained in operation from mid-2022 through December 31, 2024, a period of approximately 30 months, but for (or absent) Defendants' actions (i.e., but for the departure of the account executives from Mutual of Omaha to Waterstone)." Ex. 3 (Rosevear 2024 Rpt.) at ¶ 17. Rosevear's analysis is now employee-specific and branch-specific: she claims to have assessed Nationwide Multistate Licensing System

("NMLS") data related to three of the managers and opines that the managers remaining *with Waterstone* somehow "reveals the employees' desire and intent to remain in the industry," and to operate in the same market, which Rosevear contends means the managers would have remained at Mutual for 30 months. *Id*. ¶ 19.

Rosevear also conducted a statistical analysis to assess the probability that the branches would have remained in operation using NMLS data and cites a newly minted "Kaplan-Meier" analysis that estimates survival rates among a population. *Id*. at ¶ 19. Rosevear claims she asked the never-before-presented question of "What is the probability that a branch aged at least 68 months will survive another six months, to 74 months?" (*id*.) and goes on for paragraphs of her report to describe a branch longevity analysis, reasoning, and support that is clearly well beyond the scope of her 2023 "rebuttal" report and engagement (*id*. ¶¶ 20-24).

### c. THE COURT WAS CLEAR THAT MUTUAL IS BOUND BY THE CURRENT RECORD.

In allowing Mutual to supplement Rosevear's previous report, the Court was explicit that Mutual was to be bound by the current record: "to be clear, we're not going to reopen [the record] to allow the opportunity to present additional facts . . . ." Ex. 4 (June 3, 2024 Hrg. Tr.) at 37:15-19. "It's either in the record or not." *Id*. at 37:17-19. The Court also concluded that: "This is not an opportunity then to insert additional facts in order for [Rosevear] to rely upon to form her opinion. The opinion has been formed, so it seems to me it's unnecessary to have a 30(b)(6) witness." *Id*. at 31:16-19.

**d. WATERSTONE INCURRED SUBSTANTIAL FEES, TIME AND EFFORT ADDRESSING MUTUAL'S EVER-CHANGING DAMAGES.**

This is not the first time Mutual has belatedly and materially altered its damages theory. Initially, Plaintiff's counsel told Judge Barber in open Court on October 12, 2022 that Mutual's damages were $250,000. (DE40 at 12:11.) Subsequently, Mutuals' alleged damages were $4,440,002.02, according to Mutual's Rule 30(b)(6) deponent, and in response to Waterstone's discovery. (*See* DE 72-4, DE 166-2.)

Waterstone timely disclosed its damages expert, Steve Oscher, on June 5, 2023. (DE 72-3.) Waterstone moved to exclude Mutual's defective $4.4 million damages theory on July 3, 2023 (DE 72) only to have Mutual reveal Rosevear's "rebuttal" report on July 14, 2023, setting forth an entirely new theory of damages that had nothing to do with the $4.4 million damages estimate or Oscher's analysis, for that matter. The parties were set for mediation the same day as the hearing on Waterstone's motion, and Judge Barber denied the motion without prejudice but agreed the parties' focus should be on damages and asked Waterstone to later re-assert the motion. (July 27, 2023 Mtn. Hearing Tr. (DE101 at 54:1-10.).) At the next appearance, however, Judge Barber ordered Mutual to file a motion *limited to the issue of damages*. (Aug. 23, 2023 Case Mgmt. Confer. Tr. (DE102 at 4:25-5:5).) Judge Barber then ordered supplemental briefing on the issue of damages (DE124, 125), ultimately denied Mutual's motion (DE130), and ordered Waterstone to frame the damage issues as a Daubert motion. (DE130.) Waterstone did just that, which culminated in Judge Barber's March 29, 2024 Order on damages. (DE 146.) In sum, the parties have spent

many months, starting more than a year ago, focused on damages, and Waterstone has incurred hundreds of thousands of dollars vetting what Mutual represented as its damages theor(ies). (Kreiter Decl. ¶ 3.)

### III.   ARGUMENT

### A. Rosevear's Supplemental Report Improperly Introduces A New Opinion, Based on New Facts Not Previously In the Record.

