```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION


* * * * * * * * * * * * * * * * *
MUTUAL OF OMAHA MORTGAGE INC.   *
                                *   Case No. 8:22-cv-1660
vs.                             *
                                *   June 4, 2024
WATERSTONE MORTGAGE             *
CORPORATION                     *
* * * * * * * * * * * * * * * * *
```

## MOTION HEARING

Heard via Zoom Videoconferencing
Sam M. Gibbons United States Courthouse
801 N. Florida Avenue
Tampa, FL
June 4, 2024


## BEFORE THE HONORABLE ANTHONY E. PORCELLI

## UNITED STATES MAGISTRATE JUDGE


Official Court Reporter:    Tana J. Hess, CRR, FCRR, RMR
                            U.S. District Court Reporter
                            Middle District of Florida
                            Tampa Division
                            801 N. Florida Avenue
                            Tampa, FL  33602
                            813.301.5207
                            tana_hess@flmd.uscourts.gov

Proceedings recorded by mechanical stenography using
computer-aided transcription software.

EXHIBIT 4

```
10:38AM   1   has been all over the map, and I can't have another change.
10:38AM   2   Discovery is closed, and I just -- the rules have to mean
10:38AM   3   something here.  This case has to get going, and it can't
10:38AM   4   restart now with a new damages theory.
10:38AM   5              If Ms. Rosevear can, you know, calculate
10:38AM   6   30 months of damages, so be it, but it's got to be by evidence
10:38AM   7   that is in the record, in discovery.  It wasn't that I didn't
10:38AM   8   ask about this.  I spent two days asking about this.  It was
10:38AM   9   never mentioned.
10:38AM  10              He is asking for yet another redo that's going
10:38AM  11   to put us back months if the Court countenances it.  The Court
10:38AM  12   should not countenance this.  This case has to get to trial.
10:39AM  13              THE COURT:  All right.  Let me interrupt you.
10:39AM  14   Mr. Karen, the whole reason why I allowed the additional
10:39AM  15   discovery is because of the failure to disclose Ms. Rosevear in
10:39AM  16   your case in chief rather than as a rebuttal.  ==This is not an==
10:39AM  17   ==opportunity then to insert additional facts in order for her to==
10:39AM  18   ==rely upon to form her opinion.==  ==The opinion has been formed, so==
10:39AM  19   ==it seems to me it's unnecessary to have a 30(b)(6) witness.==
10:39AM  20   What is the purpose of the 30(b)(6) witness?
10:39AM  21              MR. KAREN:  Yes.  I think, Your Honor, what we're
10:39AM  22   talking about here is we submitted a stipulation.  I want to
10:39AM  23   try to go back how we got here, because I think that's
10:39AM  24   important.
10:39AM  25              We submitted a stipulation at Judge Barber's
```

10:39AM  1   urging, as Judge Barber had already ruled on summary judgment
10:39AM  2   on this exact issue and said that we would be able to go
10:39AM  3   forward and present evidence, but that by the close of evidence
10:39AM  4   we had to have some basis articulated as to why we would have
10:39AM  5   30 months.  That's what the ruling was, and that's how we came
10:39AM  6   in.
10:39AM  7              Then Ms. Kreiter, WaterStone, filed a motion and
10:39AM  8   said you should strike the 30 months, and that's how we got
10:40AM  9   back up to it.  So I think that bears recognition because
10:40AM  10  that's kind of how we got here.  I mean, look.  If it's going
10:40AM  11  to come down to it, then what I would suggest, we go to
10:40AM  12  trial -- we tried to be useful.  We tried to be reasonable.  We
10:40AM  13  tried to listen the Judge Barber's urgings, and so --
10:40AM  14              **THE COURT:**  If I can interrupt you one moment just to
10:40AM  15  be clear.  I seem to recall the basis for the 30 months,
10:40AM  16  though, was testimony that's already been provided about the
10:40AM  17  anticipation of offices that have been existing for a certain
10:40AM  18  period of time to continue on for at least a period of
10:40AM  19  30 months.
10:40AM  20              **MR. KAREN:**  Yes.
10:40AM  21              **THE COURT:**  So is that not in the record already?
10:40AM  22              **MR. KAREN:**  I think to some extent it is.  I mean,
10:40AM  23  but maybe -- this is why I was going to read from the
10:40AM  24  deposition transcript so you could hear it.
10:40AM  25              **THE COURT:**  All right.

