UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., <br><br>  Plaintiff, <br><br> v. <br><br> WATERSTONE MORTGAGE CORPORATION, <br><br>  Defendant. | Case No. 8:22-cv-01660-UAM <br><br> **PLAINTIFF MUTUAL OF OMAHA MORTGAGE, INC.'S RESPONSE IN OPPOSITION TO WATERSTONE MORTGAGE CORPORATION'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF CANDICE ROSEVEAR** |

Plaintiff Mutual of Omaha Mortgage, Inc. ("Plaintiff" or "Mutual") hereby files this Response in Opposition to Defendant Waterstone Mortgage Corporation's ("Defendant" or "Waterstone") Motion to Strike the Supplemental Expert Report of Candice Rosevear ("Motion") (ECF No. 215). In support thereof, Plaintiff states as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

Waterstone impermissibly seeks to re-litigate two related issues concerning (1) whether Mutual can present evidence of its 30-month duration of lost profits damages, and (2) whether Mutual can rely on data from the Nationwide Mortgage Licensing System ("NMLS"). Both issues have already been decided by this Court, as have the arguments upon which they are based.

Beginning on November 17, 2023, Waterstone attempted to strike Mutual's use of NMLS data at summary judgment. (ECF No. 103). On February 6, 2024,

1

Waterstone filed a Daubert Motion to Exclude or Limit Plaintiff's Expert Testimony on Damages, specifically seeking to exclude lost profit damages. (ECF No. 132). On April 26, 2024, after this matter was transferred by consent to the assigned Magistrate Judge, Waterstone filed a Motion *in Limine* to Exclude Evidence Related to Damages, asking the Court to exclude evidence of damages beyond 18 months. (ECF No. 166).

The Court carefully considered and rejected each of these attempts. Judge Sneed ruled on January 24, 2024, that the NMLS data regarding branch longevity could be introduced as evidence at trial. Order, (ECF No. 128, ¶ 3).[1] During oral argument at summary judgment on January 30, 2024, there was an extensive discussion of the cited NMLS data concerning average branch duration. (January 30, 2024 Hr'g Tr. at 24, 26, 30)[2] (discussing Mutual's evidence of branch duration, averages). Judge Barber analogized averages to law school grades, stating "we got higher than the [C] average. I mean, and so why is an average the limit?" (*Id.* at 35:11-12). Thus, both Judge Sneed and Judge Barber were aware of Mutual's intent to rely on NMLS branch duration data at trial.

In February of 2024, the Court denied Waterstone's Daubert Motion seeking to exclude testimony regarding lost profit damages. (ECF No. 132). The Court ultimately ruled that "considering the recent stipulation regarding [30 months of] damages, the Court will *not* eliminate Plaintiff's future lost profits claim from the case[.]" Order,

---

[1] Discovery was not yet closed – and Waterstone did not seek further discovery on NMLS data or branch averages. Instead, it sought data regarding branch closures at Mutual, which Ms. Rosevear ultimately relied upon in her expert report.
[2] Attached as Exhibit A.

(ECF No. 146 at 10) (emphasis added).

On May 17, 2024, this Court denied Waterstone's Motion *in Limine* to exclude the 30-month damage calculation. The Court, rejecting what was in effect a motion to reconsider[3] Judge Barber's prior order in the case, held:

> I am going to direct that the plaintiff identify who will be testifying as to the damage calculation and that a deposition can occur of that individual. So if it's Rosevear and it's going to be the same calculation for 30 months, then that -- so be it, and then that will be – the ability will be able to have a deposition of Rosevear as to how that 30 months has been calculated.
> 
> ***
> 
> Judge Barber's order stands as to the ability, though, given the stipulation of 30 months, to go forward with that damage calculation under that theory that it was in total the solicitation of the employees, including the theft of the misappropriation of [trade secrets that] was so substantial [it] led to the closure of the offices and the resulting lost profits.
> 
> All right. So the first thing is I want a supplemental report presented as to this theory of damages for the 30 months with the identification of the expert.

(May 17, 2024 Hr'g Tr. at 65:11-17, 66:5-16).

