1          **UNITED STATES DISTRICT COURT**
           **MIDDLE DISTRICT OF FLORIDA**
2                  **TAMPA DIVISION**

3

4  MUTUAL OF OMAHA MORTGAGE, INC,

5          Plaintiff,

6       vs.                        CASE NO. 8:22-cv-1660-UAM
                                   August 13, 2024
7                                  Tampa, Florida
                                   2:00 p.m. - 2:24 p.m.
8

   WATERSTONE MORTGAGE CORPORATION,
9
           Defendant.
10 _____/

11

12

13

14

                TRANSCRIPT OF STATUS CONFERENCE
15                (VIA ZOOM VIDEOCONFERENCE)
           BEFORE THE HONORABLE ANTHONY E. PORCELLI
16              UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21 Proceedings recorded digitally and transcribed by Official
   Court Reporter using computer-aided transcription.
22

23

24

25

```
1    A P P E A R A N C E S:

2

     For the Plaintiff:        ARI KAREN, ESQUIRE
3                              Mitchell Sandler, PLLC
                               1120 20th Street, NW
4                              Suite 725
                               Washington, DC 20036
5                              202-886-5260

6                              ARIELLE STEPHENSON, ESQUIRE
                               Mitchell Sandler, PLLC
7                              1120 20th Street, NW
                               Suite 725
8                              Washington, DC 20036
                               424-731-5645
9
                               DANIEL PAUL DIETRICH, ESQUIRE
10                             Gunster, Yoakley & Stewart, PA
                               401 E. Jackson Street, Ste. 1500
11                             Tampa, FL 33602
                               813-228-9080
12
     Also Present:            Mark Carroll, Esquire, General
13                            Counsel, Mutual of Omaha

14   For the Defendant:       MARIA L. KREITER, ESQUIRE
                              Godfrey & Kahn, S.C.
15                            833 East Michigan Street, Ste. 1800
                              Milwaukee, WI 53202-5615
16                            414-287-9466

17                            XAVIER O. JENKINS, ESQUIRE
                              Godfrey & Kahn, S.C.
18                            833 East Michigan Street
                              Suite 1800
19                            Milwaukee, WI 53202
                              414-287-9511
20
     Also present:           Stephanie Ziebell, General Counsel,
21                           Waterstone

22   Transcriber:            Howard W. Jones, RDR, RMR, FCRR
                              801 N. Florida Avenue, Suite 13B
23                            Tampa, Florida 33602
                              813/301-6158
24
                         * * * * * * * * * *
25
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1          **I N D E X**

2                                              **PAGE**

3

RULING OF THE COURT:                          18

4

CERTIFICATE OF COURT REPORTER:                24

5

6              * * * * * * * * *

7              **E X H I B I T S**

8          *(NONE RECEIVED IN EVIDENCE)*

9              * * * * * * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

4

1   **(COURT CALLED TO ORDER)**

2                    **P R O C E E D I N G S**

3            THE COURT:  Okay.  Good afternoon.  Let's call the

4   case, please.

5            THE DEPUTY CLERK:  This is the case of Mutual of

6   Omaha Mortgage vs. Waterstone Mortgage, case number

7   8:22-cv-1660-UAM.

8            THE COURT:  Again, good afternoon.  Let me have

9   counsel state your appearance for the record starting with

10  the Plaintiff.

11           MR. KAREN:  Good afternoon, Your Honor.  Ari Karen

12  on behalf of the Plaintiff, Mutual of Omaha Mortgage.  Along

13  with me is my local counsel, Dan Dietrich, co-counsel

14  Arielle Stephenson and our general counsel, mark Carroll.

15           THE COURT:  Good afternoon.

16           MS. KREITER:  Good afternoon, Your Honor.  Maria

17  Kreiter and Xavier Jenkins from Godfrey and Kahn.  We are

18  also joined by Stephanie Ziebell, Waterstone's general

19  counsel.

20           THE COURT:  Good afternoon.  Okay.  Thank you all

21  for your time this afternoon.  As you know, this was

22  scheduled as a status to follow up discovery the Court had

23  previously ordered in anticipation of scheduling a trial

24  date in the matter.

25           For the record, let me note prior to the hearing

1    filed on July 29th at document number 215 is the motion to

2    strike the supplemental expert report.  And then a response

3    in opposition has been filed on August 12th.

4           I plan on taking that up.  In regard to that,

5    there is also a declaration by Ms. Kreiter at document

6    number 216.  If I neglected to state this, the response is

7    217.

8           All right.  Let's first discuss, Mr. Karen, from

9    your perspective where are we at?  Are we completed with the

10   additional discovery?

11          MR. KAREN:  I believe there is a deposition they

12   have requested.  We did provide them all of the documents,

13   all the answers, discovery, they also submitted requests for

14   admissions that we responded to.  We also followed up when

15   they had some concerns over, you know, the typical discovery

16   issues that arise.  And I believe we have resolved those,

17   although, obviously, we will want to hear from Ms. Kreiter

18   on that, but I think we have resolved those issues.

19          And right now the only thing that I think is

20   outstanding at this moment is the deposition of our witness

21   who is now scheduled for Monday to go forward and that is

22   the witness on the trade secrets that Waterstone had

23   requested.

24          So, I think from that perspective we have resolved

25   and addressed everything.

6

```
1              THE COURT:  All right.  Ms. Kreiter, from your

2   perspective?

3              MS. KREITER:  Your Honor, I mean, we do have the

4   deposition set.  It is limited to the trade secret issues.

5   That is set for Monday.  It is true that we have (inaudible)

6   in a production of documents it was in excess of 9,000

7   pages.  We did sent a preliminary meet and confer letter.

8   There may be follow-up issues.

9              Mr. Karen is accurate that Mutual responded to our

10  preliminary letter.  It's just -- frankly, it's a volume of

11  documents.  We are still going through those.  I don't have

12  anything that I need to alert the Court for their -- for the

13  Court's assistance now, but it just -- it was a volume of

14  information and I think there is still more -- more that we

15  need to investigate before I could represent to the Court

16  that there is no issues.

17             THE COURT:  Well, let me ask the parties this.  I

18  did not notice the motion for this hearing.  Are you

19  prepared to go forward on the hearing -- on the motion today

20  or would you rather I schedule it separately?

21             MS. KREITER:  For Waterstone, I'm prepared to go

22  forward on the motion.

