IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>        Plaintiff,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>        Defendant. | CASE NO. 8:22-cv-01660-UAM |

**DECLARATION OF MARIA L. KREITER IN SUPPORT OF WATERSTONE CORPORATION'S PETITION FOR FEES RELATING TO MUTUAL'S FAILURE TO TIMELY SUPPLEMENT DISCOVERY RESPONSES**

I, Maria L. Kreiter, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Shareholder with the law firm of Godfrey & Kahn, S.C., and am lead counsel for Defendant Waterstone Mortgage Corporation in the above-captioned case.

2. I have reviewed the fees incurred by Waterstone in defense of the trade secret claims pursued by Plaintiff Mutual of Omaha Mortgage, Inc. and am personally familiar with the efforts pursued by Waterstone relating to its defense against those claims.

3. The parties spent more than a year, and hundreds of thousands of dollars, litigating Mutual's trade secrets claims with the understanding that the 186 documents

1

Mutual identified in March 2023 as its alleged trade secrets were indeed Mutual's full and final identification of the documents its trade secrets claims were based on.

4. Relying on Mutual's March 2023 discovery responses, among other things, Waterstone: (1) hired an e-forensic expert to analyze and draft a report based on the 186 alleged trade secrets; (2) deposed Mutual's corporate representative, and other witnesses, regarding those alleged trade secrets; and (3) moved for summary judgment on those trade secrets.

5. At no point in discovery did Mutual amend its discovery responses to identify any other documents as its trade secrets.

6. After Mutual purported to amend its list three times in April 2024, Waterstone incurred significant attorney's fees to review and analyze Mutual's new list in preparation for a June trial.

7. Then, when Mutual amended its list three more times after the parties' final pre-trial conference, Waterstone was forced to incur more fees to, yet again, vet Mutual's most recent, belated versions of its alleged trade secrets.

8. And, since Mutual has been allowed to proceed on its most recent list of trade secrets, Waterstone has had to prepare additional written discovery focused on the most recent list of trade secrets, review documents produced in response to that written discovery, and conduct another deposition of Mutual's corporate representative focused on this list of trade secrets.

9. Waterstone has needlessly spent at least **$144,977** on attorney's fees and costs defending trade secrets misappropriation allegations that Mutual abandoned in favor of alternate alleged trade secrets informed by Waterstone's legal arguments.

10. The timekeepers who billed time in connection with Waterstone's defense of Mutual's trade secrets claims are: Xavier Jenkins, Emma Jewell, Adam Cares, and myself. A general summary of each timekeeper's specific involvement is as follows:

   a. **Maria L. Kreiter**. Shareholder Maria Kreiter is lead defense counsel. Her Ms. Kreiter's role in this case largely related to review, revision, and oversight of tasks delegated to associates. However, Ms. Kreiter has also had a central role in drafting and reviewing discovery materials, taking and defending depositions, and engaging in strategy analysis relating to Waterstone's defense of Mutual's trade secrets claims.

   b. **Xavier Jenkins**. Associate Xavier Jenkins is an associate attorney with Godfrey & Kahn who began working on this case in August 2022. From August 2022, through March 2023, Mr. Jenkins assisted Ms. Kreiter on the case, primarily relating to Waterstone's discovery efforts, including document review. Mr. Jenkins went on family leave in March 2023, after which Emma Jewell assumed his role in the case. Then, in May 2024, Mr. Jenkins resumed working on the case in preparation for Ms. Jewell's own family leave and in anticipation of the case proceeding to trial in June 2024. Mr. Jenkins was particularly equipped to assume Ms. Jewell's

3

      role because of his familiarity with the facts of the case, having previously worked on it before Ms. Jewell.

   c. **Emma Jewell**. Emma Jewell assumed Mr. Jenkins' role when Mr. Jenkins went on family leave in March 2023. Following that, Ms. Jewell performed most of the work related to Waterstone's defense against Mutual's trade secrets claims. During that time, she took a lead role in the case in terms of fact and expert discovery, motion briefing, and all other aspects of the case, for the majority of its pendency. Ms. Jewell went on family leave beginning in July 2024.

   d. **Adam Cares**. Mr. Cares is the E-Discovery Manager for the Litigation Group at Godfrey & Kahn. Mr. Cares has been involved since the inception of the case, assisting with all manners of the discovery process, and, specifically, the discovery efforts Waterstone undertook with respect to Mutual's alleged trade secrets. Mr. Cares has been involved in e-discovery and litigation support work at Godfrey & Kahn for 22 years, and his expertise and skillset were particularly necessary in helping to analyze Mutual's alleged trade secrets and related discovery.

