```
         IN THE UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION


MUTUAL OF OMAHA MORTGAGE, INC.,  )
                                 )
           Plaintiff,            )
                                 )
                                 ) Case No.
     vs.                         ) 8:22-CV-01660-UAM
                                 )
                                 )
WATERSTONE MORTGAGE CORPORATION, )
                                 )
           Defendant.            )
```

---

**STATUS CONFERENCE**
*(taken via Zoom videoconference)*

**BEFORE THE HONORABLE ANTHONY E. PORCELLI**
**UNITED STATES MAGISTRATE JUDGE**

**SEPTEMBER 30, 2024**
**2:10 P.M.**
**TAMPA, FLORIDA**

---

    Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.

---

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

```
 1   APPEARANCES:
 2

 3   FOR THE PLAINTIFF:

 4           Ari Karen
             Arielle Stephenson
 5           Mitchell Sandler, PLLC
             1120 20th Street, NW
 6           Suite 725
             Washington, D.C.  20036
 7           (202) 886-5260

 8
             Gregory Pierson
 9           Gunster, Yoakley & Stewart, P.A.
             401 East Jackson Street
10           Suite 1500
             Tampa, Florida  33602
11           (813) 228-9080

12
             Mark Carroll, General Counsel
13           Mutual of Omaha Mortgage, Inc.

14

15   FOR THE DEFENDANT:

16           Marie L. Kreiter
             Xavier Jenkins
17           Godfrey & Kahn, S.C.
             833 East Michigan Street
18           Suite 1800
             Milwaukee, Wisconsin  53202-5615

19
             Scott McLaren
20           Hill Ward Henderson, P.A.
21           101 East Kennedy Boulevard
             Suite 3700
22           P.O. Box 2231
             Tampa, Florida  33602-5195
23

24           Stephanie Ziebell, General Counsel
             Waterstone Mortgage Corporation
25
```

```
 1                    P R O C E E D I N G S
 2                         - - - o0o - - -
 3              THE COURT:  Okay.  Good afternoon.  We're going to
 4    call the case for the record.
 5              COURTROOM DEPUTY:  Yes.  Good afternoon again,
 6    everybody.  This is Mutual of Omaha versus Waterstone Mortgage,
 7    Case Number is 8:22-CV-1660-UAM.
 8              THE COURT:  Okay.  Let me apologize for the delay.
 9    I was on a phone call that I could not hang up on, so
10    I appreciate your patience.
11              Let me have the parties state their appearance,
12    starting with plaintiff, please.
13              MR. KAREN:  Good morning, Your Honor.  Ari Karen,
14    Arielle Stephenson, along with Greg Pierson and General Counsel
15    Mark Carroll on behalf of Mutual.
16              THE COURT:  All right.  Good morning to you all.
17              MS. KREITER:  Good afternoon, Your Honor.
18    Maria Kreiter and Xavier Jenkins from the Godfrey Firm in
19    Milwaukee.  I'm joined by Scott McLaren at the Hill Ward
20    Henderson firm, along with Stephanie Ziebell, the General
21    Counsel for Waterstone Mortgage.
22              THE COURT:  Good morning to you.  Thank you all for
23    your time.
24              All right.  Mr. Karen, I'm going to start with you.
25    From your perspective, where are we at as far as getting back
```

1  on a trial calendar?
2              MR. KAREN:  Your Honor, I think we have some
3  complications that developed this morning.  I can brief you on
4  that, I'm sure Ms. Kreiter will add her comments as well, if
5  that's okay.
6              THE COURT:  All right.
7              MR. KAREN:  So I think where we really hit a snag was
8  relating to expert discovery.  Ms. Kreiter advised me today
9  that she intended to provide a new expert altogether on trade
10 secrets on a subject matter that -- or a scope that I did not
11 receive any clear definition on, so essentially I don't know
12 what the opinion would be about, and also then wanted to
13 provide a new report on damages.
14             To get, again, an idea of scope, you know, I said --
15 I explained that, you know, I don't think I can be in a
16 position -- we've been talking about a December trial date --
17 of receiving October 31st, November 1st, you know, a 100 page
18 report, and while she said it probably wouldn't be that long or
19 it wouldn't be that long, it's clear this was going to be
20 something that was new in scope.  I specifically asked is this
21 going to be limited to the, quote, unquote, you know, new
22 facts, and I'll -- I use that to -- as Your Honor I think has
23 tried to really constrain this case to keep it within a certain
24 framework, you know, outside what has been, quote, unquote,
25 new.

