IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>　　　　Defendant. | CASE NO. 8:22-cv-01660-UAM |

**WATERSTONE MORTGAGE CORPORATION'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT ON MUTUAL'S TRADE SECRET MISAPPROPRIATION CLAIMS (BORROWER DOCUMENT TRADE SECRETS ONLY)**

**I.    INTRODUCTION**

Mutual stipulated that it is not seeking damages based on any diverted loans. Yet, it pursues trade secret misappropriation claims based on documents associated with 17 potential borrowers. The vast majority of these borrowers (15 of 17) never even closed a loan at Waterstone. While two did, there is no connection between those two borrowers and Mutual's multi-million dollar lost profit damage allegations, which are based on the departure of Mutual's Daytona and Tampa branches. The absence of damages is dispositive. The court should grant judgment for Waterstone on Mutual's trade secret misappropriation claims to the extent the claims are premised on 17 borrower documents.

## II.   RELEVANT BACKGROUND

### a. Mutual's 17 Borrower Document Trade Secrets.

Mutual asserts claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA"). (Am. Compl., Claims I-II, D.E. 37.) After being permitted to amend its trade secrets over Waterstone's objection, Mutual alleged three categories of trade secrets: (1) documents related to 17 borrowers, (2) customer lists, and (3) profit and loss statements for the Tampa and Daytona branches.[1] (D.E. 207-01.) This motion targets category (1), which is comprised of documents associated with 17 borrowers as follows:

   a) Eight (8) borrowers never completed a loan application at Mutual;
   b) Three (3) borrowers had their loan applications denied by Mutual;
   c) Two (2) borrowers withdrew loan applications with Mutual;
   d) Two (2) borrowers were pre-approved for loan applications; and
   e) Two (2) borrowers were approved by Mutual.

(*See* Mutual's Resp. to Waterstone's Fourth Set of Interrog., attached as <u>Exhibit A</u>, at Resp. to Interrog. 28.)

---

[1] In June 2024, the Court denied Waterstone's motion for summary judgment on Mutual's trade secret claims without prejudice, afforded Waterstone the opportunity to conduct additional discovery related to Mutual's newly identified trade secrets, and permitted Waterstone to file a fees petition incurred as a result of Mutual's failure to timely comply with discovery deadlines. (D.E. 209.) The additional discovery related to Mutual's new alleged trade secrets concluded on February 3, 2025, the date Waterstone deposed Mutual's new rebuttal expert.

### b. Mutual Has No Damages Based on the 17 Borrower Document Trade Secrets.

Mutual stipulated months ago that it is not seeking any damages based on diverted loans. (D.E. 196.) In addition, Mutual's corporate representative admitted Mutual cannot identify any dollar amount of damages associated with any of these potential loans. (Deposition Transcript of Christine Leyden, attached as Exhibit B, at 76:18-22.)

Mutual's corporate representative also admitted Mutual has no evidence Waterstone used the alleged borrower trade secrets to close loans at Waterstone. (Leyden Dep. Tr., Exhibit B, at 92:18-23) or directed the transfer of borrower files. (*Id.* at 28:14-17). Mutual could not even say whether any of the former employees associated with the alleged borrower trade secrets engaged in misappropriation with respect to the transfer of a borrower's loan. (*Id.* at 132:21-134:17.)

Mutual asserts lost profit damages based on its branches remaining with Mutual for 30 months. But, there is no tie between the branches staying with Mutual and these 17 potential borrowers. In fact, the branches close hundreds of loans each year. (*See* Exhibit A at Mutual's Resp. to Interrog. 29, 31.) In addition, only two of the loans even closed with Waterstone and, as to those two, Mutual denied one of the loans and the other borrower never even completed a loan application with Mutual. (See Exhibit A at Mutual's Resp. to Interrog. 28 referencing the Byers loan (no application with Mutual) and the Castaneda loan (Mutual denied the loan)).

Mutual took no discovery as to the branch employees to understand the reasons they resigned. The former managers each submitted detailed declarations explaining the reasons they resigned from Mutual. (D.E. 104-8, 104-9, 104-10, and 104-11.) The reasons had nothing to do with the 17 potential borrower documents later identified as Mutual's alleged trade secrets. And, the managers specifically confirm they would have left Mutual regardless of the ability to send information associated with 17 potential borrowers to Waterstone. (*See* Exhibit C (Declaration of Chris Smith); Exhibit D (Declaration of John Utsch); Exhibit E (Declaration of Dwayne Hutto); Exhibit F (Declaration of Chris Wolf)).

