## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MUTUAL OF OMAHA
MORTGAGE, INC.

                Plaintiff,

v.

WATERSTONE MORTGAGE
CORPORATION,

                Defendant.

CASE NO. 8:22-cv-01660-UAM

### DEFENDANT WATERSTONE MORTGAGE CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE LOST PROFIT DAMAGES AND ANY NEW EVIDENCE AS TO THE DURATION OF LOST PROFITS DAMAGES

## I.    INTRODUCTION

The Court has repeatedly warned Mutual is bound by the discovery record with respect to the duration component of its damages: "so to be clear, we're not going to reopen it [discovery] to allow the opportunity to present additional facts for that purpose. It's either in the record or not." (D.E. 226 at 3.) No Mutual witness proposed a 30-month duration during discovery. Mutual also never disclosed a 30-month duration in its discovery responses. Waterstone files this motion to prevent Mutual from ignoring the Court's clear holding and attempting to present trial evidence for the first time to support damages of 30 months, or any other duration, including the only duration Mutual has ever disclosed during discovery: 18 months. Notably, on January 31, 2025 Mutual served amended Rule 26(a) disclosures that listed three new

witnesses: Jeff Gennarelli, Katherine Theobald, and Kiley King. Mutual's witness disclosures previously identified only one employee: Chris Leyden, Mutual's Chief Operating Officer. Leyden testified at her deposition that she knows nothing about Mutual's damages. Therefore, any support for the 30-month or any other duration cannot come from Leyden. And, Mutual has no one else, nor any other evidence in the record supporting lost profits damages over any duration. The Court should exclude any new evidence that attempts to support duration, strike the three new witnesses Mutual disclosed just weeks before trial — a year and a half after the close of discovery — to the extent they will attempt to present duration evidence, and exclude Mutual's purported lost profits damages.

## II.    RELEVANT FACTS

### a.    Mutual Disclosed Only Leyden, Who is Unaware of Mutual's Damages.

The Court's Case Management and Scheduling Order required the exchange of initial disclosures by October 21, 2022. (D.E. 34 at ¶ 2.) Mutual's disclosures, attached as <u>Exhibit A</u>, listed only one Mutual employee, Chris Leyden, Chief Operating Officer. The description associated with Leyden's likely testimony did not include damages, let alone the duration Mutual would have kept its branches for purposes of Mutual's damages model. *See id.*

Waterstone deposed Leyden on June 22, 2023, approximately one month before the July 31, 2023 close of discovery. Leyden testified she had no knowledge of

Mutual's damages or Deposition Exhibit 7, which was the only damages model

Mutual had put forth, authored by Jeff Gennarelli and based on an 18-month duration:

> **Q.** Do you have knowledge of the damages that are sought by Mutual in this case?
> **A.** No.
> **Q.** The answer may very well be no to this question but just to close out the category, take a look at what we've previously marked as Deposition Exhibit No. 7, please. The first page of Deposition Exhibit is just a cover page. It has the Bates No. MOM-0003484 at the bottom, and then the second page has the actual content. Have you seen Exhibit 7 before?
> **A.** No.
> **Q.** You certainly played no role in putting together Exhibit 7 or doing the analysis that's reflected in Exhibit 7, correct?
> **A.** No.
> **Q.** Did Mr. Gennarelli ever have discussions with you about the damages that Mutual is seeking from Waterstone?
> **A.** No.
> **Q.** What about Mr. Mayle?
> **A.** No.
> **Q.** Did anybody at Mutual have any discussions with you about the damages it's seeking?
> **A.** Not that I recall.

(Leyden Dep. Tr. at 74:19-75:16 & Dep. Ex. 7, both attached as <u>Exhibit B</u>.)

When asked about the longevity of Mutual's branches, Leyden testified she

knew of no internal statistics, did not mention any support for an 18-month, 30-month,

or any duration and could only state that the branches generally "stay":

> **Q.** I want to talk about longevity of branches that you know of during your time at Mutual. Is there any internal statistics about how long branches stay at Mutual?
> **A.** Not that I'm aware of, but I know that we have limited turnover. For the most part, they stay.

(Leyden Dep. Tr. at 99:11-15.)

**b. Mutual Belatedly Discloses Gennarelli, Theobald and King on January 31, 2025 — *one year and six months after the close of discovery*.**

Mutual never amended its disclosures before the July 31, 2023 close of discovery, or at any time before January 31, 2025, when it sent the amended disclosures attached as <u>Exhibit C</u>. There, Mutual attempts to add Jeff Gennarelli, Katherine Theobald, and Kiley King as potential witnesses. None of those witnesses testified during discovery to a 30-month duration. In fact, Theobald and King, similar to Leyden, had no knowledge of Mutual's damages whatsoever.

As Mutual's designated corporate representative, Gennarelli proposed the 18-month duration used in his analysis (the aforementioned Deposition Exhibit 7). This testimony was in response to the following deposition topics targeting Mutual's damages and any support for the alleged damages:

1. The damages sought by Mutual, including the calculation and basis of all such alleged damages.

2. The relationship between Mutual's alleged damages and the documents Mutual designated in its March 10, 2023 Amended Response to Interrogatory No. 1 (which states "Itemize Your damages, including the formula used to calculate those damages").

