UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 8:22-cv-01660-AEP<br>)<br>) |
| WATERSTONE MORTGAGE CORPORATION, | )<br>)<br>) |
| Defendant. | )<br>) |

**PLAINTIFF MUTUAL OF OMAHA MORTGAGE, INC.'S**
***MOTION IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO**
**CHRIS SMITH'S PRIOR DEPARTRURE FROM RELIANT BANK**

Plaintiff Mutual of Omaha Mortgage, Inc. ("Mutual"), by counsel, moves the Court to enter an order, *in limine*, excluding testimony, other evidence, and any reference to events relating to former Mutual branch manager Chris Smith's departure from employment at Reliant Bank ("Reliant") to join BBMC Mortgage ("BBMC") and his sending of certain loan and other information to BBMC before leaving Reliant. In support, Mutual states as follows:

**INTRODUCTION**

This action centers upon the brazen, unlawful, and coordinated scheme by Defendant Waterstone Mortgage Corporation ("Waterstone") to solicit and to hire approximately sixty Mutual employees. Doc. 37 at ¶ 1. The scheme included three of Mutual's branch managers, including Chris Smith, conspiring with Waterstone to unlawfully "steal the entirety of Mutual's Florida operations." Doc. 100 at 1. Waterstone also encouraged and assisted Mutual's former employees in providing Mutual's confidential and trade-secret information

to Waterstone, which has not only damaged Mutual, but the entirety of the scheme caused Mutual to close three of its branches. Doc. 37 at ¶¶ 1–2.

Mutual has asserted claims against Waterstone for: (1) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) misappropriation of trade secrets under the Florida Trade Secrets Act; (3) tortious interference with a contract; and (4) aiding and abetting breach of fiduciary duty. *Id.* at ¶¶ 66–97. The Court has scheduled the trial of this action to begin on March 10, 2025. Doc. 252.

In an attempt to excuse its unlawful actions, Waterstone may introduce evidence that Mr. Smith, a former Mutual branch manager who managed Mutual's Tampa Branch and Paramus Branch from December 2018 to June 2022, departed from employment with Reliant in 2016 to join BBMC and sent certain loan and other information to BBMC before leaving Reliant. Waterstone may argue that the actions of Mr. Smith in forwarding Mutual's trade secrets to Waterstone and joining Waterstone—through Waterstone's solicitation and encouragement—***six years later*** was not wrongful. But Mr. Smith's departure from Reliant does not have anything to do with the alleged actions of Waterstone in this action. The circumstances surrounding the departure from Reliant are completely irrelevant and inadmissible under the Federal Rules of Evidence. Further, the probative value of such evidence (if there is any) is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and the wasting of time that would result from the introduction of such evidence. The evidence should be excluded under the Federal Rules of Evidence as more fully explained below.

## LEGAL STANDARD

The Court's authority to manage trials includes the power to exclude evidence pursuant to motions *in limine*. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial." *McHale v. Crown Equip. Corp.*, No. 8:19-cv-707-VMC-SPF, 2021 WL 4527509, at *1 (M.D. Fla. Oct. 1, 2021) (internal quotation marks omitted). The purpose of a motion *in limine* is to "give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." *Id.* (alterations in original) (internal quotation marks omitted). In other words, a motion *in limine* seeks "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce*, 469 U.S. at 462 n.2.

## ARGUMENT

### I.   Mr. Smith's Past Employment And Sending of Information Is Irrelevant And Not At Issue In This Case

The Court should exclude evidence that Mr. Smith departed from employment at Reliant to join BBMC and sent certain loan and other information to BBMC before leaving Reliant because that evidence is irrelevant. "The starting place for evidentiary admissibility is relevance." *United States v. McGregor*, 960 F.3d 1319, 1323 (11th Cir. 2020). Under the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Finally, "[t]he evidence must be relevant to a disputed issue in the case." *Williams v. Asplundh Tree Expert Co.*, No. 3:05-cv-479-J-33MCR, 2006 WL 2868923, at *2 (M.D. Fla. Oct. 6, 2006).

