# **EXHIBIT A**

## Page 1

```
                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION


MUTUAL OF OMAHA MORTGAGE,
INC.
                                          CASE NO:
      Plaintiff,                 8:22-cv-01660-TPB-JSS

Vs.

WATERSTONE MORTGAGE
CORPORATION,

      Defendant.
_____/



      DEPOSITION OF:       BRIAN TOMALAK

      TAKEN:               Pursuant to Notice by
                           Counsel for Defendant

      DATE:                June 23, 2023

      TIME:                9:10 a.m. to 12:40 p.m.

      STENOGRAPHICALLY
      REPORTED BY:         CHERE J. BARTON, FPR

      LOCATION:            Hill Ward Henderson, P.A.
                           101 East Kennedy Boulevard
                           Suite 3700
                           Tampa, Florida  33602
```

REGENCY REPORTING SERVICE, INC. (813) 224-0224

## Page 2

APPEARANCES:

COURTNEY WALTER, ESQUIRE
Mitchell Sandler LLC
1120 20th Street Northwest
Suite 725
Washington, DC  20036

MARK CARROLL, ESQUIRE   (Zoom)
Mutual of Omaha Mortgage, Inc.
100 West 22nd Street
Suite 101
Lombard, Illinois  60148

   Appeared for Plaintiff


MARIA L. KREITER, ESQUIRE (pro hac vice)
Godfrey & Kahn, S.C.
833 East Michigan Street
Suite 1800
Milwaukee, WI  53202

STEPHANIE C. ZIEBELL, ESQUIRE  (Zoom)
Waterstone Mortgage Corporation
N25W23255 Paul Road
Pewaukee, Wisconsin  53072

   Appeared for Defendant

REGENCY REPORTING SERVICE, INC. (813) 224-0224

## Page 3

I N D E X
                                                    Page
EXAMINATION BY MS. KREITER                            5
CERTIFICATE OF OATH                                 153
CERTIFICATE OF REPORTER                             154
READ & SIGN LETTER TO WITNESS                       155
ERRATA SHEET (forwarded upon completion)            156

REGENCY REPORTING SERVICE, INC. (813) 224-0224

## Page 4

INDEX OF EXHIBITS
                                                    Page
Defendant's Exhibit No. 21                            7
(NMLS Consumer Access,
 Brian Tomalak)

Defendants' Exhibit No. 22                           73
(NMLS Consumer Access, Christopher
 Smith)

Defendant's Exhibit No. 23                           73
(Composite of e-mails,
 Bates WMC012770-WMC012809)
   (CONFIDENTIAL)

Defendant's Exhibit No. 24                          107
(NMLS Consumer Access,
 Dwayne Hutto)

Defendant's Exhibit No. 25                          125
(Composite of e-mails,
 Gennarelli/Tomalak/Maley/
 Springer, 4/15/22, Dawson Walker,
 Bates MOM-0014046-MOM-0014050)

Defendant's Exhibit No. 7                           134
   (PREVIOUSLY MARKED)

Defendant's Exhibit No. 18                          137
   (PREVIOUSLY MARKED)

Defendant's Exhibit No. 26                          140
(E-mail chain, Tomalak/
 Gennarelli/Arevalo/Friebis/
 Briones/Giraldo/Wolf, 4/27/22,
 End of the Day Report,
 Bates MOM-0014143-MOM-0014145)

Defendant's Exhibit No. 27                          148
(E-mail chain, Tomalak/
 Giraldo, 4/29/22, missing
 Commission pay, Bates MOM-0014151)

Defendant's Exhibit No. 28                          149
(E-mail chain, Lynch/Tomalak/Mayle/
 Gennarelli/Theobald/Arevalo/Japaz,
 7/5/22, Hoboken, Bates MOM-0014631-
 MOM-0014632)

