# **EXHIBIT B**

## Page 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUTUAL OF OMAHA MORTGAGE, INC.

    Plaintiff,

CASE NO: 8:22-cv-01660-TPB-JSS

Vs.

WATERSTONE MORTGAGE CORPORATION,

    Defendant.
_____/

DEPOSITION OF: **KILEY KING**

TAKEN: Pursuant to Notice by Counsel for Defendant

DATE: June 23, 2023

TIME: 1:20 p.m. to 3:30 p.m.

STENOGRAPHICALLY REPORTED BY: CHERE J. BARTON, FPR

LOCATION: Hill Ward Henderson, P.A.
101 East Kennedy Boulevard
Suite 3700
Tampa, Florida  33602

REGENCY REPORTING SERVICE, INC. (813) 224-0224

## Page 2

APPEARANCES:

COURTNEY WALTER, ESQUIRE
Mitchell Sandler LLC
1120 20th Street Northwest
Suite 725
Washington, DC  20036

MARK CARROLL, ESQUIRE  (Zoom)
Mutual of Omaha Mortgage, Inc.
100 West 22nd Street
Suite 101
Lombard, Illinois  60148

    Appeared for Plaintiff

MARIA L. KREITER, ESQUIRE (pro hac vice)
Godfrey & Kahn, S.C.
833 East Michigan Street
Suite 1800
Milwaukee, WI  53202

STEPHANIE C. ZIEBELL, ESQUIRE  (Zoom)
Waterstone Mortgage Corporation
N25W23255 Paul Road
Pewaukee, Wisconsin  53072

    Appeared for Defendant

REGENCY REPORTING SERVICE, INC. (813) 224-0224

## Page 3

I N D E X

                                      Page

EXAMINATION BY MS. KREITER          5

CERTIFICATE OF OATH               103

CERTIFICATE OF REPORTER           104

READ & SIGN LETTER TO WITNESS     105

ERRATA SHEET (forwarded upon completion)   106

REGENCY REPORTING SERVICE, INC. (813) 224-0224

## Page 4

INDEX OF EXHIBITS

                                      Page

Defendant's Exhibit No. 29          5
(NMLS Consumer Access
 Kiley David King)

Defendant's Exhibit No. 23         61
  (PREVIOUSLY MARKED)

Defendant's Exhibit No. 7          89
  (PREVIOUSLY MARKED)

REGENCY REPORTING SERVICE, INC. (813) 224-0224

61

1  where Mr. Smith was considering a move from Reliant to
2  BBMC in which Mr. Smith shared employee compensation
3  information with you and Mr. Tomalak?
4      A.  I don't recall specific conversations.
5      Q.  Assume that Mr. Smith had shared comp information
6  related to the Reliant employees, do you find that that
7  would be improper to disclose?
8          MS. WALTER:  Objection.
9      A.  If they gave him authority to do it, then yeah, I
10 think that's a different situation.
11     Q.  (By Ms. Kreiter)  Okay.  Is it your testimony
12 that all of the Reliant employees gave Mr. Smith
13 authorization to -- let me finish -- to disclose the
14 compensation information when he was considering a move
15 to BBMC?
16     A.  I don't know the answer.
17     Q.  What if the employees don't give authorization,
18 then is it improper for Mr. Smith to share that
19 information?
20         MS. WALTER:  Objection.
21     A.  I mean, possibly.
22     Q.  (By Ms. Kreiter)  Take a look at deposition
23 Exhibit 23, please.  It's in the stack in front of you.
24         MS. WALTER:  I also want to go on the
25     record to say that Ms. Kreiter produced this to me
            REGENCY REPORTING SERVICE, INC. (813) 224-0224

