## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MUTUAL OF OMAHA
MORTGAGE, INC.

               Plaintiff,

v.

WATERSTONE MORTGAGE
CORPORATION,

            Defendant.

Case No. 8:22-cv-01660-AEP

## JOINT PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Case Management and Scheduling Order (ECF No. 34), and Federal Rule of Civil Procedure 51, Plaintiff Mutual of Omaha Mortgage ("Mutual") and Defendant Waterstone Mortgage Corporation ("Waterstone"), by and through their undersigned counsel, jointly propose the jury instructions listed below. In accordance with the Court's instructions in the Case Management and Scheduling Order (sec. 7), each instruction states whether it is jointly proposed or proposed by only one of the parties, includes citations to supporting authority, and notes whether the instruction is objected to, along with the basis for any such objection.

All proposed instructions are based on the parties' present anticipation of the evidence. The parties reserve the right to challenge, dispute, and appeal the propriety of any instructions submitted to the jury and to modify or withdraw these instructions

1

or offer different instructions, based on the trial evidence and future Court rulings, including but not limited to the Court's rulings on any pending motions *in limine*.

Dated:  February 13, 2025.

s/ *Ari Karen*

Ari Karen (admitted *pro hac vice*)
Christopher L. McCall (admitted *pro hac vice*)
Courtney E. Walter
Arielle Stephenson (admitted *pro hac vice*)
MITCHELL SANDLER LLC
1120 20th Street N.W., Suite 725
Washington, D.C.  20036
akaren@mitchellsandler.com
cmccall@mitchellsandler.com
cwalter@mitchellsandler.com
astephenson@mitchellsandler.com
(202) 886-5292

John A. Schifino
Florida Bar No. 0072321
Daniel P. Dietrich
Florida Bar No. 934461
Gregory L. Pierson
Florida Bar No. 123905
GUNSTER, YOAKLEY & STEWART, P.A.
401 East Jackson Street, Suite 1500
Tampa, Florida 33602
jschifino@gunster.com
ddietrich@gunster.com
gpierson@gunster.com
Telephone: (813) 228-9080

*Attorneys for Plaintiff Mutual of Omaha Mortgage*

s/ *Maria L. Kreiter*

Maria Kreiter (admitted *pro hac vice*)
Emma Jewell (admitted *pro hac vice*)
Xavier O. Jenkins (admitted *pro hac vice*)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*

## PRELIMINARY INSTRUCTIONS

### Joint Instruction

### General Preliminary Instruction

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

### What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

**What is not evidence:**

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

4

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

**Credibility of witnesses:**

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- · the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- · the witness's memory;

- · the witness's manner while testifying;

- · any interest the witness has in the outcome of the case;

- · any bias or prejudice the witness may have;

- · any other evidence that contradicts the witness's testimony;

- · the reasonableness of the witness's testimony in light of all the evidence; and

- · any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Description of the case:**

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions:

The Plaintiff in this case, Mutual of Omaha Mortgage ("Mutual"), is a residential mortgage company. The Defendant, Waterstone Mortgage Corporation ("Waterstone"), is also a mortgage company. Mutual formerly operated two of its mortgage branches in Florida: one in Tampa, and one in Ormond Beach. In 2022, the managers from the Tampa and Ormond Beach branches, along with some of the employees who worked at those branches, resigned from Mutual to work at Waterstone. Then, in August 2022, Mutual filed this lawsuit against Waterstone, alleging that: (1) Waterstone misappropriated [a] confidential trade secret(s) (2) that Waterstone had tortiously interfered with Mutual's contracts with its former branch managers and employees; and (3) that Waterstone had aided and abetted the former branch managers in breaching their fiduciary duties to Waterstone. Those claims will be explained to you later in these instructions and throughout the case. Waterstone denies the claims, and asserts several affirmative defenses, which I will also explain to you later in these instructions.

**Burden of proof:**

Mutual has the burden of proving its case by what the law calls a "preponderance of the evidence," or sometimes referred to as the "the greater weight

of the evidence."[1] Those two phrases mean the same thing and may be used interchangeably.[2] Both of those phrases mean Mutual must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring Mutual and the evidence favoring Waterstone on opposite sides of balancing scales, Mutual needs to make the scales tip to its side. If Mutual fails to meet this burden, you must find in favor of Waterstone.

To decide whether any fact has been proved by a preponderance of the evidence, or by the greater weight of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence and by the greater weight of the evidence.

On certain issues, called "affirmative defenses," Waterstone has the burden of proving the elements of a defense by a preponderance of the evidence or the greater weight of the evidence. I'll instruct you on the facts Waterstone must prove for any affirmative defense. After considering all the evidence, if you decide that Waterstone

---

[1] Mutual's three state law claims must be proven by the "greater weight of the evidence," which is synonymous with "preponderance of the evidence." *Sprayberry v. Sheffield Auto & Truck Serv., Inc.*, 422 So. 2d 1073, 1074 (Fla. Dist. Ct. App. 1982) (the burdens of "greater weight of the evidence" and "preponderance of the evidence" are synonymous). *See also* PREPONDERANCE OF THE EVIDENCE, Black's Law Dictionary (11th ed. 2019) (defining "preponderance of the evidence as the "greater weight of the evidence"; burden in most civil trials)

[2] *Id.*

has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

**Conduct of the jury:**

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

8

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

**<u>Taking notes</u>:**

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mutual will present its witnesses and ask them questions. After Mutual questions the witness, Waterstone may ask the witness questions – this is called "cross-examining" the witness. Then Waterstone will present its witnesses, and Mutual may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

**SOURCE:**  Eleventh Circuit Pattern Jury Instruction § 1.1; *Sprayberry v. Sheffield Auto & Truck Serv., Inc.*, 422 So. 2d 1073, 1074 (Fla. Dist. Ct. App. 1982) (the burdens of "greater weight of the evidence" and "preponderance of the evidence" are synonymous). *See also* PREPONDERANCE OF THE EVIDENCE, Black's Law Dictionary (11th ed. 2019) (defining "preponderance of the evidence as the "greater weight of the evidence"; burden in most civil trials).

**OBJECTIONS:**  Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

10

**Joint Instruction**

**Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

11

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 1.4.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 1.5.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

# TRIAL INSTRUCTIONS

## Joint Instruction

## Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**SOURCE:**  Eleventh Circuit Pattern Jury Instruction § 2.1.

**OBJECTIONS:**  Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Use of Interrogatories**

You may hear answers that Mutual or Waterstone gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, the parties gave those answers in writing while under oath.

You must consider the parties' answers to those interrogatories as though they gave the answers on the witness stand.

**SOURCE:**  Eleventh Circuit Pattern Jury Instruction § 2.6.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

## **BASIC INSTRUCTIONS**

### **Joint Instruction**

### **Agents of Corporation**

In this case, both Mutual and Waterstone are corporations. A corporation may act only through natural persons as its agents or employees. In general, agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation, or within the scope of their duties as employees or agents of the corporation.

