IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MUTUAL OF OMAHA MORTGAGE, INC.<br><br>           Plaintiff,<br>v.<br><br>WATERSTONE MORTGAGE CORPORATION,<br><br>           Defendant. | CASE NO. 8:22-cv-01660-TPB-JSS |

**DECLARATION OF CHRISTOPHER SMITH**

I, Christopher Smith, declare and state as follows:

1. I formerly managed the Tampa branch of Waterstone Mortgage Corporation ("Waterstone").

2. I have transitioned the Tampa branch a number of times to different lenders, and I am the one who holds the lease to the branch office.

3. I do not believe I shared any information with Waterstone in connection with my discussions or transition to Waterstone from Plaintiff Mutual of Omaha Mortgage, Inc. ("Mutual") that was inappropriate to disclose.

4. In fact, when Brian Tomalak ("Tomalak") and Kiley King ("King") were pitching me to transition the Tampa branch to Mutual's predecessor, BBMC Mortgage, from my then current employer, Reliant Bank, Tomalak asked me to price loans in the Reliant Bank pricing engine and share the information; I shared margins and loan to value ratios for a particular loan with Tomalak; and referred loans to

1

Tomalak while still employed by Reliant, with those loans then closing with Mutual's predecessor, BBMC.

5. Further, Tomalak asked me to provide him with an array of nonpublic data about the expenses associated with my branch, the names of the employees who would transition with me, the production of those employees, and their compensation.

6. In addition, King asked me to coordinate with the Reliant employees who wanted to follow me to Mutual's predecessor to submit their applications, resumes, and Form W2s to him.

7. A copy of some of my exchanges with Tomalak and King in connection with transition of the Tampa branch from Reliant to BBMC are attached as <u>Exhibit 1</u>.

8. Tomalak and King remained my regional managers at BBMC and then Mutual through the date I resigned and the Tampa branch moved to Waterstone. In addition, other Mutual leadership who I understand will testify at the upcoming jury trial, Jeff Gennarelli and Christine Leyden, were in leadership for BBMC with Tomalak and King.

9. I understand that Mutual — and these same people, Tomalak, King, Gennarelli, and Leyden — now claim my disclosures to Waterstone in connection with the Tampa branch transition were improper and that I revealed Mutual's confidential information and trade secrets and breached my fiduciary duties to Mutual. But the disclosures I made were no more illuminating than the disclosures I made previously to these same people. I thus find their position now entirely disingenuous. I also feel they should not be able to elicit information from me and then turn around

and contend similar information is impermissible to share and grounds for punitive damages when it serves their financial interests to make those claims.

10. I also understand Mutual filed an "Mutual Cooperation Agreement" between BBMC and Reliant Bank, D.E. 275-1, and claims it shows Reliant agreed to release certain employees transitioning to BBMC from their restrictive covenants. Presumably Mutual will contend this agreement justifies Tomalak's and King's actions during my branch's Reliant Bank transition. It does not. This agreement has nothing to do with me. The agreement relates to other Reliant employees located at select Reliant Bank branches in Illinois, Ohio, Tennessee, and Kentucky, as noted in the agreement recitals. D.E. 275-1 at Whereas Cl. 1. My branch was in Tampa, as was I. Tellingly, the recitals also state that the agreement applies to only "certain of the personnel from the aforementioned Reliant offices" which are listed on Exhibit A of the agreement. See D.E. 275-1 at Whereas Cl. 2. Mutual omitted Exhibit A from its court filing. It would not have listed me because, again, this agreement has nothing to do with me or my transition from Reliant to BBMC.

11. I could have stayed at Reliant, which was a BBMC competitor.

12. I simply chose to transition my Tampa branch so that I could work with Tomalak and King, who I viewed as my friends at the time.

**I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.**

Executed this 27th day of February, 2025.

                                                *s/ Christopher Smith*
                                                Christopher Smith