IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUTUAL OF OMAHA MORTGAGE, INC.

    Plaintiff,

v.

WATERSTONE MORTGAGE CORPORATION,

    Defendant.

CASE NO. 8:22-cv-01660-UAM

**DEFENDANT WATERSTONE MORTGAGE CORPORATION'S RESPONSE TO PLAINTIFF MUTUAL OF OMAHA MORTGAGE'S MOTION *IN LIMINE* RELATING TO MUTUAL'S FAILURE TO MITIGATE DAMAGES**

Ample evidence demonstrates Mutual could have mitigated its alleged lost profits by recruiting new employees or branches over the two-and-a-half year period it seeks damages. Mutual also decided to terminate existing employees who stayed with Mutual rather than leave for Waterstone, rather than use those employees to rebuild its productivity in the Tampa and Daytona markets. Mutual's motion also seeks to exclude evidence that Mutual *did* mitigate its damages by acquiring Keller Williams shortly after the Tampa and Daytona branches transitioned to Waterstone, through which Mutual has operated branches in those markets since 2022. That Mutual does not know the particulars of Waterstone's theory of the defense does not justify excluding relevant evidence. Mutual's motion should be denied.

1

# ARGUMENT

## I. The Trial Evidence Will Show Mutual Failed To Mitigate Its Alleged Lost Profit Damages.

Mutual could have minimized or entirely avoided its losses by recruiting additional loan officers and branches to replace lost productivity. Waterstone will present evidence at trial that Mutual could have recruited new employees or even entire branches. Mutual is a national mortgage company with the resources and experience to have at least tried to recruit additional employees, or even an entire branch, to replace the productivity of the Tampa and Daytona branches. Mutual's (and every mortgage company's) business model is reliant on the recruiting of talent. Members of Mutual's leadership have testified at length about their experience recruiting employees and entire branches. Mutual admitted that the onboarding of entire groups of employees is "common in the industry." (Exhibit A, Theobald Dep. Tr. at 95:3-18.) In fact, the Tampa and Daytona branches, which form the entire basis for Mutual's alleged lost profits, were initially recruited by Mutual from other companies. Further still, loan officers are particularly transient. Trial evidence will show that approximately one third of loan officers has changed jobs in recent years. There is no reason Mutual could not have recruited some of these frequently moving employees, particularly given that Mutual contends it has regional managers, Kiley King and Brian Tomalak, who would have been well suited to continue the Tampa and Ormond Beach branches. A jury could reasonably conclude that it would have

been reasonable and prudent for Mutual recruit additional employees or branches to replace the lost profits from the Tampa and Daytona branches.

Further, Mutual could have retained and used existing employees to build out new branches to replace the Tampa and Daytona branches. A number of employees from the Tampa branch did *not* follow the rest of the branches to Waterstone. (Exhibit A, Theobald Dep. Tr. at 82:18-83:13.) Mutual could have retained those employees to build out new branches. Instead, it fired them. (*Id*. at 83:24-84:8.) Whether this decision was reasonable is a question for the jury.

Mutual also had a number of options to replace or reorganize its existing employees to replace the productivity. Chris Smith, a former Mutual branch manager, testified that if his team had stayed with Mutual, he would have hired and trained new employees to replace that productivity. (Exhibit B, Smith Dep. Tr. at 47:3-11.) There is no reason Mutual could not have done the same thing. Mutual admitted that it would have continued operating the branches if only the branch managers had left by replacing those managers with existing Mutual employees. (Exhibit C, Gennarelli Dep. Tr. at 95:16-22.) This testimony demonstrates for the jury that Mutual had viable options to replace whatever lost productivity it claims.

Mutual's argument that it would not have "rehired" employees who allegedly breached agreements is irrelevant. The issue is not whether Mutual could restore the exact status quo, but whether it could have mitigated its lost profits by recruiting other qualified employees. Mutual's refusal to do so is a strategic choice, not a legal defense.

Mutual's motion would also preclude Waterstone from presenting evidence at trial that Mutual *did* mitigate its damages. As Waterstone explored in discovery, Mutual acquired Keller Williams in 2022, which included several entire branches—including entire branches *in Tampa and Daytona*. Mutual has been operating those branches since at least 2022. Waterstone should be allowed to argue the profits generated from the Keller Williams branches should offset Mutual's alleged lost profits from the Tampa and Daytona branches that transitioned to Waterstone.

## II. The Fact That Mutual Did Not Explore Waterstone's Failure To Mitigate Defense In Discovery Is Not Grounds For Exclusion.

Finally, the fact that Mutual claims it is unaware of the facts Waterstone will rely on at trial is not grounds to preclude the failure to mitigate defense or exclude evidence related to that defense. Mutual did not conduct discovery on Waterstone's mitigation defense, despite Waterstone disclosing the defense in its answer to Mutual's Amended Complaint. At a minimum, Mutual could have conducted a Rule 30(b)(6) deposition to explore the theory and the factual basis for the defense; Mutual elected not to. Mutual's strategic choice to ignore this defense during discovery does not justify excluding relevant evidence from trial. Whether the decisions Mutual made after the Tampa and Daytona branches left for Waterstone were reasonable, or contributed to Mutual's alleged profits, is an issue for the jury to decide—not an issue to be resolved by excluding evidence.

## CONCLUSION

For these reasons, Mutual's motion should be denied in its entirety. Waterstone has substantial evidence demonstrating that Mutual failed to mitigate its alleged damages, and this evidence is directly relevant to Waterstone's affirmative defense.

Dated:  February 27, 2025.

s/*Maria L. Kreiter*
Maria Kreiter (admitted *pro hac vice*)
Emma Jewell (admitted *pro hac vice*)
Xavier O. Jenkins (admitted *pro hac vice*)
GODFREY KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
(414) 287-9466 (Telephone)
mkreiter@gklaw.com
ejewell@gklaw.com
xjenkins@gklaw.com

Scott A. McLaren (FBN: 414816)
Carolina Y. Blanco (FBN: 0098878)
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
carolina.blanco@hwhlaw.com
scott.mclaren@hwhlaw.com

*Attorneys for Defendant Waterstone Mortgage Corporation*