# **EXHIBIT F**

Page 1

1        UNITED STATES DISTRICT COURT
2         MIDDLE DISTRICT OF FLORIDA
3               TAMPA DIVISION
4   _____
5   MUTUAL OF OMAHA MORTGAGE, INC.,
6           Plaintiff,
7       v.                              Civil Action No.
8   WATERSTONE MORTGAGE CORPORATION,    22-CV-01660
9           Defendant.
10  _____
11            VIDEOTAPED DEPOSITION OF
12                 CHRISTOPHER WOLF
13  DATE:         Tuesday, July 25, 2023
14  TIME:         9:03 a.m.
15  LOCATION:     Remote Proceeding
16                Ormond Beach, FL
17  REPORTED BY:  Timothy Guevara, Notary Public
18  JOB NO.:      6016993

Page 56

1              MS. KREITER:  Object to the form.
2              THE WITNESS:  They came over first just
3    to kind of start the process, the HR stuff, get a feel
4    for the company.  We didn't want to flip everybody
5    over at the same time and leave Mutual in a lurch.  We
6    all wanted to still close loans there, so we had some
7    people go over first to kind of make it a more smooth
8    transition and make sure we were still closing loans
9    at Mutual.
10   BY MR. KAREN:
11       Q    Right.  But that's a transition team; isn't
12   it?
13             MS. KREITER:  Object to the form.
14             THE WITNESS:  That's not really what we
15   called it.  It was just the people that went over
16   first.  We didn't really call it anything.
17   BY MR. KAREN:
18       Q    Okay.  I'm asking you now, would you agree
19   that that is a transition team?  They were over there
20   to facilitate a transition; right?
21             MS. KREITER:  Object to the form.
22             THE WITNESS:  That's what we called

Page 73

1    some of them just wanted to come with us right away.
2         Q    And when you presented it, did you present
3    the opportunity as, like, "Hey, I've got bad news.
4    We're leaving, you know, and we have to go to
5    Waterstone, you know, it's not that great a place,
6    but, you know, that's what we're going to do."  Did
7    you present it like that?
8              MS. KREITER:  Object to the form.
9    BY MR. KAREN:
10        Q    You can answer.
11        A    I don't remember the -- how I presented it.
12   I just let them know that Dwayne and I were going to
13   look at going to Waterstone.
14        Q    Okay.  So but I'm asking, you wanted the
15   employees to come with you, yes?  We've already
16   established that; correct?
17        A    Of course.
18        Q    Okay.  So is it fair you would not have
19   presented it in a negative light, as something that
20   you were unhappy about; right?
21        A    I wouldn't think so, no.
22        Q    Okay.  If anything, you would present it in

Page 126

1  there are places where the loan can, for lack of a
2  term, fall out?
3       A    Yes.
4       Q    Okay.  And you know what I mean by fall out,
5  just so we're talking the same language?  That means
6  somebody decides not to proceed forward; right?
7       A    That could be one of the reasons, yes.
8       Q    Right.  But when I refer to fall out, what
9  I'm saying, is they fall out because for whatever
10 reason they're not going to move forward on the loan.
11 That's what I'm referring to as a fall out; is that
12 fair?
13      A    Yes.
14      Q    Okay.  So one of the areas which you agree
15 that people fall out is at the point of the credit
16 score; right?  Because they just might not give you
17 that access to your credit; is that a place where you
18 could have a fall out?
19      A    Yes.
20      Q    And another place you could have a fall out
21 is when you say, "Hey, go and give me all the
22 documents, you know, that I need to do this loan."

1   That's another place when you fall out; right?
2        A   Yes, if they didn't agree to provide the
3   documents you need, correct.
4        Q   And some people, people don't want to, you
5   know, they're not serious or, you know, they don't
6   want to go through a hassle of getting all the stuff.
7   That's another fall out place of the loan; right?
8        A   Yes.
9        Q   Okay.  So when you get the borrower to
10  provide the credit score and all that information,
11  that's getting sort of also their buy in to the loan
12  process; right?
13       A   Yes.
14       Q   And their buy in with you to the loan
15  process; correct?
16       A   Yes.
17       Q   So merely having that information is
18  valuable to you in regard to the loan process, because
19  you've gone through and gotten that borrower's buy in;
20  right?
21       A   Yes.
22       Q   And you further qualify that business

Page 128

1    opportunity; right?
2         A    Right.
3         Q    And so that loan at that point is much more
4    valuable to you, just having all that information than
5    some random, you know, person out there that might buy
6    a house; isn't it?
7         A    Yes.
8         Q    So just knowing that identity of that
9    person, who's willing to give that all to you, and
10   willing to go forward that far, just in and of itself,
11   that's valuable; isn't it?
12        A    True.
13        Q    And you're providing that to Waterstone, to
14   Kyrstin over there; aren't you?
15        A    I'm providing the documents from her client
16   to her.  But she -- she'd already gained that trust
17   and respect.  And we were trying to make it easier on
18   them, on the clients, not having to provide all that
19   information again and go find those documents.
20        Q    But you were also, by virtue of sending all
21   this information, making it easier for Waterstone to
22   close the mortgage; right?

Page 179

1   would switch over to Waterstone; right?
2       A    Correct.
3       Q    Why would you switch over the accounts?
4            MS. KREITER:  Object to the form.
5            THE WITNESS:  I'm not sure.  I think
6   the --
7   BY MR. KAREN:
8       Q    Well, let me ask you -- sorry.  Go ahead.
9       A    Yeah, I'm sorry.  Looks like the billing
10  addresses needed to be changed to corporate, so the
11  invoices would be paid.
12      Q    But in other words, you were using the same
13  accounts, you were still using DocuSign, Staples, the
14  same cleaning service, the same water machines; right?
15  You were trying to keep everything the same; right?
16      A    Yeah, it appears so.  And then just changing
17  over the billing information.
18      Q    And the reason you wanted to do that, tell
19  me if I'm wrong, is you really wanted to try to create
20  as much of a seamless transition as possible; correct?
21      A    Correct.
22           MR. KAREN:  Let's go to the next