Rosevear's "supplemental" report reflects an entirely new scope of engagement. The Court was clear that the record is closed and yet Rosevear now purports to opine for the first time on the appropriate duration of damages based on employee-specific and branch specific considerations that she never previously analyzed. Rosevear previously used a 10-year duration standard for purposes of modeling and testified she had no opinion about how long the Mutual employees would have stayed at Mutual, whether they would have stayed longer than 12 months, why Mutual's prior estimate applied 18 months, or how many branches Mutual even had. Rosevear never did a longevity analysis, admitted she did not consider the managers' job history, and called employee-specific considerations irrelevant. She has now conducted a longevity analysis, developed a "Kaplan-Meir" analysis that involves population survival rates, and opines that the managers continued employment with Waterstone and other never previously considered data suggests they would have stayed at Mutual for 30 months.

The Court allowed Rosevear to supplement her report solely to clarify the lost profit calculations supporting 30 months. The Court was clear that it was not giving

Mutual an opportunity to have Rosevear to introduce new facts and opinions. Courts in this district have similarly held that a supplemental expert report "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy," and that any such supplemental report should be stricken. *Tech Data Corp. v. Au Optronics Corp.*, No. 8:11-CV-2454-T-33JSS, 2015 WL 12843886, at *4 (M.D. Fla. Oct. 22, 2015) (quoted source omitted); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07–CV–947–J–34HTS, 2009 WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009) (excluding expert's untimely second report because it contained new opinions not addressed in the initial report); *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1248–52 (M.D. Fla. 2012) (excluding expert's untimely second report, which included new opinions regarding claims that were not addressed in the initial report).  Rosevear's "supplemental" report purports to inject brand new opinions and must be stricken.

## B. Allowing Rosevear to Present Her New Longevity Analysis and Opine as to the Appropriate Duration for the First Time Will Prejudice Waterstone.

Mutual should not get yet another redo. The Court ordered Mutual to disclose its experts by March 1, 2023. (DE34.) If Mutual wanted an expert witness to conduct a statistical analysis of NMLS data as to the managers and Mutual's other branches, it could have done just that: the information has been publicly available, as Rosevear notes. Further, if Mutual wanted an expert witness to use methodologies based on "survival of populations," such as the "Kaplan-Meier" methodology now cited by Rosevear, nothing prevented Mutual from timely disclosing such an analysis. Mutual

is the party with the burden of proof and has known from the start it would need to support its damages, including providing a reasoned duration over which to extrapolate damages.[1]

Mutual has repeatedly changed its position as to its alleged damages (and its alleged trade secrets) with no excuse whatsoever, and in complete disregard of its *binding* Rule 30(b)(6) deposition testimony, the Court's scheduling orders, instructions, and the Federal Rules. The parties are litigating in Federal Court: Mutual cannot get yet another redo if the Court's orders and Rules are to have any meaning.

Moreover, a year and five months have passed since March 1, 2023 when Mutual was required to make its expert disclosures. Waterstone has since taken six depositions, filed six motions and briefs as to damages, and, over the course of the suit, incurred more than a million dollars in attorney's fees and expert witness fees, with hundreds of thousands of dollars spent vetting Mutual's ever-changing theories of damages. (Kreiter Decl. ¶ 4.) Waterstone's litigation strategy during the case was cumulative, with each deposition, decision, motion, etc. influenced by the factual

---

[1] *See* Fed. R. Civ. P. 37(c)(1); *Fox v. Safeco Ins. Co. of Illinois*, No. 8:16-CV-2665, 2017 WL 4102312, at *2 (M.D. Fla. Sept. 15, 2017) (explaining that "a case management and scheduling order must limit the time to complete discovery" and the "duty to supplement discovery does not allow [a party] to ignore the scheduled deadlines set by the Court"). *See also Goodman-Gable-Gould v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1209-12 (11th Cir. 2010) (affirming exclusion of evidence based on discovery violations and failure to make proper disclosures under Rule 26); *Brown v. Vivint Solar, Inc.*, No. 8:18-CV-2838, 2020 WL 5016898, at *2 (M.D. Fla. Aug. 25, 2020) (excluding evidence not disclosed in discovery).

record then established. Allowing Mutual to now revise its position on damages impacts all claims and moots much of Waterstone's efforts over the course of the case and significant litigation spend.