Case 8:22-cv-01660-AEP   Document 215-4   Filed 07/29/24   Page 4 of 8 PageID 5246

33


| | |
|---|---|
| 10:40AM | 1 |
| 10:40AM | 2 |
| 10:40AM | 3 |
| 10:41AM | 4 |
| 10:41AM | 5 |
| 10:41AM | 6 |
| 10:41AM | 7 |
| 10:41AM | 8 |
| 10:41AM | 9 |
| 10:41AM | 10 |

1      **MR. KAREN:** Question: "How long did you spend
2  preparing it?"  Answer:  "Well, I think a large part of the
3  time we spent was trying to come up, you know, a fair way to
4  associate the lost revenue, and I really mean fair and be
5  conservative about it because we were hoping for a settlement
6  before this time.  So, you know, so that was the big -- because
7  there's two -- there's two ways we could do this, right?  We
8  could do what we did here, which is to take those loans and
9  multiply it times the basis points earned by corporate from
10 that volume, average it out, and then show for 18 months they
11 had stayed.  The other way we mentioned earlier was the cost of
12 goods sold, and when you do that approach, you know, you're
13 talking about 17, 18 million."
14     It continues on, if I may to page -- then
15 there's another question.  "What was the rationale for using
16 the 18-month period to calculate the lost profit damages
17 associated with the branches closing?"  "Yeah, I mean, we
18 didn't want to use -- again, we were trying to be reasonable.
19 You know, I think you could make a case for using longer.  Most
20 of our branches have been here 10, 15 years or so.  So -- at
21 least the core group.  So we could have used longer, but we
22 thought 18 months was a reasonable amount of time."
23     Then further on it goes.  Question is, "And that
24 could have happened at the one-year mark.  So I'm trying to
25 understand was that -- you know, that situation factored in at

10:42AM 1   all for purposes of your damages?" Answer: "Not really. They
10:42AM 2   also could still be here. Keller Williams comes into play, and
10:42AM 3   they stay for six or seven years, so we didn't use six or seven
10:42AM 4   years. We didn't use ten years. We used 18 months. I mean, I
10:42AM 5   don't know how much we can, you know" -- and he gets cut off,
10:42AM 6   and they continue on other things.
10:42AM 7            So this is what we're talking about right here.
10:42AM 8   Now, I can't say that if questions are -- I wanted to make the
10:42AM 9   witness available. Ms. Kreiter indicated she didn't think it
10:42AM 10  was fair that we now have the stipulation it was going to be
10:42AM 11  30 months. So, again, trying to be reasonable, make sure
10:42AM 12  there's no questions about, you know, anybody trying to pull
10:42AM 13  any wool over anyone's eyes, we said, "We'll make him available
10:42AM 14  yet again. You can ask the same questions." This is what the
10:42AM 15  testimony is going to be.
10:42AM 16           So will they probably drill down more, a little
10:42AM 17  bit more about why 30 months? Yes, but -- I would expect
10:43AM 18  Ms. Kreiter will do that, but I don't know what the questions
10:43AM 19  are going to be, and I don't know what the answers are going to
10:43AM 20  be, so I'm hesitant to say they're going to be exactly in line
10:43AM 21  with this. I obviously can't say that.
10:43AM 22           What I am saying is that there's not going to be
10:43AM 23  a new theory. What we're talking about is what we were talking
10:43AM 24  about in this deposition, and they will continue to talk about
10:43AM 25  it. We simply said, and I think the position is and our

```
10:43AM   1   position is, Your Honor, that under Florida law, we are
10:43AM   2   entitled to go in front of the jury, and if we want to argue
10:43AM   3   for 10 years of damages, and the jury based upon causation can
10:43AM   4   make the determination.  We voluntarily said we won't do that
10:43AM   5   because we're trying to facilitate this case and streamline it,
10:43AM   6   but we shouldn't be punished for that.
10:43AM   7              And so if she -- and Ms. Kreiter and WaterStone
10:43AM   8   now want to take a deposition and ask a corporate designee
10:43AM   9   about these questions and get more clarification, we'll allow
10:43AM  10   it again, but there's no new theory here.  This is what they
10:43AM  11   were talking about before, and this is what, if they want, they
10:43AM  12   can talk about again.
10:43AM  13              THE COURT:  All right.  Thank you.  And what I
10:43AM  14   understand is Ms. Kreiter does not want to reopen the
10:43AM  15   deposition as to the 30(b)(6) witness.  I mean, you've made the
10:44AM  16   witness available, and as I understand it, she's not looking to
10:44AM  17   avail herself of that, and so we're not going to go down that
10:44AM  18   path.
10:44AM  19              What I previously ordered, given that I'm going
10:44AM  20   to allow Ms. Rosevear to testify in plaintiff's case in chief,
10:44AM  21   is the opportunity for an examination of Ms. Rosevear on that
10:44AM  22   theory of damages for the 30 months, and if Ms. Kreiter wants
10:44AM  23   to avail herself to that, she may go forward.  But outside of
10:44AM  24   that, if there's no need from her perspective to reopen the
10:44AM  25   30(b)(6) deposition, then we're not going to reopen it.
```