Further, in ordering that Ms. Rosevear prepare a report "as to how the 30 months has been calculated" the Court was advised that the basis for 30 months was record evidence, including (1) the deposition testimony of Jeff Gennarelli, reflective of his experience with how long branches stay at Mutual and recent acquisitions of Keller

---

[3] Judge Porcelli stated: "Judge Barber expressly identifies this 30-month stipulation and then expressly states he's not going to prohibit [this] evidence […] but yet you are now asking me to limit it just to 18 months, which seems to be also asking me to reconsider what Judge Barber order. (May 17, 2024 Hr'g Tr. at 56:4-12).

3

Williams and (2) NMLS data which substantiated a 30-month duration. (*Id.* at 31:13-32:21; 60:12-25, 63:7-14). This NMLS data included evidence that "an office that was in existence at least two years would have […] existed for at least another period of 30 months." and evidence of "how long branches would have stayed and ha[ve] stayed with us over a certain time period." (*Id.* at 31:19-32:4). Hence, both the use of NMLS data and Ms. Rosevear's presentation of a report detailing the 30-month duration were decided upon, after lengthy discussions before this Court.

And the Court specifically considered many of the arguments relating to supposed prejudice and unfairness that Waterstone repeats in its latest motion. (*Id.* at 55:5-6, 57:5-9, 58:24-59:11). In balancing the Parties' competing positions, the Court stated:

> I'm satisfied that plaintiff has properly asserted a theory of damages throughout case. That theory has been limited by Judge Barber's order, but the order itself provided more clarity, but it also leaves the defense at a position of vulnerability to not exactly know what and how that is going to be calculated as to a theory of damages. So I find it appropriate to give the defense the opportunity to explore that in a deposition, so that is why I'm continuing the trial.

*Id.* at 72:10-18.

At a subsequent hearing on June 4, 2024, Waterstone raised the same arguments on the issue of damages *again*. (*See* June 4, 2024 Hr'g Tr. at 30:20-25, 37:6-7 (discussing expense and argument that Mutual was redoing its damages)).[4] The Court rejected such an attempt again, reiterating its prior order:

---

[4] Attached as Exhibit C.

4

> What I previously ordered, given that I'm going to allow Ms. Rosevear to testify in plaintiff's case in chief, is the opportunity for an examination of Ms. Rosevear on that theory of damages for the 30 months[.]
>
> ***
>
> We need to start with Ms. Rosevear and find out exactly how she's coming to her opinion as to 30 months and what she is relying upon, and if there's nothing in the record that she relied upon, then that's the answer[...] but if […] there's something that she relied upon to form that opinion you feel that was not previously disclosed, then I'll hear you as to that matter.

(*Id.* at 35:19-22; 37:9-14; *see also* 40:12-15)

There can be no question that the Court expected Ms. Rosevear to testify as to the basis of the 30-month duration. In fact, the entire point of the supplemental report was to ascertain Ms. Rosevear's basis for the calculation and whether there were facts in the record that were previously disclosed that could support such an opinion. (*See id.*). Indeed, Mutual offered a "30(b)(6) witness [to] talk about the duration of [30 months]. (*Id.* at 29:20-24). The Court found that the 30(b)(6) witness would be unnecessary. (*Id.* at 31:16-19). Instead, the Court determined that Ms. Rosevear should testify as to the duration of damages. (*Id.* at 35:19-22; 37:9-14).

Similarly, it was clear that the record evidence could include consideration of NMLS data. During the June 4, 2024 hearing, Mutual's counsel explicitly stated "some of that NMLS data we are going to use." (*Id.* at 40:7-11). The Court responded, "that will be what Ms. Rosevear will have to testify to[.]" (*Id.* at 40:12-13). Accordingly, Ms. Rosevear's consideration of previously disclosed NMLS information was specifically contemplated as part of the basis for her 30-month

5

calculation. Ms. Rosevear's Supplemental Report does exactly what this Court explicitly ordered. It is based upon evidence in the record as well as previously disclosed NMLS data.

Any doubt as to the intent of this Court's order regarding the supplemental report is erased by an exchange that occurred on June 13, 2024, when the parties discussed the date for Ms. Rosevear's report. In discussing the reason why Ms. Rosevear's report would now be sent by July 28th, counsel for Mutual explained: "Ms. Rosevear would have had the report relating to Paramus and everything else by [June] 14th […] *but you had also asked that she address the 30 months*, so she had to add that in and she couldn't get it done until [after] the 14th[.]" (June 13, 2024 Hr'g Tr. at 61:2-7 (emphasis added)).[5] The Court matter of factly responded by approving the 28th as the deadline for the report with no objection from Waterstone. (*Id.* at 61:20-23). Thus, it was always the understanding of Mutual, the Court, and Waterstone that Ms. Rosevear would specifically be discussing the 30-month duration. Accordingly, Waterstone's instant motion which seeks to relitigate these prior rulings should be denied.