23             THE COURT:  All right.  Mr. Karen?

24             MR. KAREN:  We are prepared to go forward as well,

25  Your Honor.
```

```
 1              THE COURT:  All right.  Ms. Kreiter, I'll hear you
 2    as to the motion then.
 3              MS. KREITER:  I think, Your Honor, the easiest way
 4    to deal with the motion, first, is there something new here?
 5              There is absolutely a new scope of opinion.
 6    Mutual has never had a longevity expert.  And you can tell
 7    that -- opposing counsel may phrase it that there's nothing
 8    new.  There is absolutely something new here and I think you
 9    can discern that from, frankly, the scope of Mr. Rosevear's
10    rebuttal report compared to her new report and the
11    deposition testimony she gave --
12              THE COURT:  But, Ms. Kreiter, in the original
13    report it was based upon ten years.  And I know you have
14    highlighted the deposition testimony where you specifically
15    asked as to what was that based upon, on whether how long
16    one individual would say or not and she drew no opinion.
17              What was the basis of the ten years in the
18    original report?  Did she ever explain on how she came up
19    with ten years?
20              MS. KREITER:  Yes.  Just industry standard.  This
21    is what modeling formulas will -- will say should be used,
22    but she was not taking a substantive position specific to
23    this case.
24              My understanding is that she said, look, under
25    modeling principles, ten years is a nice round number.  I'm
```

1  using that duration, but I am not the one that's gonna talk

2  about the duration that is appropriate for this case.

3          THE COURT:  All right.  Mr. Karen, what's your

4  response to that?

5          MR. KAREN:  Well, Your Honor, the whole reason we

6  did this was to get an opinion from her as to 30 months and

7  why.  If you look back at the history, the history was that

8  throughout this case, we intended to pursue a ten-year model

9  that the jury could make a determination.

10          That's where we were.  Then, Judge Barber urges us

11  and says, listen, you've got to streamline this case.  I

12  understand these things and, you know, it's very clear and

13  we're trying to read the tea leaves so to speak and be

14  cooperative.  And, so, unilaterally, we said, fine --

15          THE COURT:  Well, that is a very broad stroke of

16  Judge Barber's determination.  Judge Barber's determination

17  was there's nothing grounded in fact as to the longevity.

18  And, so, he ruled that ten years was not sufficient.

19          You stipulated to 30 months.  My order was then to

20  allow -- because the other issue that was outstanding was

21  whether it was -- she was simply a rebuttal witness.  And,

22  so, I allowed her to be considered for the case in chief

23  and, as a result of that, allowed the deposition so she

24  could explain specifically her modeling.  And I made it very

25  clear that would not inject new facts.

1          And, so, my question is simply that:  Is she

2    testifying on a model that she previously opined on ten

3    years and just simply truncating it to 30 months?  Because

4    anything outstanding of what she relied on previously is not

5    gonna be interjected into this case.

6          MR. KAREN:  Well, Your Honor, she -- she -- I want

7    to make sure I understand your question and I want to

8    respond appropriately.

9          Okay.  The -- she did testify to ten years.  She

10   did not testify previously to 30 months.  She did not

11   provide an opinion on 30 months previously.  Because, again,

12   that was not the -- what we -- we were asking for ten years.

13          THE COURT:  But, Mr. Karen, my question is this to

14   be clear:  If she gave an opinion on somehow -- on how she

15   came up with ten years, you have stipulated to 30 months.

16   It seems to me the opinion simply is what she said before,

17   for whatever basis it was, why the offices would remain open

18   for ten years, she's certainly then using the same modeling

19   to draw the opinion that it would be 30 months.

20          But whatever that modeling is, I don't know, but

21   it certainly seems like it's not what was testified

22   before -- I mean, what she's testifying now was not

23   testified to previously.  And, so, that's what I'm

24   indicating is whatever she relied on originally to get the

25   ten years is all she can rely on to get the 30 months,

1  nothing new.

2          MR. KAREN:  Your Honor, she did not provide an

3  opinion on ten years.  What she provided is that there is an

4  economic model and the economic model when you forecast out,

5  you forecast out for ten years.  That's what she talked

6  about previously.

7          What you ordered her to do was to provide the

8  basis for her opinion on 30 months.

9          Now, Your Honor, respectfully, if I may go back, I

10 don't think it's accurate to say that Judge Barber -- he

11 never made a ruling that we would go back to 18 months.  He

12 never ruled that and he never ruled that we couldn't pursue

13 ten years.

14         While that was in consideration, while that was

15 going on, before he actually submitted his opinion and

16 without us knowing when that opinion was coming --

17 obviously, we would have no idea of when the Court was gonna

18 issue its ruling, we, based on the Court's urgings, went

19 back and then submitted the 30-month stipulation.

20         So, you know -- and Judge Barber obviously picked

21 that up and said this is what we're going to do, but it

22 was -- there was never an actual ruling that brought us back

23 to 30 months.

24         And if Your Honor is -- is not going to allow

25 Ms. Rosevear to testify -- and, again, I think the last time

1   were in front of you I believe -- or maybe it was the

2   previous hearing, we provided -- and I provided extensive

3   testimony from Mr. Gennarelli, if you recall, where he

4   talked about it.  He thought it could have been six or seven

5   years.  And the only reason he said 18 months is it was

6   based on a settlement offer that we had made to them and we

7   were trying to be reasonable.

8          So, there's actual deposition testimony, a 30(b)6,

9   of our corporate designee who talks about this could have

10  been six or seven years, that's how long our branches stay

11  and -- and that information exists, does exist and is in the

12  record and we could rely upon it.

13         We've also provided the MLS data, so --

14         THE COURT:  And, Mr. Karen, I understood that.

15  And that's -- so, if that's what it's simply going to be and

16  that Ms. Rosevear is simply calculating then what the value

17  would be based on the 30-month stipulation, why is she

18  drawing opinions then as to longevity?  If you are going to

19  rely upon the 30(b)6 evidence for purposes of longevity, she

20  never testified previously or opined previously about

21  longevity, so why is she doing that now?

22         MR. KAREN:  We thought, Your Honor -- and, again,

23  we understood Your Honor's order as saying allow -- have

24  Ms. Rosevear provide testimony to support a 30-month

25  stipulation.  That's what we understand Your Honor was

1    asking us to do, so that's what we did.

2           And we -- you -- you said use facts on the record.

3    No new facts.  We did that.  We used facts on the record.

4    That's all she used.  There was nothing new.  Nothing that

5    hasn't been provided to them.  For instance, they didn't

6    object, we used -- obviously, I -- they did object to MLS

7    data, but we discussed that at length, for example, Your

8    Honor, during the hearing.  We talked about the fact -- and

9    I said -- I explicitly said she's going to rely on MLS data,

10   is that okay?  Your response was that's -- you know, that's

11   what she'll have to testify to.

12          We also discussed at length Mr. Gennarelli's

13   testimony, that she would be relying on that.  And these are

14   the things that she relies upon to provide a basis for 30

15   months.

16          Now, again, what she had done previously was not

17   provide a 30-month because we were seeking a ten-year model

18   to provide to the jury.

19          So, obviously, we have to -- if we are going to

20   provide an opinion on 30 months support that opinion and we

21   are supporting that opinion, as you made very clear, I

22   think, Your Honor, based on facts in the record.

23          There were no new facts.  No new testimony.  No

24   new materials.  No new documents.  These are all things that

25   were already in the record, that were already provided to

1    Waterstone, that were already discussed, some of which were

2    topics of motions that had been discussed.

3            So, all of that was already there.  But,

4    obviously, there was no 30-month formulation by Ms. Rosevear

5    because she had not provided that before and that -- and I

6    think we were very clear about that to the Court.

7            THE COURT:  But Ms. -- is Ms. Rosevear's testimony

8    based on a 30-month longevity, here is the value I put on

9    damages by the branch office -- branch offices closing, or

10   is it -- the opinion is they would have lasted at least 30

11   months and, in addition to that, here is the damages I

12   calculate?

13           MR. KAREN:  I think it's both.  I think she does

14   obviously provide 30 months, but she also provides, you

15   know, a basis for why she thinks they would have stayed 30

16   months, which is, again, what I thought Your Honor ordered.

17           THE COURT:  Well, then, I'll accept the blame for

18   that and apologize that if you thought that, but that -- I

19   thought made very clear what I stated, no new facts, which

20   is now a fact that she's adding as her opinion that she

21   never opined before as to longevity.  Rather, what was to be

22   done was, if there was facts in the record, such as the MLS,

23   which you could rely upon that data, and your 30(b)6

24   testimony to demonstrate whatever the basis is for that

25   opinion, that somehow the branches would be -- remain open

1  for at least 30 months, she was to take that and give her

2  calculation as to why she believes the damage value would be

3  whatever she opined after 30 months.  Not that she could

4  additionally testify to the longevity, which she never

5  testified to previously.

6          If she had testified previously about longevity,

7  then that would make sense that if she opined based on

8  longevity at least ten years, then she could have easily

9  opined at least 30 months, but she did not do that.

10         MR. KAREN:  Well, Your Honor, then that is -- and

11  I apologize -- a distinction between what you had ordered

12  and what we had understood.  And I apologize for that.

13         What we had understood was no new facts meant no

14  new -- no new facts.  In other words, nothing that wasn't in

15  the record.  And I know there was some discussion with you

16  about it has to be in the record.

17         So, what we thought you wanted us to do was

18  provide that.  There are facts in the record that our client

19  can testify to and our clients can testify to.  And, in

20  fact, Your Honor, if I could simply point this out -- and

21  it's not to disagree with you, but just to understand where

22  we're coming from.

23         If you recall how we got to Ms. Rosevear doing it,

24  we had suggested to you that initially Ms. Rosevear would

25  just provide that calculation.  And then there would be a

1   30(b)6 witness if Waterstone wanted to follow up on some of

2   the discovery that they had already taken and some of the

3   questions that have been asked of Mr. Gennarelli and his

4   answers, we offered somebody to further discuss that.

5   Waterstone didn't want to.  We said okay.  That's fine.  And

6   that's how we got to Ms. Rosevear doing it.  That was never

7   our intention at the outset.  Our intention was simply to

8   rely upon the witnesses that had already been presented, the

9   information that had already been presented.

10          And I think, frankly, Your Honor, that's a lot of

11  what Ms. Rosevear relies upon per se.  So, I understand if

12  Your Honor is saying she's not at -- at -- at trial going to

13  offer her opinion on longevity.  I think -- you know,

14  obviously that could be your ruling.  That was not our

15  understanding, but that's fine.  But I don't think the

16  ramification for that, because -- goes back to 18 months,

17  because we still have evidence in the record to support that

18  and it's the same evidence, frankly, that Ms. Rosevear

19  relied upon herself.

20          I mean, that evidence -- there's still facts in

21  the record and still facts that we can rely upon for 30

22  months.

23          Now, if Your Honor says we can't allow

24  Ms. Rosevear to testify that that's her opinion -- again,

25  that was not our understanding, but obviously we will comply

1   with Your Honor's ruling and follow that.  But, again, I

2   don't think the next step of the conclusion that

3   Waterstone --

4            THE COURT:  No, I understand the argument.  So,

5   let me hear from Ms. Kreiter.

6            Why do you think it should be only 18 months?

7            MS. KREITER:  Your Honor, no witness has ever

8   uttered 30 months, period, during the course of discovery.

9   That is objectively true.  The first time that anybody

10  uttered 30 months as a duration and that I knew Mutual was

11  going to pursue 30 months was long after the close of

12  discovery when Mr. Karen out of the blue files a stipulation

13  after the close of briefing on the damages issues that we

14  had just spent hundreds of thousands of dollars on.

15           So, it is absolutely false to say that there is

16  factual support in the record for 30 months.  The first time

17  it was uttered was in March of 2024, months after the close

18  of discovery.  That is the entire problem.  There is no

19  factual support for that.  And, frankly, you know, Judge

20  Barber's opinion -- I hear what Mr. Karen is saying about

21  why Judge Barber's opinion is what it is.  The opinion is

22  clear what it is.  And he talks about how to date Mutual

23  does not have factual support for the longevity component of

24  its analysis and warns Mutual, you do this at trial, you are

25  subject to a directed verdict.

1        So, that is the posture of the case.  He had no

2   context for whether there was support in the discovery

3   record for 30 months or not.  He just said, try it if you

4   can, but I'm warning you Mutual, you do this at trial, I'm

5   granting directed verdict.  That is what his order says.

6        So, then the question is, can Mutual substantiate

7   30 months.  The answer is absolutely no, because the Federal

8   Rules -- again, they have to mean something.  I can't keep

9   redoing this. I shouldn't have to keep redoing this.  If

10  they wanted 30 months they could have said it at the outset

11  in March of 2023 through their expert when it was due.

12        And at this point it's their second, third, fourth

13  chance at articulating damages.  We have spent hundreds of

14  thousands of dollars litigating whether or not they have

15  adequate proof of longevity.  Judge Barber said no, but you

16  have got the stipulation about 30 months.  Subject to all my

17  warnings, okay, you know, I'm not dismissing at this time.

18        But frankly, I -- I cannot lose the position that

19  Waterstone has as a result of nearly a year of litigation

20  where Judge Barber said, Mutual, I don't see that you

21  have --

22        THE COURT:  Well, if I can interrupt.  I think we

23  are going down a path that is not even before me.  Your

24  motion simply is to strike any testimony by Ms. Rosevear as

25  to longevity, which I've made very clear that's not what I

1   was allowing, if I wasn't clear before.

2           But as to the distinction between 18 and 30

3   months, that is still something that the parties are

4   disagreeing upon factually whether there is factual support

5   of that or not.  But that is not before me in your current

6   motion.

7           MS. KREITER:  I would agree with that assessment.

8   I think that the Court absolutely has to grant this because

9   I don't want to go off on six months of discovery on this

10  new expert opinion.

11          THE COURT:  All right.  Well, I am granting the

12  motion to this extent:  That Ms. Rosevear, again, can

13  testify as an expert as to her calculation as to whether --

14  whether it's 30 months or even 18 months, how she is

15  calculating based upon simply the math that she's getting to

16  draw an opinion as to what the damages would be after the

17  time period of 30 months if that's what is -- she's

18  testifying to.  And if there is a disagreement based on the

19  facts whether that is supported in the record as to the

20  longevity, as to whether the offices would have remained

21  open for that period of duration, that is a separate issue

22  that I'll have to make the determination based upon the

23  evidence that comes into the record.

24          And as forecasted by Judge Barber, if there is no

25  evidence to support a period of 30 months or any other

1    period, there could be a directed verdict.  But that is not

2    before me today, nor do I have the factual record to make

3    that determination that's in front of me.

4         What's all in front of me is what I have ruled on

5    is that Ms. Rosevear is not gonna opine about longevity in

6    this case, so I'm granting the motion to that extent.

7         All right.  Does that address everything in your

8    motion, Ms. Kreiter?

9         MS. KREITER:  It does.

10        THE COURT:  All right.  So, then let's talk about

11   going forward then.  From your perspective, how much time

12   then after the -- to review the discovery and take this

13   deposition do you think you will be in position that we

14   could get back together again and see if we can get on a

15   trial?

16        MS. KREITER:  I guess, with all due respect, Your

17   Honor, it's not taking one -- you know, one deposition.  I

18   mean, again, I think we're coming back to the same problem

19   of who from Mutual, if anybody, is going to say that the

20   damages are 30 months because they don't have that right

21   now.

22        If you're saying that they are allowed to identify

23   a new -- a Rule 20(b)(6) witness or some other witness

24   that's gonna say that --

25        THE COURT:  That's not -- that's not at all what I