11. The hourly rates, and the work performed by Godfrey & Kahn timekeepers, in defending against Mutual's trade secret claims, are reasonable and within market rates for a firm of Godfrey & Kahn's size and experience. All fees related to Waterstone's defense against Mutual's trade secrets claims have been paid.

12. Mutual has, at times, claimed tens of millions of dollars in damages in this case, including treble damages, and thus Waterstone sought out counsel with size and sophistication to vigorously defend itself against Mutual's claims.

13. In total, Godfrey & Kahn, S.C. billed Waterstone for **195.4** hours of timekeeper time directly in connection with defending Waterstone against Mutual's trade secrets claims from October 2022 through April 2024, totaling **$90,056.50** in fees. A spreadsheet describing the time entries for which Godfrey & Kahn billed, and Waterstone paid, is attached hereto as **Exhibit A**.

14. In addition to the $90,056.50 in fees billed to Waterstone for tasks directly related to Mutual's trade secrets claims, Godfrey & Kahn timekeepers also billed $56,505 in fees in "block billed" time entries that include tasks related to Mutual's trade secrets claims. A spreadsheet describing the block billed entries for which Godfrey & Kahn billed, and Waterstone paid, is attached hereto as **Exhibit B**.

15. Waterstone has reduced the block billed entries. Specifically, Waterstone reduced the block billed entries by $22,409.50, or roughly 40% to account for tasks unrelated to Mutual's alleged trade secrets. The total fees sought for block billed entries after the reduction is **$34,095.50**.

16. To arrive at a reasonable fee for the block billed entries, I went through each block billed time entry and made a reasonable deduction for unrelated tasks. For time spent on general-but-related tasks, for example, "Prepare for the Mutual of Omaha Rule 30(b)(6) deposition," the time associated with that entry was reduced by

one-half (50%), as Mutual's trade secrets claims are one-half of its total causes of action (2 of 4), and it can therefore reasonably be assumed that half of the time spent on such general tasks were devoted to vetting and analyzing Mutual's trade secrets claims. For other block billed entries with multiple, distinct tasks, the total time billed for that entry was reduced by an amount reasonably estimated to be associated with the unrelated task(s). These unrelated tasks are represented in **Exhibit B** in red, strikethrough text.

17. None of the block billed entries in **Exhibit B** are clerical or excessive.

18. All such fees relate to vetting, analyzing, and defending Waterstone against Mutual's alleged trade secrets before it belated changed its alleged trade secrets in violation of the Federal Rules and the Court's Orders.

19. Had Mutual identified what it now considers its trade secrets prior to the close of discovery, as was required, Waterstone would not have had to incur any of these fees.

20. Waterstone also engaged an e-forensics expert to assist in its defense against Mutual's trade secrets claims. Brett Creasy, and his firm, bit-x-bit, were engaged by Waterstone, through Godfrey & Kahn, in September 2022.

21. Through April 2024, Mr. Creasy and bit-x-bit performed **63.25** hours of work on this case, at an average rate of **$329.25** per hour, for a total cost to Waterstone of **$20,825**. This total does not include any interest charged by bit-x-bit for overdue balances.

22. All the work performed by Mr. Creasy and bit-x-bit was directly related to analyzing the 186 alleged trade secrets Mutual had disclosed.

23. Mr. Creasy investigated whether the trade secrets Mutual's trade secrets claim relied were ever even put on Waterstone's servers. Most of the trade secrets were not. Rather, the employees leaving Mutual took the data without Waterstone's knowledge, instruction, or participation. The employees sent the data, for example, to a personal email account without Waterstone having anything to do with those actions.

24. However, because Mr. Creasy's engagement was specific to the 186 alleged trade secrets Mutual identified in discovery – which it no longer claims to be its alleged trade secrets – Mr. Creasy's engagement was a complete waste.

25. The fees sought in this Petition do not include any time billed to Waterstone by its local counsel, the Hill Ward Henderson firm.

26. Further, Waterstone leveraged Machaella Moore, a Legal Executive Assistant, who is a talented, aspiring paralegal enrolled in Louisiana State University's Paralegal Studies Certificate Program.

27. Ms. Moore has spent countless hours vetting and analyzing Mutual's alleged trade secrets and did not bill her time.

28. Ms. Moore's skills and work product are on par with Godfrey & Kahn's paralegals, and thus utilizing Ms. Moore saved thousands on fees.

29. Ms. Moore spent hours putting together a detailed spreadsheet analyzing Mutual's changing position on its alleged trade secrets that Waterstone ultimately

7

submitted in connection with its June 3, 2024 motion to exclude Mutual's newest iteration of its alleged trade secrets. (D.E. 200-2.)

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed this 27th day of September, 2024.

<i>s/Maria L. Kreiter</i>_____<br>
Maria L. Kreiter