1               And, Ms. Kreiter, I don't want to misstate it again,
2    if I am, I apologize, she can -- she can explain this further,
3    I'm sure, but she was not willing to limit that scope, so it
4    seemed essentially open, and, you know, I indicated that
5    I don't -- you know, essentially we're talking about the
6    reopening of expert discovery effectively one way, and that's
7    really where we hit a snag, because while I don't object, to be
8    clear, to what we talked about previously, which was
9    Mr. Oscher, the trade secrets expert, opining on any of the
10   new, quote, unquote -- again, new facts relating to the new
11   documents, an open-ended report for any new expert to opine on
12   anything I think is beyond at least what I contemplated and
13   I believe what the Court contemplated.
14              Similarly, with respect to damages, I think the same
15   is true, particularly, Your Honor, given that, you know, none
16   of this is really all that new.  I mean, we've been talking
17   about this since the beginning of the summer, so if we were
18   going to do that, why didn't we have this disclosed and
19   started, you know, long ago.  So the idea that we were talking
20   about a December trial date and now getting these new reports
21   three weeks before that could be fairly -- and they seem to be
22   fairly extensive, even with potentially new experts, is a real
23   problem from our perspective.
24              Other than that, I think in terms of the discovery
25   we've conducted so far, I think there are a few matters that

```
 1   we're, you know, I think, able to work out.  I don't -- so
 2   I think really the main issue here is the scope of any expert
 3   supplementation -- supplemental reports.
 4            A secondary issue which, again, I don't anticipate
 5   being very difficult to work through but do want to raise it,
 6   is that the managers for the branches have since departed, this
 7   happened fairly recently, and as I informed Ms. Kreiter, I do
 8   think, given that I know they're going to make some arguments
 9   about how that would have or should be considered in terms of
10   the branch duration, whether they would have stayed with
11   Mutual, I think that we're entitled to some very narrow
12   discovery on that issue.  Again, I don't think that would cause
13   a delay in any trial date because I'm talking about a very,
14   very narrow scope of, you know, documents relating to
15   communications relating to their departure, obligations, things
16   of that nature, and -- and maybe, and I say "maybe" because
17   I don't know yet, but, you know, some very short virtual
18   depositions, half hour, an hour, maybe one or two people.
19   Again, nothing I don't think we can accomplish between now
20   and -- and the trial if it was in December.
21            So I'm sorry to go on, but those are sort of the
22   developments I think that are most pertinent at this point that
23   would need to be discussed today, from our perspective.
24            THE COURT:  All right.  Ms. Kreiter?
25            MS. KREITER:  Your Honor, so let me start with
```

1  experts related to trade secrets, Your Honor.  And, frankly,
2  this is why the *(inaudible)* of the trade secrets by Mutual is
3  so harmful.  I had a -- in my mind, a really strong defense to
4  the trade secret claim as I understood it.  We had hired an
5  e-forensic expert who had triaged the 186 documents that Mutual
6  contended were its trade secrets.  I will tell you, you know,
7  now Mutual, with the benefit of that expert's report, the
8  benefit of our summary judgment motion, and this eight month
9  *(inaudible)* disclosure of new trade secrets has entirely new
10 trade secrets that were not analyzed previously, and, frankly,
11 the expert that I thought I had, who I think would have been
12 very successful in shutting down the trade secret claims, is
13 just moot.
14         I mean, our primary defense was they are asserting
15 all of these documents are trade secrets.  Waterstone didn't
16 have them.  There was, for example, you know, a loan officer at
17 one of the branches sending documents to a Gmail.  Those
18 documents never hit the Waterstone server.  That was
19 Waterstone's primary fact defense to the trade secret claims.
20         Now Mutual has redone its trade secrets and there is
21 a new list of documents.  Frankly, that entire exercise that
22 I think is illustrated in our fees motions, it's just moot, it
23 was a complete waste of time and effort, so now, I mean,
24 I definitely do have to start over with what is the defense to
25 the trade secret claim, because the primary defense that I have

1  is just gone.
2           So, you know, yes, Mr. Karen is correct, I will have
3  a new expert as to the trade secret claim.  If he wants to go
4  back to his 186 trade secrets that he had before, wonderful,
5  then I don't need more time, but I have had to reconstruct a
6  defense to those trade secret claims that I -- I wasn't dealing
7  with before.
8           For example, now Mutual contends that there's this
9  closed loan database that's a trade secret.  Well, you know,
10 I anticipate having an industry expert that's going to explain
11 why that's not possibly a trade secret.  In addition, I'm going
12 to have a damages expert specific to the trade secret claims.
13          I am concerned that, you know -- you know, we have
14 this bucket of damages that Mutual is going to contend are the
15 damages regardless of the claim.  That's not appropriate here.
16 I mean, trade secret damages are royalties or, you know, what
17 is the value of this particular document.  So I do anticipate
18 new experts as to the trade secret claims, but, frankly,
19 I would love to go back to the world where I had an expert and
20 I had this defense left.
21          So he is right about that.  I told Mr. Karen that
22 I could have my expert reports by October 31st.  I think that
23 there was a misunderstanding as to what that meant.
24          THE COURT:  I'm sorry.  Let me interrupt you, if
25 I can.