## III.  ARGUMENT

A party that establishes trade secret misappropriation may recover the following damages under the DTSA and FUTSA:

- damages for actual loss caused by the misappropriation;
- damages for unjust enrichment caused by the misappropriation; or
- in lieu of damages measured by other methods, damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for unauthorized disclosure or use of a trade secret.

*See* 18 U.S.C. § 1836(b)(3)(B); Fla. Stat. § 688.004(1).[2] Mutual confirmed it is not seeking damages based on unjust enrichment or a reasonable royalty. (D.E. 254.) As to lost profit damages, importantly, a party can only recover "those losses that are 'caused by' misappropriation." *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21

---

[2] Waterstone maintains that Mutual cannot establish the elements of trade secret misappropriation, but the absence of damages derivative of the 17 potential borrower documents alone requires judgment for Waterstone.

F.4th 1267, 1277 (11th Cir. 2021) (citing *Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 94 So.3d 640, 644–46 (Fla. 4th DCA 2012) (per curiam)). *See also In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 690 (Bankr. M.D. Fla. 2010), *aff'd sub nom. Maxxim Med., Inc. v. Pro. Hosp. Supply, Inc.*, No. 8:10-CV-2577-T-17, 2021 WL 11701868 (M.D. Fla. Sept. 21, 2021) (a party "must prove that the alleged violation of the UTSA caused it damages.").

Put differently, a party must "show that the asserted damages would not have been suffered 'but for' the misappropriation." *Cap. City Home Loans, LLC v. Darnell*, No. 4:21-CV-228-AW-MJF, 2023 WL 4169614, at *1 (N.D. Fla. May 11, 2023), *aff'd*, No. 23-12066, 2024 WL 4534567 (11th Cir. Oct. 21, 2024) (citation omitted). Where a "plaintiff is unable to prove specific injury the accepted approach to computing damages is to measure the value of the secret to the defendant.'" *Hurry Family Revocable Trust v. Frankel*, Case No. 8:18-cv-2869-CEH-CPT, 2022 WL 3156202, at *11 (M.D. Fla. Aug. 8, 2022) (citation omitted).

The failure to prove damages caused by the alleged misappropriation is dispositive. *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1337 (S.D. Fla. 2006), *aff'd,* 294 F. App'x 501 (11th Cir. 2008) (explaining that "a claim for damages under the FUTSA requires proof of damages" and collecting cases dismissing UTSA claims for failure to prove damages). Furthermore, a party that fails to present evidence of damages cannot recover exemplary damages. *See, e.g., Brightview Group, LP v. Teeters*, 2021 WL 1238501, No. SAG-19-2774 (D. Md. March

5

29, 2021) ("Because Brightview has not presented evidence of actual damages or unjust enrichment related to the misappropriation of trade secrets, no damages can be awarded under either statute, and Brightview is not entitled to corresponding exemplary damages.")

      Here, there is no causal connection between the transmittal of these particular potential borrower documents and the branch departures (i.e., Mutual's lost profit damages). Mutual has no evidence the former employees would have stayed at Mutual but for the ability to transmit documents associated with these potential borrowers. Seventeen potential borrowers is miniscule given the branches close hundreds of loans each year.

      The former branch managers have made clear the reasons they left Mutual had nothing to do with the ability to transmit information related to 17 potential borrowers. Rather, they were frustrated with Mutual's leadership, inadequate products, and inability to timely close loans, among other things. Mutual has no evidence the former branch managers would have stayed at Mutual but for the transmittal of borrower information.

      Further, Mutual is not seeking damages based on the value of loans allegedly diverted to Waterstone. And, Mutual's corporate representative confirmed that Mutual has not placed any other dollar value on any allegedly diverted loans. As such, there is no basis to award any damages based on the alleged misappropriation of borrower information, and the Court should grant judgment for Waterstone as to these 17 alleged trade secrets.

## IV. CONCLUSION

For all the reasons discussed, the Court should grant Waterstone's motion.

Dated:  February 10, 2025.

*s/Maria L. Kreiter*
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Waterstone certifies they have conferred in good faith with opposing counsel concerning the issues presented in this Motion. Specifically, Waterstone's counsel spoke with Mutual's counsel by phone on February 4, 2025. Mutual's counsel indicated it will not consent to the relief sought.

Dated: February 10, 2025.

        *s/Maria L. Kreiter*
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*