3. The analysis set forth in the "Summary of Corporate Earnings Contribution from Tampa and Daytona Branches" produced by Mutual as MOM-0003484 [MOM-0003484 is Deposition Exhibit 7 (included in <u>Exhibit B</u> attached to this motion), the Gennarelli damages model that uses an 18-month duration].

Waterstone's Rule 30(b)(6) Deposition Notice, attached as <u>Exhibit D</u>. Gennarelli did not mention 30 months or any duration besides the 18-month duration used in his own analysis, MOM0003484 (Deposition Ex. 7, included in <u>Exhibit B</u>).

4

Theobald was Mutual's other corporate representative, but she testified all damages topics were covered by Gennarelli and not part of her preparation. (Theobald Dep. Tr. 57:11-16, attached as <u>Exhibit E</u>.) King was deposed in his personal capacity, despite not being disclosed, but he testified he was not involved in calculating Mutual's damages, did not know who calculated damages, and had never seen the Genneralli analysis, which, again, reflected Mutual's only damages model with a duration component. (King Tr. at 89:17-90:24, attached as <u>Exhibit F</u>.)

### c. Judge Barber's Order Requires Mutual to Present Duration Evidence to Support its Damages Model.

The Court is well aware of Judge Barber's ruling that Mutual ***must*** have evidentiary support for the duration component of its damages to reach the jury:

> [Mutual]'s lost profits damages calculations must still have some evidentiary support as to a time component before they can be submitted to a jury. … The durational aspect of lost profits is not simply a question of fact for the jury – there must be *some evidence* to create an issue of fact for the jury to determine.

Judge Barber's Order Granting in Part and Denying in Part Waterstone's Mot. to Exclude or Limit Pl.'s Expert Testimony on Damages (March 29, 2024, DE 146 at 10.) Judge Barber was also clear that both Gennarelli's and Rosevear's damages models are suspect because no evidence disclosed in discovery and presented in the multitude of motions on the topic of damages supports the duration component:

> Neither Gennarelli nor Rosevear point to an objective factor or reason for the time periods over which they projected future lost profits – 18 months and 10 years, respectively.

> Although both Gennarelli and Rosevear appear to be qualified to render damages opinions, their opinions are suspect because they

do not identify any evidentiary support for the time duration included in their opinions.

D.E. 146 at 9.

However, out of an "abundance of caution" and considering the last-minute 30-month stipulation filed by Mutual, Judge Barber allowed their opinions to remain in the case for the time-being. (*Id.* at 10.) But Judge Barber warned that, if Mutual "has not provided 'some standard' for the time duration of its future lost profits damage models the Court ***will***, pursuant to Fed. R. Civ. P. 50, eliminate this claim from the case and not permit [Mutual] to ask the jury for an award of future lost profits as a measure of damages." (*Id.*)

### d.  The Court Strikes Rosevear's Supplemental Report Attempting to Inject New Duration Evidence.

Because Mutual had ***zero support*** for the duration of either the Genneralli or the Rosevear damages model, Mutual attempted to transform its "rebuttal" expert, Candice Rosevear, into a longevity expert through her supplemental report. But the Court was clear that Rosevear was not to inject new support for the duration component of Mutual's damages. (D.E. 226 at 2-3.) The purpose of Rosevear's supplemental report was to find out what she relied upon *from the already existing record*. "If there's nothing in the record that she relied upon, then that's the answer." (*Id.*, citing D.E. 205 at 37.) The Court therefore struck Rosevear's supplemental report to the extent it attempted to inject duration evidence and reiterated that "Ms. Rosevear's supplemental report was not opportunity to further develop the record," stating

emphatically: "so to be clear, we're not going to reopen it to allow the opportunity to present additional facts for that purpose. It's either in the record or not." D.E. 226 at 3. Rosevear's new analysis, based on employee-specific Nationwide Multistate Licensing System & Registry (NMLS) Consumer Access data and statistical analyses, was beyond the scope of what the Court authorized and the very type of new information expressly prohibited by the Court. *Id.* at 4.

### e. Mutual has <u>*ZERO SUPPORT*</u> for the duration element of its damages model.

With Rosevear's new evidence of duration excluded, the fact remains that Mutual has *zero* evidence supporting lost profits over any duration, let alone 30 months, 18 months, or any other duration. As Judge Barber warned would be the case, it then follows that this Court should not allow Mutual to present lost profit damages to the jury. In fact, Mutual's counsel admitted there is "no rhyme or reason" to the durational element of Mutual's lost profits damages calculations:

> **The Court**: . . . . So there is – your expert picks ten years because of why? Or is there a some basis, or whatever the law exactly says, a yardstick on some basis? Where does the number come from?
>
> **Ms. Walter**: I think there is no rhyme or reason, Your Honor, to put it bluntly.

(Mot. Hrg. Tr. at 23:6-12 (January 30, 2024, D.E. 131)).