Waterstone wishes to introduce evidence regarding Mr. Smith's departure from Reliant in 2016 to join BBMC – an entity that Mutual of Omaha Bank – not Mutual of Omaha Mortgage – acquired in 2018.[1] Specifically, Waterstone seeks to introduce evidence that in 2016, when Reliant was shuttering its mortgage division, Mr. Smith sent certain Reliant information to then employee of BBMC, Mr. Tomalak, during the course of those conversations, such as information pertaining to loan pricing, fixed expenses, and salaries and had discussions pertaining to certain employees that would also leave Reliant for BBMC. Deposition Tr. of Brian Tomalak, Exhibit A at 75:9–12, 87:18–88:6.

To begin, the events in question occurred almost ten years ago and involve a different entity altogether. Mutual did not own or have any right to control BBMC at any time, and thus whatever transpired literally involved a different entity nearly a decade ago. Moreover, as set forth above, Mr. Smith departed from Reliant due to the impending cessation of operations at its mortgage division:

> Q. You believe that Mr. Tomalak was working for—sorry, at the time of this email exchange Mr. Smith was still an employee of Reliant; correct?
>
> A. Yes, however, the situation I believe [was that] they were ending their mortgage division, and this was not—I mean, I think Reliant knew this was happening.
>
> Q. What leads you to believe that?
>
> A. Because there was another branch and I think they were—if I recall correctly they were ending their mortgage division and not taking any loans if I recall correctly. There was something going on with Reliant that their mortgage division, it was no longer, I believe, going to originate—or something with their vice president leaving—something I believe was going on.

---

[1] *Synergy One Lending, a Mutual of Omaha Bank Company, to Acquire Assets of BBMC Mortgage*, Business Wire (October 31, 2018) https://www.businesswire.com/news/home/20181031005848/en/Synergy-One-Lending-a-Mutual-of-Omaha-Bank-Company-to-Acquire-Assets-of-BBMC-Mortgage

. . .

> Q. Is it your testimony that the Tampa employees working for Reliant had to leave Reliant to go somewhere else?
>
> . . .
>
> A. There was something that might have been going on there that Reliant was either going to exit the mortgage or—there was something. I don't recall exactly.

Deposition Tr. of Kiley King, Exhibit B at 64:3–65:9.

Thus, any evidence that, back in 2016, Mr. Smith (or other employees) departed from employment at Reliant to join an altogether different entity and may have sent certain information, such as loan-pricing information, to BBMC has no tendency to make any fact *in this action*, which addresses Waterstone's unlawful and coordinated scheme to solicit and to hire Mutual employees, more or less probable than it would be without that evidence. Again, the issues in this action relate to Waterstone's misappropriation of trade secrets, tortious interference, and aiding and abetting breaches of fiduciary duty. Not one of these claims has anything whatsoever to do with Mr. Smith's prior employment with Reliant in 2016, nor did Waterstone have anything to do with his employment at Reliant, and his separation from Reliant to join another altogether distinct entity arose in completely different circumstances.

Therefore, because the evidence does not have any tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence, the evidence is irrelevant and should be excluded.

## II. Even If Relevant, The Evidence Should Be Excluded Under Rule 403

Even if the Court determines that evidence that Mr. Smith departed from employment at Reliant to join BBMC, and sent certain information to BBMC before departing, is relevant,

the Court should exclude that evidence because its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403.

A court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "It is the province of the trial judge to weigh any materiality or relevance against any prejudice." *U.S. v. Stephenson*, 550 F. Supp. 3d 1246, 1251 (M.D. Fla. 2021). The "major function" of Rule 403 is to exclude "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

Permitting Waterstone to offer evidence relating to the events that took place in 2016 involving a completely different lender would unfairly prejudice Mutual. It would somehow suggest that Mutual is responsible for another lender's prior bad acts simply because it acquired that company. It would distract the jury from the relevant events of this case, in violation of the Federal Rules of Evidence. *See* Fed. R. Evid. 403 Advisory Committee Notes (stating that the circumstances for excluding evidence under Rule 403 "entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme"); *United States v. Villanueva*, No. 8:12-cr-205-T-17MAP, 2016 WL 3670812, at *2 (M.D. Fla. July 5, 2016) ("Prejudice is unfair when it tends to suggest a decision by the fact finder on an improper basis, such as an emotional basis."). Given that this action focuses on Waterstone's unlawful and coordinated scheme to solicit and to hire Mutual employees in 2022, including Mr.

Smith, any evidence (improperly) suggesting that Waterstone's actions are excusable stretches far beyond evidence that is simply adverse to Mutual. *See Shutler v. Citizens Disability LLC*, No. 2:23-cv-14337-KMM, 2024 WL 4483375, at *3 (S.D. Fla. Sep. 23, 2024) (explaining that unfairly prejudicial evidence under Rule 403 is not evidence that is simply adverse to the opposing party).