REGENCY REPORTING SERVICE, INC. (813) 224-0224

73

1  Q. (By Ms. Kreiter) First let's identify what has
2  been marked as Exhibit 22, please. This is NMLS
3  Consumer Access, Chris Coryell Smith at the top. This
4  is Mr. Smith's NMLS report, and it similarly lists his
5  prior employment similar to your own NMLS report;
6  correct?
7  A. Uh-huh. Yes.
8  Q. Okay. I would like you to turn to what we've
9  marked as Exhibit 23. You'll see in the bottom of
10 Exhibit 23 there's what we call Bates numbers, and it
11 starts with WMC12770. Do you see that?
12 A. Uh-huh.
13 Q. This is an e-mail exchange -- just so that we can
14 go sequentially I'm going to ask you to turn to page
15 12775 and start there, please. Just let me know when
16 you're there.
17 A. Okay.
18 Q. Okay. So start at the e-mail at the bottom of
19 the first e-mail in the exchange. This is an e-mail
20 from Mr. Smith at his personal e-mail account, it's
21 dated March 10, 2016. Do you see that?
22 A. Yes.
23 Q. Are you with me?
24 A. Yeah, March 10.
25 Q. And he sends it to you March of 2016. So at that

74

1  point in time if you look at Exhibit 21, March of 2016
2  you're employed by BBMC; correct?
3  A. Yep.
4  Q. And Mr. Smith, according to Exhibit 22, is
5  working for Reliant Bank; correct?
6  A. Okay.
7  Q. So Mr. Smith is writing to you from his personal
8  e-mail account, you're an employee of BBMC which
9  ultimately becomes Mutual of Omaha; correct?
10 A. Okay.
11 Q. That's correct, BBMC becomes Mutual of Omaha?
12 A. Yes.
13 Q. Okay. The subject line --
14 A. Well, not becomes -- I don't -- but, yeah, we
15 moved there.
16 Q. BBMC is a predecessor to Mutual of Omaha;
17 correct?
18 A. Yes.
19 Q. Okay. Mr. Smith writes, "This one is a full
20 file, already have appraisal from Reliant." That's Mr.
21 Smith's employer; correct?
22 A. Okay.
23 Q. Is that correct?
24 A. It sounds like it, yeah.
25 Q. "... VA, rest of docs will be in tomorrow. Do

75

1  not credit the YSP." Do you see that?
2  A. Yeah.
3  Q. Then if you turn to the next page there's a
4  screen shot that Mr. Smith provided to you where you
5  were working at BBMC that appears to be a screen shot of
6  pricing information from Reliant; do you agree?
7  A. I don't know if this is Reliant's or -- we all
8  use Optum Upload.
9  Q. But Mr. Smith is sending you --
10 A. Oh, okay.
11 Q. -- a screen shot of pricing information; correct?
12 A. Okay. Yes, it looks like it.
13 Q. He's not an employee of BBMC at this point in
14 time?
15 A. Okay.
16 Q. Do you agree?
17 A. Yeah.
18 Q. Again, I want to go sequential through the
19 documents, so next go up that same page, 12775.
20 A. Going back now?
21 Q. Yeah. I'm actually -- you can see 12774 at the
22 bottom. You write back from a BBMC e-mail address to
23 Mr. Smith at his personal e-mail address and you say,
24 "Or was this priced in your engine? Your engine does
25 not have a compensation in the price." Do you see that?

76

1  A. What page? I'm sorry.
2  Q. So it's kind of split here due to the e-mail
3  exchange, but you can see that near the center of the
4  e-mail on page 12774 at the very bottom --
5  A. Okay.
6  Q. -- and then Chris Smith in his personal e-mail
7  account is the recipient. If you go to the next page
8  then --
9  A. Oh, okay.
10 Q. -- you can see the text of what you write, and
11 you say, "Or was this price in your engine? Your engine
12 does not have a compensation in the price." Do you see
13 that?
14 A. Uh-huh.
15 Q. You don't tell Mr. Smith in this e-mail that he
16 shouldn't be sharing pricing information with you;
17 correct?
18 A. I guess not, no.
19 Q. Let's continue on.
20     MS. WALTER: Maria, when did you produce
21   these?
22     MS. KREITER: Just today.
23     MS. WALTER: I don't have an e-mail from
24   you.
25     MS. KREITER: I handed them to you prior to

85

1 to protect against.
2    MS. KREITER: Okay. Again, I this morning
3 got authorization --
4    MS. WALTER: So --
5    MS. KREITER: -- let me speak.
6    MS. WALTER: How long did you have these
7 e-mails?
8    MS. KREITER: Let me speak. I received
9 authorization this morning to disclose the e-mails.
10 I gave them to you this morning. If you would like,
11 take as much time as you want to meet with Mr.
12 Tomalak, go over the exhibit. We can break for an
13 hour if you want or however much time you need to go
14 over deposition Exhibit 23 with Mr. Tomalak. I'm
15 fine with you doing that.
16    MS. WALTER: How long have you been
17 communicating with Mr. Smith? Since this lawsuit
18 was filed? He's had access to these e-mails since
19 this lawsuit was filed.
20    MS. KREITER: He's not a party to the suit.
21    MS. WALTER: Then how do you have access to
22 his personal e-mail?
23    MS. KREITER: As I indicated, Mr. Smith
24 gave me authorization this morning. Are you wanting
25 to take a break --
     REGENCY REPORTING SERVICE, INC. (813) 224-0224