62

1  at 9:04 a.m. this morning, it's 39 pages that have
2  not been previously produced from Mr. Smith's
3  personal e-mail with his husky5417@yahoo.com.  And
4  so while I'm not instructing the witness to not
5  testify, I do want to preserve my right to strike
6  this testimony due to the fact that this case has
7  been pending since -- for almost a year and these
8  e-mails were never produced until after the
9  deposition was scheduled to start this morning.
10        MS. KREITER:  Okay.
11     Q.  (By Ms. Kreiter)  Mr. King, if you would turn
12 you'll see page numbers at the bottom of the exhibit,
13 WMC0 and then the page number.  Do you see it in the
14 bottom right-hand corner?
15        MS. WALTER:  I think he has the wrong
16     document.  23.
17     Q.  (By Ms. Kreiter)  Okay.  Take Exhibit 23 and then
18 do you see in the bottom right-hand corner there's what
19 we call Bates numbers, but it's a page number used in
20 litigation.  So in the bottom right-hand corner of
21 Exhibit 23, for example, you see WMC012770?
22     A.  Uh-huh.
23     Q.  Okay.  So that's the page numbering that we're
24 using.  I want you to turn to page 12779.  Let me know
25 when you're there.
            REGENCY REPORTING SERVICE, INC. (813) 224-0224

63

1      A.  I'm there.
2      Q.  Okay.  On that page there's an e-mail from you
3  with a BBMC e-mail address, do you see that, February
4  18, 2016, Kiley King, k.king@mybbmc.com.  Do you see
5  that?
6      A.  Yes.
7      Q.  And then you're writing to husky5417@yahoo.com.
8  That's Mr. Smith; correct?
9      A.  Uh-huh.
10     Q.  Copied on the e-mail is Mr. Tomalak, and you
11 write, "Smitty --" you're referring to Mr. Smith;
12 correct?
13     A.  Uh-huh.
14     Q.  "Smitty, please use the link below for new hire
15 applications.  Have your guys complete the online
16 application and upload resumes/2015 W2 and recent pay
17 stub.  Looking forward to working with you brother!"
18 And then there's a link, careers.mybbmc.com; correct?
19     A.  Yes.
20     Q.  Okay.  So in that sense in this e-mail you're
21 asking Mr. Smith to have the Tampa employees that he's
22 working with upload their employment applications to
23 BBMC; correct?
24     A.  Right.
25     Q.  And at the time of this e-mail exchange Mr.
            REGENCY REPORTING SERVICE, INC. (813) 224-0224

64

1  Tomalak is still working for Reliant; correct?
2      A.  No.
3      Q.  You believe that Mr. Tomalak was working for --
4  sorry, at the time of this e-mail exchange Mr. Smith was
5  still an employee of Reliant; correct?
6      A.  Yes, however, the situation I believe they were
7  ending their mortgage division, and this was not -- I
8  mean, I think Reliant knew this was happening.
9      Q.  What leads you to believe that?
10     A.  Because there was another branch and I think they
11 were -- if I recall correctly they were ending their
12 mortgage division and not taking any loans if I recall
13 correctly.  There was something going on with Reliant
14 that their mortgage division, it was no longer, I
15 believe, going to originate -- or something with their
16 vice president leave -- something I believe was going
17 on.
18     Q.  You don't remember what it was?
19     A.  Exactly, no, but there was something that
20 prompted them to initiate them leaving and exploring
21 other options.
22     Q.  Was Reliant not closing loans anymore?
23     A.  I believe -- I don't recall specifically, but
24 there was something where I don't know if they were not
25 taking loans at a specific time, but I believe there was
            REGENCY REPORTING SERVICE, INC. (813) 224-0224

65

1 something going on where they were not going to take
2 loans -- something -- there was something.
3    Q.  Is it your testimony that the Tampa employees
4 working for Reliant had to leave Reliant and go
5 somewhere else?
6        MS. WALTER:  Objection.
7    A.  There was something that might have been going on
8 there that Reliant was either going to exit the mortgage
9 or -- there was something.  I don't recall exactly.
10    Q.  Is Reliant still in business today?
11    A.  I have no idea.  I don't know, but there was
12 something going on there with the vice president or
13 president, if I recall correctly.  I don't know the
14 exact specifics.
15    Q.  Did Mr. Smith transfer loans from Reliant to
16 BBMC?
17    A.  I don't recall specifically.
18    Q.  Borrower information, regardless of what you
19 believe might be happening at Reliant from an economic
20 or other perspective, borrower information that is
21 provided to Reliant, do you believe that that
22 information is confidential?
23        MS. WALTER:  Objection.
24    A.  Say that again.
25        MS. KREITER:  Read it back, please.
       REGENCY REPORTING SERVICE, INC. (813) 224-0224