In order for Waterstone to be found liable, Mutual must show that:

    1.  Waterstone was acting through agents or employees; and

    2.  The agents or employees were acting within the scope of their employment or agency.

Ordinarily, any act a person can do may be done by directing another person, or "agent" to do on his or her behalf. The person who directs the agent is called the principal. "Agent" means any person who acts on behalf of the principal, with the knowledge and consent of the principal, and whose actions are controlled by the principal or are subject to the principal's right of control.

In order to establish that someone was an acting within the scope of their agency for Waterstone, Mutual must show that:

    1.    At the time of the incident, the agent was performing the kind of activity they were directed to perform;

2.    The activity was being performed substantially within the time and space limits of their agency; and

3.    The performance of the activity was motivated, at least in part, to further Waterstone's interests.

If an agent or principal acts to serve his or her own interest as well as the interests of Waterstone, as long as there is an intent to serve Waterstone's interests, the agent acts within the scope of his agency with the company. This is so even if the agent's intent to serve their own interest is greater than their intent to serve Waterstone's interests.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 108:01 (6th ed.) (Agents of corporation); *Wilshire Ins. Co. v. Casablanca on the Bay, Inc.*, Civil Action No. 15-21644-Civ, 2017 WL 3491959 (S.D. Fla. Aug. 14, 2017) (approved instructions on agency, found on docket ECF 154).

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

## [MUTUAL'S PROPOSED INSTRUCTION]

### Ratification

Mutual claims Waterstone is liable for the acts of individuals acting as agents or employees. A corporation is legally responsible for any act or omission approved by the corporation. This is called "ratification." A corporation may subsequently ratify its agent or employee's act, even if originally unauthorized, and such ratification means that the action was authorized by the corporation, and the corporation is liable. In order to prove ratification, Mutual must show that:

1. Waterstone either expressly approved the act or impliedly approved the act by taking actions inconsistent with an intent to avoid the act; and

2. Waterstone had full knowledge of all material facts, or was willfully ignorant; or purposely refrained from seeking information, or that Waterstone intended to adopt the unauthorized acts.

**SOURCE:** *Banyan Corp. v. Schucklat Realty, Inc.*, 611 So. 2d 1281, 1282 (Fla. 2d DCA 1992) ("A principal may subsequently ratify its agent's act, even if originally unauthorized, and such ratification relates back and supplies original authority."); *Oxford Lake Line v. First Nat'l Bank*, 40 Fla. 349, 360-61 (1898) ("Whenever he is sought to be held liable on the ground of ratification, either express or implied, it must be shown that he ratified upon full knowledge of all material facts, or that he was willfully ignorant; or purposely refrained from seeking information, or that he intended to adopt the unauthorized act at all events, under whatever circumstances."; *Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. Dist. Ct. App. 2001) (If a party knows of a fraud, does not reject it, and takes any material act inconsistent with an intent to avoid it or delays in asserting any remedial rights, then that party ratifies the fraud.)

**OBJECTIONS:** Waterstone objects to this instruction on the basis that there is a standard jury instruction for ratification: 3 Fed. Jury Prac. &

Instr. § 108:02 (6th ed.). Mutual attempts to change the standard for this doctrine and dilute the well-established knowledge requirement embodied by the standard federal instruction with Mutual relying upon citations that are not recent (the *Oxford* case is from 1898) and that involve theories of liability not at issue, such as fraud. Further, Waterstone does not agree this doctrine will come into play based on the known evidence. To the extent any instruction is appropriate, Waterstone proposes the standard instruction that follows.

## [WATERSTONE'S PROPOSED INSTRUCTION]
### Ratification

Mutual claims Waterstone is liable under the employment contracts at issue in this case because Waterstone ratified the acts of its employees, who were purporting to act as Waterstone's agents. Before Waterstone may be charged with liability by way of ratification it must appear Waterstone willingly agreed to be bound while in the possession of full and complete knowledge of the transaction. It is not enough that Waterstone had information that would have led it to full and complete knowledge if Waterstone did not in fact have that knowledge.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 108:02 (6th ed.).

**NOTE:** Waterstone does not agree this doctrine will come into play based on the known evidence. To the extent any instruction is appropriate, Waterstone proposes the above standard instruction.

**OBJECTIONS:** Mutual objects to this instruction as it confuses ratification in advance of an act and ratification after an act. Waterstone's instruction is likely to cause confusion to the jury as the issues in this case relate to ratification after an act has occurred. Moreover, this instruction does not address that ratification may be express or implied, as delineated by Florida law. *Oxford Lake Line v. First Nat'l Bank*, 40 Fla. 349, 360-61 (1898) (noting ratification may be express or implied). Finally, the instruction is inapplicable as drafted because ratification is not applicable to only breach of contract, but rather all the claims in this case.

**Joint Instruction**

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.3.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

21

**Joint Instruction**

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**SOURCE:**  Eleventh Circuit Pattern Jury Instruction § 3.4.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.5.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.6.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Responsibility for Proof – Plaintiff's Claims – Preponderance of the Evidence**

In this case it is the responsibility of the Plaintiff, Mutual, to prove every essential part of its claims by a "preponderance of the evidence" or by the "greater weight of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" and "greater weight of the evidence" mean the same thing. Those terms simply mean an amount of evidence that is enough to persuade you that Mutual's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence or by the greater weight of the evidence, you should find against the Plaintiff, Mutual.

Mutual has alleged separate claims in this case, and you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence or by the greater weight of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

> **SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.7.1; *Sprayberry v. Sheffield Auto & Truck Serv., Inc.*, 422 So. 2d 1073, 1074 (Fla. Dist. Ct. App. 1982) (the burdens of "greater weight of the evidence" and "preponderance of the evidence" are synonymous). *See also* PREPONDERANCE OF THE EVIDENCE, Black's Law Dictionary (11th ed. 2019) (defining "preponderance of the evidence as the "greater weight of the evidence"; burden in most civil trials).

25

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

## Joint Contested Instruction

### Responsibility for Proof – Affirmative Defense – Preponderance of the Evidence/Greater Weight of the Evidence

In this case, the Defendant, Waterstone Mortgage Corporation, asserts several affirmative defenses:

(1)    Mutual failed to mitigate its damages.[3]

(2)    Mutual's material breach of the employment agreements it alleged Waterstone tortiously interfered with, including failure to compensate the former employees.[4]

(3)    Mutual's claims are barred by an employee's right to engage in permissible preparatory measures when changing employers.

Even if the Plaintiff, Mutual, proves its claims by a preponderance of the evidence, or the greater weight of the evidence (those standards mean the same thing), the Defendant, Waterstone, can prevail in this case if it proves its affirmative defenses by a preponderance of the evidence or the greater weight of the evidence.

Because there is more than one affirmative defense involved, you should consider each one separately.

---

[3] Mutual objects to the inclusion of an instruction regarding mitigation of damages as an affirmative defense on the grounds consistent with its concurrently filed Motion in Limine seeking to exclude the affirmative defense of mitigation of damages. There is no evidence in the record to support that Mutual failed to mitigate any of its damages.