Further still, forward looking, if Rosevear is permitted to now inject her entirely new opinion about longevity, Waterstone will need to do far more than re-depose Rosevear and serve additional written discovery. The point of the Court's admonition to Mutual that a new fact record should not be developed was to keep the case on track for trial. That goal cannot be accomplished if Rosevear's supplemental report is allowed to stand.

Moreover, even if Waterstone properly vets Rosevear's new opinions by pursuing the additional discovery efforts, the exercise benefits Mutual alone because it would improperly open the door for Mutual to insert new fact witness testimony and other evidence to bolster its position that 30 months is an appropriate duration. Mutual had ample time to select and substantiate a thirty-month duration during discovery and chose not to utter 30 months as a duration of damages until filing its out of the blue stipulation on March 22, 2024. By then, briefing was complete on Waterstone's *Daubert* motion, the parties and the Court had been briefing damages for eight months, and discovery had been closed for nearly eight months. Waterstone deposed Mutual's corporate representative, specifically on the duration Mutual deemed appropriate and Mutual gave binding testimony that such period was 18 months (consistent with the damages Mutual disclosed in response to Waterstone's written discovery). Mutual is effectively asking this Court to rule that Mutual's Rule

30(b)(6) testimony is not binding — contrary to the Federal Rules and well-established case law. *See e.g., Fed. Trade Comm'n v. Vylah Tec LLC*, No. 217CV228FTMPAMMRM, 2018 WL 7361111, at *5 (M.D. Fla. Dec. 18, 2018) ("A Rule 30 (b)(6) witness represents the collective knowledge of the entity and provides testimony that is binding on the entity."); *Arthrex, Inc. v. Parcus Med., LLC*, No. 210CV151FTM38DNF, 2014 WL 12828066, at *1 (M.D. Fla. Mar. 10, 2014) ("A corporation must prepare the witnesses to provide complete knowledgeable and binding answers on behalf of the corporation."); *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 4990902, at *2 (S.D. Fla. Aug. 20, 2021) ("The deposition testimony of a Rule 30 (b)(6) corporate representative is binding on the corporation and the corporate representative."); *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) ("A corporation has an affirmative duty to provide a witness who is able to provide *binding* answers on behalf of the corporation"; emphasis added.)

In addition, Waterstone is skeptical to say the least that Rosevear's purported ability to predict what branch managers would do based on "population survival rates" — contrary to the branch managers' and branch employees' own testimony — can survive a *Daubert* motion. However, Waterstone already filed a *Daubert* motion challenging Rosevear's previous report and testimony. The parties spent months on that exercise, after already briefing damages in various other permutations. Waterstone should not have to incur even more fees building support for and filing another *Daubert* motion.

Moreover, Waterstone's damages expert, Oscher, is a CPA. Waterstone will need to at least consider retaining an expert witness with expertise that rebuts Rosevear's purported population survival analysis, dependent on Waterstone's view of the record after it is further developed. That too will increase Waterstone's litigation spend and elongate the time needed before the case can be tried — all due to Mutual.

This is not a close call: Rosevear's supplemental report must be stricken and evidence as to a 30-month duration excluded.

Dated this 29th day of July, 2024.

Respectfully Submitted,

*s/Maria L. Kreiter*

Maria L. Kreiter (*Admitted PHV*)
mkreiter@gklaw.com
Emma J. Jewell (*Admitted PHV*)
ejewell@gklaw.com
Xavier O. Jenkins (*Admitted PHV*)
xjenkins@gklaw.com
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)

Scott McLaren (FBN: 414816)
Scott.mclaren@hwhlaw.com
Carolina Y. Blanco (FBN: 0098878)
Carolina.blanco@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)

*Attorneys for Defendant Waterstone Mortgage Corporation*

13

<u>**LOCAL RULE 3.01(G) CERTIFICATION**</u>

Pursuant to Local Rule 3.01(g), counsel for Waterstone certifies they have conferred in good faith with opposing counsel concerning the issues presented in this Motion. Specifically, Waterstone's counsel contacted Mutual's counsel by e-mail on July 29, 2024. Mutual does not agree to the relief sought in this Motion.

Dated this 29th day of July, 2024.

*s/Maria L. Kreiter*
Maria L. Kreiter (*Admitted PHV*)
mkreiter@gklaw.com
Emma J. Jewell (*Admitted PHV*)
ejewell@gklaw.com
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
scott.mclaren@hwhlaw.com
carolina.blanco@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

14