10:44AM   1            Ms. Kreiter, any concerns to proceeding in that
10:44AM   2   way?
10:44AM   3            **MS. KREITER:**  Yeah, I guess I want to be clear.  The
10:44AM   4   testimony that Mr. Karen just read was the corporate rep
10:44AM   5   talking about why 18 months is appropriate.
10:44AM   6            **THE COURT:**  Well, that's something certainly you
10:44AM   7   could argue at trial, examine the witness at trial, and then
10:44AM   8   certainly make an argument to the jury, but whatever Mr. Karen
10:44AM   9   thinks the witness will testify to at trial is a separate
10:44AM  10   matter than reopening the deposition.
10:44AM  11            **MS. KREITER:**  I think, though, Your Honor, I don't
10:44AM  12   want trial by ambush where because this was never disclosed
10:45AM  13   that Mutual was seeking 30 months -- and remember, Judge Barber
10:45AM  14   didn't know that there was no supporting testimony for the
10:45AM  15   30 months.  He got -- he saw a stipulation, had no context for
10:45AM  16   any of that.  I don't want to have a witness at trial get up on
10:45AM  17   the stand and talk about, "Here's my analysis as to why 30
10:45AM  18   months is reasonable.  Here's my opinions on that," and I hear
10:45AM  19   about it the first time at trial.  That's where the rub is.
10:45AM  20            So I guess I want clarity.  Is the Court saying
10:45AM  21   that Mutual cannot put a witness on the stand to introduce an
10:45AM  22   analysis supportive of the 30 months?  If so, that's where I
10:45AM  23   could say look, I would serve discovery.  I would potentially
10:45AM  24   depose leadership at Mutual's branches that, you know, they're
10:45AM  25   saying this branch would have stayed on, and it's typical for

Mutual. I want to depose the leadership of those branches. I would serve additional discovery. I may hire an industry expert. I can't do any of that, and if my choices are either trial by ambush where they are going to put this theory forward at trial, you know, then I think I need to do all that. I don't want to because of the time, expense, and discovery rules.

THE COURT: Well, it seems to me we need to start with Ms. Rosevear and find out exactly how she's coming to her opinion as to 30 months and what she is relying upon, and if there's nothing in the record that she relied upon, then that's the answer, but if she is asserting there's something that she relied upon to form that opinion you feel that was not previously disclosed, then I'll hear you as to that matter.

But I'm not going to reopen -- so to be clear, we're not going to reopen it to allow the opportunity to present additional facts for that purpose. It's either in the record or not. And so that's what we're going to do going forward.

So this is not a trial by ambush. It's a matter of whether -- and I don't know the answer to that. Ms. Rosevear -- and as I just understood Mr. Karen's argument, he was arguing that, "We could have gone up to 10 years." So I suspect that's what Ms. Rosevear is going to testify to; that based upon the information she's been provided, she just cut it