## **LEGAL STANDARD**

"In general, excluding expert testimony is viewed as a 'drastic' sanction requiring careful consideration." *Bendik v. USAA Cas. Ins. Co.*, No. 6:19-cv-118, 2019 WL 9466018, *2 (M.D. Fla. Oct. 25, 2019) (citations omitted). Indeed, "[w]ithout a

---

[5] Attached as Exhibit D.

finding of bad faith or gamesmanship on the eve of trial, many courts are loathe to invoke the strong medicine of precluding expert testimony." *Collins v. United States*, No. 3:08-CV-923-J-32JRK, 2010 WL 4643279, at *5 (M.D. Fla. Nov. 9, 2010 (citations omitted).

Courts may strike supplemental expert reports that exceed the scope of the Federal Rules where they have not been ordered by the Court and are used as a litigation tactic. *See Demeritt v. Wal-Mart Stores E., LP*, No. 6:20-cv-89-PGB-GJK, 2021 WL 2835363, at *1-3 (M.D. Fla. May 3, 2021). But where the Court specifically requests "a supplemental report presented as to this theory of damages for the 30 months[.]" (May 17, 2024 Hr'g Tr. at 66:14-16), no basis for striking the report exists. *See* Fed. R. Civ. Proc. 26(e)(1)(B) ("A party who has made a disclosure [] must supplement [] its disclosure [] as ordered by the court.").

Additionally, where there is an opportunity to depose the expert as to any perceived supplemental opinions, motions to strike an expert's supplemental report are denied. *In re Accutane Prods. Liab. Litig.*, No. 8:04-md-2523-T-30TBM, 2007 WL 201091, at *1 (M.D. Fla. Jan. 24, 2007) (denying motion to strike supplemental expert report, served after the close of discovery, because "Defendants may fully explore any changes they believe are suggested by the supplemental report at the witness's follow-up deposition."); *Fletcher v. Great Am. Ins. Co.*, No. 3:09-cv-324-J-25JRK, 2010 WL 11507486, at *6 (M.D. Fla. Sep. 7, 2010) ("any undue prejudice that may have resulted from not having the opportunity to depose [the expert] is cured by deposing [the expert] regarding the Supplemental Report[.]").

7

## ARGUMENT

Considering the Order directing the submission of the supplemental report and providing Waterstone with the opportunity for a deposition, there is no basis for striking Ms. Rosevear's Supplemental Report.

I. **THE SUPPLEMENTAL REPORT OF MS. ROSEVEAR FALLS SQUARELY WITHIN THE COURT'S INSTRUCTIONS AND THUS COMPORTS WITH RULE 26(e)(1)(B).**

Waterstone's argument critically fails to account for this Court's specific instruction that Ms. Rosevear was to provide a supplemental report to opine on the 30 months of damages. Thus, citations to the record showing Ms. Rosevear did not previously opine on duration (other than ten years) are of no import. (Motion, ECF No. 215 at II(a)). The Court was aware of this fact when it instructed Mutual to supplement the report as to duration following its 30-month stipulation, and when it specifically limited that supplemental report to facts "previously disclosed." (May 17, 2024 Hr'g Tr. at 56:14-21 (Waterstone discussing lack of prior opinion on duration); June 4 Hr'g Tr. at 37:8-19, 40:12-15). In addition to a supplemental report explaining "how [Ms. Rosevear is] coming to her opinion as to 30 months and what she is relying upon," the Court was "satisfied that plaintiff has properly asserted a theory of damages throughout case. That theory has been limited by Judge Barber's order, but the order […] leaves the defense at a position of vulnerability to not exactly know what and how that is going to be calculated as to a theory of damages. So I find it appropriate to give the defense the opportunity to explore that in a deposition, so that is why I'm continuing the trial." (May 17 Hr'g Tr. at 72:10-18). The ruling that Ms. Rosevear was

8

directed to provide a supplemental report on 30 months of damages was issued *after* being advised that she had not previously opined on duration, and as an alternative to having someone from the company testify on the issue. (*Id.*; *see also* June 4, 2024 Hearing Tr. at 35:13-23). Thus, Waterstone's objection to Ms. Rosevear's Supplemental Report opining on the duration is in effect yet another attempt to reargue what the Court already decided.