```
 1    have said.
 2              MS. KREITER:  Okay.
 3              THE COURT:  The discovery to not being reopened on
 4    that matter.  You've got one deposition left that I believe
 5    was on the trade secrets.  So, what I --
 6              MS. KREITER:  Correct.
 7              THE COURT:  -- my question to you is what do you
 8    have remaining to review the discovery that's been
 9    propounded and the deposition so that we can get back on the
10    trial calendar?
11              MS. KREITER:  Yeah.  With the understanding that
12    there is not some 30-month witness and just focusing on the
13    trade secret, I think we had talked about October at the
14    last hearing.  I guess I would say, assuming we are not
15    opening that Pandora's Box of 30 months, I would -- I don't
16    know if October is doable given the dates that the parties
17    had, but I would look to November.  If there's any inkling
18    that we're talking about 30 months, it's going to be much
19    later than that.
20              THE COURT:  How much time, Mr. Karen, would you
21    anticipate for trial?
22              MR. KAREN:  We will probably need about five days,
23    I think, to put our witnesses on.  So, one week.  Four to
24    five days for our side.  I would assume -- I don't want to,
25    again, speak for Ms. Kreiter.  I'm going to assume she
```

```
 1    probably would want or need roughly equal time, but, again,
 2    I don't want to make that assumption.
 3              THE COURT:  Ms. Kreiter?
 4              MS. KREITER:  Yeah, I think we had talked about n
 5    eight day trial split 50/50, four days each.  I would stand
 6    by that.
 7              THE COURT:  So, I'm looking at the calendar and,
 8    unfortunately, the problem is I am out the week of November
 9    11th, which kind of splits the month, because that means we
10    cannot go the week of the 4th.  We could go the week of the
11    18th, but then that will take us into Thanksgiving, which
12    I'm happy to set, but I would imagine that may not be the
13    best time for either you all or your witnesses.
14              So, we could push it to December --
15              MS. KREITER:  But --
16              THE COURT:  But what I will do is just give you
17    time to consider that.  If you are interested in the week of
18    the 18th and time to discuss with each other the weeks of
19    the 18th and 25th or December -- of November or December 2nd
20    and 9th.
21              So, take your time to think about that, because
22    what I am going to do now is set us for another status
23    conference just to see where we are at in advance of that.
24              How about September 30th?  It's a Monday.  We
25    could do it at 2:00 o'clock eastern time?
```

```
 1              MS. KREITER:  That works for me, Your Honor.

 2              MR. KAREN:  That works for me, Your Honor.

 3              THE COURT:  Okay.  And that will just be simply a

 4    status to see if there is any other outstanding issues.  If

 5    not, then consider those dates or any other dates,

 6    alternative dates you want to suggest for a date certain for

 7    the trial and we will get you re-calendared for then the

 8    trial.

 9              Okay.  Mr. Karen, from your perspective, anything

10    else we should take up?

11              MR. KAREN:  No, Your Honor.  And I just want to

12    apologize to Your Honor since we -- obviously we

13    misunderstood your order, so I apologize for that.

14              THE COURT:  No.  No apology necessary.

15              Ms. Kreiter, anything else from your perspective?

16              MS. KREITER:  Nothing.  Thank you.

17              THE COURT:  Okay.  I'll enter a brief order to

18    memorialize what I have ruled on today and then we will see

19    you on the 30th of September.

20              Thank you for your time.  We will be adjourned.

21              (Hearing concluded.)