1                How many experts are you anticipating?
2                MS. KREITER:  I'm anticipating two new experts.
3                THE COURT:  Okay.  All right.  You may continue.
4                MS. KREITER:  I will also say -- and I don't think
5    that Mr. Karen has an issue with this, but our -- our expert
6    was going to testify about certain facts in terms of the
7    e-forensics that Waterstone did and his own analysis.  If I'm
8    not having that expert I also need a new fact witness.  I don't
9    think that Mr. Karen has any issue with that.
10               But bottom line, Your Honor, I've had to redo my
11   defense as to really meaningful claims, and I need until the
12   31st.  So, you know, I -- Mr. Karen kind of posed that, but
13   it's, frankly, what I need.  I wouldn't ask to be in this
14   position.  Frankly, I would have loved to have gone to trial in
15   June, because as Mr. Karen has also said, we have no branches.
16   I mean, the time that has now passed this summer, it's
17   materially prejudicial to Waterstone.  If we had gone to trial
18   in June and not had this exercise and delay due to the trade
19   secrets, I would have had my case-in-chief witnesses lined up,
20   and now I'm faced with a situation where I really have
21   uncertainty in that regard.
22               In terms of the damages expert, you know, there -- so
23   a couple things.  Our main damages expert -- I mean, I
24   understood the ruling was Rosevear is now --
25               THE COURT:  Well, let me stop you there.  Is that

```
 1  also possible by the end of October, is what you're suggesting?
 2          MS. KREITER:  Correct.  I was going to have
 3  everything --
 4          THE COURT:  All right.  You don't have to go on with
 5  your arguments.  I'm going to give you your expert, so we can
 6  moot some efforts there.  To be clear, the reason for that is
 7  we're in this situation because, as was previously ordered, new
 8  trade secrets, as I see it and I allowed it, that were not
 9  previously identified and as required by Judge Sneed in the
10  case just to bring clarity and to have some purposes of trial
11  management as to what will be coming into evidence, I think
12  it's in abundance of fairness that you have the opportunity to
13  have an expert look at it.  So, Mr. Karen, I'm going to give
14  her that chance, and if you feel that there's any prejudice
15  after you get the reports, I'll hear you as to that, but it
16  seems to me that that seems to be appropriate going forward to
17  allow for the defense to prepare for what now has been
18  specifically identified and appropriately identified as
19  required by the Court, for what are the trade secrets in the
20  case.
21          MR. KAREN:  May I --
22          THE COURT:  The same thing with the damage -- hold
23  on.  The same thing with the damage expert.  Given that I've
24  allowed the modification of the plaintiff, I don't know what
25  the report will be, if there's matters in the report that go
```