Mutual's assertion that the employees would have remained at Mutual for *any* amount of time is pure speculation. When Gennarelli was asked whether he had reason to assume the branch employees would have stayed with Mutual for 18 months,

Gennarelli could only speculate: "[w]e now are the lender for Keller Williams. I would imagine that that may be more attractive…." (*See, e.g,* Gennarelli Dep. Tr. (Ex. 2) at 174:10-23.) But Mutual has never asked any of the employees if Keller Williams would have motivated them to stay with Mutual, nor is there any evidence that any of the employees even *knew* about the Keller Williams acquisition before their departure. (*Id.*) And, as Judge Barber acknowledged at the January 30, 2024 summary judgment hearing, such "self-serving[]" testimony—based only in speculation that *had* the employees known about Keller Williams one *could imagine* that they *might* have stayed at Mutual—is not enough to overcome the speculative nature of Mutual's alleged lost profits damages. (Mot. Hr'g Tr. at 37:2-13 (January 30, 2024, D.E. 131).) Gennarelli also admitted Mutual has no evidence the branch employees would have continued working for a different manager at Mutual for any duration. (*Id.* at 95:16-96:1 (Q: "Does Mutual have evidence that the employees would've stayed and worked for Kiley King? […] A: "No, no evidence.") And, further, Mutual already presented the piecemeal bits of testimony Gennarelli provided as to duration and Judge Barber deemed that "evidence" insufficient and speculative. D.E. 146 (calling Gennarelli's opinion suspect because he does not identify any evidentiary support for the time duration).

## III.   ARGUMENT

Without any new supporting evidence, the duration component of Mutual's lost profits damages is nothing more than pure speculation that Mutual should not be allowed to present to the jury. Judge Barber indicated Waterstone is entitled to directed

verdict if no trial evidence beyond speculation supports duration. There is no such evidence. That is now clear, as Mutual's attempt to put that evidence forward for the first time through Rosevear was rejected and Rosevear's report stricken as to new duration evidence. Mutual should not be allowed to try, yet again, to inject new duration evidence through never disclosed trial witnesses, or otherwise. The case law Judge Barber cited should now be applied because it bars lost profits based on speculation, which is all Mutual has:

> The case law indicates that Florida courts carefully scrutinize the time duration component of future lost profit damages models. Indeed, courts have rejected lost profit damages models as speculative when there is no objective factual basis for the time duration component. *See Florida Virtual School v. K12, Inc.*, No. 6:20-cv-2354-GAP-EJK, 2023 WL 6294214, at *2-3 (M.D. Fla. Aug. 25, 2023) (excluding lost profits opinion as entirely speculative because of lack of evidentiary support and noting absurdity of ten-year extrapolation of lost profits damages); *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 898 (Fla. 4th DCA 2007) (concluding that expert's calculation of lost profits damages for five-year period was speculative where he was unable to articulate any justification for use of the five-year period); *see also Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 653-55 (6th Cir. 2009) (district court did not err excluding as unduly speculative testimony from expert that attempted to calculate lost profits over a ten-year time period rather than a five-year timeframe); *cf. Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 87-88 (1st Cir. 2017) (concluding that expert's ten-year loss period when calculating lost profits was based on sufficient factual support); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp. in U.S.A.*, 533 F.2d 510, 518-19 (10th Cir. 1076) (expert's calculation of lost profits not too speculative where expert had some evidentiary basis for decision to use 10-year period for projection).

D.E. 146 at 9-10.

Waterstone is entitled to exclusion of Mutual's lost profit damages given the lack of any duration evidence that is now clear. If the Court nevertheless allows the claim to proceed to trial, at a minimum, it must exclude any and all attempts by

Mutual to inject new duration evidence that was not previously put forth in discovery. Under no circumstances should Mutual be allowed to support duration through Theobald or King, who were never disclosed as damages witnesses and testified at deposition they knew nothing about Mutual's damages. The same is true for Leyden. And, Gennarelli's testimony related to an 18-month duration was already determined insufficient and speculative. Mutual should not be permitted to have Gennarelli pursue yet another try — for the first time at trial — to present duration evidence.

## IV.    CONCLUSION

Mutual has no evidence to support the duration component of its lost profits damages, and, accordingly, Mutual should not be allowed to ask the jury to award lost profits damages over entirely imagined periods of time. The Court should exclude lost profit damages. If it does not, the Court should at least exclude any new evidence of duration, including through Gennarelli, Leyden, Theobald, or King and should strike all untimely disclosed witnesses to the extent they will present duration evidence.

Dated:  February 12, 2025.

<div style="margin-left:40%">

*s/Maria L. Kreiter*

Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

</div>

10

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage
Corporation*

11

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Waterstone certifies they have conferred in good faith with opposing counsel concerning the issues presented in this Motion. Specifically, Waterstone's counsel spoke with Mutual's counsel by phone on February 4, 2025 and February 12, 2025. Mutual's counsel indicated it will not consent to the relief sought.

Dated:  February 12, 2025.

*s/Maria L. Kreiter*
Maria Kreiter (admitted pro hac vice)
Emma Jewell (admitted pro hac vice)
Xavier Jenkins (admitted pro hac vice)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

32527525.3