Relatedly, permitting Waterstone to offer the evidence would confuse the issues in this action. If the Court allows Waterstone to introduce the evidence, the numerous issues that serve as the subjects of this years-long litigation will suddenly become entangled with issues that are far afield from the subjects of this action. For example, issues such as Mr. Smith's departure from ***a separate bank*** (Reliant) to an ***entity unaffiliated with Mutual six years*** (BBMC) before Mr. Smith departed Mutual for Waterstone would undoubtedly become intertwined with the clearly delineated issues in this action, such as the theft of Mutual's trade secrets, which the parties have expended vast amounts of resources teeing up for the Court. This action is not about Mr. Smith's departure from Reliant for BBMC or any information that he shared with BBMC before that departure. Indeed, this case is not about BBMC – an entity acquired by Mutual of Omaha Bank almost two years after Mr. Smith joined BBMC. Waterstone's counsel's questioning during the depositions of Mr. Tomalak and Mr. King reinforces this point. *See*, *e.g.*, Ex. A at 89:14–17 ("Do you take issue with Mr. Smith, Mr. Hutto or Mr. Wolf providing *Waterstone* with information about employees from the branches that they expected to come over to *Waterstone*?" (emphasis added)); Ex. B at 75:22–25 ("Great. Do you understand that this case is about allegations that Mr. Smith, Mr. Hutto and Mr. Wolf shared confidential information of *Mutual* with *Waterstone*?" (emphasis added)).

The recognition of this plain danger of confusing the issues also underscores that

Page 7 of 10

allowing Waterstone to introduce the evidence would create a danger of misleading the jury. Indeed, Waterstone would offer this evidence in attempt to cobble together some type of excuse for its unlawful conduct. Because the evidence relates to events that occurred six years before the events giving rise to this action and involves two entities unaffiliated with Mutual, the introduction of the evidence would invite the jury to stray off course by offering extraneous issues for the jury's consideration.

Finally, if the Court permits Waterstone to offer evidence relating to the events that took place in 2016, Mutual would need to offer evidence to rebut whatever prejudicial inference Waterstone would undoubtedly seek, which would waste a substantial amount of time by injecting entirely new sets of issues into the litigation and only unnecessarily compound the dangers of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403.

Any attempt by Waterstone to introduce this evidence is a last-minute effort to create prejudice and confusion. As explained above, Rule 403 specifically prohibits offering the evidence to potentially prejudice the fact finder or cause confusion, which are the only reasons Waterstone would seek to introduce the evidence because the issue is not at stake in this action. Fortunately, the Federal Rules of Evidence call for the exclusion of this evidence.

## CONCLUSION

For the reasons explained above, Mutual requests that the Court enter an order excluding testimony, other evidence, and any reference to the events relating to Mr. Smith's departure from Reliant to join BBMC and his sending of certain loan information and other information to BBMC before leaving Reliant.

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that Mutual's counsel has conferred with Waterstone's counsel on February 5, 2024 via videoconference regarding the nature of the foregoing Motion. On February 5, 2024, Waterstone's counsel advised that Waterstone opposes the relief sought in this motion.

Dated:    February 13, 2025

          Respectfully submitted,

          */s/ Ari Karen*
          Ari Karen (admitted *pro hac vice*)
          Arielle Stephenson (admitted *pro hac vice*)
          **MITCHELL SANDLER PLLC**
          2020 K Street N.W., Suite 760
          Washington, D.C. 20006
          Email: akaren@mitchellsandler.com
          Email: astephenson@mitchellsandler.com
          Telephone: (202) 886-5292

          Daniel P. Dietrich, FL Bar # 934461
          Gregory L. Pierson, FL Bar # 123905
          **GUNSTER, YOAKLEY & STEWART, P.A.**
          401 East Jackson Street, Suite 1500
          Tampa, Florida 33602
          ddietrich@gunster.com
          gpierson@gunster.com
          Telephone: (813) 228-9080

          *Attorneys for Plaintiff Mutual of Omaha Mortgage, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 13, 2025, a true and correct copy of the foregoing was filed with the Court via CM/ECF which will send a notice of electronic filing to the parties of record.

*/s/ Ari Karen*
Ari Karen