86

1    MS. WALTER: No, no. This is going to
2 proceed, and I just want to put on the record that I
3 am objecting to this entire line of testimony. It's
4 total unfair surprise, Maria, and you know it.
5    MS. KREITER: If you feel that there is
6 unfair surprise that's why I'm offering you, Ms.
7 Walter, to take a break so that you're not
8 surprised. You can take as much time as you want
9 and talk with the witness.
10    MS. WALTER: Well, my witness also has a
11 flight, and we also have another deposition
12 scheduled for 1 p.m.
13    MS. KREITER: How long do you need to
14 discuss the exhibit with the witness?
15    MS. WALTER: I don't want to discuss the
16 exhibit. We're going to proceed. I am not
17 objecting -- I am not preventing him from
18 testifying, but I want it on the record because this
19 is ridiculous, and you know it.
20    MS. KREITER: Would you prefer that I
21 produce this after the deposition and ask him a
22 bunch of questions without showing the document?
23    MS. WALTER: Don't act like that, going to
24 eviscerating what is happening here. You handed
25 this to me at 9:04. I looked on the clock because
     REGENCY REPORTING SERVICE, INC. (813) 224-0224

87

1 we were delayed in this deposition.
2    I'm not fighting with you about it. We
3 will take this to a judge after the fact and we can
4 ask him about these e-mails.
5    MS. KREITER: Okay. So let's proceed.
6    You know what, I think I am going to take a
7 ten-minute break at this point. Would you want to
8 look at the exhibit and talk to Mr. Tomalak or not?
9 That is your prerogative, but I will take a
10 ten-minute break. It's 11:58. Why don't we come
11 back at 11:15.
12    MS. WALTER: Okay.
13    (There was a break in the proceedings.)
14    Q. (By Ms. Kreiter) Mr. Tomalak, in Exhibit 23 if
15 you would turn to the page Bates numbered WMC12783,
16 please.
17    A. Okay.
18    Q. The e-mail exchange starts 2/17, the e-mail from
19 you to Mr. Smith February 17, 2016 at 4:30. Do you see
20 that?
21    A. Uh-huh.
22    Q. You write, "Hey Buddy, do you know your current
23 fixed expenses?" Do you see that?
24    A. Yep.
25    Q. And then you'll see starting on page 12782 and
     REGENCY REPORTING SERVICE, INC. (813) 224-0224

88

1 then continuing on, Mr. Smith replies, he tells you the
2 rent, he tells you a list of certain expenses, he
3 informs you -- do you see on page 12783 processors
4 salaries $10,000 (two at 36k and one at 48k annual), and
5 he tells you a manager salary. Do you see that?
6    A. Uh-huh.
7    Q. So this list of expenses includes compensation
8 information. Is that compensation information public?
9    A. I don't know. I don't know.
10    Q. Is there a public database in which you think
11 that, for example, John, $3,000 manager salary (36k
12 annual) is that published anywhere?
13    A. I don't know.
14       MS. WALTER: Object to the form. You have
15    to let me object.
16    A. I don't know.
17    Q. (By Ms. Kreiter) Is there any public database
18 that lists processors salaries, $10,000?
19    A. I don't know.
20       MS. WALTER: Objection.
21    Q. (By Ms. Kreiter) Your understanding was that
22 this information related to expenses provided by Mr.
23 Smith related to the branch employees at the Tampa
24 office of Reliant; correct?
25    A. It looks like it, yes.
     REGENCY REPORTING SERVICE, INC. (813) 224-0224