66

1    A.  It's confidential, yes.
2        MS. KREITER:  Let her read it back, please.
3    (The previous question was read by the reporter.)
4    A.  Depending on how it is -- confidential to the
5 point where if you don't tell a borrower you're giving
6 that information to somebody else, yes.
7    Q.  Okay.  So if the borrower consents to -- for
8 example, if the borrower had consented to Mr. Smith
9 sending the borrower's information over to BBMC there
10 would being nothing wrong with that?
11        MS. WALTER:  Objection.
12    A.  I mean, if there was a loan officer that -- yeah,
13 probably.
14    Q.  (By Ms. Kreiter)  Okay.  I think your answer
15 faded off and maybe I just didn't hear it, but my
16 question was if the borrower gives consent --
17    A.  What's the borrower --
18    Q.  Let me finish.  If the borrower gives consent to
19 the loan officer for the loan officer to send the
20 borrower's information to another mortgage company, such
21 that the borrower is in the loop, there's consent, in
22 your mind is there anything improper about sending that
23 borrower's information?
24        MS. WALTER:  Objection.
25    A.  In my opinion I would think not.
       REGENCY REPORTING SERVICE, INC. (813) 224-0224

67

1    Q.  (By Ms. Kreiter)  If you would take a look in
2 Exhibit 23 starting at page 12782, please.  Starting at
3 that page there's an e-mail from Mr. Smith to Mr.
4 Tomalak, February 17th, 2016 that relates to fixed
5 expenses.  There's a list of expenses that are disclosed
6 by Mr. Smith with respect to the Tampa branch.  Do you
7 see that?
8    A.  Do what?  Oh, yes.
9    Q.  Are the expenses disclosed by Mr. Smith to Mr.
10 Tomalak public --
11        MS. WALTER:  Objection.
12    Q.  -- in your mind?
13    A.  Public?
14    Q.  Sure.
15    A.  What do you mean by public?
16    Q.  Is this information publicly available?
17        MS. WALTER:  Objection.
18    A.  I would assume rent is and -- I mean, you can
19 probably find out rental market information.
20    Q.  (By Ms. Kreiter)  Do you understand that this is
21 not just general market rental information, but this is
22 information that Mr. Smith is paying with respect to his
23 office space?
24    A.  Mileage would be public.  I mean, water -- I
25 would think that's all public information.
       REGENCY REPORTING SERVICE, INC. (813) 224-0224

68

1    Q.  So water bills that are paid --
2    A.  I mean --
3    Q.  -- for a particular office is public?
4    A.  I don't know.  I mean, I don't know, I guess, if
5 it's private or public.
6    Q.  Where would you -- if you were going --
7    A.  I don't know the answer.
8    Q.  -- if you were going to go on the internet and
9 find out how much rent Mr. Smith was paying for the
10 Tampa office space in 2016, where would you go to look
11 for that information?
12    A.  You could probably call up a broker and find -- I
13 mean, you could probably call a broker and find out.
14    Q.  So information about --
15    A.  Specifically, no, I mean, but -- I mean, internet
16 stuff, that's all -- I mean, you can go online and say
17 what would my bill be for internet at this place.
18    Q.  Okay.  So is your testimony that the type of
19 business expense information that Mr. Smith is conveying
20 to Mr. Tomalak, that's not confidential?
21        MS. WALTER:  Objection.
22    A.  I don't know.
23    Q.  (By Ms. Kreiter)  Is there anything improper in
24 your mind about Mr. Smith while working for Reliant
25 conveying to Mr. Tomalak the type of expense information
       REGENCY REPORTING SERVICE, INC. (813) 224-0224