[4] The Court granted Mutual's Motion in limine to exclude evidence of Mutual's breach of contract on June 4, 2022. D.E. 188 (Mutual's Motion in limine); D.E. 202 (Court's order "granting Plaintiff's motion [regarding] the exclusion of evidence of Mutual's breach of contract."). Mutual therefore objects to the inclusion of an instruction regarding breach of the employment agreements as an affirmative defense on the grounds consistent with its Motion in Limine seeking to exclude evidence of Mutual's alleged non-payment of commissions (D.E. 188). The Court granted the motion without prejudice, and stated that it would revisit the order if, at trial, there is evidence demonstrating a breach by Mutual *before* the alleged unlawful conduct of Waterstone. (D.E. 205 at 9:13-19). Waterstone seeks to include this instruction if the trial evidence supports doing so.

I caution you that Waterstone does not have to disprove Mutual's claims but if Waterstone raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence or greater weight of the evidence.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.7.2; *Sprayberry v. Sheffield Auto & Truck Serv., Inc.*, 422 So. 2d 1073, 1074 (Fla. Dist. Ct. App. 1982) (the burdens of "greater weight of the evidence" and "preponderance of the evidence" are synonymous). *See also* PREPONDERANCE OF THE EVIDENCE, Black's Law Dictionary (11th ed. 2019) (defining "preponderance of the evidence as the "greater weight of the evidence"; burden in most civil trials).

**OBJECTIONS:** Jointly proposed instruction other than Mutual objects to the inclusion of affirmative defense 1 and 2, as noted in footnotes 3 and 4.

**Joint Instruction**

**Duty To Deliberate When Only the Plaintiff Claims Damages**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.8.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

29

## [WATERSTONE'S PROPOSED INSTRUCTION]

### Damages – No Double Counting / No Duplicative Damages

[Question (insert number) on the verdict form asks you (insert, as applicable)].

Mutual asserts a number of different legal theories that relate to the same alleged loss: future lost profit damages due to the departure of its Tampa and Daytona branches. If you award Mutual damages for more than one of its claims, be certain to compensate Mutual **only once** for the loss that Mutual proves it is entitled to.  Do not award Mutual lost profit damages for different theories that would be duplicative.

> **SOURCE:** *Chmielewski v. City of St. Pete Beach*, No. 8:13-CV-3170-T-27MAP, 2016 WL 4487867, at *3 (M.D. Fla. Aug. 24, 2016), aff'd, 890 F.3d 942, 27 Fla. L. Weekly Fed. C 889, 2018 WL 2225053 (11th Cir. 2018) collecting the following authorities:  *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir. 2009) ("'[t]he courts can and should preclude double recovery by an individual.' ") (*quoting Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333, 100 S.Ct. 1698, 1708, 64 L.Ed.2d 319 (1980)); White v. United States, 507 F.2d 1101, 1103 (5th Cir. 1975) ("It is clear that no duplicating recovery of damages for the same injury may be had,"); *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1079 (10th Cir. 2008) ("Where, however, the jury verdict cannot be explained by evidence in the record and duplication is apparent, "the court, either sua sponte or on motion of a party, should reduce the judgment by the amount of the duplication," and thereby prevent double recovery.") (citation omitted); *Garshman Co. v. Gen. Elec. Co.*, 176 F.3d 1, 6 (1st Cir. 1999) (where the verdict form is not precise enough to allow the jury to consider the possibility of duplicative damages, the trial court has the authority to determine whether the jury's damages findings were duplicative).

> **OBJECTIONS:** Mutual objects to this instruction because it is not based on a pattern instruction and the issue of double counting is already addressed in a subsequent instruction entitled "Misappropriation of

Trade Secrets – Damages – Compensatory." Any issues that arise from purported double counting can be handled through the verdict form questions provided to the jury.

**Joint Instruction**

**Misappropriation of Trade Secrets – Summary of Claim**

Mutual claims that Waterstone misappropriated trade secrets belonging to Mutual. A list of the alleged trade secrets ("Trade Secrets") Mutual claims were misappropriated are listed below[5]:

<u>Borrower Document Compilations</u>

1. Thompson Borrower Data

2. Calle Borrower Data

3. Columbis Borrower Data

4. Tyson Borrower Data

5. Hennessy Borrower Data

6. Byers Borrower Data

7. Ryan Borrower Data

8. Brown Borrower Data

9. Gipson Borrower Data

10. Castaneda Borrower Data

11. Tariq Borrower Data

12. Kugleman Borrower Data

13. Trejo Borrower Data

14. Kemp Borrower Data

---

[5] Waterstone's position is that the list of Trade Secrets is subject to change based on the trial evidence and pending the outcome of Waterstone's Renewed Motion for Partial Summary Judgment (D.E. 256.)

15. A. Smith Borrower Data

16. D'Ettore Borrower Data

17. Mcintosh Borrower Data

   Customer Lists

18. Friebus Customer List

19. Tampa Branch Customer List

20. Stalls Customer List

Profit and Loss Statements

21. Tampa Profit & Loss Statement

22. Daytona Profit & Loss Statement

To prove its claim, Mutual must prove the following facts by a preponderance of the evidence:

1: Mutual owns a valid trade secret; and

2: That the trade secret relates to a product or service used in, or intended for use in, interstate commerce; and

3: Waterstone misappropriated that trade secret.

**SOURCE:** Modified from Eleventh Circuit Pattern Jury Instruction § 11.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Misappropriation of Trade Secret – Plaintiff's Property**

[Question (insert number) on the verdict form asks you (insert, as applicable)].[6]

Mutual claims it owns Trade Secrets. To prove that Mutual owns these Trade Secrets, Mutual must prove that the alleged Trade Secret(s) is/are Mutual's property.

**SOURCE:** Modified from Eleventh Circuit Pattern Jury Instruction § 11.1 (2024).

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

---

[6] The Parties agree that for clarity and ease of reference for the Jury, a reference correlating the instruction to the applicable question on the verdict form is appropriate. Given that the verdict forms differ between the parties, the necessary language corresponding to the verdict form needs to be determined. This agreement is incorporated throughout these instructions.

**Joint Instruction**

**Misappropriation of Trade Secret – Definition of Trade Secret**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Definition of Trade Secret.**

A trade secret may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information. A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes. A trade secret may be tangible or intangible. A trade secret does not have to be stored, compiled, or memorialized. But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

To qualify as a trade secret, Mutual, must prove that the alleged Trade Secret(s) is/are not generally known to another person who can obtain economic value from the disclosure or use of the information.

**SOURCE:** Modified from Eleventh Circuit Pattern Jury Instruction § 11.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Misappropriation of Trade Secret – Not Readily Discoverable**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

Mutual must prove that the Trade Secret(s) is/are not readily discoverable through proper means. To qualify as a trade secret, Mutual must prove that another person cannot readily discover the Trade Secret through proper means.