Indeed, this Court already considered Waterstone's arguments and crafted solutions. For instance, in response to the arguments that Waterstone would be somehow unfairly surprised, the Court not only required a supplemental report to address that Waterstone would be "vulnerable" without knowing the basis for 30 months, but also permitted Waterstone to take Ms. Rosevear's deposition. (May 17, 2024 Hr'g Tr. at 65:11-17) ("I am going to direct that the plaintiff identify who will be testifying as to the damage calculation and that a deposition can occur of that individual. So, if it's Rosevear [then Waterstone] will be able to have a deposition of Rosevear as to how that 30 months has been calculated."); *see also id.* at 72:10-18). In fact, multiple arguments raised in Waterstone's brief were specifically discussed at length with this Court and were the very basis of the Court's order directing the supplemental report. (*Compare* Motion to Strike the Supp. Expert Report of Candice Rosevear at 3, 9-10, ECF No. 215 (arguments concerning Mutual getting a "redo," costs, and prejudice) *with* June 4, 2024 Hr'g Tr. at 30:17-31:4 (discussing same arguments as to damages "redo" and prejudice)).

9

In light of the ability to depose Ms. Rosevear, and the limited ten-page supplemental report relying upon facts already in the record, there is no basis to strike the report. *In re Accutane Prods.*, 2007 WL 201091, at *1; *Fletcher*, 2010 U.S. Dist. LEXIS 149636, at *16-17.

## II. THE NMLS DATA IS ADMISSIBLE, PREVIOUSLY DISCLOSED INFORMATION THAT MS. ROSEVEAR WAS PERMITTED TO RELY UPON.

The Court's directive to provide a supplemental report specifically contemplated that it would include NMLS data. The record is replete with instances of Mutual citing to and advising that it intends to rely on NMLS data,[6] which is publicly available, and which Waterstone is acutely aware of as it must and does maintain information regarding its branches on NMLS.[7] In October of 2023, Mutual submitted a declaration discussing branch longevity, and specifically used the NMLS data to calculate an average duration for its branches that could be used to support a conclusion on branch longevity. (ECF No. 100-1, at ¶¶ 16-17) Further, Judge Sneed specifically ruled the NMLS data could be used at trial, a point reiterated multiple times before this Court. (Sneed Order, ECF No. 128, ¶ 3; Opp'n to Mot. *In Limine* to Exclude Evidence Beyond 18 Months, ECF No. 176 at 5 (discussing Sneed Order); June 4, 2024 Hr'g Tr. at 39:23-25, 40:7-9 (same)).

---

[6] See Factual Background, Section B, *supra* (noting the various motions, hearings, and rulings concerning the use of NMLS data).
[7] Waterstone's NMLS page can be located here: https://www.nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/186434 (last accessed August 5, 2024).

Accordingly, Waterstone's recycled contentions of "trial by ambush" are disingenuous. In deciding that Mutual could use the NMLS data, Judge Sneed noted discovery was not yet closed at the time, and Waterstone did not serve any discovery regarding the NMLS data. An explanation of information derived from NMLS was then discussed extensively with Judge Barber. (Jan. 30, 2024 Hearing Tr., ECF No. 101 at 24-26 (discussing the average duration of branches and evidence from Mutual confirming the same)). It was also discussed extensively with this Court at the May 17, 2024 Hearing and the June 4, 2024 Hearing, culminating with Mutual's counsel advising it would specifically be relying on NMLS data. The ruling that Ms. Rosevear was directed to provide a supplemental report on 30 months of damages was issued after counsel for Mutual explained the basis of the analysis – and specifically that it would include averages of data from NMLS. To contend that review of NMLS data is "trial by ambush" is simply baseless.