22

23

24

25
```

```
 1   UNITED STATES DISTRICT COURT      )
                                       )
 2   MIDDLE DISTRICT OF FLORIDA        )

 3
                   REPORTER TRANSCRIPT CERTIFICATE
 4

 5          I, Howard W. Jones, Official Court Reporter for
     the United States District Court, Middle District of
 6   Florida, certify, pursuant to Section 753, Title 28, United
     States Code, that the foregoing is a true and correct
 7   transcription of the stenographic notes taken by the
     undersigned in the above-entitled matter (Pages 1 through 22
 8   inclusive) and that the transcript page format is in
     conformance with the regulations of the Judicial Conference
 9   of the United States of America.

10

                          /s      Howard W. Jones
11
                          _____
12                        Howard W. Jones, RDR, RMR, FCRR
                          Official Court Reporter
13                        United States District Court
                          Middle District of Florida
14                        Tampa Division
                          Date:  08-16-24
15

16

17

18

19

20

21

22

23

24

25
```

**MR. KAREN: [12]** 4/11 5/11 6/24
8/5 9/6 10/2 11/22 13/13 14/10 20/22
22/2 22/11
**MS. KREITER: [16]** 4/16 6/3 6/21
7/3 7/20 16/7 18/7 19/9 19/16 20/2
20/6 20/11 21/4 21/15 22/1 22/16
**THE COURT: [29]**
**THE DEPUTY CLERK: [1]** 4/5

## /
**/s [1]** 23/10

## 0
**08-16-24 [1]** 23/14

## 1
**1120 [2]** 2/3 2/7
**11th [1]** 21/9
**12th [1]** 5/3
**13 [1]** 1/6
**13B [1]** 2/22
**1500 [1]** 2/10
**18 [7]** 3/3 10/11 11/5 15/16 16/6
18/2 18/14
**1800 [2]** 2/15 2/18
**18th [3]** 21/11 21/18 21/19

## 2
**20 [1]** 19/23
**20036 [2]** 2/4 2/8
**202-886-5260 [1]** 2/5
**2023 [1]** 17/11
**2024 [2]** 1/6 16/17
**20th [2]** 2/3 2/7
**215 [1]** 5/1
**216 [1]** 5/6
**217 [1]** 5/7
**22 [1]** 23/7
**24 [2]** 3/4 23/14
**25th [1]** 21/19
**28 [1]** 23/6
**29th [1]** 5/1
**2:00 [1]** 1/7
**2:00 o'clock [1]** 21/25
**2:24 [1]** 1/7
**2nd [1]** 21/19

## 3
**30 [38]**
**30-month [7]** 10/19 11/17 11/24
12/17 13/4 13/8 20/12
**30th [2]** 21/24 22/19
**33602 [2]** 2/11 2/23

## 4
**401 [1]** 2/10
**414-287-9466 [1]** 2/16
**414-287-9511 [1]** 2/19
**424-731-5645 [1]** 2/8

**4th [1]** 21/10

## 5
**50 [1]** 21/5
**50/50 [1]** 21/5
**5260 [1]** 2/5
**53202 [1]** 2/19
**53202-5615 [1]** 2/15
**5615 [1]** 2/15
**5645 [1]** 2/8

## 6
**6158 [1]** 2/23

## 7
**725 [2]** 2/4 2/7
**753 [1]** 23/6

## 8
**801 [1]** 2/22
**813-228-9080 [1]** 2/11
**813/301-6158 [1]** 2/23
**833 [2]** 2/15 2/18
**8:22-cv-1660-UAM [2]** 1/6 4/7

## 9
**9,000 [1]** 6/6
**9080 [1]** 2/11
**9466 [1]** 2/16
**9511 [1]** 2/19
**9th [1]** 21/20

## A
**about [20]** 8/2 10/6 11/4 11/9 11/20
12/8 13/6 14/6 14/16 16/20 16/22
17/16 19/5 19/10 20/13 20/18 20/22
21/4 21/21 21/24
**above [1]** 23/7
**above-entitled [1]** 23/7
**absolutely [5]** 7/5 7/8 16/15 17/7
18/8
**accept [1]** 13/17
**accurate [2]** 6/9 10/10
**actual [2]** 10/22 11/8
**actually [1]** 10/15
**adding [1]** 13/20
**addition [1]** 13/11
**additional [1]** 5/10
**additionally [1]** 14/4
**address [1]** 19/7
**addressed [1]** 5/25
**adequate [1]** 17/15
**adjourned [1]** 22/20
**admissions [1]** 5/14
**advance [1]** 21/23
**after [6]** 14/3 16/11 16/13 16/17
18/16 19/12
**afternoon [7]** 4/3 4/8 4/11 4/15 4/16
4/20 4/21
**again [14]** 4/8 9/11 10/25 11/22

**12/16 13/16 15/24 16/1 17/8 18/12
19/14 19/18 20/25 21/1
agree [1]** 18/7
**aided [1]** 1/21
**alert [1]** 6/12
**all [20]** 4/20 5/8 5/12 5/13 6/1 6/23
7/1 8/3 9/25 12/4 12/24 13/3 17/16
18/11 19/4 19/7 19/10 19/16 19/25
21/13
**allow [4]** 8/20 10/24 11/23 15/23
**allowed [3]** 8/22 8/23 19/22
**allowing [1]** 18/1
**Along [1]** 4/12
**also [9]** 2/12 2/20 4/18 5/5 5/13 5/14
11/13 12/12 13/14
**alternative [1]** 22/6
**although [1]** 5/17
**am [4]** 8/1 18/11 21/8 21/22
**America [1]** 23/9
**analysis [1]** 16/24
**another [1]** 21/22
**answer [1]** 17/7
**answers [2]** 5/13 15/4
**ANTHONY [1]** 1/15
**anticipate [1]** 20/21
**anticipation [1]** 4/23
**any [5]** 17/24 18/25 20/17 22/4 22/5
**anybody [2]** 16/9 19/19
**anything [4]** 6/12 9/4 22/9 22/15
**apologize [5]** 13/18 14/11 14/12
22/12 22/13
**apology [1]** 22/14
**appearance [1]** 4/9
**appropriate [1]** 8/2
**appropriately [1]** 9/8
**are [20]** 4/17 5/9 5/9 6/11 6/18 6/24
11/18 12/13 12/19 12/21 12/24 14/18
16/24 17/23 18/3 19/20 19/22 20/14
21/17 21/23
**argument [1]** 16/4
**ARI [2]** 2/2 4/11
**ARIELLE [2]** 2/6 4/14
**arise [1]** 5/16
**articulating [1]** 17/13
**as [26]**
**ask [1]** 6/17
**asked [2]** 7/15 15/3
**asking [2]** 9/12 12/1
**assessment [1]** 18/7
**assistance [1]** 6/13
**assume [2]** 20/24 20/25
**assuming [1]** 20/14
**assumption [1]** 21/2
**August [2]** 1/6 5/3
**August 12th [1]** 5/3
**Avenue [1]** 2/22

**B**

**Barber [6]** 8/10 10/10 10/20 17/15
  17/20 18/24
**Barber's [4]** 8/16 8/16 16/20 16/21
**based [11]** 7/13 7/15 10/18 11/6
  11/17 12/22 13/8 14/7 18/15 18/18
  18/22
**basis [6]** 7/17 9/17 10/8 12/14 13/15
  13/24
**be [25]**
**because [12]** 8/20 9/3 9/11 12/17
  13/5 15/16 15/17 17/7 18/8 19/20
  21/9 21/21
**been [9]** 5/3 11/4 11/10 12/5 13/2
  15/3 15/8 15/9 20/8
**before [11]** 1/15 6/15 9/16 9/22
  10/15 13/5 13/21 17/23 18/1 18/5
  19/2