1  beyond what I've tried to cabin as to the scope of the
2  plaintiff's expert, I can take it up then, but I'm going to
3  allow the opportunity for the reports to be generated.
4          But you wanted to add something, Mr. Karen.
5          MR. KAREN:  Yes, because one of the things -- and,
6  again, if I misunderstood Ms. Kreiter, and -- you know, I'll
7  allow that -- certainly she will say that, but one of the
8  things I mentioned was what if their expert now talks about
9  duration of damages, something that our expert was cut off from
10 doing?  That to me would not seem fair.  I mean, that --
11         THE COURT:  That's why -- and I'll address that,
12 looking at whatever the report is, and as I just said, if it's
13 beyond what I've cabined the plaintiff to then I will take it
14 up and hear what the argument is, but to allow the opportunity
15 for the defense to prepare the experts, that's what I'm taking
16 up now, and I'm going to give them that opportunity.
17         MR. KAREN:  And if I could just receive some
18 clarification, Your Honor, so we can sort of avoid potentially
19 unnecessary motion practice.
20         Is it Your Honor's intent to essentially cabin the
21 new experts to -- in the same regard that the plaintiff's
22 experts have been cabined, to the existing facts of the case,
23 with no new theories?  Is that it?  And I just want to make
24 sure I'm clear about that.
25         THE COURT:  That's correct, but as to the trade

```
 1   secrets, the expert, as I've understood and appreciated, is
 2   going to be examining the trade secrets that have now since
 3   been identified, and so they're allowed to give their opinion
 4   as to those trade secrets if it's beyond what was opined
 5   previously.
 6              MR. KAREN:  I understand, Your Honor.
 7              With that ruling, Your Honor, you know, as much as
 8   I want to move this case to trial, I think we all do, I am
 9   nervous, and I hope you can appreciate my concern, that -- not
10   knowing what I'm going to receive on October 31st, to agree to
11   a trial date effectively one month later with an intervening
12   holiday.
13              THE COURT:  So why don't we schedule another status
14   after you've had time to review the report so we can see where
15   we're at then.
16              MR. KAREN:  That's acceptable to me, Your Honor.
17              THE COURT:  Ms. Kreiter?
18              MS. KREITER:  That's fine.
19              THE COURT:  All right.  Ms. Kreiter, I didn't give
20   you a chance as to these other issues that were raised as far
21   as other potential issues regarding the departure of the
22   managers.  Did you want to be heard on that issue?
23              MS. KREITER:  I don't think I need to, Your Honor.
24   I think -- I mean, just understand it may be something that is
25   discussed in our expert's report, but I think that that's fair
```

```
 1  game.
 2            THE COURT:  All right.
 3            All right.  Mr. Karen, anything else then from your
 4  perspective?
 5            MR. KAREN:  I don't believe so, Your Honor.
 6            THE COURT:  All right.  Well, let me give you all a
 7  date.  What would -- how much time would you want after
 8  receiving the reports?
 9            MR. KAREN:  I think two weeks would be sufficient,
10  ten days to two weeks.
11            THE COURT:  How does November 20th look?
12            MR. KAREN:  I believe that day should work if there's
13  nothing sooner, Your Honor.  It would be my preference if we
14  could do something sooner, but --
15            THE COURT:  I'm out the week of the 11th.  I could do
16  it on November 6th.
17            MR. KAREN:  Um --
18            THE COURT:  Or even November 8th we could do it.
19            MR. KAREN:  I think November 8th would probably give
20  us enough time.  Let me just doublecheck that day on my
21  calendar, Your Honor.  I don't -- wait one moment.
22  I apologize.
23            MS. KREITER:  That works for me, Your Honor.
24            MR. KAREN:  Yes, that works for me as well,
25  Your Honor.
```

```
 1              THE COURT:  All right.  If you would prefer to do it
 2    in the afternoon, we could do it at two o'clock again.  Does
 3    that work for everyone?
 4              MS. KREITER:  That's fine.
 5              MR. KAREN:  It works for me, Your Honor.
 6              THE COURT:  All right.  We'll send out a notice then
 7    for a follow-up status on November 8th at two o'clock.
 8              MR. KAREN:  Thank you, Your Honor.
 9              THE COURT:  All right.  Mr. Karen, anything we should
10    take up before we conclude today then?
11              MR. KAREN:  No.  Just to be clear, I -- I hate to
12    speak directly to Ms. Kreiter, and I don't mean to do that, but
13    I think what you were saying, Ms. Kreiter, previously with
14    respect to the departing branch manager, quote, unquote,
15    discovery, that I think you're indicating that you believe you
16    and I can work that out?
17              MS. KREITER:  Yeah, I think we can.
18              Your Honor, there was a request just earlier this
19    morning for supplementation of discovery, I haven't had a time
20    to digest it, but I think that that's something of the
21    magnitude that we could work out.
22              THE COURT:  All right.  If there's a problem with
23    that issue or any other issues before we get there that you
24    think is worth getting back on the line, you can contact my
25    chambers and we can have just a quick Zoom hearing to find out
```

```
 1  where -- where those issues are at.
 2          MR. KAREN:  Okay.  Thank you.
 3          THE COURT:  Anything else from your perspective,
 4  Ms. Kreiter?
 5          MS. KREITER:  I just wasn't sure, are -- the briefing
 6  on the fees motion.  You wanted -- I don't know if you want to
 7  raise that now.
 8          THE COURT:  Just the normal briefing.  And I will
 9  tell you it's not going to be a priority for me right now,
10  they'll have a chance to respond to it, but I want to see where
11  we get -- get through with the remainder.  As you know, I've
12  already said that I feel the entitlement is appropriate, it's
13  just a matter of what will be the appropriate fee amount, so
14  they have the chance to respond to it and then I'll take it up
15  in the appropriate course.
16          MR. KAREN:  Okay.  We may have a brief extension by
17  consent, Your Honor, but we can deal with that offline,
18  I think.
19          THE COURT:  Okay.  And if you need the time, I'll be
20  happy to give it to you so you can talk to each other about
21  that though.
22          Okay.  Thank you all for your time.  We'll be
23  adjourned.
24          MR. KAREN:  Thank you, Your Honor.
25          MS. KREITER:  Thank you, Your Honor.
```

```
 1                        - - - - -
 2            (Proceedings concluded at 2:25 p.m.)
 3                        - - - - -
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3        This is to certify that the foregoing transcript of
 4   proceedings taken in a status conference in the United States
 5   District Court is a true and accurate transcript of the
 6   proceedings taken by me in machine shorthand and transcribed by
 7   computer under my supervision, this the 22nd day of October,
 8   2024.
 9
10
11                                     /S/ DAVID J. COLLIER
12
13                                     DAVID J. COLLIER
14                                     OFFICIAL COURT REPORTER
15
16
17
18
19
20
21
22
23
24
25
```