89

1  Q.  Did you think that you were engaging in trade
2  secret misappropriation by asking Mr. Smith for this
3  information?
4      MS. WALTER:  Objection.
5  A.  No.
6  Q.  (By Ms. Kreiter)  Did you think there was anything
7  wrongful about you asking for information related to Mr.
8  Smith's branch expenses at Reliant and him providing
9  that information?
10     MS. WALTER:  Objection.
11     THE WITNESS:  Do I answer that?
12     MS. WALTER:  Yes.
13 A.  No.
14 Q.  (By Ms. Kreiter)  Do you take issue with Mr.
15 Smith, Mr. Hutto or Mr. Wolf providing Waterstone with
16 information about employees from the branches that they
17 expected to come over to Waterstone?
18     MS. WALTER:  Objection.
19 A.  What type of information?
20 Q.  (By Ms. Kreiter)  Compensation let's say.
21 A.  Of what they're paid?
22 Q.  Correct.
23 A.  Not really.  I mean --
24 Q.  Go on in the exhibit, another blue sheet, and
25 then if you would turn to page 12789, that's where the

REGENCY REPORTING SERVICE, INC. (813) 224-0224

90

1  next e-mail exchange starts.
2  A.  Okay.
3  Q.  The top of that page is an e-mail February 22nd
4  from you to Mr. Smith at his personal e-mail account.
5  Mr. King is again copied.  Do you see that?
6  A.  I'm on 87 -- yes.
7  Q.  No.  89.
8  A.  Oh, I'm sorry.
9  Q.  12789.
10 A.  Okay.
11 Q.  At the top of that page there's an e-mail from
12 you on February 22nd, 2016 --
13 A.  Okay.
14 Q.  -- to Mr. Smith, and this is again while Mr.
15 Smith is an employee of Reliant and thinking about
16 coming to BBMC; correct?
17 A.  He sounds like it.
18 Q.  Mr. King is copied and you write, "Smitty -- do
19 you by chance have the names and production of those you
20 are bringing over?  You, John -- that's Mr. Utsch?
21 A.  Yes.
22 Q.  "-- two processors, KC and who else?"  So, in
23 other words, you're asking Mr. Smith which of the Tampa
24 employees he expects to join BBMC?
25 A.  Could be, yes.

REGENCY REPORTING SERVICE, INC. (813) 224-0224

91

1  Q.  Anything wrongful about you asking which
2  employees Mr. Smith expects to join BBMC?
3      MS. WALTER:  Object to the form.
4  A.  I don't recall the situation, and what I don't
5  know is if Reliant was getting rid of their lending
6  department altogether because -- or what was going on or
7  why they, you know, were looking to come over.
8      MS. KREITER:  Can you read the question
9     back, please.
10    (The previous question was read by the reporter.)
11 A.  No.
12 Q.  (By Ms. Kreiter)  Did Mr. King in connection with
13 the exchanges that you were having with Mr. Smith about
14 his and his branches' transition to BBMC, did Mr. King
15 ever speak up and say we shouldn't be getting
16 information about the employees, the comp, the expenses?
17     MS. WALTER:  Object to the form.
18 A.  I don't recall anything like that.
19 Q.  Go to the next one, please.  This one starts at
20 Bates 12793.
21 A.  Okay.
22 Q.  So this is an e-mail from Mr. Smith, June 8,
23 2010, subject branch manager agreement.  Do you see
24 that?
25 A.  Uh-huh.

REGENCY REPORTING SERVICE, INC. (813) 224-0224

92

1  Q.  So in 2010 -- let's take a look at Exhibit 22, so
2  the timing here is June 8, 2010.  Were you working at
3  the Money Store at this point in time?
4  A.  Looking at Exhibit 21, yeah.
5  Q.  Okay.  So on Exhibit 21 it shows you were at the
6  Money Store from May of 2007 to October of 2010.  June 8
7  is within that timeframe, so at the time of this e-mail
8  at Bates 12793 you're an employee of the Money Store?
9  A.  Uh-huh.
10 Q.  The e-mail here is from Mr. Smith -- or sorry,
11 it's to Mr. Smith, it's from a Denise Genson, Talbert
12 Management, LLC.  Do you see that?
13     MS. WALTER:  Denise.
14     MS. KREITER:  Denise.
15 A.  Yes.
16     MS. KREITER:  Thank you.
17 Q.  (By Ms. Kreiter)  Denise Genson or Genson.  Do
18 you know Denise?
19 A.  (Shakes head.)
20 Q.  Talbert Management, LLC, were you considering a
21 move to Talbert Management at this point in time?
22 A.  I don't know what Talbert is.
23 Q.  Do you know who -- you don't know who Ms. Genson
24 is?
25 A.  I don't recall who that is.

REGENCY REPORTING SERVICE, INC. (813) 224-0224