73

1  Q. (By Ms. Kreiter) Do you believe that the pricing
2  information of a mortgage company is confidential?
3      MS. WALTER: Objection.
4  A. I mean, certain aspects of it probably. I mean,
5  you can go online, right, and get rates from Zillow or,
6  you know -- so I mean it really depends.
7  Q. (By Ms. Kreiter) Certain aspects of pricing
8  information is not confidential and it's available
9  online; correct?
10 A. I mean, there are certain -- I mean, you can go
11 online at bankrate.com and it will pull up rates,
12 discount points for you, things like that.
13 Q. Okay. Why don't you turn to page 12792. Take a
14 look at the pricing information that Mr. Smith is
15 sharing with Mr. Tomalak there. He says, for example,
16 "I just priced it 720 credit, 5.5 paying 104 with a .875
17 bump, total of 104.875 Community First." Is that
18 information confidential?
19     MS. WALTER: Objection.
20 A. I don't know.
21 Q. (By Ms. Kreiter) Take a look at the rest of this
22 page. You would agree this reflects discussions about
23 pricing information; correct?
24 A. Right.
25 Q. Is any of the pricing information that you see on

REGENCY REPORTING SERVICE, INC. (813) 224-0224

74

1  page 12792 confidential?
2      MS. WALTER: Objection.
3  A. I don't know.
4  Q. (By Ms. Kreiter) Is any of that information, the
5  pricing information, that's available in the public
6  record?
7  A. This?
8  Q. The information --
9  A. What public record?
10 Q. The information on page 12792, is the pricing
11 information shown on that page publicly available;
12 A. Some of it.
13 Q. What information is publicly available?
14 A. Probably the rates.
15 Q. Okay. Give me a specific number. When you say
16 rates I'm not sure.
17 A. Well, if you go online and you put in your credit
18 score there will be -- put in a loan scenario there will
19 be -- sometimes rates will show up.
20 Q. So the numbers that are shown on 12792 where
21 you're seeing the rates that you think are publicly
22 available, tell me by the numbers.
23 A. Like --
24 Q. Let me do this --
25 A. What does 5.5 mean, I mean --

REGENCY REPORTING SERVICE, INC. (813) 224-0224

75

1  Q. I'm going to hand you a pen. On that page I want
2  you to circle everything that you think is publicly
3  available.
4      MS. WALTER: For the record this e-mail
5  exchange is from 2010.
6  Q. Go ahead.
7  A. If you put your --
8  Q. Not my question. Take the pen and circle any
9  information that you believe is public that you see on
10 page 12792.
11 A. I would say anywhere where you put a credit score
12 and interest rate in. I'm not going to --
13 Q. Can you circle it?
14 A. No.
15 Q. You're refusing to circle it?
16 A. Yeah. I'm just telling you, there's certain
17 things -- I just told you, you can go online, put in
18 your credit score, you can put in a scenario, single
19 family house, what your home is worth and they'll spit
20 out a rate for you. That's basically kind of what this
21 is.
22 Q. Great. Do you understand that this case is about
23 allegations that Mr. Smith, Mr. Hutto and Mr. Wolf
24 shared confidential information of Mutual with
25 Waterstone? And here I see Mr. Smith sharing

REGENCY REPORTING SERVICE, INC. (813) 224-0224

76

1  confidential information or what may or may not be --
2  A. I don't know if it is.
3      MS. WALTER: Also --
4  Q. Okay. So if you --
5      MS. WALTER: No, Maria, don't interrupt me.
6  You're asking him about an e-mail exchange from 2010
7  that he's not a party to.
8      MS. KREITER: So what?
9      MS. WALTER: I do not want you to continue
10 to tell him what to do. You're entitled to ask for
11 his testimony, he is not required to do what you
12 want him to do.
13     MS. KREITER: The witness testified that
14 information shown on this page is publicly
15 available. I'm asking him to say what he's talking
16 about.
17 A. Yeah, so now that I see that my name is not on
18 this, I don't know what the context of this e-mail was.
19 Q. (By Ms. Kreiter) Do you see any information
20 listed on 12792 that you're comfortable testifying is
21 publicly available?
22 A. I don't know what the context of this e-mail was.
23 I'm not on it.
24     MS. WALTER: He already responded to your
25 question.

REGENCY REPORTING SERVICE, INC. (813) 224-0224