> **SOURCE:** Modified from Eleventh Circuit Pattern Jury Instruction § 11.1; Fla. Std. Jury Instr. (Contract & Business) § 416.41.

> **OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Misappropriation of Trade Secret – Independent Economic Value**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

To qualify as a trade secret, Mutual must prove that the Trade Secret(s) derive(s) independent economic value, actual or potential, from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

> **SOURCE:**  Modified from Eleventh Circuit Pattern Jury Instruction § 11.1.

> **OBJECTIONS:**  Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Misappropriation of Trade Secret – Reasonable Steps to Keep Trade Secrets Secret**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

To qualify as a trade secret, Mutual must have taken reasonable steps to keep

the Trade Secret, secret.

**SOURCE:**  Modified from Eleventh Circuit Pattern Jury Instruction § 11.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Misappropriation of Trade Secrets – Definition of Interstate Commerce**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Definition of "Interstate Commerce."**

Use or intended use of the product or service in interstate commerce means that the product or service involves travel, trade, transportation, or communication between a place in one state and a place in another state.

> **SOURCE:**  Modified from Eleventh Circuit Pattern Jury Instruction § 11.1.

> **OBJECTIONS:**  Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Misappropriation of Trade Secrets – Definition of Misappropriation**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

For Mutual to prove that Waterstone misappropriated a Trade Secret(s) Mutual must prove the following by a preponderance of the evidence:

1. Waterstone acquired, disclosed, or used the Trade Secret without Mutual's express or implied consent; and

    i. Waterstone knew or should have known that the Trade Secret were derived from or through a third person who used improper means to acquire the trade secret;

    ii. were acquired under circumstances giving rise to a duty to maintain the secrecy of the Trade Secret, or

    iii. were derived from or through a third person who was under a duty to maintain the secrecy of or limit the use of the Trade Secret.

"Improper means" may include theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, and espionage through electronic or other means.

Each act of acquiring, disclosing, or using trade secrets may constitute a separate act of misappropriation.

"Express consent" is consent that is clearly and unmistakably stated. "Implied consent" is consent that is inferred from one's conduct rather than from one's direct expression.

**SOURCE:** Modified from Eleventh Circuit Pattern Jury Instruction § 11.1.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**[WATERSTONE'S PROPOSED INSTRUCTION]**

**Misappropriation of Trade Secrets – Causation**

[Question (insert number) on the verdict form ask you (insert, as applicable)].

A plaintiff alleging trade secret misappropriation must prove "proximate causation" to receive damages. Here, Mutual alleges Waterstone misappropriated its [Trade Secrets] and that doing so caused Mutual to lose its Tampa and Daytona branches and the associated future profits of those branches. To award Mutual lost profit damages based on its trade secret misappropriation claims, Mutual must prove that it was Waterstone's trade secret misappropriation that caused the branches to depart. Put another way, you must decide whether the lost profit damages would have occurred but for Waterstone misappropriating the alleged trade secrets.

> **SOURCE:** 18 U.S.C. § 1836(b)(3)(B)(i) (authorizing award for "actual loss caused by the misappropriation"); *Cap. City Home Loans, LLC v. Darnell*, No. 4:21-CV-228-AW-MJF, 2023 WL 4169614, at *1 (N.D. Fla. May 11, 2023), aff'd, No. 23-12066, 2024 WL 4534567 (11th Cir. Oct. 21, 2024) (citation omitted) (a FUTSA and DTSA plaintiff must "show that the asserted damages would not have been suffered 'but for' the misappropriation"); *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1277 (11th Cir. 2021) (*citing Premier Lab Supply, Inc. v. Chemplex Indus., Inc.,* 94 So.3d 640, 644–46 (Fla. 4th DCA 2012) (per curiam)) (a party can only recover "those losses that are 'caused by' misappropriation."); *see also In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 690 (Bankr. M.D. Fla. 2010), aff'd sub nom. *Maxxim Med., Inc. v. Pro. Hosp. Supply, Inc.*, No. 8:10-CV-2577-T-17, 2021 WL 11701868 (M.D. Fla. Sept. 21, 2021) (a party "must prove that the alleged violation of the UTSA caused it damages."); *see Pegasystems Inc. v. Appian Corp.*, 81 Va. App. 433, 904 S.E.2d 247 (2024) (reversing $2 billion dollar trade secret misappropriation verdict due to instruction improperly relieving plaintiff of its burden to establish causation); The Sedona Conference, Commentary On Monetary Remedies In Trade Secret Litigation, 24 SEDONA CONF. J. 349 at pg. 372 (2023) ("One underlying theory of

lost profits damages is that 'but for' the defendant's misappropriation of trade secrets, the plaintiff would have achieved a higher level of profits by making all or some of the sales diverted by the defendant.")

**OBJECTION:** Mutual objects to the inclusion of this instruction because it does not conform to the pattern instructions. Moreover, the instruction introduces conflicting concepts of causation including "but for" and proximate cause that may tend to confuse the jury. Though it is correct that proximate cause is the appropriate causal standard for damages under the DTSA, there is no requirement of but for causation to prevail under the DTSA.

**[MUTAL'S PROPOSED INSTRUCTION]**

**Misappropriation of Trade Secrets – Causation**

[Question (insert number) on the verdict form ask you (insert, as applicable)].

A Plaintiff claiming misappropriation of trade secrets must prove that the misappropriation was a substantial factor in and the proximate cause of the Plaintiff's damages.

> **SOURCE:** 18 U.S.C. § 1836(b)(3)(B)(i) (authorizing award for "actual loss caused by the misappropriation"); *see also ChromaDex, Inc. v. Elysium Health, Inc.*, 2019 WL 7166056, at *1 (C.D. Cal. 2019) (internal citation omitted) ("Damages are caused by trade secret theft if the trade secret theft was a 'substantial factor' in causing the damages" and the "substantial factor standard generally produces the same results as does the but for rule of causation, but it also reaches beyond it to address other situations, such as those involving independent or concurrent causes in fact.") (internal citations and quotations omitted); *Univ. of Miss. Med. Ctr. v. Sullivan*, No. 3:19-CV-459-CWR-LGI, 2022 WL 304835, at *3 (S.D. Miss. Feb. 1, 2022) ("traditional tort principles" including "proximate cause" apply to DTSA misappropriation claims); *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017) (finding that the "record contains sufficient evidence to enable a factfinder to conclude that, but for [defendant's conduct], [plaintiff] would have been hired […]" but not holding that but for causation is required in trade secrets misappropriation claims).

> **OBJECTION:** Waterstone objects to Mutal's proposed instruction on the grounds that but for causation is required for purposes of causation under the Defendant Trade Secrets Act (see its proposed instruction above and the cited authorities). Waterstone suggests briefing on this issue if the Court deems appropriate.

**[WATERSTONE'S PROPOSED INSTRUCTION]**

**Misappropriation of Trade Secrets – Affirmative Defense: Mitigation of Damages**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Mitigation of Damages.**

If Waterstone misappropriated Mutual's Trade Secrets, Mutual is not entitled to recover for those damages which Waterstone prove Mutual could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Mutual's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or burden, or humiliation.