Ms. Rosevear conducted an extremely similar analysis to prior proffers by Mutual of NMLS data to support the conclusion that the Tampa and Daytona branches ("Branches") would have remained in operation at Mutual until December 31, 2024. The Branches left in April and June of 2022, meaning that if they stayed until December 31, 2024, that would reflect approximately 30 months of damages. Ms. Rosevear assessed that the Branches are currently approximately 68 months old as of June 2024, and thus, she assessed how likely it is that the Branches would have stayed an additional 6 months until the end of 2024. (Supp. Report, ECF No. 215-3, at ¶ 20). She then reviewed "the NMLS data to evaluate all MOM branches that were at least

68 months old" of which there are 33. *Id.* She then reviewed the "percentage of them that closed before reaching 74 months of age" finding only 5. (*Id.*). She therefore concludes "the probability of survival for at least six more months for a MOM branch aged 68 months is 84.8% as indicated by this set of branches." (*Id.*).

The fact that Ms. Rosevear, an expert in her field, advised that the analysis is referred to "Kaplan-Meir" does not transform it into something new. The fact is, she reviewed the NMLS data, and using terminology and methodology of which she was familiar, explained why that data supported her conclusions. This is exactly what would be expected from an expert in their report. Ms. Rosevear's analysis relies upon previously disclosed information Mutual was given permission to rely on, and therefore, Ms. Rosevear's reliance on NMLS data does not provide a basis to strike her report.

### III.   MS. ROSEVEAR'S REPORT IS SUPPORTED BY EVIDENCE IN THE RECORD BEYOND THE NMLS DATA

The NMLS Data is only one basis for Ms. Rosevear's testimony on duration. Indeed, Ms. Rosevear supports her duration determination by other record evidence including deposition testimony, interrogatory responses, and produced documents, just as the Court requested. (Supp. Report, ECF No. 215-3, at ¶ 22-23). Notably, Waterstone makes no objection to these other bases for Ms. Rosevear's testimony, demonstrating that there is no basis for the Supplemental Report to be stricken in its entirety.

Ms. Rosevear first relies on the duration and integrity of the Tampa and Daytona branches at Waterstone over the past 24 months, which demonstrates that it would have remained intact at Mutual for the same period had it not been taken. (*Id.* at ¶ 18). Waterstone does not object to this portion of her analysis, and thus there is no basis to strike this portion of her report.

Second, Ms. Rosevear relies on deposition testimony regarding branch longevity, including the deposition of Mr. Gennarelli wherein he states that "most of our branches have been here 10, 15 years… at least the core group" and that "branches similar to [the Tampa and Daytona branches] … they stay for… eight years, ten years." (*Id.* at ¶ 22). Again, Waterstone does not object to this portion of her analysis and makes no mention of it in its Motion. Thus, ¶ 22 may not be stricken.

Third, Ms. Rosevear reviewed interrogatory responses and previously produced profit and loss statements ("P&Ls") relevant to branch longevity to indicate "low attrition among MOM branches." (*Id.* at ¶ 23). Waterstone makes no objection to this portion of Ms. Rosevear's analysis, and therefore, ¶ 23 should not be stricken.

Thus, in addition to the NMLS evidence, there is substantial additional evidence cited by the supplemental report that supports the 30-month duration. Accordingly, Ms. Rosevear's Supplemental Report should not be stricken.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion in its entirety.

Dated: Washington, D.C.
August 12, 2024

        MITCHELL SANDLER PLLC

        By: */s/ Ari Karen*
        Ari Karen (admitted *pro hac vice*)
        Arielle Stephenson (admitted *pro hac vice*)
        Christopher L. McCall (admitted *pro hac vice*)
        Courtney E. Walter (Florida Bar No. 106228
        1120 20th Street NW, Suite 725
        Washington, D.C. 20036
        Email:  akarend@mitchellsandler.com
        Email:  astephenson@mitchellsandler.com
        Email:  cmccall@mitchellsandler.com
        Email:  cwalter@mitchellsandler.com
        Telephone: (202) 886-5292

        GUNSTER, YOAKLEY & STEWART, P.A.

        John A. Schifino
        Florida Bar No. 0072321
        Daniel P. Dietrich
        Florida Bar No. 934461
        Gregory L. Pierson
        Florida Bar No. 123905
        401 East Jackson Street, Suite 1500
        Tampa, Florida 33602
        jschifino@gunster.com
        ddietrich@gunster.com
        gpierson@gunster.com
        Telephone:  (813) 228-9080

        *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*

## **CERTIFICATE OF SERVICE**

  I certify that on August 12, 2024, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*/s/ Ari Karen*
Ari Karen