**behalf [1]** 4/12
**being [1]** 20/3
**believe [4]** 5/11 5/16 11/1 20/4
**believes [1]** 14/2
**best [1]** 21/13
**between [2]** 14/11 18/2
**blame [1]** 13/17
**blue [1]** 16/12
**both [1]** 13/13
**Box [1]** 20/15
**branch [2]** 13/9 13/9
**branches [2]** 11/10 13/25
**brief [1]** 22/17
**briefing [1]** 16/13
**broad [1]** 8/15
**brought [1]** 10/22

**C**

**calculate [1]** 13/12
**calculating [2]** 11/16 18/15
**calculation [3]** 14/2 14/25 18/13
**calendar [2]** 20/10 21/7
**calendared [1]** 22/7
**call [1]** 4/3
**CALLED [1]** 4/1
**came [2]** 7/18 9/15
**can [12]** 7/6 7/9 9/25 14/19 14/19
  15/21 17/4 17/6 17/22 18/12 19/14
  20/9
**can't [2]** 15/23 17/8
**cannot [2]** 17/18 21/10
**Carroll [2]** 2/12 4/14
**case [12]** 1/6 4/4 4/5 4/6 7/23 8/2 8/8
  8/11 8/22 9/5 17/1 19/6
**certain [1]** 22/6
**certainly [2]** 9/18 9/21
**CERTIFICATE [2]** 3/4 23/3
**certify [1]** 23/6
**chance [1]** 17/13
**chief [1]** 8/22
**clear [9]** 8/12 8/25 9/14 12/21 13/6

12/19 16/22 17/25 18/4
**client [1]** 14/18
**clients [1]** 14/19
**close [3]** 16/11 16/13 16/17
**closing [1]** 13/9
**co [1]** 4/13
**co-counsel [1]** 4/13
**Code [1]** 23/6
**comes [1]** 18/23
**coming [3]** 10/16 14/22 19/18
**compared [1]** 7/10
**completed [1]** 5/9
**comply [1]** 15/25
**component [1]** 16/23
**computer [1]** 1/21
**computer-aided [1]** 1/21
**concerns [1]** 5/15
**concluded [1]** 22/21
**conclusion [1]** 16/2
**confer [1]** 6/7
**conference [3]** 1/14 21/23 23/8
**conformance [1]** 23/8
**consider [2]** 21/17 22/5
**consideration [1]** 10/14
**considered [1]** 8/22
**context [1]** 17/2
**cooperative [1]** 8/14
**corporate [1]** 11/9
**CORPORATION [1]** 1/8
**correct [2]** 20/6 23/6
**could [17]** 6/15 8/9 8/24 11/4 11/9
  11/12 13/23 14/3 14/8 14/20 15/14
  17/10 19/1 19/14 21/10 21/14 21/25
**couldn't [1]** 10/12
**counsel [8]** 2/13 2/20 4/9 4/13 4/13
  4/14 4/19 7/7
**course [1]** 16/8
**COURT [16]** 1/1 1/21 3/3 3/4 4/1
  4/22 6/12 6/15 10/17 13/6 18/8 23/1
  23/5 23/5 23/12 23/13
**Court's [2]** 6/13 10/18
**current [1]** 18/5
**cv [2]** 1/6 4/7

**D**

**damage [1]** 14/2
**damages [6]** 13/9 13/11 16/13 17/13
  18/16 19/20
**Dan [1]** 4/13
**DANIEL [1]** 2/9
**data [4]** 11/13 12/7 12/9 13/23
**date [4]** 4/24 16/22 22/6 23/14
**dates [4]** 20/16 22/5 22/5 22/6
**day [1]** 21/5
**days [3]** 20/22 20/24 21/5
**DC [2]** 2/4 2/8
**deal [1]** 7/4
**December [3]** 21/14 21/19 21/19
**December 2nd [1]** 21/19
**declaration [1]** 5/5

**Defendant [3]** 1/9 2/14
**demonstrate [1]** 13/24
**deposition [11]** 5/11 5/20 6/4 7/11
  7/14 8/23 11/8 19/13 19/17 20/4 20/9
**designee [1]** 11/9
**determination [5]** 8/9 8/16 8/16
  18/22 19/3
**did [13]** 5/12 6/7 6/18 7/18 8/6 9/9
  9/10 9/10 10/2 12/1 12/3 12/6 14/9
**didn't [2]** 12/5 15/5
**DIETRICH [2]** 2/9 4/13
**digitally [1]** 1/21
**directed [3]** 16/25 17/5 19/1
**disagree [1]** 14/21
**disagreeing [1]** 18/4
**disagreement [1]** 18/18
**discern [1]** 7/9
**discovery [13]** 4/22 5/10 5/13 5/15
  15/2 16/8 16/12 16/18 17/2 18/9
  19/12 20/3 20/8
**discuss [3]** 5/8 15/4 21/18
**discussed [4]** 12/7 12/12 13/1 13/2
**discussion [1]** 14/15
**dismissing [1]** 17/17
**distinction [2]** 14/11 18/2
**DISTRICT [8]** 1/1 1/1 23/1 23/2
  23/5 23/5 23/13 23/13
**DIVISION [2]** 1/2 23/14
**do [15]** 6/3 10/7 10/21 12/1 14/9
  14/17 16/6 16/24 17/4 19/2 19/13
  20/7 21/16 21/22 21/25
**doable [1]** 20/16
**document [2]** 5/1 5/5
**documents [4]** 5/12 6/6 6/11 12/24
**does [5]** 11/11 13/13 16/23 19/7 19/9
**doing [3]** 11/21 14/23 15/6
**dollars [2]** 16/14 17/14
**don't [11]** 6/11 9/20 10/10 15/15
  16/2 17/20 18/9 19/20 20/15 20/24
  21/2
**done [2]** 12/16 13/22
**down [1]** 17/23
**draw [2]** 9/19 18/16
**drawing [1]** 11/18
**drew [1]** 7/16
**due [2]** 17/11 19/16
**duration [4]** 8/1 8/2 16/10 18/21
**during [2]** 12/8 16/8

**E**

**each [2]** 21/5 21/18
**easiest [1]** 7/3
**easily [1]** 14/8
**East [2]** 2/15 2/18
**eastern [1]** 21/25
**economic [2]** 10/4 10/4
**eight [1]** 21/5
**either [1]** 21/13
**else [2]** 22/10 22/15
**enter [1]** 22/17

**E**

entire **[1]**  16/18
entitled **[1]**  23/7
equal **[1]**  21/1
ESQUIRE **[6]**  2/2 2/6 2/9 2/12 2/14
  2/17
even **[2]**  17/23 18/14
ever **[2]**  7/18 16/7
everything **[2]**  5/25 19/7
evidence **[7]**  3/8 11/19 15/17 15/18
  15/20 18/23 18/25
example **[1]**  12/7
excess **[1]**  6/6
exist **[1]**  11/11
exists **[1]**  11/11
expert **[5]**  5/2 7/6 17/11 18/10 18/13
explain **[2]**  7/18 8/24
explicitly **[1]**  12/9
extensive **[1]**  11/2
extent **[2]**  18/12 19/6

**F**

fact **[4]**  8/17 12/8 13/20 14/20
facts **[14]**  8/25 12/2 12/3 12/3 12/22
  12/23 13/19 13/22 14/13 14/14 14/18
  15/20 15/21 18/19
factual **[5]**  16/16 16/19 16/23 18/4
  19/2
factually **[1]**  18/4
false **[1]**  16/15
FCRR **[2]**  2/22 23/12
Federal **[1]**  17/7
filed **[2]**  5/1 5/3
files **[1]**  16/12
fine **[3]**  8/14 15/5 15/15
first **[4]**  5/8 7/4 16/9 16/16
five **[2]**  20/22 20/24
FL **[1]**  2/1
FLORIDA **[7]**  1/1 1/7 2/22 2/23
  23/2 23/6 23/13
focusing **[1]**  20/12
follow **[4]**  4/22 6/8 15/1 16/1
follow-up **[1]**  6/8
followed **[1]**  5/14
forecast **[2]**  10/4 10/5
forecasted **[1]**  18/24
foregoing **[1]**  23/6
format **[1]**  23/8
formulas **[1]**  7/21
formulation **[1]**  13/4
forward **[5]**  5/21 6/19 6/22 6/24
  19/11
four **[2]**  20/23 21/5
fourth **[1]**  17/12
frankly **[6]**  6/10 7/9 15/10 15/18
  16/19 17/18
front **[3]**  11/1 19/3 19/4
further **[1]**  15/4

**G**

gave **[2]**  7/11 9/14
general **[4]**  2/12 2/20 4/14 4/18
Gennarelli **[2]**  11/3 15/3
Gennarelli's **[1]**  12/12
get **[7]**  8/6 9/24 9/25 19/14 19/14
  20/9 22/7
getting **[1]**  18/15