**SOURCE:** Fla. Std. Jury Instr. (Contract & Business) § 504.9.

**OBJECTIONS:** Mutual objects to the inclusion of an instruction regarding mitigation of damages as an affirmative defense on the grounds consistent with its concurrently filed Motion in Limine seeking to exclude the affirmative defense of mitigation of damages. There is no evidence in the record to support that Mutual failed to mitigate any of its damages.

**Joint Instruction**

**Misappropriation of Trade Secrets – Damages – Compensatory**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Trade Secrets Damages.**

If Mutual has not proven its claim for misappropriation of trade secrets, your verdict must be for Waterstone on this claim, and you do not consider damages.

If Mutual has proved its claim for misappropriation of trade secrets, you must decide the issue of damages.

To the extent that it is not duplicative (that is, double counting), you may award the amount of Mutual's actual damages caused by Waterstone's misappropriation of the Mutual Trade Secret(s).

**SOURCE:**  Eleventh Circuit Pattern Jury Instruction § 11.4.

**OBJECTIONS:**  Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**[MUTUAL'S PROPOSED INSTRUCTION]**

**Trade Secrets- Damages - Exemplary**

If you find that Waterstone has engaged in willful and malicious misappropriation of a Mutual Trade Secrets, you may award "exemplary" damages under the federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act. Exemplary damages are damages meant to make an example of Waterstone.

Under the federal Defend Trade Secrets Act and the Florida Uniform Trade Secrets Act, exemplary damages may be awarded in an amount not more than two (2) times the amount awarded for compensatory damages (i.e. the amount awarded for actual damages).

Under the federal Defend Trade Secrets Act and Florida Uniform Trade Secrets Act, additional exemplary damages constituting reasonable attorney's fees to Mutual may be awarded. If you decide that the defendant is liable for attorney's fees, the court will determine the amount.

> **SOURCE:** Adapted from Eleventh Circuit Pattern Jury Instructions, Civil Cases (rev. Mar. 2022), § 11.5 (Trade Secrets – Damages - Exemplary); Florida Statutes section 688.004(2).

> **OBJECTIONS:** Waterstone objects to this instruction on the basis that there is insufficient evidence in the record to support an instruction for exemplary damages.

**Joint Contested Instruction**

**Tortious Interference – Summary of Claim**

Mutual claims that Waterstone intentionally and unjustifiably interfered with Mutual's employment contracts with its former managers [and employees (*Proposed by Mutual*)], which caused harm to Mutual. To prove its claim, Mutual must prove the following facts by the greater weight of the evidence:

(1) Mutual had enforceable contracts with its former managers [and employees (*Proposed by Mutual*)];

(2) Waterstone had knowledge of Mutual's contracts with its former managers [and employees (*Proposed by Mutual*)];

(3) Waterstone intentionally interfered with Mutual's rights under those contracts;

(4) Waterstone's interference was not justified or privileged; and

(5) Waterstone's interference caused Mutual damages.

[Waterstone denies that claim, and also pursues two affirmative defenses: (1) Mutual materially breached its employment contract[s] with its former managers and (2) Mutual failed to mitigate its damages. (*Proposed by Waterstone*)].[7]

---

[7] Mutual objects to the inclusion of an instruction regarding mitigation of damages as an affirmative defense on the grounds consistent with its concurrently filed Motion in Limine seeking to exclude the affirmative defense of mitigation of damages. There is no evidence in the record to support that Mutual failed to mitigate any of its damages.

As to the affirmative defense that Mutual materially breached its employment contracts (proposed by Waterstone), the Court granted Mutual's Motion in Limine to exclude evidence of Mutual's breach of contract on June 4, 2022. D.E. 188 (Mutual's Motion in Limine); D.E. 202 (Court's order "granting Plaintiff's motion [regarding] the exclusion of evidence of Mutual's breach of contract."). Mutual therefore objects to the inclusion of an instruction regarding breach of the employment agreements as an affirmative defense on the grounds consistent with its Motion in Limine seeking to exclude evidence of Mutual's alleged non-payment of

[Mutual must prove this claim, and Waterstone must prove its affirmative defense(s), by the greater weight of the evidence. I will now define some of the terms you will use in deciding this case. (*Proposed by Waterstone*)]

> **SOURCE:** Modified from Fla. Std. Jury Instr. (Civil) § 408.2; *Int'l Constr. Prod., LLC v. Ring Power Corp.*, No. 22-10231, 2023 WL 7127515, at *10 (11th Cir. Oct. 30, 2023) (setting forth elements of tortious interference claim under Florida law) (quoting *Mariscotti v. Merco Grp. At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005)).

> **OBJECTIONS:** Joint instruction other than (1) Mutual objects to the bracketed items proposed by Waterstone regarding affirmative defenses as noted in footnotes 7 and 8 and (2) the parties disagree as to whether the tortious interference claims pertain to the contracts of only the former managers (Waterstone's position) or the former managers as well as the employees (Mutual's position).

---

commissions (D.E. 188). The Court granted the motion without prejudice, and stated that it would revisit the order if, at trial, there is evidence demonstrating a breach by Mutual *before* the alleged unlawful conduct of Waterstone. (D.E. 205 at 9:13-19). Waterstone seeks to include this instruction if the trial evidence supports doing so.

**Joint Instruction**

**Tortious Interference – Greater Weight of the Evidence**

Mutual must prove its claim by the "greater weight of the evidence." As I explained to you previously, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case. This phrase has the same meaning as "preponderance of the evidence."

> **SOURCE:** Modified from Fla. Std. Jury Instr. (Civil) § 408.3; *Sprayberry v. Sheffield Auto & Truck Serv., Inc.*, 422 So. 2d 1073, 1074 (Fla. Dist. Ct. App. 1982) (the burdens of "greater weight of the evidence" and "preponderance of the evidence" are synonymous). *See also* PREPONDERANCE OF THE EVIDENCE, Black's Law Dictionary (11th ed. 2019) (defining "preponderance of the evidence as the "greater weight of the evidence"; burden in most civil trials).

> **OBJECTIONS:** Neither party objects to this instruction, and, accordingly, jointly propose that the instruction be read to the jury.

**Joint Contested Instruction**

**Tortious Interference – Interference with Business Relations or Contract Terminable at Will**

The issues for you to decide on Mutual's claim against Waterstone are whether Waterstone intentionally and unjustifiably interfered with a contract between Mutual and its former managers [and employees (*Proposed by Mutual*)]; and if so, whether such interference was the legal cause of loss or damage to Mutual.

To be liable for interfering with the contractual relationship between Mutual and its former managers [and employees (*Proposed by Mutual*)], Waterstone must have acted intentionally to interfere with Mutual's contractual relationship[s]. A party interferes with a contractual relationship between two or more other persons if it induces or otherwise causes one of them to breach the contract. Therefore, Waterstone must have known of the existence of the contractual relationship, and it must have either intended to cause the breach of the relationship or acted knowing that its actions were likely to cause that result.