give **[2]**  14/1 21/16
given **[1]**  20/16
go **[9]**  5/21 6/19 6/21 6/24 10/9
  10/11 18/9 21/10 21/10
Godfrey **[3]**  2/14 2/17 4/17
goes **[1]**  15/16
going **[16]**  6/11 10/15 10/21 10/24
  11/15 11/18 12/9 12/19 15/12 16/11
  17/23 19/11 19/19 20/18 20/25 21/22
gonna **[5]**  8/1 9/5 10/17 19/5 19/24
good **[6]**  4/3 4/8 4/11 4/15 4/16 4/20
got **[5]**  8/11 14/23 15/6 17/16 20/4
grant **[1]**  18/8
granting **[3]**  17/5 18/11 19/6
grounded **[1]**  8/17
guess **[2]**  19/16 20/14
Gunster **[1]**  2/10

**H**

had **[21]**  4/22 5/15 5/22 7/6 11/6
  12/16 13/2 13/5 14/6 14/11 14/12
  14/13 14/24 15/2 15/8 15/9 16/14
  17/1 20/13 20/17 21/4
happy **[1]**  21/12
has **[6]**  5/3 7/6 14/16 16/7 17/19 18/8
hasn't **[1]**  12/5
have **[37]**
he **[11]**  8/18 10/10 10/11 10/12
  10/15 11/3 11/4 11/5 16/22 17/1 17/3
hear **[4]**  5/17 7/1 16/5 16/20
hearing **[7]**  4/25 6/18 6/19 11/2 12/8
  20/14 22/21
her **[11]**  7/10 8/6 8/22 8/24 10/7 10/8
  13/20 14/1 15/13 15/24 18/13
here **[4]**  7/4 7/8 13/8 13/11
herself **[1]**  15/19
highlighted **[1]**  7/14
his **[3]**  10/15 15/3 17/5
history **[2]**  8/7 8/7
Honor **[26]**
Honor's **[2]**  11/23 16/1
HONORABLE **[1]**  1/15
how **[11]**  7/15 7/18 9/14 11/10 14/23
  15/6 16/22 18/14 19/11 20/20 21/24
Howard **[4]**  2/22 23/5 23/10 23/12
hundreds **[2]**  16/14 17/13

**I**

I'll **[4]**  7/1 13/17 18/22 22/17
I'm **[10]**  6/21 7/25 9/23 17/4 17/4
  17/17 19/6 20/25 21/7 21/12

**I've [2]**  17/25
idea **[1]**  10/17
identify **[1]**  19/22
imagine **[1]**  21/12
inaudible **[1]**  6/5
INC **[1]**  1/4
inclusive **[1]**  23/8
indicating **[1]**  9/24
individual **[1]**  7/16
industry **[1]**  7/20
information **[3]**  6/14 11/11 15/9
initially **[1]**  14/24
inject **[1]**  8/25
inkling **[1]**  20/17
instance **[1]**  12/5
intended **[1]**  8/8
intention **[2]**  15/7 15/7
interested **[1]**  21/17
interjected **[1]**  9/5
interrupt **[1]**  17/22
investigate **[1]**  6/15
is **[92]**
issue **[3]**  8/20 10/18 18/21
issues **[7]**  5/16 5/18 6/4 6/8 6/16
  16/13 22/4
it **[36]**
it's **[14]**  6/10 6/10 8/12 9/21 10/10
  11/15 13/13 14/21 15/18 17/12 18/14
  19/17 20/18 21/24
its **[2]**  10/18 16/24

**J**

Jackson **[1]**  2/10
JENKINS **[2]**  2/17 4/17
joined **[1]**  4/18
Jones **[4]**  2/22 23/5 23/10 23/12
JUDGE **[11]**  1/16 8/10 8/16 8/16
  10/10 10/20 16/19 16/21 17/15 17/20
  18/24
Judicial **[1]**  23/8
July **[1]**  5/1
July 29th **[1]**  5/1
jury **[2]**  8/9 12/18
just **[13]**  6/10 6/13 7/20 9/3 14/21
  14/25 16/14 17/3 20/12 21/16 21/23
  22/3 22/11

**K**

Kahn **[3]**  2/14 2/17 4/17
KAREN **[12]**  2/2 4/11 5/8 6/9 6/23
  8/3 9/13 11/14 16/12 16/20 20/20
  22/9
keep **[2]**  17/8 17/9
kind **[1]**  21/9
knew **[1]**  16/10
know **[14]**  4/21 5/15 7/13 8/12 9/20
  10/20 12/10 13/15 14/15 15/13 16/19
  17/17 19/17 20/16
knowing **[1]**  10/16
KREITER **[12]**  2/14 4/17 5/5 5/17

9/20

# K

KREITER... **[8]**  6/1 7/1 7/12 16/5 19/8 20/25 21/3 22/15

# L

last **[2]**  10/25 20/14
lasted **[1]**  13/10
later **[1]**  20/19
least **[4]**  13/10 14/1 14/8 14/9
leaves **[1]**  8/13
left **[1]**  20/4
length **[2]**  12/7 12/12
let **[4]**  4/8 4/25 6/17 16/5
let's **[3]**  4/3 5/8 19/10
letter **[2]**  6/7 6/10
like **[1]**  9/21
limited **[1]**  6/4
listen **[1]**  8/11
litigating **[1]**  17/14
litigation **[1]**  17/19
local **[1]**  4/13
long **[3]**  7/15 11/10 16/11
longevity **[16]**  7/6 8/17 11/18 11/19 11/21 13/8 13/21 14/4 14/6 14/8 15/13 16/23 17/17 17/25 18/20 19/5
look **[3]**  7/24 8/7 20/17
looking **[1]**  21/7
lose **[1]**  17/18
lot **[1]**  15/10

# M

made **[6]**  8/24 10/11 11/6 12/21 13/19 17/25
MAGISTRATE **[1]**  1/16
make **[6]**  8/9 9/7 14/7 18/22 19/2 21/2
March **[2]**  16/17 17/11
MARIA **[2]**  2/14 4/16
mark **[2]**  2/12 4/14
materials **[1]**  12/24
math **[1]**  18/15
matter **[3]**  4/24 20/4 23/7
may **[4]**  6/8 7/7 10/9 21/12
maybe **[1]**  11/1
me **[13]**  4/8 4/13 4/25 6/17 9/16 16/5 17/23 18/5 19/2 19/3 19/4 22/1 22/2
mean **[5]**  6/3 9/22 15/20 17/8 19/18
means **[1]**  21/9
meant **[1]**  14/13
meet **[1]**  6/7
memorialize **[1]**  22/18
Michigan **[2]**  2/15 2/18
MIDDLE **[4]**  1/1 23/2 23/5 23/13
Milwaukee **[2]**  2/15 2/19
misunderstood **[1]**  22/13
Mitchell **[2]**  2/3 2/6
MLS **[4]**  11/13 12/6 12/9 13/22
model **[5]**  8/8 9/2 10/4 10/4 12/17
modeling **[5]**  7/21 7/25 8/24 9/18

moment **[1]**  5/20
Monday **[3]**  5/21 6/5 21/24
month **[8]**  10/19 11/17 11/24 12/17 13/4 13/8 20/12 21/9
months **[41]**
more **[2]**  6/14 6/14
MORTGAGE **[5]**  1/4 1/8 4/6 4/6 4/12
motion **[11]**  5/1 6/18 6/19 6/22 7/2 7/4 17/24 18/6 18/12 19/6 19/8
motions **[1]**  13/2
Mr **[10]**  5/8 6/23 8/3 9/13 11/3 12/12 15/3 16/12 16/20 22/9
Mr. **[4]**  6/9 7/9 11/14 20/20
Mr. Karen **[3]**  6/9 11/14 20/20
Mr. Rosevear's **[1]**  7/9
Ms **[13]**  5/5 5/17 6/1 7/1 7/12 13/4 13/7 16/5 17/24 18/12 19/5 19/8 22/15
Ms. **[12]**  10/25 11/16 11/24 13/7 14/23 14/24 15/6 15/11 15/18 15/24 20/25 21/3
Ms. Kreiter **[2]**  20/25 21/3
Ms. Rosevear **[9]**  10/25 11/16 11/24 14/23 14/24 15/6 15/11 15/18 15/24
Ms. Rosevear's **[1]**  13/7
much **[3]**  19/11 20/18 20/20
MUTUAL **[13]**  1/4 2/13 4/5 4/12 6/9 7/6 16/10 16/22 16/24 17/4 17/6 17/20 19/19
my **[7]**  4/13 7/24 8/19 9/1 9/13 17/16 20/7

# N

nearly **[1]**  17/19
necessary **[1]**  22/14
need **[4]**  6/12 6/15 20/22 21/1
neglected **[1]**  5/6
never **[9]**  7/6 10/11 10/12 10/12 10/22 11/20 13/21 14/4 15/6