Mutual does not have to prove that it had an enforceable contract with its former managers [and employees (*Proposed by Mutual*)], if it can prove that the former managers [and employees (*Proposed by Mutual*)] would have complied with the contractual relationship if Waterstone had not properly interfered.

**SOURCE:** Modified from Fla. Std. Jury Instr. (Civil) § 408.6.

**OBJECTIONS:** Joint instruction other than Waterstone objects to the bracketed items proposed by Mutual as the parties disagree as to whether the tortious interference claims pertain to the contracts of only the former managers or the former managers as well as the employees.

**Joint Contested Instruction**

**Tortious Interference – Knowledge; Intentional Interference**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Intentional Interference.**

To be liable for interfering with the contractual relationship between Mutual and its former managers [and employees (*Proposed by Mutual*)], Waterstone must have acted intentionally to interfere with Mutual's contractual relationships. A party interferes with a contractual relationship between two or more other persons if it induces or otherwise causes one of them to breach the contract. Therefore, Waterstone must have known of the existence of the contractual relationship, and it must have either intended to cause the breach of the relationship or acted knowing that its actions were likely to cause that result.

> **SOURCE:** Modified from Fla. Std. Jury Instr. (Civil) § 408.6.

> **OBJECTIONS:** Joint instruction other than Waterstone objects to the bracketed items proposed by Mutual as the parties disagree as to whether the tortious interference claims pertain to the contracts of only the former managers or the former managers as well as the employees.

**Joint Contested Instruction**

**Tortious Interference – Unjustifiable Interference; Privilege**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Definition of Unjustifiable Interference.**

Mutual must prove that Waterstone acted unjustifiably because Waterstone committed a tort or other improper acts. A person who interferes with another's business relations and/or contracts using ordinary business methods of competition does not interfere improperly. But one who uses illegal or improper conduct has no privilege to use those methods, and interference using such methods is improper.

If the greater weight of the evidence does not support Mutual's claim, then your verdict should be for Waterstone. However, if the greater weight of the evidence supports Mutual's claim, then [your verdict should be for Mutual (*proposed by Mutual*)/you shall consider the defenses raised by Waterstone (*proposed by Waterstone*)].[8]

> **SOURCE:** Modified from Fla. Std. Jury Instr. (Civil) § 408.6.

> **OBJECTIONS:** Joint instruction other than Mutual objects to the bracketed description as noted in footnote 7.

---

[8] Mutual objects to the inclusion of this language because the affirmative defenses raised should not be presented to the jury. Mutual incorporates its objections as noted in footnote 7.

## WATERSTONE'S PROPOSED INSTRUCTION

### Tortious Interference with Contract – Affirmative Defense: Mitigation of Damages

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Mitigation of Damages.**

If Waterstone tortiously interfered with Mutual's employment contract[s] with the former managers, Mutual is not entitled to recover for those damages which Waterstone prove Mutual could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Mutual's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or burden, or humiliation.

**SOURCE:** Fla. Std. Jury Instr. (Contract & Business) § 504.9.

**OBJECTIONS:** Mutual objects to the inclusion of an instruction regarding mitigation of damages as an affirmative defense on the grounds consistent with its concurrently filed Motion in Limine seeking to exclude the affirmative defense of mitigation of damages. There is no evidence in the record to support that Mutual failed to mitigate any of its damages.

**Joint Instruction**

**Tortious Interference Damages**

If you find for Waterstone, you will not consider the matter of damages. But, if you find for Mutual, you should award Mutual an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Mutual for such loss or damage as the greater weight of the evidence shows was caused by Waterstone's interference with the contractual relationship.

If you find for Mutual, you shall consider Mutual's lost profits damages.

**SOURCE:** Fla. Std. Jury Instr. (Civil) § 408.11.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, jointly propose that the instruction be read to the jury.

**Joint Contested Instruction**

**Lost Profits Damages**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

Mutual claims that Waterstone's tortious interference with its employment contracts with its former managers [and employees (*Proposed by Mutual*)] have caused it to suffer lost profits. To be entitled to recover lost profits, Mutual must prove both of the following by the greater weight of the evidence:

1. Waterstone's actions caused Mutual to lose profits; and

2. Mutual can establish the amount of its lost profits with reasonable certainty.

For Mutual to establish the amount of its lost profits with reasonable certainty, it must prove that a reasonable person would be satisfied that the amount of lost profits which it may be entitled to recover is not simply the result of speculation or guessing. Instead, Mutual must prove that there is some standard by which the amount of lost profits may be established.  Mutual does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as it has shown there is a reasonable basis for determining the amount of the loss.

**SOURCE:**  Fla. Std. Jury Instr. (Civil) § 504.3.

**OBJECTIONS:** Joint instruction other than Waterstone objects to the bracketed items proposed by Mutual as the parties disagree as to whether the tortious interference claims pertain to the contracts of only the former managers or the former managers as well as the employees.

**Joint Instruction**

**Aiding and Abetting Breach of Fiduciary Duty – Summary of Claim**

Mutual claims that Waterstone aided and abetted Mutual's former managers in breaching their fiduciary duties to Mutual.

To prove that Waterstone aided and abetted a breach of fiduciary duty, Mutual must prove the following facts by the greater weight of the evidence: (1) former managers owed a fiduciary duty to Mutual; (2) the former managers breached their fiduciary duty to Mutual; (3) Waterstone had knowledge of the former managers' breach; and (4) Waterstone provided substantial assistance or encouragement with the former managers' breach.

Waterstone denies that the former managers breached their fiduciary duties to Mutual, that it had knowledge of the managers' breach of any fiduciary duties owed to Mutual, or that it provided any assistance or encouragement to Mutual's former managers in breaching any of the fiduciary duties they owed to Mutual.

Mutual must prove this claim, and Waterstone must prove its affirmative defenses, by the greater weight of the evidence.  I will now define some of the terms you will use in deciding this claim.

> **SOURCE:**   Modified from Fla. Std. Jury Instruction (Civil) § 451.2 (Summary of Claims or Contentions); *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.") (citing *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824 (11th Cir. 2015).

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, jointly propose that the instruction be read to the jury.

**Joint Instruction**

**Aiding and Abetting Breach of Fiduciary Duty – Definition of Fiduciary Duty**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Definition of Fiduciary Duty.**

Mutual claims that its former managers owed a fiduciary duty to Mutual. To prove a fiduciary duty existed, Mutual must prove the following:

A relationship existed between Mutual and its former managers in which Mutual put its trust in its managers to protect its financial or property interests, secrets, confidences, private information, and the former managers accepted that trust.