new **[19]**  7/4 7/5 7/8 7/8 7/10 8/25 10/1 12/3 12/4 12/23 12/23 12/24 12/24 14/13 14/14 14/14 18/10 19/23
next **[1]**  16/2
nice **[1]**  7/25
no **[24]**
NONE **[1]**  3/8
not **[40]**
note **[1]**  4/25
notes **[1]**  23/7
nothing **[7]**  7/7 8/17 10/1 12/4 12/4 14/14 22/16
notice **[1]**  6/18
November **[3]**  20/17 21/8 21/19
now **[11]**  5/19 5/21 6/13 9/22 10/9 11/21 12/16 13/20 15/23 19/21 21/22
number **[4]**  4/6 5/1 5/6 7/25
NW **[2]**  2/3 2/7

# O

o'clock **[1]**  21/25
object **[2]**  12/6 12/6
objectively **[1]**  16/9
obviously **[10]**  5/17 10/17 10/20 12/6 12/19 13/4 13/14 15/14 15/25 22/12
October **[2]**  20/13 20/16
off **[1]**  18/9
offer **[2]**  11/6 15/13
offered **[1]**  15/4
office **[1]**  13/9
offices **[3]**  9/17 13/9 18/20
Official **[3]**  1/21 23/5 23/12
okay **[10]**  4/3 4/20 9/9 12/10 15/5 17/17 20/2 22/3 22/9 22/17
OMAHA **[4]**  1/4 2/13 4/6 4/12
one **[6]**  7/16 8/1 19/17 19/17 20/4 20/23
only **[3]**  5/19 11/5 16/6
open **[3]**  9/17 13/25 18/21
opening **[1]**  20/15
opine **[1]**  19/5
opined **[6]**  9/2 11/20 13/21 14/3 14/7 14/9
opinion **[24]**
opinions **[1]**  11/18
opposing **[1]**  7/7
opposition **[1]**  5/3
order **[6]**  4/1 8/19 11/23 17/5 22/13 22/17
ordered **[4]**  4/23 10/7 13/16 14/11
original **[2]**  7/12 7/18
originally **[1]**  9/24
other **[7]**  8/20 14/14 18/25 19/23 21/18 22/4 22/5
our **[13]**  4/14 5/20 6/9 11/9 11/10 14/18 14/19 15/7 15/7 15/14 15/25 20/23 20/24
out **[5]**  10/4 10/5 14/20 16/12 21/8
outset **[2]**  15/7 17/10
outstanding **[4]**  5/20 8/20 9/4 22/4
over **[1]**  5/15

# P

p.m **[2]**  1/7 1/7
PA **[1]**  2/10
page **[2]**  3/2 23/8
pages **[2]**  6/7 23/7
Pandora's **[1]**  20/15
parties **[3]**  6/17 18/3 20/16
path **[1]**  17/23
PAUL **[1]**  2/9
per **[1]**  15/11
period **[5]**  16/8 18/17 18/21 18/25 19/1
perspective **[6]**  5/9 5/24 6/2 19/11 22/9 22/15
phrase **[1]**  7/7

**P**

**picked [1]** 10/20
**Plaintiff [4]** 1/5 2/2 4/10 4/12
**plan [1]** 5/4
**please [1]** 4/4
**PLLC [2]** 2/3 2/6
**point [2]** 14/20 17/12
**PORCELLI [1]** 1/15
**position [3]** 7/22 17/18 19/13
**posture [1]** 17/1
**preliminary [2]** 6/7 6/10
**prepared [3]** 6/19 6/21 6/24
**present [2]** 2/12 2/20
**presented [2]** 15/8 15/9
**previous [1]** 11/2
**previously [12]** 4/23 9/2 9/4 9/10
  9/11 9/23 10/6 11/20 11/20 12/16
  14/5 14/6
**principles [1]** 7/25
**prior [1]** 4/25
**probably [2]** 20/22 21/1
**problem [3]** 16/18 19/18 21/8
**Proceedings [1]** 1/21
**production [1]** 6/6
**proof [1]** 17/15
**propounded [1]** 20/9
**provide [12]** 5/12 9/11 10/2 10/7
  11/24 12/14 12/17 12/18 12/20 13/14
  14/18 14/25
**provided [7]** 10/3 11/2 11/2 11/13
  12/5 12/25 13/5
**provides [1]** 13/14
**purposes [1]** 11/19
**pursuant [1]** 23/6
**pursue [3]** 8/8 10/12 16/11
**push [1]** 21/14
**put [2]** 13/8 20/23

**Q**

**question [5]** 9/1 9/7 9/13 17/6 20/7
**questions [1]** 15/3

**R**

**ramification [1]** 15/16
**rather [2]** 6/20 13/21
**RDR [2]** 2/22 23/12
**re [1]** 22/7
**re-calendared [1]** 22/7
**read [1]** 8/13
**reason [2]** 8/5 11/5
**reasonable [1]** 11/7
**rebuttal [2]** 7/10 8/21
**recall [2]** 11/3 14/23
**RECEIVED [1]** 3/8
**record [18]** 4/9 4/25 11/12 12/2 12/3
  12/22 12/25 13/22 14/15 14/16 14/18
  15/17 15/21 16/16 17/3 18/19 18/23
  19/2
**recorded [1]** 1/21

**redoing [2]** 17/9 17/9
**regard [1]** 5/4
**regulations [1]** 23/8
**relied [3]** 9/4 9/24 15/19
**relies [2]** 12/14 15/11
**rely [7]** 9/25 11/12 11/19 12/9 13/23
  15/8 15/21
**relying [1]** 12/13
**remain [2]** 9/17 13/25
**remained [1]** 18/20
**remaining [1]** 20/8
**reopened [1]** 20/3
**report [5]** 5/2 7/10 7/10 7/13 7/18
**Reporter [5]** 1/21 3/4 23/3 23/5
  23/12
**represent [1]** 6/15
**requested [2]** 5/12 5/23
**requests [1]** 5/13
**resolved [3]** 5/16 5/18 5/24
**respect [1]** 19/16
**respectfully [1]** 10/9
**respond [1]** 9/8
**responded [2]** 5/14 6/9
**response [4]** 5/2 5/6 8/4 12/10
**result [2]** 8/23 17/19
**review [2]** 19/12 20/8
**right [10]** 5/8 5/19 6/1 6/23 7/1 8/3
  18/11 19/7 19/10 19/20
**RMR [2]** 2/22 23/12
**Rosevear [13]** 10/25 11/16 11/24
  13/4 14/23 14/24 15/6 15/11 15/18
  15/24 17/24 18/12 19/5
**Rosevear's [2]** 7/9 13/7
**roughly [1]** 21/1
**round [1]** 7/25
**Rule [1]** 19/23
**ruled [5]** 8/18 10/12 10/12 19/4
  22/18
**Rules [1]** 17/8
**ruling [6]** 3/3 10/11 10/18 10/22
  15/14 16/1

**S**

**S.C [2]** 2/14 2/17
**said [14]** 7/24 8/14 9/16 10/21 11/5
  12/2 12/9 12/9 15/5 17/3 17/10 17/15
  17/20 20/1
**same [3]** 9/18 15/18 19/18
**Sandler [2]** 2/3 2/6
**say [7]** 7/16 7/21 10/10 16/15 19/19
  19/24 20/14
**saying [4]** 11/23 15/12 16/20 19/22
**says [3]** 8/11 15/23 17/5
**schedule [1]** 6/20
**scheduled [2]** 4/22 5/21
**scheduling [1]** 4/23
**scope [2]** 7/5 7/9
**se [1]** 15/11
**second [1]** 17/12
**secret [2]** 6/4 20/13

**secrets [2]** 5/22 20/5
**Section [1]** 23/6
**see [5]** 17/20 19/14 21/23 22/4 22/18
**seeking [1]** 12/17
**seems [2]** 9/16 9/21
**sense [1]** 14/7
**sent [1]** 6/7
**separate [1]** 18/21
**separately [1]** 6/20
**September [2]** 21/24 22/19
**September 30th [1]** 21/24
**set [4]** 6/4 6/5 21/12 21/22
**settlement [1]** 11/6
**seven [2]** 11/4 11/10
**she [47]**
**she'll [1]** 12/11
**she's [7]** 9/18 9/22 12/9 13/20 15/12
  18/15 18/17
**should [3]** 7/21 16/6 22/10
**shouldn't [1]** 17/9
**side [1]** 20/24
**simply [8]** 8/21 9/1 9/3 9/16 11/15
  11/16 14/20 15/7 17/24 18/15 22/3