**SOURCE:** Fla. Std. Jury Instruction (Civil) § 451.4 (Existence of Fiduciary Duty Disputed).

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

## MUTUAL'S PROPOSED INSTRUCTION

### Aiding and Abetting Breach of Fiduciary Duty – Breach of Fiduciary Duty

**Definition of Breach of Fiduciary Duty**.

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Breach of Fiduciary Duty.**

A breach of a fiduciary duty occurred if the former managers had a fiduciary duty and failed to act with the utmost good faith, fairness, and honesty, and:

a. Failed to protect Mutual's financial or property interests; or

b. Failed to protect Mutual's relationships with its employees; or

c. Failed to protect Mutual's protect its financial or property interests, secrets, confidences, private information; or

d. Used such information to the detriment of Mutual.

> **SOURCE:** Fla. Std. Jury Instruction (Civil) § 451.5 (Breach of Fiduciary Duty); *Ops Int'l, Inc. v. Ekeanyanwu*, 672 F. Supp. 3d 1228 (M.D. Fla. 2023) ("Additionally, an employee owes a fiduciary duty of loyalty to his or her employer not to 'engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment.'") (citations omitted)

> **OBJECTIONS:** Mutual deviates from the standard instruction to add (b) regarding relationships with its employees with no supporting legal authority.

## WATERSTONE'S PROPOSED INSTRUCTION

### Aiding and Abetting Breach of Fiduciary Duty – Breach of Fiduciary Duty

**<u>Definition of Breach of Fiduciary Duty</u>**.

[<u>Question (insert number)</u> on the verdict form asks you (insert, as applicable)].

**<u>Breach of Fiduciary Duty</u>**.

A breach of a fiduciary duty occurred if the former managers had a fiduciary duty and failed to act with the utmost good faith, fairness, and honesty, and:

a.  Failed to protect Mutual's financial or property interests; or

b.  Failed to protect Mutual's, secrets, confidences, or private information; or

c.  Used such information to the detriment of Mutual.

**SOURCE:** Fla. Std. Jury Instruction (Civil) § 451.5 (Breach of Fiduciary Duty).

**OBJECTIONS:** Mutual objects to this instruction on the grounds that it fails to accurately describe the breaches of fiduciary duties alleged and supported by Florida law, by omitting in the breach of fiduciary duty that occurs when employees are solicited.

## MUTUAL'S PROPOSED INSTRUCTION

### Aiding and Abetting Breach of Fiduciary Duty – Knowledge

[Question (insert number) on the verdict form asks you (insert, as applicable)].

### Definition of Knowledge.

To prove Waterstone had knowledge of the former managers [and employees' (*Proposed by Mutual*)] breach, Mutual must prove that Waterstone was aware of, or should have been aware of, the breach of fiduciary duty claimed by Mutual.

> **SOURCE:** *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."); *Martin v. MDVIP, Inc. (In re SpinLabel Techs.)*, Nos. 17-20123-EPK, 19-01318-EPK, 2019 Bankr. LEXIS 4169 (Bankr. S.D. Fla. Dec. 13, 2019) ("But to support an aiding and abetting claim, the plaintiff must allege that the defendant *knew or had reason to know* that it was assisting in something improper.) (emphasis added).

> **OBJECTIONS:** Waterstone objects to this instruction on the basis that Mutual's definition of the knowledge element of an aiding and abetting claim, under Florida law, is incorrect. The court in *Martin v. MDVIP, Inc.*—which Mutual cites for the proposition that the jury can find that Waterstone "was aware of, or should have been aware of," the underlying breach of fiduciary duty—cited to no authority in support of that finding. As this very Court has made clear, under Florida law, "[w]hile actual knowledge may be shown by circumstantial evidence, courts 'stress that the requirement is actual knowledge' and the circumstantial evidence must demonstrate that the aider-and-abettor actually knew of the underlying wrongs committed." *See Wiand v. Wells Fargo Bank, N.A.,* 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (Under Florida law, in claim for aiding and abetting breach of fiduciary duty, defendant must have "actual knowledge of the underlying fraud or breach of fiduciary duty, not merely that certain red flags indicate a defendant should have

known of the breach.") (quoting *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014; internal quotation marks omitted).

Waterstone objects to the bracketed items proposed by Mutual as the parties disagree as to whether the tortious interference claims pertain to the contracts of only the former managers or the former managers as well as the employees.

## WATERSTONE'S PROPOSED INSTRUCTION

### Aiding and Abetting Breach of Fiduciary Duty – Actual Knowledge

[Question (insert number) on the verdict form asks you (insert, as applicable)].

### Definition of Actual Knowledge.

To prove Waterstone had actual knowledge of the former managers' breach, Mutual must prove that Waterstone actually knew Mutual's former managers were breaching their fiduciary duties, not merely that Waterstone should have known.

**SOURCE:** *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (Under Florida law, in claim for aiding and abetting breach of fiduciary duty, defendant must have "actual knowledge of the underlying fraud or breach of fiduciary duty, not merely that certain red flags indicate a defendant should have known of the breach.") (quoting *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014; internal quotation marks omitted).

**OBJECTIONS:** Mutual objects to the inclusion of this instruction as requiring actual knowledge. The seminole case, *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) does not include the requirement that "knowledge" be actual knowledge. Moreover, *Martin v. MDVIP, Inc. (In re SpinLabel Techs.)*, Nos. 17-20123-EPK, 19-01318-EPK, 2019 Bankr. LEXIS 4169 (Bankr. S.D. Fla. Dec. 13, 2019), which is a more recent case than Waterstone's citations provides: "[b]ut to support an aiding and abetting claim, the plaintiff must allege that the defendant *knew or had reason to know* that it was assisting in something improper." (emphasis added).

## Joint Contested Instruction

### Aiding and Abetting Breach of Fiduciary Duty – Substantial Assistance

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Definition of Substantial Assistance.** Lastly, Mutual must prove that Waterstone substantially assisted the former managers [and employees (*Proposed by Mutual*)] in breaching their fiduciary duties. To prove that Waterstone substantially assisted the former managers [and employees (*Proposed by Mutual*)] in breaching their fiduciary duties to Mutual, Mutual must prove that Waterstone affirmatively assisted, helped conceal, or failed to act when required to do so, which enabled the breach of fiduciary duty to occur.

> **SOURCE:** *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing.") (citing *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824 (11th Cir. 2015); *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 411 (Fla. Dist. Ct. App. 2022) (explaining that, in the context of a claim for aiding and abetting breach of fiduciary duty, "'substantial assistance' occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur.") (*quoting Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017))

> **OBJECTIONS:** Joint instruction other than Waterstone objects to the bracketed items proposed by Mutual as the parties disagree as to whether the tortious interference claims pertain to the contracts of only the former managers or the former managers as well as the employees.

**Joint Instruction**

**Aiding and Abetting Breach of Fiduciary Duty – Affirmative Defense: Permissible Preparatory Measures**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Permissible Preparatory Measures.**

To prove that the former managers engaged in permissible preparatory measures, Waterstone must prove that the actions took by the former managers were not "unfair" or did not cause injury to Mutual. For example, acts taken in preparation for opening a competing business, such as the opening of a bank account, and the obtaining of office space and other services, [or taking a customer list that the former managers developed themselves,] does not constitute a breach of the former managers' duty of loyalty to Mutual.