**since [1]** 22/12
**six [3]** 11/4 11/10 18/9
**so [31]**
**some [7]** 5/15 13/1 14/15 15/1 15/2
  19/23 20/12
**somebody [1]** 15/4
**somehow [2]** 9/14 13/25
**something [4]** 7/4 7/8 17/8 18/3
**speak [2]** 8/13 20/25
**specific [1]** 7/22
**specifically [2]** 7/14 8/24
**spent [2]** 16/14 17/13
**split [1]** 21/5
**splits [1]** 21/9
**stand [1]** 21/5
**standard [1]** 7/20
**starting [1]** 4/9
**state [2]** 4/9 5/6
**stated [1]** 13/19
**STATES [7]** 1/1 1/16 23/1 23/5 23/6
  23/9 23/13
**status [4]** 1/14 4/22 21/22 22/4
**stay [1]** 11/10
**stayed [1]** 13/15
**Ste [2]** 2/10 2/15
**stenographic [1]** 23/7
**step [1]** 16/2
**Stephanie [2]** 2/20 4/18
**STEPHENSON [2]** 2/6 4/14
**Stewart [1]** 2/10
**still [6]** 6/11 6/14 15/17 15/20 15/21
  18/3
**stipulated [2]** 8/19 9/15
**stipulation [5]** 10/19 11/17 11/25
  16/12 17/16
**streamline [1]** 8/11

## S

Street [5]  2/3 2/7 2/10 2/15 2/18
strike [2]  5/2 17/24
stroke [1]  8/15
subject [2]  16/25 17/16
submitted [3]  5/13 10/15 10/19
substantiate [1]  17/6
substantive [1]  7/22
such [1]  13/22
sufficient [1]  8/18
suggest [1]  22/6
suggested [1]  14/24
Suite [4]  2/4 2/7 2/18 2/22
supplemental [1]  5/2
support [9]  11/24 12/20 15/17 16/16 16/19 16/23 17/2 18/4 18/25
supported [1]  18/19
supporting [1]  12/21
sure [1]  9/7

## T

take [5]  14/1 19/12 21/11 21/21 22/10
taken [2]  15/2 23/7
taking [3]  5/4 7/22 19/17
talk [2]  8/1 19/10
talked [5]  10/5 11/4 12/8 20/13 21/4
talking [1]  20/18
talks [2]  11/9 16/22
TAMPA [5]  1/2 1/7 2/11 2/23 23/14
tea [1]  8/13
tell [1]  7/6
ten [17]  7/13 7/17 7/19 7/25 8/8 8/18 9/2 9/9 9/12 9/15 9/18 9/25 10/3 10/5 10/13 12/17 14/8
ten-year [2]  8/8 12/17
testified [5]  9/21 9/23 11/20 14/5 14/6
testify [9]  9/9 9/10 10/25 12/11 14/4 14/19 14/19 15/24 18/13
testifying [3]  9/2 9/22 18/18
testimony [10]  7/11 7/14 11/3 11/8 11/24 12/13 12/23 13/7 13/24 17/24
than [1]  20/19
Thank [3]  4/20 22/16 22/20
Thanksgiving [1]  21/11
that [163]
that's [24]
their [3]  6/12 17/11 17/12
them [3]  5/12 11/6 12/5
then [21]  5/2 7/2 8/10 8/19 9/18 10/19 11/16 11/18 13/17 14/7 14/8 14/10 14/25 17/6 19/10 19/11 19/12 21/11 22/5 22/7 22/18
there [27]
there's [5]  7/7 8/17 11/8 15/20 20/17
these [3]  8/12 12/13 12/24
they [14]  5/11 5/13 5/15 12/5 12/6 13/10 13/15 15/2 17/8 17/10 17/10

## U

17/11 19/20 19/22
thing [1]  5/19
things [3]  8/12 12/14 12/24
think [25]
thinks [1]  13/15
third [1]  17/12
this [29]
those [4]  5/16 5/18 6/11 22/5
thought [6]  11/4 11/22 13/16 13/18 13/19 14/17
thousands [2]  16/14 17/14
through [3]  6/11 17/11 23/7
throughout [1]  8/8
time [15]  4/21 10/25 16/9 16/16 17/17 18/17 19/11 20/20 21/1 21/13 21/17 21/18 21/21 21/25 22/20
Title [1]  23/6
today [3]  6/19 19/2 22/18
together [1]  19/14
topics [1]  13/2
trade [4]  5/22 6/4 20/5 20/13
transcribed [1]  1/21
Transcriber [1]  2/22
transcript [3]  1/14 23/3 23/8
transcription [2]  1/21 23/7
trial [10]  4/23 15/12 16/24 17/4 19/15 20/10 20/21 21/5 22/7 22/8
true [3]  6/5 16/9 23/6
truncating [1]  9/3
try [1]  17/3
trying [2]  8/13 11/7
typical [1]  5/15

## U

UAM [2]  1/6 4/7
under [1]  7/24
undersigned [1]  23/7
understand [6]  8/12 9/7 11/25 14/21 15/11 16/4
understanding [4]  7/24 15/15 15/25 20/11
understood [4]  11/14 11/23 14/12 14/13
unfortunately [1]  21/8
unilaterally [1]  8/14
UNITED [7]  1/1 1/16 22/22 23/5 23/6 23/9 23/13
up [9]  4/22 5/4 5/14 6/8 7/18 9/15 10/21 15/1 22/10
upon [13]  7/13 7/15 11/12 11/19 12/14 13/23 15/8 15/11 15/19 15/21 18/4 18/15 18/22
urges [1]  8/10
urgings [1]  10/18
us [7]  8/10 10/16 10/22 12/1 14/17 21/11 21/22
use [1]  12/2
used [4]  7/21 12/3 12/4 12/6
using [3]  1/21 8/1 9/18
uttered [3]  16/8 16/10 16/17

## V

value [3]  11/16 13/8 14/2
verdict [3]  16/25 17/5 19/1
very [7]  8/12 8/15 8/24 12/21 13/6 13/19 17/25
VIA [1]  1/15
VIDEOCONFERENCE [1]  1/15
volume [2]  6/10 6/13
vs [2]  1/6 4/6

## W

want [10]  5/17 9/6 9/7 15/5 18/9 20/24 21/1 21/2 22/6 22/11
wanted [3]  14/17 15/1 17/10
warning [1]  17/4
warnings [1]  17/17
warns [1]  16/24
was [54]
Washington [2]  2/4 2/8
wasn't [2]  14/14 18/1
WATERSTONE [10]  1/8 2/21 4/6 5/22 6/21 13/1 15/1 15/5 16/3 17/19
Waterstone's [1]  4/18
way [1]  7/3
we [79]
we're [5]  8/13 10/21 14/22 19/18 20/18
We've [1]  11/13
week [5]  20/23 21/8 21/10 21/10 21/17
weeks [1]  21/18
well [9]  6/17 6/24 8/5 8/15 9/6 13/17 14/10 17/22 18/11
went [1]  10/18
were [11]  8/10 9/12 11/1 11/7 12/17 12/23 12/25 12/25 13/1 13/1 13/6
what [41]
what we [1]  9/12
what's [2]  8/3 19/4
whatever [5]  9/17 9/20 9/24 13/24 14/3
when [6]  5/14 10/4 10/16 10/17 16/12 17/11
where [7]  5/9 7/14 8/10 11/3 14/21 17/20 21/23
whether [9]  7/15 8/21 17/2 17/14 18/4 18/13 18/14 18/19 18/20
which [8]  13/1 13/16 13/19 13/23 14/4 17/25 21/9 21/11
while [2]  10/14 10/14
who [3]  5/21 11/9 19/19
whole [1]  8/5
why [8]  8/7 9/17 11/17 11/21 13/15 14/2 16/6 16/21
WI [2]  2/15 2/19
will [12]  5/17 7/21 7/21 15/25 19/13 20/22 21/11 21/16 22/3 22/7 22/18 22/20
without [1]  10/16

**W**

**witness [8]**  5/20 5/22 8/21 15/1 16/7
19/23 19/23 20/12
**witnesses [3]**  15/8 20/23 21/13
**words [1]**  14/14
**works [2]**  22/1 22/2
**would [27]**

**X**

**XAVIER [2]**  2/17 4/17

**Y**

**Yeah [2]**  20/11 21/4
**year [3]**  8/8 12/17 17/19
**years [17]**  7/13 7/17 7/19 7/25 8/18
9/3 9/9 9/12 9/15 9/18 9/25 10/3 10/5
10/13 11/5 11/10 14/8
**Yes [1]**  7/20
**Yoakley [1]**  2/10
**you [59]**
**you're [1]**  19/22
**you've [2]**  8/11 20/4
**your [47]**

**Z**

**Ziebell [2]**  2/20 4/18
**ZOOM [1]**  1/15