> **SOURCE:** *Classic Soft Trim, Inc. v. Albert*, No. 6:18-CV-1237-WWB-GJK, 2021 WL 720414, at *4 (M.D. Fla. Feb. 9, 2021) ("In determining whether an act is a breach or constitutes mere preparation, courts assess whether the employee engaged in 'unfair acts' or caused 'injury' to his employer."); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007) ("Mere preparation to open a competing business, such as assisting in the opening of a bank account, the obtaining of office space and other services with respect to the future employer are likewise insufficient to demonstrate a breach of such duty. . . . Additionally, an employee may take with him a customer list that he himself has developed.").

> **OBJECTIONS:** Mutual objects to the bracketed language which is entirely unsupported by Waterstone's citations. Former managers and employees have no legal right to take a customer list developed at Mutual, with Mutual's resources, which are password protected by Mutual's loan origination systems.

66

## WATERSTONE'S PROPOSED INSTRUCTION

### Aiding and Abetting Breach of Fiduciary Duty – Affirmative Defense: Mitigation of Damages

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Mitigation of Damages.**

If Waterstone aided and abetted [a] breach[es] of fiduciary duty[ies], Mutual is

not entitled to recover for those damages which Waterstone prove Mutual could

have avoided with reasonable efforts or expenditures.  You should consider the

reasonableness of Mutual's efforts in light of the circumstances facing it at the time,

including its ability to make the efforts or expenditures without undue risk or burden,

or humiliation.

**SOURCE:**  Fla. Std. Jury Instr. (Contract & Business) § 504.9.

**OBJECTIONS:** Mutual objects to the inclusion of an instruction regarding mitigation of damages as an affirmative defense on the grounds consistent with its concurrently filed Motion in Limine seeking to exclude the affirmative defense of mitigation of damages. There is no evidence in the record to support that Mutual failed to mitigate any of its damages.

**Joint Instruction**

**Aiding and Abetting Breach of Fiduciary Duty – Causation**

[Question (insert number) on the verdict form asks you (insert, as applicable)].

**Causation.**

To prove that Waterstone's aiding and abetting breach[es] of fiduciary duty[ies] caused it damages, Mutual must prove, by the greater weight of the evidence that the breach[es] were either a legal cause, or concurring cause, of damages.

1. *Legal cause generally*:

   Breach of a fiduciary duty is a legal cause of damages if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss or damage, so that it can reasonably be said that, but for the breach of fiduciary duty, the loss or damage would not have occurred.

2. *Concurring cause*:

   In order to be regarded as a legal cause of loss or damage a breach of the fiduciary duty need not be the only cause. A breach of a fiduciary duty may be a legal cause of loss or damage even though it operates in combination with some other cause if the breach of fiduciary duty contributes substantially to producing such loss or damage.

   **SOURCE:** *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. Dist. Ct. App. 2017) ("A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the

wrongdoing.") (citing *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824 (11th Cir. 2015); Fla. Std. Jury Instruction (Civil) § 451.6 (Breach of Fiduciary Duty – Legal Cause).

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

## Joint Instruction

## Aiding and Abetting Breach of Fiduciary Duty – Damages – Lost Profits

[Question (insert number) on the verdict form asks you (insert, as applicable)].

## Lost Profits.

If you find for Waterstone, you will not consider the matter of damages. But, if you find for Mutual, you should consider Mutual's lost profits damages. To be entitled to recover lost profits, Mutual must prove both of the following by the greater weight of the evidence:

1. Waterstone's actions caused Mutual to lose profits; and

2. Mutual can establish the amount of its lost profits with reasonable certainty.

For Mutual to establish the amount of its lost profits with reasonable certainty, it must prove that a reasonable person would be satisfied that the amount of lost profits which it may be entitled to recover is not simply the result of speculation or guessing. Instead, Mutual must prove that there is some standard by which the amount of lost profits may be established.  Mutual does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as it has shown there is a reasonable basis for determining the amount of the loss.

**SOURCE:** Fla. Std. Jury Instr. (Civil) § 504.3.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, the parties jointly propose that the instruction be read to the jury.

**[MUTUAL'S PROPOSED INSTRUCTION]**

**Punitive Damages**

There is an additional claim in this case that you must decide.  If you find for Mutual and against Waterstone, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Waterstone and as a deterrent to others.

Mutual claims that punitive damages should be awarded against Waterstone for its conduct in aiding and abetting Mutual's former managers and employees' breaches of fiduciary duty, tortious interference with its relationships with employees, misappropriation of Mutual's trade secrets, and diversion of Mutual's business opportunities. Punitive damages are warranted against Waterstone if you find by clear and convincing evidence that Waterstone was guilty of intentional misconduct which was a substantial cause of damage to Mutual. Under those circumstances you may, in your discretion, award punitive damages against Waterstone. If clear and convincing evidence does not show such conduct by Waterstone, punitive damages are not warranted against Waterstone.

"Intentional misconduct" means that Waterstone had actual knowledge of the wrongfulness of the conduct and that there was a high probability that injury or damage to Mutual and, despite that knowledge, Waterstone intentionally pursued that course of conduct, resulting in injury or damage.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. As I have already instructed

you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case. "Clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

If you decide that punitive damages are warranted against Waterstone then you must decide the amount of punitive damages, if any, to be assessed as punishment against Waterstone and as a deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded. In making this determination, you should decide any disputed factual issues by the greater weight of the evidence. "Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

In determining the amount of punitive damages, if any, to be assessed, you should consider the following:

(1) the nature, extent and degree of misconduct and the related circumstances, including the following:

(A) whether the wrongful conduct was motivated solely by unreasonable financial gain;

(B) whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by Waterstone; and

(C) whether, at the time of damage, Waterstone had a specific intent to harm Mutual and the conduct of Waterstone did in fact harm Mutual.

72

You may in your discretion decline to assess punitive damages.

**SOURCE:**  Florida Standard Jury Instructions, Civil (Rev. Feb. 2022), § 503.2, subsections a-b(1), c (Punitive Damages — Non-Bifurcated Procedure).

**OBJECTIONS:** Waterstone objects to this instruction on the basis that there is insufficient evidence in the record to support an instruction for punitive damages. Waterstone further objects to the inclusion of Mutual's misappropriation claim, or any "diversion of business opportunities," which is not a claim in this case. Because Mutual has already proposed an instruction for exemplary damages with respect to its misappropriation claims, to include those claims in a punitive damage instruction would allow for double counting. Moreover, "diversion of business opportunities," is not a claim in this case for which Mutual can be awarded any damages.

## CLOSING INSTRUCTIONS

### Joint Instruction

### Election of Foreperson; Explanation of Verdict Forms

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

*Court explains/reads the verdict form.*

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**SOURCE:** Eleventh Circuit Pattern Jury Instruction § 3.9.

**OBJECTIONS:** Neither party objects to this instruction, and, accordingly, jointly propose that the instruction be read to the jury.

32525046.4

74